

WILMINGTON
RODNEY SQUARE

NEW YORK
ROCKEFELLER CENTER

**Anne Shea Gaza**
P 302.571.6727
F 302.576.3439
agaza@ycst.com

July 19, 2019

**VIA CM/ECF & HAND DELIVERY**
The Honorable Leonard P. Stark, Chief Judge
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re:  *Cirba Inc. (d/b/a Densify), et al. v. VMware, Inc.*,
      C.A. No. 19-742-LPS

Dear Chief Judge Stark:

Pursuant to the Court's July 17, 2019 Order (D.I. 92), Defendant VMware, Inc. ("VMware") submits its opposition to the July 18, 2019 application for relief by Plaintiffs Cirba, Inc. (d/b/a Densify) and Cirba IP, Inc. (collectively, "Cirba").

As Cirba acknowledges, the parties have agreed on all but one provision of the proposed protective order for this litigation: whether Cirba should be allowed to retain two printouts of VMware's highly confidential source code, instead of one. While VMware has a compelling interest in protecting its source code, Cirba has not shown any need for more than one printout.

Cirba does not and cannot dispute that a party's source code is among its most confidential and highly sensitive information. *See, e.g., Tessera, Inc. et al v. Broadcom Corp.*, C.A. No. 16-cv-380-LPS, Oral Order (D. Del. Nov. 7, 2016) (recognizing "enormous value of [defendant's] source code") (Ex. A hereto); *Data Engine Technologies LLC v. Google Inc.*, C.A. No. 14-cv-1115-LPS, Oral Order (D. Del. Apr. 8, 2015) (noting that "Defendant's source code is entitled to stringent protection") (Ex. B hereto).

Restrictions on source code production and access are particularly important here, given VMware's standing as the virtualization industry leader—which Cirba emphasizes. (D.I. 68 at ¶ 32 (referring to VMware as "a leader in virtualization software").) VMware has already produced the source code for its vROps product, which can be used to monitor and troubleshoot virtual machines. VMware also has already produced its source code for core products that work with vROps in response to Cirba's discovery requests. Internally, VMware goes to great lengths to protect this code, including subjecting its source code version control systems to various authentication mechanisms.

In view of the sensitivity of source code like VMware's, this District's Default Standard for Access to Source Code ("Default Standard") provides for printing or copying of source code *only* with the producing party's agreement or Court order. (Default Standard, ¶ 5.) To facilitate meaningful discovery in this case, but also protect its sensitive information, VMware has agreed

that Cirba's outside counsel may retain a single copy of printed source code sections. VMware also has made two source code computers available, even though the Default Standard requires only one. (Default Standard, ¶ 1.) As a courtesy, VMware also has made these computers available to Cirba's designated reviewers *without* the required advance notice.

Cirba's apparent concern is that a single copy will frustrate its cross-office team's desire to review a second copy of source code printouts in a second location. Yet cross-office teams and single source-code printout limitations are common in patent cases, and VMware's own cross-office team is willing to abide by a single printout restriction for Cirba's code. In any event, VMware and its counsel have offices on both coasts (including at the same locations as Cirba's counsel), and VMware is willing to place one of its two computers on another coast to facilitate Cirba's attorneys' access.

Cirba also suggests that a second source code printout is necessary so that its technical expert, Vijay Madisetti, can review the source code in the first instance remotely. By the parties' express agreement, however, primary source code review may *not* be done using source code printouts. (D.I. 98, Attachment 1 at ¶ 48 (a party "shall not request paper copies for the purposes of reviewing the source code other than electronically in the first instance").) Printouts may be used only as "reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial." (*Id.* at ¶ 48.)

Cirba also omits that, to date, Dr. Madisetti has not accessed the source code at all. Instead, Cirba has retained a large team of contract reviewers to review VMware's source code. Cirba has designated two members of this six-person team under the Default Standard, not Dr. Madisetti, to perform the initial code review.[1]

Nor do Cirba's citations to protective orders in unrelated cases demonstrate that Cirba needs more than one printout here.[2] Neither the *AirWatch* case nor the *Parallel Iron* case involved the vROps product at issue here.

As VMware's interests in limiting reproductions of its source code vastly outweigh Cirba's allegations of inconvenience, VMware urges the Court to allow only one copy of source code printouts. Should Your Honor have any questions regarding the foregoing, counsel for VMware are available at the Court's convenience.

---

[1] This represents yet another accommodation to Cirba beyond the Default Standard, which permits access to the lone computer only by "two (2) outside counsel representing the requesting party and two (2) experts retained by the requesting party." (Default Standard ¶ 4.)

[2] Although Cirba implies that the lack of an entered protective order has frustrated its case preparations, Cirba omits that it neglected to circulate a draft until eight weeks after this case was filed—and six weeks after moving for a preliminary injunction. VMware's insistence that the parties abide by the Default Standard pending the Court's entry of a formal protective order was more than reasonable, in light of the magnitude of the risks. Regardless, as noted, VMware made an additional source code computer available to Cirba, for its convenience, and also allowed access even without advance notice to VMware.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (#4093)

Exhibits A and B
cc:  All Counsel of Record (via e-mail)