## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> VMWARE, INC., <br><br> Defendant. | C.A. No. 19-742-LPS |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS CLAIM I OF THE FIRST AMENDED COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 35 U.S.C. § 101

Dated: July 23, 2019

OF COUNSEL:

Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    *ALICE* STEP 1: THE CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA .............. 1

    A.    The Asserted Claims Relate to the Business Problem of Resource Usage ............ 1

    B.    The Asserted Claims Are Not Directed to a Specific Design ................................ 3

    C.    The Asserted Claims Can Be Practiced Manually or With a Pen and Paper ......... 5

    D.    The Claims' Lack of Detail Confirms Their Abstract Nature .............................. 7

II.   *ALICE* STEP 2: THE ASSERTED CLAIMS LACK AN INVENTIVE
    CONCEPT ............................................................................................................................... 8

    A.    The Asserted Claims Do Not Recite a "Specific" Way of Designing a
            Virtualized Environment, Much Less an Inventive One ....................................... 8

    B.    The '687 Prosecution History Does Not Show Inventiveness .............................. 9

    C.    The Prosecution History of VMware's Patents Is Outside the Scope of this
            Motion to Dismiss and, Regardless, Is Irrelevant .............................................. 10

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DirecTV, LLC*,
　　838 F.3d 1253 (Fed. Cir. 2016)..............................................................................9

*Alice Corp. v. CLS Bank Int'l*,
　　573 U.S. 208 (2014).................................................................................1, 7, 8, 9

*Ancora Techs. v. HTC Am., Inc.*,
　　908 F.3d 1343 (Fed. Cir. 2018).............................................................................9

*Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (U.S.)*,
　　687 F.3d 1266 (Fed. Cir. 2012).............................................................................6

*Bridge & Post, Inc. v. Verizon Commc'ns., Inc.*,
　　No. 2018-1697, 2019 U.S. App. LEXIS 20045 (Fed. Cir. July 5, 2019)...................3

*In re Burlington Coat Factory Sec. Litig.*,
　　114 F.3d 1410 (3d Cir. 1997)...............................................................................10

*Caltech v. Hughes Communications, Inc.*,
　　59 F. Supp. 3d 974 (C.D. Cal. 2014) .....................................................................7

*Cisco Sys. v. Uniloc USA, Inc.*,
　　No. 18-cv-04991-SI, 2019 U.S. Dist. LEXIS 76335 (N.D. Cal. May 6, 2019).........8

*Citrix Sys., Inc. v. Avi Networks, Inc.*,
　　363 F. Supp. 3d 511 (D. Del. 2019).....................................................................2, 3

*Credit Acceptance Corp. v. Westlake Servs.*,
　　859 F.3d 1044 (Fed. Cir. 2017)..............................................................................1

*Dana Corp. v. American Axle & Manufacturing, Inc.*,
　　279 F.3d 1372 (Fed. Cir. 2002)..............................................................................5

*Data Engine Techs.. LLC v. Google LLC*,
　　906 F.3d 999 (Fed. Cir. 2018)................................................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
　　830 F.3d 1350 (Fed. Cir. 2016)..............................................................................7

*Enfish, LLC v. Microsoft Corp.*,
　　822 F.3d 1327 (Fed. Cir. 2016)..............................................................................2

*Finjan, Inc. v. Blue Coat Sys.*,
　　879 F.3d 1299 (Fed. Cir. 2018).......................................................................2, 4, 8

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    711 F. App'x 1012 (Fed. Cir. 2017) ........................................................................5

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)................................................................................9

*IPA Techs. v. Amazon.com, Inc.*,
    352 F. Supp. 3d 335 (D. Del. 2019)........................................................................3

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)..........................................................................2, 4

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
    918 F.3d 1368 (Fed. Cir. 2019)................................................................................4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016).........................................................................5, 10

*TQP Development, LLC v. Intuit Inc.*,
    No. 12-cv-180-WCB, 2014 U.S. Dist. LEXIS 20077 (E.D. Tex. Feb. 19,
    2014) .....................................................................................................................6, 7

*Two-Way Media Ltd v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)................................................................................4

*Uniloc USA, Inc. v. ADP, LLC*,
    2019 U.S. App. LEXIS 15507 (Fed. Cir. May 24, 2019) ......................................10

*Univ. of Fla. Research Found., Inc. v. GE Co.*,
    916 F.3d 1363 (Fed. Cir. 2019)...........................................................................7, 8

*Visual Memory LLC v. nVidia, Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)................................................................................8

**Statute**

35 U.S.C. § 101 ..............................................................................................1, 5, 9, 10

35 U.S.C. § 102 .........................................................................................................5

Cirba's opposition (D.I. 91, "Opp.") confirms that the '687 patent is invalid under Section 101. Cirba does not dispute that the idea of collecting and analyzing data to identify misallocated resources lies at the heart of the Asserted Claims. While the patent implements this idea in the context of virtualized systems, the Asserted Claims do not identify (1) specific improvements to computer hardware or software; (2) how, by what, or by whom data is collected; (3) how that data is stored, and in what format; (4) how, by what, or by whom the "rule sets pertaining to technical, business, and workload constraints" for analyzing the collected data are created; (5) how the rule sets are stored, and in what format; or (6) how, by what, or by whom the collected data is analyzed to determine "suboptimal" placements.

To salvage its broad, abstract claims, Cirba cites and quotes heavily from the specification, the prosecution history, and even the prosecution history of unrelated patents. But the caselaw is clear that the *Alice* analysis focuses on the claim language itself. Cirba's contrary approach confirms that the Asserted Claims are devoid of necessary inventive details.

## I.    *ALICE*[1] STEP 1: THE CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA.

### A.    The Asserted Claims Relate to the Business Problem of Resource Usage.

Contrary to Cirba's position, the '687 patent does not claim specific improvements to computer technology. The patent merely substitutes a computer for human management of network resources, which is not patentable. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[The] mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology.").

Although the claims focus on a computing environment, they do so only by reciting generic computer components (*e.g.,* "systems," "virtualized environments," "virtual hosts," and

---

[1] *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014)

"virtual guests") and describing their interactions in functional terms (*e.g.,* "obtaining,"

"evaluating," and "identifying").  The claims do not recite specific computer components or

disclose any algorithms, tables, or other specific features for evaluating the unspecified

"technical, business[,] and workload constraints."[2]  This usage of "off-the-shelf computer

technology . . . to carry out [data] analysis" is unpatentable.  *SAP Am., Inc. v. InvestPic, LLC*,

898 F.3d 1161, 1168 (Fed. Cir. 2018) (claims unpatentable where "the focus of the claims is not

on any improved computer," but rather data analysis using "off-the-shelf computer technology").

     At its core, the patent purports to solve a business problem: how to allocate computer

resources efficiently to reduce operating costs.  ('687 patent at 1:42-63 (referring to problem of

"operating costs").)  But while shifting computer workloads may affect how efficiently or

effectively the computers operate, this does not improve the technology of the computers

themselves.  Any alleged technical benefits for the virtual computer environment "flow[] solely

from performing an abstract idea in conjunction with well-understood structure."  *Citrix Sys.,*

*Inc. v. Avi Networks, Inc*., 363 F. Supp. 3d 511, 522 (D. Del. 2019).  In contrast to "the self-

referential database patent found eligible" in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327

(Fed. Cir. 2016), which "actually permitted users to launch and construct databases in a new

way," the claims here merely "allow computers to perform familiar tasks with greater speed and

efficiency."  *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) (citing *Enfish*).

     Cirba's laundry list of alleged benefits in its First Amended Complaint ("FAC," D.I. 68)

(*e.g.,* "reducing errors," "decreasing costs," and being "generally easier to manage") does not

---

[2] Contrary to Cirba's assertions, "host-based placement of VMs" is not a feature of the Asserted Claims.  (Opp. at 1.)  Claim 7, for example, is merely about identifying suboptimal placement in light of unspecified constraints, without requiring any further action.  The claim thus does not cover the automation of placement, but instead the automation of data analysis.  Although Claim 2 recites the additional step of "refining" the environment based on that analysis, Claim 2 does not specify how to achieve that "refinement" or what that refinement is.

alter this analysis.  (Opp. at 12-13 (citing FAC ¶ 65).)  Cirba's contentions are "boilerplate allegations that the claims are directed to new computer functionality and improvements to technological processes," which the Court may disregard.  *IPA Techs. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 349 (D. Del. 2019); *see also Bridge & Post, Inc. v. Verizon Commc'ns., Inc.,* No. 2018-1697, 2019 U.S. App. LEXIS 20045, at *27 (Fed. Cir. July 5, 2019) (a court is "not required to accept [patentee's] legal conclusions as true, even if couched as factual allegations").

But "[e]ven taking these contentions as true, the [alleged] factual conclusion that practicing a claim improves computer functionality [would] not end the *Alice* step one inquiry." *Citrix,* 363 F. Supp. 3d at 522.  "[T]he Court must also consider the source of the improved computer functionality."  *Id.*  "A claim is not 'directed to' an improvement in computer functionality if the technical benefits flow solely from performing an abstract idea in conjunction with well-understood structure."  *Id.*  That is precisely the case here.

**B.      The Asserted Claims Are Not Directed to a Specific Design.**

Although Cirba argues that "generating a virtual environment design" grounds the claims in computer technology (Opp. at 11), there is a fundamental difference between (i) claims that recite specific, discrete steps grounded in computer technology and (ii) ones that merely recite results or goals of a computer operation.  Generating a design may be a *result* of the Asserted Claims, but their thrust remains collecting and analyzing data.

The claims generically recite "evaluating" data and "rebalancing" the placement of virtual guests on virtual hosts to optimize resources based on unspecified "technical, business[,] and workload constraints."  Any resulting design of the virtual environment is incidental to the claims' focus, which relates to shifting generic software components ("virtual guests") between generic hardware components ("virtual hosts") using "data" and unspecified instructions.  Because the Asserted Claims at most recite a desired result (*e.g.,* claim 2's "refin[ed] . . .

3

virtualized environment"), rather than how to achieve that result, they are not grounded in computer technology, but are directed to an abstract idea.[3]  *See SAP*, 898 F.3d at 1167 (claim directed to abstract idea where it lacked "the specificity required to transform [the] claim from one claiming only a result to one claiming a way of achieving it.").

Cirba's cases are not to the contrary.  The claims at issue in *Finjan* recited a method employing a new kind of computer file and "specific steps" for accomplishing the desired result, such as "generating a security profile that identifies suspicious code and linking it to a downloadable."  879 F.3d at 1303–06.  By contrast, the claims here recite nondescript data collection and analysis steps and generic, conventional computer functionality.  These do not "enable[] a computer [] system to do things it could not do before."  *Id*. at 1305.

Similarly, the claims in *SRI Int'l, Inc. v. Cisco Systems, Inc.* were directed to "a specific technique—using a plurality of network monitors that each analyze specific types of data on the network and integrating reports from the monitors—to solve a technological problem arising in computer networks: identifying hackers or potential intruders into the network."  918 F.3d 1368, 1375 (Fed. Cir. 2019).  By contrast, here the claims "fail to describe a specific, discrete implementation of the abstract idea sufficient to qualify for eligibility under § 101."  *Two-Way Media Ltd v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1341 (Fed. Cir. 2017) (internal quotation and citation omitted).

---

[3] By analogy, imagine a claim for determining where employees should sit in an office.  The analysis might consider technical issues (*e.g.,* the location of power outlets), workload issues (*e.g.,* maximum occupancy limits), and business issues (*e.g.,* organization departments such as HR, legal, etc.).  Performing this process via computer rather than on paper would not ground it in computer technology.

### C. The Asserted Claims Can Be Practiced Manually or With a Pen and Paper.

Cirba admits that the basic idea of optimizing computer placement is not new. (Opp. at 4 (acknowledging that "conventional systems" could "optimize complex virtualized systems," only not "in a holistic way").) Automating this concept with conventional computer functionality or by applying unspecified "technical, business[,] and workload constraints" does not make it less abstract. *See, e.g., Intellectual Ventures I LLC v. Erie Indem. Co.*, 711 F. App'x 1012, 1015 (Fed. Cir. 2017) (rejecting argument that teaching a "specific way of identifying unauthorized files using specific selection criteria that humans did not use" was not abstract).

Cirba's contention that "the human mind is not equipped . . . to evaluate the placement of [] virtual machines . . . by evaluating each virtual guest against each virtual host and other virtual guests using one or more rule sets" (Opp. at 16 (internal quotation omitted)) is false. In its Opening Brief (D.I. 80 at 12-13), VMware explained precisely how a human can perform those steps (*e.g.,* for representative claim 7[4]), but Cirba ignores that explanation.

Equally unpersuasive is Cirba's pronouncement that "[it] would be impossible for a human mind to create a virtual environment design involving ten thousand servers, 2 million VMs," and "billions of interrelated computations." (Opp. at 9, 16.) Cirba's argument grasps at straws not found in the claims, but "the § 101 inquiry must focus on the language of the [a]sserted [c]laims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149

---

[4] After conceding that claim 7 is "illustrative" and the other PI claims have "the same functionality described for claim 7" (D.I. 12 at 12, 16), Cirba now argues that VMware has not met its burden to show that claim 7 is representative. (Opp. at 11 n. 3.) But in its Opening Brief, VMware specifically explained how all of the Asserted Claims involve the same generic, abstract functionality as claim 7. (Opening Br. at 6.) While Cirba cites *Dana Corp. v. American Axle & Manufacturing, Inc.,* that case did not involve a Section 101 challenge at all, but the on-sale bar under Section 102. *See* 279 F.3d 1372, 1376 (Fed. Cir. 2002). Here, VMware's arguments apply to all of the Asserted Claims, regardless of whether claim 7 is representative.

(Fed. Cir. 2016).  The Asserted Claims undisputedly do not require resolution of an "infinite number of possible consolidation permutations," as Cirba suggests.  (Opp. at 16.)

Instead, the claims equally apply to a virtualized environment consisting of *any* number of the recited generic components (*i.e.*, virtual machines, virtual hosts, constraints, rule sets), including a small number (*e.g.,* three).[5]  The specification makes clear that the alleged invention is applicable to "any entity which [*sic*] is capable of being analyzed for any type of compatibility" (8:27-31), "any number of rules in any number of rule sets" (12:6-8), and "any number of sources" (21:14-16).  And the human mind can conduct each step of the Asserted Claims for a virtualized environment (*e.g.*, in a small business) consisting of two servers, hosting five virtual machines, with a small number of possible consolidation permutations.

Regardless, the complexity of Cirba's "billions" example is just a matter of degree. VMware's pen-and-paper recipe for performing the recited steps of the Asserted Claims applies equally to a large number of computers.  It might take a human a very long time, but even if a "computer simply performs more efficiently what could otherwise be accomplished manually," that does not render an abstract idea patentable.  *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012).

Cirba's various authorities lend it no aid.  The claim in *TQP Development, LLC v. Intuit Inc.* was "drawn to a very specific method of changing [pseudo-random] encryption keys" using "seed values."  No. 12-cv-180-WCB, 2014 U.S. Dist. LEXIS 20077, at *3-5, 13 (E.D. Tex. Feb. 19, 2014).  "[T]he claim [did] not read on the use of any of a number of predetermined characteristics of the data being communicated, but require[d] triggering based on a specific predetermined characteristic—the number of blocks of data that [were] transmitted over the

---

[5] As Cirba confirms in its response, "[v]irtualization allows users to run *more than one* virtual computer system (VM) on a single physical server."  (Opp. at 3 (emphasis added).)

link." *Id.* at 12.  Here, by contrast, the Asserted Claims do not recite any specific, predetermined characteristics of the data or the rules used to analyze it.  Instead, they refer generically to abstract "rule sets," "constraints," and "suboptimal placements" without specifying, for example, what type of rule set must be used, what constraints must be prioritized, or what constitutes a suboptimal placement.  And unlike the presumably large "pseudo-random numbers" in *TQP*, the purported invention here is applicable to "any number of rules" and "any number of sources."

Similarly, *Caltech v. Hughes Communications, Inc.* dealt with a narrow claim involving "an algorithmic solution for a computing problem."  59 F. Supp. 3d 974, 995 (C.D. Cal. 2014).  The claim specifically required "the irregular repetition of message bits and the use of a prior parity bit for calculating a subsequent parity bit."  *Id.* at 996.  Here, the claims set forth no algorithm—just the generic steps of collecting and analyzing data.  *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) ("collecting information, analyzing it, and displaying . . . results" unpatentable).[6]

### D.   The Claims' Lack of Detail Confirms Their Abstract Nature.

Although Cirba complains that VMware is attempting to create a "heightened patent-eligibility standard" "sound[ing] in enablement" (Opp. at 14 n.7), VMware does no such thing.  The Federal Circuit has made clear that a patent's failure to "provide any technical details for the tangible components," "instead predominantly describ[ing] the system in purely functional terms," is relevant to confirming its abstract nature under *Alice* step one.  *Univ. of Fla. Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (quoting *In re TLI Commc'ns LLC*

---

[6] *Data Engine Techs.. LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018) is distinguishable for the same reason.  (Opp. at 17 n. 11.)  There, the claimed "notebook tabs [for improving an electronic spreadsheet] [we]re *specific structures* within the three-dimensional spreadsheet environment that allow a user to avoid the burdensome task of navigating through spreadsheets in separate windows using arbitrary commands."  *Engine* at 1011 (emphasis added).

*Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016), and holding claim to be unpatentable).

Cirba's authorities are not to the contrary.  In *Finjan*, the claims "recite[d] specific steps—generating a security profile that identifies suspicious code and linking it to a downloadable—that accomplish[ed] the desired result."  879 F.3d at 1305.  Here, the claims cover "any way" of collecting and analyzing data subject to nondescript constraints and "fail[] to provide any technical details on how this is achieved."  *Cisco Sys. v. Uniloc USA, Inc.*, No. 18-cv-04991-SI, 2019 U.S. Dist. LEXIS 76335, at \*27-28 (N.D. Cal. May 6, 2019) (distinguishing *Finjan,* and holding unpatentable claim directed to *any way* of using a particular data set).

Likewise, in *Visual Memory LLC v. nVidia, Corp.,* 867 F.3d 1253 (Fed. Cir. 2017), the patent "did not merely claim [an] enhancement to the computer memory system."  *Univ. of Fla.,* 913 F.3d at 1368 (discussing *Visual Memory* at 1261).  Instead, the patent there "explained how it worked, appending 263 frames of computer code."  *Id.* (internal quotation omitted).  Here, the '687 patent does not claim an enhancement, much less provide details for how it would work.

## II.     *ALICE* STEP 2: THE ASSERTED CLAIMS LACK AN INVENTIVE CONCEPT.

### A.      The Asserted Claims Do Not Recite a "Specific" Way of Designing a Virtualized Environment, Much Less an Inventive One.

Cirba all but concedes that its claims are not inventive, giving short shrift to *Alice's* second step.  Cirba first repeats its mantra that the claims recite "a specific way of designing a virtualized environment."  (Opp. at 18–19.)  But repeating that claim does not make it so.

As explained above, the claims belie Cirba's assertion.  They do not identify specific hardware or software, offer specific solutions for achieving the desired outcomes, specify how to obtain "data" or the type of that data, identify the "rules" for evaluating the data, or clarify what qualifies as "technical," "business," and "workload" constraints or a "suboptimal" placement.

**B.      The '687 Prosecution History Does Not Show Inventiveness.**

Contrary to Cirba's next assertion, the '687 patent's Notice of Allowance does not "underscore" any "inventive concept" (Opp. at 18–19).  The Examiner did not discuss Section 101 at all.  The Examiner thus could not have concluded that the Asserted Claims recite "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Alice* at 217–18 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 566 U.S. 66, 72 (2012)).

Regardless, novelty alone cannot demonstrate an inventive concept under *Alice* step two, or else every patent would survive this step.  As the Federal Circuit has explained, an abstract idea implemented in a novel context or technological environment remains unpatentable if the implementation is routine, conventional, or "functionally described."  *See Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016) (novelty "does not avoid the problem of abstractness" where the implementation is "functionally described" and there is "no further specification of a particular technology"); *Intellectual Ventures I LLC v. Symantec Corp*., 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("Indeed, the 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.") (internal quotation and citation omitted).  Here, Cirba's "functionally described" implementation of the abstract idea in a particular context remains unpatentable.

*Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343, 1348–49 (Fed. Cir. 2018) does not justify Cirba's reliance on the prosecution history to show an inventive concept.  (Opp. at 18.)  In *Ancora*, the prosecution history "reinforce[d]" that the specific and unique characteristic of the claimed method, was the "unexpected" use of a "structure containing a license record stored in a particular, modifiable, non-volatile portion of the computer's BIOS."  *Ancora* at 1349.  There is

nothing specific, unique, or unexpected in the claims here.

Similarly, in *Uniloc USA, Inc. v. ADP, LLC*, "the focus [was] on the use of the file packet configured to initiate registration of an application from an application server," and this represented the "particular improvement in the functioning of prior art application distribution networks." 2019 U.S. App. LEXIS 15507, at *15-16 (Fed. Cir. May 24, 2019). Here, by contrast, the '687 patent "merely invoke[s] generic processes and machinery." *Id.* at *16 (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).

### C. The Prosecution History of VMware's Patents Is Outside the Scope of this Motion to Dismiss and, Regardless, Is Irrelevant.

Cirba's attempt to rely on the prosecution history of unrelated *VMware* patents to show that the '687 patent does not preempt the field (Opp. at 19) is improper. Procedurally, VMware's patents are not within the scope of the pleadings and thus are irrelevant. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("motion to dismiss may not consider matters extraneous to the pleadings.").

Substantively, even "the absence of complete preemption does not demonstrate patent eligibility." *Synopsys*, 839 F.3d at 1150. Regardless, in view of the claims' broad and functionally-described claim language, the '687 patent presents the same preemption concerns that courts have recognized "may signal patent ineligible subject matter." *Id.*

### CONCLUSION

Cirba's patented methods for collecting and analyzing data are abstract on their face, and Cirba's attempt to apply them to virtualized environments using generic computer components does not render them patent eligible. For the reasons above and in its Opening Brief, VMware requests that the Court hold that the Asserted Claims are unpatentable under Section 101 and dismiss Claim I of Cirba's First Amended Complaint with prejudice.

Dated: July 23, 2019

OF COUNSEL:

Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

01:24774336.1

11

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Shea Gaza, hereby certify that on July 23, 2019, I caused to be electronically

filed a true and correct copy of the foregoing document with the Clerk of the Court using

CM/ECF, which will send notification that such filing is available for viewing and downloading

to the following counsel of record:

> Kenneth L. Dorsney, Esquire
> Morris James LLP
> 500 Delaware Avenue, Suite 1500
> Wilmington, DE 19801
> *kdorsney@morrisjames.com*
>
> *Attorney for Plaintiffs*

I further certify that on July 23, 2019**,** I caused the foregoing document to be served via

electronic mail upon the above-listed counsel and on the following:

> Courtland L. Reichman, Esquire
> Shawna L. Ballard, Esquire
> Jennifer Estremera, Esquire
> Phillip Lee, Esquire
> Michael G. Flanigan, Esquire
> Joachim B. Steinberg, Esquire
> Kate Falkenstien, Esquire
> Ariel C. Green, Esquire
> Reichman Jorgensen LLP
> 100 Marine Parkway, Suite 300
> Redwood Shores, CA  94065
>
> Sarah O. Jorgensen, Esquire
> Reichman Jorgensen LLP
> 1201 West Peachtree Street, Suite 2300
> Atlanta, GA 30309
>
> Christine E. Lehman, Esquire
> Reichman Jorgensen LLP
> 1615 M Street, N.W., Suite 300
> Washington, DC 20035

Jaime F. Cardenas-Navia, Esquire
Wesley Lanier White, Esquire
Reichman Jorgensen LLP
100 Park Avenue, Suite 1600
New York, NY 10017

*RJ_densify@reichmanjorgensen.com*

Gary J. Toman, Esquire
Weinberg Wheeler Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
*gtoman@wwhgd.com*

*Attorneys for Plaintiffs*

Dated:  July 23, 2019

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
*agaza@ycst.com*
*swilson@ycst.com*

*Attorneys for Defendant*

2