## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a DENSIFY)
and CIRBA IP, INC.,

                  Plaintiffs,

   v.

VMWARE, INC.,

                  Defendant.

C.A. No. 19-742-LPS

**PUBLIC VERSION**

---

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO SEVER

Dated: September 3, 2019
Public Version: September 10, 2019
OF COUNSEL:

Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II.    NATURE AND STAGE OF PROCEEDINGS .................................................... 2

III.   STATEMENT OF FACTS ........................................................................... 4

     A.    The Overlapping Nature of Cirba's and VMware's Patents. .............................. 4

     B.    The Relevant Documents and Witnesses Also Overlap. ..................................... 7

IV.   ARGUMENT ............................................................................................ 8

     A.    Judicial Economy Is Best Served by *Not* Severing. ......................................... 9

     B.    A Two-Patent v. Two-Patent Case Is Not Unusually Complex, and Courts Routinely Allow Such Claims to Proceed Together to Trial. ............................ 11

     C.    Prejudice Favors *Not* Severing VMware's Counterclaims. ............................... 13

          1.    This Court has already rejected Cirba's claim of irreparable harm. ........ 13

          2.    Cirba's Hobson's choice is a false dilemma. ................................... 13

          3.    Cirba is not "David" to VMware's "Goliath," and VMware did not wait until the "11th hour" .......................................................... 14

          4.    Severance would prejudice VMware. ............................................. 16

CONCLUSION ................................................................................................ 17

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&E Prods. Grp. L.P. v. Accessory Corp.*,
No. 00 Civ. 7271, 2002 WL 86556 (S.D.N.Y. May 22, 2002)............................................9, 12

*Aspen Tech., Inc. v. Kunt*,
No. 4:10-cv-1127, 2011 WL 86556 (S.D. Tex. Jan. 10, 2011).................................................9

*Comcast IP Holdings I LLC v. Sprint Commc'ns Co. LP*,
No. 12-cv-205 (D. Del.), D.I. 33 (D.I. 156 Ex. D) ...................................................................12

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001).................................................................................................11

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
896 F. Supp. 505 (D. Md. 1995) ...............................................................................................12

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
No. 12-cv-540 (D. Del. Apr. 15, 2015), D.I. 295 .....................................................................12

*Garmin Ltd. v. TomTom, Inc.*,
No. 06-c-0062, 2006 WL 3377487 (W.D. Wis. June 15, 2006)................................................12

*Gen. Tire & Rubber Co. v. Jefferson Chem. Co.*,
50 F.R.D. 112 (S.D.N.Y. 1970) ...............................................................................................12

*In re Innotron Diagnostics*,
800 F.2d. 1077 (Fed. Cir. 1986)..................................................................................................8

*Karlo v. Pittsburgh Glass Works, LLC*,
No. 2:10-cv-1283, 2015 WL 6134052 (W.D. Pa. Oct. 16, 2015).............................................9

*Kraft Foods Holdings, Inc. v. Procter & Gamble Co.*,
No. 07-cv-613, 2008 WL 4559703 (W.D. Wis. Jan. 24, 2008)................................................13

*LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
No. 12-cv-1063 (D. Del.) (D.I. 156 Ex. C) ..............................................................................12

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995)...................................................................................................11

*Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp.*,
No. 16-cv-284 (D. Del.) (D.I. 156 Ex. B) ................................................................................12

*Spellbound Dev. Grp., Inc. v. Pac. Handy Cutter, Inc.*,
No. 09-cv-951, 2011 WL 1810961 (C.D. Cal. May 12, 2011)...........................................12, 16

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases**

*Turner Constr. Co. v. Brian Trematoro Plumbing & Heating, Inc.*,
No. 07-666 (WHW), 2009 WL 3233533 (D.N.J. Oct. 5, 2009) ...............................................12

**Statutes**

35 U.S.C. § 102(b) ...................................................................................................................7

35 U.S.C. § 102(e)(2)...............................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 1 .......................................................................................................................8

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Cirba's severance motion is premised on unsupported attorney argument and emotional pleas.  Cirba asserts that there is no overlap between its two patents and VMware's two patents (VMware has proposed to voluntarily sever two others); that litigating VMware's counterclaims would "triple the size and complexity of the case"; that it would continue to suffer a "variety of material harms" absent severance; that it could not possibly litigate a two-patent versus two-patent case, and that VMware waited until the "11th hour" to assert its counterclaims.  These claims are false.

Severance will lead to needless inefficiencies and waste party and judicial resources.  VMware's two patents relate to enforcing software compliance and predictive analysis within a virtual environment—which Cirba's infringement claims specifically attack.  In view of the subject matter overlap, the relevant evidence (the allegedly infringing products, witnesses, documents, and prior art) necessarily will overlap.  Accordingly, there is no basis for separate trials covering the overlapping factual and legal issues, and Cirba has not shown otherwise.

Although Cirba casts itself as an "underdog" outmatched by VMware's "limitless resources," its narrative overlooks the actual procedural history.  It was *Cirba* that started this fight, filing suit and then moving for a preliminary injunction, both with no advance notice.  Cirba's aggressive litigation conduct and its army of lawyers (with three law firms and thirteen lawyers already of record) belie its "David v. Goliath" caricature.

Equally false is Cirba's suggestion that VMware somehow ambushed Cirba.  The Court set an expedited trial at the very end of the August 6, 2019 hearing.  Within 48 hours of that hearing—and more than two weeks before its answer was due and before Cirba had even circulated a proposed case schedule—VMware alerted Cirba that it anticipated asserting counterclaims.  In other words, contrary to Cirba's "ambush" argument, VMware provided

1

advanced notice of its counterclaims.

Finally, Cirba's claims of prejudice do not support severance.  Cirba imagines a Hobson's choice—that it cannot effectively defend against VMware's two patents on the current schedule, but that any schedule expansion would harm it.  This false dilemma collapses due to the absence of irreparable harm, which the Court found in denying a preliminary injunction.

In truth, Cirba seeks to sever VMware's claims to avoid the real invention story—that VMware was not second, but first.  A single jury should hear the full story of who actually innovated (*i.e.*, VMware) and who actually is infringing (*i.e.*, Cirba).  Allowing only Cirba's claims to proceed first and before a different jury, by contrast, would unfairly prejudice VMware.  The Court should deny Cirba's severance motion.

## II.    NATURE AND STAGE OF PROCEEDINGS

**Cirba Files Suit.**  On April 25, 2019, Cirba initiated this litigation for alleged infringement of U.S. Patent No. 8,209,687 ("the '687 patent"), U.S. Patent No. 9,654,367 ("the '367 patent"), and the unregistered trademark (and verb) "densify."  (D.I. 1.)  Although Cirba knew of VMware's alleged patent infringement since at least September 2018, it provided no prior notice to VMware before filing suit.  (Hung Decl. Ex. 1 at 7.)

**Cirba's Unsuccessful Preliminary Injunction Motion.**  On May 6, 2019, Cirba moved to preliminarily enjoin VMware's sales of vRealize Operations ("vROps") versions 7.0 and 7.5, based on their alleged infringement of the '687 patent.  (D.I. 11.)  Cirba concurrently moved for expedited discovery (D.I. 16), which the Court granted (D.I. 38).  The parties then conducted six weeks of expedited discovery limited to VMware's alleged infringement of the '687 patent—but not on Cirba's alleged '367 patent infringement or trademark claims.

The Court heard Cirba's preliminary injunction motion on August 6, 2019.  (D.I. 137.)  In denying an injunction, the Court explained that Cirba had not shown irreparable harm.  (*See, e.g.*,

Aug. 6, 2019 Hr'g Tr. at 196:15-17 (Cirba "ha[d] failed to show it will suffer irreparable harm between now and trial."); 198:13-21 (noting Cirba's "crucial failing" on irreparable harm, as it had "offered no evidence showing that consumers purchase vROps 7 or 7.5 specifically for the allegedly infringing features as opposed to other features"); *see also id.* at 196:20-23; 199:17-20.)  The Court concurrently denied VMware's motion to dismiss the '687 patent as comprising patent-ineligible subject matter under 35 U.S.C. § 101.  (D.I. 137.)

The Court ordered an expedited trial at the conclusion of the preliminary injunction hearing, setting trial for January 13, 2019.  (Aug. 6, 2019 Hr'g Tr. at 202:25-203:3.)  The Court further ordered the parties to meet and confer on a case schedule for submission three days later, on August 9, 2019.  (*Id.* at 203:12-13.)

**VMware Promptly Asserts Its Counterclaims.**  Less than 48 hours later—and before Cirba circulated a draft schedule—VMware informed Cirba that it was "contemplating asserting multiple patents against Cirba in its Answer and Counterclaims."  (D.I. 156 Ex. A.)  VMware did so to allow Cirba to consider their impact "as [Cirba] prepare[d] [its] draft schedule."  (*Id.*)  Cirba ignored VMware's anticipated counterclaims, however, when it circulated its proposed schedule several hours later.  VMware's proposed schedule, by contrast, reflected its anticipated counterclaims.  (*See* D.I. 139.)

VMware's Rule 12(b)(6) motion tolled the deadline for its Answer under this District's precedent.  (D.I. 47 at 2 n.2.).  Accordingly, on August 20, 2019—the deadline for answering Cirba's Amended Complaint and asserting Rule 13 counterclaims, VMware asserted its counterclaims against Cirba.  (D.I. 150.)  VMware alleged that Cirba infringes U.S. Patent Nos. 8,875,266 ("the '266 patent"), 10,069,752 ("the '752 patent"), 8,336,049 ("the '049 patent"), and 9,521,151 ("the '151 patent").  (*See id.* Exs. 1-4.)

**Cirba Does Not Consider VMware's Alternatives.**  Cirba informed VMware of its intent to move to sever the counterclaims late in the afternoon on August 23, 2019 (Hung Decl. Ex. 2), and the parties met and conferred two business days later.  Although discovery had just begun on Cirba's '367 patent and its trademark claims (which were not the subject of expedited discovery), Cirba alleged that trying Cirba's claims and VMware's counterclaims on the same schedule would be prejudicial.  (*Id.* ¶ 4.)

During the parties' meet and confer, VMware proposed:  (i) limiting its counterclaims to the two VMware patents with the closest overlapping subject matter; and (ii) adjusting the schedule by a small amount (*e.g.*, 30 or 60 days) to avoid any claimed prejudice to Cirba.  (Hung Decl. ¶¶ 4, 5.)  Cirba dismissed both suggestions out-of-hand and filed its apparently already-finalized severance motion fifteen minutes later.  (*Id.*)

## III.   STATEMENT OF FACTS

### A.    The Overlapping Nature of Cirba's and VMware's Patents.

Cirba's '687 and '367 patents and VMware's '266 and '049 patents overlap:

- Cirba's '687 patent and VMware's '266 patent both involve software licensing compliance and virtual machines;

- Cirba's '367 patent and VMware's '049 patent both involve predictive analysis for virtual machines;

- VMware's '266 and '049 patents predate and therefore are prior art to Cirba's '687 and '367 patents, respectively; and

- All four patents involve (i) Cirba's "Densify" product and its Control Console and (ii) VMware's vROps product and DRS technologies as practicing or allegedly infringing products.

**Cirba's '687 patent**.  The '687 patent is entitled, "Method and System for Evaluating *Virtualized Environments*."  (D.I. 68 Ex. 12 (emphasis added).)  It claims priority to an August 23, 2007 application and issued on June 26, 2012.  (*Id.*)  The '687 patent explains that, "[e]ven

4

considering only the cost of having *redundant licenses*, removing even a modest number of servers from a large computing environment can save a significant amount of cost on a yearly basis." (*Id.* at 1:51-54 (emphasis added).)  It then notes that "business parameters," such as "*software licensing agreements*," can be evaluated when determining how to consolidate servers. (*Id.* at 7:47-51 (emphasis added).)  The asserted claims (*e.g.*, claim 7) refer to "rule sets pertaining to said technical, business and workload constraints to determine guest-host placements." (*Id.* at 38:67-39:2.)

Cirba has alleged that VMware's promotion of "*software license control* and workload optimization" infringes starting with vROPs v.7.  (D.I. 12 at 9 (emphasis added) (also referring to "host-level licensed-based enforcement").)  At the preliminary injunction hearing, Cirba made clear its position that the combination of vROPs v.7 with DRS and potentially Predictive DRS allegedly infringes.  (Aug. 6, 2019 Hr'g Tr. at 193:20-23 (giving Cirba "benefit of the doubt" and considering its position as accusing "vROPs . . . in conjunction with the DRS"); 150:10-15 (arguing that vROPs and DRS are integrated, as vROPs datasheet refers to "Predictive DRS").)

Finally, Cirba has alleged that its "Densify" product is marked with and practices the '687 patent.  (D.I. 68 ¶ 110.)  Cirba also asserted that the "Densify" product's alleged practice and VMware's alleged infringement of the '687 patent gives rise to lost profits.  (*Id.*)

**VMware's '266 patent**.  Like Cirba's '687 patent, VMware's '266 patent relates to software license compliance and virtual machines.  Its title, "System and Methods for Enforcing *Software License Compliance* with *Virtual Machines*," makes this clear.  (D.I. 150 Ex. 1 (emphasis added).)

VMware's '266 patent claims priority to a May 16, 2007 application and issued on October 28, 2014.  (*Id.*)  It is prior art to Cirba's '687 patent under at least 35 U.S.C. § 102(e)(2).

As VMware has explained in its Counterclaims, Cirba's "Software License Control" feature in its Densify.com SaaS service infringes the '266 patent.  (D.I. 150 ¶¶ 17, 22-33.)

**Cirba's '367 patent**.  The '367 patent is entitled, "System and Method for Determining and Visualizing Efficiencies and Risks in Computing Environments."  (D.I. 68 Ex. 16.)  It claims priority to an August 16, 2011 application and issued on May 16, 2017.  (*Id.*)

Cirba alleges that the combination of VMware's vROps product and VMware's Predictive DRS technology infringe the '367 patent by "provid[ing] predictive analysis and real-time information about problems."  (D.I. 68 ¶ 89.)  According to Cirba, this is because vROps "provides forecast data about predictable patterns of resource usage to Predictive DRS."  (*Id.*)  "Based on these predictable patterns, Predictive DRS [then] moves to balance resource usage among virtual machines."  (*Id.*)  Cirba alleges that VMware's Predictive DRS technology is "in material respects the same as a core Densify feature."  (*Id.* ¶ 54.)

Cirba alleges that its "Densify" product is marked with the '367 patent.  (*Id.* ¶ 120.)  Cirba also contends that the "Control Console" in its Densify product practices the '367 patent's asserted claims.  (*Id.* ¶¶ 51-52.)  Cirba further asserts that the "Densify" product's alleged practice and VMware's alleged infringement of the '367 patent gives rise to lost profit damages. (*Id.* ¶ 120)

**VMware's '049 patent**.  While Cirba accuses VMware's predictive technology of infringing, here, too, VMware was first.  The '049 patent is entitled, "Virtual Machine Utility Computing Method and System."  (D.I. 150 Ex. 3.)  As its Summary of the Invention explains:

> One or more embodiments of the present invention provide a virtual machine utility computing method and system that can *predict demand* and *automatically adjust computing resource usage to accommodate changes in such predicted demand* over time.

(*Id.* at 1:36-40 (emphasis added).)  The '049 patent was filed on February 5, 2009 and issued on

December 18, 2012.  (*Id.*)  It is prior art to Cirba's '367 patent under 35 U.S.C. § 102(b).

As VMware has explained in its Counterclaims, Cirba's "Control Console" feature in its Densify product infringes the '049 patent.  (D.I. 150 ¶¶ 53-62.)  Specifically, the Densify.com SaaS service uses predictive analytics to migrate or move virtual machines to different hosts or to right-size their CPUs or memories.  (*Id.* ¶ 54.)[1]

## B.    The Relevant Documents and Witnesses Also Overlap.

Because the practicing or accused products (*i.e.*, Cirba's Densify product and Control Console feature and VMware's vROps, DRS, and Predictive DRS technologies) and subject matter (*i.e.*, software license compliance and virtual machine utilization prediction) overlap, the relevant documents and witnesses do as well.

Cirba's and VMware's requests for production both seek specifications, release notes, guides, manuals, and source code and financial (*e.g.*, sales, cost, and pricing), marketing, and customer usage-related documents for vROps, DRS, and Densify.  (*See* Hung Decl. Exs. 3-4.) Pre-2007 prior art relating to software licensing compliance and virtual machines will be relevant to both Cirba's '687 patent and VMware's '266 patent, and pre-2009 prior art relating to predicting virtual machine demand will be relevant to both Cirba's '367 patent and VMware's '049 patent.  Financial information for the Densify product will be relevant both to Cirba's lost

---

[1] As noted, VMware has volunteered to sever its counterclaims on the '752 and '151 patents as a potential compromise.  (*See* Hung Decl. ¶ 4.)  VMware does not concede that these patents also do not involve overlapping subject matter.  The software-as-a-service (or "SaaS") embodiment of Cirba's Densify product (i) infringes VMware's '752 and '151 patents and (ii) relates to Cirba's '687 and '367 patents, as an allegedly practicing embodiment.  The '151 patent further rebuts Cirba's allegations of harm.  The '151 patent, which VMware obtained via its acquisition of CloudHealth, relates to optimizing virtual machines in the public cloud.  Cirba has conceded that this represents the future—and that Cirba lags in this area.  (Aug. 6, 2019 Hr'g Tr. at 72:21-24 ("The cloud is where the future is."); 162:18-24 ("[T]oday, we don't include the host-based placement for that type of public cloud.").)  VMware intends to pursue the voluntarily severed claims and will request an appropriate case schedule to bring them to trial as soon as possible.

profits claim and to quantifying the harm to VMware from Cirba's infringement.

Regarding witnesses, both parties' initial disclosures identify Cirba's Chief Technology Officer, Andrew Hillier, and its President, Riyaz Somani, as knowledgeable about Cirba's products that allegedly practice its '687 and '367 patents.  (Hung Decl. Ex. 5 at 3-4, Ex. 6 at 2.)  As these same products infringe VMware's '266 and '049 patents, Messrs. Hillier and Somani also have relevant testimony about how Cirba's products satisfy the requirements of VMware's patents.

VMware's initial disclosures further identify (i) VMware Technical Marketing Architect Niels Hagoort as knowledgeable about "DRS and VMware's patented technology" and (ii) VMware Senior Director of Product Management Chandra Prathuri and VMware Product Manager Sunny Dua as knowledgeable about the "design, development, implementation, and functionality" of VMware's products.  (Hung Decl. Ex. 6 at 3.)  All three witnesses have relevant knowledge about VMware's vROps and DRS products, both for non-infringement purposes and in relation to their practicing VMware's patents.

## IV.   ARGUMENT

The first rule of civil procedure is that all rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  That mandate applies to severance motions under Rule 21:  in "deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just and final disposition of the litigation."  *In re Innotron Diagnostics*, 800 F.2d. 1077, 1084 (Fed. Cir. 1986) (citing 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2388 (1971)).

When making this discretionary assessment, courts consider several interrelating factors,

including:  "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2015 WL 6134052, at *2 (W.D. Pa. Oct. 16, 2015) (internal quotation and citation omitted); *see also* D.I. 156 at 6. Severance is warranted only in "exceptional circumstances." *A&E Prods. Grp. L.P. v. Accessory Corp.*, No. 00 Civ. 7271, 2002 WL 86556, at *2 (S.D.N.Y. May 22, 2002).  As the movant, Cirba bears the burden of establishing that severance is warranted.  *See Aspen Tech., Inc. v. Kunt*, No. 4:10-cv-1127, 2011 WL 86556, at *3 (S.D. Tex. Jan. 10, 2011).

Cirba has failed to carry its burden to show that exceptional circumstances warrant severing VMware's claims.  The efficiencies gained from simultaneously adjudicating the overlapping factual and legal issues alone warrant denial of the severance motion.  Separate trials would unfairly prejudice VMware, as it would hinder VMware's ability to present the full story—*i.e.*, that it was first with both software license compliance and predicting virtual machine workloads, that it obtained patents on those technologies, and that Cirba infringes them. Denying severance, by contrast, will conserve party and judicial resources and would not prejudice Cirba.

### A.      Judicial Economy Is Best Served by *Not* Severing.

Cirba's motion ducks the central issue:  whether severing VMware's counterclaims will sacrifice significant efficiencies.  Cirba concludes, without explanation, that there would be "no judicial economy by trying these cases together" because the parties' infringement claims and products, witnesses, and documents "are factually and legally distinct."  (D.I. 156 at 10, 12.)  But even a cursory examination of the patents, the accused products, and the likely witnesses reveals

otherwise:

- Cirba's '687 patent and VMware's '266 patent both involve software licensing compliance and virtual machines;

- Cirba's '367 patent and VMware's'049 patent both involve predictive analysis for virtual machines;

- Cirba's "Densify" product allegedly practices its '687 patent—but also infringes VMware's '266 patent;

- Cirba's "Control Console" feature alleged practices its '367 patent—but also infringes VMware's '049 patent;

- VMware's '266 patent predates Cirba's '687 patent by several months and thus qualifies as prior art;

- VMware's '049 patent predates Cirba's '367 patent by two years and thus qualifies as prior art;

- Messrs. Somani and Hillier are likely key witnesses for Cirba and VMware regarding Cirba's Densify product, whether for infringement or non-infringement purposes;

- Messrs. Hagoort, Prathuri, and Dua are likely key witnesses for Cirba and VMware regarding VMware's vROps product and Predictive DRS and DRS technologies, whether for infringement, non-infringement, or invalidity purposes; and

- Financial, marketing, and technical documents (*e.g.*, source code) for Cirba's Densify product and its Control Console feature and VMware's vROps product and Predictive DRS and DRS technologies will be relevant to both parties' claims and counterclaims.

Focusing on Cirba's "Densify" product alone underscores the commonalities between Cirba's claims and VMware's counterclaims. That product will feature prominently in Cirba's affirmative case (as an allegedly practicing product for the '687 and '367 patents) and in VMware's infringement case (as an infringing product for the '266 and '049 patents).

The same evidence relating to its "Densify" product's costs, pricing, sales, marketing, and use also will feature prominently in both parties' damages cases. To prove lost profits for its '687 and '367 patents, Cirba will need to show that it "sell[s] products sufficiently similar [to

VMware's] to compete against each other in the same market segment." *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) (internal quotation and citation omitted).  Cirba then must establish (1) demand for its "Densify" product, including its software license control feature; (2) absence of acceptable non-infringing substitutes to its "Densify" product; (3) manufacturing and marketing capability to exploit the demand for its "Densify" product; and (4) the amount of the profit it would have made on its "Densify" product had VMware not allegedly infringed.  *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).  VMware will point to that same evidence to show that Cirba's Densify product and its "Control Console" feature have harmed VMware by infringing the '266 and '049 patents.

Cirba next implies that the parties' patents implicate substantially different timeframes. (D.I. 156 at 5.)  This is demonstrably false, as the priority date for VMware's '266 patent predates Cirba's '687 patent by a matter of months.  And any prior art for VMware's '049 patent (filed in 2009) also may be applicable to Cirba's '387 patent (filed in 2011).

Equally false is Cirba's suggestion that the parties' claims and counterclaims are at different stages of discovery.  (D.I. 156 at 10-11.)  Cirba omits that expedited discovery during the preliminary injunction proceedings was limited to its '687 patent.  As for Cirba's '367 patent and its trademark claims, discovery on those has just begun.  The parties therefore stand on equal footing as to discovery relating to those claims and VMware's counterclaims.

### B.     A Two-Patent v. Two-Patent Case Is Not Unusually Complex, and Courts Routinely Allow Such Claims to Proceed Together to Trial.

Arguing undue "complexity" and the potential for "jury confusion" (D.I. 156 at 12-14), Cirba repeatedly asserts that allowing VMware's counterclaims will "triple the size and complexity" of the case (*id.* at 1, 8).  This is false.  VMware has already volunteered to sever its

'752 and '151 patents from this case and to limit its offensive counterclaims to the two most

closely-related patents.  (*See* Hung Decl. ¶ 4.)  The overlapping nature of Cirba's '687 and '367

patents and VMware's '266 and '049 patents minimizes the possibility of jury confusion.

Cirba suggests that courts routinely sever a defendant's counterclaims in situations such

as this.  As noted above, however, severance is the exception, not the rule.  *See A&E Prods.*,

2002 WL 1041321, at *2.  This Court and others have denied severance where the parties' claims

and counterclaims substantially overlap, as here.  *See, e.g.*, *Fairchild Semiconductor Corp. v.*

*Power Integrations, Inc.*, No. 12-cv-540 (D. Del. Apr. 15, 2015), D.I. 295 at 5-8 (denying motion

to sever and stay one patent involved in reexamination proceedings, and allowing eight-patent

case (four from plaintiff, and four from defendant) to proceed) (Hung Decl. Ex. 7); *Spellbound*

*Dev. Grp., Inc. v. Pac. Handy Cutter, Inc.*, No. 09-cv-951, 2011 WL 1810961, at *4 (C.D. Cal.

May 12, 2011) (denying severance because "[t]wo separate trials w[ould] be unduly consumptive

of the Court's and the parties' resources"); *Garmin Ltd. v. TomTom, Inc.*, No. 06-c-0062, 2006

WL 3377487 at *1 (W.D. Wis. June 15, 2006) (denying motion to stay or sever defendant's

counterclaims).

Cirba's disparate authorities are not to the contrary.  They involved:

(i)     Non-overlapping patents and defendants (*see, e.g.*, *CVI/Beta Ventures,*
        *Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 507 (D. Md. 1995)
        (counterclaim involved only one of four plaintiffs, and four parties had
        "no interest in the . . . [c]ounterclaim at all"));

(ii)    Many, many more patents (*see, e.g.*, *LG Elecs., Inc. v. Toshiba Samsung*
        *Storage Tech. Korea Corp.*, No. 12-cv-1063 (D. Del.) (D.I. 156 Ex. C)
        (16-patent case absent severance); *Siemens Indus., Inc. v. Westinghouse*
        *Air Brake Techs. Corp.*, No. 16-cv-284 (D. Del.) (D.I. 156 Ex. B) (same);
        *Comcast IP Holdings I LLC v. Sprint Commc'ns Co. LP*, No. 12-cv-205
        (D. Del.), D.I. 33 (D.I. 156 Ex. D) (12-patent case absent severance));

(iii)   No patent claims at all (*see, e.g.*, *Turner Constr. Co. v. Brian Trematoro*
        *Plumbing & Heating, Inc.*, No. 07-666 (WHW), 2009 WL 3233533
        (D.N.J. Oct. 5, 2009)); or

12

(iv)   Related or identical proceedings in other forums (*see, e.g.*, *Gen. Tire & Rubber Co. v. Jefferson Chem. Co.*, 50 F.R.D. 112, 115 (S.D.N.Y. 1970) (severing counterclaim and transferring it to another district, where virtually identical proceedings were ongoing); *Kraft Foods Holdings, Inc. v. Procter & Gamble Co.*, No. 07-cv-613, 2008 WL 4559703, at *3 (W.D. Wis. Jan. 24, 2008) (same)).

## C.   Prejudice Favors *Not* Severing VMware's Counterclaims.

### 1.   This Court has already rejected Cirba's claim of irreparable harm.

Cirba insists that severance is necessary because it has "made a compelling showing that it faces a variety of material harms every day." (D.I. 156 at 1.) But this Court has already rejected this argument. In denying Cirba's preliminary injunction motion, the Court repeatedly observed that Cirba had *not* shown that it was suffering irreparable harm. (*See, e.g.*, Aug. 6, 2019 Hr'g Tr. at 196:15-17; 196:20-23; 198:13-21; 199:17-20.)

For example, in response to the Court's questioning, Mr. Somani readily conceded his lack of surprise that VMware's customers were *not* using the accused host-based placement feature. (*Id.* at 184:5-13.) He also acknowledged that customers could take "6 to 12 months [just] to evaluate" the feature, but without deploying it. (*Id.*; *see also id.* at 184:5-186:22.) Also in response to the Court's questioning, Cirba's counsel asserted that another company, Turbonomic, is infringing the '687 patent, but has not been sued. (*Id.* at 135:19-24.) Nothing about these facts—or Cirba's lack of harm—has changed since the hearing.

### 2.   Cirba's Hobson's choice is a false dilemma.

Unable to point to new evidence of harm, Cirba claims it must keep "this case on track" to avoid prejudice. (D.I. 156 at 1.) But Cirba does not explain why this is so or why it would be impossible to keep Cirba's claims and VMware's counterclaims on the same schedule.

Instead, Cirba posits a Hobson's choice—that it must either "litigate VMware's counterclaims at an unreasonable pace[,] or [ ] seek an extension of the trial date and suffer the

continuing harm of VMware's infringement." (*Id.* at 8.)  This is a false dilemma of Cirba's own contrivance.

Cirba has set the pace for this litigation from day one.  It filed its Complaint with no prior notice to VMware.  It then moved for a preliminary injunction and sought expedited briefing with no notice to VMware.  Having pressed for (and forced) expedition of its offensive patent case on VMware, Cirba cannot now be heard to complain that defending against an equal number of VMware patents would somehow be unfair.  As noted above, Cirba would not stand on worse footing than VMware if the cases were tried together, as discovery on Cirba's '367 patent and its trademark infringement claims has just begun.[2]

Regardless, VMware has offered to accommodate Cirba's alleged concerns.  During the parties' meet and confer, VMware offered to pare its patent case to the two most closely-related patents.  (Hung Decl. ¶ 4.)  VMware also offered to extend the case schedule by as little (or as much)—whether 30, 45, or 60 days—as is necessary for Cirba to prepare its defenses and also to minimize its alleged harm.  (*Id.* ¶ 5.)  Cirba rejected VMware's proposal out-of-hand and filed its pre-written severance motion minutes later.

### 3. Cirba is not "David" to VMware's "Goliath," and VMware did not wait until the "11th hour"

Cirba tries to buttress its weak legal arguments with appeals to emotion and sympathy to justify severance.  Cirba alleges that "VMware has essentially limitless resources," that Cirba is "much smaller," and that VMware is trying to "bully its way out of the current schedule."  (D.I.

---

[2] Cirba's desire for expedition is one-way.  It has delayed meeting and conferring (or simply refused) and dragged its feet when inconvenient for it.  For example, despite insisting that the Court order two source code machines, Cirba inexplicably declined to show up for the first three days of scheduled source code review—and then sent a lone reviewer for the last two days. (Hung Decl. Ex. 8.)  Cirba also still refuses to agree on a schedule for logging its pre-suit communications with counsel, even though the Default Standard for Discovery requires it.  (*Id.* Ex. 9.)

156 at 1.)  Uncertain that a single appeal to emotion and sympathy will carry the day, Cirba repeats it twice.  (*See id.* at 8-9 ("VMware has essentially limitless resources . . . ," "[T]ripling the size of the case on the same schedule is tantamount to bullying Densify to capitulate," "A small company like Densify . . . ," and "allowing VMware to use its size and superior resources . . .").)

But this is no David v. Goliath case.  Cirba's army of lawyers spanning three different law firms and thirteen attorneys of record (to date) contradict its claims that its "much smaller" size prevents it from mounting a defense.  And as a public company with budgetary constraints and responsibilities to its shareholders, VMware certainly does not have "essentially limitless resources."  While Cirba repeatedly tries to cast VMware as a "bully," it was Cirba who initiated this litigation and sought a preliminary injunction and expedited discovery without prior notice.

Having brought this fight, Cirba cannot credibly argue that allowing VMware to mount its own offense—on the same schedule as Cirba's offensive claims—would be inequitable. Cirba apparently believes that the only "fair fight" is one in which it has all of the tactical advantages, even if those advantages waste judicial resources and prevent VMware from fully presenting its prior invention story.

Equally baseless are Cirba's repeated assertions that VMware waited until the "11th hour" to bring its counterclaims.  (D.I. 156 at 1, 8.)  Neither party sought the Court's expedited trial schedule, which it ordered at the very end of the preliminary injunction hearing.  Yet within 48 hours of the Court's trial setting—and twelve days before its Answer was due, VMware informed Cirba that it anticipated asserting "multiple patents" as counterclaims when answering. (D.I. 156 Ex. A.)  VMware volunteered this information even before Cirba circulated its proposed case schedule on August 8.  VMware's advance notice stands in stark contrast with

Cirba's repeated lack of notice in this litigation.

### 4.   Severance would prejudice VMware.

As Cirba has made clear in its Amended Complaint, VMware's alleged "copying" will factor heavily into its case presentation.  (*See, e.g.*, D.I. 68 ¶ 5 ("Rather than innovating on its own, VMware has systematically copied Densify's technology. . . . VMware's infringement has gradually increased over time, copying more and more of the features of Densify's product . . . ."); *id.* ¶ 97 ("Densify has brought this action to stop VMware from using copied technology to take customers from Densify.").)  Cirba apparently intends to offer this "copying" theme not only generally, but as to specific features such as Predictive DRS.  (*See, e.g.*, *id.* ¶ 54 ("VMware also released 'predictive DRS' that was in material respects the same as a core Densify feature that VMware knew about and copied").)

These allegations are untrue, and the two VMware patents that VMware proposes to keep in this case will help VMware to prove this.  The '266 and '049 patents not only relate to the same subject matter (software license compliance and prediction), but predate both of Cirba's patents.  They therefore will help VMware present the true facts—that it was first, that it patented these ideas first, and that Cirba is the real copyist and infringer.  *See Spellbound Dev. Grp.*, 2011 WL 1810961, at *4 (recognizing prejudice to defendant from two trials).  Particularly because that story involves the same witnesses and documents as for Cirba's affirmative case, VMware should be permitted to present it.

To be sure, VMware could address the questions of prior invention and independent development as part of its defense to Cirba's liability case.  But as the adage puts it, "the best defense is a good offense."  VMware's chances for a fair outcome at the upcoming trial are enhanced if the jury sees VMware asserting its patents against Cirba rather than challenging the presumption of validity against a clear and convincing evidence burden.

16

**CONCLUSION**

VMware did not start this fight.  But it has every right to defend itself, including bringing counterclaims designed to counter the patent claims and themes that Cirba has made clear it intends to pursue.  When it filed its lawsuit, Cirba could not have expected that the litigation would be fought only on its terms.  VMware deserves to have this case heard on an equal playing field, which includes being permitted to pursue closely related counterclaims.

Cirba, which bears the burden of demonstrating otherwise, has failed to do so.  Its pre-prepared brief does not address the overlapping nature of the parties' claims and counterclaims, VMware's proposal to reduce its patents in this action, and VMware's offer to a case adjustment of any size to meet Cirba's alleged concerns.  Because denying severance would not harm Cirba, but granting severance would prejudice VMware by foreclosing the real invention story and its rebuttal to Cirba's "copyist" theme, VMware urges the Court to deny Cirba's motion.

Dated: September 3, 2019

OF COUNSEL:                                        YOUNG CONAWAY STARGATT &
                                                  TAYLOR, LLP
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street                                 /s/ Anne Shea Gaza
San Francisco, CA 94105                           _____
(415) 268-7000                                    Anne Shea Gaza (No. 4093)
mjacobs@mofo.com                                  Samantha G. Wilson (No. 5816)
rhung@mofo.com                                    Rodney Square
                                                  1000 North King Street
                                                  Wilmington, DE 19801
Bita Rahebi                                       (302) 571-6600
MORRISON & FOERSTER LLP                           agaza@ycst.com
707 Wilshire Boulevard                            swilson@ycst.com
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com                                  *Attorneys for VMware, Inc.*


Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
(303) 592-2204
sllewellyn@mofo.com


25128732

## CERTIFICATE OF SERVICE

I, Anne Shea Gaza, hereby certify that on September 10, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Kenneth L. Dorsney, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
*kdorsney@morrisjames.com*

*Attorney for Plaintiffs*

I further certify that on September 10, 2019**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following:

Courtland L. Reichman, Esquire
Shawna L. Ballard, Esquire
Jennifer Estremera, Esquire
Michael G. Flanigan, Esquire
Joachim B. Steinberg, Esquire
Kate Falkenstien, Esquire
Ariel C. Green, Esquire
Reichman Jorgensen LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA  94065

Sarah O. Jorgensen, Esquire
Reichman Jorgensen LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309

Christine E. Lehman, Esquire
Reichman Jorgensen LLP
1615 M Street, N.W., Suite 300
Washington, DC 20035

Jaime F. Cardenas-Navia, Esquire
Wesley Lanier White, Esquire
Reichman Jorgensen LLP
100 Park Avenue, Suite 1600
New York, NY 10017

*RJ_densify@reichmanjorgensen.com*

Gary J. Toman, Esquire
Weinberg Wheeler Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
*gtoman@wwhgd.com*

*Attorneys for Plaintiffs*

Dated:  September 10, 2019

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
*agaza@ycst.com*
*swilson@ycst.com*

*Attorneys for Defendant*

2