# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a DENSIFY)
and CIRBA IP, INC.,

              Plaintiffs,

   v.

VMWARE, INC.,

              Defendant.

C.A. No. 19-742-LPS

███████████████

## JOINT INTERIM STATUS REPORT

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

**ATTORNEYS FOR VMWARE, INC.**

Kenneth L. Dorsney (#3726)
Morris James LLP
kdorsney@morrisjames.com
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800

**ATTORNEYS FOR CIRBA INC.
(D/B/A DENSIFY) AND CIRBA IP, INC.**

Pursuant to Paragraph 16 of the September 9, 2019 Scheduling Order (D.I. 174),

Plaintiffs Cirba Inc. (d/b/a Densify) and Cirba IP, Inc. (collectively "Densify") and Defendant

VMware, Inc. ("VMware"), through undersigned counsel, hereby submit the following Joint

Status Report addressing the status of discovery in the above-captioned litigation:

## I.     DISCOVERY

### A.  <u>Densify's Position:</u>

#### 1.  Core Documents

The deadline for substantial completion of document production was October 4, 2019,

however, Densify has not yet received core discovery necessary to make its case at trial.  Densify

appreciates that producing the volume of documents that must be produced to achieve substantial

completion presents challenges for both parties on an expedited schedule, but there are certain

core documents that VMware should have identified and produced well before the deadline.  Its

failure to produce these documents substantially impairs Densify's ability to prepare its case for

trial.  Although VMware argues most of these issues are "unripe," Densify has corresponded and

spoken with VMware about these issues for over a week, only three weeks of discovery remain

under the current schedule, and VMware *still* has not promised to complete production by a

specific date given that it already missed the date (Oct. 4, 2019) assigned by the Court.

Accordingly, Densify has no choice but to seek relief.  The categories of core documents still

missing are as follows:

#### a.  Key Technical Documents

VMware has not produced key technical documents relating to DRS and products that

interoperate with DRS and vROps.  At the September 19, 2019, hearing, this Court directed

VMware to produce these documents.  For example, on October 8, 2019, Densify identified

1

missing source code documentation for DRS and products that interoperate with DRS and vROps (like vCenter, vSphere, and others).  VMware produced very little technical documentation for the Accused Products that describe the operation of structure of the source code, only producing VMware wiki pages for some, but not all, products (six documents); architectural designs (five documents); and class/sequence diagrams (4 documents). VMware still has not completed production of these key documents despite promises to do so.  VMware's failure to produce documents, following direct promises during meet and confers, concerning DRS and the products that interoperate with DRS and vROps has substantially impaired Densify's discovery efforts. Densify asks that this Court again order VMware to produce these core technical documents immediately.

   **b.  Production from VMware's Designated Top 10 Custodians for DRS: Niels Hagoort**

   How DRS operates has been an issue in this case from the beginning, as VMware acknowledged at the September 19, 2019, hearing. On September 6, 2019, VMware identified Niels Hagoort as its custodian relating to DRS in its Rule 26 disclosures. In fact, Mr. Hagoort is the *only* custodian specifically identified for DRS issues. Nevertheless, VMware produced only *two* documents from Mr. Hagoort by the substantial completion deadline of October 4, 2019, *three* documents on October 10, 2019, and 555 documents on October 14, 2019. The universe of responsive documents concerning DRS simply cannot be limited to the 560 documents that VMware produced from Mr. Hagoort.  Although VMware points to production of documents from other custodians who were not specifically designated for DRS issues, this in no way excuses VMware's deficient production from Mr. Hagoort, the top 10 custodian who was specifically identified for DRS issues.  Densify asks that VMware be required to explain its search of Mr. Hagoort's documents to date, collect additional responsive documents not captured

with its inadequate search terms, and produce all responsive documents immediately or, if he has

no further responsive documents, for VMware to immediately produce responsive documents

relevant to DRS from a custodian that is in fact a custodian most likely to have discoverable

information.

### c.  Inadequate Collection and Review of VMware Documents

On September 24, 2019, Densify told VMware its 12 search terms were grossly

inadequate to capture the universe of responsive documents in this case.  For example,

VMware's search terms did not include a single customer name.  They contained overly

restrictive limits on key terms like DRS and vROps.  The sole term for "license compliance" was

limited to 2015 and had to also discuss *VMware's* asserted patents.  VMware did not provide a

single term for host-based placement.  Finally, whereas Densify performed over 100 searches to

locate documents, VMware offered only 12, two of which were for their counterclaims.  In

response to these complaints, on September 24, 2019, VMware told Densify that it had

"collected potentially responsive documents without the use of ESI search terms and is

reviewing those documents on a document by document basis for responsiveness."  Densify

understood this straightforward statement to mean VMware was, in fact, collecting potentially

responsive documents without the use of its inadequate ESI search terms and performing a

document-by-document review of the documents it collected.  Accordingly, Densify did not

pursue its concerns regarding VMware's inadequate ESI search terms any further.

On October 11, 2019, after realizing the volume of produced documents from Mr.

Hagoort was abnormally low (*i.e.*, five documents at that time), Densify raised its concerns with

VMware.  In response, at 10:05PM PST on October 15, 2019, VMware informed Densify that it

had collected and reviewed documents from Mr. Hagoort based on ESI search terms—*i.e.*, the

same grossly inadequate search terms that VMware had said were not particularly relevant

because it was performing a document-by-document review *without* the use of search terms except in limited circumstances.[1]  When Densify asked whether VMware had used its inadequate search terms to collect documents for other custodians, VMware provided a list of the same grossly inadequate search terms plus the three additional searches that Densify provided under the ESI order.

Now, for the first time, in its insert for this Joint Status Report sent at 12:13PM ET today, VMware has informed Densify that its September 24, 2019 statement was false.  VMware did not collect documents without the use of ESI search terms.  VMware did not perform a document-by-document review.  Instead, VMware relied on ESI search terms that were grossly inadequate and did not account for Densify's RFPs.  VMware has offered to *consider* additional searches at Densify's request, but that is far too little and too late.  Densify is willing to provide additional search terms, but the likely volume of documents that will stem from such a production given VMware's obviously inadequate collection so far requires a greater remedy.

### d.  Critical Financial Information

VMware has not completed production of critical financial information relevant to its damages case for any product other than vROps—*i.e.*, DRS and the products that interoperate with DRS and vROps like vSphere, vCenter, vRA, vRO, vCloud Suite, vRealize Suite, and VMware Cloud Foundation. Indeed, even as to vROps, VMware has not produced cost data or profit reports.  Thus, on October 8, 2019, Densify identified the following categories of documents which were, for the most part, missing from VMware's production: financial projections, development costs, bookings and units sold, service and support data, revenue

---

[1] VMware also informed Densify that it had applied the three additional searches Densify was able to submit under the Court's ESI order.

reports, profit reports, and conjoint analyses concerning the Accused Products and Features.

VMware still has not completed production of these documents and has not provided a date

certain for when it will.  For example, VMware has not yet produced cost or profit information

for any Accused Product and has only provided bookings, units sold, revenue for limited time

periods for vROPs, vCloud and various vRealize products but not the other Accused Products.

### e.  Critical Damages Information

VMware has not completed production of critical information related to damages for any

product other than vROps.  On October 8, 2019, Densify identified the following categories of

documents which were also, for the most part, missing from VMware's production to-date:

- – Conjoint analyses, studies, and research regarding the Accused Products and Features;
- – Surveys regarding the Accused Products and Features, including all raw data; and
- – Complete telemetry data regarding purchase and use of the Accused Products and Features (vROps, DRS, vCenter, and others), including all raw data[2].

Despite multiple email exchanges and meeting and conferring, VMware has only identified a

handful of documents and promised to produce the rest at some unspecified future date. VMware

could have provided this basic information in its interrogatory responses but did not. Indeed, for

most of VMware's interrogatory responses, it has relied on Rule 33(d) without specifying any

documents.[3]  VMware's failure to complete production of these documents has substantially

---

[2] VMware claims that Densify raised this issue for the first time in this Joint Status Report.  Not so.  Densify asked VMware to confirm production of its telemetry information on October 11, 2019.  Thereafter, VMware responded on October 14, 2019 by identifying telemetry information that it had produced and promising to produce the rest on some unspecified future date.

[3] VMware seems to argue in its response that Densify's agreement that both parties supplement their interrogatory responses to identify documents according to Rule 33(d) tomorrow (Oct. 18, 2019) somehow constitutes an agreement that VMware need not *produce* documents until that date.  That is not reflective of Densify's meet and confer with VMware.  No such agreement was ever reached.

impaired Densify's discovery efforts.  Densify asks that VMware be required to produce these

damages documents immediately.

### f.   Foreign Customer and Financial Information

VMware has not produced financial and customer data for foreign sales of the accused

products.  Densify requests discovery on this information under *WesternGeco LLC v. Ion*

*Geophysical Corp.*, 138 S. Ct. 2129 (2018), and its progeny.  Densify asks that VMware be

required to produce this financial information immediately.

### 2.   Substantial Completion of Document Production

The deadline for substantial completion of document production was October 4, 2019.

Densify met this deadline by producing 279,970 documents – or 92% of the documents it has

produced to date.[4]  Thereafter, Densify produced an additional 22,811 additional documents.[5]  By

contrast, VMware did not meet the substantial completion deadline. VMware produced 54,055

documents before October 4, 2019. VMware produced an additional 95,164 documents after the

substantial completion deadline, including 40,378 documents this week.  VMware only produced

about 36% of its documents produced thus far by the substantial completion deadline.

Moreover, and critically important as we prepare for depositions, VMware has refused to

say whether it has substantially completed its production. It seems that VMware's production of

149,219 documents (albeit mostly after the deadline) cannot be the universe of relevant and

---

[4]  VMware complains that Densify's production contains nonresponsive documents.
Densify took the Court's deadline seriously and met the deadline for substantial completion of
documents, giving VMware adequate time for case preparation.  In the context of electronic
production, the inclusion of some nonresponsive documents will not prejudice VMware.

[5]  In addition to straggler documents, as Densify completes its privilege log review,
additional documents might be downgraded and produced. Densify has not withheld enough
documents for the downgrades to change the fact that it substantially completed production by
October 4, 2019.

responsive documents in this case.  VMware's production is less than half of Densify's, yet VMware is 125 times bigger and the VMware unit responsible for vROps alone is almost ten times the size of Densify, not even mentioning the unit responsible for DRS and the products that interoperate with DRS and vROps.  The discrepancy in production size is conspicuous.

In sum, Densify is missing the core technical and damages documents mentioned in the preceding section, most of VMware's production has come after the substantial completion deadlines, VMware has just admitted that it did not do the document-by-document collection it had said it was doing and instead relied on wholly inadequate search terms and productions from their identified top-ten custodians, and VMware still has not verified it is substantially complete with production (and the volumes of documents suggest it is not) or when it will do so.  Every day is precious with deadlines so tight – indeed, fact discovery closes in three weeks (November 6), and Densify must review documents and take ten or more depositions during this time.  VMware's late production has taken away most of its time to digest documents in preparation for depositions.  While VMware's foot-dragging is prejudicing Densify, Densify's timeliness has more than enabled VMware to prepare for depositions, draft expert reports, and prepare final contentions.  Accordingly, in an attempt to address these production shortfalls, Densify respectfully requests that the Court order as follows:

1) VMware substantially complete its production no later than October 23, 2019 (i.e., *more than* a two-week extension of the substantial completion deadline);

2) The deadline for Densify to depose VMware's fact witnesses be extended by twelve days to November 18, 2019 (VMware's deadline remains November 6, 2019);

3) The deadline for Densify's initial expert reports be extended by twelve days, to November 20, 2019 (VMware's deadline remains November 8, 2019);

4) The deadline for Densify's final infringement contentions be extended by two weeks to November 11, 2019 (VMware's deadline for invalidity contentions remains November 4, 2019).

### 3.   VMware's Complaints

Preliminarily, VMware scrambled to manufacture disputes yesterday afternoon.  Thus, at 12:08PM ET, VMware sent Densify a lengthy email about supposed "issues" it had not raised previously, and which do not, in any way, threaten to derail VMware's discovery efforts in this case.  Densify has not met and conferred with VMware about the majority of these issues.  In any event, they are summarily addressed as follows.

### a.   Depositions of Raghu Raghuram and Pat Gelsinger:

Densify has requested the depositions of Raghu Raghuram and Pat Gelsinger because

As for Raghu Raghuram,

.

VMware's suggestion that the depositions are not warranted is belied by the production data.  By way of example, based on searches, Raghu Raghuram is mentioned in 5,211 of

VMware's production documents and Pat Gelsinger is mentioned in at least 2,067 of VMware's production documents. In comparison, Niels Hagoort -- a person listed by VMware as number seven of its top ten ESI custodians -- is only mentioned in 439 of VMware's production documents and is a custodian for only 560 of VMware's production documents.

### b.   Densify's Infringement Contentions:

Densify has supplemented its initial infringement contentions twice in response to VMware demands in an effort to keep discovery moving expeditiously because VMware unilaterally refused to provide various categories of discovery until Densify did so.  Densify's supplemental contentions specifically address VMware's complaints.  For example, VMware's complaint that claim 3 for the '687 patent merely cross-references other claims and does not address "mapping" is incorrect.  The "screenshots" VMware complaints of are images of VMware documentation showing how their products meet this feature, as shown in the image below from the claim chart for claim 3 and the "mapping" claim limitation:



### c.   Densify's Conception Dates:

Densify has provided all available information it has regarding the conception dates of the Asserted Patents, which is that the inventions were conceived of shortly before the provisional applications were filed.  Densify is not withholding any information, there is simply no specific date before the filing of the provisionals that Densify is able to pinpoint based on all of the available evidence.  VMware has already noticed both inventors for deposition as well.

### d.   Densify's Alleged Violation of Rule 34:

VMware raised this objection for the first time yesterday.  Yet, Densify discussed its production scope in numerous meet and confer conversations in which Densify informed VMware's counsel of what it was producing.  Further,  Densify met the substantial completion production deadline, meaning VMware has had an opportunity to review Densify's production.

### e.  Cirba's Witnesses

VMware is basically asking Densify to identify its trial witnesses long before any such trial witness disclosure is due.  Densify is willing to serve a revised Rule 26 disclosure that narrows the number of Densify employees listed in order to reduce the burden of depositions on both parties.

### B.  VMware's Position:

VMware agrees that the parties currently have several potential and pending discovery disputes.  VMware disagrees, however, that all are ripe for the Court's consideration.  Issues on which the parties have affirmatively stated that they do not intend to produce further information are ripe for the Court to resolve.  Where the parties have indicated that they intend to produce further information, they are not ripe.

Cirba has repeatedly demanded immediate meet and confers on its issues.  But after those issues apparently have been resolved amicably during those meet and confers by VMware's statements that it would produce documents as soon as possible, Cirba has brought them to the Court's attention anyway without first informing VMware that there was an active dispute.  This is true of the issues that Cirba raises in this report, the first draft of which Cirba circulated for the first time yesterday afternoon, despite VMware's multiple requests that Cirba circulate a draft earlier.  VMware nevertheless sets forth its view on the ripe disputes and responds to Cirba's

various other issues.[6]

### 1. Disputes Ripe for Resolution

### a. Cirba's Infringement Contentions

Cirba has indicated that it does not intend to provide further clarification of its

infringement contentions.  Cirba has served three sets of infringement contentions asserting 19

claims between the 2 asserted patents.  Despite having analyzed VMware's products, source

code (including the full vSphere source code), and documents for months, Cirba still has not

provided the detail necessary for VMware to understand what exactly is accused.

As one example, Cirba's infringement contentions frequently provide screenshots without

explaining how they relate to the claim limitation at issue (if at all).  As another example, Cirba's

infringement allegations for claim 3 of the '687 patent merely cross-reference its allegations for

other claims, even though claim 3 has unique limitations regarding "conversion from one

virtualized platform to another virtualized platform" (e.g., "providing a mapping from said one

[virtualized] platform to said another [virtualized] platform.").  The screenshot Cirba reproduces

above has nothing to do with virtual platform conversions. Just because VMware' documents use

the word "map," it does not mean that VMware's products meet this limitation.  As yet another

example, Cirba's infringement allegations for the '367 patent do not tie any of the alleged

"operational policies" to the computation of a "score," as all asserted claims require.  Although

VMware has called these (and other) deficiencies to Cirba's attention, Cirba has refused to

clarify its contentions any further.

VMware is concerned that, as in the preliminary injunction proceedings (where Cirba

---

[6] Copies of the pertinent discovery materials will be provided upon request or in conjunction with the Court's discovery dispute procedures.

shifted its theory from vROps to vROps + DRS to DRS), Cirba intends to withhold its actual

theory or change it again in Dr. Madisetti's expert report. Because understanding Cirba's

infringement theories is essential to VMware's ability to adequately prepare its non-infringement

and invalidity defenses, VMware submits that Cirba should be required to clarify its positions

immediately. Given the expedited schedule here, Cirba should not be permitted to sit on its

contentions.

### b.    Cirba's Alleged Conception Dates

Despite the opportunity to amend its interrogatory responses, Cirba refuses to identify

dates of conception for the '687 and '367 patents. Instead, it states only that the inventors

conceived of the two patents an unidentified number of "weeks" before they filed the

provisionals. Cirba's alleged dates of conception are critical to VMware's identification of prior

art (including key art only "weeks" before Cirba's provisional applications). Cirba should be

obligated to identify this basic information immediately.

### c.    Scope of VMware's Damages Production

On October 8, 2019, for the first time, Cirba demanded that VMware expand its

production to capture non-U.S. sales of the accused products. VMware had made clear in

responses dating back to June 24, 2019 that it would be producing U.S. bookings information

given the territorial reach of a United States patent, and Cirba never voiced any concern. This

new request is not only untimely, but it is outside the scope of this litigation. This issue will be

addressed by the Federal Circuit in the upcoming *Fairchild Semiconductor* matter. VMware

disagrees that non-U.S. sales information is relevant under 35 U.S.C. § 271(a)-(c) for alleged

infringement of U.S. patents and has asked Cirba for relevant authority beyond *WesternGeco*

*LLC v. Geophysical Corp.*, 138 S.Ct. 2129 (2018), which related to a different subpart of Section

271, *i.e.*, 35 U.S.C. § 271(f). *Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*,

No. CV 19-149 (MN), 2019 WL 2521305, at *18 (D. Del. June 6, 2019) ("This Court does not

understand WesternGeco to stand for the proposition that a patentee in the United States may

obtain damages (or injunctive relief) based on harm in another country independent of the theory

of infringement liability at issue – i.e., § 271(a) versus § 271(f).") As discussed below, gathering

information responsive to Cirba's requests for U.S. information alone has already required over a

dozen phone calls with VMware's financial personnel and dozens of email exchanges due to the

very large scope of accused products.

### 2.  Other Pending Disputes

#### f.  Cirba's Demand for the Apex Depositions of VMware's CEO and COO

On October 14, 2019, Cirba noticed the deposition of VMware's Chief Executive Officer,

Pat Gelsinger, and its Chief Operating Officer, Raghu Raghuram.  As the CEO and COO of a

20,000+ employee corporation, both may be frequently mentioned in emails but neither have

unique, firsthand, and non-repetitive knowledge of the facts at issue in the case and Cirba has not

exhausted less intrusive discovery methods.   Cirba's assertion that the depositions of Messrs.

Gelsinger and Raghuram are warranted is belied by its own admissions.  ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████  Neither deposition should proceed, and VMware intends to move for

a protective order.

#### g.  Cirba's Violation of Rule 34

With the 2015 revisions to Rule 34, a party can no longer provide a long list of objections

13

to a document request – and then state that it will provide "responsive documents subject to those objections."  This is because that form of objection leaves the propounding party guessing as to what exactly will be produced.  *See* Fed. R. Civ. P. 34(b)(2)(B) advisory committee's note (2015) (explaining that "an objection must state whether any responsive materials are being withheld on the basis of that objection.")

Cirba's objections and responses to *dozens* of VMware's discovery requests, however, follow that precise and improper format.  Cirba has refused to confirm that it will amend its objections and responses to identify what it will in fact produce.

### h.  Cirba's Voluminous Production of Irrelevant Documents

Although Cirba boasts about the number of documents that it has produced, its production includes enormous quantities of non-responsive materials.  ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████  These vast quantities of non-responsive documents force VMware's 55 person team of contract reviewers to waste time culling through irrelevant documents.  To the extent that it has not, Cirba should be required to conduct a responsiveness review, as VMware has done.

### i.  Cirba's Large Number of Potential Trial Witnesses

Cirba's Rule 26(a)(1) disclosures name 24 VMware individuals that allegedly are likely to have knowledge of facts that Cirba may use to support its claims.  They also indicate that Cirba may call "[a]ll current and former employees of VMware" and unidentified "Third Party Witnesses knowledgeable about their use of or demand for Densify and/or VMware products."  Yet each party is limited to 10 depositions.  VMware has realistically identified the 10 Cirba employees it intends to depose and call at trial.  Cirba should not be permitted to surprise

VMware at trial.  VMware has asked that Cirba identify those individuals that Cirba intends to or

is likely to call at trial, but Cirba has ignored VMware's request.  Cirba should realistically

identify the witnesses that it is realistically likely to call at trial and VMware should be permitted

to depose those individuals.

### j.  Cirba's Request for "Core Documents"

<u>Technical Documents</u>

VMware has already produced key technical documents pertaining to DRS and the

products that interoperate with DRS and vROps.  This includes Cirba's requested source code,

including the entirety of the source code for its flagship product vSphere (which includes code

far beyond vCenter and DRS) and vROps.  VMware also has agreed to produce the "core

documents" that are allegedly missing, *i.e.,* the internal wiki pages and diagrams relating to these

products.  (As noted, VMware is conducting a responsiveness review to avoid producing

irrelevant and non-responsive documents in an attempt to avoid the kind of irrelevant documents

found in Cirba's production.)

<u>VMware's Document Collection</u>

VMware's has thoroughly searched for responsive, non-privileged documents.

VMware's September 24, 2019 statement was not false.  As VMware explained in its September

24, 2019 email to Cirba, "VMware has collected potentially responsive documents without the

use of ESI search terms and is reviewing those documents on a document by document basis for

responsiveness. Where VMware intended to use search terms to locate potentially responsive

ESI, VMware indicated as much in its responses to Cirba's document requests.  VMware's

search terms reflect those specific requests."   VMware's search terms include broad search

terms such as "(densify or densifying or densification) w/25 (vROps or "vRealize Operations")"

and "(DRS or vCenter or VirtualCenter or "Virtual Center") and ((VM or host) w/10 (affinity or

rule or rebalance* or placement*))".  In keeping with the ESI order, VMware shared those search

terms with Cirba and offered to let Cirba suggest additional responsive terms, and then ran the

broad terms proposed by Cirba, "vROps w/150 (Densify* OR Cirba)," "DRS w/150 (Densify*

OR Cirba)," ""host-based placement" w/150 (Densify* OR Cirba OR important* OR survey*

OR demand* OR customer*)."   VMware keeps the majority of its documents on databases such

as Confluence, which are regularly accessed or referred to by its employees.  In addition to

running the ESI search terms, VMware also interviewed document custodians regarding

potential-non email locations for their documents, and individually searched for and reviewed

responsive documents on these databases without the use of search terms for documents that

were responsive to the remainder of Cirba's Requests for Production.

As VMware has said and in keeping with the ESI order, VMware is willing to consider

additional ESI terms suggested by Cirba.

Niels Hagoort's Documents

Cirba's assertions about VMware's production of documents from Niels Hagoort are

perplexing and not well-founded.

VMware identified Mr. Hagoort as a knowledgeable and relevant witness because he is

the Technical Marketing Architect for VMware's Cloud Business Unit, which includes vSphere

and DRS.  He also has published multiple publicly available books involving "clustering," which

involves DRS.  *See, e.g.,* "VMware vSphere 6.7 Clustering Deep Dive" and "VMware vSphere

6.5 Host Resources Deep Dive."

As a general matter, to search for *ESI* documents VMware ran ESI searches on its

identified custodians using its identified search terms to collect responsive, non-privileged

documents, particularly emails, in response to particular Requests for Production for which it

stated it would run ESI searches.  VMware also offered to run, and ran, additional search terms

requested by Cirba.  VMware then individually reviewed every document that hit on those search

terms and produced all responsive, non-privileged documents.  VMware also de-duped and

excluded junk files to ensure that its production was not overinflated, as is customary.

In addition to running the ESI search terms, VMware also interviewed document

custodians regarding potential-non email locations for their documents, and individually

searched for and reviewed responsive documents without the use of search terms throughout

VMware's servers and databases for documents that were responsive to the remainder of Cirba's

Requests for Production.

Regarding Mr. Hagoort specifically, VMware has produced responsive non-privileged

documents in VMware's possession, custody, and control.  Despite his strong understanding of

DRS, Mr. Hagoort only joined VMware in November 2017 and thus has fewer documents than

the average custodian.  During his document collection interview, Mr. Hagoort indicated that he,

like many VMware employees, places documents on VMware's internal servers such as

Confluence.  VMware individually searched for and reviewed responsive documents without the

use of search terms throughout VMware's servers and databases for documents that were

responsive to the remainder of Cirba's Requests for Production.  These documents were non-

custodial and were produced.

Cirba's statement that Mr. Hagoort is the "the only custodian specifically identified for

DRS issues" is misleading.  VMware also identified Chandra Prathuri as a custodian who may

have documents relating to "[t]he accused VMware products, including their design,

development, implementation, and functionality and versions."  This includes DRS.  VMware

has produced nearly 20,000 documents with Mr. Prathuri as custodian.  As Cirba is aware,

VMware has designated Mr. Prathuri (who also was deposed during preliminary injunction

17

discovery regarding DRS and testified at the preliminary injunction hearing on vROps and DRS)

as its 30(b)(6) designee on DRS-related technical topics.

VMware also has designated Sunny Dua as a custodian who may have documents

relating to "[t]he accused VMware products, including their design, development,

implementation, and functionality and versions."  VMware has produced 14,514 documents with

Mr. Dua as custodian.

VMware further has designated Michael Beckmann and Wei Lei as custodians who may

have documents relating to that same topic, and VMware has produced 7,521 and 3,644

documents for these custodians, respectively.  VMware also separately identified two custodians

likely to have responsive documents regarding the "[m]arketing of the accused VMware

products"; the production from these custodians spanned 50,801 documents.  For all of these

reasons, Cirba's complaints with respect to Mr. Hagoort ring hollow.

VMware's Financial Information

VMware has already agreed to produce relevant and responsive financial information

about the "Accused Products."  VMware has already produced U.S. bookings data since

September 2015 (the release date of vROps 6.1) for vRealize Suite Advanced, vRealize Suite

Ent., vRealize Suite Std. and vRealize Operations ("vROps"), including vRealize Adjacencies,

vRealize Operations Advanced, vRealize Operations ENT, vRealize Operations for View,

vRealize Operations Insight, and vRealize Operations STD.

VMware has been diligently working on collecting and producing the remaining financial

information.  As VMware noted above, Cirba's expansion of the Accused Products beyond DRS

and vROps has necessitated that VMware conduct over a dozen interviews with the financial

team and the relevant department's product managers to try to obtain accurate financial

information.  VMware's financial records are not maintained in a manner that facilitates a simple

document collection sweep.  This requires a labor-intensive, time-consuming process.  Given the number of products accused and the fact that some products are only sold bundled with other products and not as standalone products this has required a great deal of internal investigation.  VMware has multiple personnel working on the collection of its financial and costs information.  VMware will produce the U.S. bookings information it has promised to produce as quickly as it can, targeting production in approximately one week.

VMware's efforts to obtain this information are no secret to Cirba, as VMware explained this to Cirba's counsel during the parties' October 10, 2019 meet and confer.   Specifically, VMware explained that the collection of financial information spanning so many products is an extremely burdensome and time consuming process involving multiple departments within VMware.

Rule 33(d) Disclosures

Cirba's arguments about VMware's disclosures under Rule 33(d) are also surprising, as the parties *agreed* on a schedule for supplementing their Rule 33(d) related responses during a meet and confer.  The parties agreed to a mutual exchange of Rule 33(d) designations to occur on Friday, October 18th as memorialized in summary emails following the meet and confer.  This issue is not ripe.

Other Categories

Cirba complains about alleged deficiencies regarding multiple categories of documents (*e.g.*, "conjoint analyses," "surveys," and "complete telemetry data" including "all raw data" on "purchase of the Accused Products" (i.e., "vROps, DRS, vCenter, *and others*" (emphasis added)).  These requests are overly broad, as VMware is willing to explain to Cirba when the parties meet to confer on these issues.

For example, usage data concerning *every* feature of *every* "Accused Product" cannot

19

possibly be relevant to this case.  This would span hundreds if not thousands of potential

features.  Moreover, it is unclear what Cirba means by "complete telemetry data" regarding "the

purchase of the Accused Products"; and Cirba has not previously requested or raised the issue of

telemetry regarding the *purchase* of the Accused Products.

VMware has already produced multiple surveys, studies, win/loss reports, and documents

regarding usage telemetry.  VMware has also already agreed to produce any additional

responsive surveys, studies, win/loss reports and telemetry regarding use of the Accused

Features, to the extent not already produced.

        C.      Substantial Completion Of Document Production

To date, VMware has produced over 700,000 pages (spanning almost 150,000

documents) and extensive source code, including source code for the entirety of vSphere, its

flagship product.  VMware's team of 55 reviewers (sometimes larger, depending on availability)

has worked overnight and weekends to process VMware's production and respond to Cirba's

constantly urgent requests.  And as noted above, VMware also is conducting a responsive review

for documents to avoid producing irrelevant or non-responsive materials.

Against this backdrop, Cirba's suggestions that VMware has not complied with its

discovery obligations and is delaying its document productions are incorrect.  Any alleged delays

are attributable to Cirba.  Cirba's changed positions, refusal to provide rule-compliant

infringement contentions, additional requests, and piecemeal follow-up requests have required

that VMware continue to collect (and sometimes re-collect) documents in response to Cirba's

various demands, creating a great deal of burden.  For example:

- Changing accused products:  Agreeing that its infringement allegations were too
  broad, Cirba withdrew multiple products from its revised infringement contentions on
  September 16 – but simultaneously argued that additional other products should be
  included.  The changed scope required that VMware adjust its collection, review, and

production parameters;

- <u>150 additional requests before substantial completion deadline</u>:  Cirba served its second and third set of requests for production, consisting of 150 new document requests on September 18 and 19 – two weeks before the substantial completion deadline; and

- <u>New ESI terms before substantial completion deadline:</u>  At VMware's prompting, ESI search terms were exchanged on September 17, 2019. Cirba identified additional ESI terms and asked for a replacement custodian on September 27 – 7 days before the substantial completion deadline.  VMware ran those terms and supplied an additional custodian.

     D.    Proposed Schedule Adjustments

Cirba's proposal to adjust the schedule in a one-sided manner is improper.  Cirba sought the expedited schedule, not VMware.  But Cirba has delayed advancing this litigation, not VMware.  For example, although VMware noticed the deposition of '687 patent co-inventor Tom Yuyitung on September 13, 2019, Cirba delayed proposing a date for that deposition for *a full month*.  Cirba finally proposed two dates on Monday, October 14, 2019 (one of which was the same week, and which VMware immediately accepted).

In light of Cirba's approach to this litigation, no schedule expansion is appropriate.  Should the Court find that some revision of the discovery schedule is warranted, then any such extensions should be mutual.  Cirba's proposal to shift out only its own dates (to its advantage) does not make sense.

For example, Cirba's schedule requires that VMware's experts provide reports before the depositions are completed and that VMware provide invalidity contentions before Cirba provides infringement contentions.   But VMware cannot provide final invalidity contentions if it does not know what claims Cirba intends to assert in its final infringement contentions.

Regardless, Cirba should be obligated to address the various deficiencies with its production before VMware should be required to depose all of Cirba's witnesses and provide its

21

expert reports.  For example, if Cirba is accorded additional time to prepare its infringement report based on any alleged VMware production failure, then Cirba's continued refusal to identify precise dates of conception for either of its patents requires that VMware's invalidity contentions also should shift.

Cirba raised its proposal to adjust the discovery deadlines for the first time in its draft joint status report, provided mid-afternoon yesterday.  If the Court agrees that any modifications to the discovery schedule are warranted, VMware is willing to meet and confer with Cirba in order to provide the Court with a joint proposed amended discovery schedule with input from both sides.

## II.    ASSERTED CLAIMS AND CLAIM CONSTRUCTION

### A.    Narrowing of Asserted Claims and Invalidating References

**<u>Densify's Position:</u>**

As of its Second Supplemental Initial Infringement Contentions served on October 8th, Densify identified 19 asserted claims. As of its Supplemental Initial Invalidity Contentions served on October 7th, VMware identified 72 invalidating references. Consistent with this Court's Patent Procedures, which provide for "reasonable proposals to reduce, at an appropriate stage or stages of a case, the number of . . . asserted claims, . . . invalidating references, combinations of invalidating references, [and] invalidity defenses," Densify proposes that the parties agree to dates by which, Densify will identify which claims of the '687 and '367 patents it intends to assert, or is likely to assert, at trial, and VMWare will narrow its invalidity contentions, for each identified asserted claim, to no more than three (3) prior art references per claim that VMware intends to assert, or is likely to assert, at trial.

**<u>VMware's Position:</u>**

VMware is not opposed to mutual limiting of the scope of the parties' contentions; in

fact, it was VMware that raised the issue with Cirba.

Cirba apparently agrees that the parties should be required to narrow their cases, but does not propose any limitation on *itself* for the number of asserted claims.  Instead, Cirba proposes that only *VMware* should be required to pare its invalidity contentions (to 3 references per asserted claim).

VMware is willing to meet and confer with Cirba about its proposal, which Cirba included for the first time in its draft status report yesterday.  VMware proposes that the parties do so after the close of expert discovery, when the parties' positions (and the strength of their counterarguments or defenses) have become clearer.

Should the Court believe that narrowing now would be productive, VMware proposes that Cirba narrow its case to 12 claims and that VMware be limited to 5 prior art *combinations* per claim.  A requirement of 3 *references* per claim (as Cirba proposes) would be unfair, as that would allow VMware to present only a single obviousness combination for many of Cirba's claims.

Contrary to Cirba's contention, VMware does not intend to rely on "72 [invalidity] references."  To date, VMware has charted only 7 references for the '687 patent and 8 references for the '367 patent (although it has recently identified additional art and intends to identify those references by Friday's deadline).

**B.  Claim Construction**

The parties exchanged opening claim construction briefs on October 11, 2019, and will exchange answering claim construction briefs on October 23, 2019.  The parties are scheduled to file a consolidated joint claim construction brief with the Court on October 24, 2019.

Dated: October 16, 2019

Respectfully submitted,

Sarah O. Jorgensen (*pro hac vice*)
sjorgensen@reichmanjorgensen.com
Reichman Jorgensen LLP
1201 West Peachtree, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
Telecopier: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Reichman Jorgensen LLP
1615 M Street, NW, Suite 300
Washington, DC 20036
Telephone: (202) 894-7310
Telecopier: (650) 623-1449

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
Wesley L. White (*pro hac vice*)
wwhite@reichmanjorgensen.com
Reichman Jorgensen LLP
100 Park Avenue, Suite 1600
New York, NY 10017
Telephone: (212) 381-1965
Telecopier: (650) 623-1449

Peter J. Ayers (*pro hac vice*)
peter@ayersiplaw.com
Law Office of Peter J. Ayers, PLLC
220 Bowman Avenue
Austin, TX 78703
Telephone: (512) 771-3070

/s/ Kenneth L. Dorsney
Kenneth L. Dorsney (#3726)
kdorsney@morrisjames.com
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Jennifer P. Estremera (*pro hac vice*)
jestremera@reichmanjorgensen.com
Michael G. Flanigan (*pro hac vice*)
mflanigan@reichmanjorgensen.com
Joachim B. Steinberg (*pro hac vice*)
jsteinberg@reichmanjorgensen.com
Kate Falkenstien (*pro hac vice*)
kfalkenstien@reichmanjorgensen.com
Ariel C. Green (*pro hac vice*)
agreen@reichmanjorgensen.com
Reichman Jorgensen LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Telecopier: (650) 623-1449

Gary J. Toman (pro hac vice)
Gtoman@wwhgd.com
Weinberg Wheeler Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700

**ATTORNEYS FOR CIRBA INC.**
**(D/B/A DENSIFY) AND CIRBA IP, INC.**

                                                    YOUNG CONAWAY STARGATT &
                                                    TAYLOR, LLP

OF COUNSEL:

Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105                   */s/ Samantha G. Wilson*
(415) 268-7000                            _____
mjacobs@mofo.com                          Anne Shea Gaza (No. 4093)
rhung@mofo.com                            Samantha G. Wilson (No. 5816)
                                          Rodney Square
                                          1000 North King Street
Bita Rahebi                               Wilmington, DE 19801
MORRISON & FOERSTER LLP                   (302) 571-6600
707 Wilshire Boulevard                    agaza@ycst.com
Los Angeles, CA 90017                     swilson@ycst.com
(213) 892-5200
brahebi@mofo.com                          *Attorneys for VMware, Inc.*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
(303) 592-2204
sllewellyn@mofo.com