## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a DENSIFY)
and CIRBA IP, INC.,

               Plaintiffs,

     v.

VMWARE, INC.,

               Defendant.

Civil Action No. 1:19-cv-00742-LPS

JURY TRIAL DEMANDED

## AMENDED [JOINT PROPOSED] FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

1.0    GENERAL INSTRUCTIONS ........................................................................ 1

1.1    INTRODUCTION [Joint] ............................................................................ 1
1.2    JURORS' DUTIES [Joint] .......................................................................... 2
1.3    EVIDENCE DEFINED [Disputed] ............................................................. 3
1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE [Joint] ........................... 5
1.5    CONSIDERATION OF EVIDENCE [Joint] ................................................ 6
1.6    STATEMENTS OF COUNSEL [Joint] ....................................................... 7
1.7    CREDIBILITY OF WITNESSES [Joint]..................................................... 8
1.8    NUMBER OF WITNESSES [Joint]........................................................... 10
1.9    EXPERT WITNESSES [Joint]................................................................... 11
1.10   DEPOSITION TESTIMONY [Joint] ......................................................... 12
1.11   RULE 30(b)(6) DEPOSITION TESTIMONY [Disputed].... **Error! Bookmark not defined.**
1.12   USE OF INTERROGATORIES [Joint] ...................................................... 13
1.13   RESERVED................................................................................................ 14
1.14   EXHIBITS [Joint]...................................................................................... 14
1.15   BURDENS OF PROOF [Disputed] ............................................................ 15
1.16   USE OF NOTES [Joint] ............................................................................ 17
2.0    THE PARTIES AND THEIR CONTENTIONS .................................................. 18

2.1    THE PARTIES [Disputed] ........................................................................ 18
2.2.   THE PARTIES' CONTENTIONS [Joint]  .................................................. 19
2.3.   SUMMARY OF THE PATENT ISSUES [Joint]......................................... 20
3.0    THE PATENT CLAIMS ............................................................................. 22

3.1.   PATENT LAWS [Joint] ............................................................................ 22
3.2.   PATENT "CLAIMS" GENERALLY [Disputed] ......................................... 23
3.3    CONSTRUCTION OF THE CLAIMS [Joint]............................................. 25
3.4    INDEPENDENT AND DEPENDENT CLAIMS [Joint]............................... 27
3.5    OPEN ENDED OR "COMPRISING" CLAIMS [Joint]................................ 28
4.0    PATENT INFRINGEMENT ....................................................................... 29

4.1.   INFRINGEMENT GENERALLY [Disputed] ............................................. 29
4.2    DIRECT INFRINGEMENT [Disputed]...................................................... 31
4.3    DIRECT INFRINGEMENT - LITERAL INFRINGEMENT [Disputed]....... 35
4.4    INDUCED INFRINGEMENT [Disputed] .................................................. 37
4.5    DIRECT INFRINGEMENT BY A THIRD PARTY [Disputed].................... 44
4.6    AFFIRMATIVE ACTIONS INTENDED TO CAUSE  INFRINGEMENT [Disputed]    46

4.7     KNOWLEDGE THAT THE ACTS, IF TAKEN, WOULD CONSTITUTE INFRINGEMENT [Disputed] ............................................................................ 48
4.8     INDUCEMENT MUST CAUSE DIRECT INFRINGEMENT [Disputed] .... 50
4.9 WILLFUL INFRINGEMENT  [Disputed] ............................................................ 53
5.0     INVALIDITY ............................................................................................. 56

5.1     INVALIDITY GENERALLY [Disputed] ................................................... 56
5.2     PRIOR ART [Disputed] ............................................................................ 59
5.3     PRIOR ART—PRIOR INVENTION [Joint]  ................................................ 61
5.4 ANTICIPATION [Disputed] ................................................................................ 63
5.5     OBVIOUSNESS--GENERALLY [Disputed] ................................................ 66
5.6     SCOPE AND CONTENT OF THE PRIOR ART [Joint]  ........................... 70
5.7     DIFFERENCES BETWEEN THE CLAIMED INVENTION AND PRIOR ART [Disputed] ............................................................................................................ 71
5.8     LEVEL OF ORDINARY SKILL [Joint] ..................................................... 74
5.9     OBJECTIVE EVIDENCE OF NONOBVIOUSNESS [Disputed] ................ 76
6.0     SUMMARY OF THE NON-PATENT ISSUES [Disputed] ................... 78

7.0     TRADEMARK LAW [Disputed] ......................................................... 80

7.1     HOW A TRADEMARK IS OBTAINED [Joint] ........................................... 81
7.2     TRADEMARK INTERESTS [Disputed] ..................................................... 82
7.3     LIKELIHOOD OF CONFUSION [Disputed] ............................................. 83
7.4     TRADEMARK BURDENS OF PROOF [Disputed] ..................................... 85
7.5     INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF [Disputed] . 87
7.6     UNREGISTERED MARKS [Disputed] ..................................................... 88
7.7     UNREGISTERED MARK DISTINCTIVENESS [Disputed] ....................... 89
7.8     SPECTRUM OF MARKS [Joint] ............................................................... 91
7.9     ARBITRARY TRADEMARKS [Joint]  ...................................................... 92
7.10    SUGGESTIVE TRADEMARKS [Joint] ..................................................... 93
7.11    DESCRIPTIVE TRADEMARKS [Joint]  .................................................... 94
7.12    GENERIC NAMES [Joint] ......................................................................... 95
7.13    MARK DISTINCTIVENESS AND VALIDITY [Disputed] ......................... 96
8.0     SECONDARY MEANING [Disputed] ................................................ 97

9.0     OWNERSHIP AND PRIORITY [Disputed] ....................................... 100

10.0    LIKELIHOOD OF CONFUSION [Disputed] ..................................... 102

11.0    "CLASSIC" FAIR USE [Disputed] .................................................... 106

12.0    DECEPTIVE TRADE PRACTICES [Joint] ........................................ 107

13.0    DAMAGES [Disputed] ..................................................................... 109

14.0    PATENT DAMAGES INTRODUCTION [Joint] ................................ 111

iii

14.1    DATE DAMAGES BEGIN AND END [Disputed]...................................... 112
14.2    REASONABLE ROYALTY-GENERALLY  [Disputed] ............................ 114
14.3    FACTORS FOR DETERMINING REASONABLE ROYALTY [Joint]..... 117
14.4    REASONABLE ROYALTY - TIMING [Disputed].................................... 120
14.5    PATENT DAMAGES INTEREST [Joint].................................................. 121
14.6    LIMITATIONS OF PATENT DAMAGES [Disputed] ............................... 122
15.0  NON-PATENT DAMAGES ............................................................................ 124

15.1    DAMAGES FOR TRADEMARK INFRINGEMENT AND UNFAIR
COMPETITION --GENERALLY  [VMWARE OBJECTS to term "UNFAIR
COMPETITION" and PROPOSES replacing it with "FALSE DESIGNATION OF ORIGIN"]
[Disputed]     124
15.2    ACTUAL DAMAGES [Disputed] ............................................................. 125
15.3    INTENTIONAL INFRINGEMENT [Disputed] .......................................... 127
17.0  DELIBERATION AND VERDICT .................................................................. 128

17.1    INTRODUCTION [Joint]......................................................................... 128
17.2    UNANIMOUS VERDICT [Joint] .............................................................. 129
17.3    DUTY TO DELIBERATE [Joint]............................................................. 130
17.4    SOCIAL MEDIA [Joint] .......................................................................... 131
17.5    COURT HAS NO OPINION [Joint].......................................................... 132

11479979/1

## 1.0    GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION[1] [Joint]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

---

[1] Authority:  Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.1. Introduction.

1

## 1.2     JURORS' DUTIES[2] [Joint]

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

---

[2] Authority:  Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.2 Jurors' Duties.

### 1.3    EVIDENCE DEFINED[3] [Joint]

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that

---

[3] Authority:  Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.3 Evidence Defined.

you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

You should not be concerned with whether there were any earlier proceedings in this case or, if there were, what the outcome of any such proceedings might have been.  As I have told you previously, the Court has no opinion on the matters you are being asked to decide.[4]

Make your decision based only on the evidence, as I have defined it here, and nothing else.

---

[4] Authority: Jan. 16, 2020 Trial Tr. at 778:10-14.

4

### 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE[5] [Joint]

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

---

[5] Authority:  Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.4 Direct And Circumstantial Evidence.

## 1.5     CONSIDERATION OF EVIDENCE[6] [Joint]

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[6] Authority:  Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.5 Consideration Of Evidence.

## 1.6    STATEMENTS OF COUNSEL[7] [Joint]

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

---

[7] Authority:  Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.6 Statements Of Counsel.

## 1.7   CREDIBILITY OF WITNESSES[8] [Joint]

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it.[9] You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it

---

[8] Authority:  Judge Stark's Final Jury Instructions, *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, No. 1:12-cv-00540, D.I. 400 (June 4, 2015).

[9] Authority:  Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189, D.I. 272 (Nov. 25, 2019), 1.7 Credibility of Witnesses.

was simply an innocent lapse of memory or an intentional falsehood, and that may depend

upon whether it concerns an important fact or an unimportant detail.

## 1.8    NUMBER OF WITNESSES[10] [Joint]

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

---

[10] Authority:  Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.8 Number Of Witnesses.

11479979/1

## 1.9     EXPERT WITNESSES[11] [Joint]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

---

[11] Authority:  Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.9 Expert Witnesses.

## 1.10    DEPOSITION TESTIMONY[12] [Joint]

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

---

[12] Authority:  Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.10 Deposition Testimony.

**1.12    USE OF INTERROGATORIES[13] [Joint]**

You may have heard answers that either Densify or VMware gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider the party's answers to interrogatories in the same manner as if the answers were made from the witness stand.

---

[13] Authority: Adapted from Model Civil Jury Instructions for the District Courts of the Third Circuit, Instructions For Use During Trial, No. 2.6, Use of Interrogatories (last updated October 2017).

13

**1.13   RESERVED**

**1.14   EXHIBITS[14] [Joint]**

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

The remainder of the exhibits (including charts, PowerPoint presentations and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records are not here. You should give them only such weight as you think they deserve.

---

[14] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.12 Demonstrative Exhibits.

## 1.15   BURDENS OF PROOF[15] [Disputed]

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Densify is accusing VMware of patent infringement, unfair competition, deceptive trade practices, and trademark infringement. Densify has the burden of proving its claims and the amount of its money damages, if any, by what is called a preponderance of evidence. That means that Densify has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Densify claims is more likely true than not. To put it differently, if you were to put the evidence of Densify and VMware concerning infringement on opposite sides of a scale, the evidence supporting Densify's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of VMware, you must find for VMware.  **[VMWARE OBJECTS to the term "unfair competition" in the preceding paragraph and PROPOSES replacing this term with "false designation of origin".]**

---

[15] Authority: Adapted from Judge Stark's Preliminary Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 416 (June 10, 2017), Burdens Of Proof; Judge Stark's Preliminary Jury Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 407 (April 7, 2014), Burdens Of Poof; Judge Andrews' Preliminary Jury Instructions, *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579 (D. Del. 2019), 1:16-cv-00638-RGA, D.I. 295 (April 12, 2019), Summary of the Patent Issues; Judge Andrews' Final Jury Instructions, *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579 (D. Del. 2019), 1:16-cv-00638-RGA, D.I. 317 (May 1, 2019), 3.3. Willful Infringement; **[VMware proposes adding 15 U.S.C. § 1125 - False designations of origin, false descriptions, and dilution forbidden, which is the name of the statute and corresponding causes of action.]**

If you find that VMware infringed one or more of the patent claims that have been asserted in this case, then as a separate question, Densify has also asserted that the infringement was willful. Densify has the burden of proving this additional contention by a preponderance of the evidence.

In this case, in addition to denying Densify's claims, VMware asserts that the '687 and '367 patents are invalid. Both patents, however, are presumed to be valid under the law. VMware therefore has the burden of proving that the patents are invalid by clear and convincing evidence. Clear and convincing evidence means that it is highly probable that a fact is true.[16] Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

---

[16] Authority: Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 1.3 Burdens of Proof.

16

### 1.16    USE OF NOTES[17] [Joint]

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

---

[17] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.14 Use Of Notes.

## 2.0     THE PARTIES AND THEIR CONTENTIONS

### 2.1      THE PARTIES[18] [Disputed]

 I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

The plaintiffs in this case are Cirba, Inc., which does business as "Densify", and Cirba IP, Inc.  I will refer to the plaintiffs collectively as "Densify." **[VMWARE PROPOSES replacing the preceding two sentences with: There are two plaintiffs in this case: Cirba, Inc., which does business under the name "Densify," and Cirba IP, Inc.  I will refer to the plaintiffs collectively as "Densify." You should not attach evidentiary weight to the use at trial of the name "Densify" to refer to the two plaintiffs collectively.[19]].**  The defendant in this case is VMware, Inc., which I will refer to as "VMware" or "Defendant."

---

[18] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.2 The Parties.

[19] Authority: D.I. 460 at 5, ¶ 7.

18

## 2.2.    THE PARTIES' CONTENTIONS[20] [Joint]

There are two patents at issue in this case: United States Patent Nos. 8,209,687 and 9,654,367. You heard the lawyers and witnesses in the case refer to Densify's patents as the '687 and '367 patents or the "Densify patents." Copies of the Densify patents have been given to you.

Densify contends that VMware directly infringed and induced infringement of the Densify patents, that the infringement was willful, and that Densify is entitled to damages.

VMware denies that it infringed or induced infringement of the Densify patents, or that it did so willfully. VMware also contends that the Densify patents are invalid for several independent reasons. VMware also denies that Densify is entitled to recover any damages related to the patents.

---

[20] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 2.2 The Parties' Contentions.

19

### 2.3.    SUMMARY OF THE PATENT ISSUES[21] [Joint]

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations. The specific questions you must answer are listed on the verdict sheet you will be given.[22] Here are the issues you must decide:

1. Whether Densify has proven by a preponderance of the evidence that VMware literally infringed or induced literal infringement of one or more of the asserted claims of the '687 patent or the '367 patent;

2. Whether VMware has proven by clear and convincing evidence that one or more of the asserted claims of the '687 patent or the '367 patent are invalid; and

3. If you decide that Densify has proven that VMware infringed or induced infringement of a claim not shown to be invalid, you will decide the money damages to be awarded to compensate Densify for that infringement.

4. Whether Densify has proven by a preponderance of the evidence that VMware willfully infringed one or more of the asserted claims of the '687 patent or the '367 patent.

---

[21] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 2.3 Summary Of The Patent Issues; Judge Andrews' Preliminary Jury Instructions, *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579 (D. Del. 2019), 1:16-cv-00638-RGA, D.I.  295 (April 12, 2019), Summary of the Patent Issues; Judge Andrews' Final Jury Instructions, *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579 (D. Del. 2019), 1:16-cv-00638-RGA, D.I. 317 (May 1, 2019), 3.3. Willful Infringement.

[22] Authority: Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189, D.I. 272 (Nov. 25, 2019), 2.6 Summary of the Issues.

20

I will provide more detailed instructions on each of the issues you must decide elsewhere in these jury instructions.

## 3.0   THE PATENT CLAIMS

### 3.1.   PATENT LAWS[23] [Joint]

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instruction about the patent laws that specifically relate to this case.

---

[23] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 3.1 Patent Laws.

22

### 3.2.    PATENT "CLAIMS" GENERALLY[24] [Disputed]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered paragraphs at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed.[25]

The claims are intended to define, in words, the bounds of the **[VMWARE PROPOSES: purported[26]]** invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each of the asserted claims must be considered individually.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs, and glue are each separate limitations of the claim.[27] When a thing (such as a product) meets each

---

[24] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I.  440 (June 19, 2017), 3.2 Patent Claims Generally; Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I.  415 (April 11, 2014), 3.3 Infringement Of Patent Claims.

[25] Authority: Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189, D.I.  272 (Nov. 25, 2019), 4.2 Patent Claims Generally.

[26] *Id.*

[27] Authority: Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I.  442 (January 23, 2019), 3.1 Patent Claims Generally.

23

and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.

Each claim of a patent effectively acts as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.  **[VMWARE OBJECTS to this paragraph as unnecessary and confusing and PROPOSES removing this paragraph[28]].**

You will first need to understand what each claim covers in order to decide whether there is infringement of the claim and to decide whether the claim is invalid. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.[29]

---

[28] This paragraph does not appear in Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 3.1 Patent Claims Generally; Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189, D.I.  272 (Nov. 25, 2019), 4.2 Patent Claims Generally.

[29] Authority: Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 3.1 Patent Claims Generally.

24

### 3.3     CONSTRUCTION OF THE CLAIMS[30] [Joint]

It is the Court's duty under the law to define what the patent claims mean.  As I instructed you at the beginning of the case, I have made my determinations, and I will now instruct you on the meaning, or "construction", of the claim terms. You must apply the meaning that I give in each patent claim to decide if the claim is infringed or invalid. You must accept my definitions of these words in the claims as being correct. You must ignore any different definitions used by the witnesses or the attorneys.

You are advised that the following definitions for the following terms must be applied:

| Claim Term | Construction |
|---|---|
| The "each" terms[31] | |
| "Evaluating each virtual guest against each virtual host and other virtual guests" | "Evaluating each virtual guest against each virtual host and other virtual machines" |
| "Each virtual guest" | Plain meaning |
| "Each virtual host" | Plain meaning |
| "Identifying the existence of virtual machines with suboptimal placements"[32] | "Identifying the existence of virtual machines with less than optimal placements as determined by the evaluation step" |

---

[30] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I.  440 (June 19, 2017), 3.3 Construction Of The Claims.

[31] These terms appear in claims 3 and 7 of the '687 Patent.

[32] This term appears in claim 7 of the '687 Patent.

| | |
|---|---|
| "Business constraint"[33] | "A restriction or limitation based on a business parameter, such as physical location, organization department, data segregation requirements, owner, service level agreements, maintenance windows, hardware lease agreements, or software licensing agreements" |
| "Determine whether the utilization or performance of an entity is in an acceptable range relative to its capacity or performance limits"[34] | "Determine whether an entity's utilization or performance is within an acceptable range, relative to that entity's capacity or performance limits" |
| "Virtualized environment" | Plain meaning[35] |

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning to a person of ordinary skill in the art.

---

[33] This term appears in claims 3 and 7of the '687 Patent.

[34] This term appears in claims 1 and 13 of the '367 Patent.

[35] January 17, 2020 Pretrial Hearing Conference Tr. pp. 81:1- 84:15.

### 3.4    INDEPENDENT AND DEPENDENT CLAIMS[36] [Joint]

This case involves two types of patent claims: independent claims and dependent claims.

An independent claim does not refer to any other claim of the patent and[37] sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, Claims 3 and 7 of the '687 patent and Claims 1 and 13 of the '367 patent are independent claims. An independent claim must be read separately from the other claims to determine the scope of the claim.[38]

The remaining Asserted Claims are dependent claims. A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the requirements of the claims to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other independent claims to which it refers.

---

[36] Authority: Adapted from Authority:  Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 3.5 Independent And Dependent Claims.

[37] Authority: Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 3.3 Dependent and Independent Claims.

[38] Authority: Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 3.3 Dependent and Independent Claims.

### 3.5     OPEN ENDED OR "COMPRISING" CLAIMS[39] [Joint]

The beginning portion, or preamble, of several of the Asserted Claims has the word "comprising." The word "comprising" means "including the following but not excluding others." A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that have additional elements.

If you find, for example, that the Accused Products include all of the elements of a particular claim, the fact that the Accused Products might include additional elements would not avoid infringement of the claim.

---

[39] Authority: Adapted from Authority:  Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 3.6 Open Ended Or "Comprising" Claims.

**4.0     PATENT INFRINGEMENT**

**4.1.     INFRINGEMENT GENERALLY[40] [Disputed]**

I will now instruct you how to decide whether Densify has proven by a preponderance of the evidence that VMware infringed the asserted claims of the '687 and '367 patents.

Recall that Densify must prove infringement by a preponderance of the evidence, i.e., that it is more likely than not that infringement has occurred.

You have heard evidence that both sides own other patents relating to computer virtualization products and services. As I stated earlier, there are only two patents **[DENSIFY PROPOSES: owned by Densify]** at issue in this case: the '687 and '367 patents. Ownership of another patent **[DENSIFY PROPOSES: by VMware]** is not a defense to patent infringement, nor is ownership of other patents evidence of infringement. Instead, for purposes of infringement, you must only consider the '687 and '367 patents.  **[VMWARE OBJECTS to preceding two sentences as unnecessary and confusing and PROPOSES deleting the preceding two sentences].**  In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare each of the asserted patent claims, as I have defined them, to the accused product, and determine whether or not there is infringement. You should not compare the accused product with any specific example set out in the '687 or '367 patent, or with Densify's product or process. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.[41]

---

[40] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.1 Infringement Generally.

[41] Authority: Adapted from the ABA Model Patent Jury Instruction, Section 8.1 Patent

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.[42]

You must determine whether Densify has proven that VMware infringed or induced infringement of any of the claims in those two patents **[VMWARE OBJECTS to the terms "infringed" and "induced infringement" in the preceding sentence and PROPOSES replacing "infringed" with "literally infringed" and "induced infringement" with "induced literal infringement" in the preceding sentence]**.

---

Infringement – Generally and N.D. Cal. Model Patent Jury Instructions, 3.2 Direct Infringement.

[42] Authority: Adapted from the ABA Model Patent Jury Instruction, Section 8.1 Patent Infringement – Generally.

## 4.2    DIRECT INFRINGEMENT[43] [Disputed]

Densify alleges that VMware directly infringes or did directly infringe the '687 and '367

patents.   In order to prove direct infringement, Densify must prove that it is more likely than not

that VMware made, used, offered for sale, or sold its products in a manner that meets all of the

elements of any one claim.  Infringement requires comparing products to the claims, not the

specification.[44]

Deciding whether a claim has been directly infringed is a two-step process. The first step

is to decide the meaning of the patent claim. I have already made this decision and I have already

instructed you as to the meaning of some terms of the asserted patent claims. The second step is

to decide whether VMware has made, used, sold, offered for sale or imported within the United

States an accused product or method covered by an asserted claim of the '687 and '367 patents.[45]

---

[43] Authority:  Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.2.1 Direct Infringement; adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 4.2 Direct Infringement; *see Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009); *Moleculon Res. Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) ("It is hornbook law that direct evidence of a fact is not necessary."); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 884-85 (Fed. Cir. 2001); *see also Imagenetix, Inc. v. Robinson Pharma, Inc.*, No. 815CV00599JLSJCG, 2018 WL 5880798, at *4–5 (C.D. Cal. June 12, 2018) ("Direct infringement may be proven by "circumstantial evidence," such as extensive sales of the accused products and dissemination of instructions to customers on how to use the accused products in an infringing manner. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009). The evidence must be sufficient to show that "more likely than not, one person in the United States had performed the [patented] method using the [accused] products." *Id.*").

[44] *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("claims are infringed, not specifications."); *Katz v. AIWA Am., Inc.*, 818 F. Supp. 730, 739 (D.N.J. 1993).

[45] *Id.*

31

To decide whether any of VMware's computing products and/or their use directly infringe an asserted claim, you must compare that product and/or use with the patent claim and determine whether every element (or as they also are called, limitation) of the claim is included; If so, then VMware's product and/or its use directly infringes or did infringe that claim. If not, then the VMware product and/or its use does not directly infringe that claim.  **[VMWARE OBJECTS to the preceding paragraph and PROPOSES removing it.  As Cirba only alleges literal infringement under direct infringement, how a jury determines direct infringement should be explained in the following section on literal infringement.]**

You must determine, separately for each asserted claim, whether or not there is any infringement. There is one exception to this rule. If you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the use meets additional requirements of any claims that depend on the independent claim, and thus, whether those claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

You may find direct infringement based on as little as one instance of the claimed use being performed.[46]  Proof of direct infringement may be based on circumstantial evidence.[47]

**[VMWARE OBJECTS to the preceding two sentences and PROPOSES removing the**

---

[46] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).

[47] *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1318 (Fed. Cir. 2009).

preceding two sentences.[48]  **If not removed, VMWARE PROPOSES replacing the preceding two sentences with the following:  "Direct infringement of a method claim can be based on one instance of the claimed method being performed.  A patentee need not always have direct evidence of infringement, as infringement may be established by circumstantial evidence.  To show direct infringement of a method claim, Densify must show that VMware performed each and every step in the claimed method in the United States."[49]]**

---

[48] *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) (holding that "[t]he sale of [an apparatus capable of performing a claimed process is] not a direct infringement because a method or process claim is directly infringed only when the process is performed"); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1374 (Fed. Cir. 1991) (holding method claims were not directly infringed by the mere sale of an apparatus capable of performing the claimed process); *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012) ("However, Mirror Worlds, as the patentee here, has to show that Apple performed all of the steps in the claimed methods. . . . Mirror Worlds did not offer any evidence that anyone, Apple's customers or otherwise, actually performed the patented steps.  Mirror Worlds relies on user manuals describing the various accused features, software reviews allegedly showing a customer performing each step of the asserted method claims, and Apple surveys listing Spotlight as the 'most beneficial feature' of Tiger. However, Mirror Worlds cites no trial testimony of customers actually using each step of the method claims or tying together the various manuals, reviews, and surveys as evidence of actual use of the claimed method."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("To infringe a method claim, a person must have practiced all steps of the claimed method.").

[49] *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012) ("Direct infringement of a method claim can be based on even one instance of the claimed method being performed. *See Lucent*, 580 F.3d at 1317. A patentee need not always have direct evidence of infringement, as infringement may be established by circumstantial evidence. *Id.* However, Mirror Worlds, as the patentee here, has to show that Apple performed all of the steps in the claimed methods. Mirror Worlds failed to meet that burden."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("To infringe a method claim, a person must have practiced all steps of the claimed method.") (internal citations omitted).

33

For direct infringement, Densify is not required to prove that VMware intended to infringe or knew of the patent.  In other words, VMware's knowledge and intent are irrelevant **[DENSIFY PROPOSES: to infringement]**; all that matters is whether VMware's use of the product is covered by any one of the claims. **[VMWARE OBJECTS to the preceding sentence and PROPOSES replacing it with the following:  Whether or not VMware knew its accused products infringed or even knew of the patent does not matter in determining direct infringement.[50]]**

---

[50] Authority: N.D. Cal. Model Patent Jury Instructions, 3.2 Direct Infringement.

**4.3    DIRECT INFRINGEMENT - LITERAL INFRINGEMENT[51] [Disputed]**

[VMWARE PROPOSES:  Densify has only asserted one type of direct infringement:  literal infringement.  To decide whether the accused products literally infringe a claim of the '687 or '367 patents, you must compare the accused products with the claim using my instructions as to the meaning of the claims and determine whether every requirement of the claim is included in the accused product.  If so, the accused product literally infringes that claim.  If, however, the accused product does not have every requirement in the claim, it does not literally infringe that claim.

Densify has asserted two types of claims in this case:  "apparatus" claims and "method" claims.  Specifically, Densify asserts the following claims:

---

[51] Authority:  Adapted from N.D. Cal. Model Patent Jury Instructions, 3.3. Literal Infringement; ABA Model Patent Jury Instructions, 8.4 Literal Infringement; and Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-00284, D.I.  442 (Jan. 23, 2019), 4.1.1 Direct Infringement by "Literal Infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) (holding that "[t]he sale of [an apparatus capable of performing a claimed process is] not a direct infringement because a method or process claim is directly infringed only when the process is performed"); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991) (holding method claims were not directly infringed by the mere sale of an apparatus capable of performing the claimed process); *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012) ("However, Mirror Worlds, as the patentee here, has to show that Apple performed all of the steps in the claimed methods. . . . Mirror Worlds did not offer any evidence that anyone, Apple's customers or otherwise, actually performed the patented steps.  Mirror Worlds relies on user manuals describing the various accused features, software reviews allegedly showing a customer performing each step of the asserted method claims, and Apple surveys listing Spotlight as the 'most beneficial feature' of Tiger.  However, Mirror Worlds cites no trial testimony of customers actually using each step of the method claims or tying together the various manuals, reviews, and surveys as evidence of actual use of the claimed method."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("To infringe a method claim, a person must have practiced all steps of the claimed method.").

- **'687 patent: claims 3 and 7 (both method claims)**

- **'367 patent:**

  - **Method claims 1 and 9**

  - **Apparatus claims 13 and 17**

In order to prove direct infringement by literal infringement of the asserted "apparatus" claims, Densify must prove that VMware made, used, sold, or offered to sell the apparatus defined in that claim in the United States without Densify's permission. To prove direct infringement by literal infringement of the asserted "method" claims, Densify must prove that VMware performed each and every step in that claim in the United States. If a product or its use omits even a single structure or step recited in the claim, then you must find that VMware has not directly infringed that claim by literal infringement.

You must determine literal infringement with respect to each claim individually. Thus, each of the accused products and its use should be compared to the invention described in each claim it is alleged to infringe.  To prove literal infringement, it is not enough that the accused products or their use are equivalent or insubstantially different from the claimed inventions.]

## 4.4    INDUCED INFRINGEMENT[52] [Disputed]

A party induces patent infringement if it causes, urges or encourages another to infringe a claim of the patent which it is aware of or of which it is willfully blind.

**[VMWARE OBJECTS to the preceding sentence as it is inaccurate, and PROPOSES replacing it with the following:  Densify alleges that VMware has induced others to directly infringe the '687 and '367 patents.[53]]**  Inducement to infringe a claim cannot occur unintentionally. This is different from direct infringement, which, as I have told you, can occur unintentionally.

Densify alleges that VMware is liable for infringement by actively inducing others, including customers, to directly infringe the '687 and '367 patents. More particularly, Densify asserts that VMware induced patent infringement after it became aware of the Densify patents by encouraging its customers to use its infringing product. **[VMWARE OBJECTS to the preceding two sentences and PROPOSES replacing the preceding two sentences with the**

---

[52] Authority: Adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 4.3 Indirect Infringement; *Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 182, (S.D. N.Y. 1999), *aff'd*, 230 F.3d 1379 (Fed. Cir. 2000) ("Although proof that a defendant has actively induced infringement requires proof that another has directly infringed the patent in suit, such direct infringement may be established by circumstantial evidence of extensive sales by defendant of a product capable of use to practice the patented method and distribution by defendant of an instruction manual teaching the patented method."); *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, No. CV 11-484-RGA, 2014 WL 4695765, at *7 (D. Del. Sept. 12, 2014) (Stark, J.); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 884–85 (Fed. Cir. 2001).

[53] **Authority:  Adapted from Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189, D.I. 272 (Nov. 25, 2019), 5.3 Induced Infringement.**

**following:  It is not sufficient that VMware was aware of the act or acts by the third party that allegedly constitute the direct infringement.[54]**] To be liable for inducement to infringe, VMware must have known of the patent and encouraged or instructed another person how to use a product in a manner that you, the jury, find infringes or did infringe the asserted claims and must have had knowledge, or have acted with willful blindness, that the induced acts constituted patent infringement. Willful blindness exists where an alleged inducer believed there was a high probability that its acts, if taken, would constitute infringement, but the alleged inducer deliberately avoided confirming that belief.  **[VMWARE OBJECTS to the preceding sentence and PROPOSES replacing the preceding sentence with the following: To find willful blindness (1) VMware must have subjectively believed that there was a high probability that a patent existed covering the accused products, and (2) VMware must have taken deliberate actions to avoid learning of that infringement.[55] The mere fact, if true, that VMware knew or should have known that there was a substantial risk that its customers' acts would infringe the asserted patents would not be sufficient for active inducement of infringement.[56]**]

---

[54] **Authority: Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 4.2. Indirect Infringement—Actively Inducing Patent Infringement.**

[55] Authority:  Adapted from American Intellectual Property Law Association, 2018 Model Patent Jury Instructions (July 2018), 3.8 Actively Inducing Patent Infringement, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-jury-instructions.pdf; *see also* Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189, D.I.  272 (Nov. 25, 2019), 5.3 Induced Infringement.

[56] Authority:  Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189, D.I. 272 (Nov. 25, 2019), 5.3 Induced Infringement.

As with direct infringement, you must determine whether there has been inducement on a claim-by-claim basis.

VMware is liable for inducement of infringement of a claim only if Densify proves by a preponderance of the evidence that:

1. The third party directly infringed the claim;

2. VMware took action during the time the Densify patents were in force intending to cause the infringing acts by the third party; and

3. VMware was aware of the Densify patents and: (i) knew that the acts, if taken, would constitute infringement of those patents; or (ii) VMware believed there was a high probability that the acts, if taken, would constitute infringement of the Densify patents but deliberately avoiding confirming that belief.

**[VMWARE OBJECTS to the preceding paragraphs that begin with "VMware is liable for inducement of infringement . . ." and PROPOSES replacing those preceding paragraphs with the following: VMware is liable for inducement of infringement of a claim only if Densify proves by a preponderance of the evidence each of the following:**

1. **That allegedly infringing acts were carried out by a third party that literally infringed one or more of the claims of the '687 and '367 patents, meeting all the criteria discussed in my instructions on the topic stated above;**

2. **That VMware took some affirmative action, or that VMware continued to take an action specifically intending to cause the third parties to directly infringe the '687 and '367 patents;**

3. **That VMware knew of the '687 and '367 patents – and that (i) VMware**

knew that the infringing acts, if taken, would constitute direct

infringement of the '687 and '367 patents; or (ii) VMware believed that

there was a high probability that the actions taken by others infringed the

'687 and '367 patents – and took deliberate steps to avoid learning of that

infringement;

4. **That VMware's alleged inducement, as opposed to other factors, actually**

**caused the third parties to literally infringe.**[57]**]**

In order to establish inducement of infringement, it is not sufficient that the third party

directly infringed the claim. Nor is it sufficient that VMware was aware of the act or acts by

the third party that allegedly constitute the direct infringement. Rather, you must find that

VMware specifically intended that the third party infringe the Densify patents or that VMware

believed there was a high probability the third party would infringe the Densify patents but

remained willfully blind to the infringing nature of the third party's acts, in order to find

inducement of infringement.

For example – assuming all of the other requirements of inducing infringement that I

have described to you are satisfied – an accused infringer can indirectly infringe the patent-in-

suit by selling the accused product with instructions leading end-users to use the product as

---

[57] **Authority:  Adapted from Judge Stark's Final Jury Instructions,** *GlaxoSmithKline*
*LLC v. Teva Pharm. USA, Inc.***, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.2 Induced**
**Infringement; Judge Stark's Final Jury Instructions,** *Roche Diagnostics Corp. v. Meso Scale*
*Diagnostics, LLC***, No. 1:17-cv-00189, D.I. 272 (Nov. 25, 2019), 5.3 Induced Infringement;**
**Authority:  American Intellectual Property Law Association, 2018 Model Patent Jury**
**Instructions (July 2018), 3.8 Actively Inducing Patent Infringement,** *available at*
https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-
jury-instructions.pdf.

claimed in the patent, since it is inferred that the end-users follow those instructions with respect to the accused product.  **[VMWARE OBJECTS to the preceding paragraph and PROPOSES removing it.]** Although proof that a defendant has actively induced infringement requires proof that another has directly infringed the patent in suit, such direct infringement may be established by circumstantial evidence of extensive sales by defendant of a product capable of use to practice the patented method and distribution by defendant of an instruction manual teaching the patented method.[58]  **[VMWARE OBJECTS to the preceding sentence, as direct infringement of a method claim requires that each and every step of the claimed method be performed in the United States, and PROPOSES removing the preceding sentence.[59]]**

---

[58] *Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 182, (S.D.N.Y. 1999), *aff'd*, 230 F.3d 1379 (Fed. Cir. 2000) ("Although proof that a defendant has actively induced infringement requires proof that another has directly infringed the patent in suit, such direct infringement may be established by circumstantial evidence of extensive sales by defendant of a product capable of use to practice the patented method and distribution by defendant of an instruction manual teaching the patented method."); *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, No. CV 11-484-RGA, 2014 WL 4695765, at *7 (D. Del. Sept. 12, 2014) (Stark, J.); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 884–85 (Fed. Cir. 2001).

[59] *Limelight Networks, Inc. v. Akamai Techs., Inc*., 572 U.S. 915, 921 (2014); *see also Ormco Corp. v. Align Tech., Inc*., 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) (holding that "[t]he sale of [an apparatus capable of performing a claimed process is] not a direct infringement because a method or process claim is directly infringed only when the process is performed"); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1374 (Fed. Cir. 1991) (holding method claims were not directly infringed by the mere sale of an apparatus capable of performing the claimed process); *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012) ("However, Mirror Worlds, as the patentee here, has to show that Apple performed all of the steps in the claimed methods. . . . Mirror Worlds did not offer any evidence that anyone, Apple's customers or otherwise, actually performed the patented steps.  Mirror Worlds relies on user manuals describing the various accused features, software

41

When considering whether VMware knew, or acted with willful blindness, that the induced actions would constitute infringement, you may consider all of the circumstances, including whether or not VMware obtained the advice of a competent lawyer. There is no affirmative duty to seek opinion of counsel regarding infringement. However, opinion of counsel evidence – or lack of such evidence – may be probative of whether VMware knew, or acted with willful blindness, that its actions would cause direct infringement. While the decision not to obtain an opinion of counsel may be probative circumstantial evidence that a defendant knew, or acted with willful blindness, that its action would cause direct infringement, that fact cannot replace any of the requirements to prove inducement.

**[VMWARE OBJECTS to the preceding paragraph because VMware is not relying on opinion of counsel and PROPOSES removing it.  If the Court permits the jury to consider opinion of counsel (or the absence of opinion of counsel), VMWARE PROPOSES replacing the preceding two sentences with the following: You may not assume that merely because VMware did not obtain a lawyer's opinion, that the opinion would have been unfavorable.   The absence of a lawyer's opinion is not sufficient for you to find that VMware intended to induce infringement of the patent.[60]]**

---

reviews allegedly showing a customer performing each step of the asserted method claims, and Apple surveys listing Spotlight as the 'most beneficial feature' of Tiger. However, Mirror Worlds cites no trial testimony of customers actually using each step of the method claims or tying together the various manuals, reviews, and surveys as evidence of actual use of the claimed method."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("To infringe a method claim, a person must have practiced all steps of the claimed method.").

[60] Authority:  Adapted from American Intellectual Property Law Association, 2018 Model Patent Jury Instructions (July 2018), 11.1 Willful Infringement – Reliance on Legal Opinion, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-

If you find that no claim of the Densify patents has been directly infringed, you cannot find VMware liable for inducement.

---

07-23-clean---aipla-model-patent-jury-instructions.pdf.  The AIA eliminated failure to obtain an opinion of counsel as a factor in determining the existence of willful infringement.  *See* 35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent."). Although Section 298 originally applied only to AIA patents, a subsequent technical correction made Section 298 applicable in all patent cases filed after January 14, 2013. *See* Pub. L. No. 112-274, § 1(a), 126 Stat. 2456 (2013).

### 4.5     DIRECT INFRINGEMENT BY A THIRD PARTY[61] [Disputed]

The first requirement for induced infringement, which I just discussed, is that Densify must prove by a preponderance of the evidence that the allegedly infringing acts were carried out by a third party that literally infringed one or more of the claims of the '687 and '367 patents.

To literally infringe a method claim, a third party must perform each and every step of the claimed method in the United States.  It is not enough that the accused product is capable of infringing use.

If you do not find that there is literal infringement by a single actor, or if you do not find that VMware actively induced these acts, you must find that VMware did not induce infringement of the patent.[62]

--------------------------------

[61] *Limelight Networks, Inc. v. Akamai Techs., Inc*., 572 U.S. 915, 921 (2014); *see also Ormco Corp. v. Align Tech., Inc*., 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) (holding that "[t]he sale of [an apparatus capable of performing a claimed process is] not a direct infringement because a method or process claim is directly infringed only when the process is performed"); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1374 (Fed. Cir. 1991) (holding method claims were not directly infringed by the mere sale of an apparatus capable of performing the claimed process); *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012) ("However, Mirror Worlds, as the patentee here, has to show that Apple performed all of the steps in the claimed methods. . . . Mirror Worlds did not offer any evidence that anyone, Apple's customers or otherwise, actually performed the patented steps.  Mirror Worlds relies on user manuals describing the various accused features, software reviews allegedly showing a customer performing each step of the asserted method claims, and Apple surveys listing Spotlight as the 'most beneficial feature' of Tiger. However, Mirror Worlds cites no trial testimony of customers actually using each step of the method claims or tying together the various manuals, reviews, and surveys as evidence of actual use of the claimed method."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("To infringe a method claim, a person must have practiced all steps of the claimed method.").

[62] Authority:  Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 4.2 Indirect Infringement—Actively Inducing Patent Infringement.

**[DENSIFY PROPOSES: Proof of indirect infringement may be based on circumstantial evidence, rather than direct evidence.[63]][64]**

---

[63] **Authority:  Judge Stark's Final Jury Instructions,** *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, **No. 1:12-cv-00540, D.I. 400 (June 4, 2015);** *Lucent Techs., Inc. v. Gateway, Inc.*, **580 F.3d 1301, 1317 (Fed. Cir. 2009);** *Moleculon Res. Corp. v. CBS, Inc.*, **793 F.2d 1261, 1272 (Fed. Cir. 1986) ("It is hornbook law that direct evidence of a fact is not necessary.").**

[64] **VMWARE OBJECTS to Densify's proposed addition as unnecessary, confusing, and prejudicial, as this sentence may suggest to the jury that the burden of proof is lower for indirect infringement.  The standard for direct and circumstantial evidence is already set forth in Section 1.4.  VMWARE PROPOSES not adding Densify's proposed sentence.**

45

### 4.6    AFFIRMATIVE ACTIONS INTENDED TO CAUSE INFRINGEMENT[65] [Disputed]

The second requirement for induced infringement, which I just discussed, is that Densify must prove by a preponderance of the evidence that VMware took actions with the specific intent to cause third parties to engage in infringing acts. This can be shown through direct or circumstantial evidence.

In order to establish inducement of infringement, it is not sufficient that the third parties infringe the Densify patents. Nor is it sufficient that VMware was aware of acts by others that would directly infringe. Rather, in order to find inducement, you must find that VMware intended others to use its products in at least some ways that would infringe the asserted claims of the Densify patents, took affirmative acts to encourage direct infringement, and that those actions actually caused the direct infringement of the asserted claims of the Densify patents.

Densify must prove by a preponderance of the evidence that VMware took affirmative actions intending to induce infringement.[66]

Among the evidence on which Densify has relied in attempting to show that VMware induced infringement of the Densify patents are VMware's advertisements and other statements to its customers, customer training, product demonstrations and instructions or directions to customers on how to utilize, among other things, workload optimization, affinity and anti-

---

[65] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.2.2 Affirmative Actions Intended To Cause Infringement.

[66] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.2.2 Affirmative Actions Intended to Cause Infringement.

46

affinity rules or policies, host-based placement, fault tolerance, compute policies, and visualize capacity distribution levels and workload balance plans for virtual environments (e.g., multiple vCenters, Datacenters, custom datacenters, clusters, etc.) and the operating console workload utilization widget or dashboard (also known as capacity utilization dashboard) to obtain optimal performance across those virtual environments.  **[VMWARE OBJECTS to the preceding paragraph as it is improper to include evidentiary recitation and confusing to the jury, and PROPOSES removing the preceding paragraph.]**

### 4.7     KNOWLEDGE THAT THE ACTS, IF TAKEN, WOULD CONSTITUTE INFRINGEMENT[67] [Disputed]

The third requirement for induced infringement, which I just discussed, is that Densify must prove by a preponderance of the evidence that VMware was aware of the Densify patents and knew that the acts it induced third parties to take would constitute infringement of the Densify patents or had a high probability of infringing the Densify patents. **[VMWARE OBJECTS to the preceding paragraph and PROPOSES replacing it with the following: The third requirement for induced infringement, which I just discussed, is that Densify must prove by a preponderance of the evidence that VMware knew of the '687 and '367 patents. Densify must also prove by a preponderance of the evidence that VMware knew that the acts it induced third parties to take would, if taken, constitute infringement of the '687 and '367 patents, or that VMware believed there was a high probability that the actions taken by third parties would infringe the '687 and '367 patents and took deliberate steps to avoid learning of that infringement."[68]]**

Inducing infringement cannot occur unintentionally. It is not enough for the accused inducer to lead another to engage in conduct that happens to amount to infringement. Rather, to induce infringement, the accused inducer must persuade another to engage in conduct that the

---

[67] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.2.3 Knowledge That The Acts, If Taken, Would Constitute Infringement.

[68] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.2.3 Knowledge That The Acts, If Taken, Would Constitute Infringement; Authority:  American Intellectual Property Law Association, 2018 Model Patent Jury Instructions (July 2018), 3.8 Actively Inducing Patent Infringement, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-jury-instructions.pdf.

inducer knows - or believes with high probability, but deliberately avoided confirming - is

infringement.

## 4.8    INDUCEMENT MUST CAUSE DIRECT INFRINGEMENT[69]

**[Disputed]**

Finally, Densify must prove that VMware's alleged inducement, as opposed to other factors, actually caused third parties to directly infringe the Densify patents. This means that VMware cannot be liable for induced infringement where Densify does not show that VMware successfully communicated with and induced a third-party direct infringer and that the communication was the cause of the direct infringement by the third-party infringer.

**[VMWARE OBJECTS to the terms "direct" and "directly" in the preceding paragraph and PROPOSES replacing "direct" or "directly" with "literal" or "literally" in the preceding paragraph.]**

Like all other disputed issues in this case, this final element of induced infringement can be proven by circumstantial evidence. Densify is not required to present direct proof of any direct infringer third party stating, for example, that VMware caused her to infringe. Densify must prove that VMware's actions led third parties to directly infringe a claim of the Densify patents, but Densify may do so with circumstantial- as opposed to direct- evidence. **[VMWARE**

---

[69] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.2.3 Inducement Must Cause Direct Infringement; *see Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009); *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, No. CV 11-484-RGA, 2014 WL 4695765, at *7 (D. Del. Sept. 12, 2014) (Stark, J.) ("When viewed as a whole, Silver Peak offered sufficient circumstantial evidence to permit a jury to reasonably conclude that Riverbed customers used the infringing functionality in the United States. Silver Peak provided the jury with evidence of Riverbed's high sales volume, numerous Riverbed documents describing the benefits of FT, how to use FT, and instructing customers on how to test FT, as well as blog posts on Riverbed's U.S. support forum from users who used FT."); *Nalco Co. v. Turner Designs, Inc.*, 2014 WL 5335736, *6-*7 (N.D. Cal. 2014).

**OBJECTS to the preceding paragraph as duplicative of Section 1.4's instructions regarding direct and circumstantial evidence and PROPOSES removing the preceding paragraph.  If this paragraph is not removed, VMWARE OBJECTS to the terms "direct" and "directly" in the preceding paragraph and PROPOSES replacing "direct" or "directly" with "literal" or "literally" in the preceding paragraph.]**  Circumstantial evidence can include high sales volume, documents describing the benefits of the patented features, how to use the features, and instructing customers on how to test the features, as well as blog posts from users of the features.[70] **[VMWARE OBJECTS to the preceding sentence as it is improper to include evidentiary recitation and this would be confusing to the jury.  It also omits the legal standard for direct infringement by the third party.  VMWARE therefore PROPOSES removing the preceding sentence.  If not removed, VMWARE PROPOSES adding the following: Such circumstantial evidence must be sufficient to prove that VMware's actions led third parties to literally infringe a claim of the asserted patents by performing each and every step of the claimed method in the United States.[71]  [DENSIFY**

---

[70] *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, No. CV 11-484-RGA, 2014 WL 4695765, at *7 (D. Del. Sept. 12, 2014) (Stark, J.).

[71] *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, No. CV 11-484-RGA, 2014 WL 4695765, at *7 (D. Del. Sept. 12, 2014) ("Silver Peak offered sufficient circumstantial evidence to permit a jury to reasonably conclude that Riverbed customers used the infringing functionality in the United States."); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) (holding that "[t]he sale of [an apparatus capable of performing a claimed process is] not a direct infringement because a method or process claim is directly infringed only when the process is performed"); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1374 (Fed. Cir. 1991) (holding method claims were not directly infringed by the mere sale of an

**PROPOSES: Densify's instruction is proper and does not misstate the standard for inducement. If VMWare's proposal is accepted, add the following sentence: Circumstantial evidence of induced infringement is sufficient for a finding of such indirect infringement without requiring proof that any individual third-party direct infringer was actually persuaded to infringe.[72]] [VMWARE OBJECTS to Densify's proposed addition as contrary to established law[73] and duplicative of Section 1.4, and PROPOSES that it not be added to VMware's proposal above.].**

---

apparatus capable of performing the claimed process); *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012) ("However, Mirror Worlds, as the patentee here, has to show that Apple performed all of the steps in the claimed methods. . . . Mirror Worlds did not offer any evidence that anyone, Apple's customers or otherwise, actually performed the patented steps.  Mirror Worlds relies on user manuals describing the various accused features, software reviews allegedly showing a customer performing each step of the asserted method claims, and Apple surveys listing Spotlight as the 'most beneficial feature' of Tiger. However, Mirror Worlds cites no trial testimony of customers actually using each step of the method claims or tying together the various manuals, reviews, and surveys as evidence of actual use of the claimed method."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("To infringe a method claim, a person must have practiced all steps of the claimed method.").

[72] *Mass Engineered Design v. Planar Systems, Inc.*, No. 3:16-cv-1510-SI, Final Jury Instruction (D. Ore. May 2, 2018).
[73] *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) (To establish indirect infringement, a patentee must show "that the defendant's actions led to direct infringement.").

### 4.9 WILLFUL INFRINGEMENT[74]  [Disputed]

In this case, Densify argues that VMware willfully infringed Densify's patents.

To prove willful infringement, Densify must persuade you that VMware infringed at least one of the asserted claims of the '687 or '367 patent. The requirements for proving such infringement were discussed in my prior instructions. In addition, to prove willful infringement of a claim, Densify must persuade you that it is more likely true than not true that VMware intentionally ignored or recklessly disregarded that claim. You must base your decision on VMware's knowledge and actions at the time of infringement. Evidence that VMware had knowledge of the patents at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that VMware engaged in additional conduct evidencing deliberate or reckless disregard of Densify's patent rights. **[VMWARE OBJECTS to the preceding paragraph and PROPOSES replacing it with the following: If you have decided that VMware has infringed a valid claim of the '367 or '687 patent, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Densify proved by a preponderance of the evidence that VMware knew of the asserted patents before the lawsuit was filed and**

---

[74] Authority: Adapted from Judge Andrews' Final Jury Instructions, *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579 (D. Del. 2019), 1:16-cv-00638-RGA, D.I.  317 (May 1, 2019), 3.3. Willful Infringement; Northern District of California Model Patent Jury Instructions (updated October 2019), 3.8 Willful Infringement; *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016) ("[P]atent-infringement litigation has always been governed by a preponderance of the evidence standard. Enhanced damages are no exception.") (citation and quotation mark omitted); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 195 L. Ed. 2d 278 (2016); *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579, 592-93 (D. Del. 2019).

53

**intentionally infringed them. For example, you may consider whether VMware's behavior was malicious, wanton, deliberate, consciously wrongful, in bad faith, or as it may be described – "characteristic of a pirate." However, you may not find that VMware's infringement was willful merely because VMware knew about the patent, without more.[75] ]**

In determining whether Cirba has proven that VMware's infringement was willful, you must consider all of the facts surrounding the alleged infringement including:

1. Whether VMware acted consistently with the standards of behavior for its industry;

2. Whether VMware intentionally copied a product of Cirba that is covered by an asserted claim;

3. Whether VMware reasonably believed it did not infringe or that the asserted patent was invalid;

4. Whether VMware made a good-faith effort to avoid infringing the asserted patents, for example, whether VMware attempted to design around the asserted patents (evidence that the accused infringer attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that infringement was not willful[76]); and

5. Whether VMware tried to cover up its infringement.[77]

**[VMWARE PROPOSES: The fact that you may have determined that VMware was**

---

[75] Authority:  Adapted from Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189, D.I. 272 (Nov. 25, 2019), 7 Willful Infringement.

[76] Authority:  ABA Model Patent Jury Instructions, 9. Willful Infringement

[77] Authority: Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 9. Willful Infringement.

wrong and that the '687 or '367 patents is/are infringed does not mean that VMware's infringement was willful.  All that is required is that VMware had a good faith belief that it did not infringe or that the patent was invalid, and that VMware's belief was reasonable under all of the circumstances.[78]  ]

[VMWARE PROPOSES: If you do decide that there was willful infringement, that decision should not affect any damages award you give in this case.[79]]

---

[78] Authority:  ABA Model Patent Jury Instructions, 9. Willful Infringement.

55

## 5.0     INVALIDITY

### 5.1     INVALIDITY GENERALLY[80] [Disputed]

The granting of a patent by the United States Patent and Trademark office carries with it the presumption that the patent is valid. The law presumes that the Patent and Trademark Office acted correctly in issuing the patent. Each of the asserted claims is presumed valid independently of the validity of each other claim.  Nevertheless, when the validity of a patent has been put at issue as part of patent litigation, it is the responsibility of the jury to review what the Patent Office has done consistent with the Court's instructions on the law.[81]  **[DENSIFY PROPOSES: However, the fact that a patent application is rejected or amended before the patent is issued has no bearing on its ultimate validity.  With respect to VMware's contentions that Densify's patents are invalid due to anticipation or obviousness due to prior art, the only relevant comparisons are between the claims of the patents and the disclosures of the prior art references.[82]]  [VMWARE OBJECTS to Cirba's proposed addition and PROPOSES to delete it because Densify's proposed addition is not found in the model jury instructions.[83]]**

---

[80] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 5.1 Invalidity Generally.

[81] Authority: Judge Stark's Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 6.1 Presumption of Validity.

[82] *Cf.* Judge Stark's Final Jury Instructions, *Leader Techs., Inc. v. Facebook, Inc.*, No. 108-cv-00862-LPS, D.I. 601 (July 26, 2010), 4.2 Prior Art (instructing jury not to take improper inferences from statements made by counsel during cross examination).

[83] *See, e.g.*, Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 5.1 Invalidity Generally; Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-00284, D.I. 442 (Jan. 23, 2019), 5 Invalidity; 6.1 Prior Art Defined; N.D. Cal. Model Patent Jury Instructions, 4.1a Invalidity–Burden of Proof, 4.3a1 Anticipation, and 4.3b

Patent invalidity is a defense to patent infringement.[84]

VMware has asserted as a defense to patent infringement in this case that Densify's patents are invalid. Because each of the asserted claims is presumed valid independently of the validity of each other claim[85], this puts the burden on VMware of proving invalidity by clear and convincing evidence on a claim-by-claim basis; that is, you must be left with an abiding conviction that each of the asserted claims of the '687 and '367 patents are invalid. [**VMWARE OBJECTS to the clause that begins with "that is, you must be left with an abiding conviction . . ." and PROPOSES removing that clause.[86]**] [**VMWARE PROPOSES: VMware may rely on prior art that was before the patent examiner during prosecution. VMware's burden of proof remains the same regardless of whether the references on which VMware is relying to invalidate a patent have previously been before the patent examiner.[87]**]

Even though the Patent Office examiner allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are proven to be invalid. For

---

Obviousness–Alternative 1; ABA Model Patent Jury Instructions, 3.2.1 Invalidity, 3.2.2 Anticipation, 3.2.3 Obviousness, 10.6 The Prior Art; the Federal Circuit Bar Association Model Patent Jury Instructions, 4.1 Invalidity–Burden of Proof, 4.3a-1 Prior Art, 4.3c Obviousness, 4.3c(ii) Scope and Content of the Prior Art.

[84] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 5.1 Invalidity Generally.

[85] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 5.1 Invalidity Generally.

[86] The proposed instructions to be removed do not appear in Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-00284, D.I. 442 (Jan. 23, 2019).

[87] Authority: Judge Stark's Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 6.1 Presumption of Validity.

a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non-obvious. A patent cannot take away from the right of anyone who wants to use what was already known or used by others, or what would have been obvious to those of skill in the art at the time the invention was made.

VMware alleges that the '687 patent is invalid because:

1. The asserted claims are anticipated and/or rendered obvious in light of the following prior art: VMware's VirtualCenter 2, Mateo, Ji, Hillier, Wahlert, Chambers, and Raman

VMware alleges that the '367 patent is invalid because:

1. The asserted claims are anticipated and/or rendered obvious in light of the following prior art: vCenter Operations 1.0; vCenter Operations Standard Evaluator's Guide; Bailey; O'Sullivan; Barber; Barnard, Akorri BalancePoint, Cannon, and Wong.

I will now instruct you in more detail why VMware alleges that the asserted claims of the Densify patents are invalid.

58

## 5.2     PRIOR ART[88] [Disputed]

Prior art is the legal term used to describe what others had done in the field before the invention was made. Prior art is the general body of knowledge in the public domain, such as articles, products, or other patents, before the invention was made. The prior art need not have been available to every member of the public, but it must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

For the asserted claims, prior art includes any of the following items received into evidence during trial:

1. Any product or method that was publicly known or used by others in the United States before the patented invention was made;

2. Any product or method that was in public use or on sale in the United States more than one year before the patent was filed **[VMWARE OBJECTS to the preceding sentence as vague and confusing, and as not accurately stating the legal standard under 35 U.S.C. § 102(b).  VMWARE PROPOSES replacing the phrase "patent was filed" with the following: "the earliest effective filing dates of the asserted patents (August 31, 2007 for the '687 Patent, and August 16, 2011 for the '367 Patent)."]**;

3. Patents that issued more than one year before the filing date of the patent, or before the invention was made;

4. Publications having a date more than one year before the filing date of the patent, or

---

[88] Authority: Adapted from Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 6.1 Prior Art Defined.

publicly accessible before the invention was made;

Adding "5. U.S. patents or published applications filed before the invention was made;" [89] and

6. Any product or method that was invented by someone else in the United States before its invention by the named patent inventors, even if it was not known to the public, where such other person did not abandon, suppress, or conceal such invention.

---

[89] 35 U.S.C. § 102(e)

### 5.3     PRIOR ART—PRIOR INVENTION[90] [Joint]

For an invention "invented by someone else in the United States before it was invented by the named patent inventors" to qualify as prior art, VMware must prove, by clear and convincing evidence, that such person reduced his or her invention to practice first or conceived of the invention first and was reasonably diligent in reducing it to practice.

"Conception" means the formation in the mind of an inventor of a definite and permanent idea of the complete and operative invention, such that, if the idea were communicated to a person of ordinary skill in the art, he or she would be able to make the invention without undue research or experimentation or the exercise of inventive skill. This requirement does not mean that the inventor has to have a prototype built or have actually explained the invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete and operative idea. In other words, the testimony of an inventor is not sufficient, standing alone, to prove a conception date. An inventor must provide independent, corroborating evidence in addition to his or her own oral testimony. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. Conception must include every feature or limitation of the claimed invention.

"Reduction to practice" means an invention is sufficiently developed to show that it would work for its intended purpose. Reduction to practice may be an actual reduction or a constructive reduction to practice, which occurs when a patent application on the claimed

---

[90] Authority: Adapted from Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Tech. Corp.,* No. 1:16-cv-00284, D.I. 442 (January 23, 2019), 6.1.1 Prior Art – Prior Invention, *et seq*.

61

invention is filed. An inventor must exercise reasonable diligence in reducing his invention to practice. "Reasonable diligence" means engaging in continuous activity to reduce the invention to practice. As with proof of the conception date, there must be evidence in addition to the inventor's testimony that shows diligence.

62

### 5.4  ANTICIPATION[91] [Disputed]

A party may claim a patent is invalid under a theory of anticipation. In order for someone to be entitled to a patent, the invention must actually be new. In general, inventions are new when the identical invention as claimed has not been used or disclosed before. If the claim is not new, we say that it was "anticipated" by prior art. A claim that is "anticipated" by the prior art is not entitled to patent protection.

Anticipation must be proved on a claim-by-claim basis.  In this case, VMware alleges that the asserted claims of the '687 patent are anticipated by VirtualCenter2 and/or Wahlert. VMware also alleges that the asserted claims of the '367 patent are anticipated by vCenter Operations 1.0, vCenter Operations Standard Evaluator's Guide, and/or Barber.  VMware must convince you that each claim was anticipated by clear and convincing evidence, i.e., that the evidence leaves you with an abiding conviction that it is highly probable that the claims are invalid.  **[VMWARE OBJECTS to the phrase "that the evidence leaves you with an abiding conviction" and PROPOSES removing that phrase.]** To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation.

To anticipate the invention, the disclosure in the prior art reference does not have to use the same words as the claim, but all of the requirements of the claim must be there, either stated expressly or inherently, so that someone of ordinary skill in the art to which the claimed

---

[91] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 5.3 Anticipation.

invention pertains, looking at that one reference, could make and use the claimed invention.

Thus, for purposes of anticipation, you should consider that which is expressly stated or present

in the item of prior art, and also that which is inherently present.

Prior art inherently anticipates a patent claim if the missing element or feature would be

the natural result of following what the prior art teaches to persons of ordinary skill in the art.[92]

A party claiming inherent anticipation must prove by clear and convincing evidence that the

allegedly inherent element necessarily is present. Occasional results are not inherent. A claim is

inherently anticipated when the claimed invention inherently (necessarily) results from practice

of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or

unappreciated by one of ordinary skill at the time of the reference.  **[VMWARE PROPOSES:**

**Evidence outside of the prior art reference itself may be used to show that the elements not**

**expressly disclosed in the reference are actually present. Mere probabilities are not enough.**

**It is not required, however, that persons of ordinary skill actually recognized the inherent**

**disclosure at the time the prior art was first known or used. Thus, the prior use of the**

**patented invention that was unrecognized and unappreciated can still be an invalidating**

**anticipation.[93]] [DENSIFY PROPOSES: THIS PARAGRAPH SHOULD BE REMOVED**

**BECAUSE INHERENCY IS NOT AT ISSUE].**

In assessing VMware's anticipation defense, you must decide whether VMware has

proven by clear and convincing evidence that the prior art expressly or inherently discloses to a

person of ordinary skill in the art all the physical steps of the claimed apparatus or method. Thus,

---

[92] Judge Stark's Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 6.4 Anticipation – Inherency.

[93] Judge Stark's Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 6.4 Anticipation – Inherency.

you must compare the steps of the patent with the steps of the prior art method and assess

whether there is a difference between them.

## 5.5    OBVIOUSNESS--GENERALLY[94] [Disputed]

A third basis for claiming that a patent is invalid is obviousness. Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  Obviousness may be shown by considering one or more than one item of prior art.[95]

VMware contends that the asserted claims of the Densify patents are invalid for obviousness. VMware bears the burden of proving obviousness by clear and convincing evidence. VMware must show, by clear and convincing evidence, that the claimed invention would have obvious to a person having ordinary skill in the art at the time the invention was made. In determining whether the claimed invention was obvious, you must consider each claim separately. You should not use hindsight, such as by using the Densify patents as a roadmap to select from the prior art and retrace the path of the inventors. In other words, you should only consider what was known prior to the invention date, without the benefit of the later Densify patents and what those patents teach.

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was

---

[94] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 5.4 Obviousness—Generally.

[95] Authority: Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-00284, D.I. 442 (Jan. 23, 2019), 7 Obviousness.

made. The existence of each and every element of the claimed invention in the prior art does not

necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

To show obviousness, the law does not require that the prior art prove, to a statistical certainty,

that the claimed result would work.  In the context of obviousness, only a reasonable expectation

of success is required, not conclusive proof or absolute predictability.

You must put yourself in the place of a person of ordinary skill in the art at the time of

invention. In addition, you may consider whether there was a reason to combine or modify the

prior art references in the fashion claimed by the patent at issue. To find that the prior art

rendered a claimed invention obvious, you must find that a person having ordinary skill in the art

would have had a reasonable expectation of successfully accomplishing the claimed method.

In determining obviousness or non-obviousness of the subject matter of each of the

asserted claims, you should take the following steps, which I will explain more in just a moment:

1.      Determine the scope and content of the prior art;

2.      Identify the differences, if any, between each asserted claim and the prior art;

3.      Determine the level of ordinary skill in the pertinent art at the time the invention

of the patent was made; and

4.      Consider objective factors of non-obviousness. Additional considerations, if any,

that indicate that the invention was obvious or not obvious.[96]

Against this background, you will then decide whether the subject matter of each asserted

claim would have been obvious or nonobvious to a person of ordinary skill in the pertinent art.

---

[96] Authority: Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-00284, D.I. 442 (Jan. 23, 2019), 7 Obviousness.

**[VMWARE PROPOSES: In this case, VMware alleges that the asserted claims of the '687 patent were obvious in view of the following prior art combinations:**

- **VirtualCenter 2 alone or combined with Chambers, Raman, Wahlert, Hillier and/or Mateo**

- **Mateo combined with Wahlert and/or Hillier**

- **Ji combined with VirtualCenter 2, Chambers, Raman, Wahlert, and/or Mateo**

- **Hillier alone or combined with VirtualCenter 2, Mateo, Ji, and/or Wahlert**

- **Wahlert alone or combined with Mateo and/or VirtualCenter 2**

**VMware also alleges that the asserted claims of the '367 patent were obvious in view of the following prior art combinations:**

- **vCenter Operations 1.0 alone or combined with Bailey, O'Sullivan, Barber, Barnard, Cannon, and/or Wong**

- **vCenter Operations Standard Evaluator's Guide alone or combined with Bailey, O'Sullivan, Barber, Barnard, Cannon, and/or Wong**

- **Bailey alone or combined with vCenter Operations 1.0, vCenter Operations Standard Evaluator's Guide, Barber, Barnard, and/or Wong**

- **O'Sullivan alone or combined with vCenter Operations 1.0, vCenter Operations Standard Evaluator's Guide, Barber, and/or Wong**

- **Barber alone or combined with vCenter Operations 1.0, vCenter Operations Standard, Bailey, O'Sullivan, Barnard, Cannon, and/or Wong**

- **Barnard alone or combined with vCenter Operations 1.0, vCenter Operations Standard, and/or Barber**

68

- **Akorri BalancePoint alone or combined with vCenter Operations 1.0, vCenter Operations Standard, Barber and/or Wong.]**

**[DENSIFY PROPOSES: Omitting the section above starting from "In this case."  If the section is permitted, Densify Proposes adding "Densify denies that VMware has proven that any of the above constitutes prior art that renders the patent obvious. Also, VMware has not yet presented any invalidity evidence and any list of specific allegations may need to be modified to delete references not presented at trial.]**

69

**5.6      SCOPE AND CONTENT OF THE PRIOR ART[97] [Joint]**

In determining obviousness, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem that the inventors faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the claimed invention was trying to solve. The prior art may include any of the items discussed in Section 5.2:

---

[97] Authority: Adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 6.6. Obviousness—Scope And Content Of The Prior Art.

## 5.7    DIFFERENCES BETWEEN THE CLAIMED INVENTION AND

## PRIOR ART[98] [Disputed]

Second, you should analyze whether there are any relevant differences between the prior art taken as a whole and the asserted claims of the Densify patents from the view of a person of ordinary skill in the art as of August 31, 2007 for the '687 patent, and August 16, 2011 for the '367 patent.  Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it. Keep in mind that a claim is not proved obvious merely by demonstrating that each of the elements existed in the prior art. Most, if not all, inventions rely on building blocks of prior art. Therefore, you should consider the prior art as a whole and determine whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.

The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense. You may also consider whether the problem or need was known, the possible approaches to solving the problem or addressing the need were known and finite, and the solution was predictable through use of a known option. Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness. Teachings, suggestions, and motivations may be found in written references including the prior art itself.

---

[98] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 5.4.2 Differences Between The Claimed Invention And Prior Art.

71

However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art, including inferences and creative steps that a person of ordinary skill in the art would employ. Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

In analyzing the relevance of the differences between a claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

**[VMWARE OBJECTS to the preceding four paragraphs, beginning with "keep in mind" in the first paragraph, and PROPOSES replacing the preceding four paragraphs after the phrase "keep in mind" in the first paragraph with the following language:**

**In analyzing the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.**

72

On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense. Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that VMware contends is obvious.[99]]

--------

[99] Authority: Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 6.7 Differences

## 5.8    LEVEL OF ORDINARY SKILL[100] [Joint]

Third, you must consider the perspective of a person of ordinary skill in the art, as

explained previously.  This person is presumed to know all the prior art that you have

determined to be reasonably relevant. When faced with a problem, this ordinary skilled person

is able to apply his or her experience and ability to the problem and also look to any available

prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include:

(1) the educational level and experience of people working in the field; (2) the types of

problems faced by workers in the art at the time of the invention and the solutions

found to those problems; (3) the prior art patents, products or devices, and publications;

and (4) the sophistication of the technology in the field at the time of the invention,

including how rapid innovations were made in the art at the time of the invention.

Densify contends that a person of ordinary skill in the art to which the Densify

patents pertain would have been an individual with at least a bachelor's degree in

Computer Engineering, Computer Science or comparable degree and two years of

experience developing software tools and/or computer systems for use in the area of

information technology infrastructures and utilities in designing and evaluating

———————————————

Between the Claimed Invention and The Prior Art; adapted from Judge Stark's Final Jury
Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-
00284, D.I. 442 (Jan. 23, 2019), 7.3. Differences Between the Claimed Inventions and the Prior
Art.

[100] Authority: Adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La
Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014),
6.8 Obviousness—Level of Ordinary Skill.

virtualized environments.  Densify contends such a person would have been knowledgeable about virtualized software tools available at the time and their important features.

VMware contends that a person of ordinary skill in the art to which the Densify patents pertain would have had at least a bachelor's degree in computer science, computer engineering, or electrical engineering, and 2-3 years of experience relating to physical and virtualized computing environments, including virtual machines, hypervisors, and host servers. VMware further contends that such a person would have been familiar with designing, implementing, monitoring, evaluating, optimizing, and managing physical and virtualized computing environments.

### 5.9     OBJECTIVE EVIDENCE OF NONOBVIOUSNESS[101] [Disputed]

Fourth, you must also take into account any objective evidence (sometimes called "objective indicia" or "secondary considerations") that may shed light on whether the claims were obvious. "Objective indicia" or "secondary considerations" must be considered before a conclusion on obviousness is reached.  **[VMWARE OBJECTS to the preceding paragraph and PROPOSES replacing it with the following: In evaluating the issue of obviousness, you must also consider certain factors which, if established by Densify, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.  Some of these indications are:[102]]**

"Objective indicia" or "secondary considerations" can include:

(A)     Whether the invention was commercially successful at least in part as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(B)     Whether the invention satisfied a long-felt need;

(C)     Whether others copied the invention;

(D)     Whether the invention achieved unexpected results compared to the closest prior art; evidence of unexpected results may be used to rebut a case of obviousness even if that evidence was obtained after the patent's filing or issue date; there is no requirement that an

---

[101] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 5.4.4 Objective Evidence Of Nonobviousness.

[102] Authority: Adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 6.9 Obviousness—Objective Criteria Concerning Obviousness]

invention's properties and advantages were fully known before the patent application was filed, or that the patent application contains all of the work done in studying the invention;

(E)      Whether others tried and failed to make the invention;

(F)      Whether others in the field praised the invention;

(G)      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(H)      Whether the inventor proceeded contrary to accepted wisdom in the field; and

(I)      Whether others invented the invention at roughly the same time.

Densify has the burden to show evidence of "objective indicia" or "secondary considerations" and to show that there is a connection, sometimes called a "nexus," between the evidence showing any of these factors and the claimed invention, if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. However, VMware always maintains the ultimate burden to show obviousness by clear and convincing evidence, taking into account any objective indicia that you may find.

## 6.0    SUMMARY OF THE NON-PATENT ISSUES[103] [Disputed]

I will now summarize the non-patent issues that you must decide and for which I will provide more detailed instructions to guide your deliberations. Densify seeks damages against VMware for unfair competition **[VMWARE OBJECTS to the term "unfair competition" in the preceding sentence and PROPOSES replacing the term with "false designation of origin"]**, deceptive trade practices, and trademark infringement.  VMware denies that it committed unfair competition **[VMWARE OBJECTS to the term "committed unfair competition" in the preceding clause and PROPOSES replacing the term with "engaged in false designation of origin"]**, deceptive trade practices, or trademark infringement.  Here are the issues you must decide:

1.   **[VMWARE PROPOSES: Whether Densify has proven by a preponderance of the evidence that "Densify," "Densifying," and "Densification" are valid and protectable trademarks owned by Densify.]**

2.   **[VMWARE PROPOSES: Whether Densify has proven it had trademark rights in "Densify," "Densifying," and "Densification" before VMware first used those words in its marketing materials.]**

3.   Whether Densify has proven by a preponderance of the evidence that VMware unfairly competed against Densify **[VMWARE OBJECTS to the term**

_____

[103] Authority:  Adapted from Judge Stark's Preliminary Jury Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 407 (April 7, 2014), Summary Of The Non-Patent Issues;; **[VMware proposes adding 15 U.S.C. § 1125 - False designations of origin, false descriptions, and dilution forbidden, which is the name of the statute and corresponding causes of action.]**

**"unfairly competed against Densify" and PROPOSES replacing the term with "engaged in false designation of origin"],**

4. Whether Densify has proven by a preponderance of the evidence that VMware engaged in deceptive trade practices;

5. Whether Densify has proven by a preponderance of the evidence that Densify is the owner of valid trademarks and that VMware infringed those trademarks; and **[VMWARE OBJECTS to the preceding sentence and PROPOSES removing it.]**

6. If you find that the VMware infringed the plaintiff's trademark or unfairly competed **[VMWARE OBJECTS to the term "unfairly competed" and PROPOSES replacing the term with "engaged in false designation of origin"],** you must also determine whether VMware did so intentionally.

7. If you decide that Densify has proven that VMware engaged in trademark infringement and unfair competition **[VMWARE OBJECTS to the term "unfair competition" and PROPOSES replacing the term with "false designation of origin"],** you will decide the money damages to be awarded to compensate Densify for those acts.

I will provide more detailed instructions on each of the issues you must decide elsewhere in these jury instructions.

**7.0      TRADEMARK LAW[104] [Disputed]**

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. A trademark may be registered or unregistered.  Assuming that Densify proves it owns valid and protectable trademarks, your infringement analysis is the same regardless of registration. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion among the potential purchasers of Densify's goods and services in the relevant marketplace for virtual machine infrastructure.

**[VMWARE OBJECTS to the phrases "among the purchasers of Densify's goods and services" and "for virtual machine infrastructure" from the preceding sentence and PROPOSES removing them.] [VMWARE PROPOSES: The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.]**

---

[104] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.1 Preliminary Instruction—Trademark and 15.2 Definition—Trademark (15 U.S.C. § 1127); *see also* Del. Code Ann. tit. 6, §§ 3312-- 3315 (Lexis Nexis 2019).

## 7.1    HOW A TRADEMARK IS OBTAINED[105] [Joint]

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.

---

[105] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.1 Preliminary Instruction—Trademark and 15.2 Definition—Trademark (15 U.S.C. § 1127).

## 7.2    TRADEMARK INTERESTS[106] [Disputed]

A trademark owner may enforce the right to exclude others in an action for infringement and prevent others from engaging in acts of unfair competition, under both federal and state laws.  **[VMWARE OBJECTS to the clause "and prevent others from engaging in acts of unfair competition" in the preceding sentence and PROPOSES replacing the clause with "or false designation of origin".]**

---

[106] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.1 Preliminary Instruction—Trademark and 15.2 Definition—Trademark (15 U.S.C. § 1127); **VMware proposes to add 15 U.S.C. § 1125 - False designations of origin, false descriptions, and dilution forbidden, which is the name of the statute and corresponding causes of action.]**

82

### 7.3     LIKELIHOOD OF CONFUSION[107] [Disputed]

To prove infringement, Densify must prove, by a preponderance of the evidence, that VMware, without Densify's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of Densify's marks in connection with the distribution or advertisement of goods, such that VMware's use of the mark is likely to cause confusion as to the source of the origin of the goods or services; an affiliation, connection or association with another's goods; or the endorsement or approval of the goods or services by another.  It is not necessary that the mark used by VMware be an exact copy of Densify's marks. Rather, Densify must demonstrate that, viewed in its entirety, the marks used by VMware are likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.  **[VMware OBJECTS to the preceding paragraph and PROPOSES replacing it with the following: To prove infringement, Densify must prove, by a preponderance of the evidence, that VMware, without Densify's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of Densify's claimed marks in connection with the distribution or advertisement of goods, such that VMware's use of the claimed marks is likely to cause confusion as to the source of goods, as to an affiliation, connection or association of VMware with Densify, or as to sponsorship or approval of VMware's goods by another.  It is not necessary that the marks used by VMware be an exact copy of Densify's claimed marks.  Rather, Densify must demonstrate that, viewed in their entireties, the marks used by VMware are likely to cause confusion in the minds of reasonably prudent purchasers or**

---

[107] Authority: **15 U.S.C. § 1125(a)(1)(A);** adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.1 Preliminary Instruction—Trademark and 15.2 Definition—Trademark (15 U.S.C. § 1127).

83

**users as to the source of the product in question.]**

### 7.4    TRADEMARK BURDENS OF PROOF[108] [Disputed]

In this case, Densify contends that VMware has infringed Densify's trademarks and service marks, including "Densify," "Densification," and "Densifying" (collectively, the "Densify Trademarks"). Densify has the burden of proving by a preponderance of the evidence that it is the owner of a valid trademark and that the VMware infringed that trademark.

In defense, VMware contends that Densify's marks are invalid.  VMware has the burden of proving by a preponderance of the evidence that the Densify marks are invalid.

**[VMWARE OBJECTS to the two preceding paragraphs and PROPOSES replacing them with the following: In this case, Densify contends that VMware has infringed certain Densify trademarks.  Densify has the burden of proving by a preponderance of the evidence that the asserted trademarks are protectable, are owned by Densify, and that VMware infringed them.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that VMware infringed Densify's trademarks.]**

In defense, VMware contends that the words that **Densify** claims are its trademarks are not protectable as trademarks.  **[VMWARE OBJECTS to the term "protectable as trademarks" in the preceding sentence and PROPOSES replacing the term with "used as or protectable as trademarks."]**  VMware also contends that its use of those words is protected by the doctrine of fair use.  VMware has the burden of proving by a preponderance of the evidence that its use falls within the doctrine of fair use.

---

[108] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.1 Preliminary Instruction—Trademark and 15.2 Definition—Trademark (15 U.S.C. § 1127); Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition).

11479979/1

### 7.5   INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF[109]

**[Disputed]**

On Densify's claim for trademark infringement, Densify has the burden of proving each of the following elements by a preponderance of the evidence:

1. "Densify," "Densification," and "Densifying" are valid, protectable trademarks;

2. Densify owns "Densify," "Densification," and "Densifying" as trademarks and service marks; and

3. VMware used "Densify," "Densification," and "Densifying" **[VMWARE OBJECTS to the terms "'Densify,' 'Densification,' and 'Densifying'" in the preceding three clauses and PROPOSES replacing them with "'densify,' 'densification,' and 'densifying'"]** without Densify's consent in a manner that is likely to cause confusion among the ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that Densify has proved each of the elements on which it has the burden of proof, your verdict should be for Densify.  If, on the other hand, Densify has failed to prove any of these elements, your verdict should be for VMware.

---

[109] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.6 Infringement—Elements And Burden Of Proof—Trademark (15 U.S.C. § 1114(1)); *see also* Del. Code Ann. tit. 6, §§ 3312--3315 (Lexis Nexis 2019).

### 7.6    UNREGISTERED MARKS[110] [Joint]

Densify's claimed marks are not registered.  Unregistered trademarks can still be valid and provide the trademark owner with the exclusive right to use those marks. Densify must prove by a preponderance of the evidence that its unregistered marks are valid.  A valid trademark is a word, name, symbol, device, or any combination of these items that is either:

1. inherently distinctive; or

2. descriptive, but has acquired a secondary meaning.

Only if you determine Cirba proved by a preponderance of the evidence that "Densify," "Densification," and "Densifying" are valid trademarks should you consider whether Cirba owns them or whether VMware's actions infringed them.

Only if you determine that "Densify," "Densification," and "Densifying" are not inherently distinctive should you consider whether they are descriptive but became distinctive through the development of secondary meaning.  I will now explain the terms "inherently distinctive," "descriptive," and "secondary meaning."

---

[110] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.9 Infringement—Elements—Validity—Unregistered Marks.

### 7.7     UNREGISTERED MARK DISTINCTIVENESS[111] [Disputed]

In determining distinctiveness, you must consider how strongly the trademark indicates that a good comes from a specific source; this is an important factor to consider in assessing its validity and for determining whether the trademark's use by the defendant creates for consumers a likelihood of confusion as to source, sponsorship, affiliation or approval of the goods with the plaintiff's trademark.

Densify asserts that "Densify," "Densification," and "Densifying" are valid and protectable trademarks and service marks for its software products used to optimize virtual machine placements in virtual environments and the related software and services Densify provides. Densify contends that VMware's use of those marks in connection with VMware's technology and services infringes or infringed Densify's marks and is likely to cause confusion about the origin of goods and services. **[VMWARE OBJECTS to the preceding two paragraphs and PROPOSES replacing the preceding two paragraphs with the following: In determining distinctiveness, you must consider how strongly "Densify," "Densification," and "Densifying" indicate that a good comes from a specific source.  This is an important**

---

[111] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.10 Infringement—Elements—Validity—Unregistered Mark—Distinctiveness; *Diamond State Tire, Inc. v. Diamond Town Tire Pros & Auto Care, LLC*, No. 11550-VCS, 2016 Del. Ch. LEXIS 127, at *11 (Ch. Aug. 15, 2016) ("The stronger the mark the greater protection it deserves. When considering the distinctiveness of a mark or name, Delaware courts typically place the mark into one of four categories: (1) generic marks, which function as the common descriptive name of a product class; (2) descriptive marks, which convey an immediate idea of the ingredients, qualities, or characteristics of the goods; (3) suggestive marks, which suggest a quality or ingredient of goods and require consumer imagination, thought, or perception to determine what the product is; and (4) arbitrary or fanciful marks, which use terms that neither describe nor suggest anything about the product, and bear no logical or suggestive relation to the actual characteristics of the goods. The purpose of this 'classification system' is to determine whether a mark is worthy of protection.").

**factor to consider in assessing their validity as trademarks and for determining whether VMware's use of these words creates for consumers a likelihood of confusion as to source, sponsorship, affiliation or approval of VMware's goods.**

**Densify asserts that "Densify," "Densification," and "Densifying" are valid and protectable trademarks for its software products and services. Densify contends that VMware's use of those words in connection with VMware's software infringes or infringed its "Densify," "Densification," and "Densifying" marks and is likely to cause confusion about the origin of goods associated with those marks.]**

In order to determine if Cirba has met its burden of showing that "Densify," "Densification," and "Densifying" are valid trademarks, you should classify it on the spectrum of trademark distinctiveness that I will explain in the next instruction.

An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in the market. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.

### 7.8     SPECTRUM OF MARKS[112] [Joint]

Trademark law provides great protection to distinctive or strong trademarks.  Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. For deciding trademark protectability you must consider whether a trademark is inherently distinctive. Trademarks are grouped into four categories according to their relative strength or distinctiveness.  These four categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain further in another Instruction, and generic names (which are entitled to no protection).

---

[112] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.10 Infringement—Elements—Validity—Unregistered Mark—Distinctiveness.

**7.9    ARBITRARY TRADEMARKS[113] [Joint]**

The first category of "inherently distinctive" trademarks is arbitrary trademarks. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a product or service. Such a trademark is a word that in no way describes or has any relevance to the particular product or service it is meant to identify.  It may be a common word used in an unfamiliar way. It may be a newly created word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold.  The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics.  "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

---

[113] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.10 Infringement—Elements—Validity—Unregistered Mark—Distinctiveness.

### 7.10   SUGGESTIVE TRADEMARKS[114] [Joint]

The next category is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, (which are in no way related to the product or service or its components, quality, or characteristics,) suggestive trademarks imply some characteristic or quality of the product or service to which they are attached.  If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but merely suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product or service to which the word is attached.  For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark.  "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

---

[114] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.10 Infringement—Elements—Validity—Unregistered Mark—Distinctiveness.

## 7.11    DESCRIPTIVE TRADEMARKS[115] [Joint]

The third category is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, or quality of the product or service to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice.  It directly describes ingredients of the juice.  Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product.  Thus, the words "Apple Valley Juice" affixed to cider from the town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from.  Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product.  So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than CranApple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider and she is using her first name as a descriptive trademark.

---

[115] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.10 Infringement—Elements—Validity—Unregistered Mark—Distinctiveness.

## 7.12    GENERIC NAMES[116] [Joint]

The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the product or service, as opposed to the plaintiff's brand for that product or service. Generic names are part of our common language that we need to identify all such similar products or services. A generic name is a name for the product or service on which it appears. If the primary significance of the alleged mark is to name the type of product or service rather than the manufacturer or provider, the term is a generic name and cannot be a valid trademark. If the majority of relevant consumers would understand the term to name the type of product rather than the manufacturer, the primary significance of the term is generic and not entitled to protection as a trademark.

The word "apple" can be used as a generic name and not be entitled to any trademark protection.  This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store.  As used by the grocer, the word is generic and does not indicate any particular source of the product.  As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

---

[116] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.10 Infringement—Elements—Validity—Unregistered Mark—Distinctiveness.

**7.13    MARK DISTINCTIVENESS AND VALIDITY[117] [Disputed]**

Densify believes that its marks are suggestive, and in the alternative, that the marks have achieved secondary meaning, while VMware claims that Densify's marks are merely descriptive and have not achieved secondary meaning.  **[VMWARE OBJECTS to the preceding paragraph and PROPOSES removing it.]**

If you decide that "Densify," "Densification," and "Densifying" are arbitrary or suggestive, they are considered to be inherently distinctive.  An inherently distinctive trademark is valid and protectable.

**[VMWARE PROPOSES: On the other hand, if you determine that "Densify," "Densification," and "Densifying" are generic, they cannot be distinctive and therefore are not valid nor protectable.  You must render a verdict for VMware on the charges of infringement and false designation of origin.]**

If you decide that "Densify," "Densification," and "Densifying" are descriptive, you will not know if the they are valid or invalid until you consider whether they have gained distinctiveness by the acquisition of secondary meaning, which I explain in another Instruction.

---

[117] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.10 Infringement—Elements—Validity—Unregistered Mark—Distinctiveness.

## 8.0     SECONDARY MEANING[118] [Disputed]

If you determine that "Densify," "Densification," and "Densifying" are descriptive, you must consider the recognition that they have among prospective consumers in order to determine whether they are valid and protectable even though they are descriptive.  This market recognition is called the trademark's "secondary meaning" or "acquired meaning."  **[VMWARE OBJECTS to the term "or acquired meaning" in the preceding sentence and PROPOSES removing the term.]**

A word, name, symbol, or device (or any combination of these items) acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates "Densify," "Densification," and "Densifying" with a single source, in order to find that they have acquired secondary meaning.

---

[118] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.1 Infringement—Elements—Validity—Distinctiveness—Secondary Meaning; **[VMWARE PROPOSES: replacing first clause with "Adapted from *E.T. Browne Drug Co. v. Cococare Prods., Inc.,* 538 F.3d 185, 199 (3d Cir. 2008); Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.1 Infringement—Elements—Validity—Distinctiveness—Secondary Meaning;]** Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 7.6 Acquired Distinctiveness—Secondary Meaning; *Diamond State Tire, Inc. v. Diamond Town Tire Pros & Auto Care, LLC*, No. 11550-VCS, 2016 Del. Ch. LEXIS 127, at *12 (Ch. Aug. 15, 2016) ("'acquired distinctiveness' is known as 'secondary meaning' and a mark that has acquired secondary meaning is entitled to protection."); *Draper Communs., Inc. v. Del. Valley Broads. Ltd. P'ship*, 505 A.2d 1283, 1289 (Del. Ch. 1985) ("Under the common law of trademark or tradename infringement, a trademark or tradename that acquires specific significance either through prior exclusive use in the same market, or through having acquired a secondary meaning, is entitled to protection from use by others.").

When you are determining whether "Densify," "Densification," and "Densifying" have acquired a secondary meaning, consider the following factors:

(1) Consumer Perception. Whether the people who purchase the products or services that bear the claimed trademarks associate the trademarks with Densify;

(2) Advertisement. To what degree and in what manner Densify may have advertised under the claimed trademark;

(3) Demonstrated Utility. Whether Densify successfully used this trademark to increase the sales of its products and services;

(4) Extent of Use. The length of time and manner in which Densify used the claimed trademarks;

(5) Exclusivity. Whether Densify's use of the claimed trademarks was exclusive;

(6) Copying. Whether the defendant intentionally copied Densify's trademarks; and

(7) Actual Confusion. Whether VMware's use of Densify's trademarks has led to actual confusion among a significant number of consumers.

**[VMWARE OBJECTS to the preceding seven paragraphs and PROPOSES replacing them with the following:**

**(1) the extent of sales and advertising of Densify products using "Densify," "Densification," and "Densifying" leading to buyer association;**

**(2) length of Densify's use of "Densify," "Densification," and "Densifying";**

**(3) exclusivity of Densify's use of "Densify," "Densification," and "Densifying";**

**(4) the fact of copying;**

**(5) customer surveys;**

**(6) customer testimony;**

**(7) the use of "Densify," "Densification," and "Densifying" in trade journals;**

**(8) the size of Densify;**

**(9) the number of sales;**

**(10) the number of customers; and,**

**(11) actual confusion.]**

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning by the public coming to associate the marks with the owner of the marks.  Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered valid marks.

Densify here alleges that its marks acquired secondary meaning in the relevant marketplace through consumer perception, its advertisement of its name, it use of its marks in sales, its exclusive use of its marks since 2015, intentional copying of those marks by VMware beginning in 2018, and consequent confusion among consumers.  Densify has the burden of proving that "Densify," "Densification," and "Densifying" have acquired a secondary meaning. VMware has the burden of proving that "Densify," "Densification," and "Densifying" lack a secondary meaning.  The mere fact that Densify is using the words "Densify," "Densification," and "Densifying" **[VMWARE OBJECTS to the terms "'Densify,' 'Densification,' and 'Densifying'" and PROPOSES replacing the terms with "'densify,' 'densification,' and 'densifying'"]** or that Densify claims it began using them before VMware does not mean that the marks have acquired secondary meaning.  There is no particular length of time that a trademark must be used before it acquires a secondary meaning.

## 9.0     OWNERSHIP AND PRIORITY[119] [Disputed]

The law entitles the trademark owner to exclude others from using that trademark. A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace or by using it before the alleged infringer does. A person also acquires the right to exclude others from using a trademark if industry or public usage creates, for a majority of relevant consumers, an association between the person and the mark prior to the alleged infringer's use.

If you find "Densify," "Densification," and "Densifying" to be inherently distinctive, you must consider whether Densify used them as trademarks for its products before VMware began to use the words "Densify," "Densification," and "Densifying" **[VMWARE OBJECTS to the terms "'Densify,' 'Densification,' and 'Densifying'" and PROPOSES replacing them with "'densify,' 'densification,' and 'densifying'"]** to market its own products.

If you find "Densify," "Densification," and "Densifying" to be descriptive but to have acquired secondary meaning, you must consider whether they acquired secondary meaning for Densify's's products before VMware began to use the words "Densify," "Densification," and "Densifying" **[VMWARE OBJECTS to the terms  "'Densify,' 'Densification,' and 'Densifying'" and PROPOSES replacing them with "'densify,' 'densification,' and 'densifying'"]** to market its own products.

A trademark is "used" for purposes of this instruction when a product is transported or

---

[119] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.11 Infringement—Elements—Ownership—Generally; Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 7.5 Ownership And Priority.

sold in commerce in the U.S. and the trademark is attached to the product or placed on its label or container, or if that is not practical, placed on documents associated with the goods or their sale.

If Densify has not shown by a preponderance of the evidence that Densify used "Densify," "Densification," and "Densifying" as valid trademarks before VMware's use of the same, then you cannot conclude that Densify is the owner of the trademarks.

## 10.0    LIKELIHOOD OF CONFUSION[120] [Disputed]

**[VMWARE PROPOSES: You must consider whether VMware's use of "densify,"
"densification," and "densifying" is likely to cause confusion about the source of Densify's
or VMware's goods.]**

I will suggest some factors you should consider in deciding likelihood of confusion. The
presence or absence of any particular factor that I suggest should not necessarily resolve whether
there was a likelihood of confusion, because you must consider all relevant evidence in
determining this.   As you consider the likelihood of confusion you should examine the
following:

1.  **Strength or Weakness of Densify's marks**. The more the consuming public
    recognizes Densify's marks as an indication of origin of virtual machine
    placement software and related software and services, the more likely it is that
    consumers would be confused about the source of VMware's own virtual machine

---

[120] Authority: Adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La
Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014),
7.7 Likelihood of Confusion; **[VMWARE PROPOSES: Replacing the preceding clause with
"Adapted from *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216
(3d Cir. 2000); Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.18
Infringement—Likelihood of Confusion—Factors—*Sleekcraft Test* (15 U.S.C. §§ 1114(1)
and 1125(a)); Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne
v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I. 415 (April 11, 2014), 7.7 Likelihood
of Confusion;"]** *Diamond State Tire, Inc. v. Diamond Town Tire Pros & Auto Care, LLC*, No.
11550-VCS, 2016 Del. Ch. LEXIS 127, at *8 (Ch. Aug. 15, 2016) ("When determining whether
a trade name or mark creates a likelihood of confusion for purposes of the [Deceptive Trade
Practices] Act, Delaware courts consider (i) the degree of similarity between the marks, (ii) the
similarity of products for which the name is used, (iii) the area and manner of concurrent use,
(iv) the degree of care likely to be exercised by consumers, (v) the strength of the plaintiffs'
mark, (vi) whether there has been actual confusion, and (vii) the intent of the alleged infringer to
palm off his products as those of another.") (citation and quotation marks omitted); *Draper
Communs., Inc. v. Del. Valley Broads. Ltd. P'ship*, 505 A.2d 1283, 1290 (Del. Ch. 1985) (same).

placement software and related software and services if VMware uses similar marks;

2. **Similarity of Densify's marks and the words and symbols used by VMware.** If there is great similarity between Densify's marks and the terms and symbols used by VMware, there is a greater chance that consumers are likely to be confused by VMware's use of the relevant words and symbols.

3. **Similarity of Densify's and VMware's Goods and Services**. If VMware and Densify market the same or related kinds of virtual optimization computing goods and services, there may be a greater likelihood of confusion about the source of the virtual optimization computing goods and services than otherwise;

4. **Actual Confusion**. If there is evidence of actual buyer confusion concerning Densify's marks and the relevant words and symbols used by VMware, this strongly suggests a likelihood of confusion. However, Densify need not produce evidence of actual buyer confusion in order for you to find that a likelihood of confusion exists;

5. **VMware's Intent in Adopting the Relevant Words.** Evidence that VMware adopted the relevant words with the intent to cause confusion between their virtual machine placement optimization software and services and Densify's virtual machine placement optimization software and services should be weighed heavily in favor of a finding of likelihood of confusion if: (a) VMware's intent to confuse or deceive is demonstrated by clear and convincing evidence, and (b) the virtual machine placement optimization software and services labeling and marketing are also affirmatively deceiving. On the other hand, any evidence of

103

VMware's good faith in seeking to avoid confusion (including the prominent use or placement of VMware's name or trademarks in connection with the sale or provision of its virtual optimization computing goods and services) should be weighed against a finding of likelihood of confusion;

6. **Distribution Channels**. If Densify's and VMware's virtual machine placement optimization software and services are likely to be sold to the same or similar customers or through the same distribution channels, this increases the likelihood of confusion;

7. **The Degree of Purchaser Care**. The more costly the virtual machine placement optimization software and services, the more sophisticated, careful and discriminating the buyers are likely to be. Thus, they may be less likely to be confused by similarities in Densify's marks and VMware's use of the same marks;

**[VMWARE OBJECTS to the preceding seven paragraphs and PROPOSES replacing them with the following:**

**(1) The degree of similarity between "Densify," "Densification," and "Densifying" and the alleged infringing mark;**

**(2) The strength of "Densify," "Densification," and "Densifying";**

**(3) The price of the products and other factors indicative of the care and attention expected of consumers when making a purchase;**

**(4) The length of time VMware has used the mark without evidence of actual confusion arising;**

**(5) The intent of VMware in adopting the mark;**

**(6) The evidence of actual confusion;**

**(7) Whether the products, competing or not competing, are marketed through the same channels of trade and advertised through the same media;**

**(8) The extent to which the targets of the parties' sales efforts are the same;**

**(9) The relationship of the products in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; and**

**(10) Other facts suggesting that the consuming public might expect Densify to manufacture both products, or expect Densify to manufacture a product in VMware's market, or expect that Densify is likely to expand into VMware's market.]**

Although you should consider all of the above factors as part of making your decision, the above list is not intended to be exclusive and you should consider any other factors or evidence that bear on likelihood of confusion.

In considering these factors, your general knowledge, and any other evidence, you should not treat any single factor as dispositive; nor should you treat this as a simple mathematical exercise where the party with most of the above factors in its favor wins. In other words, while you should consider all the above factors, some factors may be more important than others in the context of this case.  Thus, you should balance all the above factors and any other relevant factors or evidence to determine whether, in light of all the circumstances of this case, consumers are likely to be confused.

## 11.0    "CLASSIC" FAIR USE[121] [Disputed]

The owner of a trademark cannot exclude others from making a fair use of that trademark. A defendant makes fair use of a mark when the defendant uses it as other than a trademark, to accurately describe the source of the defendant's own products or services.

VMware contends that it fairly used "Densify," "Densification," and "Densifying" **[VMWARE OBJECTS to the terms "'Densify,' 'Densification,' and 'Densifying'" and PROPOSES replacing them with "'densify,' 'densification,' and 'densifying'"]** to describe a function of the technology of VMware's products and services. **[VMWARE OBJECTS to the term "a function of the technology of VMware's products and services" and PROPOSES replacing it with "VMware's software."]** A defendant makes fair use of a trademark when it:

1. uses the marks other than to distinguish the defendant's goods from the plaintiff's and to indicate the source of the defendant's goods;

2. uses the marks fairly and in good faith; and

3. uses the marks only to describe the defendant's goods or services as those of the defendant's and not at all to describe the plaintiff's product.

VMware has the burden of proving its fair use of "Densify," "Densification," and "Densifying" **[VMWARE OBJECTS to the terms "'Densify,' 'Densification,' and 'Densifying'" and PROPOSES replacing them with "'densify,' 'densification,' and 'densifying'"]** by a preponderance of the evidence.

---

[121] Authority: Adapted from Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.24 Defenses—"Classic" Fair Use (15 U.S.C. § 1115(b)(4)).

## 12.0    DECEPTIVE TRADE PRACTICES[122] [Joint]

Under the Delaware Deceptive Trade Practices Act, a company engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that company:

(1)  Passes off goods or services as those of another;

(2)  Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; or

(3)  Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another.

The analysis for finding that a party has violated the Deceptive Trade Practices Act based on use of another party's marks is the same as the analysis for finding trademark infringement, except that, under Delaware law the plaintiff does not need to prove actual competition.

If you find for Densify on its trademark infringement claim, you should also find for Densify on its deceptive trade practice claim.  Similarly, if you find for VMware on Densify's trademark infringement claim, you should also find for VMware on Densify's deceptive trade

---

[122] Authority: Del. Code Ann. tit. 6, § 2532 (Lexis Nexis 2019); *see also Military Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 757 (D. Del. 2017) ("Courts reviewing DDTPA violations apply the same standards as they apply to trademark infringement claims (i.e., valid and protectable mark, plaintiff owns mark, and likelihood of confusion)."); *Treasury Mgmt. Servs. v. Wall St. Sys. Del.*, No. 16-283-SLR, 2017 U.S. Dist. LEXIS 68656, at *13 (D. Del. May 5, 2017) (same); *Lingo v. Lingo*, 785 F. Supp. 2d 443, 454 (D. Del. 2011) ("The DTPA has a lower burden of proof than the Lanham Act since 'a complainant need not prove competition between the parties or actual confusion or misunderstanding' to prevail in an action under the DTPA, 6 Del. C. § 2532(b).") (citation omitted); *Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*, 702 F. Supp. 2d 266, 272 (D. Del. 2010) ("proof of a Lanham Act claim would necessarily meet the requirements for a claim under the DTPA"); *Draper Communs., Inc. v. Del. Valley Broads. Ltd. P'ship*, 505 A.2d 1283, 1290 (Del. Ch. 1985) ("The Deceptive Trade Practices Act, at least as to those cases involving trademarks or tradenames, codifies the common law [of trademark infringement].").

practice claim.

**13.0    DAMAGES [Disputed]**

All the instructions that I have given you up to this point have been about determining liability, meaning the determination as to whether VMware has infringed Densify's patents, has infringed Densify's trademarks, or has unfairly competed against Densify **[VMWARE OBJECTS to the phrase "has unfairly competed against Densify" in the preceding sentence and PROPOSES replacing it with "engaged in false designation of origin"]**  or used deceptive trade practices.  If you determine that VMware is liable for any of the asserted claims, then you must consider the issue of the amount of damages that should be awarded to Densify. **[VMWARE PROPOSES: If you find that each of the asserted claims is either invalid or not infringed, then you should not consider damages in your deliberations.[123]]** I will instruct you now on how to determine the amount of damages, if any.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.

Densify has the burden to establish "each element of its damages – including the amount of the damages –"[124] by a preponderance of the evidence. In other words, you should award only those damages that Densify establishes that it more likely than not suffered. **[VMWARE PROPOSES: You may not add anything to the amount of damages to punish VMware or**

---

[123] Authority: Adapted from Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-00284, D.I. 442 (Jan. 23, 2019), 8 Damages.

[124] Authority: Adapted from Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, Civ. No. 1-17-cv-00189, D.I. 272 (Nov. 25, 2019), 6 Damages; *see* American Intellectual Property Law Association, 2018 Model Patent Jury Instructions (July 2018), 10.0 Damages—Generally, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-jury-instructions.pdf.

**to set an example.[125]**] Densify must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Densify seeks damages as measured by a reasonable royalty. A reasonable royalty is defined as the money amount Densify and VMware would have agreed upon as a fee for use of the invention at the time prior to when infringement began.  I will now give you more detailed instructions regarding damages, looking first at damages for patent infringement and then at damages for the non-patent claims.

---

[125] Authority: Adapted from Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-00284, D.I. 442 (Jan. 23, 2019), 8 Damages Instruction.

## 14.0    PATENT DAMAGES INTRODUCTION[126] [Joint]

If you find that VMware infringed or induced infringement of any valid claim of the

Densify patents, you must then consider what amount of damages to award to Densify for the

infringement.  If you find that each of the asserted claims is either invalid or not infringed, then

VMware is not liable for patent infringement and you need not address damages in your

deliberations.

The damages you award must be adequate to compensate Densify for the infringement.

They are not meant to punish an infringer.

---

[126] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I.  440 (June 19, 2017), 6.1 Damages Introduction.

## 14.1   DATE DAMAGES BEGIN AND END[127] [Disputed]

Densify filed this lawsuit on April 25, 2019. Densify may seek patent damages for up to six years before this lawsuit was filed. Therefore, the maximum period over which Densify may recover damages is from April 25, 2013 through the present.

**[VMWARE OBJECTS to the preceding paragraph and PROPOSES replacing it with the following:**

**In determining damages, you must determine when the damages began for each asserted patent. For each patent, there are at least two potential damages starting dates in this case.**

**For the '687 Patent:**

**A) If you find that VMware has directly infringed the '687 Patent, the damages period begins on April 25, 2013 to the present, but damages are only available for VMware's own use of its accused products and not its customers' use; and**

**B) If you find that VMware has induced infringement of the '687 Patent, the damages period begins on the date on which all the requirements of such infringement had been satisfied to the present.**

**For the '367 Patent:**

**A) If you find that VMware has directly infringed the '367 Patent, the damages period begins on May 16, 2017, the date the '367 Patent issued, to the**

---

[127] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 6.2 Date Damages Begin And End.

112

present, but damages are only available for VMware's own use of its accused

products and not its customers' use; and

B) If you find that VMware has induced infringement of the '367 Patent, the

damages period begins on the date on which all the requirements of such

infringement had been satisfied to the present, but no earlier than May 16, 2017.[128]]

---

[128] Authority: Adapted from Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 6.2 Date Damages Begin And End; Judge Stark's Final Jury Instructions, *Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. 1:09-cv-00080, D.I. 908 (September 30, 2014), 5.2 Date Patent Damages Begin and End.  Cirba's proposed language in this section is erroneous for at least two reasons.  First, Cirba does not separate out damages attributable to the '367 Patent, which issued May 16, 2017.  Cirba is not entitled to any damages for alleged infringement of the '367 Patent prior to that date.  *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1073-74 (Fed. Cir. 2003) ("The instruction correctly barred the accumulation of damages prior to the issuance date of the [disputed patent]").  Second, Cirba proposed language does not distinguish the dates of infringement for any direct infringement or indirect infringement. For indirect infringement, damages would accrue from the date Cirba can show VMware met all elements for induced infringement, including knowledge of the asserted patents. *See Civix-DDI, LLC v. Cellco P'ship*, 387 F. Supp. 2d 869, 899 (N.D. Ill. 2005) (because defendant did not have pre-filing notice of patent, "Civix cannot collect pre-filing damages on its induced infringement theory"); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998) ("A crucial element of induced infringement is that the inducer must have actual or constructive knowledge of the patent.").

## 14.2   REASONABLE ROYALTY-GENERALLY[129]   [Disputed]

Densify is seeking damages in the form of a reasonable royalty in this case.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in the negotiations. You should assume that both parties to the hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license. You should also assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

A reasonable royalty is typically made up of (1) a base and (2) a rate (or percentage) that is applied to that base. **[VMWARE PROPOSES: The reasonable royalty award must be apportioned and based only on the incremental value that the patented invention adds to the end product, and the patent holder must apportion value between the patented features**

---

[129] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I.  440 (June 19, 2017), 6.4 Reasonably Royalty— Generally; Judge Stark's Final Jury Instructions, *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, No. 1:12-cv-00540, D.I.  400 (June 4, 2015), 7.2 Reasonable Royalty.

and any non-patented features contained in the accused products.[130]] **[VMWARE PROPOSES: The reasonable royalty base for method claims must also be limited to only those circumstances in which the steps of the claimed method were performed.[131]]** The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product and no more.  You may only award damages attributable to the patented features, and the patent holder must apportion value between the patented features and any non-patented features contained in the accused products. **[VMWARE OBJECTS to the preceding sentence in view of the added proposed language earlier in paragraph and PROPOSES removing it].**  There is no rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence.[132] A patent holder is not required to demonstrate a one-to-one correspondence between units sold and directly infringing customers.[133]  **[VMWARE OBJECTS to the two preceding sentences and PROPOSES removing the preceding two sentences, or in the alternative, replacing them with:  Although direct evidence is not required to prove all  specific instances of infringement, the damages award ought to be correlated, in some respect, to the extent the**

---

[130] Authority: Adapted from Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, Civ. No. 1-17-cv-00189, D.I.  272 (Nov. 25, 2019), 6.2.2 Reasonable Royalty Must be Based on Incremental Value Attributable to the Infringing Feature.

[131] Authority: *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1358 (Fed. Cir. 2009) (affirming the district court's limitation of damages to sales of ICDs that performed the steps of the claimed method).

[132] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334–35 (Fed. Cir. 2009).

[133] *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 884 (Fed. Cir. 2001).

**infringing method is used by consumers.[134] [DENSIFY PROPOSES: Keep the previous instruction, which is consistent with Federal Circuit precedent. If VMware's objection is sustained, add the following sentence: Damages for indirect infringement are not limited to any proven number instances of actual infringing use, nor are they limited to specific instances of infringement proven with direct evidence."[135]]. [VMWARE OBJECTS to Densify's proposed addition and PROPOSES not adding the proposed sentence.[136]]**

---

[134] The last two sentences of this paragraph are not found in any model or prior jury instructions relied upon by the parties herein as authorities (including at least the *GlaxoSmithKline*, *Fairchild*, *Siemens*, and *Roche* Final Jury Instructions), and are not relevant to the discussion of reasonable royalty generally.  The last sentence is not found in any of the exemplar jury instructions that the parties rely.  Cirba takes the non-precedential *Chiuminatta* decision out of context.  The Federal Circuit reversed the district court's grant of summary judgment on lost profits based on the potential lack of correspondence between sales and direct infringement.  Lost profits is not at issue in this case, and the sentence Cirba proposed would be prejudicial and confusing.   The alternative proposed language is adapted from *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334-35 (Fed. Cir. 2009) and expands on the sentence excerpted by Cirba.

[135] Adapted from *Asatek Danmark A/S v. CMI USA, Inc.*, No. 3:13-CV-00457-JST, Dkt. 217 (Final Jury Instructions) at 28 (N.D. Cal. Dec. 17, 2014).

[136] Cirba's proposed addition following this proposal should be deleted.  Cirba cites the *Asatek* Final Jury Instructions which are contrary to caselaw and model instructions.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) ("A defendant's liability for indirect infringement must relate to the identified instances of direct infringement."); N.D. Cal. Model Patent Jury Instructions, Rev. Aug. 2017 (updated Oct. 2019), 5.11 Calculating Damages In Cases Of Inducement Or Contributory Infringement, *available at* https://www.cand.uscourts.gov/wp-content/uploads/2019/12/NDCAL_Model_Pat_Jury_Inst_8-2017_updated_10-2019.pdf ("the amount of damages for induced infringement is limited by the number of instances of direct infringement.").

**14.3    FACTORS FOR DETERMINING REASONABLE ROYALTY[137] [Joint]**

In determining a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1.     The royalties received by the patent owner for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.     The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.     The nature and the scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.     The patent owner's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5.     The commercial relationship between the licensee and the patent owner at the time of the hypothetical negotiation, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

---

[137] Authority:  Judge Stark's Final Jury Instructions, *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, No. 1:12-cv-00540, D.I. 400 (June 4, 2015), 7.3 Factors For Determining Reasonable Royalty.

6.      The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the patent owner as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.      The remaining life of the patents-in-suit and the terms of the license.

8.      The established profitability of the products made under the patents-in-suit; their commercial success; and their current popularity.

9.      The utility and advantages of the patent property over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the patent owner at the time of the hypothetical negotiation; and the benefits to those who have used the invention.

11.     The extent to which the licensee has made use of the invention; and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profit that should be credited to the inventions as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion and testimony of qualified experts.

15.     The amount that a licensor (such as the patent owner) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee - who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention - would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license. This may include the availability of commercially acceptable, noninfringing alternatives at the time of the hypothetical negotiation.

No one of these factors is dispositive, and you can and should consider the evidence that has been presented to you on any of these factors. You may also consider any other factors that in your mind would have increased or decreased the royalty the accused infringer would have been willing to pay and the patent holder would have been willing to accept.

## 14.4   REASONABLE ROYALTY - TIMING[138] [Disputed]

The relevant date for the hypothetical reasonable royalty negotiation is at the time the

infringement began. However, you may consider in your determination of reasonable royalty

damages any actual profits by the alleged infringer after that time and any commercial success of

the patented invention in the form of sales of the patented or infringing products after that time.

**[VMWARE OBJECTS to the preceding sentence and PROPOSES removing it[139]].** You

may also consider information the parties would have foreseen or estimated during the

hypothetical negotiation, which may under certain circumstances include evidence of usage after

infringement started, license agreements entered into by the parties shortly after the date of the

hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.[140]

The damages period may not coincide with the date of the first infringement. That is so

because the patent law limits damages to a six-year period before the filing of the complaint or

counterclaim for infringement.

Remember, however, you may only award damages for any infringement you have found

occurred during the damages periods I previously provided to you.

_____

[138] Authority:  Judge Stark's Final Jury Instructions, *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 1:09-cv-00080, D.I.  908 (September 30, 2014), 5.14 Reasonable Royalty—Timing.

[139] Authority: *See* Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-00284, D.I.  442 (Jan. 23, 2019), 8.4.3 Reasonable Royalty – Timing; Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, Civ. No. 1-17-cv-00189, D.I.  272 (Nov. 25, 2019), 6.2.5 Reasonable Royalty – Timing.

[140] Authority:  Adapted from Judge Stark's Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, Civ. No. 1:16-cv-00284, D.I.  442 (Jan. 23, 2019), 8.4.3 Reasonable Royalty – Timing; Judge Stark's Final Jury Instructions, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, Civ. No. 1-17-cv-00189, D.I.  272 (Nov. 25, 2019), 6.2.5 Reasonable Royalty – Timing.

### 14.5    PATENT DAMAGES INTEREST[141] [Joint]

Neither Densify's nor VMware's calculations include interest. Therefore, in arriving at

your damages calculation, you should not consider interest in any way because it is the function

of the Court to award interest.

---

[141] Authority:  Adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I.  415 (April 11, 2014), 10.12 Patent Damages Interest.

### 14.6    LIMITATIONS OF PATENT DAMAGES[142] [Disputed]

**[VMWARE PROPOSES: If you award damages for induced infringement, you must limit the damages to circumstances in which all the elements needed to find induced infringement have been satisfied.]**  In order to recover damages for induced infringement, Densify must either prove that the accused VMware products necessarily infringe the asserted patents or prove acts of direct infringement by others that were induced by VMware.  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Densify must further prove the number of direct acts of infringement of the asserted patents, for example, by showing individual acts of direct infringement or by showing that a particular class of uses directly infringes. **[VMWARE OBJECTS to the term "direct infringement" and PROPOSES replacing it with "literal infringement" in the preceding two sentences.]**  A patent holder is not required to demonstrate a one-to-one correspondence between units sold and directly infringing customers.[143]  **[VMWARE OBJECTS to the**

---

[142] Authority: Adapted from Judge Stark's Final Jury Instructions, *Helios Software, LLC v. SpectorSoft Corp.*, No. 1:12-cv-00081, D.I. 608 (June 19, 2015), 5.4 Limitations of Patent Damages; *see also* N.D. Cal. Model Patent Jury Instructions, Rev. Aug. 2017 (updated Oct. 2019), 5.11 Calculating Damages In Cases Of Inducement Or Contributory Infringement, *available at* https://www.cand.uscourts.gov/wp-content/uploads/2019/12/NDCAL_Model_Pat_Jury_Inst_8-2017_updated_10-2019.pdf.

[143] *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 884 (Fed. Cir. 2001).

**preceding sentence and PROPOSES removing it.[144]][145]**

---

[144] The preceding sentence is not found in any of the exemplar jury instructions that the parties rely, including *Helios* and the N.D. Cal. Model Patent Jury Instructions.  Cirba takes the non-precedential *Chiuminatta* decision out of context, and it is not precedent for this case.  The Federal Circuit reversed the district court's grant of summary judgment on lost profits based on the potential lack of correspondence between sales and direct infringement.  Lost profits should not go to the jury, and the sentence Cirba proposed would be prejudicial and confusing. *See Chiuminatta*, 1 F. App'x 879, 882-885 (Fed. Cir. 2001).

[145] This entire section was added at the request of VMware and should not be part of the jury instructions because they do not appear in a majority of the instructions relied on by the parties and they would confuse and prejudice the jury by implying a limitation on damages. But if VMware's proposal to include this section is adopted, Densify's language, which is a direct quote from Federal Circuit precedent, should also be included.

**15.0     NON-PATENT DAMAGES**

**15.1     DAMAGES FOR TRADEMARK INFRINGEMENT AND UNFAIR**

**COMPETITION --GENERALLY[146]  [VMWARE OBJECTS to term "UNFAIR**

**COMPETITION" and PROPOSES replacing it with "FALSE DESIGNATION**

**OF ORIGIN"] [Disputed]**

If you find based on the instructions you have been given that VMware infringed

Densify's trademarks and/or unfairly competed with Densify, you may award Densify damages

in an amount you determine to be fair and equitable, consisting of the sum of  Densify's actual

damages attributable to VMware's infringing Densify's trademarks and/or unfair competition

**[VMWARE OBJECTS to the preceding paragraph and PROPOSES replacing it with the**

**following: If you find based on the instructions you have been given that VMware infringed**

**Cirba's trademarks and/or falsely designated the origin of its products, you may award**

**Cirba damages in an amount you determine to be fair and equitable, consisting of Cirba's**

**actual damages attributable to VMware's infringement and/or false designation of origin.**

**[147]]**

---

[146] Authority: Adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I.  415 (April 11, 2014), 11.1 Damages For Trade Dress Infringement And Unfair Competition—Generally.  **[VMWARE PROPOSES: Replacing the preceding footnote with "Authority: 15 U.S.C. § 1117(a); adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I.  415 (April 11, 2014), 11.1 Damages For Trade Dress Infringement And Unfair Competition—Generally."]**

[147] The jury should not be instructed on a lost profits theory for this case.  Cirba's expert, Mr. Bergman, stated that he could not quantify Cirba's lost profits and that his "damages [calculation] will be solely based on [a] reasonable royalty analysis."  Bergman Opening Report at ¶ 224.  *See* Fed. R. Evid. 402; Fed. R. Evid. 403; *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1308 (Fed. Cir. 1999) (affirming exclusion of "consequential damages" over and above a

## 15.2    ACTUAL DAMAGES[148] [Disputed]

If you find for Densify on its trademark infringement and unfair competition claims, you must determine Densify's actual damages.  **[VMWARE OBJECTS to the term "unfair competition" and PROPOSES replacing it with "false designation of origin" in the preceding sentence]**

Densify has the burden of proving actual damages by a preponderance of the evidence.

Damages means the amount of money which will reasonably and fairly compensate Densify for any injury you find was caused by the VMware's infringement of the Densify's trademarks or its unfair competition.  **[VMWARE OBJECTS to the term "unfair competition" and PROPOSES replacing it with "false designation of origin"  in the preceding sentence]**

You should consider the following: (1) The injury to or loss of Densify's reputation; (2) The injury to or loss of Densify's goodwill, including injury to Densify's general business reputation; (3) The expense of preventing customers from being deceived; (4) The cost of future

royalty where plaintiff was attempting to "bootstrap evidence of its lost profits back into the case").  Thus giving instructions on lost profits would be prejudicial to VMware and confusing to the jury.

Should Cirba's proposal be permitted to go to the jury, VMware proposes that "(2) VMware's profits attributable to infringing Cirba's trademarks and/or unfairly competing with Cirba" be replaced with "(2) VMware's profits attributable to VMware's infringement and/or false designation of origin" in addition to VMware's other proposals to this instruction.

[148] Authority:  Adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I.  415 (April 11, 2014), 11.2 Damages For Trade Dress Infringement And Unfair Competition—Actual Damages; Ninth Cir. Model Civil Jury Instructions (2017 Edition), 15.27 Trademark Damages—Plaintiff's Actual Damages (15 U.S.C. § 1117(a)).  **[VMWARE PROPOSES ADDING 15 U.S.C. § 1125 - False designations of origin, false descriptions, and dilution forbidden, which is the name of the statute and corresponding causes of action.]**

corrective advertising reasonably required to correct any public confusion caused by the infringement; and (5) other damages Densify suffered.  **[VMWARE OBJECTS to the preceding paragraph and PROPOSES replacing it with the following: You should consider the following: (1) The injury to or loss of Densify's reputation; (2) The injury to or loss of Densify's goodwill, including injury to Densify's general business reputation;  and (3) The expense of preventing customers from being deceived.  ]**

When considering prospective costs, you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of Densify's marks at the time of the infringement by VMware.

11479979/1

### 15.3    INTENTIONAL INFRINGEMENT[149] [Disputed]

If you find that VMware infringed Densify's trademarks, you must also determine whether VMware used Densify," "Densification," and "Densifying" **[VMWARE OBJECTS to the terms "'Densify,' 'Densification,' and 'Densifying'" and PROPOSES replacing tem with "'densify,' 'densification,' and 'densifying'"]** intentionally, knowing it was an infringement.

---

[149] Authority:  Adapted from Judge Stark's Preliminary Final Instructions, *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, No. 1:09-CV-598, D.I.  415 (April 11, 2014), 11.4 Damages For Trade Dress Infringement:  Intentional Infringement.

**17.0    DELIBERATION AND VERDICT**

**17.1    INTRODUCTION[150] [Joint]**

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

---

[150] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I.  440 (June 19, 2017), 7.1 Introduction.

128

### 17.2    UNANIMOUS VERDICT[151] [Joint]

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

---

[151] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I.  440 (June 19, 2017), 7.2 Unanimous Verdict.

### 17.3    DUTY TO DELIBERATE[152] [Joint]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

---

[152] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I.  440 (June 19, 2017), 7.3 Duty To Deliberate.

### 17.4    SOCIAL MEDIA[153] [Joint]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

---

[153] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I.  440 (June 19, 2017), 7.4 Social Media.

### 17.5    COURT HAS NO OPINION[154] [Joint]

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

---

[154] Authority: Judge Stark's Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I.  440 (June 19, 2017), 7.5 Court Has No Opinion.

Dated: January 17, 2020

Respectfully submitted,

*/s/ Kenneth L. Dorsney*

Sarah O. Jorgensen (*pro hac vice*)
sjorgensen@reichmanjorgensen.com
Reichman Jorgensen LLP
1201 West Peachtree, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
Telecopier: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Reichman Jorgensen LLP
818 Connecticut Ave NW, Suite 850
Washington, DC 20006
Telephone: (202) 894-7310
Telecopier: (650) 623-1449

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
Wesley L. White (*pro hac vice*)
wwhite@reichmanjorgensen.com
Rahul Sarkar (*pro hac vice*)
rsarkar@reichmanjorgensen.com
Reichman Jorgensen LLP
100 Park Avenue, Suite 1600
New York, NY 10017
Telephone: (212) 381-1965
Telecopier: (650) 623-1449

Peter J. Ayers (*pro hac vice*)
peter@ayersiplaw.com
Law Office of Peter J. Ayers, PLLC
220 Bowman Avenue
Austin, TX 78703
Telephone: (512) 771-3070

Kenneth L. Dorsney (#3726)
kdorsney@morrisjames.com
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna Ballard (*pro hac vice*)
sballard@reichmanjorgsensen.com
Jennifer P. Estremera (*pro hac vice*)
jestremera@reichmanjorgensen.com
Michael G. Flanigan (*pro hac vice*)
mflanigan@reichmanjorgensen.com
Joachim B. Steinberg (*pro hac vice*)
jsteinberg@reichmanjorgensen.com
Kate Falkenstien (*pro hac vice*)
kfalkenstien@reichmanjorgensen.com
Ariel C. Green (*pro hac vice*)
agreen@reichmanjorgensen.com
Reichman Jorgensen LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Telecopier: (650) 623-1449

Gary J. Toman (*pro hac vice*)
Gtoman@wwhgd.com
Weinberg Wheeler Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700
Telecopier: (404) 875-9433

**ATTORNEYS FOR CIRBA INC.
(D/B/A DENSIFY) AND CIRBA IP, INC.**

133