## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., | Civil Action No. 1:19-cv-00742-LPS |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| VMWARE, INC., | |
| Defendant. | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR OPPOSITION
## TO VMWARE'S ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW
## ON PLAINTIFFS' TRADEMARK CLAIMS

Dated: January 19, 2020

Kenneth L. Dorsney (#3726)
kdorsney@morrisjames.com
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800

*Attorneys for Plaintiffs*
*Cirba Inc. (d/b/a Densify) and Cirba IP, Inc.*

Sufficiency of the evidence is the touchstone of the analysis at this stage. The question is whether, taking all reasonable inference in Densify's favor, a jury could find unfair competition under the Lanham Act. DENSIFY is Cirba, Inc's company name and identity, and how it markets its products. No one in the industry is known to have used the word "densify" to refer to products and services relating in any way to optimization of virtualized environments before Densify began using this trademark. VMware only began doing so after Densify engaged in extensive rebranding efforts and was a competitive threat, as part of a campaign to take Densify's technology, to tell customers they no longer needed Densify now that VMware had adopted its new technology, and to destroy Densify. The evidence is sufficient to find a protectible trademark and likelihood of confusion.

Densify streamlined its claims to conform to the evidence presented in its case in chief at trial. It has focused its trademark-related claims on the DENSIFY trademark alone.[1] These claims allege that VMware's use of "densify," "densification," and "densifying" constitute infringement of Densify's trademark rights under the Lanham Act, 15 U.S.C. § 1125(a), deceptive trade practices under Delaware Code Title 6 § 2532, and common law trademark infringement.[2]

## I.      LEGAL STANDARDS

### A.      JMOL Standard

If a claim "can be maintained or defeated only with a favorable finding on" an issue and "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the

---

[1] Densify has agreed to dismiss with prejudice its claims that "densification" and "densifying" are in and of themselves trademarks, though it continues to contend that VMware's use of these terms constitutes infringement of the DENSIFY trademark. Further, Densify has agreed to dismiss with prejudice its claims of patent infringement of claims 2, 4, 5, 11, 15, 16, and 19 of U.S. Patent No. 9,654,367. Densify believes dismissal with prejudice is the correct vehicle for dismissal of these claims. Densify understands that the Court has not yet requested briefing on the procedural vehicle question, and therefore it is not addressed herein.

[2] The Delaware deceptive trade practices claim and common law trademark infringement rise and fall on the same considerations for purposes of this brief, and so Densify focuses on its Lanham Act unfair competition claim under §1125(a).

party on that issue," the court may grant judgment as a matter of law.  Fed. R. Civ. P. 50(a).  In assessing the legal sufficiency of the evidence, the court must assess it "in the light most favorable to the nonmovant," "giving it the advantage of every fair and reasonable inference." *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 492 (3d Cir. 2002) (quotation omitted).  "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Id.*  Judgment as a matter of law is warranted only if "any verdict other than the one directed would be erroneous under the governing law." *Williams v. Rene*, 72 F.3d 1096, 1100 (3d Cir. 1995) (quotation omitted).

When the underlying legal issue requires weighing multiple factors against each other, "courts are not in a position to weigh the" factors and judgment as a matter of law is generally not appropriate when at least some of the factors favor the nonmovant. *Weaver v. PACCAR, Inc.*, 52 F. Supp. 3d 1342, 1350 (S.D. Ga. 2014), *aff'd*, 614 F. App'x 991 (11th Cir. 2015); *see also West v. IDT Corp.*, 241 F. App'x 50, 55 (3d Cir. 2007) (reversing judgment as a matter of law where district court found that several factors favored the nonmovant); *ZF Meritor LLC v. Eaton Corp.*, No. CV 06-623-SLR, 2013 WL 6729509, at *2 (D. Del. Dec. 20, 2013); *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, 2012 WL 1022247, at *26 (S.D.N.Y. 2012).

## B.   Trademark Standards

Densify has asserted unfair competition claims under §1125(a) as to its unregistered DENSIFY trademark.[3]  Under § 1125(a), Densify bears the burden of proving by a preponderance of the evidence that it (1) has a valid and legally protectable mark; (2) owns the mark; and (3)

---

[3] "Lanham Act § 43(a), 15 U.S.C.A. § 1125(a) gradually developed through judicial construction into the foremost federal vehicle for the assertion of two major and distinct types of 'unfair competition': (1) infringement of unregistered trademarks, names and trade dress, and (2) 'false advertising.'"  1 McCarthy on Trademarks and Unfair Competition § 4:6 (5th ed.) (footnotes omitted).

VMware's use of the mark to identify its goods or services causes a likelihood of confusion among the relevant consuming public.[4]  *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000); *see also* 15 U.S.C. § 1125(a)(1).  No proof of actual confusion is required for a showing of likelihood of confusion; that confusion is merely likely is sufficient.  *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708–09 (3d Cir. 2004)(internal quotations and citations omitted).  A mark need not be federally registered to be protectable.  *Two Pesos*, 505 U.S. at 768.

## II.   THE DENSIFY MARK IS VALID AND LEGALLY PROTECTABLE.

A mark is protectable as a trademark if it is determined to be fanciful or arbitrary or suggestive.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  A descriptive mark is protectable only if it is shown to have acquired secondary meaning.  "Arbitrary or fanciful marks use terms that neither describe nor suggest anything about the product" whereas "[s]uggestive marks require consumer 'imagination, thought, or perception' to determine what the product is."  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 221-22 (3d Cir. 2000) (internal citations omitted).  Descriptive terms "'convey[ ] an immediate idea of the ingredients, qualities or characteristics of the goods.'"  *Id.*  Generic marks "'function as the common descriptive name of a product class,'" and are not considered trademarks at all.  *Id.*  The determination of where a mark falls along the spectrum, and whether such mark has acquired secondary meaning, are questions of fact.  *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 292 n.18 (3d Cir. 1991).

### A.   The Record Contains Sufficient Evidence For A Reasonable Jury To Determine That DENSIFY Is A Suggestive Mark.

Densify uses the term DENSIFY in connection with software that performs data analytics to

---

[4] It does not appear VMware contests element two, ownership.  "With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991). Densify has used the DENSIFY mark in commerce, DTX-5231.

intelligently place VMs on hosts in virtualized environments.[5]  Trial Transcript ("Tr."), Vol. A,

256:21-259:8.  Densify also is the name used to identify Cirba, Inc. Tr., Vol. E, 1057:17-23; 1058:14-

21.  Both can serve as trademarks. *See Telechron, Inc. v. Telicon Corp.*, 198 F.2d 903, 909 (3d Cir.

1952).  "The distinctiveness of a mark cannot be determined in the abstract, but only by reference to

the goods or services upon which the mark is used. For example, the mark BRILLIANT may be

'descriptive' on diamonds, 'suggestive' on furniture polish, and 'arbitrary' on canned applesauce." 2

McCarthy on Trademarks and Unfair Competition § 11:64 (5th ed.).

Unlike the plain meaning of the word "densify" – which is simply "to make more dense" –

DENSIFY is associated with a software company and software product that uses sophisticated

algorithms to perform highly complex evaluations of virtual environments to optimize VM

placements in accordance with technical, business, and workload constraints.  Because the common

definition of "densify" is not descriptive of computer software, let alone optimizing public cloud and

on-premise virtual infrastructure, the term is at most *suggestive* of the product associated with it.  *See*

*A.J. Canfield Co. v. Honickman,* 808 F.2d 291, 297 (3d Cir.1986) ("A term is suggestive if it requires

imagination, thought or perception to reach a conclusion as to the nature of goods."); *see also*

*International Data Group, Inc. v. Ziff Davis Media, Inc.*, 145 F.Supp.2d 422 (D. Del. 2001)

("Suggestive marks are commonly used words that 'suggest rather than describe the characteristics of

the goods,' but require some imagination, thought, and perception to discern the good or service on

which the mark is placed.").  Indeed, before Densify began using the DENSIFY trademark, no one in

the industry was known to have used this term to describe optimization software, or anything related.

Tr., Vol. E, 1058:8-10; *see* Transcript 1110:10-13.[6]

---

[5] Densify uses DENSIFY as a tradename both for its business as well as its product.  Tr.
Vol. E, 1057:17-23.

[6] Densify is also filing appendices containing its record citations and exhibits.

Furthermore, the concept of densifying is a physical analogy for a complex set of computer processes, that only in part relate to putting more VMs on the same number of servers. *See, e.g.*, Tr., Vol. A, 243:18-24 (describing a sales pitch about what Densify does); *id.*, Vol C, 665:1-18 (describing the lack of differentiators after the release of vROps 7); DTX-5231 ("Cirba, Inc., today unveiled an analytics service, Densify<sup>tm</sup>, for optimizing public cloud and on-premise virtual infrastructure.") Densify's product is about optimization based on technical, workload, and business constraints. One of the goals of this process is to increase the number of VMs running on hosts, but not at the exclusion of other constraints, such as whether the host can technically accommodate the VMs, whether the workload is unevenly balanced, and whether the VMs need to be kept separated for business reasons. *See, e.g.*, Tr., Vol. C, 656:3-658:12.

VMware makes much of the fact that "Densify" is a word in the English language. This makes no difference –by definition this is the case with every suggestive mark – they are "commonly used English words" that do not describe particular goods or services, but rather merely suggest certain qualities of them. *International Data Group, Inc.*, 145 F.Supp.2d at 432. "If the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness. Other examples … include: GLOW for skin cream; ORACLE for computer software; PENGUIN for food freezers; SAMSON for weight training machines; and VENUS for a beauty salon." 2 McCarthy on Trademarks and Unfair Competition § 11:67 (5th ed.) (footnotes omitted). *See also NetJets Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343, 351 (6th Cir. 2017) ("The district court determined that the INTELLIJET mark is suggestive because it suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. That is, INTELLIJET is a play on both 'intelligent' and 'jet' and suggests an intelligent software in relation to

jets.") (internal citations and quotation marks omitted).  In other words, an inferential leap is required to associate DENSIFY with optimizing public cloud and on-premise virtual infrastructure.  The record contains evidence sufficient to allow a reasonable jury to find the trademark is suggestive.

**B.      The Record Contains Sufficient Evidence For A Reasonable Jury To Determine That The DENSIFY Trademark Has Acquired Secondary Meaning.**

In all events, there is sufficient evidence in the record from which a jury could find that the DENSIFY acquired secondary meaning.  A descriptive mark acquires secondary meaning when the relevant consuming public identifies it as a product or service originating from a particular source. *Commerce Nat'l Ins. Services, Inc. v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 438 (3d Cir.2000). "Secondary meaning is generally established through extensive advertising which creates in the mind of consumers an association between different products bearing the same mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1228 (3d Cir.1978).  The Third Circuit's non-exhaustive list of factors relevant to a determination of whether a mark has acquired secondary meaning includes: (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion.  *Commerce Nat'l,* 214 F.3d at 438.[7]

The record contains evidence sufficient to allow a reasonable jury to determine by a preponderance of the evidence that the DENSIFY mark has acquired secondary meaning.  *See, e.g.,* PTX-3443, -3444, -3445 (each demonstrating prominent uses of the DENSIFY mark in public

---

[7] "Survey data is direct evidence of secondary meaning. But survey evidence is not required. Secondary meaning can be, and most often is, proven by circumstantial evidence." 2 McCarthy on Trademarks and Unfair Competition § 15:30 (5th ed.) (footnotes omitted). *See also E.T. Browne Drug Co. v. Cococare Products, Inc.*, 538 F.3d 185, 201 (3d Cir. 2008) ("We never have held, and do not hold today, that a party seeking to establish secondary meaning must submit a survey on that point.'").

contexts).  From this evidence, a reasonable jury can determine that Densify engaged in extensive advertising of its marks, including sponsoring a NASCAR (PTX-3443) and attending dozens of industry tradeshows,(*e.g.*, Tr., Vol. E, 1059:23-1060:1), including VMworld, the preeminent tradeshow in its field (*id*., Vol. C, 685:25-7); that Densify spends significant money in promoting its name, (*id.*, Vol. E,  1058:3-7; 1022:13-1023:5); and that Densify is covered in a wide variety of trade publications(*id.*, Vol. A, 264:4-12.)  *See, e.g.*, *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 578–79 (D. Del. 2019) (circumstantial evidence of secondary meaning sufficient).

## III.    VMWARE'S USES OF DENSIFY AND ITS FORMATIVES CAUSE A LIKELIHOOD OF CONFUSION.

"In determining whether there is a likelihood of confusion, we have adopted a non-exhaustive list of factors, commonly referred to within our Circuit as the *'Lapp* factors'…."[8] *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 319 (3d Cir. 2015). (internal citations and quotation marks omitted).  No one of the factors is determinative, and each factor must be weighed and balanced one against the other.  *A & H Sportswear*, 237 F.3d at 215 ("[T]he Lapp test is a qualitative inquiry.  Not all factors will be relevant in all cases; further, the different factors may properly be accorded different weights depending on the particular factual setting."); *see also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) ("The *Lapp*

---

[8] "The factors are: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market."

factors are best understood as tools to guide a qualitative decision."). Likelihood of confusion is a quintessential fact question, and as a multi-factored test is not typically susceptible to judgment as a matter of law where the plaintiff has adduced evidence on some of the factors.

In this case, *Lapp* factors 1, 2, 4, 5, 7, 8, 9, and 10 all favor Densify, and sufficient evidence has been entered into the record to allow a reasonable jury to find a likelihood of confusion. Under Factor 1, the degree of similarity, "the court looks to 'the sight, sound, and meaning of the marks' to determine 'whether the [marks] create the same overall impression when viewed' as a consumer. *VeriFone, Inc. v. Poynt Co.*, 199 F. Supp. 3d 898, 908 (D. Del. 2016) (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215 (3d Cir. 2000) (alteration in original). "Although the degree of similarity between the owner's mark and the alleged infringing mark is but one factor in the multi-factor confusion analysis, we have recognized that when products directly compete, mark similarity 'may be the most important of the ten factors in *Lapp*.'" *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270 (3d Cir. 2001). VMware has used the terms "densify," "densifying," and "densification," all of which are identical or near identical to Densify's mark in sight, sound, and meaning. Accordingly, Factor 1 favors Densify, and there is sufficient evidence in the record for a reasonable jury to reach that conclusion. *See, e.g.*, PTX-1833; Tr., Vol. B, 314:23-315:13; *id.*, Vol. C, 666:5-8; *id.*, Vol. D, 903:19-905:4; PTX-1197.

As to factor 2, the DENSIFY trademark is suggestive, and therefore is deserving of greater protection. *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 186 (3d Cir. 2010); *Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 30 F. App'x 24, 27 (3d Cir. 2002). This is particularly true because the term is not known to have been used to describe the types of products sold by Densify until after Densify began using it. Tr., Vol. E, 1058:8-10.

As to factor 4, the length of time the defendant has used the mark without actual confusion,

VMware only started using "densify" and formatives thereof in March 2018 – approximately one year before this case was filed.  DTX-5056.  That is not much time for confusion to have arisen.

There also is sufficient evidence for the jury to infer an intent to deceive under Factor 5.  As Riyaz Somani testified, "the majority of the customers in there, they don't even invite us into the room because VMware is already there, and they are telling them they have our Densify technology built into their product." Tr., Vol. C, 660:10-14.  "And, it wasn't just the fact that they said they do host-based placement, they listed all of the benefits that we did and then they went further. They started to use the word densify, densification, densifying.  So, in one swoop, they announced our differentiators, and then they implied that they have 'densify.' They took our identity at the same time in one shot." *Id.*, 666:5-12.  Moreover, VMware has used some form of intelligent placement of virtual machines on hosts since 2010, *id.*, Vol. B, 386:21-25, yet there is no evidence of it using the terms "densify," "densification," or "densifying" in its products until March 2018 – *after* Cirba had rebranded as Densify and had poured millions of dollars into advertising and marketing its brand. *Id.*, Vol. E, 1058:2-1060:4.  VMware knew the company's new name was Densify.  *See, e.g.*, *id.*, Vol. D 832:1-3.  VMware's timing, which coincides with its aggressive foray into Densify's space, *id.*, Vol. C, 664:24-666:24, tends to show VMware's intent.  Moreover, VMware has admitted that its control console resembled Densify's and that it was not concerned that they might look a lot like Densify. *See id.*, Vol. C, 782:22-783:2, 788:6-790:3, and PTX-1326.

Factors 7 and 8, "whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; [and] the extent to which the targets of the parties' sales efforts are the same…" also favor Densify.  VMware runs VMworld, the major industry convention in this market. *Id.*, Vol. C, 665:21-23; Vol. A, 264:24-265:9. Densify has repeatedly won awards at VMworld, literally advertising through a VMware channel. *Id.*, Vol. B,

384:7-19. These facts tend to show that the parties' advertising and marketing channels are similar, if not identical. *VeriFone, Inc. v. Poynt Co*., 199 F. Supp. 3d 898, 911 (D. Del. 2016) (finding that it was relevant that parties participate in the same tradeshows). The record also shows that VMware and Densify target the same consumers, often sharing the same clients. *E.g.,* Tr. Vol. C, 659:16-24. There is substantial evidence that Densify and VMware compete in exactly the same channel of trade. The products do the same things, the products can interoperate, nearly all of Densify's customers are VMware customers, they advertise in the same channels.

Factor 9, "the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors" also strongly favors Densify. VMware is the dominant incumbent player in the space, *id*., Vol. A, 256:10-20, and 87% of Densify's business is on VMware's platform. *Id.*, Vol. C, 658:15-16. *See also id.*, 659:9-15; 662:15-663:9. Citi believed that Densify filled a "key gap" for VMware. PTX-1218, and asked VMware for features that would erode the Densify use cases, PTX-1047. Other companies also wanted closer integration of the products. *See, e.g.*, PTX-1639.

Finally, factor 10, relating to other facts that might create confusion, favors Densify. VMware has been trying to crack the Densify uses cases for years *see, e.g.*, Tr., Vol. E, 1055:10-1057:7; 1066:17-1067:10, and it is imminently reasonable for customers to assume that VMware would be offering optimization software solutions, which it in fact has done. *Id.*, Vol. B, 314:3-20.[9]

## CONCLUSION

Accordingly, Densify respectfully requests that the Court deny VMware's motion for judgment as a matter of law on the DENSIFY trademark claims.

---

[9] VMware has alleged a "fair use" defense to Densify's trademark-related claims. This defense is not at issue in VMware's oral motion for judgment as a matter of law – it is an affirmative defense on which it bears the burden of proof.

Dated: January 19, 2020

Respectfully submitted,

*/s/ Kenneth L. Dorsney*

Sarah O. Jorgensen (*pro hac vice*)
sjorgensen@reichmanjorgensen.com
Reichman Jorgensen LLP
1201 West Peachtree, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
Telecopier: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Reichman Jorgensen LLP
818 Connecticut Ave NW, Suite 850
Washington, DC 20006
Telephone: (202) 894-7310
Telecopier: (650) 623-1449

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Jaime Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
Wesley L. White (*pro hac vice*)
wwhite@reichmanjorgensen.com
Rahul Sarkar (*pro hac vice*)
rsarkar@reichmanjorgensen.com
Reichman Jorgensen LLP
100 Park Avenue, Suite 1600
New York, NY 10017
Telephone: (212) 381-1965
Telecopier: (650) 623-1449

Peter J. Ayers (*pro hac vice*)
peter@ayersiplaw.com
Law Office of Peter J. Ayers, PLLC
220 Bowman Avenue
Austin, TX 78703
Telephone: (512) 771-3070

Kenneth L. Dorsney (#3726)
kdorsney@morrisjames.com
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna Ballard (*pro hac vice*)
sballard@reichmanjorgsensen.com
Jennifer P. Estremera (*pro hac vice*)
jestremera@reichmanjorgensen.com
Michael G. Flanigan (*pro hac vice*)
mflanigan@reichmanjorgensen.com
Joachim B. Steinberg (*pro hac vice*)
jsteinberg@reichmanjorgensen.com
Kate Falkenstien (*pro hac vice*)
kfalkenstien@reichmanjorgensen.com
Ariel C. Green (*pro hac vice*)
agreen@reichmanjorgensen.com
Reichman Jorgensen LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Telecopier: (650) 623-1449

Gary J. Toman (*pro hac vice*)
Gtoman@wwhgd.com
Weinberg Wheeler Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700
Telecopier: (404) 875-9433

**ATTORNEYS FOR CIRBA INC. (D/B/A DENSIFY) AND CIRBA IP, INC.**

11

## **CERTIFICATE OF SERVICE**

I, Kenneth L. Dorsney, hereby certify that on January 19, 2020, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed.

I further certify that on the same date the attached document was electronically mailed to the following person(s):

Anne Shea Gaza
Samantha G. Wilson
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
agaza@ycst.com
swilson@ycst.com

Attorneys for Defendant VMware, Inc.

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
MoFo_VMware_Cirba@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
MoFo_VMware_Cirba@mofo.com

Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
MoFo_VMware_Cirba@mofo.com

Jayson L. Cohen
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
MoFo_VMware_Cirba@mofo.com

Daniel C. Hubin
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
MoFo_VMware_Cirba@mofo.com

*Attorneys Defendant VMware, Inc.*

Dated: January 19, 2020

/s/ Kenneth L. Dorsney

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Plaintiffs*
*Cirba Inc. (d/b/a Densify) and Cirba IP, Inc.*