# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a DENSIFY)
and CIRBA IP, INC.,

               Plaintiffs/Counter-
               Defendants,

     v.

VMWARE, INC.,

               Defendant/Counter-Plaintiff.

REDACTED - PUBLIC VERSION
(Filed March 3, 2020)

C.A. No. 19-742-LPS

---

## LETTER TO THE HONORABLE LEONARD P. STARK FROM ANNE SHEA GAZA REGARDING VMWARE'S REQUEST FOR RELIEF IN ADVANCE OF POST-TRIAL BRIEFING

Dated: February 25, 2020

*Of Counsel:*
Arturo J. González
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
agonzalez@mofo.com
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

(303) 592-2204
sllewellyn@mofo.com



**WILMINGTON**
RODNEY SQUARE

**NEW YORK**
ROCKEFELLER CENTER

**Anne Shea Gaza**
P 302.571.6727
agaza@ycst.com

February 25, 2020

**VIA CM/ECF & HAND DELIVERY**

███████████████

The Honorable Leonard P. Stark
United States District Court
 for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:     *Cirba Inc. (d/b/a Densify), et al. v. VMware, Inc.*, C.A. No. 19-742-LPS

Dear Chief Judge Stark:

VMware requests the Court's assistance in determining the veracity of statements made during Cirba's rebuttal closing argument.  Because resolution of this issue may substantively impact VMware's post-trial brief, VMware immediately reviewed the record and endeavored to resolve this issue cooperatively with Cirba.  After several letter exchanges that culminated in a meet-and-confer on February 20, it is evident this issue will not be resolved without Court intervention.  More specifically, Cirba has refused to identify anything other than vague references to its ████████████████████████████ when asked what information supports its bare assertion that Cirba investigated VMware's purported patent infringement over a nine-year period.  In order to put the parties on even ground going into post-trial briefing, VMware asks that the Court require Cirba to identify the entries in its privilege log and/or documents in its production supporting the statement in question, and to do so in advance of the deadline for opening post-trial briefs (March 9, 2020).

By way of background, VMware's closing argument included the fact that Cirba never informed VMware of any alleged infringement, and did not discuss any allegations of infringement by VMware within Cirba, for many years—a theme that was at the heart of VMware's defense.  (*E.g.*, Ex. A (Jan. 23, 2020 Trial Tr.) at 1809:5-12, 1818:25-1824:3.)  In particular, VMware ended its closing argument by asking the jury to consider "why [Cirba] waited nine years to sue" VMware.  (*Id.* at 1872:11-12.)  Cirba rebutted VMware's argument by stating that there were privileged communications regarding investigation of VMware's alleged infringement during the nine-year period, and that VMware knew it.  Specifically, Cirba stated:

Young Conaway Stargatt & Taylor, LLP
The Honorable Leonard P. Stark
February 25, 2020
Page 2

That there is no evidence of an investigation -- not that it matters, I'm going to talk about this, this **nine years** business -- but there is no investigation.  They [*i.e.*, VMware] knew darn well why there's no documents of an investigation.  **Because it is with lawyers and it is privileged.  That is why there are no documents.**

(*Id.* at 1879:21-1880:1 (emphases added).[1])

Because Cirba's privilege log is extensive (over 6,000 entries) (Ex. B), VMware did not know at the time of trial (and does not know for certain now) whether the statement by Cirba's counsel was accurate.  Thus, VMware has repeatedly asked Cirba to identify the entries in its 6,000+ entry privilege log that confirm the alleged nine-year investigation.  (*See* Ex. B; Ex. C (Feb. 3 Ltr. from A. González to C. Reichman); and Ex. D (Feb. 6 Ltr. from A. González to C. Reichman).)

Despite VMware's repeated requests, Cirba refused to identify when the relevant privileged communications occurred, let alone identify any specific privilege log entries that correspond to the purported privileged communications.  (*See* Ex. E (Feb. 5 Ltr. from C. Reichman to A. González; Ex. F (Feb. 13 Ltr from G. Toman to A. González).)  Cirba claimed that it had no obligation to "continue to expend resources in disputes about privilege logs."  (Ex. E.)  Instead, Cirba asserted that there were privileged communications about "Densify's ███████ ██████████ in relation to investigation of patent infringement and assertion," without specifying when these communications may have occurred.  (*Id.* (referring to "communication between Densify and its attorneys" ████████████████████ "at other times"); *see also* Ex. F at 1 ("Densify followed up on [██████████████████], including privileged communications").)  During the February 20 meet and confer, Cirba again referred to the purported ██████████ and refused to identify any relevant privilege log entries, maintaining that it had no obligation to do so.

Cirba's assertion that the purported ██████████ was done to investigate VMware's potential infringement is contrary to the record.  Cirba's Chief Executive Officer Mr. Smith testified before trial that █████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████ (Ex. H (Smith Dep. Tr.) at 282:5-20, 284:19-285:1, 285:6-9.)

Although Cirba's privilege log appears to include ██████████████████████ ██████████████, these entries do not support Cirba's bare assertion that Cirba investigated VMware's purported patent infringement prior to 2018, as confirmed by Mr. Smith's testimony.  (*Id.*)  VMware has been unable to identify any entries in Cirba's privilege log or documents

---

[1] Cirba made additional misstatements during its rebuttal closing argument.  It stated that it did not know about Dr. Nieh's testing of the accused products until trial.  (Ex. A at 1877:24-1878:2 ("running a test where we find out about the test for the first time in trial and are told, that is it, you lose, when we never heard about before").)  To the contrary, Dr. Nieh timely disclosed the testing in his opening expert report.  VMware also raised this concern in correspondence with Cirba and received no response.  (Ex. G (Jan. 26 Ltr. from M. Jacobs to C. Reichman) at 2.)

Young Conaway Stargatt & Taylor, LLP
The Honorable Leonard P. Stark
February 25, 2020
Page 3

produced by Cirba that would support Cirba's assertion that there were privileged communications *regarding any investigation of VMware's alleged infringement* during the nine-year period.

The way Cirba responded to VMware's inquiries suggests that there were no privileged communications regarding any investigation of VMware's alleged infringement during the nine-year period.  If those communications exist, they should have been included in the privilege log and identified by Cirba, as VMware repeatedly asked Cirba during discovery to identify documents and information relating to its investigation of VMware's purported infringement. (*See, e.g.*, Ex. I (RFP No. 4 ("Documents relating to any analysis of VMware Accused Products"), RFP No. 42 ("Documents regarding Your first awareness of VMware's alleged infringement")); Ex. J (ROG No. 2 ("Identify and Describe Your first awareness that the VMware Accused Products allegedly Infringe the Cirba Asserted Patents")); *see also* Ex. I (RFP Nos. 44, 47, 184); Ex. J (ROG Nos. 21, 24).)

Instead of meaningfully addressing VMware's concerns, Cirba pivoted to alleged "misrepresentations" made by *VMware* during trial.  (*See* Ex. F at 1; Ex. K (subsequent e-mail chain).)  VMware strongly disputes these accusations, and repeatedly asked Cirba to identify its basis.  Save for identifying an exemplary transcript cite during the meet and confer (and indicating that there were others), Cirba refused.

At this juncture, all VMware asks is that Cirba identify the entries in its privilege log and/or documents in its production supporting its assertion in rebuttal closing argument that there were privileged communications during the nine years that preceded the filing of this lawsuit.  If, as VMware suspects, there is no defensible support for the assertions, it is a significant issue that will need to be raised in the post-trial motions.  *See, e.g.*, *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 & n.10 (3d Cir. 1994) (recognizing courts' inherent authority to, *inter alia*, impose sanctions for abuse of the judicial process and vacate a judgment upon proof of fraud perpetrated on the court) (discussing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991)).  Since only Cirba can provide the information through which VMware (and the Court) can fully evaluate this issue, VMware requests that the Court grant the above relief so that VMware has the information in advance of the March 9 deadline for opening post-trial briefs.

Should Your Honor have any questions or concerns regarding the foregoing or the enclosures, counsel are available at the Court's convenience.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Enclosures (Exs. A – K)

cc:  All Counsel of Record (CM/ECF and E-mail)

# EXHIBIT A

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                               - - -

 4    CIRBA INC. (d/b/a DENSIFY) and
      CIRBA IP, INC.,                    :     CIVIL ACTION
 5                                       :
                 Plaintiffs,             :
 6    v                                  :
                                         :
 7    VMWARE, INC.,                      :
                                         :        NO. 19-742-LPS
 8               Defendant.              - - -

 9
                         Wilmington, Delaware
10                   Thursday, January 23, 2020
                       Jury Trial - Volume H
11
                               - - -
12
      BEFORE:  HONORABLE LEONARD P. STARK, Chief Judge, and a jury
13
      APPEARANCES:                       - - -
14

15            MORRIS JAMES, LLP
              BY:  KENNETH L. DORSNEY, ESQ.
16
                       and
17
              REICHMAN JORGENSEN, LLP
18            BY:  COURTLAND L. REICHMAN, ESQ.,
                   SHAWNA L. BALLARD, ESQ.
19                 (New York, New York)

20                     and

21            REICHMAN JORGENSEN, LLP
              BY:  CHRISTINE LEHMAN, ESQ., and
22                 KHUE V. HOANG, ESQ.
                   (Washington, District of Columbia)
23
                       and
24

25                              Brian P. Gaffigan
                                Official Court Reporter
```

1           No.

2           Well, when did first hear that they thought we

3   were infringing?

4           When we got the lawsuit.

5           And, I have been wondering since this lawsuit

6   was filed, April 29th of last year, I have been wondering,

7   how are they going to explain to these jurors why they sat

8   around for nine years and said nothing?

9           I was wondering.  I couldn't wait to hear what

10   they were going to say.

11           You remember what they said?  In their opening

12   statement?

13           Over and over and over again, they were scared.

14           Now, I'm going to talk about this scared thing.

15   It's so important to the case.

16           But first, I just want to refresh your

17   recollection of some key dates.

18           First of all, the thing we supposedly did wrong

19   was in 2010.  Do you see that?

20           VM-Host affinity rules.  That is what we did

21   that they claim was bad.  That they claim infringes their

22   patent.  We did it in 2010.

23           Well, they filed their application three years

24   before in 2007.  So one would think that if we did something

25   in 2010 that was in violation of their application for a

1    understand they knew in 2010 exactly what we had done.  So I

2    don't want anybody to think, well, gee, maybe they didn't

3    know.  Oh, they absolutely knew.  And yet their CEO said

4    nothing to his board.

5              How do you explain that?  Their most valuable

6    asset, their IP, we're now stepping on it and they don't say

7    anything to their board?  Because they're scared?  How do

8    you explain that?

9              They say nothing to their investors.  I'm going

10   to talk about them in a minute.  These are people who

11   invested tens of millions of dollars, big companies, and

12   they say nothing to them.

13             Why not?  Why not?

14             They say nothing to us.  They say nothing to

15   VMware.

16             They say nothing to the analysts.  They

17   frequently are talking to analysts in the industry.  You

18   know this.  In every industry there are analysts, and

19   they're frequently talking to them.

20             And, you heard Chris Wolf who was an analyst and

21   came to work for us, he's talked to them all the time.  They

22   had dinner together, they were on a panel together.  Never

23   said a word to him about infringement or we're doing

24   something wrong.

25             Nothing.  Why not?  What is the explanation for

1   being silent for nine years?

2              It wasn't because they didn't know.

3              Their own CEO says, yep, every time we updated

4   the product, you would look at the updates?

5              Yes.

6              You would understand them?

7              Of course, their product works with ours.  They

8   have to understand it.

9              Okay.  He knows about it.

10             Mr. Somani, the president, admitted that they

11  evaluate our products.  They have a whole team that does

12  that.

13             It's so important for you to get this right out

14  of the gate.  They've got a whole team of people whose job

15  it is to evaluate new products.  They clearly knew and they

16  haven't suggested otherwise.

17             And, Mr. Somani confirmed that it was in 2010,

18  that is what he is telling you anyway under oath, that it

19  was in 2010 that Mr. Hillier, the inventor, says to him,

20  VMware is doing the heart of what we do.  The heart of what

21  we do.

22             So in 2010 they know, according to them, that

23  we're doing the heart of what they do.

24             What would you expect Hillier to say at that

25  time?

1           He had a patent application on file that covered

2    the heart.

3           We better talk to a lawyer, or we should talk to

4    our friends at VMware, our partners and let them know.  Hey,

5    guys, it's kind of cool what you did, but just so you know,

6    we have this patent application.

7           I'm not saying you have to go ballistic, but you

8    have to do something.  You have to say something.  You

9    report to your board.  You know, VMware just started doing

10   something that we think might infringe our patent.

11          You report to your investors.  You let people

12   know what is going on.

13          But nothing.  Why didn't they say anything?

14          I've just got to keep coming back to this.  This

15   is not two little kids in the playground.

16          Why didn't they say anything for nine years when

17   we supposedly have cost them $200 million in harm?  Why?

18          I'm going to give you their version and our

19   version.

20          And, by the way, I completely agree with my

21   colleague -- who I respect a great deal, he is a great

22   lawyer.  I completely agree with him.  Common sense.  Common

23   sense.  Common sense.  That is all I want, common sense.

24   That's all I need.

25          There's two alternatives, and you've got to pick

```
 1    which one is true.

 2               Why did they say nothing for nine years?

 3               Well, here is their answer.  Because they were

 4    scared.  That is their answer.

 5               Or maybe it's because they knew we didn't

 6    infringe.

 7               This is their opening statement.  This is when

 8    I realized for the first time, wow, they're really going

 9    for this scared thing.  I don't know if that is going to

10    fly.

11               We were scared.  Really?

12               These are all statements made in their opening

13    statement.

14               They were scared.

15               They were scared about getting crushed.

16               They were afraid.

17               The fear is palpable.

18               They are scared to death.

19               They had good reason to be scared.  Their whole

20    argument, their whole explanation for why they said nothing,

21    is that they were scared.

22               Honestly.  Does anyone really believe that?

23               The first time, according to Mr. Somani, that

24    Mr. Hillier ever said a word -- remember Mr. Hillier is the

25    inventor of both of the patents in trial.  If anybody is
```

going to know that, hey, they're stepping on my toes, it's

the inventor; right?  He invented the thing.  He knows what

we're doing.

The first time, according to Somani, he says

anything is August of 2018.

Why would he -- why would he be silent for eight

years with his own co-founder?  These two guys founded the

company together.

Even if somebody thinks maybe they were scared

of VMware, and I want to say no way were they scared of

VMware, why won't they tell each other?

Now, I found this testimony interesting.  We

asked Hillier.

In 2010 he knew exactly what we were doing, so

what was the reaction?

Now, what he should have said is, I was really

concerned that they were infringing.  You know, I had just

filed a patent application right on point, and I became

really concerned about that.

That is what I thought he was going to say.

No.  Instead he says:  "We found it

interesting."

If you have a patent application on an idea that

you came up with, and if two or three years later I start

doing your idea, you are not going to find it interesting.

1   Your reaction is going to be a whole lot stronger than that.

2            What he didn't say is, boy, I saw what they were

3   doing and I thought -- I was concerned that that is what my

4   patent is all about.  He didn't say that.

5            He just found it interesting, as a competitor.

6            This thing about being scared, why are there no,

7   and I mean no, internal communications about infringement?

8            Answer that one.

9            If, in fact, it is true that we are doing

10  something that infringes in 2010, wouldn't they at least

11  communicate about it internally?

12           Wouldn't you expect that Hillier would be

13  writing e-mails to his president and to the other people

14  and saying, hey, guys, I'm concerned.  VMware is doing

15  something, it's exactly what I put in my patent application.

16           This thing, each-to-each, they're doing it.

17           Or the VM-Host affinity rules, they're doing it.

18           Nothing.  Nothing, not a word.  Even internal.

19           Why not?  Why not?

20           There is only one explanation.  Because Mr.

21  Hillier understood our products are different.  "Different"

22  meaning we don't do what he put into his patent application.

23  We don't do that.

24           Hillier knew it.  That explains everything.

25  That explains why he didn't say anything to the board or to

1    investors or to his co-founder.

2              There was nothing to it.  This lawsuit is a

3    fabrication.

4              And the people behind it are wealthy, wealthy

5    investors who are unhappy that they haven't gotten a return.

6              I'm going to show you what I mean by that.

7              They get written updates to their investors.  Of

8    course they do.

9              People put tens of millions of dollars in.  They

10   want to know how the company is doing.  They give them

11   written updates.

12             Have you seen any piece of paper, anything

13   showing that they ever said to their investors that they

14   even think we're infringing?  Nothing.

15             Written reports to the board, every quarter, of

16   course.

17             In fact, I'm surprised it's not monthly.  Fine.

18   Let's just say it's every quarter.

19             Have you seen a single piece of paper, anything

20   that they ever gave their board that says we're infringing?

21             Nothing.  Not even in 2018.  You don't have

22   anything.

23             Did anybody at Cirba say, you know what, we've

24   got an interesting patent to assert here?  Do you recall

25   anybody saying that?

1    infringement.  There are no damages if there is no

2    infringement.

3              I want to emphasize here.  Why did I pick this?

4    Of all the exhibits?

5              It tells you about the culture of their company.

6              By the way, when you see this exhibit, 4013,

7    look at the second page.  Look at what they wrote about the

8    shark.

9              They're very aggressive competitors that devour

10   the competition.  They are not afraid.  And they have not

11   given you any explanation why they waited nine years to

12   sue.

13             The only explanation that makes any sense is

14   that Mr. Hillier understood from the beginning that whatever

15   we were doing, it did not infringe his patent or his patent

16   application.  He would have said something.  He would have

17   said something.

18             You have been very attentive.  Thank you.

19             THE COURT:  Thank you very much.

20             Mr. Reichman.

21             MR. REICHMAN:  I didn't know if we were going to

22   take a break.

23             THE COURT:  Would you like a break?

24             MR. REICHMAN:  I think it makes sense rather

25   than hold them for another half hour while I talk.

```
 1              MR. REICHMAN:  Thank you, Judge.

 2              I think that closing argument made my point

 3    about why Densify did not want to sue VMware.  That's why.

 4              Sitting in a courtroom and having one of the

 5    biggest, most powerful corporations in the world trying to

 6    crush the life out of you in that manner is precisely why

 7    they didn't do it.

 8              And they didn't do it out of some subjective

 9    fear.  They did it out of rational self-preservation.

10    Because it's a irrational to sue VMware unless your back is

11    against a wall.

12              You know, the arguments are supposed to be about

13    the evidence, and I thought it was interesting, I kind of

14    laughed a little bit, when I heard, I wrote it down, at an

15    hour and 20 minutes, now the law.

16              The law is what we are supposed to be talking

17    about, not smoke and mirrors and arguments that don't matter

18    and are meant to attack or belittle or demean.

19              Cartoons with red Xs are not evidence.

20              Even the machine with the blinking lights is not

21    evidence.

22              You don't know what's inside those machines, if

23    there is anything inside of them.

24              And, running a test where we find out about the

25    test for the first time in trial and are told, that is it,
```

1    you lose, when we never heard about before, just ask

2    yourself:  What does that even mean?

3               On the dashboard, the things didn't move?  They

4    actually did move.  He only said it to move by ten percent,

5    and if you look at it, they actually did move.  And,

6               You know, there is something that I've heard of

7    in my environmental area called a made-to-order test, MTO.

8    You get what you are looking for, right, when you are

9    testing something.

10              If he is looking at the source code with you,

11   Professor Nieh, and he says, oh, it is not in this line,

12   well, if you are looking on the wrong line, then, no, it is

13   not.  And as Professor Madisetti said or showed, just look

14   two lines above.

15              You know, the example, I can use the analogy of

16   Uncle Bob and borrow it.

17              If Uncle Bob is just in the room or the usher

18   is just in the room looking at the different people, he

19   might not see all the different spaces at the tables being

20   counted.  But if you step outside the room and see the usher

21   standing outside the room, he did look at all the seats

22   being counted.  It's just a question of where he puts his

23   stuff in the source code.

24              I just say that because to put this much

25   reliance on a test that you all have no way of validating,

 1    no way of looking at, no way of knowing anything about it,

 2    when all these documents say -- the ones from the e-mail

 3    time machine say something completely different, defies

 4    common sense.

 5              I mean, let's look at the smoke and mirrors as

 6    opposed to the evidence just for a moment.

 7              Hillier's article was public.

 8              Why does that matter?  It's a matter of his

 9    article is public.  You don't hear any instructions about

10    the publicness, if that is a word, of his article mattering

11    one iota in this case, and it doesn't.

12              The point about stealing technology when it

13    comes to a case like this is not about going and getting

14    the source code.  That is more smoke and mirrors.  It is

15    the idea of doing the VM-Host placement, the host-based

16    placement with these multiple constraints and knowing that

17    they've got patent rights.

18              It's not about the code, it is not about

19    Hillier's article being public or private or whatever.

20    That's smoke and mirrors.

21              That there is no evidence of an investigation --

22    not that it matters, I'm going to talk about this, this nine

23    years business -- but there is no investigation.  They knew

24    darn well why there's no documents of an investigation.

25    Because it is with lawyers and it is privileged.  That is

1    why there are no documents.  They are pointing to it as if

2    it means something is really something.

3              That there are investors in this company?  I'm

4    proud of them for it.  I don't see why that somebody wants

5    to invest in your company and believes in your product is

6    somehow a negative thing, to be yelling about venture

7    capitalists when you are one of the biggest corporations in

8    the world.  I don't even understand.

9              In fact, the way it is relevant in this case is

10   around nonobviousness.  That, who would invest in a company

11   where the idea was obvious?  Who would buy products if it

12   was obvious?  Who would want to purchase the company if it

13   was obvious?

14             It is what they call a secondary indicia of

15   nonobviousness.  There is nothing wrong with having

16   investors.  It just proves that they were on to something

17   and they could get some people to put in some money.

18             Trying to dirty my client's reputation by

19   putting up some e-mails with some bad words in them as if

20   that matters?  That they're venting?  I mean, who among us

21   could stand to have every e-mail dissected?  Maybe you say

22   something imprudent one day.

23             I'm not fussing at them because they say the

24   word "kill" or they might say a four-letter word.  I

25   don't -- I'm not proud of it.  I don't care about that.

# EXHIBIT B

Redacted In Its Entirety

# EXHIBIT C

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

February 3, 2020

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

Via E-Mail: creichman@reichmanjorgensen.com

Courtland Reichman
Reichman Jorgensen LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA  94065

Re:    Cirba v. VMware, C.A. No. 19-742-LPS (D. Del.)

Dear Courtland:

I am writing to follow up on Michael Jacobs' letter to you, dated January 26, 2020.  To date, we have not received any response to the serious concerns raised in that letter.

As you know, a central theme of our defense was that your clients never informed VMware of any alleged infringement, and did not discuss even amongst themselves, that VMware was allegedly infringing Cirba's patent, for many years since VMware released the 2010 version of its product.  You made a definitive statement to the jury that VMware (and by extension, its counsel) "knew darn well why there's no documents of an investigation.  **Because it is with lawyers and it is privileged**.  That is why there are no documents."  You explained that the alleged privileged communications explained why there were no documents over a "nine years" span (between 2010 and the filing of this lawsuit).  (1879:21-1880:1.)

At the time you made this representation (and even today), we could not know whether your assertion is true because your privilege log contains over 6,000 documents that are only generally described.  Given your assertion in your rebuttal argument, we again ask that you identify the precise entries on your privilege log that comprise the "documents of an investigation" that you referenced in your argument.  We think it likely that your assertion of privilege with respect to those documents has been waived.

**MORRISON** | **FOERSTER**

Courtland Reichman
February 3, 2020
Page Two

Please let us know by the end of the day on Wednesday which documents on your privilege log you were referring to in your closing.  We would like an opportunity to review those entries and to confer with you later this week about the issue of waiver.  We are available to confer on Thursday or Friday.  Let us know which day is more convenient for you.

Sincerely,

Arturo J. González

# EXHIBIT D

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

February 6, 2020

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

Via E-Mail: creichman@reichmanjorgensen.com

Courtland Reichman
Reichman Jorgensen LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA  94065

Re:    Cirba v. VMware, C.A. No. 19-742-LPS (D. Del.)

Dear Courtland:

We are writing in response to your letter of February 6, 2020, which responded to my letter dated February 3, 2020.  To be clear, we are not writing about "disputes about privilege logs."  Our concern is that you may have made a material false statement to the jury during rebuttal argument.  We are giving you an opportunity to demonstrate that your statement was accurate.

As noted in our prior letters, you made a definitive statement to the jury that VMware (and by extension, its counsel) "knew darn well why there's no documents of an investigation. **Because it is with lawyers and it is privileged.**  That is why there are no documents."  You explained that the alleged privileged communications explained why there were no documents over a "**nine years**" span (between 2010 and the filing of this lawsuit).  (1879:21-1880:1.)

In yesterday's response, you make reference to a company called ▮▮▮ and vaguely suggest that when that company was retained "and at other times" there may have been privileged communications.  As I understand it, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮  That still leaves a five year gap between the date that DRS was modified in a manner your client finds objectionable, and when ▮▮▮ was retained.  What privileged communications do you contend took place during that time period?

sf-4184299

**MORRISON** | **FOERSTER**

Courtland Reichman
February 6, 2020
Page Two

For the third time, we ask that you identify the precise entries on your privilege log that comprise the "documents of an investigation" that you referenced in your argument, whether those communications were with ▮▮▮ or with counsel.  We think it likely that your assertion of privilege with respect to those documents has been waived because you have used the privilege as a sword and a shield.  If, on the other hand, there are no such documents, then it appears you made a material misstatement to the jury during rebuttal argument that we could not have known was false, and that prejudiced our client.

Again, please identify the documents on the privilege log, or any "redacted" documents, that you contend reflect such communications.

Sincerely,

Arturo J. González

# EXHIBIT E

REICHMAN JORGENSEN LLP

Courtland L. Reichman
Direct Dial:  (650) 623-1402
creichman@reichmanjorgensen.com

100 Marine Parkway
Suite 300
Redwood Shores, CA 94065

February 5, 2020

**By E-Mail**

Mr. Arturo Gonzalez
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
agonzalez@mofo.com

RE:    **Densify v. VMware**

Dear Arturo:

I write in response to your letter of February 3, 2020.  I understand you were writing about entries on a privilege log provided in discovery related to Densify's claims against VMware.  My memory is that there was discussion at various points between our teams about Densify's retention of a company called ▮ in relation to investigation of patent infringement and assertion, and as part of that retention, and at other times, there was communication between Densify and its attorneys about these subjects.  Non-privileged ▮ documents were provided to VMware, some of which contained redactions for privilege.  This issue also came up during your examination of Mr. Smith at trial, at which point you decided to not inquire further.

With discovery closed, I am unaware of an obligation on Densify to continue to expend resources in disputes about privilege logs.  If there is a procedural requirement or obligation, please let me know and we will consider it.

Sincerely,

Courtland L. Reichman

Cc:    Ms. Christine Lehman
Mr. Kenneth Dorsney
Mr. Gary Toman

SILICON VALLEY · NEW YORK · ATLANTA · WASHINGTON, D.C.

# EXHIBIT F

# WEINBERG WHEELER
# HUDGINS GUNN & DIAL

3344 Peachtree Road, NE   404.876.2700   Office
Suite 2400                404.875.9433   Fax
Atlanta, GA 30326         www.WWHGD.com

**Gary J. Toman**
gtoman@wwhgd.com
Direct 404.832.8592

February 13, 2020

BY EMAIL

Arturo J. Gonzalez
Morrison & Foerster
425 Market Street
San Francisco, California 94105-2482

Re:   Densify v. VMware, U.S. District Court, D. Del. No. 19-742-LPS

Dear Arturo:

This letter is in response to your letter of February 6, 2020. In your letter, you make the claim that Densify "may have made a material false statement to the jury during rebuttal argument."  That charge is baseless.

Throughout its closing, VMware told the jury that it should conclude that VMware did not infringe because Densify said nothing to VMware about infringement for nine years. The jury considered that argument for what it was worth and was unpersuaded.

VMware also made specific allegations that Densify never followed up on its 2015 investigation about whether its patents were being infringed.  This argument was materially false.  As you are aware and as our letter of February 5 reflected, Densify followed up on its investigation, including privileged communications. Densify produced documents relating to the ███████████████████  with privileged entries redacted.  Indeed, even at trial Densify invoked the attorney client privilege during your examination of Gerry Smith relating to this investigation, and you decided not to pursue the issue further.  Densify's statements were accurate and were necessary to correct your misrepresentations to the jury.

Further, in your February 6 letter, you suggest that Densify argued that it investigated VMware's infringement throughout the nine year period preceding the lawsuit.  I do not see that in the record.

Finally, you make the assertion that Densify has waived the privilege. That is incorrect as well. Densify did not reveal the substance of any confidential privileged communication. In fact, you improperly argued that there was no follow up on the 2015 investigation despite knowing



February 13, 2020
Page 2

that there was follow up and that there was privileged follow up with lawyers.  Correcting your misstatement without disclosing privileged information does not waive the privilege.

If VMware has issues to raise in connection with the trial, the appropriate place to raise them would be in its post-trial motions.  The discussion above by no means is all information refuting VMware's allegations, but an extensive letter writing exchange on this subject is unproductive, other than to make clear that we disagree with VMware's assertions.

Sincerely yours,

Gary J. Toman

cc:    Courtland L. Reichman (by email)
       Christine E. Lehman (by email)
       Michael A. Jacobs (by email)
       Anne Shea Gaza (by email)
       Kenneth L. Dorsney (by email)

# EXHIBIT G

# MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

Writer's Direct Contact
+1 (415) 268.7455
MJacobs@mofo.com

January 26, 2020

Via Email

Courtland Reichman
Reichman Jorgensen LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
creichman@reichmanjorgensen.com

Re:     *Cirba v. VMware*, C.A No. 19-742-LPS (D. Del.)

Dear Courtland:

I am writing to address several statements you made at trial that I cannot find support for in
our litigation record.

1.  <u>Claim of Privileged Investigation</u>. During your rebuttal closing argument to the jury,
    you stated (Jan. 23, 2020 Trial Tr. at 1879:21-1880:1):

    > That there is no evidence of an investigation -- not that it matters,
    > I'm going to talk about this, this nine years business -- but there
    > is no investigation. They knew darn well why there's no
    > documents of an investigation. Because it is with lawyers and it
    > is privileged. That is why there are no documents.

    Cirba's witnesses consistently testified, however, that Cirba did not start to
    investigate VMware's potential infringement with ███████████████. (Hillier
    Depo Tr. at 148:21-153:12 (Mr. Hillier testifying that ██████████████████
    █████████████████████████████████████████████████████████ ;
    Jan. 15, 2020 Trial Tr. at 688:25-689:23 (Mr. Somani testifying that the board
    meeting in "late 2018" discussed alleged infringement by VMware and he had no

sf-4174806

**MORRISON | FOERSTER**

Courtland Reichman
January 26, 2020
Page Two

recollection of any prior meetings discussing the alleged infringement); *see also* Jan. 17, 2020 Trial Tr. at 1075:19-21 (Mr. Smith testifying "there was no conversation that said, hey, let's investigate this patent.  Let's read the specification and go to VMware.  That wasn't a concept that we even thought about in reality.").)

<u>We also find no</u>  .
We know Cirba concluded that VMTurbo/Turbonomic infringes, as you stated at the PI hearing.)

Your rebuttal assertion appears to contradict the record.  If we are wrong, please point us to the relevant privilege log entries.

2.   <u>Disclosure of Dr. Nieh's Testing</u>.  You told the jury during your rebuttal closing argument that VMware had "run[] a test where [Cirba] f[ou]nd out about the test for the first time in trial."  (Jan. 23, 2020 Trial Tr. at 1877:24-25.)

Our records show, however, that all of Dr. Nieh's testing was disclosed before trial.  He disclosed it in his non-infringement expert report.  (*See* Dec. 20, 2019 Rebuttal Expert Report ¶¶ 193-200, Exhibit B.)  He also discussed it in depth at his deposition, where he also disclosed additional testing that responded to Dr. Madisetti's then recently disclosed opinions.  (*See* Nieh Depo. Tr. at  228:7-11, 229:15-233:10, 238:19-239:21, 323:5-332:11, 448:22-450:20, *passim*.)  Dr. Madisetti discussed Dr. Nieh's testing at his own deposition.  (Madisetti Depo Tr. at 137:20-138:3 ("Dr. Nieh can analyze, he's put a test condition on the very code block, but he put the test condition after the statement which means that the test is not accurate.")

Please explain the basis for your statement.

3.   <u>Use of Documents with Mr. Hillier</u>.  During a hearing at trial in which VMware objected to Cirba using documents with Mr. Prathuri about which he had no personal knowledge, you told Judge Stark that I had used an email with Mr. Hillier that he "was not on" (Jan. 16, 2020 Trial Tr. at 769:2-5):

> I wrote it down at least one example I saw of a dozen or so with Mr. Hillier, but PTX-2529 was a document he was not on, and they cross-examined him on it just like a normal procedure.

The face of that email, however, shows Mr. Hillier received it.

**MORRISON | FOERSTER**

Courtland Reichman
January 26, 2020
Page Three

Please explain what you had in mind in making that representation to the Court.

Sincerely,

Michael A. Jacobs

# EXHIBIT H

Redacted In Its Entirety

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., <br><br> *Plaintiffs,* <br><br> *v.* <br><br> VMWARE, INC., <br><br> *Defendant.* | C.A. No. 19-742-LPS |

**DEFENDANT VMWARE, INC.'S FIRST SET OF POST-PRELIMINARY INJUNCTION HEARING REQUESTS FOR PRODUCTION TO PLAINTIFFS NOS. 1-110**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("Federal Rules"), the District of Delaware Local Rules ("Local Rules"), and any applicable local procedures, laws, or Court orders, Defendant VMware, Inc. requests that Plaintiffs Cirba Inc. and Cirba IP, Inc. produce for inspection and copying the following documents and things (the "Requests") and respond to the following Requests within fourteen (14) days of service at the offices of Morrison & Foerster LLP, 425 Market Street, San Francisco, CA, 94105.

**<u>DEFINITIONS</u>**

The following definitions apply to each instruction and Request below:

1.      "Plaintiffs," "You," "Your," and/or "Cirba" means Cirba Inc. and/or Cirba IP, Inc., including their predecessors, successors, predecessors-in-interest, successors-in-interest, subsidiaries, divisions, parents, and/or affiliates, past or present, any companies that have a controlling interest in Plaintiffs, and any current or former employee, officer, director, principal, agent, consultant, representative, or attorney thereof, or anyone acting on their behalf.

2.      "Defendant" and/or "VMware" means VMware, Inc.

**REQUEST FOR PRODUCTION NO. 2:**

Documents sufficient to identify all Cirba Patented Products by name or designation, which claims of the Cirba Asserted Patents You contend are practiced by each Cirba Patented Product, and the date(s) Cirba Patented Products were first available for purchase.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents relating to Your bases for Your contention that the Cirba Patented Products practice the Cirba Asserted Patents.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents relating to any analysis of VMware Accused Products, including but not limited to with respect to VMware's alleged infringement of the Cirba Asserted Patents.

**REQUEST FOR PRODUCTION NO. 5:**

To the extent not already produced, all Documents and Communications relating to Your acquisition of, licensing of, download of, upgrade to, or use of any of VMware's products and services (including DRS and vROps), including documents sufficient to show the dates of any such acquisition, licensing, download, or upgrade.

**REQUEST FOR PRODUCTION NO. 6:**

To the extent not already produced, all Documents concerning or reflecting communications between Cirba and Goldman Sachs regarding any potential sale of, investment in, acquisition of, joint venture in, or other partnership or interest in Cirba.

**REQUEST FOR PRODUCTION NO. 7:**

To the extent not already produced, all Documents regarding Your involvement in VMware's Technology Alliance Partner ("TAP") program or any other VMware partner program, and any Documents or information You received as part of the TAP program or any

**REQUEST FOR PRODUCTION NO. 39:**

To the extent not already produced, all Documents reflecting complaints, critiques, or weaknesses of Cirba Patented Products, including any internal discussions or customer communications reflecting complaints, critiques or weaknesses.

**REQUEST FOR PRODUCTION NO. 35:**

To the extent not already produced, all Documents regarding comparisons between Cirba Patented Products and the Accused Products.

**REQUEST FOR PRODUCTION NO. 36:**

To the extent not already produced, all Documents regarding Your first awareness of VMware's alleged infringement of the Cirba Asserted Patents.

**REQUEST FOR PRODUCTION NO. 42:**

To the extent not already produced, Documents sufficient to show any security interest or lien against the Cirba Asserted Patents.

**REQUEST FOR PRODUCTION NO. 43:**

To the extent not already produced, all Documents supporting or refuting VMware's alleged infringement of each or any element of a Cirba Asserted Patent.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents regarding any analysis or calculation of damages or other harms to You attributable to VMware's alleged infringement of the Cirba Asserted Patents that You have made or caused to be made and/or that is otherwise in Your possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 45:**

To the extent not already produced, Documents sufficient to show the pricing of each Cirba Patented Product for each year from 2013 to the present.

**REQUEST FOR PRODUCTION NO. 46:**

To the extent not already produced, Documents sufficient to show the alleged "commercial impact of VMware's [alleged] infringement," including how any impact became "apparent" to Plaintiffs in spring of this year.

**REQUEST FOR PRODUCTION NO. 47:**

To the extent not already produced, all Documents supporting or refuting the alleged price erosion caused by VMware's alleged infringement of the Cirba Asserted Patents.

**REQUEST FOR PRODUCTION NO. 48:**

To the extent not already produced, all Documents supporting or refuting a causal nexus between VMware's alleged infringement of the Cirba Asserted Patents and alleged harm to Plaintiffs.

**REQUEST FOR PRODUCTION NO. 49:**

To the extent not already produced, all Documents relating to the work underlying the Cirba Asserted Patents, whether or not such work was disclosed in the patent, including:

(a) laboratory notebooks, reports, or other contemporaneous document by the inventors of the Cirba Asserted Patents;

(b) invention disclosure records; and

(c) laboratory notebooks, reports, or other contemporaneous documents generated after the priority dates of the Cirba Asserted Patents and prior to the issuances of the Cirba Asserted Patents that reflect continued work on the alleged inventions.

**REQUEST FOR PRODUCTION NO. 50:**

To the extent not already produced, all Documents concerning any assertions of invalidity or unenforceability, either oral or written, or any legal or administrative proceedings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., | |
| *Plaintiffs/Counter-Defendants,* | C.A. No. 19-742-LPS |
| *v.* | |
| VMWARE, INC., | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |
| *Defendant/Counter-Plaintiff.* | |

**VMWARE, INC.'S THIRD SET OF POST-PRELIMINARY INJUNCTION HEARING REQUESTS FOR PRODUCTION TO PLAINTIFFS/COUNTER-DEFENDANTS NOS. 169–191**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("Federal Rules"), the District of Delaware Local Rules ("Local Rules"), and any applicable local procedures, laws, or Court orders, VMware, Inc. requests that Cirba, Inc. and Cirba IP, Inc. produce for inspection and copying the following documents and things (the "Requests") and respond to the following Requests within fourteen (14) days of service at the offices of Morrison & Foerster LLP, 425 Market Street, San Francisco, CA, 94105.

## **DEFINITIONS**

The following definitions apply to each instruction and Request below:

1.      "You," "Your," and/or "Cirba" means Cirba Inc. and/or Cirba IP, Inc., including their predecessors, successors, predecessors-in-interest, successors-in-interest, subsidiaries, divisions, parents, and/or affiliates, past or present, any companies that have a controlling interest in Plaintiffs, and any current or former employee, officer, director, principal, agent, consultant, representative, or attorney thereof, or anyone acting on their behalf.

2.      "VMware" means VMware, Inc.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

was priced separately, the price of the feature(s), and any internal discussions of pricing the feature(s) separately and price range that was discussed.

**REQUEST FOR PRODUCTION NO. 178:**

All Documents analyzing, describing, discussing, or evaluating DRS 2006.

**REQUEST FOR PRODUCTION NO. 179:**

All Documents analyzing, describing, discussing, or evaluating DRS 2010.

**REQUEST FOR PRODUCTION NO. 180:**

All Documents analyzing, describing, discussing, or evaluating vCenter Operations 1.0.

**REQUEST FOR PRODUCTION NO. 181:**

All Documents analyzing, describing, discussing, or evaluating Cirba's host-based placement technology and/or functionality.

**REQUEST FOR PRODUCTION NO. 182:**

All Documents and Things that mention or relate to a potential acquisition of, or investment in, Cirba, whether by VMware, Snow Software, or any other party.

**REQUEST FOR PRODUCTION NO. 183:**

All Documents and Things You shared with or received from Ben Fathi in connection with VMware's potential acquisition of, or investment in, Cirba.

**REQUEST FOR PRODUCTION NO. 184:**

All Documents and Things You shared with or received from Ben Fathi relating to this Litigation, including any assessment or discussions of alleged infringement by VMware or potential claims Cirba might assert against VMware.

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., | |
| *Plaintiffs,* | C.A. No. 19-742-LPS |
| *v.* | |
| VMWARE, INC., | |
| *Defendant.* | |

## DEFENDANT VMWARE, INC.'S FIRST SET OF POST-PRELIMINARY INJUNCTION HEARING INTERROGATORIES TO PLAINTIFFS NOS. 1-11

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules"), the District of Delaware Local Rules ("Local Rules"), and any applicable local procedures, laws, or Court orders, Defendant VMware, Inc. requests that Plaintiffs Cirba Inc. and Cirba IP, Inc. should fully answer and verify these Interrogatories in writing within fourteen (14) days.

## DEFINITIONS

The following definitions apply to each instruction and Interrogatory below:

1.      "Plaintiffs," "You," "Your," and/or "Cirba" means Cirba Inc. and/or Cirba IP, Inc., including their predecessors, successors, predecessors-in-interest, successors-in-interest, subsidiaries, divisions, parents, and/or affiliates, past or present, any companies that have a controlling interest in Plaintiffs, and any current or former employee, officer, director, principal, agent, consultant, representative, or attorney thereof, or anyone acting on their behalf.

2.      "Defendant" and/or "VMware" means VMware, Inc.

3.      "'687 patent" means U.S. Patent No. 8,209,687 and its United States or foreign counterparts or equivalents.

1.      Plaintiffs have a continuing duty to supplement their responses promptly under Rule 26(e) of the Federal Rules.

2.      If You object to any part of an Interrogatory, answer the unobjectionable parts and set forth the basis for Your objection to the remainder.

3.      If You claim that any responsive information is privileged or otherwise protected from disclosure, state the privilege or protection claimed, the basis for Your claim, and the general subject matter of the information.

4.      If You allege that any Interrogatory is vague or ambiguous, explain what is allegedly vague or ambiguous and state the interpretation that You are using when responding.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

Identify and Describe all bases for Your allegation that VMware's alleged unfair competition, deceptive trade practices, and trademark infringement was willful or deliberate, including, but not limited to, stating the date and manner in which You allege VMware was first notified or became aware that it was allegedly infringing each of the Asserted Marks, the allegedly infringing or unfair activity, and all facts upon which you base your contention that VMware's alleged acts were "deliberate" or "willful."  Your answer should include an identification of all Documents and Communications related to Your answer (by Bates range) and the Persons most knowledgeable about Your answer.

### **INTERROGATORY NO. 2:**

Identify and Describe Your first awareness that the VMware Accused Products allegedly infringe the Cirba Asserted Patents, including, without limitation: when and how you first became aware of the alleged infringement; the persons involved, including who discovered the alleged infringement; the content of any related communications or documents; and all actions

5

and/or steps taken based on said first awareness.  Your answer should include an identification of all Documents and Communications related to Your answer (by Bates range) and the Persons most knowledgeable about Your answer.

**INTERROGATORY NO. 3:**

Separately for each of the Cirba Asserted Patent Claims, Describe the facts relevant to the conception and reduction to practice of that claimed invention, including, without limitation: the date of conception; the name of each Person who contributed to the conception; the specific contribution made by each such Person to the claimed invention; how these Persons arrived at their claimed invention; the identity of the Persons with knowledge of the conception; the date of the first reduction to practice; the name of each Person who contributed to the reduction to practice and the nature of each Person's contribution; complete facts and circumstances relating to any alleged diligence between the asserted conception and reduction to practice dates; the identity of each Person with knowledge of such diligence; the nature of each Person's participation, involvement, and/or contribution to the diligence in reduction to practice; and the identity of Documents (by Bates numbers) sufficient to show such conception, reduction to practice, and/or diligence.

**INTERROGATORY NO. 4:**

To the extent that You contend that Cirba Patented Products practice the Cirba Asserted Patents, Identify the products You contend practice the Cirba Asserted Patents, including any internal or commercial names of each Cirba Patented Product; the dates during which each Cirba Patented Product was first offered for sale; the dates during which each Cirba Patented Product has been sold; the price for each Cirba Patented Product for each month since 2013; and Describe the aspect(s) of each Cirba Patented Product You contend is covered by Cirba Asserted

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., | |
| *Plaintiffs/Counter-Defendants,* | C.A. No. 19-742-LPS |
| *v.* | |
| VMWARE, INC., | |
| *Defendant/Counter-Plaintiff.* | |

## **VMWARE, INC.'S FOURTH SET OF POST-PRELIMINARY INJUNCTION HEARING INTERROGATORIES TO PLAINTIFFS/COUNTER-DEFENDANTS (NOS. 13–24)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules"),

the District of Delaware Local Rules ("Local Rules"), and any applicable local procedures, laws,

or Court orders, Defendant/Counter-Plaintiff VMware, Inc. ("VMware") requests that

Plaintiffs/Counter-Defendants Cirba, Inc. and Cirba IP, Inc. (collectively, "Cirba") fully answer

and verify these Interrogatories in writing within fourteen (14) days.

## **DEFINITIONS**

The following definitions apply to each instruction and Interrogatory below:

1.      "You," "Your," and/or "Cirba" means Cirba Inc. and/or Cirba IP, Inc., including

their predecessors, successors, predecessors-in-interest, successors-in-interest, subsidiaries,

divisions, parents, and/or affiliates, past or present, any companies that have a controlling

interest in Plaintiffs, and any current or former employee, officer, director, principal, agent,

consultant, representative, or attorney thereof, or anyone acting on their behalf.

2.      "VMware" means VMware, Inc.

3.      "Identify," "identity," and "identification" mean:

(Dkt. 68 ¶ 157), through its use of the Asserted Marks.  Your answer should include an identification of all Documents and Communications related to Your answer (by Bates range) and the Persons most knowledgeable about Your answer.

**INTERROGATORY NO. 20:**

Identify and Describe all facts that You contend support that VMware's use of the Asserted Marks is "creating confusion in the minds of consumers as to what products and services they were being sold," (Dkt. 68 ¶ 136), including in Your response an identification of the consumers who have experienced confusion.  Your answer should include an identification of all Documents and Communications related to Your answer (by Bates range) and the Persons most knowledgeable about Your answer.

**INTERROGATORY NO. 21:**

Identify and explain all factual bases supporting Your contention that VMware's alleged infringement has been deliberate or willful and that VMware's alleged activities justify an award of enhanced damages pursuant to 35 U.S.C. § 284.  Your answer should include an identification of all Documents and Communications related to Your answer (by Bates range) and the Persons most knowledgeable about Your answer.

**INTERROGATORY NO. 22:**

Identify and Describe all facts and circumstances relating to any valuation or evaluation, whether by You or any other entity, of any of the Cirba Asserted Patents or the patent applications that issued as the Cirba Asserted Patents, including but not limited to any analyses or due diligence on the value, strengths, weaknesses, or validity of the Cirba Asserted Patents. Your answer should include an identification of all Documents and Communications related to Your answer (by Bates range) and the Persons most knowledgeable about Your answer.

**INTERROGATORY NO. 23:**

Identify and Describe all contracts or licenses between Cirba and any third party relating to the Software License Control Feature, including an identification of the parties involved and the terms, including but not limited to the price of the Software License Control Feature; any savings, discounts, or upgrades offered to change the price of the Software License Control Feature; and the effective price of the Software License Control Feature.  Your answer should include an identification of all Documents and Communications related to Your answer (by Bates range) and the Persons most knowledgeable about Your answer.

**INTERROGATORY NO. 24:**

Describe Your knowledge of and the facts and circumstances surrounding Your acquisition, download, or use of VMware products prior to Your filing of the Complaint in this Litigation, including any version of DRS or vROps.  Your answer should include an identification of all Documents and Communications related to Your answer (by Bates range) and the Persons most knowledgeable about Your answer.

Dated: October 17, 2019

OF COUNSEL:

Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

# EXHIBIT K

| | |
|---|---|
| **From:** | Gonzalez, Arturo J. |
| **To:** | Toman, Gary J. |
| **Cc:** | RJ_Densify; Dorsney, Kenneth L.; Peter Ayers; Jennifer Estremera; MoFo_VMware_Cirba; Gaza, Anne Shea; Wilson, Samantha; Vrana, Robert |
| **Subject:** | Densify v. VMware |
| **Date:** | Monday, February 17, 2020 1:08:01 PM |
| **Attachments:** | LOGO_761c1a1d-87e8-40bc-8843-2753c772d646.png |

Gary,

The quote you ask about regarding privileged communications covering the 9 year span is in the transcript excerpt that we have provided you in our prior letters on this issue. (1879:21-1880:1). With respect to your assertion that I made "misrepresentations" (plural) to the jury, please cite to the precise language (as we have) where you claim I made any such "misrepresentations."  It is a serious allegation that should be supported with a citation.

We disagree that this issue can only be addressed in our pending post-trial motions.

ARTURO J. GONZÁLEZ
Partner | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
P: +1 (415) 268-7020
mofo.com | LinkedIn | Twitter

---

**From:** Toman, Gary J. <GToman@wwhgd.com>
**Date:** Thursday, Feb 13, 2020, 5:23 PM
**To:** Gonzalez, Arturo J. <AGonzalez@mofo.com>
**Cc:** RJ_Densify <RJ_Densify@reichmanjorgensen.com>, Dorsney, Kenneth L. <KDorsney@morrisjames.com>, Peter Ayers <peter@ayersiplaw.com>, Jennifer Estremera <jestremera@reichmanjorgensen.com>, MoFo_VMware_Cirba <MoFo_VMware_Cirba@mofo.com>, Gaza, Anne Shea <agaza@ycst.com>, Wilson, Samantha <SWilson@ycst.com>, Vrana, Robert <RVrana@ycst.com>
**Subject:** [EXT] RE: Densify v. VMware

Counsel, Please see attached correspondence.



Gary J. Toman, Attorney

**Weinberg Wheeler Hudgins Gunn & Dial**

3344 Peachtree Road NE | Suite 2400 | Atlanta, GA 30326

D: 404.832.9592 | F: 404.875.9433

www.wwhgd.com  | vCard

---

**From:** Gonzalez, Arturo J. [mailto:AGonzalez@mofo.com]

**Sent:** Thursday, February 6, 2020 7:05 PM
**To:** Jennifer Estremera; MoFo_VMware_Cirba; Gaza, Anne Shea; Wilson, Samantha; Vrana, Robert
**Cc:** RJ_Densify; Dorsney, Kenneth L.; Peter Ayers; Toman, Gary J.
**Subject:** Densify v. VMware

**This Message originated outside your organization.**

With attachment.

**ARTURO J. GONZÁLEZ**
Partner | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
**P:** +1 (415) 268-7020
mofo.com | LinkedIn | Twitter

**From:** Gonzalez, Arturo J. <AGonzalez@mofo.com>
**Sent:** Thursday, February 6, 2020 4:03 PM
**To:** Jennifer Estremera <jestremera@reichmanjorgensen.com>; MoFo_VMware_Cirba
<MoFo_VMware_Cirba@mofo.com>; Gaza, Anne Shea <agaza@ycst.com>; Wilson, Samantha
<SWilson@ycst.com>; Vrana, Robert <RVrana@ycst.com>
**Cc:** RJ_Densify <RJ_Densify@reichmanjorgensen.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>;
Peter Ayers <peter@ayersiplaw.com>; Gary Toman <GToman@wwhgd.com>
**Subject:** Densify v. VMware

Counsel:

See attached response to Mr. Reichman's letter.

**ARTURO J. GONZÁLEZ**
Partner | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
**P:** +1 (415) 268-7020
mofo.com | LinkedIn | Twitter

**From:** Jennifer Estremera <jestremera@reichmanjorgensen.com>
**Sent:** Wednesday, February 5, 2020 9:52 PM
**To:** Gonzalez, Arturo J. <AGonzalez@mofo.com>; MoFo_VMware_Cirba <MoFo_VMware_Cirba@mofo.com>;
Gaza, Anne Shea <agaza@ycst.com>; Wilson, Samantha <SWilson@ycst.com>; Vrana, Robert
<RVrana@ycst.com>
**Cc:** RJ_Densify <RJ_Densify@reichmanjorgensen.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>;
Peter Ayers <peter@ayersiplaw.com>; Gary Toman <GToman@wwhgd.com>
**Subject:** [EXT] Densify v. VMware

Counsel:

Please see the attached correspondence.

Best regards,
Jennifer

Jennifer P. Estremera
**Reichman Jorgensen LLP**
100 Marine Parkway | Suite 300

Redwood Shores, California 94065
Direct Dial: 650.623.1407

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

====================================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.


The information contained in this message may contain privileged client confidential information. If you have received this message in error, please delete it and any copies immediately.

## <u>CERTIFICATE OF SERVICE</u>

I, Robert M. Vrana, hereby certify that on March 3, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Kenneth L. Dorsney, Esquire
> Morris James LLP
> 500 Delaware Avenue, Suite 1500
> Wilmington, DE 19801
> *kdorsney@morrisjames.com*
>
> *Attorney for Plaintiffs/Counter-Defendants*

I further certify that on March 3, 2020**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following:

> Courtland L. Reichman, Esquire
> Shawna L. Ballard, Esquire
> Jennifer Estremera, Esquire
> Michael G. Flanigan, Esquire
> Joachim B. Steinberg, Esquire
> Kate Falkenstien, Esquire
> Ariel C. Green, Esquire
> Reichman Jorgensen LLP
> 100 Marine Parkway, Suite 300
> Redwood Shores, CA  94065
>
> Sarah O. Jorgensen, Esquire
> Reichman Jorgensen LLP
> 1201 West Peachtree Street, Suite 2300
> Atlanta, GA 30309
>
> Christine E. Lehman, Esquire
> Reichman Jorgensen LLP
> 818 Connecticut Ave., N.W., Suite 850
> Washington, DC 20006

Jaime F. Cardenas-Navia, Esquire
Wesley Lanier White, Esquire
Khue V. Hoang, Esquire
Reichman Jorgensen LLP
750 Third Avenue, Suite 2400
New York, NY 10017

*RJ_densify@reichmanjorgensen.com*

Gary J. Toman, Esquire
Weinberg Wheeler Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
*gtoman@wwhgd.com*

Peter J. Ayers, Esquire
Law Office of Peter J. Ayers, PLLC
2200 Bowman Avenue
Austin, TX 78703
*peter@ayersiplaw.com*

*Attorneys for Plaintiffs/Counter-Defendants*

Dated:  March 3, 2020

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
*agaza@ycst.com*
*rvrana@ycst.com*
*swilson@ycst.com*

*Attorneys for VMware, Inc.*