IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIRBA INC. (d/b/a/ DENSIFY) and CIRBA IP, INC., | : | |
| | : | |
| Plaintiffs/Counter-Defendants, | : | |
| | : | |
| v. | : | C.A. No. 19-742-LPS |
| | : | |
| VMWARE, INC., | : | |
| | : | |
| Defendant/Counter-Plaintiff. | : | |

| | | |
|---|---|---|
| VMWARE, INC., | : | |
| | : | |
| Plaintiff/Counter-Defendant, | : | |
| | : | |
| v. | : | C.A. No. 20-272-LPS |
| | : | |
| CIRBA INC. (d/b/a/ DENSIFY), | : | |
| | : | |
| Defendant/Counter-Plaintiff. | : | |

## <u>MEMORANDUM ORDER</u>

In this Order, the Court addresses all pending motions, including the parties' post-trial

motions, and orders a new, consolidated trial to be held (on a date to be determined) not before

2022.

### *A Brief Description of Relevant Case History*

This is a patent infringement suit between competitors in the field of computer

infrastructure optimization, including virtual machines. (*See* C.A. No. 19-742 D.I. 1)[1]  On April

---

[1]All references to the docket index ("D.I.") are to C.A. No. 19-742, unless otherwise
noted.

25, 2019, Plaintiffs Cirba, Inc. ("Inc.") and Cirba IP, Inc. ("IP" and, together with Inc.,

hereinafter "Plaintiffs" or "Densify") sued VMWARE, Inc. ("VMWARE" or "Defendant") for

infringing U.S. Patent Nos. 8,209,687 ("'687 patent") and 9,654,367 ("'367 patent") and for

unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), deceptive trade practices

under Delaware law, and common law trademark infringement (the latter three claims relating to

VMWARE's alleged misuse of the "Densify Marks," i.e., "DENSIFY," "DENSIFICATION,"

and "DENSIFYING"). (*Id.*) On May 6, 2019, Plaintiffs moved for a preliminary injunction (D.I.

11), which the Court denied on August 6, 2019 following an all-day hearing (D.I. 137; *see also*

D.I. 138). Although the Court found a lack of irreparable harm, the Court agreed to hold an

expedited trial, to reduce whatever risk there may have been that VMWARE's alleged

infringement would cause Plaintiffs further harm before the case could be decided on the merits.

(*See* D.I. 138 at 196-200) Accordingly, the Court presided over a nine-day jury trial in January

2020, which resulted in a verdict largely in favor of Plaintiffs. (*See* D.I. 550; *see also* D.I. 587-

97) Specifically, the jury found: VMWARE willfully infringed the '687 and '367 patents; the

'687 patent's claims were not invalid; and VMWARE owed Plaintiffs $235,724,765 in damages

for infringement of the '687 patent and $1,112,111 in damages for infringement of the '367

patent. (D.I. 550) The jury found that VMWARE was not liable for trademark infringement or

for violating the Delaware Deceptive Trade Practices Act. (*Id.*)

　　In the meantime, VMWARE filed counterclaims in the 19-742 case (i.e., the case that

went to trial on Plaintiffs' patent and trademark allegations in January 2020). (*See* D.I. 150) In

its counterclaims, VMWARE alleges that Inc. infringes four VMWARE patents: U.S. Patent

Nos. 8,875,266; 10,069,752; 8,336,049; and 9,521,151. (*Id.*)

VMWARE also brought a new suit against Inc. in the Eastern District of Virginia, asserting infringement of four other VMWARE patents: U.S. Patent Nos. 9,379,995; 9,766,945; 10,025,638; and 10,261,842. (*See* C.A. No. 20-272 D.I. 1)  In February 2020, the Virginia case was transferred to the District of Delaware. (*See id.* D.I. 64)  In March 2020, Inc. answered and asserted a counterclaim for infringement of its U.S. Patent No. 10,523,492 ("'492 patent"). (*Id.* D.I. 75)

In the case that had gone to trial in January, both Densify and VMWARE filed post-trial motions, which were argued to the Court on May 15, 2020. (*See* D.I. 758) ("May 15 Tr.")  On June 3, the Court granted a portion of one of Defendant's motions, finding that Inc. must be dismissed as a plaintiff in C.A. No. 19-742 based on lack of standing. (D.I. 752)  The Court then ordered supplemental briefing relating to the impact of the dismissal of Inc. on the remaining motions, seeking the parties' views "on how the January trial would have looked different had IP been the sole Plaintiff and whether there is any likelihood that the outcome of that trial would have differed if Inc. had not been in the case." (*Id.* at 10)  The parties subsequently provided that briefing. (*See* D.I. 754-55, 761-62, 766-67)  IP also moved for reargument and reconsideration of the Court's order dismissing Inc. for lack of standing. (D.I. 756)

### *IP's Motion for Reargument and Reconsideration*

The Court will deny IP's motion for reargument and reconsideration, for three independent reasons.[2]

---

[2] The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Such a motion is not an opportunity to "accomplish repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991).  "A proper Rule 59(e)

First, IP has waived the arguments on which its motion is based. The motion is based on *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020), which the Federal Circuit issued on May 13, 2020, two days before the Court heard argument on VMWARE's motion to dismiss. Nearly three more weeks passed before this Court issued its order on the standing motion – but at no point did Plaintiffs bring *Schwendimann* to this Court's attention or, of course, make any argument based on it. When IP failed to raise its arguments prior to this Court's decision, it waived its right to make those arguments now. *See Golden Bridge Tech. v. Apple Inc.*, 758 F.3d 1362, 1369 (Fed. Cir. 2014) (stating that argument first raised on "motion for reconsideration comes too late and is ordinarily deemed waived").

Second, the timing of the issuance of *Schwendimann* means it does not constitute an intervening change in the law sufficient to warrant reconsideration. Even if one were to assume that *Schwendimann* changed the law, it did not change law *after* this Court's decision. Instead, because *Schwendimann* was issued first, *Schwendimann* did whatever it did before this Court dismissed Inc. Plaintiffs had the opportunity to raise *Schwendimann* with the Court prior to, during, or even after the May 15 oral argument, but they did not do so. "The availability of" a decision "before the Court ruled on the earlier motion means" it "cannot be a change in the controlling law" to support reconsideration. *Search & Soc. Media Partners v. Facebook*, 2019 WL 581616, at *7 (D. Del. Feb. 13, 2019).

Third, *Schwendimann* addresses a different issue than the one on which the Court's

---

motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (internal citation omitted).

standing decision rested. *Schwendimann* considered an issue that arose in light of the Federal Circuit's opinion in *Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225 (Fed. Cir. 2019), which had distinguished between constitutional and statutory standing requirements, and held that allegations of exclusionary rights and infringement are all that is required to meet the threshold for Article III standing, regardless of whether the elements of statutory standing have been met.[3] *Lone Star*, 925 F.3d at 1234-36 (explaining that statutory standing defects are not jurisdictional and "although [plaintiff] does not possess all substantial rights in the asserted patents its allegations still satisfy Article III"). *Schwendimann* did not decide an issue of constitutional standing. *See* 959 F.3d at 1071 ("[T]here is no 'standing' issue to be decided in this appeal."). As *Schwendimann* expressly states, "whether a party possesses all substantial rights in a patent does ***not*** implicate standing or subject-matter jurisdiction." *Id.* at 1071 (emphasis added). Because this Court's decision to dismiss Inc. ***was*** based entirely on Inc.'s ***lack of constitutional standing*** (*see* D.I. 752), IP's citation to *Schwendimann* provides no basis for the Court to alter the outcome on the motion to dismiss.

IP's additional arguments for reconsideration likewise fail. IP contends that Inc.'s corporate relationship with IP confers Article III standing on Inc. (*See* D.I. 756 at 8) ("Inc. owns

---

[3]Plaintiffs never cited *Lone Star* before their motion for reconsideration. Nor would it have helped them had they done so. *Lone Star* found that a plaintiff's allegations were sufficient to satisfy the requirements of Article III where the plaintiff alleged "that it possesse[d] the sort of exclusionary rights that confer Article III standing" – and in *Lone Star* the agreement between the plaintiff and the patentee "suggest[ed] as much." 925 F.3d at 1234-36. *Lone Star* confirmed that the "constitutional threshold" is the possession of exclusionary rights. *Id.* at 1234-35. Here, by contrast, Plaintiffs do not allege that Inc. has exclusionary rights, nor could they. (*See, e.g.*, D.I. 752 at 8) ("[W]hile ***Inc. is free to practice*** the patents-in-suit as it wishes, ***IP is free to enforce (or not enforce) its exclusionary rights*** in connection with the patents-in-suit as it, IP, wishes. Hence, Inc. lacks any right to exclude . . . .")

all of IP, shares the same officers as IP, shares the same address as IP, maintains the patents-at-issue with the PTO for IP, directs every act IP takes (including its licensing policy), has not (and would not [have]) allowed IP to license the patents-at-issue to anyone other than Inc., and has always acted as the sole and exclusive licensee responsible for enforcement of the patents.")  But Inc.'s corporate relationship to IP does not automatically confer Article III standing. *See, e.g.*, *Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-18 (Fed. Cir. 2010) (nonexclusive-licensee parent lacked standing).  Rather, Article III standing hinges on exclusionary rights, *see, e.g.*, *Lone Star*, 925 F.3d at 1234-35, which Inc. lacks (*see* D.I. 752 at 8).

IP also argues that Inc. could have been joined in the 19-742 action through permissive intervention – without needing to establish its own Article III standing – because of the Court's subject matter jurisdiction over IP's patent claims.  (D.I. 756 at 7-9)  The Court disagrees.  As VMWARE observes, Plaintiffs together seek relief beyond what IP as a sole plaintiff could obtain: equitable relief based on Inc.'s status as a competitor of VMWARE, and a permanent injunction based on competitive harm to Inc.  Where, as here, intervention by Inc. could broaden the consequences for VMWARE's actions, permissive intervention (without independent Article III standing) would not be appropriate. *See Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017) (intervenor-plaintiff "must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing").

Thus, the Court will deny the motion for reconsideration or reargument.  Inc. remains dismissed as a plaintiff in the 19-742 action.

*New Trial on IP's Patent Infringement Allegations*

The Court must next confront whether to order a new trial on IP's claims that VMWARE infringes IP's '687 and '367 patents.  The Court concludes that the best exercise of its discretion is to do so.  Had Inc. been dismissed in advance of the January trial, that trial would have looked so materially different that it is quite probable the outcome would also have been different.  *See generally GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 88-89 (3d Cir. 2019) (granting new trial on remand where evidentiary error at first trial was not harmless, resulting in appellate court lacking "sure conviction that the error did not prejudice" party that lost at trial).  Under the totality of the circumstances, the Court concludes it would be against the interests of justice to permit the verdict to stand.  *See generally Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991) (recognizing new trial may be granted where "a miscarriage of justice would result if the verdict were to stand").

Federal Rule of Civil Procedure 59(a)(1)(A) provides that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence and a new trial must be granted to prevent a miscarriage of justice, *see Roebuck v. Drexel Univ.*, 852 F.2d 715, 717 (3d Cir. 1988); (2) newly discovered evidence exists that would likely alter the outcome of the trial, *see Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991); (3) improper conduct by an attorney or the court unfairly influenced the verdict, *see Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 363 (3d Cir. 1999); or (4) the jury's verdict was facially inconsistent, *see Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996).  A new trial on the basis that the verdict was against the weight of the evidence should be granted only where "a

miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352-53. The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc., v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing district court's grant or denial of new trial motion under deferential abuse of discretion standard).

VMWARE persuasively articulates various ways in which the January trial would have looked quite different had Inc. been dismissed prior to trial. Most importantly, Densify's overarching theme – that it was successfully competing with the much larger VMWARE, prompting VMWARE to try to buy Densify and (when that failed) ultimately to copy and steal Densify's better technology, a gambit that if not corrected by the jury would drive Densify out of business – would almost certainly not have been permitted, had IP been the sole plaintiff at trial.

IP does not sell or offer for sale products and services. (*See, e.g.*, Trial Transcript ("TT") at 1014) ("Cirba, Inc., which is effectively the operating company of Densify . . . [is] the one that sold the products[;] it's the one that developed and maintained the software.") It is Inc., not IP, that competes in the marketplace with VMWARE. (*See, e.g., id.*; D.I. 754 at 1-2) Accordingly, it would have been difficult (if even possible) for IP to have fairly portrayed itself as a competitor of VMWARE. The overall framework of IP's case necessarily would have been very different, as IP would have had to articulate the harm it suffered as a non-competitor rather than as a competitor. VMWARE's responsive case, too, would have changed.

Consequently, much if not all of the evidence "Densify" was permitted to present at the January trial about competition and harm would likely have been excluded. If Inc. had not been a

party to the January trial, and IP had been the sole plaintiff, IP would likely not have been

permitted to attempt to prove and argue that VMWARE unfairly focuses on taking out its

competitors (*see, e.g.*, TT at 185-86, 1760-61, 1784-85); that "Densify" was "scared to death"

about "get[ting] rolled over by the 800-pound gorilla [VMWARE]" in the marketplace (*id.* at

179, 185); or that "Densify" was motivated to assert its patent rights and litigate in an effort to

compete and survive (*see, e.g., id.* at 162 ("The evidence will show that [Densify] had to protect

its patents or perish."), 180-81, 184-86, 187 ("We came into the spring of 2019, it was either file

a lawsuit or the company wasn't going to make it."), 1756 ("Densify is here fighting for its

life."), 1792-93 ("[T]he jury [will] decide[] the fate of the company . . ."), 1886, 1888-91).  These

were themes that Plaintiffs emphasized right from their opening statement. (*See, e.g., id.* at 179

("VMWARE calls itself the 800-pound gorilla, and no one wants to pick a fight with the

800-pound gorilla.  Nobody wanted to sue.  [Densify] wanted to work with them, figure out a

way to compete.  And, you know, they were scared . . . ."), 181 (stating Densify was "scared

about getting crushed."))  With only a non-practicing IP as the sole plaintiff at trial, it is likely

that the minimal probative value of much of this type of "competitive evidence" would have been

substantially outweighed by its unfairly prejudicial, potentially misleading, and confusing nature;

it would also likely have looked to the Court as if admitting this evidence could easily "waste"

time by making trial substantially longer than was necessary. *See* Federal Rule of Evidence 403.

      IP's arguments to the contrary are unpersuasive.  According to IP, the Court would have

admitted all the same evidence even if Inc. had been dismissed because Inc. owned the '687 and

'367 patents during the 2007 discussions between the parties, during VMWARE's 2015

contemplated acquisition of Densify, and into 2016 – as IP did not even exist until March 2016.

(D.I. 761 at 1)  To Plaintiffs, the hypothetical negotiation in 2012 (the date of alleged first infringement) would have been the same as what was presented at the January trial, since, again, Inc. owned the patents-in-suit at that date.  (*See id.*)  The Court lacks IP's confidence that it would have agreed to allow all the same evidence and argument had Inc. not been part of the trial.  Plaintiffs' damages expert, Mr. Bergman, did not distinguish between Inc. and IP when analyzing the hypothetical negotiations.  (*See* D.I. 762 at 1; TT at 930)  Had Inc.'s lack of standing been determined before trial, the parties' damages presentations would have focused on damages suffered by the sole plaintiff, IP.  It is unclear whether IP could have been permitted also to present evidence and argument based on damages that had previously been suffered by Inc.  (*See generally* D.I. 439 at 31) (VMWARE stating in proposed pretrial order: "as a matter of law, Cirba IP, Inc. may not recover any alleged lost profits sustained by Cirba Inc.")  In short, the Court's present belief is that the evidence admitted and arguments allowed at trial would have been materially different had Inc. been dismissed prior to trial.[4]

---

[4]Plaintiffs argue that VMWARE waited too long to raise its challenge to Inc.'s standing. (*See, e.g.*, D.I. 755 at 1-2)  The Court disagrees.  A challenge to constitutional standing goes to the Court's subject matter jurisdiction and may be raised at any time. *See, e.g.*, *Frett-Smith v. Vanterpool*, 511 F.3d 396, 398 n.3 (3d Cir. 2008) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action. . . .") (internal quotation marks omitted)).  In any event, given how quickly this case was litigated (at Plaintiffs' request), the Court is persuaded that VMWARE's reference to the standing dispute in the proposed pretrial order (*see* D.I. 439 at 4-5, 33-34) – which was filed, according to the schedule set by the Court, on January 2, 2020, 11 days before trial began and only eight months after the case had been filed (*see* D.I. 439, 440; *see also* D.I. 373 (schedule for exchange of pretrial submissions); D.I. 407 (revising pretrial order deadline) – was sufficiently timely.  It is also worth noting that Densify has consistently objected to the Court focusing on the standing issue, prior to and even after trial. (*See, e.g.*, D.I. 439 at 5 ("Cirba Inc.'s position is that it has standing, and that challenge to standing on the eve of trial has no basis."); *id.* at 34 ("Given that VMWARE has waited until this point to raise the issue with the Court, Densify suggests that it be addressed post-trial if helpful to the Court given Densify's limited resources."); D.I. 739 at 1 (Densify complaining "VMWARE insisted that the Court prioritize resolution of its argument that Cirba Inc. lacks standing before

Based on these conclusions, the Court has further decided that it should grant VMWARE's request for a new trial. For the reasons already stated, Densify's case theory and trial presentation would have required a significant shift had Inc. – the party competing in the marketplace with VMWARE – been dismissed pretrial. In that instance, the outcome of the case could very well have been different. There is, in the Court's view, too great a chance that the jury's assessment of the infringement and invalidity evidence was swayed by evidence and argument that – with the clarity of hindsight – should not have been permitted to allow the verdict to stand. Fundamentally, there is a "high probability" that the outcome of the January trial would have been different if the Court had ruled on the standing issue prior to trial, which leaves the Court without a "sure conviction" that the error of allowing Inc. to be a plaintiff at that trial "did not prejudice" VMWARE. *GN Netcom*, 930 F.3d at 88-89.[5]

Contributing to this conclusion is the fact that Plaintiffs' evidence of infringement was, at best, weak. Given the Court's decision to grant a new trial, the Court is not deciding whether

---

any other post-trial briefing could be completed"))

[5]The Court's decision to grant a new trial is based on all of the reasons discussed throughout this section of this Memorandum Order, not just application of the *GN Netcom* standard. VMWARE cited *GN Netcom* as support for its new trial request in its supplemental opening letter brief (*see* D.I. 754 at 1) as well as its supplemental opposition and reply letter briefs (*see* D.I. 762 at 1; D.I. 767 at 1), while Densify did not address *GN Netcom* in any of its supplemental submissions (*see* D.I. 755, 761, 766). Based on arguments VMWARE made from its opening post-trial brief (*see, e.g.,* D.I. 712 at 25) (arguing that Inc.'s lack of standing warranted new trial, as allegations of harm to Inc. were central to Densify's trial presentation and to VMware's rebuttal), the Court has been consistently interested in the parties' views on whether the outcome of the January trial could have been influenced by the improper presence of Inc. (*see, e.g.,* May 15 Tr. at 100-02; D.I. 752 at 10 (directing supplemental briefing on "whether there is any likelihood that the outcome of that [January] trial would have differed if Inc. had not been in the case")). At no point has Densify suggested that it is wrong for the Court to have this concern and to factor it into its analysis of the new trial motion.

Plaintiffs presented sufficient evidence at the January trial to sustain the jury's verdicts of infringement. Instead, the portions of VMWARE's motion seeking judgment of non-infringement as a matter of law will be denied without prejudice. Nevertheless, the Court has carefully considered Plaintiffs' repeated efforts to explain how the trial record contains sufficient evidence (consistent with the Court's claim constructions) to support the infringement verdicts (*see, e.g.*, D.I. 672, 755, 761, 766; *see also* May 15 Tr. at 31-42) and can only say it remains skeptical. But rather than make a final determination on this point, the Court believes the best exercise of its discretion is to require a new trial (for all of the reasons stated).[6]

The Court finds further support for its conclusion in what occurred during closing arguments. The main point of VMWARE's closing argument seemed to be that Densify never really thought VMWARE infringed its patents but was manipulated by greedy investors to sue its successful rival in a desperate attempt to allow those investors to realize a profit. (*See, e.g.*, TT at 1824, 1829, 1853) (VMWARE's counsel arguing this "lawsuit is a fabrication" by disappointed investors, "manufactured by lawyers," and accusing Plaintiffs of "playing the lottery" by "pay[ing] lawyers $2 million maybe . . . and . . . ask[ing a jury] for $230 million," concluding "that is not what our justice system is for") In its rebuttal argument, Densify responded by telling the jury that VMWARE knew that Densify had long ago investigated infringement by VMWARE (*see id.* at 1879-80) – an assertion that lacked an evidentiary basis and potentially undermined the credibility of everything VMWARE had told the jury throughout

---

[6]The Court recognizes that its uncertainty on this point, and decision not to decide the sufficiency of the evidence question, may lead to further disputes as the parties prepare for the new trial. This is a regrettable, but potentially inevitable, consequence of the Court's discretionary decision to order a new trial.

trial. (*See, e.g.*, D.I. 712 at 23) (VMWARE: "A key theme of VMWARE's closing was to ask why no pre-suit communications raised infringement concerns. In rebuttal, [Plaintiffs] represented to the jury that VMWARE 'knew darn well why there's no documents of a[] [pre-suit] investigation. Because it is with lawyers and it is privileged. . . .' [Plaintiffs'] assertion left the jurors with . . . misimpressions [including that] VMWARE repeatedly lied to the jurors about a key defense theme.") (internal citations to trial transcript omitted)) The Court has not been persuaded to grant a new trial solely on the basis of Densify's rebuttal, as VMWARE requested as alternative relief (*see id.* at 23-24), but the Court is sufficiently troubled by ***both sides' closing arguments*** that it, again, finds it most appropriate (in connection with all the other issues identified) to order a new trial.

Other occurrences at the January trial provide still further support for the Court's decision. For instance, Densify, somewhat oddly, told the jury it brought its trademark claims because it was "insult[ed]" by VMWARE. (TT at 1786-87) ("Densify asked us to bring this trademark claim against VMWARE not for a bunch of money, it's really up to you if you want to award any money, it was because it was insulting.") For its part, VMWARE confusingly asked the jury to rule ***against it*** on its invalidity defenses. (*Id.* at 1846 ("We don't want you to find their patent invalid. We don't. . . . We don't want you to invalidate their patent. We just think you ought to say no to everything on the verdict form. We don't infringe. Their patent is valid. We go home and we compete."); *see also id.* at 1870-71) Both sides, then, seemed to be telling the jury (through these comments and others) that the trial was about something other than the merits of the claims they were pressing.

Every trial has its share of surprises and twists that speed by before any party (or the

Court) objects or intervenes.  The Court's decision today is not based on any singular event at the January trial.  Instead, it is the accumulation of events, as described in this Memorandum Order, that persuade the Court a new trial is warranted.

In sum, and considering the totality of the circumstances, the Court concludes that the most appropriate exercise of its discretion is to order a new trial.  *See generally McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d 651, 658-60 (D. Del. 2007) (granting new trial where evidence should have been excluded at trial yet was admitted and relied on by jury in rendering verdict); *Intellectual Ventures I, LLC v. Canon, Inc.*, 104 F. Supp. 3d 629, 659 (D. Del. 2015) (same based on improper statements in closing argument).

*The Court Will Hold a Single, Consolidated Trial on All the Parties' Patent Disputes*

Densify has moved pursuant to Federal Rule of Civil Procedure 42(a) to consolidate Civil Actions 19-742 (i.e., the case in which the January trial was held) and 20-272 (i.e., the transferred Virginia action).  (D.I. 639)  "The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues."  *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) (internal quotation marks omitted).  The Court has broad discretion to determine whether to consolidate cases.  *See In re Mock*, 398 F. App'x 716, 718 (3d Cir. 2010); *see also Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2007 WL 2892707, at *3 (D. Del. Sept. 30, 2007) (stating determination requires balancing considerations of "efficiency, expenses, and fairness").

The Court agrees with Densify that "[t]he two cases involve the same parties, many of the same accused products, and the same underlying technology.  As a natural consequence, the cases will involve many of the same witnesses, documents, and source code."  (D.I. 640 at 1)

Additionally, given the unfortunate effect of the ongoing coronavirus pandemic on the Court's docket, finding time on the Court's calendar for trials (once jury trials restart in this District, which has not yet occurred) presents an extraordinary challenge. *See generally Guardant Health, Inc. v. Found. Med., Inc.*, 2020 WL 6120186, at *1 (D. Del. Oct. 16, 2020) ("There are at least 200 civil jury trials scheduled for 2021 in the District of Delaware (a count which does not include criminal trials, which must take priority, and also does not include civil trials that have been continued and are still awaiting a new trial date), and due to current restrictions only one jury trial can proceed at a time."). The Court now finds it will be most efficient for discovery and motions practice (to the extent these are not already concluded) to be completed with respect to all patents asserted by both sides together, culminating in a single, consolidated trial.

The interests of judicial economy strongly favor consolidation, to permit a single trial on IP's allegations of infringement of its '687 and '367 patents (i.e., the retrial), VMWARE's validity challenges, and damages for any infringement that may be proven of a valid claim; all issues relating to IP's '492 patent, which it asserted as a counterclaim in 20-272; and the eight patents VMWARE has asserted as counterclaims in 19-742 and as claims in 20-272.

Consolidation will not unfairly prejudice VMWARE. The Court expedited trial on IP's '687 and '367 patents for reasons that do not apply to VMWARE, so any suggestion that VMWARE is entitled to trial sooner than Plaintiffs should be permitted to try (or retry) their infringement claims is unavailing. (*See, e.g., generally* D.I. 937) (VMWARE's Dec. 16, 2020 letter opposing move of September 2021 trial date "particularly as VMWARE's counterclaims have been pending since August 2019") The Court recently extended the discovery period in relation to VMWARE's four asserted patents in the 19-742 action. (*See* D.I. 927; *see also* D.I.

937)  It is no longer realistic to believe a trial on those patents can reasonably be accomplished in September 2021, for reasons specific to this case as well as the general challenges confronting the Court's calendar.  Hence, the Court's consolidation decision is not depriving VMWARE of anything that the Court could otherwise realistically give it (e.g., a separate trial on only its patents in 2021).

The Court recognizes that the consolidated 11-patent trial will be challenging for the parties, the Court, and especially the jury.  But, having presided over a trial with these parties (and their large trial teams) once before, the Court is confident that – with sufficient time for pretrial proceedings and preparation – the challenges posed by a case of this scale and complexity can and will be met.

### Motion for Summary Judgment of No Willful Infringement

The Court advised the parties after trial, by letter dated February 10, 2020, that it was not inclined to enhance damages, as "it does not seem to me that VMWARE has been shown to have acted egregiously."  (D.I. 575 at 1)  Having carefully reviewed the parties' briefs and heard argument, it remains the Court's strong inclination that it would not enhance damages, even if the jury's verdict of willful infringement were being upheld (which it isn't, as the Court is instead granting a new trial).  Moreover, given the Court's dismissal of Inc. – which the Court expects will eliminate much of the evidence and themes Densify was permitted to present at the January 2020 trial – it seems inevitable that IP's evidence of willfulness, and egregiousness, with respect to the '687 and '367 patents will be even weaker than what is currently in the record. Accordingly, it might be appropriate for the Court to make a decision prior to the new trial whether it would exercise its discretion to enhance damages – and, if it would not, to then grant

16

summary judgment to VMWARE and not retry willfulness. *See, e.g.*, *Greatbatch Ltd. v. AVX Corp.*, 2018 WL 1568872, at *6-7 (D. Del. Mar. 30, 2018).

The Court will permit VMWARE to press a motion seeking such relief should it wish to do so.

### Other Motions and Schedule for Going Forward

The other motions not already addressed in this Order, as well as certain portions of the motions already addressed, present disputes that are either mooted by the Court's rulings or relate to issues on which the Court will be willing to hear from the parties following the new trial. The disposition of each motion is listed below.

The parties will be directed to meet and confer and to submit a proposed consolidated schedule, to complete whatever discovery remains to be conducted with respect to any patent asserted by either side, to brief whatever motions are appropriate, and to propose a time frame for a consolidated trial (to be held sometime in 2022 or beyond). After considering the parties' proposal(s), the Court will issue a schedule.

\* \* \*

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1.     VMWARE's motion for judgment as a matter of law, for a new trial, and remittitur (D.I. 601) is GRANTED as it relates to the request for a new trial and DENIED WITHOUT PREJUDICE in all other respects.[7]

2.     Plaintiffs' motion for post-trial relief (D.I. 604) is DENIED WITHOUT

---

[7]Today's Order in no way modifies the Court's previous grant of the portion of VMWARE's motion that sought to dismiss Cirba Inc. for lack of standing. (*See* D.I. 752)

17

PREJUDICE.

     3.     Plaintiffs' motion to consolidate cases (D.I. 639) is GRANTED.

     4.     Plaintiffs' motion for leave to file a sur-reply brief (D.I. 703) is DENIED AS MOOT.

     5.     VMWARE's motion for leave to file a sur-reply (D.I. 704) is DENIED AS MOOT.

     5.     VMWARE's motion to strike (D.I. 731) is DENIED WITHOUT PREJUDICE.

     6.     Densify's motion for reargument and reconsideration (D.I. 756) is DENIED.

     7.     VMWARE's motion to redact transcript (D.I. 785) is GRANTED.

     8.     Cirba IP, Inc.'s motion to redact transcript (D.I. 890) is GRANTED.

     9.     The parties shall meet and confer and, no later than January 8, 2021, submit a proposed schedule, consistent with the rulings in this Order, leading to a consolidated trial in 2022 or thereafter, and including all necessary interim obligations and deadlines.

December 21, 2020
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT

18