NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: CIRBA INC., DBA DENSIFY,**
*Petitioner*

---

2021-154

---

On Petition for Writ of Mandamus to the United States District Court for the District of Delaware in No. 1:19-cv-00742-LPS, Judge Leonard P. Stark.

---

**ON PETITION**

---

PAUL D. CLEMENT, Kirkland & Ellis LLP, Washington, DC, argued for petitioner Cirba Inc. Also represented by JULIE M.K. SIEGAL; ARIEL C. GREEN, COURTLAND L. REICHMAN, Reichman Jorgensen Lehman & Feldberg LLP, Redwood Shores, CA; AISHA MAHMOOD HALEY; CHRISTINE E. LEHMAN, Washington, DC.

DEANNE MAYNARD, Morrison & Foerster LLP, Washington, DC, argued for respondent VMware, Inc. Also represented by BRIAN ROBERT MATSUI, MICHAEL QIAN; RICHARD HUNG, MICHAEL ALLEN JACOBS, San Francisco, CA; WILLIAM F. LEE, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA; THOMAS SAUNDERS, SETH P. WAXMAN, Washington, DC.

---

Before TARANTO, HUGHES, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

# O R D E R

Cirba Inc. petitions for a writ of mandamus directing the United States District Court for the District of Delaware to vacate its order granting VMware, Inc.'s motion to dismiss Cirba Inc. for lack of constitutional standing and its order granting VMware's motion for a new trial. VMware opposes. We deny the petition.

## BACKGROUND

In April 2019, Cirba Inc. (Inc.) and Cirba IP, Inc. (IP) (collectively, Plaintiffs) filed suit in the District of Delaware against VMware for patent infringement of U.S. Patent Nos. 8,209,687 and 9,654,367, unfair competition under the Lanham Act, deceptive trade practices under Delaware law, and common law trademark infringement. In May 2019, Plaintiffs moved for a preliminary injunction, which the district court denied in favor of an expedited jury trial that occurred in January 2020. VMware raised the issue of whether Inc. has standing to sue VMware for infringement of the patents-in-suit for the first time in the proposed pretrial order. In response, Inc. urged the court to address the standing issue post-trial and the court agreed. At trial, the jury rejected VMware's patent invalidity defenses and found that VMware willfully infringed the asserted claims of the patents-in-suit. The jury awarded over $236 million in damages.

Inc. and VMware are direct competitors offering competing products covered by the patents-in-suit. Inc.'s employees invented the invention claimed in the patents-in-suit, and Inc. was the original patentee. Then, for tax purposes, Inc. transferred its patents to its wholly owned subsidiary IP in an Assignment Agreement. In turn, IP

granted back to Inc. rights in a License Agreement; this License Agreement is key to the standing issue.

After trial, VMware moved to dismiss Inc. from the case for lack of standing, asserting that Inc. is only a bare licensee to the patents-in-suit. In response, Inc. argued that it has standing because Inc. holds an exclusive license to the patents-in-suit. The district court analyzed the Assignment Agreement—assigning the patents from Inc. to IP—and the License Agreement—granting Inc. a license to the patents-in-suit—and concluded that "the Assignment Agreement left Inc. with no rights whatsoever in the patents-in-suit" other than "those rights granted to Inc. by IP in the License Agreement." *Cirba Inc. v. VMware, Inc.*, No. CV 19-742-LPS, 2020 WL 2992348, at \*4 (D. Del. June 3, 2020) (emphasis omitted). The district court acknowledged that the License Agreement describes Inc.'s license as "an exclusive, transferable, worldwide license to use." *Id.* (quoting J.A. 120). But the court noted that the License Agreement also expressly states that "IP remains 'the exclusive owner of all proprietary rights, including rights based upon . . . patent . . . laws,'" and that it "'gives [Inc.] no rights in such proprietary rights.'" *Id.* at \*4 (quoting J.A. 121–22) (emphasis omitted). Given this language, the district court concluded that Inc. is "a bare licensee, and not an exclusive licensee," and "lacks any right to exclude." *Id.* The court quoted our precedent holding that "the touchstone of constitutional standing in a patent infringement case is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *Id.* at \*2 (quoting *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010)). The district court dismissed Inc. for lack of constitutional standing, holding that "Inc. is a bare licensee, lacks standing to sue, and must be dismissed." *Id.* at \*5; *see id.* at \*1 n.1 ("[T]he Standing Motion here only relates to constitutional standing."). The district court also granted a new trial with IP

as the sole plaintiff. This petition followed. We have jurisdiction under the All Writs Act, 28 U.S.C. § 1651.

## DISCUSSION

A writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes" and the legal standard for mandamus relief is demanding. *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380–81 (2004) (internal quotation marks and citation omitted). "As the writ is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue." *Id.* at 380 (internal quotation marks and citation omitted). The petitioner must demonstrate: (1) that he has "no other adequate means to attain the relief he desires"; (2) a "clear and indisputable" right to the writ; and (3) that the "writ is appropriate under the circumstances." *Id.* at 380–81.

In its petition seeking a writ of mandamus, Inc. asserts that the district court erred in two respects: (1) holding that Inc. is a bare licensee without the right to exclude; and, in any event, (2) holding that exclusionary rights are necessary for Article III standing. We address these two issues in turn, bearing in mind the heavy burden required for a writ of mandamus.

### A

Section 2 of the License Agreement states that "[IP] hereby grants, and [Inc.] accepts, an *exclusive*, *transferable*, worldwide license to use the Products." J.A. 120 (emphasis added). Section 8, titled "Proprietary Rights," states that "[Inc.] acknowledges that, between [Inc.] and [IP], [IP] is the exclusive owner of all proprietary rights, including rights based upon trade secret, patent and copyright laws," and "[t]his Agreement gives [IP] no rights in such proprietary rights." J.A. 121–22. We agree with the district court that the License Agreement does not grant Inc. exclusionary rights.

A patent grant confers on the patentee "the right to exclude others from" making, using, offering for sale, selling, or importing the invention. 35 U.S.C. § 154(a)(1). "If [a licensee] has not received . . . the right to exclude others from making, using, or selling the patented invention, the party has a 'bare license,' and has received only the patentee's promise that the party will not be sued for infringement." *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (citing *Western Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118 (2d Cir. 1930)). A right "to use" the invention—under a license to use—is not a right to exclude others, and the Supreme Court has long made clear that it is not a right granted by the Patent Act. *See Impression Products, Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1534 (2017) ("The right to use, sell, or import an item exists independently of the Patent Act. What a patent adds—and grants exclusively to the patentee—is a limited right to prevent others from engaging in those practices." (citing *Crown Die & Tool Co. v. Nye Tool & Machine Works,* 261 U.S. 24, 35 (1923)); *Cont'l Paper Bag Co. v. E. Paper Bag Co.*, 210 U.S. 405, 425 (1908); *Patterson v. Kentucky*, 97 U.S. 501, 507 (1878) ("The sole operation of the statute is to enable him to prevent others from using the products of his labors except with his consent. But his own right of using is not enlarged or affected.").

Inc. argues that it has exclusionary rights by virtue of the words "exclusive" and "transferable" in § 2. Pet. 23–25. But what is "exclusive" and "transferable" is only a right "to use." Moreover, "[t]he use of the word 'exclusive' is not controlling; what matters is the substance of the arrangement." *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998). Nor does transferability of the right granted alter the scope of that right. Here, the above-quoted language in § 8, stating that the License Agreement gives Inc. no proprietary rights under the patent laws, undermines any suggestion that § 2 conveys a right to exclude. Read in context, the word "exclusive" in § 2 is most

reasonably read to give Inc. no more than a breach of contract claim were IP to license others to use the patent. *See Rite-Hite*, 56 F.3d at 1553 (explaining that the bare licensee's remedy would lie in a breach of contract action instead of a patent infringement action against infringers). Furthermore, read in context with the language in § 8, the grant of a "*transferable*, worldwide license to use the Products" simply allows Inc. to transfer a covenant not to sue for using the Products. J.A. 120 (emphasis added). It does not give Inc. the right to exclude others from using the patented invention. Inc. is therefore a "bare licensee," even if one with a promise of exclusivity, in that it has use rights but no part of the right to exclude granted by the statute.

We note that in *Morrow v. Microsoft Corporation* we explained that "a party with the rights of an exclusive licensee holds exclusionary rights and has standing to sue for infringement if the patentee joins the suit to satisfy any [statutory standing] concerns present in that case." 499 F.3d 1332, 1343 (Fed. Cir. 2007) (citing *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1314 (Fed. Cir. 2005)). What may follow from the use of the phrase "exclusive license" in license agreements as a general matter, however, does not eliminate the need to "pay particular attention" to the specific language of the licensing contract at issue in a given case. *Id.* (citing *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1379 (Fed. Cir. 2000)). Here, as we noted above, § 8 of the license removes any possibility of reading § 2 as conveying exclusionary rights because it states that IP is the "exclusive owner of all proprietary rights, including . . . patent" and that Inc. has "no rights in such proprietary rights." J.A. 121–22. In the present case, the overall substance of the license simply does not grant Inc. any exclusionary rights. Accordingly, we see no error in the district court's holding that Inc. is a bare licensee without the right to exclude.

B

Case 1:19-cv-03442-LPS Document 536 Filed 09/22/21 Page 9 of 12 PageID #: 76954
Case: 21-154    Document: 45    Page: 27    Filed: 09/22/2021

IN RE: CIRBA INC.                                            7

Inc. also asserts that it is sufficient for Article III standing that a party demonstrate a concrete injury, traceable to the challenged conduct (here infringement), and redressable in the suit. Pet. 13, 16, citing, *e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (holding that only a plaintiff with a concrete injury has Article III standing); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and explaining that constitutional standing requires a concrete injury). According to Inc., exclusionary rights are not necessary for a concrete injury, and it has been sufficiently injured for Article III standing by virtue of the competitive injury it suffered based on VMware's use of the patented invention.

VMware counters that the cases relied on by Inc. hold only that a showing of concrete injury, causation, and redressability is *necessary* for Article III standing, not that such a showing is *sufficient*, and that many Supreme Court cases, including Inc.'s principal authorities on Article III standing, also require a "legally and judicially cognizable" injury in fact, *i.e.*, "an invasion of a legally protected interest." Opp. 20–21; *see Raines v. Byrd*, 521 U.S. 811, 819 (1997) (explaining that Article III standing requires a legally and judicially cognizable injury that is concrete and particularized); *TransUnion*, 141 S. Ct. at 2205, 2206; *Lujan*, 504 U.S. at 560. According to VMware, a bare licensee like Inc. suffers no legally cognizable injury from patent infringement.

We are not firmly convinced that Inc. has demonstrated a clear and indisputable right to issuance of the writ based on the district court's holding that Article III requires an injury to the plaintiff's right to exclude. *See Cheney*, 542 U.S. at 381. As VMware notes, Inc. seeks a change in the law because Inc.'s position would confer Article III standing on a bare licensee, contrary to our

precedent.[1]  Opp. 23.  For its part, Inc. contends that this change in the law is required by the Supreme Court's decision in *Lexmark*, as well as our court's decision in *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235–36 (Fed. Cir. 2019).

Our decisions prior to *Lexmark* have routinely held that constitutional standing requires at least one exclusionary right.  *See WiAV*, 631 F.3d at 1264–65, 1267; *Morrow*, 499 F.3d at 1340–41; *Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001).  Post-*Lexmark*, we noted that our precedent treating 35 U.S.C. § 281 as a jurisdictional requirement was irreconcilable with *Lexmark* and we clarified that "whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction." *Lone Star*, 925 F.3d at 1235–36.  It is not clear, however, that *Lexmark* and *Lone Star* also require us to alter our precedent holding (as the district court summarized it) that "the touchstone of constitutional standing in a patent infringement case is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *Cirba*, 2020 WL 2992348, at *2 (citing *WiAV*, 631 F.3d at 1265).  *Lexmark* and *Lonestar* warn against conflating statutory requirements with

---

[1] A hypothetical may aid in understanding the scope of Inc.'s view.  During argument, Inc.'s counsel agreed that, under Inc.'s view, a third party that made an acceptable non-infringing alternative would suffer a concrete injury sufficient for Article III standing to sue VMware for patent infringement because the third party would benefit economically if VMware could no longer practice the invention claimed in IP's patent.  Oral Arg. at 7:52–9:04, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-154_09032021.mp3.

jurisdictional/standing requirements. These cases do not answer the question of whether an injury must be both "legally cognizable" and "concrete" or simply "concrete" for Article III standing. The same is true of *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065 (Fed. Cir. 2020), also relied on by Inc. Accordingly, we deny Inc.'s petition.

C

Like the district court, we have concluded that, under the License Agreement, Inc. lacks any right to exclude or any other exclusionary right against VMware. It follows from that premise that Inc. lacks any statutory right under 35 U.S.C. § 281 to be a patent plaintiff in this case (even with Cirba as a co-plaintiff). Indeed, Inc. does not appear to dispute that conclusion if the premise of no exclusionary right (which Inc. disputes) is correct. And the clarity of the statutory requirement suggests that the statute (not the Constitution) should decide plaintiff status in disputes like the current one in the future.

Inc. argues, however, that in this case VMware forfeited any statutory objection. Pet. 5–6; Reply 8–9. The district court seems to have rejected Inc.'s forfeiture contention. J.A. 515–16 ("VMware's challenge . . . was timely even if it was a statutory challenge and not a constitutional challenge."). At the same time, the district court never stated that it was dismissing Inc. under the statute, and in its initial ruling, the court stated that VMware's "Standing Motion here relates only to constitutional standing." *Cirba*, 2020 WL 2992348, at *1 n.1. Regardless, we cannot say that the record before us compels a finding of forfeiture of a statutory objection.

In support of its forfeiture contention, Inc. points to no assertion by VMware that it was making only a constitutional, and not a statutory, objection. Moreover, VMware's express rationale for objecting to Inc.'s presence as a plaintiff has been the same from the beginning: VMware has

consistently argued that Inc. must be dismissed because Inc. lacked any exclusionary right under the License Agreement—which (as just noted) is a sufficient basis for Inc. lacking a statutory right to sue. But Inc. argues that VMware indirectly implied that it was limiting its argument to a constitutional one because, in VMware's key filings, it (a) did not separately assert that the statute barred Inc.'s presence and (b) quoted from one of this court's cases referring to "constitutional" standing, cited Fed. R. Civ. P. 12(b)(1), and used the term "jurisdiction." *See* J.A. 254; *see also* J.A. 370–71.

The bases on which Inc. relies do not compel a determination that a statutory ground for the objection to Inc.'s presence was forfeited. VMware's omission of a separate "statutory" label, its accurate quotation of "constitutional" from the cited case, and its use of "jurisdiction" (and citation to Fed. R. Civ. P. 12(b)(1)) all merely reflect the fact that "jurisdiction" and "constitutional" were terms used too loosely in our past cases, as we made clear in *Lone Star*, 925 F.3d at 1235. *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) (Supreme Court noting its own overuse of "jurisdiction" in prior cases); *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843 (2019) (same). Moreover, we have approved treating a dismissal for want of jurisdiction as a dismissal for failure to state a claim where "there were no practical differences between the two forms of dismissal under the facts of th[e] case." *Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007) (citing *Brodowy v. United States*, 482 F.3d 1370, 1376 (Fed. Cir. 2007)); *see Lone Star*, 925 F.3d at 1236 n.6 (explaining that the district court's error in treating a statutory objection as jurisdictional was harmless because 12(b)(1) and 12(b)(6) motions are reviewed under an analogous standard).[2] On the record before us, with

---

[2] *See also Morrison v. Nat'l Australian Bank Ltd.*, 561 U.S. 247, 254 (2010); *Sioux Honey Ass'n v. Hartford*

Case 1:19-cv-00742-LPS Document 536 Filed 09/22/21 Page 22/21 Page 09/22/2021 PageID #: 76958

IN RE: CIRBA INC. 11

VMware having consistently relied on a single substantive rationale (Inc.'s lack of exclusionary rights), Inc. has not shown any practical difference—between a statutory, non-jurisdictional objection and a constitutional, jurisdictional objection—that would show prejudice so as to compel a determination of forfeiture of the statutory objection.

Inc. contends there is such a difference. Citing *Schwendimann*, 959 F.3d at 1068–70, Inc. insists that a merely statutory defect that precludes its presence as a plaintiff in this case (unlike a constitutional defect) could be cured by altering the License Agreement, with retroactive effect to the filing of the complaint and, indeed, to the start of the damages period. Pet. 19–20. But this contention concerns what is at present only a hypothetical possibility. Inc. did not attempt to effect a cure through any such alteration in the district court, and it has not done so to date (though it says that it stands ready to do so). Accordingly, we have no factual record addressing a specific contract alteration and no development of, or district court ruling on, legal arguments about the consequences of such an alteration for Inc.'s rights, including whether an alteration in the circumstances of this case would come within the narrow holding of *Schwendimann* (whose facts are hardly matched by anything Inc. suggests occurred here in entering into the License Agreement). We therefore do not address what if any possibility of cure Inc. might have had or might yet have. In so stating, we are neither inviting nor discouraging an attempt at cure. We simply conclude that, on the present record, Inc. could readily have been dismissed for want of a statutory right to sue for the very

---

*Fire Ins. Co.*, 672 F.3d 1041, 1062 n.7 (Fed. Cir. 2012); Wright & Miller, *5C Fed. Prac. & Proc. Civ.* § 1366 n.9 (3d ed.) (citing authorities for treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion where no prejudice results from the recharacterization of the procedural vehicle).

reason the district court dismissed Inc. for want of constitutional standing.

Inc. has not demonstrated a clear and indisputable right to a writ directing the district court to vacate its order granting VMware's motion to dismiss and motion for a new trial based on the court's finding that Inc. does not have constitutional standing.

Accordingly,

IT IS ORDERED THAT:

(1) Inc.'s petition for a writ of mandamus is denied.

(2) Each side shall bear its own costs.

                                     FOR THE COURT

September 22, 2021         /s/ Peter R. Marksteiner
      Date                  Peter R. Marksteiner
                          Clerk of Court