IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC.,

                    *Plaintiffs/Counter-Defendants*,

    v.

VMWARE, INC.,

                    *Defendant/Counter-Plaintiff.*

REDACTED - PUBLIC VERSION
(Filed October 13, 2021)

C.A. NO. 19-742-LPS
(CONSOLIDATED)



## VMWARE, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR STAY

Dated: October 6, 2021

OF COUNSEL:

Arturo J. González
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
agonzalez@mofo.com
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

# TABLE OF CONTENTS

**Page**

I.    Preliminary Statement and Summary of Argument ...............................................1

II.   Nature / Stage of Proceedings and Statement of Facts .......................................2

III.  Argument ...............................................................................................................5

    A.    A Stay Will Simplify or Eliminate Issues for Trial .................................6

        1.    VMware's PTO Proceedings Are Highly Likely to Eliminate or Narrow the Issues Relating to Cirba's Asserted Patents ...................6

        2.    A Stay Will Narrow or Alter the Claim Construction Issues........................9

        3.    The Pending Institution on the '459 PGR and IPRs Is No Reason to Delay ...................................................................................10

    B.    This Case Remains at an Early Stage, with the Most Burdensome Tasks Ahead ...........................................................................................12

    C.    Cirba Will Not Suffer Undue Prejudice from a Stay ...............................13

        1.    VMware Timely Initiated the PTO Proceedings .........................14

        2.    VMware Timely Filed Its Stay Motion.........................................14

        3.    The Status of the PTO Proceedings Favors a Stay .....................15

        4.    Cirba Would Not Be Unduly Prejudiced from Alleged Competition with VMware ...........................................................15

    D.    A Stay Will Reduce Burden on the Parties and the Court .......................19

IV.   Conclusion ..........................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Inc. v. Fintiv, Inc.*,
  IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) ................................................. 14

*Arch Chemicals, Inc. v. Sherwin-Williams Co.*,
  No. 18-2037-LPS (D. Del. Nov. 5, 2019), D.I. 48 ............................................. 11, 12

*Aylus Networks v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017) .......................................................................... 9

*BodyMedia, Inc. v. Basis Sci., Inc.*,
  No. 12-cv-133-GMS, 2013 WL 2462105 (D. Del. June 6, 2013) ........................... 16

*Bonutti Skeletal Innovations v. Zimmer Holdings, Inc.*,
  No. 12-CV-1107-GMS, 2014 WL 1369721 (D. Del. Apr. 7, 2014) ................... 11, 14, 15

*CallWave Communications v. AT & T Mobility*,
  No. 12-cv-1701-RGA, 2015 WL 1284203 (D. Del. Mar. 18, 2015) ........................ 13

*Canatelo LLC v. AXIS Commc'ns AB*,
  No. 13-cv-1227-GMS, 2014 WL 12774920 (D. Del. May 14, 2014) ................... 9, 11

*In re Cirba Inc.*,
  No. 21-154, 2021 WL 4302979 (Fed. Cir. Sept. 22, 2021) ............................... 2, 16

*Contour IP Holding, LLC v. GoPro, Inc.*,
  No. 15-cv-1108-LPS-CJB, 2016 WL 4474340 (D. Del. July 14, 2016) .................... 8

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
  No. 5:10-cv-2051, 2012 WL 1232187 (N.D. Cal. Apr. 12, 2012) ........................... 14

*Destination Maternity Corp. v. Target Corp.*,
  12 F. Supp. 3d 762 (E.D. Pa. 2014) .................................................................. 17

*Enhanced Security Research v. Cisco Systems, Inc.*,
  No. 09-cv-571-LPS, 2010 WL 2573925 (D. Del. June 25, 2010) ........................... 13

*Ethicon LLC v. Intuitive Surgical, Inc.*,
  No. 17-cv-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ................... 5, 6, 13, 15

*Ever Win Int'l Corp. v. Radioshack Corp.*,
  902 F. Supp. 2d 503 (D. Del. 2012) .................................................................... 7

*Evolutionary Intelligence v. Apple, Inc.*,
   No. 13-cv-4201, 2014 WL 93954 (N.D. Cal. Jan. 9, 2014)......................................................20

*Huvepharma Eood & Huvepharma, Inc. v. Associated Brit. Foods, PLC*,
   No. 18-cv-129-RGA, 2019 WL 3802472 (D. Del. Aug. 13, 2019)..........................................15

*Intellectual Ventures II LLC v. U.S. Bancorp*,
   No. 13-2071, 2014 WL 5369386 (D. Minn. Aug. 7, 2014).......................................................9

*IOENGINE, LLC v. PayPal Holdings*,
   No. 18-cv-452, 2019 WL 3943058 (D. Del. Aug. 21, 2019)......................................12, 14, 19

*Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*,
   No. 17-cv-1914, 2019 WL 116784 (C.D. Cal. Jan. 2, 2019)....................................................12

*MiiCs & Partners Am. Inc. v. Toshiba Corp.*,
   No. 14-cv-803-RGA, 2015 WL 9854845 (D. Del. Aug. 11, 2015)..............................11, 12, 17

*Monterey Rsch., LLC v. Advanced Micro Devices, Inc.*,
   No. 1:19-cv-2149-NIQA-LAS (D. Del. Jan. 5, 2021)..............................................................11

*Murata Machinery USA v. Daifuku Co., Ltd.*,
   830 F.3d 1357 (Fed. Cir. 2016)................................................................................................6

*Neste Oil OYJ v. Dynamic Fuels*,
   No. 12-cv-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013)................................8, 11, 16

*Novartis AG v. HEC Pharm Co.*,
   183 F. Supp. 3d 560 (D. Del. 2016)..........................................................................................8

*PACT XPP Schweiz AG v. Intel Corp.*,
   No. 1:19-cv-1006-JDW (D. Del. Nov. 5, 2020), D.I. 227......................................................11

*Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc.*,
   No. 12-cv-1461-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014)...................................7

*Reese v. Verizon Cal., Inc.*,
   498 Fed. App'x 980 (Fed. Cir. 2012)......................................................................................17

*RetailMeNot, Inc. v. Honey Science*,
   No. 18-cv-937-CFC-MPT, 2020 WL 373341 (D. Del. Jan. 23, 2020)...................................13

*Schwendimann v. Neenah, Inc.*,
   No. 1:19-cv-00361-LPS (D. Del. May 13, 2021), D.I. 233.....................................................11

*Semiconductor Energy Lab'y Co., Ltd. v. Chimei Innolux Corp.*,
   No. 12-cv-0021, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012).............................................14

*Speyside Med., LLC v. Medtronic Corevalve, LLC,*
    No. 1:20-cv-00361-LPS-CJB (D. Del. Sept. 30, 2021), D.I. 155 ............................................ 11

*TC Tech. LLC v. Sprint Corp.,*
    No. 16-cv-153-WCB, 2021 WL 4521045 (D. Del. Oct. 4, 2021) ................................... 6, 8, 15

*Yodlee v. Ablaise Ltd.,*
    No. 06-cv-2451, 2009 WL 112857 (N.D. Cal. Jan. 16, 2009)................................................... 8

**Statutes**

35 U.S.C. § 307(b) ...................................................................................................................... 8

35 U.S.C. § 311(c) .................................................................................................................... 14

35 U.S.C. § 315(e) ...................................................................................................................... 9

35 U.S.C. § 321(c) .................................................................................................................... 14

**Other Authorities**

37 C.F.R § 42 .............................................................................................................................. 9

## I.     PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

VMware asks that the Court stay this consolidated action in view of the pending U.S.

Patent Office ("PTO") proceedings on all four Cirba patents.[1]  All factors strongly favor a stay.

First, the pending PTO proceedings are highly likely to streamline this complex case.

VMware's petitions for reexamination, *inter partes* review ("IPR"), and post-grant review

("PGR") challenge all asserted claims of Cirba's four patents.[2]  If VMware's PTO proceedings

are wholly or even partially successful, Cirba will have no or fewer claims to assert against

VMware.  The developing prosecution history also will inform the parties' and the Court's claim

construction efforts and VMware's non-infringement and invalidity defenses.  Staying the case

until the PTO proceedings are finished will reduce the risk of inconsistent outcomes,

supplemental claim construction proceedings, and satellite litigation.

Second, the consolidated action remains in its early stages.  Fact discovery does not close

until April 2022, and the April 2023 trial remains over eighteen months away.

Third, a stay will neither unduly prejudice Cirba nor put it at a clear tactical disadvantage.

VMware did not delay filing this motion.  VMware is raising it promptly after the PTO initiated

reexamination on the '687 and '367 patents (the subject of the first trial), after the Patent Trial and

Appeal Board ("PTAB") initiated IPR review of the '492 patent, and after VMware requested IPR

and PGR review of the '459 patent.  Moreover, Cirba has already had several opportunities to

pursue expedited relief.  These include its preliminary injunction motion (denied), its expedited

trial (new trial granted), its permanent injunction motion (denied), and its request for interlocutory

---

[1] Cirba delayed VMware's filing of this motion by refusing to meet and confer earlier than
October 6, seven days after VMware's initial request.
[2] These are U.S. Patent Nos. 8,209,687 (the "'687 patent"), 9,654,367 (the "'367 patent"),
10,523,492 (the "'492 patent"), and 10,951,459 (the "'459 patent").

appeal certification (denied).  Cirba even sought mandamus from the Federal Circuit (denied).

Fourth, a stay will reduce the litigation burden of this large and complex case on the parties and Court.  If the PTO agrees that Cirba's asserted claims are invalid, the Court will have expended unnecessary resources continuing the litigation now.  The parties, too, will have wasted money and resources on meritless Cirba infringement claims and moot VMware defenses.  Even if the PTO only narrows Cirba's claims, intervening rights may act to limit damages.

## II.    NATURE / STAGE OF PROCEEDINGS AND STATEMENT OF FACTS

This case currently spans twelve patents—four of Cirba's, and eight of VMware's.

**742 Action**.  Cirba initially asserted two patents—the '687 and '367 patents—in its April 25, 2019 complaint in this action (the "742 action").  (D.I. 1.)  VMware counterclaimed for infringement of four patents on August 20, 2019.  (D.I. 150.)  The Court subsequently denied Cirba's preliminary injunction motion for alleged infringement of the '687 patent, set an expedited trial, and severed VMware's counterclaims.  (D.I. 194.)  At the January 2020 trial, the jury found that VMware infringed the '687 and '367 patents and that the asserted claims of the '687 patent were not invalid.  Post-trial, the Court dismissed Cirba Inc. for lack of standing, vacated the jury's verdict, ordered a new trial, and denied Cirba's post-trial motions.  (D.I. 946.)

On July 11, 2021, Cirba petitioned for a writ of mandamus challenging the Court's standing ruling.  The Federal Circuit denied this on September 22, 2021.  *In re Cirba Inc.*, No. 21-154, 2021 WL 4302979 (Fed. Cir. Sept. 22, 2021).

**272 Action**.  While the '742 action was ongoing, VMware separately sued Cirba Inc. for infringement of four additional patents in Virginia on October 21, 2019 (the "272 Action").  The 272 Action was transferred to Delaware on February 25, 2020.  Cirba then counterclaimed for infringement of the '492 and '459 patents on March 23, 2020 and May 3, 2021, respectively.  On December 21, 2020, the Court consolidated the 742 and 272 Actions and ordered a consolidated

trial on all twelve patents.  A summary of the origins of the twelve patents appears below:

| U.S. Patent | Patentee | Origin | Added to Case |
|---|---|---|---|
| 8,209,687 | Cirba | 742 Action | April 25, 2019 (DE original complaint) |
| 9,654,367 | Cirba | 742 Action | April 25 2019 (DE original complaint) |
| 8,875,266 | VMware | 742 Action | August 20, 2019 (DE counterclaim) |
| 10,069,752 | VMware | 742 Action | August 20, 2019 (DE counterclaim) |
| 8,336,049 | VMware | 742 Action | August 20, 2019 (DE counterclaim) |
| 9,521,151 | VMware | 742 Action | August 20, 2019 (DE counterclaim) |
| 9,379,995 | VMware | 272 Action | October 21, 2019 (VA original complaint) |
| 9,766,945 | VMware | 272 Action | October 21, 2019 (VA original complaint) |
| 10,025,638 | VMware | 272 Action | October 21, 2019 (VA original complaint) |
| 10,261,842 | VMware | 272 Action | October 21, 2019 (VA original complaint) |
| 10,523,492 | Cirba | 272 Action | March 23, 2020 (DE counterclaim after VA transfer) |
| 10,951,459 | Cirba | 272 Action | May 3, 2021 (DE counterclaim after VA transfer) |

**VMware's PTO Proceedings**.  VMware has challenged the validity of all of Cirba's

asserted patent claims.  On January 22, 2021, a month after the Court's new trial order, VMware

requested *ex parte* reexamination of asserted claims 3 and 7 of the '687 patent, the focus of the

January 2020 trial.  The PTO ordered reexamination of those claims on February 24, 2021, and

dismissed Cirba's petition to terminate that reexamination on September 20, 2021.[3]  On October 6,

2021, the PTO issued an office action rejecting asserted claims 3 and 7 of the '687 patent.

On April 22, 2021, VMware requested *ex parte* reexamination of claims 1, 8, 9, 13, 14,

16, and 17 of the '367 patent.  The PTO ordered reexamination of claims 1-19 on June 6, 2021.

On October 1, 2020, seven months after Cirba asserted the '492 patent, VMware filed an

IPR petition on all claims of the '492 patent.  The PTAB instituted the IPR on May 7, 2021.

---

[3] Cirba has sought to delay the reexamination of the '687 patent through baseless motion
practice.  Four months after VMware filed its reexamination request, and three months after the
PTO found a substantial new question of patentability and initiated reexamination, Cirba sought
to terminate it.  Cirba claims prejudice from the mail service's failure to deliver a copy of a prior
art reference about DRS—even though Cirba was provided with another copy of the reference in
VMware's reexamination papers and Cirba already had a copy for the first trial.  After the PTO
denied Cirba's motion, Cirba waited 10 days and petitioned for reconsideration.

On June 7, 2021, a month after Cirba asserted the '459 patent, VMware filed a PGR

petition and two IPR petitions, each seeking to invalidate all '459 patent claims.  VMware expects

institution decisions for the '459 PGR by December 14, 2021, and the IPRs by January 19, 2022.

A summary of the status of the PTO proceedings appears below (*see also* D.I. 1048):

| Cirba Patent | PTO Proceeding | Claims before PTO | Asserted Claims | Status of PTO Proceeding |
|---|---|---|---|---|
| '687 | *Ex parte* reexamination (No. 90/014,660) filed January 22, 2021 | 3, 7 | 3, 7 | Reexamination ordered on Feb. 24, 2021 (D.I. 969.)<br><br>Office action rejected asserted claims 3 and 7 on October 6, 2021 (D.I. 1048.) |
| '367 | *Ex parte* reexamination (No. 90/014,736) filed April 22, 2021 | 1-19 | 1, 9, 13, 17 | Reexamination ordered on June 9, 2021 (D.I. 1015.) |
| '492 | *Inter partes review* (IPR2021-00008) filed October 1, 2020 | 1-33 | 1, 3-6, 9, 11, 12, 14-17, 20, 22, 23, 25-28, 31, 33 | IPR instituted on May 7, 2021 (D.I. 998.)<br><br>Final written decision expected by May 7, 2022 |
| '459 | Post-grant review (PGR2021-00098) filed June 7, 2021 (D.I. 1021)<br><br>*Inter partes* review (IPR2021-01210 and IPR2021-01211) filed June 7, 2021 (*Id.*) | 1-63 | 1-3, 9, 10, 16, 17, 22, 23, 26-34, 40, 41, 47, 48, 53, 54, 57-63 | PGR institution decision expected by December 14, 2021<br><br>IPR institution decisions expected by Jan. 19, 2022<br><br>Final written decision(s) expected in Dec. 2022 or Jan. 2023 |

**Current Deadlines**.  Most of the significant case deadlines remain months or over a year

away.  (D.I. 1003.)  The parties have only served opening briefs for the claim construction

hearing scheduled for December 22, 2021.  Fact discovery does not close until April 29, 2022,

and expert discovery does not close until September 29, 2022.  Summary judgment and *Daubert*

motions are not due until November 1, 2022.  Trial is not until April 2023.  The current schedule

in the consolidated action and the expected schedule in the PTO proceedings appear below.

The parties previously agreed to attend private mediation on October 19, 2021.  (*See* D.I. 1036 at 6.)  On September 24, just two days after the Federal Circuit denied mandamus and three weeks before the mediation, Cirba unilaterally canceled the mediation.



### III.    ARGUMENT

A court has broad discretion to stay proceedings incident to its power to control its own docket.  *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-cv-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019) ("Whether or not to stay litigation is a matter left to the Court's discretion.").  Courts weigh three factors in deciding whether to stay an action:  "(1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."

*Id.* (citation omitted).  A court also may evaluate whether a stay will reduce the burden of litigation on the parties and the court.  *See Murata Machinery USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016); *see also TC Tech. LLC v. Sprint Corp.*, No. 16-cv-153-WCB, 2021 WL 4521045, at *2-4 (D. Del. Oct. 4, 2021) (Bryson, J.) (discussing factors).

All factors favor a stay here.  The PTO proceedings may completely resolve the issues involving Cirba's patents.  Regardless of the outcomes, these proceedings will likely simplify or affect claim construction, fact and expert discovery, dispositive motion practice, damages, and the trial.  And they will proceed before the PTO, a forum specifically designed to provide rapid, low-cost determinations of the numerous invalidity grounds at issue there.

### A.    A Stay Will Simplify or Eliminate Issues for Trial

#### 1.    VMware's PTO Proceedings Are Highly Likely to Eliminate or Narrow the Issues Relating to Cirba's Asserted Patents

As this Court has recognized, this is a complicated case involving complicated patents. (D.I. 946 at 16 ("The Court recognized that the consolidated 11-patent trial will be challenging for the parties, the Court, and especially the jury.").)[4]  The first trial underscored the highly complex nature of the underlying technology.

The pending PTO proceedings have the potential to greatly reduce or eliminate this complexity.  VMware's petitions seek cancellation of all of Cirba's asserted patent claims based on 15 invalidity grounds and 15 prior art references:

- **'687 and '367 patents:**  The PTO is currently reexamining all asserted claims of the '687 and '367 patents, including those raised at the January 2020 trial. On October 6, the PTO issued an office action rejecting asserted claims 3 and

---

[4] Cirba added its infringement counterclaim for the twelfth patent in the case, the '459 patent, after the Court's new trial order.

7 of the '687 patent on multiple grounds.  (D.I. 1048.)

- **'492 patent:**  The PTO is currently reviewing all asserted claims of the '492 patent.  Cirba has not argued that the dependent claims are separately patentable from the independent claims, such that all will rise or fall together.  (*See* D.I. 1032-16, Ex. EE.)

- **'459 patent:**  By January 2022, when this Court expects to issue its next claim construction order, the PTO should be reviewing the '459 asserted claims.

By January 2023, three months before the scheduled trial, the PTO is likely to find all (or at least some) of Cirba's asserted claims unpatentable or subject to narrowing modifications.  (*See* Ex. 1[5] at 11 (U.S. Patent & Trademark Office, Patent Trial & Appeal Bd., Trial Statistics, IPR, PGR, CMB, June 2021) (79% of final written decisions find claims unpatentable).)

"Whatever outcome occurs [in the PTO proceedings], there is the potential for the simplification of issues for trial, either by reducing the number of claims at issue, confirming the validity of the surviving claims, or narrowing the scope of a modified claim."  *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 505-06 (D. Del. 2012) (Burke, M.J.).  If "all of the asserted claims are found invalid by the PTO, 'the litigation would be simplified because it would be concluded.'"  *Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc.*, No. 12-cv-1461-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014).  It would not be efficient to litigate claims that may not exist after the PTO proceedings complete.  "Alternatively, should even some of the asserted claims be found invalid, that finding would [still] reduce the number of issues left to be litigated."  *Id*. (citation and quotation marks omitted).

For the '687 and '367 patents under reexamination, the "prior art presented to the court at

---

[5] "Ex." refers to exhibits to the Declaration of Yue Li.

trial will have been first considered by the PTO with its particular expertise," "many discovery problems relating to the prior art can be alleviated," and "the record of the reexamination [will] reduc[e] the complexity and the length of the litigation." *Neste Oil OYJ v. Dynamic Fuels*, No. 12-cv-1744-GMS, 2013 WL 3353984, at *4 (D. Del. July 2, 2013). Here, the PTO has already rejected claims 3 and 7 of the '687 patent (D.I. 1048) that Cirba asserted at the January 2020 trial. *See TC Tech.*, 2021 WL 4521045, at *4-8 (Bryson, J.) (ordering stay pending *ex parte* reexamination less than two months before scheduled trial, based on PTO's non-final office action rejecting all asserted claims). If Cirba successfully amends any claims of the '367 and '687 patents, "the scope of the claims to be litigated may change," favoring a stay. *Novartis AG v. HEC Pharm Co.*, 183 F. Supp. 3d 560, 562 (D. Del. 2016).

Substantive amendment of any '687 or '367 patent claims also will give rise to intervening rights under 35 U.S.C. § 307(b) and eliminate any claim for past damages. *See Yodlee v. Ablaise Ltd.*, No. 06-cv-2451, 2009 WL 112857, at *5 (N.D. Cal. Jan. 16, 2009) ("[A]ny substantive change to the asserted claims would mean that the [asserted] patent could not be enforced for the period before the reexamination certificate issues."). This includes the $236 million that Cirba sought for past damages during the January 2020 trial. In fact, VMware's implementation of design-arounds for the '687 and '367 patents before filing its reexamination requests (D.I. 714 at 5, D.I. 712 at 17) would foreclose any claim for future damages under such a scenario.

As for the '492 and '459 patents, a stay also will simplify the case even if claims survive the IPRs and PGR. For example, the PTO's analyses of prior art for the '492 and '459 patents will be instructive for the '687 patent, which involves some common prior art references. *See Contour IP Holding, LLC v. GoPro, Inc.*, No. 15-cv-1108-LPS-CJB, 2016 WL 4474340, at *3 (D. Del. July 14, 2016) (Burke, M.J.) ("[T]he PTAB's sound judgment with respect to other claim

terms in the two patents . . . or how the art might generally read could be instructive to this Court . . . .").  Statutory estoppel also might come into play.  *See* 35 U.S.C. § 315(e).

### 2.     A Stay Will Narrow or Alter the Claim Construction Issues

Staying the case also might allow the parties and the Court to "expend[] fewer resources on claim construction or avoid[] the claim construction process altogether."  *Canatelo LLC v. AXIS Commc'ns AB*, No. 13-cv-1227-GMS, 2014 WL 12774920, at *1 n.3 (D. Del. May 14, 2014).  Even if any claims survive, a stay still will allow the Court to benefit from a still-developing PTO record.  "[W]hether before or after an institution decision," a patent owner's statements "can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."  *Aylus Networks v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017).

Denying a stay, by contrast, might result in several stages of claim construction for Cirba's patents:  one stage now, per the Court's current scheduling order; another in the PTO proceedings; and then a third in this action after the PTO proceedings end (*e.g.*, if Cirba takes inconsistent positions).  *See Intellectual Ventures II LLC v. U.S. Bancorp*, No. 13-2071 (ADM/JSM), 2014 WL 5369386, at *7 (D. Minn. Aug. 7, 2014) ("narrowing arguments to the PTAB" required "litigation proceedings (and in particular the claim construction proceedings) . . . to be repeated so that such narrowing arguments can be properly considered").  Such repetition would be especially wasteful, as the PTAB and district courts apply the same claim construction standard.  *See Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the PTAB*, 83 Fed. Reg. 51340 (Oct. 11, 2018) (codified as 37 C.F.R § 42).

Cirba's conduct in the PTO proceedings shows that the risk of repetitive claim construction hearings or inconsistent outcomes is real.  In the '492 patent IPR, for example, Cirba proposed constructions for "source system" and "target system" that the PTAB tentatively adopted.  (D.I. 1032-16, Ex. CC at 17-18 (construing "source system" as "a system from which

applications and/or data are to be moved" and "target system" as "a system to which such applications and/or data are to be moved"); *id*., Ex. DD at 8-9.)  Cirba's proposed constructions to this Court, however, are different.  (D.I. 1032-16, Ex. B at 3, 6 (construing "source system" as "a physical, virtual, or hypothetical system from which applications and/or data are moved or are to be moved" and "target system" as "a physical, virtual, or hypothetical system to which applications and/or data are moved or are to be moved") (emphasis added).)

The constructions of "source system" and "target system" will affect Cirba's infringement theories, as they define the structures to which Cirba can point in the accused products and how those structures must be acted upon in the asserted claims.  Their meaning also will affect the scope of the three compatibility analysis terms in the independent claims of the '492 patent (*i.e.*, "N-to-1 compatibility analysis," "N-by-N" compatibility analysis, and "1-to-1 compatibility analysis"), as each involves an analysis of "source systems" and "target systems."  (D.I. 1032 at 3-10, 23-33.)  Waiting until the PTAB has addressed these terms and the invalidity of Cirba's patents first thus will help avoid inconsistency.

### 3.     The Pending Institution on the '459 PGR and IPRs Is No Reason to Delay

There is no reason to await the institution of VMware's PGR or IPR petitions on the '459 patent before entering a stay.  The likelihood is high that the PTAB will institute proceedings for multiple reasons.  The '459 patent is a continuation of the '492 patent, for which the PTAB has already instituted IPR review.  Additionally, Cirba's waiver of its PGR Patent Owner Preliminary Response makes institution very likely.  (Ex. 2 at 32 (per 2018 study, 92% of IPRs instituted when patent owners do not file a patent owner preliminary response).)

Courts routinely stay proceedings pre-institution where IPR review is likely, IPR review is likely to simplify the issues, or the IPR petitions cover all asserted claims—all of which are true

here.  *See, e.g.*, Oral Order, *Arch Chemicals, Inc. v. Sherwin-Williams Co.*, No. 18-2037-LPS (D.

Del. Nov. 5, 2019), D.I. 48 (granting stay pre-institution, as petitions covered all asserted claims)

(Ex. 3); *Canatelo*, 2014 WL 12774920, at *1 (granting stay pre-institution because "the issues

before the court will be simplified should the [PTAB] grant the defendants *inter partes* review");

*Neste Oil OYJ*, 2013 WL 3353984, at *4 (granting stay pre-institution, and noting PTO "will

likely grant review"); *MiiCs & Partners Am. Inc. v. Toshiba Corp.*, No. 14-cv-803-RGA, 2015

WL 9854845, at *1 (D. Del. Aug. 11, 2015) ("[W]ith so many claims from so many patents in

play, the law of probabilities makes it almost certain that the PTAB will grant at least some of the

petitions[,] [and] [s]implification is very likely."); Oral Order, *Speyside Med., LLC v. Medtronic

Corevalve, LLC*, No. 1:20-cv-00361-LPS-CJB (D. Del. Sept. 30, 2021), D.I. 155 (staying entire

case where IPRs had been instituted on 3 of 5 patents, which "share[d] a common specification

and similar claim language") (Ex. 9); Order, *Schwendimann v. Neenah, Inc.*, No. 1:19-cv-00361-

LPS (D. Del. May 13, 2021), D.I. 233 (granting stay where IPRs had been instituted on 6 of 8

patents) (Ex. 10); Order, *Monterey Rsch., LLC v. Advanced Micro Devices, Inc.*, No. 1:19-cv-

2149-NIQA-LAS (D. Del. Jan. 5, 2021), D.I. 96 (granting stay where IPRs had been instituted on

4 of 6 patents and the remaining petitions awaited institution decisions) (Ex. 4); Order, *PACT

XPP Schweiz AG v. Intel Corp.*, No. 1:19-cv-1006-JDW (D. Del. Nov. 5, 2020), D.I. 227 at 2

(granting stay where IPRs had been instituted on 10 of 12 patents, and noting "even if the PTAB

does not eliminate some or any of the claims, its analysis might clarify or narrow issues to be

litigated") (Ex. 5); *Bonutti Skeletal Innovations v. Zimmer Holdings, Inc.*, No. 12-CV-1107-GMS,

2014 WL 1369721, at *1 (D. Del. Apr. 7, 2014) (granting stay where IPRs had been instituted on

2 of 4 petitions and the rest awaited institution decisions).

That the PTAB must address all challenged claims and construe them under the same

standard as the district court further counsels for a stay pre-institution.  *See Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, No. 17-cv-1914, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019) (granting stay pre-institution where, "if the PTO grant[ed] Defendants' petitions, [it would] have to address all of the claims in th[e] [asserted] patents," and "Defendants had propose[d] several claim constructions that ha[d] a direct bearing on [the] litigation") (citing *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018)); *Arch Chemicals*, D.I. 48 ("[A]rguments for a stay pending institution and/or completion of an IPR have been strengthened by recent changes in the law: namely, institution must be on all or none of the claims on which IPR is sought and claim construction undertaken by the [PTAB] is now conducted according to the same legal standards this [c]ourt must apply.") (internal citations omitted).

### B. This Case Remains at an Early Stage, with the Most Burdensome Tasks Ahead

Stays are favored where the parties' most burdensome case tasks—including "completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice"—lie in the future. *IOENGINE, LLC v. PayPal Holdings*, No. 18-cv-452, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019) (granting stay and cancelling Markman hearing even though the parties had completed claim construction briefing and fact discovery was ongoing); *see also MiiCs*, 2015 WL 9854845, at *1 (case was "relatively young" when "there ha[d] been no depositions, claim construction briefing ha[d] not started (although it is about to), and expert discovery [was] a long way off.").

The most burdensome stages of this case remain.  Substantial completion of document production is two months away.  The parties have only exchanged opening claim construction briefs for the last six patents and on the open claim construction issues on the '687 patent.  The claim construction hearing is not until December 2021, and the fact discovery close is not until

April 2022.  Expert discovery does not close for twelve months.  Dispositive motion practice and trial are well over a year out.  (D.I. 1003 (case schedule).)

Courts in this district have granted stays in view of pending PTO proceedings for cases far more advanced than this one.  In *Ethicon*, for example, this Court entered a stay even though it had issued its claim construction order, fact discovery was complete, and expert discovery was nearly done.  2019 WL 1276029, at *2.  In *CallWave Communications v. AT & T Mobility*, Judge Andrews granted a stay because "expert discovery ha[d] not yet begun" and "few depositions" had been taken.  No. 12-cv-1701-RGA, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015).  And in *Enhanced Security Research v. Cisco Systems, Inc*., Judge Farnan deemed a case to be in its "early stages" and entered a stay even though the document production deadline had passed.  No. 09-cv-571-LPS, 2010 WL 2573925, at *3 (D. Del. June 25, 2010) (also noting that "interrogatories and depositions [we]re scheduled to take place for several more months").

Like *RetailMeNot, Inc. v. Honey Science*, "this case is at an efficient stopping point in that a stay will avoid further fact discovery, [] expert discovery and associated expert reports, filing and responding to dispositive and other pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motion practice."  No. 18-cv-937-CFC-MPT, 2020 WL 373341, at *6 (D. Del. Jan. 23, 2020).  Cirba and VMware can suspend the claim construction process, awaiting completion of the PTO proceedings that may alter it.  The parties also can suspend fact discovery, memorializing its current status and pending action items.  *Cf.*, *Ethicon*, 2019 WL 1276029 at *2 (staying case after fact discovery but before close of expert discovery).

### C.    Cirba Will Not Suffer Undue Prejudice from a Stay

In weighing undue prejudice, courts consider: (1) the timing of the request for review; (2) the timing of the stay request; (3) the status of the review proceedings; and (4) the relationship between the parties.  *Ethicon*, 2019 WL 1276029, at *2.  All of these considerations favor a stay.

13

### 1.    VMware Timely Initiated the PTO Proceedings

"The more diligent a defendant is in seeking [PTO petitions], the less likely it is that the non-movant will be prejudiced by a stay or that the court will find the defendant's filing of the [PTO] petition to be a dilatory tactic." *Bonutti Skeletal Innovations*, 2014 WL 1369721, at *2. Here, VMware diligently filed its PTAB petitions against the '459 patent and the '492 patent, respectively, within one month and seven months of Cirba asserting the patent. *See* 35 U.S.C. §§ 311(c), 321(c); *IOENGINE*, 2019 WL 3943058, at *6 ("a delay of six months from the filing of the complaint [] not unreasonable" in light of "the complexity entailed in seeking *inter partes* review); *Semiconductor Energy Lab'y Co., Ltd. v. Chimei Innolux Corp*., No. 12-cv-0021, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) (no prejudice where IPR filed ten months after complaint and three to four months after receiving the claim contentions).

VMware's reexamination requests for the '687 and '367 patents also were timely.  Cirba sought and obtained an expedited January 2020 trial on those patents just nine months after filing its Complaint.  In view of the extraordinarily expedited trial schedule, the PTAB's *Fintiv* decision made it impractical for VMware to pursue IPR challenges before trial.  *Apple Inc. v. Fintiv, Inc*., IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) (PTAB has discretion not to institute IPR for many reasons, including if parallel court proceedings are more advanced than IPR) (Ex. 6).  After the Court ordered a new trial, VMware filed its reexamination requests rapidly—within one month for the '687 patent and four months for the '367 patent.  *See Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 5:10-cv-2051, 2012 WL 1232187, at *3 (N.D. Cal. Apr. 12, 2012) (no dilatory motive when defendant requested reexamination two years after litigation began).

### 2.    VMware Timely Filed Its Stay Motion

Nor did VMware delay seeking a stay.  VMware brings this motion promptly after the PTO instituted the majority of the PTO proceedings (*i.e.*, on the '687, '367, and '492 patents),

after Cirba waived its preliminary response to the '459 PGR petition, and the same day that the

PTO rejected the asserted claims of the '687 patent (D.I. 1048).  *See Ethicon*, 2019 WL 1276029,

at *3 (granting stay where no case event harmful to defendant prompted the stay motion); *Bonutti*

*Skeletal Innovations*, 2014 WL 1369721, at *3, *6 (granting stay when two IPR petitions were

granted but the rest were pending, where "the absence of any events or rulings in the instant

action that could be potentially harmful to the Defendants' positions suggest[ed] that the

Defendants' stay request [was] not an inappropriate litigation tactic").

### 3.      The Status of the PTO Proceedings Favors a Stay

The active nature of the PTO proceedings favors a stay.  IPR or reexamination

proceedings have already been instituted on three of Cirba's four patents, including the two

asserted at the 2020 trial.  Just today, the PTO issued an office action rejecting the asserted claims

of the '687 patent.  (D.I. 1048).  *See TC Tech.*, 2021 WL 4521045, at *1, *8-9 (Bryson, J.)

(granting stay pending reexamination, based on motion filed two days after PTO issued non-final

office action rejecting asserted claims and two months before trial).  PGR or IPR proceedings on

the fourth patent (the '459 patent) likely will be instituted by mid-December 2021.  By January

2023, three months before the currently scheduled trial, all of Cirba's asserted claims are likely to

be found unpatentable or subject to modification.  Under these circumstances, proceeding under

the current schedule would be inefficient, and both parties will benefit from a stay.  *See*

*Huvepharma Eood & Huvepharma, Inc. v. Associated Brit. Foods, PLC*, No. 18-cv-129-RGA,

2019 WL 3802472, at *1 (D. Del. Aug. 13, 2019) ("Both sides will benefit [from a stay] to the

extent the [PTO proceedings] simplify the case (and therefore lower their litigation costs).").

### 4.      Cirba Would Not Be Unduly Prejudiced from Alleged Competition with VMware

VMware expects that Cirba will argue that a stay would prolong infringement by

VMware, an alleged competitor, and is inappropriate.  This is wrong for multiple reasons.

**IP and VMware are not competitors.**  As an initial matter, alleged competition with the movant is insufficient to defeat a stay.  *See Neste Oil OYJ*, 2013 WL 3353984, at *1 (granting stay requested by "competing renewable biodiesel fuel" manufacturers); *BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-cv-133-GMS, 2013 WL 2462105, at *1 (D. Del. June 6, 2013) (granting stay requested by "direct competitor").

Even if otherwise, only Cirba IP, Inc. ("IP") has standing to sue VMware for infringement in this action.  (D.I. 752.)  As the Court has already determined, IP does not compete with VMware.  (*See* D.I. 946 at 8 ("IP does not sell or offer for sale products and services . . . .  [At the trial, it] would have been difficult (if even possible) for IP to have fairly portrayed itself as a competitor of VMWARE.").)  Because Cirba Inc. ("Inc.") lacks standing to sue, any alleged competition between Inc. and VMware is irrelevant.  (D.I. 752; *In re Cirba Inc.*, 2021 WL 4302979 (denying mandamus challenging standing and new trial order).)

**Cirba's litigation conduct belies any harm from ongoing infringement.**  The "mere potential for delay [pending PTO review] . . . is insufficient to establish undue prejudice."  *Neste Oil OYJ*, 2013 WL 3353984, at *2; *accord BodyMedia*, 2013 WL 2462105, at *1 n.1 ("[T]he potential for litigation delay, by itself, is insufficient to demonstrate that [a plaintiff] will be unacceptably prejudiced and is . . . not dispositive in the analysis.").  Here, Cirba's litigation decisions undermine any argument that a litigation stay would harm it, even assuming VMware's alleged ongoing infringement.

Although Cirba moved for a preliminary injunction against VMware's "vROps" product (D.I. 12), it did not appeal the Court's denial of that injunction to the Federal Circuit.  When Cirba then prevailed on the '687 and '367 patents at the first trial, it did not seek a permanent

injunction against the products found to infringe.  It instead sought a permanent injunction against

a hypothetical, unreleased DRS 2.0 product that had not been accused or found to infringe.  (D.I.

714 at 3.)  Nor did Cirba try to appeal the denial of its permanent injunction to the Federal Circuit.

Cirba's failure to pursue these remedies is a tacit admission that monetary damages are sufficient

to compensate any purported harm.  *See MiiCs*, 2015 WL 9854845, at *1 (granting stay despite

injunction requests, as plaintiffs were "realistically looking only for monetary damages").

      Cirba also has never sought to expedite the retrial on its patents.  To the contrary, Cirba

persuaded the Court to consolidate the parties' patents (then numbering eleven) into a single trial

(D.I. 639, 946).  Cirba subsequently asked the Court to postpone that trial by at least two months

(D.I. 937), leading to the current April 2023 trial date (D.I. 968).  Having successfully sought

consolidation of cases now spanning a dozen patents, and having asked the Court to further delay

the trial date, Cirba can hardly complain that a litigation stay would unduly prejudice it now.

      **Cirba has other competitors.**  Even assuming *arguendo* that it were relevant, any

competition with VMware cannot defeat a stay for yet another reason:  Cirba has other

competitors.  *See Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 768 (E.D. Pa.

2014) ("[T]he multiple competitors in the field belie the assertion that [plaintiff] will experience

undue prejudice because of loss of market value").

      Cirba previously sued Turbonomic, Inc. in this Court for infringement of the '687 patent,

which it also has asserted against VMware.  (Complaint, *Cirba Inc. v. Turbonomic, Inc.*, No. 20-

cv-480-LPS (D. Del. Apr. 7, 2020), D.I. 1.)  Cirba then dismissed its claims against Turbonomic

with prejudice (Stipulation of Dismissal, *Cirba Inc. v. Turbonomic, Inc.*, No. 20-cv-480-LPS (D.

Del. Jan. 13, 2021), D.I. 15), barring Cirba from pursuing infringement claims against

Turbonomic on the same allegedly infringing products.  *See Reese v. Verizon Cal., Inc.*, 498 Fed.

App'x 980, 984 (Fed. Cir. 2012) (collateral estoppel barred party from re-asserting patent against same technology in view of dismissal with prejudice).  Having effectively acquiesced to Turbonomic's continuing infringement of its IP rights, Cirba cannot plausibly argue that VMware's alleged continued infringement during the stay period would unduly prejudice it.

**The sky is _not_ falling.**  VMware also expects Cirba to argue that it will "not be able to survive" any litigation stay, due to ongoing threats to its business from VMware and others. Multiple courts including this Court have rejected Cirba's same argument previously.

When seeking a preliminary injunction against vROps 7, ███████████████████

███████████████████████████████████████████████████

███████  ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

Denying Cirba's motion, the Court explained:  "Despite repeated statements by [Cirba's] counsel and witnesses," it was "not persuaded that the company [would] not survive without the relief sought" or "that the company [was] going to suffer some other form of irreparable harm in a way that cannot be compensated[.]"  (D.I. 138 at 196:13-23.)  ███████████████████

███████████████████████████████████████████████

███  Cirba's business continued.

Then, when seeking a permanent injunction, ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



Denying Cirba's motion, the Court observed that "it [was] striking to again hear that . . . employees are going to be fired, the company is not going to exist."  (D.I. 951 at 65:3-13.) Cirba's business continued.

Most recently, when seeking to enjoin Turbonomic from merging with Cirba's biggest reseller, IBM, on May 24, 2021,  But the Chancery Court did not enjoin the acquisition, which closed on June 17, 2021.  (Ex. 7.)  And Cirba's business continues.

Not only that,

 In view of its prior false claims that it would be unable to survive without a preliminary injunction against vROps, without a permanent injunction against an unreleased DRS 2.0 product, and without a preliminary injunction enjoining the IBM's acquisition of Turbonomic, and  , Cirba cannot credibly argue that it would not survive if this case were stayed for the duration of the PTO proceedings.

### D.    A Stay Will Reduce Burden on the Parties and the Court

The final factor—whether a stay will reduce the burden of litigation on the parties and the Court—also overwhelmingly favors a stay.  If the PTO finds that one or more of Cirba's asserted claims are invalid or subject to modification, the Court and the parties will have wasted time and resources.  *See IOENGINE*, 2019 WL 3943058, at *10 ("[A]llowing the PTO to adjudicate the validity of the claims before it in the [PTO] proceeding reduces what otherwise could be duplication of effort and possibly inconsistent results between the administrative agency and this

Court."); *Evolutionary Intelligence v. Apple, Inc.*, No. 13-cv-4201, 2014 WL 93954, at *3 (N.D. Cal. Jan. 9, 2014) (a stay "will minimize the risk of inconsistent results and conserve resources").

For example, the '687 patent featured prominently in the January 2020 trial, accounting for 99% of awarded damages. Cancellation of the asserted claims of the patent would prevent Cirba from re-seeking those damages. As another example, if Cirba succeeded in defeating VMware's validity defenses at the second trial, but the PTO later invalidated claims in reexamination, the inconsistent determinations might require that the Court vacate the verdict.

Recognizing the Court's preference to try the parties' patents in a single consolidated trial, VMware is willing to stay its own infringement case against Cirba until the conclusion of the PTO proceedings, if the Court stays Cirba's infringement case against VMware. This will avoid the risk of piecemeal litigation. Depending on the outcome of the PTO proceedings on Cirba's patents or any potential resolution, VMware might reassess whether it makes business sense to continue pursuing Cirba for infringing VMware's patents.

## IV.    CONCLUSION

PTO proceedings have been instituted on three of Cirba's four asserted patents, and IPR and PGR proceedings on the fourth remain pending. Having obtained an expedited trial and then requested that the retrial be consolidated with VMware's patents (and then delayed), Cirba cannot fairly allege that a stay until the PTO proceedings are complete would unduly harm it. To promote judicial economy and avoid wasting the parties' time and resources, VMware asks that the Court stay this action in its entirety until the PTO proceedings are resolved.

Dated: October 6, 2021

OF COUNSEL:

Arturo J. González
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
agonzalez@mofo.com
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
(303) 592-2204
sllewellyn@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

Attorneys for VMware, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Robert M. Vrana, hereby certify that on October 13, 2021, I caused to be electronically

filed a true and correct copy of the foregoing document with the Clerk of the Court using

CM/ECF, which will send notification that such filing is available for viewing and downloading

to the following counsel of record:

> Kenneth L. Dorsney, Esquire
> Cortlan S. Hitch, Esquire
> Morris James LLP
> 500 Delaware Avenue, Suite 1500
> Wilmington, DE 19801
> *kdorsney@morrisjames.com*
> *chitch@morrisjames.com*
>
> *Attorney for Plaintiffs/Counter-Defendants*

I further certify that on October 13, 2021, I caused the foregoing document to be served

via electronic mail upon the above-listed counsel and on the following:

> Courtland L. Reichman, Esquire
> Shawna L. Ballard, Esquire
> Jennifer Estremera, Esquire
> Michael G. Flanigan, Esquire
> Kate Falkenstien, Esquire
> Ariel C. Green, Esquire
> Reichman Jorgensen Lehman & Feldberg LLP
> 100 Marine Parkway, Suite 300
> Redwood Shores, CA  94065
>
> Sarah O. Jorgensen, Esquire
> Reichman Jorgensen Lehman & Feldberg LLP
> 1201 West Peachtree Street, Suite 2300
> Atlanta, GA 30309
>
> Christine E. Lehman, Esquire
> Adam Adler, Esquire
> Connor S. Houghton, Esquire
> Reichman Jorgensen Lehman & Feldberg LLP
> 1710 Rhode Island Ave., N.W.
> 12th Floor
> Washington, DC 20036

Jaime F. Cardenas-Navia, Esquire
Wesley Lanier White, Esquire
Khue V. Hoang, Esquire
Reichman Jorgensen Lehman & Feldberg LLP
750 Third Avenue, Suite 2400
New York, NY 10017

*RJ_densify@reichmanjorgensen.com*

Gary J. Toman, Esquire
Weinberg Wheeler Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
*gtoman@wwhgd.com*

Paul D. Clement, Esquire
Julie M.K. Siegal, Esquire
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC.  20004
*paul.clement@kirkland.com*
*julie.siegal@kirkland.com*

*Attorneys for Plaintiffs/Counter-Defendants*

Dated:  October 13, 2021

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
1000 N. King Street
Wilmington, Delaware 19801
*agaza@ycst.com*
*rvrana@ycst.com*
*swilson@ycst.com*

*Attorneys for VMware, Inc.*

2