IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a DENSIFY)       )
and CIRBA IP, INC.,              )
                                 )
            Plaintiffs,          )
                                 )
      v.                         )        Civil Action No. 19-742-LPS
                                 )
VMWARE, INC.,                    )
                                 )
            Defendant.           )

## **MEMORANDUM**

Before me is a motion for disqualification filed by plaintiffs Cirba Inc. (d/b/a

Densify) and Cirba IP, Inc. (together, "Densify"). (D.I. 1059). Defendant

VMware, Inc. ("VMware") opposes. Each side filed a letter brief outlining its

positions. I conducted a hearing via Zoom on September 27, 2021. Both sides

presented argument and responded to my questions. The Court has entered an

order assigning me to serve as a special master to hear and decide this motion.

(D.I. 1040). This memorandum sets forth the facts and my decision.

## **Relevant Facts**

Judge Stark assigned me to serve as a discovery special master in this action

on January 8, 2021. (D.I. 958). Before the assignment, I evaluated whether I had

any "relationship to the parties, attorneys, action, or court that would require

disqualification of a judge under 28 U.S.C. §455." Fed. R. Civ. P. 53(a)(2).  In particular, I conducted a conflict search for each of the parties and the entities listed in their Federal Rule of Civil Procedure 7.1 disclosure statements (D.I. 4, 73), and then accepted the assignment.

At the time of the assignment, five law firms had entered appearances for Densify (Morris James LLP ("Morris James"), Reichman Jorgensen Lehman & Feldberg LLP ("Reichman Jorgensen"), Weinberg Wheeler Hudgins Gunn & Dial, Law Office of Peter J. Ayers, PLLC, and Kirkland & Ellis LLP ("Kirkland & Ellis")) and two law firms had entered appearances for VMware (Young Conaway Stargatt & Taylor, LLP ("Young Conaway") and Morrison & Foerster LLP ("Morrison & Foerster")).  I did not evaluate whether any of the law firms or attorneys appearing in this litigation had appeared in matters in which Shaw Keller LLP ("Shaw Keller") had appeared (regardless of whether they represented the same clients as Shaw Keller LLP or represented clients adverse to Shaw Keller LLP clients).

Disclosures between the parties related to disqualification

Shortly after the Court entered the order of appointment, the parties agreed on their own initiative to exchange information "regarding any connections the parties and/or their counsel may have with the Special Master and/or Shaw Keller and vice versa."  (VMware Letter, Exh. A at 12).  The parties confirmed at the

hearing that the purpose of this exchange was to disclose and resolve any potential grounds for disqualification.  (Tr. at 4:19-5:6).

VMware disclosed to Densify that I had entered an appearance and worked on active matters for two clients in which Morrison & Foerster had also appeared as counsel for those clients.  (Densify Letter, Exh. 2 at 1).[1]  As shown on the court docket, the Morrison & Foerster lawyers representing the first client have not appeared in this litigation.  Also as shown on the court docket, several of the Morrison & Foerster lawyers representing the second client have appeared for VMware in this litigation.  Morrison & Foerster's representation of the second client began 22 months after the litigations involving that client commenced.[2]  VMware separately disclosed that I was working with a Young Conaway estate planning partner[3] and that a Young Conaway attorney provides employment representation to my law firm, Shaw Keller.  I knew about and participated in the second set of disclosures, but not the first set involving Morrison & Foerster.

---

[1]  Shaw Keller and Morrison & Foerster represent the first client in two litigations, Civil Action Nos. 18-1802-MN and 19-2120-MN.  Shaw Keller and Morrison & Foerster represent the second client in two litigations, Civil Action Nos. 17-1646-LPS and 17-1647-LPS.

[2]  *See* D.I. 243 (Civil Action No. 17-1646-LPS) and D.I. 223 (Civil Action No. 17-1647-LPS).

[3]  That work ended in April 2021.

Densify "consent[ed] under Rule 53(a)(2)" after these disclosures.  (Densify Letter, Exh. 3 at 2).

Densify did not disclose any connections or relationships between Densify or its counsel and Shaw Keller, either to me or to VMware.  (VMware Letter, Exh. A at 1 ("Counsel for Densify is not aware at this time of any relationships or connections between its attorneys and appointed Special Master John W. Shaw, Esq.  Should we become aware of any such relationships or connections, we will promptly disclose them.")).

At the time of my appointment, however, there were four connections between Densify's attorneys and Shaw Keller similar to those disclosed by VMware.  I had appeared in three matters for clients in which Kirkland & Ellis also appeared as counsel for those clients.[4]  In a fourth matter, other Shaw Keller attorneys appeared for clients in which Kirkland & Ellis also appeared as counsel for those clients.[5]  I advised the parties generally about the Kirkland & Ellis connections on September 2, 2021, the day after Densify first raised disqualification based on the facts discussed below, and I provided the civil action numbers below to the parties after the hearing.  VMware has since written to state

---

[4]   These matters are Misc. Action No. 20-2930/Civil Action No. 19-1979-LPS, Civil Action No. 20-859-CFC, and Civil Action No. 20-842-CFC.

[5]   This matter is Civil Action No. 20-1679-RGA.

that "to the extent necessary VMware consents to the continued service of the

Special Master notwithstanding the disclosures made to date by the Special Master

and/or Cirba."  (October 4, 2021 email from Anne Shea Gaza).

In addition, at the time of my appointment, lawyers and law firms appearing

on behalf of Densify and VMware had appeared for clients adverse to clients

represented by me or by other Shaw Keller attorneys.[6]  Neither party disclosed

these matters to the other at the time of my appointment or apparently viewed these

matters as ones that fell within the scope of a "relationship to the parties, attorneys,

action, or court that would require disqualification of a judge under 28 U.S.C.

§455."

After this assignment commenced, I began to represent a client adverse to a

party represented by Kirkland & Ellis and, separately, a client adverse to a party

represented by Young Conaway.[7]  Most recently, on September 22, 2021, an

---

[6]   At the time of my appointment, I represented clients adverse to parties
represented by Kirkland & Ellis (Civil Action No. 19-1616-LPS), Morris James
(Civil Action No. 20-632-CFC), and Young Conaway (Civil Action No. 19-
1508-MN).  Other Shaw Keller attorneys represented a client adverse to a party
represented by Morrison & Foerster (Civil Action No. 18-1359-MN).  In Civil
Action Nos. 20-632-CFC and 19-1508-MN, the Morris James and Young
Conaway attorneys representing the parties in this litigation are adverse to the
Shaw Keller clients.

[7]   Civil Action Nos. 21-977-KAJ and 21-1317-LPS, respectively.  Other Shaw
Keller attorneys also began to represent a client adverse to a party represented
by Young Conaway in Civil Action No. 20-1449-LPS.

attorney of record for Densify appeared in a matter adverse to one of my and Shaw Keller's clients, after the parties had submitted their letter briefs on this motion.[8]  I provided the civil action numbers of these matters to the parties after the hearing. Neither party has asserted any of these representations as a reason for disqualification.

<u>The litigation between Leviton and Corning</u>

In early August of this year, Leviton Manufacturing Company, Inc. ("Leviton") filed a complaint against Corning Optical Communications LLC ("Corning") in the District of Washington.  All parties agree that neither Leviton nor Corning is related to any of the parties in this litigation.  (Tr. at 4:3-7). Lawyers at Morrison & Foerster appeared as counsel for Leviton, but not any of the Morrison & Foerster attorneys who have appeared for VMware here. Reichman Jorgensen, among other lawyers and law firms, later entered an appearance for Corning.

Corning filed a complaint against Leviton the next day in the District of Delaware.[9]  Reichman Jorgensen, among other lawyers and law firms, is listed as counsel for Corning on the complaint.  Corning and Leviton also litigated against each other at the International Trade Commission.  (Densify Letter at 2).

---

[8]   Civil Action No. 21-1256-CFC, D.I. 11.

[9]   Civil Action No. 21-1185-CFC.

Collectively, I refer to the litigation between Corning and Leviton as the "Corning/Leviton litigation." Reichman Jorgensen and Morrison & Foerster have appeared in at least the District of Washington and District of Delaware matters, but, other than two Reichman Jorgensen attorneys, no attorney appearing for any party in this litigation seems to be involved in the Corning/Leviton litigation.

Sometime after Corning filed its complaint in the District of Delaware, one of my partners contacted a Morrison & Foerster partner who had represented Leviton in the District of Washington litigation concerning possible representation of Leviton in Delaware. There is no information in the record as to what prompted my partner to reach out concerning service as Delaware counsel for Leviton. Densify characterizes this communication as a "solicitation," although the communication is not in the record, and I have not seen it. Correspondence in the record between the parties and sent to counsel for VMware states that Morrison & Foerster "retained" my partner. (Densify Letter, Exh. 4 at 1).

At the hearing, I confirmed that none of the Morrison & Foerster attorneys appearing in this litigation have appeared in the Corning/Leviton litigations and that counsel for Leviton at Morrison & Foerster have not appeared as counsel for VMware in this litigation. In response to my questions, counsel from Morrison & Foerster stated that he did not expect any of the Morrison & Foerster attorneys appearing for VMware to appear for Leviton or to work on the Corning/Leviton

matters, and that he did not expect Leviton's attorneys to appear in or to work on this litigation. (Tr. at 20:22-21:16). Counsel from Morrison & Foerster also indicated that, if I required it, a formal mechanism could be implemented to ensure there is no crossover between the VMware attorneys at Morrison & Foerster and the Leviton attorneys at Morrison & Foerster. (*Id.*).

At the time counsel for VMware disclosed the Leviton/Corning matter, they also disclosed that Shaw Keller had implemented an ethical wall between the Corning/Leviton matter and this matter, and that Leviton's attorneys at Morrison & Foerster are not involved in this litigation. (Densify Letter, Exh. 4 at 1).

Densify's disqualification motion

On September 1, 2021, counsel for Densify sent an email stating that my partner had been retained "for a different litigation, but one in which our firm is identified on the Complaint as representing Corning" and that "[b]ecause of this new matter, Morrison & Foerster will be paying the law firm of Shaw Keller, specifically to be adverse to our firm," and asking for my "views on the potential conflict so this issue can be resolved quickly." (Densify Letter, Exh. 6 at 2). I responded the next day asking Densify to make a formal application if they sought my disqualification and to submit a letter brief (without page limits) explaining their position. (*Id.* at 1). I also asked for each party's views on the following question, which tracks several of the factual scenarios described above:

> whether the objection exists if a special master's law firm were
> to serve as local counsel for Party A in an unrelated matter
> (e.g., between litigants other than those in the matter assigned
> to the special master) in which one or more of the non-
> Delaware firms appearing in the special master matter also
> appears for Party A (or Party A's opponent) in the unrelated
> matter.  This question is pertinent because I am counsel for
> clients in open and past matters with and against Kirkland &
> Ellis, and on open and past matters with and against Morrison
> & Foerster.

The parties worked out a briefing schedule, and we set an argument date based on the parties' and my availability.  The district court entered an order authorizing me to decide the motion.  (D.I. 1040).

Densify's letter brief identifies two grounds for disqualification—28 U.S.C. §§455(a) & (b)(4).  Federal Rule of Civil Procedure 53(a)(2) makes §455 applicable to special masters.  The parties' letter briefs agree that §455 applies to this motion.

Section 455(a) provides, substituting "Special Master" for the statutory phrase "justice, judge, or magistrate judge of the United States", as follows:

> Any [Special Master] shall disqualify himself in any proceeding
> in which his impartiality might reasonably be questioned.

Section 455(b)(4) provides:

> He shall also disqualify himself in the following circumstances:
>
> *       *       *
>
> He knows that he, individually or as a fiduciary, . . . has . . .
> any other interest that could be substantially affected by the
> outcome of the proceeding[.]

Densify's motion states that "the issue here is that the Special Master's law firm has been retained by opposing counsel in this case to litigate against Densify's counsel." (Densify Letter at 4). Densify's letter goes on to state:

> The Special Master's law firm will be making money from Morrison & Foerster, and in reliance on its relationship with Morrison & Foerster. Morrison & Foerster has the ability to give the Special Master more or less work and money as it sees fit, possibly depending on its satisfaction with the Special Master's rulings in this case.

(*Id.*) Densify also argues that Reichman Jorgensen's appearance in the Corning/Leviton creates a further reason to disqualify (*id.* at 6); at argument, Densify characterized this appearance as an "aggravating" factor in the disqualification analysis.

Densify's letter brief does not make separate arguments for §§455(a) & (b)(4). At argument, Densify described the difference in the analysis between two statutory provisions as nuanced and not "all that significant here." (Tr. at 13:2-6).

VMware's response challenges Densify's contention that my partner or Shaw Keller represents Morrison & Foerster or will be paid by Morrison & Foerster. VMware's response states that Leviton, not Morrison & Foerster, engaged my partner and Shaw Keller, and that Leviton "will ultimately determine the work undertaken by Ms. Keller and her compensation for such work." (VMware Letter at 3). In my September 2 email to the parties, I stated my understanding that law firms are retained by litigants, not the law firms, and asked

counsel for VMware to specifically advise Densify and me if that understanding was incorrect for the Corning/Leviton litigation.  *Id.*  Consistent with VMware's letter, counsel for VMware has not so advised.

### Controlling Legal Authorities

The parties agree that Third Circuit law controls the disqualification question presented here.  (Tr. at 3:23-4:4:2).  The parties also agree that disqualification is a matter of discretion under guiding Third Circuit case law.  (Tr. at 5:11-15).

For §455(a), the analysis focuses on whether an objective, reasonable person "would harbor doubts about the [special master's]  impartiality."  *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 343 (3d Cir. 1998) (citations omitted); *see also In re Kensington Int'l, Ltd.*, 368 F.3d 289, 303 (3d Cir. 2004) (stating that "the appearance of impropriety must be viewed from the perspective of the objective, reasonable layperson"); *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("The standard for recusal is whether an objective observer reasonably might question the judge's impartiality.").

The objective, reasonable layperson has "knowledge of all the facts."  *In re Kensington*, 368 F.3d at 301; *see also Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir. 1987) (stating the standard as a reasonable person "knowing all the

circumstances").  In the argument I asked Densify how to draw the line between the facts known to an objective, reasonable layperson and other types of information.  Densify replied that information concerning legal customs, practices, and culture would generally fall into the second category.  After reviewing the analysis in *In re Kensington*, I agree.

In *In re Kensington*, the court of appeals conducted a two-part analysis, first examining whether there was a conflict of interest that could create questions about impartiality, and second, if a conflict existed, evaluating whether the "conflict might be perceived by the reasonable person as having tainted" the judicial officer. 368 F.3d at 303.  The two-part analytical framework set forth in *In re Kensington* appears to use the word 'conflict' more broadly than the manner used in the rules of professional responsibility.  *See*, *e.g.*, *In re Kensington*, 368 F.3d at 303-06 (looking for a conflict of interest recognizable to an objective, reasonable person knowing all the facts).  At argument, Densify agreed that the analytical structure outlined by *In re Kensington* applies to this motion.  (Tr. at 11:4-11).

## Decision

VMware's response to the motion focuses first on the facts that drive the attorney conflicts principles set forth in the rules of professional responsibility. VMware points out that there is no conflict between my serving as Special Master in a matter between Densify and VMware, and others in my law firm participating

in a litigation between different, unrelated parties (here Corning and Leviton).  The entities retaining the lawyers are the litigants.  The entities paying the lawyers are the litigants.  All professional responsibilities flow to the litigants, not to other counsel representing the same litigants.  An objective, reasonable person knowing all the facts would not view these facts as creating a conflict.

The first specific point raised by Densify is that Shaw Keller "will be making money from Morrison & Foerster."  An objective, reasonable layperson knowing all the facts would not understand this to be accurate.  On the basis of an email between counsel, Densify asserts that Morrison & Foerster "retained" Shaw Keller in the Leviton action.  The facts and circumstances known to an objective, reasonable person, however, are that Leviton, not Morrison & Foerster, has engaged and is responsible for paying any fees incurred by Shaw Keller on Leviton's behalf.

Densify also contends that "Morrison & Foerster has the ability to give the Special Master more or less work and money as it sees fit, possibly depending on its satisfaction with the Special Master's rulings in this case."  I am not, however, convinced that an objective, reasonable person knowing all the facts and circumstances would understand this statement to be accurate.  The record here establishes that no Morrison & Foerster attorney in this action is involved in (or expects to be involved in) the Leviton litigation or is able to assign work in the

Leviton litigation to any specific lawyer or law firm.  Likewise, the record establishes no Morrison & Foerster attorney in the Leviton action is involved in (or expects to be involved in) this litigation.  I asked VMware if its counsel would agree to ensure this continues in the future, and counsel agreed to do so if I request it.

A screen of this nature, which I do ask Morrison & Foerster to implement, will maintain the *status quo* between the two litigations and block any attorney in this proceeding from influencing any work assigned in the Leviton matter and prevent the assignment of work based on rulings in this case.  At least one district judge from this Circuit has found an ethical wall sufficient to eliminate any question of partiality under §455(a).  *Sightsound Techs., LLC v. Apple, Inc.*, No. 11-1292 (W.D. Pa. Sept. 7, 2012).  Significantly, *Sightsound* involved a special master's law firm that represented, in an unrelated matter, an affiliate of one of the litigants before the special master.  *Sightsound*, at 2.  *Sightsound* found no grounds for disqualification under §455(a) in light of the ethical wall.  *Sightsound*, at 2-3.

The facts here are much more attenuated, as no one contends the parties in this litigation and the Corning/Leviton litigation are affiliated or related.  No attorney in this litigation has or will have the ability to direct work to Shaw Keller in the Corning/Leviton litigation, and no individual at Morrison & Foerster is conflicted—as that word is used in *In re Kensington*—in the assignment of work.

As a result, I do not believe an objective, reasonable person would view the facts here to create the kind of conflict that causes concern under §455.

In connection with this question, I also asked the parties to comment on the following hypothetical in their submissions:

> whether the objection exists if a special master's law firm were to serve as local counsel for Party A in an unrelated matter (e.g., between litigants other than those in the matter assigned to the special master) in which one or more of the non-Delaware firms appearing in the special master matter also appears for Party A (or Party A's opponent) in the unrelated matter.

Densify responded in part as follows:

> *Who* retains the Special Master's law firm, and who directs work to the Special Master's law firm, are significant facts. If "the non-Delaware *firms* appearing in the special master matter" in the hypothetical also directly retain and pay the special master's firm in another new matter during the pendency of the special master matter, this solicitation of business with concomitant impacts on the revenues of the special master as an equity partner may well raise concerns with impartiality that require recusal under § 455.

(Densify Letter at 5-6).

On each of these points, the facts point an objective, reasonable person away from finding a conflict of interest or a question of partiality. Different Morrison & Foerster lawyers work on the Corning/Leviton litigation than the Morrison & Foerster lawyers working on this litigation. To the extent Morrison & Foerster lawyers direct work to specific attorneys (as opposed to the client directing work to

specific attorneys) in the Corning/Leviton litigation, those are not (and will not be) the Morrison & Foerster lawyers that work on this litigation.  There is no evidence that Morrison & Foerster, as opposed to Leviton, is responsible for or will pay fees to Shaw Keller in the Corning/Leviton litigation.

Last, Densify did not disclose any connections between its counsel and Shaw Keller, as described above, even though one of its law firms served as co-counsel with Shaw Keller in four litigations at the time of the special master assignment.  I asked Densify how I should interpret this non-disclosure and its significance relative to this dispute in light of the parties' agreement to identify "*any* connections the parties and/or their counsel may have with the Special Master and/or Shaw Keller."  (emphasis added).  Densify responded that it was not Densify's responsibility, and instead the special master's, to make the disclosure. But the decision Densify identified as closest to this dispute, *Jenkins v. Sterlacci*, however, assigned this responsibility to the litigants in the first instance.  *Jenkins v. Sterlacci*, 849 F.2d 627, 633 (D.C. Cir. 1988).

Regardless of responsibility, Densify voluntarily agreed to identify any connections that might give rise to grounds for disqualification.  An objective, reasonable person knowing all the facts and circumstances likely would view it as significant that Densify did not identify these connections despite agreeing to identify "any connections and relationships" that might constitute possible grounds

for disqualification.  The precise problems raised by Densify here could arise equally in any of these matters in which Shaw Keller and counsel for Densify represent the same client.  As a result, Densify's actions suggest to an objective, reasonable person that co-counsel relationships in litigation between unrelated parties are not conflicts or possible grounds for disqualification, and do not suggest a concern about impartiality.  *See* D.I. 526 (Final Jury Instruction 4.1 on circumstantial evidence).[10]

Densify next contends that a conflict and appearance of impropriety arises because Shaw Keller's participation in the Corning/Leviton matter will be "adverse" to Densify's counsel, Reichman Jorgensen.  (Densify Letter at 6). Densify's letter suggests this, alone, is not sufficient to create a disqualification issue under §455,[11] and at argument Densify characterized this as an aggravating factor supporting disqualification.

---

[10]  I asked a similar question more specifically about Densify's non-disclosure of matters concerning Kirkland & Ellis.  Densify responded that Kirkland & Ellis's role in this matter is as appellate counsel and is "more minor."  It is not at all clear that an objective, reasonable person reviewing the court docket and knowing all the facts of record would understand that the role of Kirkland & Ellis in this litigation is or is not minor, or that the objective, reasonable person would gauge a potential conflict of interest to be predicated on the perceived significance or insignificance of a law firm's role before a trial court.

[11]  *Id.* ("However, whether this rises to the level of recusal may depend on other issues, including . . . whether the same attorneys from the adverse firm are appearing in both the special master matter and the unrelated matter . . .").

Densify's letter submission did not explain why these facts are significant or what an objective, reasonable person would understand about this issue.  At argument, Densify said that this adversity may cause counsel to not take positions on behalf of Corning because doing so might impact Densify.  Whatever the likelihood of this occurring, these are not concerns that cast doubt on *my* impartiality in this litigation.  As a result, I do not believe that an objective, reasonable person knowing all the facts and circumstances would view counsel's participation in the Corning/Leviton litigation and this matter as a conflict or as raising a question of partiality.

This understanding is consistent with both parties' conduct while making their mutual disclosures about any connections or relationships that might have a bearing on disqualification and with what an objective, reasonable person would conclude from this conduct.  Neither party made any disclosures about this disqualification aggravating factor, even though numerous instances of the same fact pattern existed at the time of my appointment and presented the same issue as Reichman Jorgensen's representation of Corning now.  Densify has not argued or articulated any difference between these matters and the facts here.  Even after Densify filed its motion, counsel for Densify appeared for a client adverse to my client, as noted in the factual background above.  These actions by both parties again suggest that an objective, reasonable person knowing all the facts would not

view this "plus factor" as creating a conflict or impacting a special master's impartiality.

Densify's closest case is *Jenkins v. Sterlacci*.  In *Jenkins*, a special master was adjudicating a matter involving Lawyer A from law firm L.  The special master then filed an unrelated administrative law matter.  Lawyer B from the same law firm (law firm L) defended the administrative law matter.  849 F.2d at 629-30.  After the administrative agency issued a decision in favor of Lawyer B's client, Lawyer A learned of the special master's participation in the administrative matter against his colleague's client.  *Id.* at 632.  Lawyer A's client then objected to the special master, relying on §455(a).  *Id.* at 630.

The court charged Lawyer A with constructive knowledge of Lawyer B's matter and found that Lawyer A should have disclosed the situation to the special master.  *Id.* at 633.  The court also stated that the special master should have identified the situation to the parties.  *Id.* at 634.  Because Lawyer A had constructive knowledge, however, the court found that the objection was waived. *Id*.

*Jenkins v. Sterlacci* differs from Third Circuit law and from this matter in several, significant respects.  Most notably, the court in *Jenkins v. Sterlacci* did not apply the objective, reasonable layperson knowing all the facts standard.  The decision does not apply the two-part analytical structure articulated by the court of

appeals in *In re Kensington*.  The decision assumes but does not analyze whether the *Jenkins* facts created a conflict of interest or grounds for questioning the special master's impartiality.  *Id.* at 633 (stating that the court "may fairly assume" such a problem existed, without further analysis or discussion).  Nor did the court need to do more than make this assumption, as its decision turned on waiver principles.  *Id.* at 634.  Last, the special master appeared personally as sole counsel in the administrative proceeding.  *Id.* at 629-30.  Keeping in mind the *In re Kensington's* analytical structure and the objective, reasonable layperson standard, *Jenkins* does not persuade me that Reichman Jorgensen's participation in the Corning/Leviton litigation should change the analysis under Third Circuit law.

*   *   *

Two additional issues warrant discussion.  First, at the argument Densify contended that Civil Action Nos. 17-1646-LPS and 17-1647-LPS were grounds for disqualification.  These two matters, as noted above, involve Morrison & Foerster lawyers who also represent VMware in this litigation.  I asked Densify to identify where Densify raised this point in its letter submission.  Densify pointed to the first paragraph, but I do not see this contention in that paragraph or elsewhere in its submission.  Densify has, therefore, waived this issue as a basis for disqualification.  *Cf. EIS, Inc. v. WOW Tech Int'l GmbH*, C.A. No. 19-1227-LPS, 2020 U.S. Dist. LEXIS 223791, at *22 (D. Del. Nov. 30, 2020) (new arguments

presented for the first time in reply untimely and deemed waived (citing D. Del. LR 7.1.3(c)(2)).  And even if Densify had raised this point in its letter submission, Densify previously waived any conflict based on those matters.  (Densify Letter, Exh. 3 at 2).

Second, Densify suggested at argument that the best solution is to recuse because there are other special masters on the panel who are not involved in the Corning/Leviton litigation.  An order is entered, however, directing me to resolve the disqualification issue in the first instance.  More important, the parties cite— and my own research has found—few decisions on special master disqualification discussing the issues presented here.  Whether the district court ultimately finds the analysis and decision embodied in this memorandum to be correct or incorrect, the issues are important and will likely recur with most, if not all, of the special master panel either at the time of assignment or over the course of an assignment.

Indeed, most law firms, to my understanding, do not track co-counsel relationships in any formal manner.  If a special master or litigating counsel is associated with a large, national firm with multiple offices, it may not be possible to ascertain whether any particular co-counsel relationship exists at the time of an assignment or arises during the course of an assignment.  Even in a small law firm such as the one in which I practice, determining whether any particular co-counsel relationship exists is no mean task.  To identify the litigations described in the fact

section above, I relied on multiple, overlapping sources:  searches on third-party software Docket Navigator (which is limited to patent litigation); searches on PACER (to capture non-patent litigations); the Shaw Keller document management system (searching for law firm names); and personal recollection.  None of these tools is as robust as a properly implemented conflicts of interest database.

For the reasons set forth in this memorandum, I will enter an order denying the motion to disqualify.



Dated:  October 14, 2021                    _____
                                                              Special Master