IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a DENSIFY)        )
and CIRBA IP, INC.,               )
                                  )
            Plaintiffs,           )
                                  )
        v.                        )        Civil Action No. 19-742-LPS
                                  )
VMWARE, INC.,                     )
                                  )
            Defendant.            )

## MEMORANDUM

Before me are two motions to compel, one filed by defendant VMware, Inc.

("VMware")  (D.I. 1038) and the other filed by plaintiffs Cirba Inc. (d/b/a Densify)

and Cirba IP, Inc. (together, "Densify") (D.I. 1044).  Each side filed letter briefs

outlining their positions.  I conducted a hearing via Zoom on October 15, 2021.

Both sides presented argument and responded to my questions.  The Court entered

an order assigning me to serve as a special master to hear and decide discovery

disputes between the parties.  (D.I. 958).  This memorandum sets forth the reasons

for my decisions on these motions.

### Issue 1—VMware's motion to compel financing agreements

VMware has moved to compel the production of all documents responsive to

VMware's Request for Production No. 199 and Interrogatory No. 33.  This

discovery generally relates to litigation financing arrangements concerning

Densify's asserted patents and this litigation.  Request No. 199 seeks:

> All Documents identifying, reflecting, describing, or memorializing potential or actual business or financial arrangements between You and any third party concerning the Cirba Asserted Patents or the Litigation (including any loans, security interests, liens, financial interests, investments, partnerships, licensing agreements, valuations, and funding opportunities).

Interrogatory No. 33 asks:

> Identify and Describe all potential or actual business or financial arrangements between You and any third party concerning the Cirba Asserted Patents or the Litigation (including all loans, security interests, liens, financial interests, investments, partnerships, insurance policies, licensing agreements, and funding), including the business or financial arrangements with Your "litigation financiers" that Gerry Smith referenced in his March 9, 2020 Declaration, ¶ 13 (D.I. 606), and the security interest(s) held by The Bank of Nova Scotia that are recorded at the United States Patent and Trademark Office under Reel/frame 053036/0098. Your answer also should Identify all Documents related to Your answer (by Bates numbers, if appropriate) and the three Persons most knowledgeable about Your answer.

VMware asserts the litigation funding documents are relevant to damages

(including royalty rates, the valuation of Densify, and whether Densify can

continue as an operating company), injunctive relief, standing, and "trial themes."

I asked VMware to describe how the documents and information sought would be

probative of an issue presented to the jury.  VMware responded that it would use

the litigation financing materials to counter any "David versus Goliath" trial

themes and that these materials might "include valuations of the patents so this could be relevant to damages, the royalty rates, the valuations as well as relating to the other Georgia Pacific factors."  Tr. 6:18-20.

Densify states that, apart from documents discussing or describing litigation financing, it is not withholding documents or information within the scope of this discovery about "other investors, investor documents," "financials," or security interests in the patents.  Tr. 15:22-24; 17:12-13; Densify Response to RFP No.133. Densify also asserted that the requested documents may be covered by one or privileges to the extent the requested documents include litigation strategies and budgets.  Tr. 16:24-17:9.  With regard to any valuations of the patents in the litigation financing documents (if any), Densify argues that those valuations would be based on the $237 million dollar verdict in favor of Densify and against VMware, whereas the hypothetical negotiation occurred in 2012.  Tr. 20:15-24. VMware responds that a 2020 valuation might be relevant under the "Book of Wisdom" component of a reasonable royalty analysis.  Tr. 20-24-25.

VMware bears the burden of showing that the requested information is discoverable.  *Invensas Corp. v. Renesas Elecs. Corp.*, C.A. No. 11-448-GMS-CJB, 2013 U.S. Dist. LEXIS 199894, at *6 (D. Del. May 8, 2013).  There is no consensus within this district, or elsewhere, as to the discoverability of these materials, and there is no binding precedent governing this issue.  *United Access*

3

*Techs. LLC v. AT&T Corp.*, C.A. No. 11-338-LPS, 2020 U.S. Dist. LEXIS 103532, *2 (D. Del. Jun. 12, 2020).  Further, whether the broad category of litigation funding documents is discoverable, or perhaps a subset of those documents is discoverable, is contextual and may vary from case to case.  *Id.*, at *4 ("*Acceleration* Bay does not hold (as no case could) that such materials are always relevant, without consideration of any additional factors").

The cases cited by VMware that hold litigation financing agreements and related communications are discoverable do not, as a general matter, delve into or explain why litigation financing documents are broadly relevant to damages.  *See*, *e.g.*, *Acceleration Bay LLC v. Activision Blizzard, Inc.*, C.A. No. 16-453-RGA, 2018 U.S. Dist. LEXIS 21506, at *8 (D. Del. Feb. 9, 2018).  To the extent those decisions identify a reason to permit discovery of the nature sought here, the decisions focus on the potential relevance of documents assessing the value of the patents in suit.  *See*, *e.g.*, *Odyssey Wireless, Inc. v. Samsung Elecs. Co.*, No. 3:15-cv-01738-H (RBB), 2016 U.S. Dist. LEXIS 188611, at *23 (S.D. Cal. Sep. 19, 2016) (holding litigation funding documents discoverable because relevant to valuation of the patents); *Intel Corp. v. Prot. Capital LLC*, No. 13cv1685 GPC (NLS), 2013 U.S. Dist. LEXIS 201883, at *8 (S.D. Cal. Oct. 2, 2013) (same).

On balance, the decisions that holding that litigation funding documents are not broadly discoverable seem to have the better of the argument.  As stated by the Court in *TQ Delta LLC v. Adtran, Inc.*:

> I have previously held in other cases that litigation funding
> agreements are in themselves irrelevant.  I continue to believe
> that that is generally so, and that, in cases such as this,
> providing Adtran with the details of TQ Delta's financing
> provides an unfair and unwarranted advantage to Adtran.

*TQ Delta LLC v. Adtran, Inc.*, C.A. No. 14-954-RGA, D.I. 419 at 2 (D. Del. Jun. 6, 2018).

At the hearing, I pressed VMware to explain how it would use the information it seeks to compel to prove or disprove a fact that must be evaluated by the jury in order to evaluate whether there is any subset of the requested materials that may be relevant.  The argument with the most traction concerned valuations of the patents in this litigation.  Facts that post-date the hypothetical negotiation may sometimes be used in a reasonable royalty analysis as part of the "Book of Wisdom."  It does seem unlikely, as Densify argued at the hearing, that valuations that discuss a prior verdict will be presented to the jury, but discoverable information need not be admissible at trial.  Fed. R. Civ. P. 26(b)(1).

While I disagree that the broad scope of the information and documents sought here should be produced, to the extent Densify has in its possession, custody, or control documents that discuss or describe the value of one or more of

the patents-in-suit, those documents should be produced.  As stated by Judge

Andrews in *TQ Delta v. Comcast*:

> You know, I'm sensitive, I think, to the fact that there is some
> information, which arguably could be relevant to valuation,
> which at the same time is information that, in my opinion, the
> defendants shouldn't have, because it sort of gives them an
> unfavorable litigation advantage.
>
> And, so, I saw in the Proposed Order, stuff about including
> plaintiff's funding entities that provided funding as part of what
> I'm being asked to provide.
>
> And I don't think the entities that are providing the funding, or
> the amount of the funding are relevant, or likely to lead to
> relevant information.
>
> And what's more, I think they are – I think really they should
> be off limits unless they are really necessary, and I don't think
> they are necessary.
>
> In terms of these other things you are asking for, <u>it does strike
> me that if plaintiffs are busy saying to investors, these patents
> are worth X, Y, or Z, or something else, that plaintiff's
> evaluation of the patents is certainly something that an expert
> would want to consider, right?</u>
>
> *      *      *
>
> So, I find it hard to believe, though you never know, that TQ
> Delta has – I would expect TQ Delta has been making
> representations in some form or fashion.  I don't know what
> they are, as to the value of the patents.
>
> So, I'm going to order you to look for such things and to
> produce them.  I'm not going to – you know, I agree investor
> reports is kind of a nebulous term, and that's the reason why
> I'm trying to tell you what I think it is that you should be
> looking for.
>
> Where you would find these things, I don't know.  I don't think
> it's a profit and loss statement.  I don't think it's how much

> people are actually loading or investing in TQ Delta in order to
> fund the company.  You know, I don't think it's your bank
> account balance, but I do think that you probably have made
> representations about the value of the patents.
>
> And, so, I think you should produce such information – you
> should find it and produce it.  And if you find it on – if you –
> and, so, I'm going to direct that you actually do that.  If it turns
> out that you have nothing, then you can say you have nothing,
> but I would think you probably have something, okay?

*TQ Delta LLC v. Comcast Cable Commns. LLC*, C.A. No. 15-611-RGA, D.I. 154,

Tr. 33:23-34:17, 37:3-23 (Oct. 11, 2016) (emphasis added).

I will order Densify to produce only documents within the scope of Request

No. 133 that describe or explain the value of one or more of the patents-in-suit, if

any such documents exist.  The papers do not clearly address whether this narrow

subset of materials are covered by one or more immunities from discovery.  Should

Densify view any of these documents as immune from discovery, Densify should

make an appropriate assertion as provided in Rule 26.  If VMware wishes to

challenge that designation, it may do so following a full and complete meet and

confer process.

### Issue 2—Densify's infringement contentions

VMware first asserts that the contentions do not apply Densify's proposed

construction of "source system" and "target system"/"target computer system."

Densify argues that its contentions were served before the parties exchanged claim

construction positions; VMware disagrees.  Densify also argues that its contentions

"point to the 'system;'" VMware asserts that Densify should "further identify what the particular applications and/or data are;" Densify responds that, at this stage of the litigation, "why does VMware need that detail in order to be on notice of Densify's infringement theory at this stage?"  At the hearing, in response to my question about when Densify would provide greater detail in its contentions, Densify stated:

> To answer your question when they would get that detail, as the discovery proceeds, as we receive documents, as we had an opportunity to review source code, we would fully – as we take depositions and complete fact discovery, we would fully intend to supplement our contentions to provide that detail as we become aware of it.  But what [they]'re asking for goes far beyond what's required of initial infringement contentions. And they are basically seeking summary judgment level, noninfringement arguments.

(Tr. at 32:8-16).  Densify agreed that "[t]o the extent that it is needed to clarify what the data and/or applications are that are being moved, yes, I think we would agree that that detail would need to be in the final infringement contentions."  (Tr. 33:24-34:2).  Further, Densify conceded that it has received additional information "through discovery that hasn't yet made its way into the infringement contentions." (Tr. 34:22-35:02).

The Default Discovery Standard, now incorporated into the Scheduling Order in this litigation, adopted the contention exchange procedure following years of disputes about whether an accused infringer needs to respond to interrogatories

concerning invalidity before the patentee responds to an interrogatory seeking its infringement contentions, how a patentee could provide infringement contentions before document production, and the like.  The Default Standard balanced these competing interests with an orderly procedure of exchanges.  What the Default Standard does not address is the level of detail required by a litigant's "preliminary" contentions and whether supplementation of preliminary contentions is required before final contentions.

The dispute presented here requires me to only address the latter question. Whether or not Densify first disclosed its construction of "system source" before it served its contentions need not be addressed if litigants have a duty to supplement their contentions as information develops during the course of litigation.  Likewise, Densify's assertion that "notice of Densify's infringement theory at this stage" is all that is required is irrelevant if litigants have a duty to supplement their contentions as information develops during the course of litigation.

Litigants are under an obligation to supplement their preliminary contentions in accordance with Federal Rule of Civil Procedure 26(e).  "[I]nfringement contentions are considered to be 'initial disclosures' under Federal Rule of Civil Procedure 26(a)."  *Cosmo Techs., Ltd. v. Lupin Ltd.*, C.A. No. 15-669-LPS, 2017 U.S. Dist. LEXIS 149027, at *4 (D. Del. Sep. 14, 2017).  Rule 26(e) applies to initial disclosures made under Rule 26(a) "if the party learns that in some material

respect the disclosure or response is incomplete or incorrect, and if the additional

or corrective information has not otherwise been made known to the other parties."

Fed. R. Civ. P. 26(e)(1)(A).   Densify agreed at the hearing that Rule 26(e) applies

to its preliminary infringement contentions.  (Tr. 33:10-11 ("Does Rule 26(e)

apply?  I believe it would . . .")).

      Thus, even if the initial purpose of infringement contentions is only to put

the opposing party on notice of the patentee's claims, it does not follow that a

patentee may delay supplementation of its contentions until the deadline for service

of final contentions when its initial contentions are incomplete or incorrect.  *See*,

*e.g.*, *HSM Portfolio LLC v. Fujitsu Ltd.*, C.A. No. 11-770-RGA, D.I. 667 at 2 &

n.2 (D. Del. May 7, 2014) (overruling objection to special master decision and

stating that patentee should apply its claim construction in its infringement

contentions); *Kajeet, Inc. v. McAfee Corp.*, C.A. No. 21-005-MN (D. Del. Nov. 22,

2021) (Oral Order) (Fallon, M.J.) (requiring supplementation of contentions

because "to allow Plaintiff to stockpile supporting evidence, including source code,

only to load it into final contentions on or near the deadline could create

inefficiencies such as a need to reopen discovery to address new infringement

theories"); Fed. R. Civ. P. 26(e)(1)(A) (requiring supplementation "in a timely

manner if the party learns that in some material respect the disclosure or response

is incomplete or incorrect"); *see also Finjan, Inc. v. Rapid7, Inc.*, C.A. No. 18-

1519-MN, D.I. 108 (Tr. 14:5-9) (D. Del. Dec. 13, 2019) ("It just doesn't seem to me that you should get to the end of fact discovery to give over contentions, that they should have to wait until the end of fact discovery for them to fully understand your contentions.").

Here, to the extent Densify has not applied its proposed constructions of "source system" and "target system"/"target computer system" in its infringement contentions, it should do so.

VMware also asserts that Densify's contentions "do not identify which specific combinations of products and features allegedly infringe." (VMware Letter at 3). VMware goes on to assert that each Densify's claim chart "spans unspecified combinations of as many as 14 products and features." (*Id.*). To support its assertions, VMware points to its discovery letter to Densify that makes similar assertions. Densify responds that its contentions "identify with specificity infringing versions and features of each Accused Product" and the "applicable combinations of products and how they interact," pointing to examples. (Densify Letter at 3).

It is difficult to ascertain from the limited information presented whether or not the contentions are complete in this regard. Because VMware bears the burden of persuasion on its motion to compel, I will deny this portion of VMware's motion, giving credit to Densify's statement that it has already identified with

11

"specificity infringing versions and features of each Accused Product." In doing so, however, I note that the duty to supplement is self-executing, and that litigants who delay setting forth their full contentions until the deadline for final supplementation can face questions about diligence, prejudice, compliance with the Federal Rules, and good or bad faith.

### Issue 3—Densify's Motion to Compel Core Technical Documents

Densify has moved to compel further production of core technical documents from VMware. Densify argues that VMware's core technical document production is deficient at least because VMware has failed to produce source code for several products. Densify seeks an order that VMware produce "core technical documents, including source code, sufficient to show how the accused products work for all accused products." (Proposed Order). VMware, in turn, argues that it has produced thousands of pages of core technical documents, and that Densify has failed to show that the production of additional technical documents are relevant.

At the hearing, I explored with the parties the status of document discovery and whether the existing document requests covered all of the documents sought by Densify as "core technical documents." Densify concurred that its document requests covered any missing core technical documents (Tr. 43:18-21), and indicated a willingness to work with VMware to identify deficiencies in the VMware production (Tr. 47:17-20). Densify expressed concern, however, that the

real issue is a "steadfast refusal to produce anything outside of those four products." (Tr. 47:21-22). VMware responded, in part, by again noting that it has "produced thousands of documents on these products, including internal, nonpublic documents." (Tr. 49:24-5). VMware also confirmed that it planned to produce additional technical documents. (Tr. 53:14-20).

As I noted at the hearing, I am not at all unsympathetic to Densify's motion if VMware has not produced the relevant, technical documents for all accused products in the litigation. On the other hand, framing the issue as a dispute about the incomplete production of core technical documents also creates problems. For example, while the focus of Densify's motion is the production of source code as a "core technical document," whether source code must be produced as a core technical document is far from clear. Paragraph 4(b) of the Default Standard requires the production of:

> core technical documents related to the accused product(s),
> including but not limited to operation manuals, product
> literature, schematics, and specifications.

At least one judge from this district has stated that she did not believe production of core technical documents included the production of source code. *CyberFone Sys., LLC v. Cellco Partnership*, C.A. No. 11-827-SLR, (Sept. 20, 2012), Tr. 45:20-21 ("We're not requiring source code at the outset because I think that is very intrusive."). Densify states that *Princeton Dig. Image Corp. v. Konami Dig.*

*Entm't Inc.*, 316 F.R.D. 89, 95 n.11 (D. Del. 2016), holds otherwise, but footnote 11 states only that a litigant's decision to produce source code does not relieve it of its obligation to produce other core technical documents.

Further, as Densify noted in response to VMware's motion to compel, one purpose of preliminary infringement contentions is to put the defendant on notice of the claims against it. The core technical document production was designed to enable service of those preliminary contentions, and, here, Densify claims that its contentions "identify with specificity infringing versions and features of each Accused Product" and the "applicable combinations of products and how they interact", pointing to examples. (Densify Letter at 3).

In light of the foregoing, I gave the parties the following direction at the hearing:

> On this topic that we've just discussed, the core technical documents, I'll just give you a couple of thoughts and a path forward.
>
> First, in my experience, the core technical document production is usually a beginning and certainly not an end of document production on technical topics. And it really has a purpose of enabling the initial infringement contentions.
>
> The standard for what's a core technical document, in the little bit of writing we have from the default standard, is vague. It has some examples, but don't think it's inclusive and it's certainly not definitive as to what is or is not a core technical document.
>
> Here, it seems like VMware is giving some core technical documents. I don't know if I could characterize it as a large

volume or a small volume of things that are actually useful. You know, sometimes the numbers don't tell the whole story because there can be a lot of things that aren't useful in it, and I don't have enough information to gauge as to whether it's a complete production, at least for an initial stage of the case, or whether more should be coming.

I do get the sense that there's some documents missing, and maybe a significant volume of technical documents missing, but I don't know how many; whether it's a big volume or a small volume.  And it's pretty clear from this conversation to me that it would be difficult to put a list together and say this is an accused product, (a), and (a) is missing the following things.

I think what I'd like you to do in light of that is to work on this a little bit within the request for production process.  If the RFP responses were done with the rules – and I'm referencing 34(e)(2), subparts B and C, responding to each item and C objections, there should be a definitive list already of what VMware is willing to produce in response to the technical – request for technical documents and what it's not willing to produce.

I suspect, as in many cases – you know, and I'm not faulting anybody for this, it's maybe not as complete or as detailed as would be helpful for this process.  But with those requests in mind, I'd like you to go back and try to do it on a product-by-product basis, what's – first, VMware, what are you producing? And, second, then getting together what's missing.

To give an example, one of the items I understand to be an accused product is vSphere Bitfusion, another VMware Tanzu. Those products – VMware should be able to tell us whether it's producing source code and for how much of – what portions of the source code it's producing; what other documents are being produced.  And we should have something a little more concrete to be able to rule on.

\*      \*      \*

. . .  I think when you have the – if you've all request to cover those same documents, you should get them both ways.  So I'm

very sympathetic to making sure you get everything you should get under the rules and under your request.

I'm just leery of issuing a broad rule or an order to produce everything and then we'll have disputes about what that means.

\*       \*       \*

. . . You still have underlying disputes about what are the accused products and which specific components of the source code are being produced, so what I'm envisioning is that you would get something together within those responses that says, you know, for each of the accused products, we're producing source code, we're not producing source code, we're not producing certain modules if that were the request; or if the request is technical documents describing how the software operates, it would be we're producing A, B, C, and D for this accused product. We're producing A and Q for this accused product. We don't think anything is relevant for this other accused product because you haven't met your burden. And then we'll have a concrete list.

(Tr. 55:9-59:17).

Since the hearing, Densify has not returned with a further motion to compel. I will therefore deny, without prejudice, this motion. Should Densify determine, after a full meet and confer process that focuses on specific missing documents, that VMware is refusing to produce discoverable technical documents, Densify may renew this motion.

Dated:  December 14, 2021                    _____
                                                                              Special Master