IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 19-742-LPS |
| VMWARE, INC., | : : : | |
| Defendant. | : : | |

### MEMORANDUM ORDER

On January 8, 2021, the Court appointed John W. Shaw as a special discovery master in this case. (D.I. 958) The Court's decision to do so came after the parties had absorbed an excessive amount of judicial resources on their seemingly limitless discovery disputes.[1]

Many months later, on September 7, 2021, Plaintiffs Cirba Inc. (d/b/a Densify) and Cirba IP, Inc. (together, "Densify") filed a motion to disqualify the Special Master. (D.I. 1059; D.I. 1076 Ex. 9) The Court referred the disqualification motion to Mr. Shaw to hear and decide. (*See* D.I. 1040) After hearing argument on September 27 (*see* D.I. 1058), the Special Master denied the motion on October 14 (D.I. 1060, 1061). Densify objected to the Special Master's denial on November 4 (D.I. 1076), and Defendant VMware, Inc. ("VMware") responded to the objections on November 15 (D.I. 1085). The Court heard argument on December 22. (D.I. 1114) ("Tr.")

---

[1] *See* D.I. 947 ("[T]he Court will be appointing a special master to handle all future discovery disputes . . . . This highly-litigious action has already involved dozens of discovery disputes.").

1

The Court reviews the Special Master's factual findings and legal conclusions *de novo*. *See* Fed. R. Civ. P. 53(f)(3)-(4).

Having considered the parties' filings and arguments, and for the reasons stated below, **IT IS HEREBY ORDERED** that Densify's objections (D.I. 1076) are **OVERRULED** and Densify's motion to disqualify (D.I. 1059) is **DENIED**. However, for reasons related to case management, and having nothing whatsoever to do with Mr. Shaw – who has acted throughout his appointment with complete integrity and has provided valuable assistance to the Court – the Court will terminate the referral to the Special Master for the remainder of this case.

## BACKGROUND

Mr. Shaw is a founding, named partner of the Delaware law firm Shaw Keller LLP ("Shaw Keller"). *See John W. Shaw*, Shaw Keller LLP (last visited Jan. 6, 2022), https://shawkeller.com/attorneys/john-w-shaw/. He has been a member of the Delaware Bar for over 25 years and has an active litigation practice in the United States District Court for the District of Delaware. *See id.*; *see also* Tr. at 211-12; *see also generally* D.I. 1076 at 1 ("Densify has no objection to the Special Master's qualifications.").

Shortly after Mr. Shaw's appointment as Special Master, the parties agreed on their own initiative to exchange information "regarding any connections the parties and/or their counsel may have with the Special Master and/or Shaw Keller and vice versa." (D.I. 1076 Ex. 2 at 8-9) The parties agreed that the purpose of this exchange was "to disclos[e] and resolv[e] potential grounds for disqualification." (D.I. 1058 at 4-5)

VMware disclosed (among other things) that Mr. Shaw was working on behalf of two clients on four active cases in which Morrison & Foerster ("M&F") – counsel for VMware – had

2

also appeared for those clients. (D.I. 1076 Ex. 2 at 1) That disclosure included the relevant case names and numbers, as well as the names of the two clients: Chugai Pharmaceutical Co., Ltd. ("Chugai") and Align Technology, Inc. ("Align"). (*Id.*) Several of the M&F attorneys representing Align have appeared for VMware in the instant case.[2] Densify contends it was unaware of this fact at the time Densify and VMware were addressing potential grounds for disqualification. (*See* Tr. at 188)

Densify did not disclose any connections between Densify or its counsel and Shaw Keller. After receiving VMware's disclosures, Densify expressly consented to Mr. Shaw's service as Special Master. (*See* D.I. 1076 Ex. 3 at 2 (February 11, 2021 email from Densify's counsel to Mr. Shaw stating: "Having received disclosures regarding potential grounds for disqualification from you, the Shaw Keller firm, and counsel for VMware, Densify consents under Rule 53(a)(2) to your appointment as Special Master"); *see also id.* Ex. 9 at 1 (Densify acknowledging it "did not object to appointment of the Special Master" when it had opportunity at time of his appointment))

The record demonstrates, nevertheless, that at the time of Mr. Shaw's appointment, there were at least four connections between Densify's counsel and Shaw Keller. (*See* D.I. 1060 at 4) Mr. Shaw had appeared in three matters for clients alongside Kirkland & Ellis ("K&E"); K&E is a firm representing Densify in the instant matter. (*See id.*) In a fourth matter, other Shaw Keller attorneys (not Mr. Shaw) had appeared for clients alongside K&E. (*See id.*) While

---

[2] None of the M&F attorneys representing Chugai have appeared for VMware in the instant case.

Densify never disclosed these connections,[3] Mr. Shaw did so on September 2, 2021, just one day after Densify first raised the disqualification issue.[4] (*See id.*)

Densify purports to have filed its disqualification motion in response to the actions of one of Mr. Shaw's partners, Karen Keller. (*See* D.I. 1076 at 2)[5] Months after Mr. Shaw was appointed as Special Master, Ms. Keller began representing a client in an unrelated matter

---

[3] The Court agrees with the Special Master, who wrote:

> An objective, reasonable person knowing all the facts and circumstances likely would view it as significant that Densify did not identify these connections despite agreeing to identify "any connections and relationships" that might constitute possible grounds for disqualification. . . . Densify's actions suggest to an objective, reasonable person that co-counsel relationships in litigation between unrelated parties are not conflicts or possible grounds for disqualification, and do not suggest a concern about impartiality.

(D.I. 1060 at 16-17)

[4] The Special Master also notes that, at the time of his appointment, lawyers and law firms appearing on behalf of both Densify and VMware had appeared for clients adverse to clients represented by him or other Shaw Keller attorneys. (*See* D.I. 1060 at 5) Further, after his appointment in this case, Mr. Shaw began to represent a client adverse to a party represented by K&E (one of the firms representing Densify) and another client adverse to a party represented by Young Conaway Stargatt & Taylor, a firm representing VMware. (*See id.*) Densify did not assert in its motion that these representations provide a basis for disqualification.

[5] Densify's counsel insist they "raise[d] this objection as officers of the Court" "in order to safeguard the integrity of these proceedings." (D.I. 1076 at 1) The Court need not (and does not) make any finding as to Densify's motives (by which the Court does not mean to suggest it doubts Densify's sincerity). While the timing of Densify's motion to disqualify is far from ideal, as many of the facts on which it is based existed and were easily knowable at the time Densify consented to Mr. Shaw's appointment, Densify is correct that it "objected before the Special Master issued any rulings." (*Id.*) This distinguishes the circumstances presented here from those in many cases cited by VMware, in which parties seeking disqualification of a special master (or a judge) only first developed qualms after receiving an unfavorable ruling. (*See* D.I. 1085) (citing, e.g., *In re United States*, 666 F.2d 690 (1st Cir. 1981); *Jenkins v. Sterlacci*, 849 F.2d 627 (D.C. Cir. 1988))

4

alongside M&F attorneys, none of whom have appeared in this case. (*See* D.I. 1060 at 7) Specifically, Ms. Keller began representing Leviton Manufacturing Company ("Leviton") in a suit brought by Corning Optical Communications LLC ("Corning") in the District of Delaware on August 18, 2021. (*See id.* at 6-7) Corning is represented by Reichman Jorgensen Lehman & Feldberg LLP ("RJLF"), which is counsel for Densify in the instant matter. Two of the same RJLF attorneys representing Corning are counsel for Densify in this case.

There appears to be no dispute that Ms. Keller reached out to M&F about serving as Delaware counsel for Leviton. (*See id.* at 7; Tr. at 199) Densify characterizes this communication as "solicitation," but there is little information in the record about the communication or what prompted Ms. Keller to reach out to M&F. (D.I. 1060 at 7) The record includes an email from counsel for VMware stating that M&F had "retained" Ms. Keller as Delaware counsel in the *Corning/Leviton* litigation. (D.I. 1076 Ex. 4 at 1) All other evidence, however, supports the conclusion that Ms. Keller is retained by Leviton (not M&F), that she owes duties to Leviton (not M&F), and that she is paid by Leviton (not M&F). (*See, e.g.,* D.I. 1085-1 Ex. A) (letter of engagement between Leviton and Ms. Keller)

As part of his resolution of Densify's motion to disqualify, the Special Master asked M&F to implement a screen to ensure that no M&F attorney in this action will become involved in the *Corning/Leviton* litigation, and that no M&F attorney in that action will become involved in this litigation. (*See* D.I. 1060 at 14; D.I. 1061) M&F has done so. (*See* D.I. 1085 at 3) Shaw Keller has also implemented an ethical wall between the *Corning/Leviton* matter and this matter. (*See* D.I. 1060 at 8)

Notwithstanding this record and these efforts, Densify argues the Court must disqualify

5

the Special Master pursuant to 28 U.S.C. §§ 455(a) & (b)(4), which is made applicable to Special Masters under Federal Rule of Civil Procedure 53(a)(2). (*See* D.I. 1076 at 1, 4-5) (arguing recusal of Special Master is "requir[ed]")[6] Section 455(a) requires a Special Master to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and the applicable analysis focuses on whether an objective, reasonable layperson with knowledge of all the facts would doubt his impartiality. *In re Kensington Int'l Ltd.*, 368 F.3d 289, 303 (3d Cir. 2004). Under Section 455(b)(4), a Special Master should disqualify himself also if he "knows that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." Densify has not argued there is a meaningful distinction between the 455(a) and (b)(4) analyses in this case. (*See* D.I. 1060 at 10)[7]

## DISCUSSION

Densify objects to the Special Master's denial of its motion on three primary grounds. Each lacks merit.

First, Densify contends that Shaw Keller has an "ongoing financial relationship" with

---

[6] *But see* D.I. 1058 at 5 (Densify agreeing before Special Master that disqualification "is a matter of discretion").

[7] Accordingly, the Court focuses its analysis on Section 455(a). The result is the same under Section 455(b)(4), as the record does not support a finding that Mr. Shaw has: (i) a financial interest in the subject matter in controversy between Densify and VMware (essentially, mutual allegations of patent infringement by purportedly competing companies); (ii) a financial interest in Densify or VMware, the parties to the instant proceeding; or (iii) any other interest that could be substantially affected by the outcome of the instant proceeding – Mr. Shaw will be paid the same for his duties as Special Master regardless of who prevails (on any issue or in a final judgment) in this case, and there is no evidence that Mr. Shaw's or Shaw Keller's opportunities or other interests will be "substantially affected" by the outcome of this case.

M&F that requires recusal. (D.I. 1076 at 5) In particular, Densify argues that as a result of Ms. Keller's decision to represent Leviton in the *Corning/Leviton* case, Shaw Keller "will be making money from" M&F, adding that M&F can give Ms. Keller (or presumably Mr. Shaw or other attorneys at Shaw Keller) more or less work and money depending on M&F's satisfaction with Mr. Shaw's decisions in the instant case. (*Id.* at 6-7; *see also* D.I. 1060 at 13) The evidence in the record does not support Densify's characterization of the facts.

Instead, the Court agrees with the Special Master that an objective, reasonable layperson would understand that the ***client*** (Leviton) – not the law firm (M&F) – is responsible for paying fees incurred by Shaw Keller on Leviton's behalf. (*See* D.I. 1060 at 13) The engagement letter between Leviton and Ms. Keller (*see* D.I. 1085-1 Ex. A) supports this conclusion. Further, no one contends the ***parties*** in the *Corning/Leviton* case are at all related to the parties in the instant action. (*See* D.I. 1060 at 14) Even if Ms. Keller first reached out to M&F regarding representation of Leviton, and even if M&F connected Ms. Keller to Leviton, these preliminaries do not justify a finding of "an ongoing financial relationship" between Shaw Keller and M&F or that Shaw Keller is being paid by M&F.

For similar reasons, the Court finds unpersuasive Densify's argument that the 15 now-inactive cases in which the Special Master or his firm worked alongside M&F support a finding of an ongoing financial relationship. (*See* Tr. at 190, 205) As counsel for VMware pointed out at the hearing, when considered in the context of Mr. Shaw's more than 25 years of practice in this busy District, these 15 now-inactive cases (all involving parties unrelated to the parties here) carry little weight in the analysis. (*See id.* at 211-12) The Court further agrees with VMware that "[t]here is no principled difference between the Leviton Engagement's 'financial benefits to

7

Shaw Keller[]' and the 'financial benefits' provided in the previously disclosed engagements to which [Densify] did not object and any similar future engagements."  (D.I. 1076 Ex. 11 at 4) (internal citation omitted)

Second, as a separate basis for recusal, Densify points to active and inactive cases in which Mr. Shaw is serving or has served as co-counsel with M&F attorneys.  (D.I. 1076 at 7-8)  In this version of its argument, Densify does not appear to allege an ongoing financial relationship but, instead, a subtle entanglement among Mr. Shaw, Ms. Keller, and/or Shaw Keller and M&F, which would supposedly lead a reasonable layperson to doubt Mr. Shaw could impartially carry out the duties assigned to him by this Court in the instant case.  Densify appears most concerned with Mr. Shaw's involvement in the *Align* cases (*see* Tr. at 188, 213-14), the only two cases in which Mr. Shaw is currently representing a client alongside M&F counsel representing VMware here (*see* D.I. 1076 Ex. 8; *see also* D.I. 1085 at 1 n.1 (explaining that client represented by Mr. Shaw and M&F in "active" *Baxalta* case had been dismissed by time of VMware's disclosures)).  Crucially, as VMware correctly notes, Densify was aware of the *Align* cases when it consented to the Special Master's appointment, *yet it did not indicate any concerns about these cases when it consented to Mr. Shaw's appointment or even in its eventual letter moving for his recusal.*  (D.I. 1085 at 4, 7)[8]

In the Third Circuit, an assessment of the timeliness of a motion seeking disqualification under Section 455(a) generally turns on the movant's actual knowledge of the facts giving rise to

---

[8] The *Align* cases are all pending before the undersigned Judge.  (*See, e.g.*, C.A. Nos. 17-1646-LPS & 17-1647-LPS)  At no point has any party expressed any concern about this fact nor suggested that a reasonable layperson would find it to be a basis to question the impartiality of Mr. Shaw, or of the undersigned Judge in reviewing Mr. Shaw's work as Special Master.

8

the recusal motion. *See Kensington*, 368 F.3d at 314. However, "[t]here may be instances in which constructive knowledge is so pervasive that it is tantamount to actual knowledge." *Id.* In the Court's view, this is one of those instances. VMware timely disclosed the *Align* case names and numbers, as well as client information. Through a simple search of publicly available records, one of the many lawyers representing Densify could have easily obtained the information Densify now suggests was withheld. (*See* Tr. at 188-89) Accordingly, the Court concludes that Densify knew or should have known of Mr. Shaw's representation in the *Align* cases (alongside the M&F attorneys representing VMware here) at the time Densify expressly consented to Mr. Shaw's appointment as Special Master. Since Densify did not raise this issue at that time, ***and again did not raise this issue even in its motion to disqualify***, the Court agrees with the Special Master that Densify waived it as a basis for disqualification.[9] (*See* D.I. 1060 at 20-21; *see also Jenkins*, 849 F.2d at 633-34 (finding that, despite "complementary failures" on part of counsel and special master to properly disclose potential conflicts, party waived objections forming basis for recusal in view of party's constructive notice of potential conflict))

Nor does the Special Master's failure to provide a Rule 53 affidavit preclude a finding of waiver. While it is the Special Master's burden to disclose possible grounds for disqualification, *see Kensington*, 368 F.3d at 313, the parties here voluntarily agreed to take it upon themselves to disclose any such grounds. It was reasonable for the Special Master to rely on the parties' efforts in this regard and to satisfy his burden (at least in part) through those efforts. It was also reasonable for Mr. Shaw to consider Densify's lack of disclosure of

---

[9] Densify only first alluded to the *Align* cases as a reason for Mr. Shaw's recusal in the September 27 hearing before Mr. Shaw. (*See* D.I. 1058 at 9; *see also* D.I. 1085 at 1-2)

9

relationships between Shaw Keller and firms representing Densify when determining whether he had a duty to disclose the type of co-counsel relationships Densify now asserts raise concerns about impartiality.[10] Further, although Densify had ample opportunity to object to the Special Master's failure to provide a Rule 53 affidavit (i.e., before it consented to his appointment, in its moving papers, or at the hearing before the Special Master), Densify substantially delayed raising this argument. It is, therefore, waived.[11]

Third, Densify contends that Shaw Keller's "adversity" to RJLF in the *Corning/Leviton* matter is an "aggravating factor" supporting disqualification. (D.I. 1076 at 8-9; *see also* D.I. 1060 at 17) By describing it as an "aggravating factor," Densify appears to concede – properly, in the Court's view – that the happenstance of Shaw Keller and M&F appearing for a client against a client of RJLF (including two of the same RJLF attorneys appearing for Densify here),

---

[10] The Court is not suggesting Mr. Shaw had no duty of disclosure; only that in fulfilling his duty of disclosure it was entirely reasonable for Mr. Shaw to rely, at least in part, on the efforts of the lawyers and litigants involved in this action. Mr. Shaw did disclose to the parties relevant information that could not have been known or easily discovered by all of them, including a personal representation of him by one of the firms involved in this case. (*See* D.I. 1060 at 3)

[11] As Densify noted at the hearing, Section 455 limits parties' ability to waive certain kinds of conflicts. (*See* Tr. at 193-94) Section 455(e) provides that a party cannot waive any of the grounds for disqualification enumerated in subsection (b). By contrast, "[w]here the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." As the Court has already explained, in its view, VMware's disclosure of the *Align* cases was a "full disclosure," providing Densify with constructive knowledge of Mr. Shaw's representation alongside the M&F attorneys representing VMware here. Thus, pursuant to Section 455(e), Densify's arguments under subsection (a) relating to Mr. Shaw's impartiality can be – and are – waived. Densify has not argued that the Court should engage in a distinct analysis of its grounds for disqualification under subsection (b)(4). Moreover, as the Court has already concluded, the record does not support a finding that any of those grounds apply to Mr. Shaw. The Court finds, therefore, that Densify's arguments are not of a kind that cannot be waived under Section 455(e). Densify's concession before the Special Master that disqualification "is a matter of discretion" (D.I. 1058 at 5) provides further support for this conclusion.

in a matter utterly unrelated to this case, is not, in itself, a sufficient basis for recusal. In the Court's view, there is no appearance of impropriety. Densify's contention that "Shaw Keller is adverse to RJLF" is incorrect. It is Ms. Keller, not Mr. Shaw, who represents Leviton; and, more importantly, it is Leviton – the client – who is adverse to Corning, who is represented by RJLF. Further, Shaw Keller has implemented an ethical wall between the *Corning/Leviton* matter and this matter. Given these degrees of separation, and all the facts and circumstances that would be known to a reasonable layperson, the participation of counsel for RJLF in both matters would not raise substantial concerns to such a person about **Mr. Shaw's** impartiality as Special Master here.[12]

Finally, the Special Master's conduct throughout this case, when viewed in its entirety, weighs strongly against a finding of an appearance of impropriety. The Special Master has been forthright about his process for evaluating potential grounds for disqualification (*see* D.I. 1060 at 1-2), has continued to disclose possible grounds for disqualification as they arise (*id.* at 4-6), and has implemented screening measures to distance himself from the *Corning/Leviton* litigation (*id.* at 8, 14). In the Court's view, the Special Master's conduct – which would be known to a reasonable layperson – further precludes any significant chance that a reasonable layperson would doubt his impartiality to perform the duties assigned to him by this Court as its Special

---

[12] *Sightsound Technologies., LLC v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 127498 (W.D. Pa. Sept. 7, 2012), provides further support for the Court's conclusion. In that case, a special master's law firm represented, in an unrelated matter, an affiliate of one of the litigants before the special master. *See id.* at *2. The court determined that, among other factors, an ethical screen implemented at the special master's law firm sufficiently addressed concerns about his partiality under Section 455(a). Here, the relationship is even more attenuated than in *Sightsound*, as the Special Master's connection is not with a party but with its outside counsel. As in *Sightsound*, the Court concludes that the screening procedures imposed by Mr. Shaw, in addition to the other factors the Court has cited, are sufficient to address any concerns.

11

Master.[13]

**GOING FORWARD**

While the Court rejects Densify's arguments, and shares none of Densify's concerns about the appointment of Mr. Shaw – an appointment Densify expressly consented to – the Court's consideration of the motion to disqualify and other recent matters (including the December 22, 2021 claim construction hearing) has provided occasion for the Court to consider again the necessity of retaining a Special Master to assist with discovery matters. Happily, in the approximately one year that Mr. Shaw has served as Special Master, only three motions to compel have been filed, which contrasts extremely favorably with the "dozens of discovery disputes" the Court confronted in the first 20 months of the case, before Mr. Shaw's appointment. (D.I. 947) (citing, e.g., D.I. 89, 185, 268, 277-78, 296, 313, 341, 408, 419-20, 501, 815, 860, 902) Further, the case schedule provides that fact discovery will conclude on April 29, 2022, less than four months from now. (D.I. 1003 ¶ 9(a))

Accordingly, the Court has determined that it no longer requires the assistance of a Special Master in this case. The rulings the Special Master has issued to date (*see* D.I. 1038,

---

[13] As Densify points out, Rule 53(a)(2) provides: "A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification." (D.I. 1076 at 4) The Court's ruling is in accord with this rule because, as explained, Densify did consent to Mr. Shaw's appointment, after he had disclosed – through the procedures agreed to by the parties – any potential grounds for disqualification. *See also generally* Fed. R. Civ. P. 53(a)(2) & (3) advisory committee's notes to 2003 amendment ("Because a master is not a public judicial officer, it may be appropriate to permit the parties to consent to appointment of a particular person as master in circumstances that would require disqualification of a judge.").

1044), to which no party presented any timely objections,[14] remain in effect and are binding on the parties. The pending discovery disputes (*see* D.I. 1097), as well as any additional discovery disputes (should any arise as this case proceeds), will be resolved by the undersigned Judge pursuant to a separate order. The Court is hopeful that the parties will exercise the same restraint regarding discovery disputes that they demonstrated before the Special Master.

January 7, 2022  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE

---

[14] Objections were due 21 days after the Special Master's December 14, 2021 rulings, which was January 4, 2022. (*See* D.I. 958 ¶ 6; Fed. R. Civ. P. 53(f))