IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., <br><br> *Plaintiffs/Counter-Defendants*, <br><br> v. <br><br> VMWARE, INC., <br><br> *Defendant/Counter-Plaintiff.* | C.A. No. 19-742-GBW (CONSOLIDATED) <br><br> **PUBLIC REDACTED VERSION** |

<u>**VMWARE'S OPENING BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR STAY**</u>

Dated: September 9, 2022
Redacted Version: September 16, 2022

OF COUNSEL:

Arturo J. González
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
agonzalez@mofo.com
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

# TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................................. 1

II.   Nature / Stage of Proceedings and Statement of Facts .............................................. 2

III.  Argument .................................................................................................................... 6

     A.    A Stay Will Simplify Issues for Trial .................................................................. 7

          1.    The '492 IPR will substantially simplify the case ........................................ 8

          2.    The '687 reexamination will substantially simplify the case ........................ 8

          3.    The '459 PGR will substantially simplify the case ...................................... 9

          4.    The '367 reexamination result does not militate against a stay ................. 10

     B.    The Most Burdensome Tasks in this Complex Case Remain Ahead .................... 10

     C.    Cirba Will Not Suffer Undue Prejudice from a Stay ......................................... 12

          1.    VMware timely initiated the PTO proceedings ......................................... 13

          2.    VMware timely filed its motion and promptly renewed it ........................ 14

          3.    The status of the PTO proceedings favors a stay ...................................... 14

          4.    Cirba would not be unduly prejudiced ...................................................... 15

     D.    A Stay Will Reduce Burden on the Parties and the Court ................................... 19

IV.  Conclusion ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AgroFresh Inc. v. Essentiv LLC*,
    No. 16-662-MN, 2019 WL 2327654 (D. Del. May 31, 2019) ....................................... 8, 11, 14

*Apple Inc. v. Fintiv, Inc*.,
    IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) ............................................................. 13

*BodyMedia, Inc. v. Basis Sci., Inc.*,
    No. 12-133-GMS, 2013 WL 2462105 (D. Del. June 6, 2013) .......................................... 13, 17

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
    No. 12-1107-GMS, 2014 WL 1369721 (D. Del. Apr. 7, 2014) ........................................ 13, 14

*Boston Sci. Corp. v. Cook Grp. Inc.*,
    No. 15-980-LPS-CJB, D.I. 304 (D. Del. Aug. 16, 2017) ......................................................... 7

*Ceiva Logic v. Frame Media Inc.*,
    No. 08-CV-636, 2009 WL 7844245 (C.D. Cal. June 9, 2009),
    *aff'd*, 374 F. App'x 959 (Fed. Cir. 2010) ............................................................................ 15, 16

*Cirba Inc. v. USPTO*,
    No. 22-CV-403, D.I. 1 (E.D. Va. Apr. 8, 2022) ...................................................................... 4

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
    No. 5:10-CV-2051, 2012 WL 1232187 (N.D. Cal. Apr. 12, 2012)......................................... 14

*Destination Maternity Corp. v. Target Corp.*,
    12 F. Supp. 3d 762 (E.D. Pa. 2014) ...................................................................................... 18

*Drink Tanks Corp. v. GrowlerWerks, Inc.*,
    No. 16-CV-410, 2017 WL 2633389 (D. Or. June 19, 2017) ..................................................... 7

*Ethicon LLC v. Intuitive Surgical, Inc.*,
    No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ................................ 6, 10, 12, 13

*Ever Win Int'l Corp. v. Radioshack Corp.*,
    902 F. Supp. 2d 503 (D. Del. 2012)........................................................................................ 10

*FastVDO LLC v. AT&T Mobility LLC*,
    No. 16–CV-00385, 2017 WL 2323003 (S.D. Cal. Jan. 23, 2017)........................................... 12

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013).................................................................................................. 9

*Gen. Elec. Co. v. Vibrant Media, Inc.*,
    No. 12-526-LPS, D.I. 91 (D. Del. Dec. 4, 2013) ...................................................... 7

*Huvepharma Eood v. Associated Brit. Foods, PLC*,
    No. 18-129-RGA, 2019 WL 3802472 (D. Del. Aug. 13, 2019) ............................... 15

*In re Cirba Inc.*,
    No. 21-154, 2021 WL 4302979 (Fed. Cir. Sept. 22, 2021) ........................................ 2

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ....................... 13, 19

*Kirsch Rsch. & Dev. v. GAF Materials, LLC*,
    No. 20-CV-13683, 2021 WL 2434082 (D.N.J. June 15, 2021) ................................ 17

*Knauf Insulation, LLC v. Johns Manville Corp.*,
    No. 15-CV-00111, 2020 WL 4261814 (S.D. Ind. July 24, 2020) ........................... 10

*Leading Tech. Composites, Inc. v. MV2, LLC*,
    No. CCB-19-1256, 2020 WL 7489019 (D. Md. Dec. 21, 2020) .............................. 11

*MiiCs & Partners v. Toshiba Corp.*,
    No. 14-803-RGA, 2015 WL 9854845 (D. Del. Aug. 11, 2015) ............................... 19

*Murata Mach. USA v. Daifuku Co., Ltd.*,
    830 F.3d 1357 (Fed. Cir. 2016) ................................................................................. 6

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
    No. 12-662-GMS, 2013 WL 424754 (D. Del. Jan. 31, 2013) ................................ 18

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
    No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) ..................... 8, 13, 17

*NFC Tech. LLC v. HTC Am., Inc.*,
    No. 13-CV-1058-WCB, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ................... 9

*Nuance Commc'ns, Inc. v. MModal LLC*,
    No. 17-1484-MN, D.I. 226 (D. Del. Apr. 11, 2019) ............................................... 10

*PACT XPP Schweiz AG v. Intel Corp.*,
    No. 19-1006-JDW, 2020 WL 13119705 (D. Del. Nov. 5, 2020) ...................... 12, 20

*Performance Sols. LLC v. Sea Ties, LLC*,
    No. CV 20-797, 2022 WL 501389 (M.D. La. Feb. 18, 2022) ................................... 9

*Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*,
    No. 12-CV-0021, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ........................... 13

*Slide Fire Sols. v. Bump Fire Sys.*,
    No. 14-CV-3358, 2016 WL 3355141 (N.D. Tex. Apr. 21, 2016) ........................................... 15

*Smartflash LLC v. Apple Inc.*,
    621 F. App'x 995 (Fed. Cir. 2015) ................................................................................. 10, 12

*Speyside Med., LLC v. Medtronic CoreValve, LLC*,
    No. 20-361-LPS-CJB (D. Del. Sept. 30, 2021) ...................................................................... 7

*SurfCast, Inc. v. Microsoft Corp.*,
    No. 12-CV-333, 2014 WL 6388489 (D. Me. Nov. 14, 2014) ................................................ 12

*TC Tech. LLC v. Sprint Corp.*,
    No. 16-153-WCB, 2021 WL 4521045 (D. Del. Oct. 4, 2021) (Bryson, J.) ....................... 6, 7, 9

*TeleSign Corp. v. Twilio, Inc.*,
    No. 15-CV-3240, 2016 WL 6821111 (C.D. Cal. Mar. 9, 2016) ............................................ 15

*Thermogenesis Corp. v. Origen Biomedical, Inc.*,
    No. 13-CV-2619, 2015 WL 1291390 (E.D. Cal. Mar. 20, 2015) ........................................... 15

*Translogic Tech., Inc. v. Hitachi, Ltd.*,
    250 Fed. App'x 988 (Fed. Cir. 2007) .................................................................................... 19

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
    No. 12-CV-05501, 2015 WL 435457 (N.D. Cal. Feb. 2, 2015) .............................................. 8

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) ............................................................................................ 18

*Vivint, Inc. v. Alarm.com Inc.*,
    351 F. Supp. 3d 1341 (D. Utah 2018) .................................................................................... 8

**Statutes**

35 U.S.C. § 307(b) ............................................................................................................................. 9

35 U.S.C. § 311(c) ........................................................................................................................... 13

35 U.S.C. § 315(e) ........................................................................................................................... 10

35 U.S.C. § 321(c) ........................................................................................................................... 13

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Cirba Inc. | "Inc." |
| Cirba IP, Inc. | "IP" |
| Inc. and IP, collectively | "Cirba" |
| U.S. Patent & Trademark Office | "PTO" |
| Patent Trial & Appeal Board | "PTAB" |
| U.S. Patent No. 8,209,687 | "the '687 patent" or "'687" |
| U.S. Patent No. 9,654,367 | "the '367 patent" or "'367" |
| U.S. Patent No. 10,523,492 | "the '492 patent" or "'492" |
| U.S. Patent No. 10,951,459 | "the '459 patent" or "'459" |
| C.A. No. 19-cv-742, D. Del. | "the '742 Action" |
| C.A. No. 20-cv-272, D. Del (previously Case No. 19-cv-1334, E.D. Va.). | "the '272 Action" |
| *Inter partes* review | "IPR" |
| Post grant review | "PGR" |
| Final written decision | "FWD" |
| Transcript of January 2020 trial (D.I. 587 – D.I. 597) | "TT" |
| Exhibits attached to the concurrently filed Li Declaration (unless otherwise noted) | "Ex. __ " |

## I.       INTRODUCTION

This is a complex patent case involving computer server virtualization technology.  Cirba currently asserts four patents, and VMware asserts three.  The case's complexity is heightened by a prior jury trial, multiple pending motions, and anticipated procedural and evidentiary disputes.

But new developments in pending PTO proceedings offer a path to simplification.  The PTO has (1) invalidated all claims of Cirba's '492 patent in IPR proceedings; (2) rejected all asserted claims of Cirba's '687 patent in reexamination proceedings; and (3) instituted PGR review on all claims of Cirba's '459 patent.  Those three patents account for 99.7% of the patent infringement damages that Cirba seeks.[1]

In light of these new developments, VMware renews its motion to stay this action in its entirety.  Despite the extensive litigation record arising out of a previous jury trial and new trial order, burdensome tasks in this complex case lie ahead.  Cirba has filed three motions, two of which seek to revisit standing issues, and VMware has filed two that are derivative of Cirba's motions.  In addition, a multitude of discovery disputes have arisen between the parties.  Still on the horizon are expert discovery, *Daubert* and dispositive motion practice, resolution of the status of Cirba's trademark claims, motions in *limine*, pretrial preparation, and trial.[2]  The PTO proceedings may render some or all of this work moot.  Statutory estoppel might apply if the PTO does not invalidate all of Cirba's asserted claims.

A stay will neither unduly prejudice Cirba nor put it at a clear tactical disadvantage.  VMware timely initiated the PTO proceedings and promptly renews its stay motion in view of new developments.  Although Cirba is seeking an injunction for the third time in this case,

---

[1] Although the PTO declined to invalidate the '367 patent in reexamination proceedings, that patent accounts for only 0.3% of the patent infringement damages that Cirba seeks.
[2] Cirba contends that Judge Stark's new trial order revived its trademark claims, despite the jury's adverse verdict and Cirba's failure to seek a new trial on those claims.  VMware disagrees.

VMware has proven in its opposition that Cirba cannot show irreparable harm and therefore undue prejudice from a stay, particularly when VMware proposes to also stay its own claims.

## II.      NATURE / STAGE OF PROCEEDINGS AND STATEMENT OF FACTS

**'742 Action**.  Cirba initially asserted two patents—the '687 and '367 patents—in its April 25, 2019 complaint and sought a preliminary injunction on the '687 patent.  (D.I. 1, 11).  Judge Stark denied that motion, expressing skepticism over the strength of Cirba's infringement showing.  (D.I. 138 at 193:25-194:4, 201:5-6.)  VMware counterclaimed for infringement of four patents on August 20, 2019.  (D.I. 150.)  Judge Stark set an expedited trial and severed VMware's counterclaims.  (D.I. 174, 194.)  At the January 2020 trial, the jury found that VMware infringed the '687 and '367 patents.  (D.I. 550.)  Post-trial, Judge Stark dismissed Inc. for lack of standing, vacated the jury's verdict, ordered a new trial, and denied Cirba's post-trial motions.  (D.I. 946.)  Judge Stark again expressed skepticism about Cirba's infringement proof.  (*Id*. at 11-12.)

On July 11, 2021, Cirba petitioned for a writ of mandamus challenging Judge Stark's standing ruling.  The Federal Circuit denied mandamus on September 22, 2021.  *In re Cirba Inc.*, No. 21-154, 2021 WL 4302979 (Fed. Cir. Sept. 22, 2021).  (D.I. 1045.)

**'272 Action**.  VMware separately sued Inc. for infringement of four additional patents in Virginia on October 21, 2019.  The Virginia case was transferred to Delaware on February 25, 2020.  Cirba then counterclaimed for infringement of the '492 and '459 patents on March 23, 2020 and May 3, 2021, respectively.  (272 Action, D.I. 75; D.I. 992.)  The Court consolidated the '742 and '272 Actions and ordered a single trial on all twelve patents.  (D.I. 946 at 18.)  The parties subsequently narrowed the asserted claims and prior art references.  (D.I. 1278 ¶ 12.)  This action currently involves Cirba's four patents and VMware's three patents.  (*See* Exs. 1-2.)

**New Developments in VMware's PTO Proceedings**.  VMware previously moved to stay this consolidated action on October 6, 2021 in view of the pending PTO proceedings on Cirba's

patents. (D.I. 1049.) Judge Stark denied the motion, noting that only the '492 patent "is the subject of an instituted *inter partes* review." (D.I. 1101.)

Since VMware's original motion, the PTO proceedings have progressed substantially. The PTO has (1) issued an FWD invalidating all claims of the '492 patent; (2) instituted PGR proceedings on all claims of the '459 patent; and (3) issued an Office Action rejecting all asserted claims of the '687 patent. These patents together account for 99.7% of the $██ million in patent damages Cirba seeks. (*See* Ex. 3 at 7-8.)

| Cirba Patent | PTO Proceeding | Claims before PTO | Status (as of Original Stay Motion) | Status (as of Renewed Stay Motion) | Damages / % of Cirba's total patent damages |
|---|---|---|---|---|---|
| '492 | IPR filed on 10/1/2020; *ex parte* reexamination filed on 4/24/2022 | All claims (1-33) | IPR instituted on 5/7/2021 (D.I. 998) | FWD rejecting all claims on 5/4/2022 (D.I. 1254); reexam ordered on 6/13/2022 (Ex. 1316) | $██M **99.7%** of total damages (Ex. 3) |
| '459 | PGR and IPRs filed on 7/6/2021 | All claims (1-63) | PGR and IPR petitions pending (D.I. 1021) | PGR instituted on all claims on 12/10/2021 (D.I. 1106); PGR FWD due by 12/20/2022; IPRs terminated | |
| '687 | *Ex parte* reexamination filed on 1/22/2021 | All asserted claims (3, 7) | Reexamination ordered on 2/24/2021 (D.I. 969); Office action rejecting claims on 10/6/2021 (D.I. 1048) | Office action rejecting all asserted claims on 7/7/2022 (D.I. 1317)[3] | |
| '367 | *Ex parte* reexamination filed on 4/22/2021 | All claims (1-19) | Reexamination ordered on 6/9/2021 (D.I. 1015) | All claims confirmed on 3/15/2022 (D.I. 1186) | $██M **0.3%** of total damages (Ex. 3) |

---

[3] "Reexamination proceedings typically conclude within two years from filing. (Ex. 25 at 2 (average reexamination pendency (filing date to certificate issue date) about 25.7 months).)

'687 patent reexam:  Within a month of Judge Stark's new trial order, VMware requested *ex parte* reexamination of all asserted claims of the '687 patent (the focus of the January 2020 trial).  The PTO ordered reexamination on February 24, 2021.  (D.I. 969.)

Cirba has repeatedly sought to delay these reexamination proceedings through meritless motions in the PTO and a district court complaint.[4]  It petitioned to terminate the reexamination, which the PTO denied on September 20, 2021.  (Ex. 4.)  It sought reconsideration, which the PTO denied on February 10, 2022.  (Ex. 5.)  It also has requested multiple extensions of its responses to the PTO's Office Actions.  (Exs. 6, 7.)

Cirba also sued the PTO in Virginia for judicial review of the PTO's reexamination grant. *Cirba Inc. v. USPTO*, No. 22-CV-403, D.I. 1 (E.D. Va. Apr. 8, 2022).  (Ex. 8.)  The PTO's Solicitor's Office opposed Cirba's lawsuit on the PTO's behalf.  The Virginia court quickly dismissed Cirba's complaint for lack of subject matter jurisdiction in August 2022.  (Ex. 9.)

On July 7, 2022, the PTO issued an Office Action again rejecting asserted claims 3 and 7 of the '687 patent.[5]  (D.I. 1317.)  Cirba's response is due on October 7, 2022.

'492 patent IPR and reexam:  On October 1, 2020, only seven months after Cirba asserted the '492 patent, VMware filed an IPR petition on all its claims.  (No. 20-272, D.I. 95.)  The PTAB instituted the IPR on May 7, 2021 and issued an FWD on May 4, 2022 rejecting all claims on three grounds.  (D.I. 1254.)  Cirba requested rehearing on June 3, 2022.  (D.I. 1316.)

On April 24, 2022, VMware also requested *ex parte* reexamination of the '492 patent. The PTO ordered reexamination of all claims on June 13, 2021.  (*Id.*)

---

[4] Four months after VMware filed its reexamination request, and three months after the PTO initiated reexamination, Cirba sought to terminate it.  Cirba claimed prejudice from its non-receipt of a portion of the request (one prior art reference) via U.S. mail—even though VMware's reexamination papers included another copy, and Cirba also had a copy from the litigation.
[5] The PTO withdrew its December 20, 2021 Office Action in light of Cirba's termination petition.

’459 patent PGR:  On July 6, 2021, just a month after Cirba asserted the ’459 patent, VMware filed a PGR petition and two IPR petitions, each seeking to invalidate all claims of that patent.  (D.I. 1021.)  The PTAB instituted PGR proceedings on December 10, 2021.  (D.I. 1106.)  The PTAB terminated the IPRs in view of the PGR institution at VMware's request.

’367 patent reexam:  On April 22, 2021, VMware sought *ex parte* reexamination of the ’367 patent.  (D.I. 1015.)  The PTO confirmed all claims on March 15, 2022.  (D.I. 1186.)

**District Court Litigation**.  Although claim construction and fact discovery have ended, substantial work in this complex case remains.  Nine discovery disputes that the parties previously identified to Judge Noreika remain to be briefed and heard by the Court.  (D.I. 1359 at Ex. 13.)  Cirba has belatedly sought to supplement its final infringement contentions, arguing that “[s]ubstantive discovery across all [VMware] product versions is still missing.”  (D.I. 1325; D.I. 1354 at 2 n1.)  It also has sought to reopen fact discovery by seeking “core technical documents and source code” relating to a newly released VMware product version.  (Ex. 19.)

Expert discovery—which will involve reports and depositions from at least seven different experts—does not close until November 4, 2022.  (D.I. 1278 ¶ 8(g)(iv).)  *Daubert* motions and potential summary judgment motions are not due until November 11, 2022.  (*Id*. ¶¶ 8(g)(iii), 14.)  Trial—originally set for three weeks and currently scheduled for two weeks—is not until April 2023.  (D.I. 1003 ¶ 23; D.I. 1278 ¶ 20.)

Cirba also has burdened this Court with other pending motions, including two revisiting Inc.’s purported standing.  (D.I. 1238 (motion for injunctive relief), D.I. 1327 (motion to update case caption), D.I. 1325 (motion to supplement infringement contentions).)  In its third motion for injunctive relief in this case, Cirba has sought yet another reconsideration of Judge Stark’s refusal to reverse his ruling that Inc. lacks standing.  (D.I. 1239 at 12-17.)  Cirba also attempts to revisit

Judge Stark's new trial order by seeking to reinstate the jury verdict.  (*Id*. at 17-18.)

In its motion to update the case caption, Cirba aims to evade Judge Stark's ruling that only the non-practicing entity IP had standing and to present to jurors the same prejudicial evidence that Judge Stark cited in his new trial order.  (D.I. 1351.)  In its motion for leave, Cirba seeks to belatedly supplement its final infringement contentions relating to VMware's product changes—despite having been on notice of those changes since March 2020.  (D.I. 1341.)

VMware itself has filed two motions derivative of Cirba's motions.  VMware has moved to strike Cirba's motion for injunctive relief (D.I. 1270), and it has requested leave to file a sur-reply to respond to misstatements in Cirba's motion to supplement its contentions (D.I. 1359).

Cirba has more in store for the Court.  Cirba still incorrectly asserts that its trademarks claims remain to be adjudicated.  *Infra*, § III.A.4.  In recent correspondence, Cirba also has contended that VMware is "estopped from asserting most of its invalidity arguments" due to the '492 IPR and '459 PGR.  (Ex. 11.)  Cirba has demanded that VMware withdraw its invalidity arguments even though (1) Cirba continues to assert the invalidated '492 patent, and (2) any purported estoppel from the '459 PGR cannot attach until the PTO issues an FWD.  (*See id.*)

## III.   ARGUMENT

A court has broad discretion to stay proceedings incident to its power to control its own docket.  *See Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019).  Courts weigh three factors: "(1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."  *Id.* (citation omitted).  A court also evaluates "whether a stay will reduce the burdens of litigation on the parties and the court."  *Murata Mach. USA v. Daifuku Co., Ltd*., 830 F.3d 1357, 1362 (Fed. Cir. 2016) (internal citation omitted); *see also TC Tech. LLC v. Sprint Corp.*, No. 16-153-WCB,

2021 WL 4521045, at *2-4 (D. Del. Oct. 4, 2021) (Bryson, J.) (discussing factors).

All factors favor a stay here. The PTO proceedings may completely resolve the issues involving three of the four Cirba patents. These patents account for 99.7% of Cirba's claimed patent infringement damages. Regardless of their outcomes, the PTO proceedings will likely simplify or affect pending motions, expert discovery, *Daubert* and dispositive motion practice, damages, pre-trial preparation, and the trial. Trying this case on patents that may well ultimately be finally found invalid would waste party and judicial resources.

## A.    A Stay Will Simplify Issues for Trial

This is a complicated case involving complicated patents. (D.I. 946 at 16 ("The Court recognized that the consolidated . . . trial will be challenging for the parties, the Court, and especially the jury.").) Despite narrowing pursuant to the Scheduling Order (D.I. 1278 ¶ 12), the case still involves 7 asserted patents, 30 asserted patent claims, and 21 invalidity grounds. (Exs. 1, 2, 12, 13.) The volume of motions and disputes currently pending before the Court underscores the case's complexity. *Supra*, § II.

Simplification is the "most important factor" in deciding whether to stay. *TC Tech.*, 2021 WL 4521045, at *4. Courts frequently grant renewed motions to stay when new developments in PTO proceedings since the original motions result in rejections of patent claims or institution of IPRs/PGRs. *See, e.g.*, *Boston Sci. Corp. v. Cook Grp. Inc.*, No. 15-980-LPS-CJB, D.I. 304 (D. Del. Aug. 16, 2017) (granting renewed stay motion due to IPR institution, despite commencement of expert discovery) (Ex. 14); *Speyside Med., LLC v. Medtronic CoreValve, LLC*, No. 20-361-LPS-CJB (D. Del. Sept. 30, 2021) (granting renewed stay motion in its entirety even where an IPR was instituted on only three of five asserted patents) (Ex. 15); *Gen. Elec. Co. v. Vibrant Media, Inc.*, No. 12-526-LPS, D.I. 91 (D. Del. Dec. 4, 2013) (granting renewed stay motion due to IPR institution) (Ex. 16); *Drink Tanks Corp. v. GrowlerWerks, Inc.*, No. 16-CV-410, 2017 WL

2633389, at *5-6 (D. Or. June 19, 2017) (same); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-CV-05501, 2015 WL 435457, at *3-5 (N.D. Cal. Feb. 2, 2015) (granting third stay motion after PTO issued two IPR decisions and instituted another IPR); *Vivint, Inc. v. Alarm.com Inc.*, 351 F. Supp. 3d 1341, 1345, 1356-57 (D. Utah 2018) (granting a renewed stay motion after IPR institution and a third stay motion as to rejected claims following final office action).

Given the rocky footing on which Cirba's patents now stand, staying this case in its entirety has a strong potential to simplify issues and reduce case complexity. The PTO has already (1) invalidated the '492 patent; (2) issued an Office Action rejecting the asserted claims of the '687 patent; and (3) instituted PGR on the '459 patent. The PTO will likely find all of Cirba's asserted claims for these patents unpatentable or require their narrowing.

### 1.      The '492 IPR will substantially simplify the case

The PTO has already found all claims of the '492 patent unpatentable on two grounds. (D.I. 1254-1). Although Cirba has requested a rehearing and may appeal to the Federal Circuit, a stay is still warranted. (Ex. 17 at 1 (affirming PTAB decisions in 72.76% case).) A final finding of invalidity would render unnecessary the resources expended on litigating the claims and defenses related to that patent. *See AgroFresh Inc. v. Essentiv LLC*, No. 16-662-MN, 2019 WL 2327654, at *2 (D. Del. May 31, 2019) (finding "the potential for simplification of the issues in this case [was] substantial" due to PTO's invalidity decision). Proceeding without a stay risks inconsistent judicial rulings on the same issue and the prospect of revising a final judgment.

### 2.      The '687 reexamination will substantially simplify the case

For the '687 patent under reexamination, the "prior art presented to the court at trial will have been first considered by the PTO with its particular expertise" and "the record of the reexamination [will] reduc[e] the complexity and the length of the litigation." *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984, at *4 (D. Del. July 2, 2013).

Here, despite Cirba's attempts to delay the reexamination, the PTO has rejected the two claims asserted at the January 2020 trial (claims 3 and 7) on seven separate grounds (D.I. 1317). The PTO's statistics show that over 79% of *ex parte* reexaminations result in claim cancellation or amendment.  (Ex. 25 at 2.)  Judge Bryson's decision in *TC Technology* recognized the benefit of staying a case pending reexamination less than two months before trial where the PTO's first office action rejected the asserted claims.  As he explained, "the court must take as true what the examiner has determined with respect to the pending *ex parte* reexamination[s]."  *TC Tech.*, 2021 WL 4521045, at *6; *see also Performance Sols. LLC v. Sea Ties, LLC*, No. CV 20-797, 2022 WL 501389 at *1, 3 (M.D. La. Feb. 18, 2022) (granting renewed stay motion as the PTO rejected asserted claims in reexamination).

Substantive amendment of any '687 patent claims also will give rise to intervening rights under 35 U.S.C. § 307(b) and eliminate any claim for past damages.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1339 (Fed. Cir. 2013).  This includes the ▮▮▮▮▮ that Cirba seeks for alleged damages.  Invalidation of the '687 patent also will likely moot Cirba's pending motions (D.I. 1238 and 1327) and future proceedings relating to Inc.'s purported standing.

### 3.     The '459 PGR will substantially simplify the case

The PTO has instituted PGR for the '459 patent, finding "it is more likely than not that the challenged claims of the '459 patent are unpatentable based on lack of adequate written description."  (D.I. 1106 Ex. A at 24; Ex. 18 at 11 (83% of final written decisions finding claims unpatentable).)  The PTO is expected to issue an FWD by December 10, 2022.  *Supra*, § II. Given the strong likelihood that PTO proceedings will result in binding determinations of invalidity, and the substantial public interest in avoiding wasted efforts, courts have been "nearly uniform in granting motions to stay proceedings in the trial court after the PTAB has instituted [review]."  *NFC Tech. LLC v. HTC Am., Inc.*, No. 13-CV-1058-WCB, 2015 WL 1069111, at *6

(E.D. Tex. Mar. 11, 2015).  Statutory estoppel also might come into play.  *See* 35 U.S.C. § 315(e).

### 4.      The '367 reexamination result does not militate against a stay

Cirba's claims involving the '367 patent—the lone patent to survive post-grant

proceedings to date—do not weigh against a stay.  That patent accounts for 0.3% of the patent

damages Cirba seeks.  If no other patent survives, a trial becomes unlikely in view of the low

damages sought.  Cirba has never sought an injunction regarding the '367 patent, which further

favors a stay.  (*See* D.I. 12; D.I. 605; D.I. 1239; Ex. 20 at 1 (limiting injunction to '687 patent).)

Regardless, PTO proceedings need not dispose of a case entirely to simplify the issues and

warrant a stay.  "Whatever outcome occurs [in the PTO proceedings], there is the potential for the

simplification of issues for trial, either by reducing the number of claims at issue, confirming the

validity of the surviving claims, or narrowing the scope of a modified claim."  *Ever Win Int'l*

*Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 505-06 (D. Del. 2012); *see also Nuance*

*Commc'ns, Inc. v. MModal LLC*, No. 17-1484-MN, D.I. 226 at 27:1-28:4 (D. Del. Apr. 11, 2019)

(while "maximum simplification" was not possible, "even if just one [claim] does not survive, the

case [would] be somewhat simplified") (Ex. 21); *Ethicon*, 2019 WL 1276029, at *2 ("substantial

simplification is almost certain" despite one denied IPR petition).[6]

### B.      The Most Burdensome Tasks in this Complex Case Remain Ahead

Stays are favored even when significant discovery has taken place if "the most

burdensome task is yet to come."  *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed.

Cir. 2015) (invalidity determination from the PTAB "will spare the parties and the district court

the expense of any further litigation, including a trial"); *Knauf Insulation, LLC v. Johns Manville*

---

[6] Nor do Cirba's purported trademark claims weigh against a stay, as they are not within the scope of the new trial.  The jury rejected those claims (D.I. 550), Cirba did not seek a new trial on them (D.I. 605), and the post-trial Scheduling Order (D.I. 1003) did not mention them.

*Corp.*, No. 15-CV-00111, 2020 WL 4261814, at *8 (S.D. Ind. July 24, 2020) ("Courts frequently issue stays . . . even where significant, costly discovery has already taken place, but where substantially no trial preparations have been carried out.") (internal citation omitted).

As this case will require substantial work before the lengthy trial, the stage of proceedings weighs in favor of a stay.  Although claim construction and fact discovery have ended since the original stay motion, the parties have raised nine discovery disputes that are yet to be briefed and heard.  *Supra*, § II.  Cirba also has belatedly sought to supplement its final infringement contentions, arguing that "[s]ubstantive discovery across all [VMware] product versions is still missing."  (*Id.*)  Because Cirba is still pressing its long-resolved trademark claims, the Court likely will need to resolve the parties' dispute on that issue too before trial.

The parties also are in the midst of expert discovery involving at least four technical experts and three damages experts.  Expert discovery will not close until November 4, 2022.  (*Id.*)  *Daubert* motions and potential summary judgment motions—which will require voluminous briefing in a case of this complexity—are not due until November 11, 2022.  (*Id.*)  Filing those potentially unnecessary motions and deciding the issues they present—in addition to the numerous pending motions before this Court—would not promote judicial economy, in view of the high likelihood that the PTO proceedings will moot some or all of these issues.

 "[T]he fact that significant resources have been expended to date does not in and of itself justify continued expenditure of significant additional resources."  *Leading Tech. Composites, Inc. v. MV2, LLC*, No. CCB-19-1256, 2020 WL 7489019, at *6 (D. Md. Dec. 21, 2020) (granting stay to avoid litigating "issues of infringement and expert testimony" and denying without prejudice to renew five pending summary judgement and *Daubert* motions); *see also AgroFresh Inc.*, 2019 WL 2327654, at *2 (although "fact and expert discovery [were] complete[d] and

summary judgment motions [had] been filed. . . . the issues involved in summary judgment and for trial will be simplified by a stay"). Were this case to go forward before the PTO proceedings are resolved and their concomitant streamlining benefits realized, the Court's and the parties' resources would be wasted on voluminous and likely unnecessary expert reports, motions involving discovery disputes, standing issues, summary judgment and *Daubert* motions, trademark claims disputes, evidentiary matters, trial preparation, and even trial.

Under similar circumstances, courts have stayed litigation pending PTO proceedings to promote judicial economy, even where the litigation is advanced. *See, e.g.*, *Ethicon*, 2019 WL 1276029, at *2 (granting stay after claim construction and fact discovery were complete and expert discovery was nearly done); *Smartflash*, 621 Fed. App'x at 1005 (favoring stay where court had heard claim construction, dispositive motions, and *Daubert* challenges, but case had yet to go to trial); *PACT XPP Schweiz AG v. Intel Corp.*, No. 19-1006-JDW, 2020 WL 13119705, at *2 (D. Del. Nov. 5, 2020) (granting stay as parties "still need[ed] to prepare expert reports, file and respond to pretrial motions, prepare for trial, and try the case"); *SurfCast, Inc. v. Microsoft Corp.*, No. 12-CV-333, 2014 WL 6388489, at *2 (D. Me. Nov. 14, 2014) (granting stay despite completion of discovery and summary judgment briefing, as "a large volume of work remain[ed] before trial including the resolution of the pending summary judgment, *Daubert,* and other motions, as well as likely motions *in limine* and other pre-trial proceedings"); *FastVDO LLC v. AT&T Mobility LLC*, No. 16–CV-00385, 2017 WL 2323003, at *3 (S.D. Cal. Jan. 23, 2017) (granting stay despite advanced stage of litigation, as "completion of expert discovery; the filing and resolution of motions for summary judgment, *Daubert* motions, and motions in limine; pre-trial preparation; . . . and the filing and resolution of post-trial motions still remained ahead").

### C.     Cirba Will Not Suffer Undue Prejudice from a Stay

In weighing undue prejudice, courts consider (1) the timing of the request for review;

(2) the timing of the stay request; (3) the status of the review proceedings; and (4) the relationship

between the parties.  *Ethicon*, 2019 WL 1276029, at *2.  The "mere potential for delay [pending

PTO review] . . . is insufficient to establish undue prejudice."  *Neste Oil*, 2013 WL 3353984, at

*2; *accord BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-133-GMS, 2013 WL 2462105, at *1 n.1

(D. Del. June 6, 2013).  All of these considerations favor a stay.

### 1.      VMware timely initiated the PTO proceedings

"The more diligent a defendant is in seeking [PTO petitions], the less likely it is that the

non-movant will be prejudiced by a stay or that the court will find the defendant's filing of the

[PTO] petition to be a dilatory tactic."  *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings,*

*Inc.*, No. 12-1107-GMS, 2014 WL 1369721, at *2 (D. Del. Apr. 7, 2014).

Here, VMware diligently filed its petitions for the '459 patent and the '492 patent within

two months and seven months of Cirba's assertions, respectively.  *See* 35 U.S.C. §§ 311(c),

321(c); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, at *6

(D. Del. Aug. 21, 2019) (six month delay after filing of complaint "not unreasonable" in light of

"the complexity entailed in seeking *inter partes* review"); *Semiconductor Energy Lab. Co., Ltd. v.*

*Chimei Innolux Corp.*, No. 12-CV-0021, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) (no

prejudice where IPR filed ten months after complaint and three to four months after receiving

infringement contentions).

VMware's reexamination request for the '687 patent also was timely.  Cirba sought and

obtained an expedited January 2020 trial on those patents just nine months after filing its

Complaint.  In view of the extraordinarily expedited trial schedule, the PTAB's *Fintiv* decision

made it impractical for VMware to pursue IPR challenges before trial.  *See Apple Inc. v. Fintiv,*

*Inc.*, IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) (precedential) (PTAB has discretion not

to institute IPR for many reasons, including if parallel court proceedings are more advanced than

IPR).  (Ex. 22.)  After the Court ordered a new trial, VMware filed its reexamination request rapidly—within one month.  *See Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 5:10-CV-2051, 2012 WL 1232187, at *3 (N.D. Cal. Apr. 12, 2012) (no dilatory motive when defendant requested reexamination nearly two years after litigation began).  Any delay in the '687 reexamination is of Cirba's own making; it has repeatedly sought to obstruct the reexamination through meritless motions before the PTO and a district court.  *Supra*, § II.

### 2.    VMware timely filed its motion and promptly renewed it

Nor did VMware delay seeking a stay.  VMware timely brought its original stay motion after the PTO instituted the majority of its proceedings (*i.e.*, on the '687, '367, and '492 patents), after Cirba waived its preliminary response to the '459 PGR petition, and the same day that the PTO rejected the asserted claims of the '687 patent.  (D.I. 1048.)

With this motion, VMware also is promptly renewing its stay request in view of new developments in the PTO proceedings.  This motion is (1) only one month after Cirba's complaint against the PTO was dismissed and the PTO issued an Office Action in the '687 reexamination proceedings; (2) four months after the PTO invalidated the '492 patent; and (3) two weeks after the PTO's order setting oral argument for the '459 PGR (Ex. 10).  *Supra*, § II.  *See Bonutti*, 2014 WL 1369721, at *3, 6 (granting stay as request was "not an inappropriate litigation tactic").

### 3.    The status of the PTO proceedings favors a stay

The PTO proceedings have progressed substantially.  The PTO has (1) issued an FWD invalidating all claims of the '492 patent, (2) instituted a PGR proceeding on the '459 patent, and (3) issued an Office Action rejecting the asserted claims of the '687 patent.  *AgroFresh*, 2019 WL 2327654, at *3 (issuance of FWD favored stay).

Although Judge Stark denied VMware's original stay motion, circumstances have changed.  At the current juncture, the continuation of this case would result in VMware litigating

patent claims that have already been invalidated or likely will be invalidated. This result would not be conducive to judicial economy. And VMware will suffer needless prejudice if it is forced to litigate this case now. Given the unique procedural posture of this case, the parties and the Court should not be required to continue to undertake expensive patent litigation when the outcome of this action may already have been decided by the PTO. *See Huvepharma Eood v. Associated Brit. Foods, PLC*, No. 18-129-RGA, 2019 WL 3802472, at *1 (D. Del. Aug. 13, 2019) (noting both sides would benefit from stay and lower litigation costs).

### 4. Cirba would not be unduly prejudiced

Cirba cannot show undue prejudice beyond what any patentee experiences when a suit is stayed pending PTO proceedings.[7]

**Courts have thrice rejected Cirba's claims of harm**. Courts frequently reject plaintiffs' prejudice arguments where an injunction request was denied. *See, e.g.*, *TeleSign Corp. v. Twilio, Inc.*, No. 15-CV-3240, 2016 WL 6821111, at *5 (C.D. Cal. Mar. 9, 2016) (granting stay where plaintiff offered "identical evidence that the Court found less than compelling when considering it at the preliminary injunction stage"); *Ceiva Logic v. Frame Media Inc.*, No. 08-CV-636, 2009 WL 7844245, at *2 (C.D. Cal. June 9, 2009), *aff'd*, 374 F. App'x 959 (Fed. Cir. 2010) (denial of preliminary injunction favored a stay); *Thermogenesis Corp. v. Origen Biomedical, Inc.*, No. 13-CV-2619, 2015 WL 1291390, at *3 (E.D. Cal. Mar. 20, 2015) (same); *Slide Fire Sols. v. Bump Fire Sys.*, No. 14-CV-3358, 2016 WL 3355141, at *2 (N.D. Tex. Apr. 21, 2016) (same).

Cirba's prejudice arguments should be rejected here too. Cirba has thrice claimed that, absent an injunction, it would be irreparably harmed. Courts have thrice rejected those claims.

When seeking a preliminary injunction against VMware in May 2019, Cirba claimed it

---

[7] Cirba's failures to show irreparable harm in the injunction context (*see* D.I. 1318) apply equally to this stay motion and establish that a stay will not be prejudicial.

15

risked ████████████████████████████ (D.I. 15 ¶ 14.)  Cirba's president

lamented that the company would ██████████████████████████ (D.I.

138 at 167:10-17, 180:14-22.)  Judge Stark denied Cirba's motion, noting that in addition to the

weakness of Cirba's infringement showing, he was not persuaded that Cirba would "not survive

without the relief sought" or "suffer some other form of irreparable harm." (*Id*. at 193:25–194:1,

196:18-23.)  Cirba also failed to show that "any single customer has left plaintiff due to the

accused functionality." (*Id*. at 196:24-197:3.)  Cirba later sheepishly admitted that ████████

████████████████████████████ (D.I. 616 ¶ 47.)

    Then, when seeking a permanent injunction in March 2020, Cirba claimed that

"VMware's launch of [a new product with] DRS 2.0 . . . ████████████████████."

(D.I. 605 at 1; *see also* D.I. 679 at 8 ("Absent an injunction, . . . VMware can delay through an

expensive and time-consuming appeal . . . [,] ████████████ in the meantime.").)

Denying Cirba's motion, Judge Stark observed that "it [was] striking to again hear that . . .

employees are going to be fired, the company is not going to exist." (D.I. 758 at 65:3-13.)

    In May 2021, Cirba claimed that Turbonomic's merger with IBM ████████

████████████████████ (D.I. 1319, Ex. 22 at 3.)  Cirba sought to enjoin the

merger, alleging it would be ████████ and cause irreparable harm. (*Id*. Ex. 22 at 3, 16, 33,

Ex. 23 ¶ 6.)  The Chancery Court denied the injunction. (*Id*. Ex. 24 at 24:17-21.)  After the

merger occurred, however, Cirba quickly repudiated those allegations. (*Id*. Ex. 15 at 324:12–

325:9 (████████████████████████████).)

    **<u>Cirba's latest claims of harm fare no better</u>**.  Any contention Cirba might make that its

pending injunction motion demonstrates imminent irreparable harm should be given no weight.

*Ceiva Logic*, 2009 WL 7844245, at *2 ("request for a permanent injunction [was] not controlling"

due to denial of preliminary injunction).

As detailed in VMware's opposition to Cirba's third injunction motion, although Cirba claims ████████████████ (D.I. 1239 at 19), ███████████████████████ ██████. (D.I. 1318 at 17.)  Although Cirba ██████████████████████████ ██████████████████████████ (D.I. 1243 ¶ 10), ████████████████████ ████████████████████████████. (D.I. 1318 at 17.)  Cirba claims ██████████████ (D.I. 1239 at 19), but it is *hiring*.  (D.I. 1318 at 17.)  And while Cirba alleges its future is ██████████ (D.I. 1239 at 19), its sales have ██████████ (D.I. 1318 at 17.)  *See Kirsch Rsch. & Dev. v. GAF Materials, LLC*, No. 20-CV-13683, 2021 WL 2434082, at *3 (D.N.J. June 15, 2021) (finding a stay "unlikely to cause any prejudice" as speculation of harm "insufficient to establish true risk of market share loss").[8]  Cirba cannot credibly argue that it would not survive if this case were stayed for the duration of the PTO proceedings.

**IP and VMware are not competitors**.  Alleged competition between the parties does not suffice to defeat a stay motion.  *See Neste Oil*, 2013 WL 3353984, at *1, 5 (granting stay requested by "competing renewable biodiesel fuel" manufacturers); *BodyMedia*, 2013 WL 2462105 (granting stay requested by "direct competitor").  Even if otherwise, IP was the only party with constitutional and statutory standing when the '687, '367, and '492 patents were asserted.  As Judge Stark has already determined, IP and VMware do not compete.  (D.I. 946 at 8 ("IP does not sell or offer for sale products and services . . . .  [At the trial, it] would have been difficult (if even possible) for IP to have fairly portrayed itself as a competitor of VMWARE.").)  Because Inc. lacks standing to sue, its alleged competition with VMware is irrelevant.

---

[8] Cirba has also admitted "enter[ing] [into] an agreement [with a litigation funder] after it obtained [the] verdict against VMware" to fund the ongoing litigation.  (D.I. 1051, Ex. 8 at 1.)

**<u>Cirba has other competitors</u>**.  Even assuming *arguendo* that it were relevant, any competition with VMware cannot defeat a stay for yet another reason: Cirba has other competitors.  Cirba also sued Turbonomic for infringement of the '687 patent and dismissed the case with prejudice.  (Complaint and Stipulation of Dismissal, *Cirba Inc. v. Turbonomic, Inc.*, No. 20-480 (D. Del.), D.I. 1, D.I. 15 (Exs. 23, 24); *see* D.I. 1318 at 3.)  Having effectively acquiesced to Turbonomic's continuing infringement of the '687 patent, Cirba cannot plausibly argue that VMware's alleged infringement during the stay period would unduly prejudice it.

Undue prejudice is less likely when there are multiple market participants, particularly where, as here, there is no evidence supporting Cirba's claim that the lost business is attributable to VMware.  *See Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 768 (E.D. Pa. 2014) ("[T]he multiple competitors in the field belie the assertion that [plaintiff] will experience undue prejudice because of loss of market value."); *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-662-GMS, 2013 WL 424754, at *3 (D. Del. Jan. 31, 2013) (same).

**<u>Cirba's litigation conduct belies any harm from ongoing infringement</u>**.  Cirba's litigation conduct further undermines any argument that a stay would harm it, even assuming VMware's alleged ongoing infringement.  Cirba waited nine years to sue VMware, undercutting any claims of prejudice.  (TT at 1872:9-17.)  *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) (delay in bringing suit weighed against stay).

Although Cirba moved for a preliminary injunction against VMware's "vROps" product (D.I. 12), it did not appeal the Court's denial of that injunction to the Federal Circuit.  When Cirba then prevailed on the '687 and '367 patents at the first trial, it did not seek a permanent injunction against the products found to infringe.  It sought instead a permanent injunction against a non-existent product that had not even been accused.  (D.I. 714 at 3.)  Nor did Cirba try to

appeal the denial of its permanent injunction to the Federal Circuit. Cirba's failure to pursue these remedies is a tacit admission that monetary damages are sufficient to compensate any purported harm. *See MiiCs & Partners v. Toshiba Corp*., No. 14-803-RGA, 2015 WL 9854845, at *1 (D. Del. Aug. 11, 2015) (granting stay despite injunction requests, as plaintiffs were "realistically looking only for monetary damages").

Cirba also has never sought to expedite the retrial on its patents. To the contrary, in December 2020, Cirba persuaded the Court to consolidate the parties' patents into a single trial (D.I. 639, 946) and stipulated to the current April 2023 trial date (D.I. 962 at 20). Cirba can hardly complain that a litigation stay would unduly prejudice it now, particularly when VMware proposes to stay the entire action, including its counterclaims against Cirba.

### D.   A Stay Will Reduce Burden on the Parties and the Court

The final factor—reducing the burden on the parties and the Court—overwhelmingly favors a stay. Cirba has acknowledged that the parties will incur "unnecessary costs" and "waste[] resources" by continuing to litigate patents the PTO already invalidated. (Ex. 11 at 5.) It makes no sense to continue litigating other patents the PTO likely will invalidate soon.

The high risk of inconsistent rulings absent a stay strongly favors entering one. *See IOENGINE*, 2019 WL 3943058, at *10 (stay would "reduce[] what otherwise could be duplication of effort and possibly inconsistent results between the administrative agency and this Court"). For example, if Cirba succeeds in defeating VMware's validity defenses at the second trial, but the PTO later invalidates claims, the inconsistent determinations might require that the Court vacate the verdict and hold a third trial. *See Translogic Tech.. v. Hitachi, Ltd*., 250 Fed. App'x 988 (Fed. Cir. 2007) (vacating judgment due to affirmance of invalidity on reexamination). This would require that the parties and the Court re-do the work necessary to prepare for trial (including expert discovery, dispositive motions, and pretrial preparations) yet again.

The PTO proceedings also are likely to moot the numerous pending motions. These motions involve not just discovery issues, but complicated issues relating to Cirba's attempts to re-litigate Inc.'s purported standing; revisit Judge Stark's new trial order; reinstate the jury verdict; re-introduce evidence that Judge Stark previously deemed prejudicial; change the case caption to "fix" Inc.'s standing; and supplement its final infringement contentions.

This action should be stayed in its entirety until the conclusion of the PTO proceedings. To the extent Cirba proposes a partial stay (*e.g.*, only on the '492 patent), the Court should reject such a request. Cirba previously persuaded Judge Stark to consolidate the '742 and '272 Actions to avoid "inconsistent verdicts" and "double recovery" in damages and to reduce "time and expense for both the parties and the Court." (D.I. 640 at 7; *see also* D.I. 946 at 14-15.) *See PACT*, 2020 WL 13119705, at *2 (staying entire case and rejecting piecemeal trials). A trial on VMware's patents may ultimately prove unnecessary regardless. For example, if Cirba is unsuccessful in the PTO proceedings, that might cause VMware to reassess whether it makes business sense to continue pursuing Cirba for infringing VMware's patents.

## IV.     CONCLUSION

Forcing complex pretrial and trial proceedings with respect to patents that are already invalidated or nearly certain to be invalidated would be highly prejudicial and wasteful. By contrast, Cirba will not be prejudiced by a stay. To promote judicial economy, VMware asks that the Court administratively stay this action in its entirety, including all pending motions, until the PTO proceedings are finally resolved.

Dated: September 9, 2022

OF COUNSEL:
Arturo J. González
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
agonzalez@mofo.com
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 16, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

**BY E-MAIL**

Kenneth L. Dorsney
Cortlan S. Hitch
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
kdorsney@morrisjames.com
chitch@morrisjames.com

Gary J. Toman
Weinberg Wheeler
Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
gtoman@wwhgd.com

Paul D. Clement
Andrew C. Lawrence
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
andrew.lawrence@clementmurphy.com

Julie M.K. Siegal
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
julie.siegal@kirkland.com

Courtland L. Reichman
Shawna L. Ballard
Jennifer Estremera
Michael G. Flanigan
Kate Falkenstien
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065

Christine E. Lehman
Adam Adler
Connor S. Houghton
Aisha Mahmood Haley
Brian C. Baran
Reichman Jorgensen Lehman & Feldberg LLP
1909 K St, NW, Suite 800
Washington, DC 20006

Sarah O. Jorgensen
Reichman Jorgensen Lehman & Feldberg LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309

Jaime F. Cardenas-Navia
Wesley Lanier White
Khue V. Hoang
Peter T. Mastroianni
Reichman Jorgensen Lehman & Feldberg LLP
750 Third Avenue, Suite 2400
New York, NY 10017

RJ_densify@reichmanjorgensen.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/  Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*