## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a/ DENSIFY)
and CIRBA IP, INC.,

                        Plaintiffs,

        v.

VMWARE, INC.,

                        Defendant.

Civil Action No. 1:19-cv-00742-GBW

**JURY TRIAL DEMANDED**

███████████████████

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

REDACTED VERSION

## OPENING BRIEF IN SUPPORT OF DENSIFY'S
## MOTION FOR SUMMARY JUDGMENT #2 OF
## NO INEQUITABLE CONDUCT OR UNCLEAN HANDS

Kenneth L. Dorsney (#3726)
kdorsney@morrisjames.com
Cortlan S. Hitch (#6720)
chitch@morrisjames.com
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

**ATTORNEYS FOR CIRBA INC.
(D/B/A DENSIFY)**

Dated: November 22, 2022

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................... 1

II.   NATURE AND STAGE OF PROCEEDINGS ....................................................... 2

III.  SUMMARY OF ARGUMENT ............................................................................... 3

IV.  STATEMENT OF FACTS ...................................................................................... 3

    A.   The '687 and '367 Patents ............................................................................. 4

    B.   The '492 and '459 Patents ............................................................................. 5

    C.   Densify Upheld Its Duty Of Candor .............................................................. 6

V.   ARGUMENT ........................................................................................................... 8

VI.  CONCLUSION ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*1st Media, LLC v. Elec. Arts, Inc.*,
    694 F.3d 1367 (Fed. Cir. 2012)...................................................................14, 15

*Greatbatch Ltd. v. AVX Corp.*,
    No. CV 13-723-LPS, 2015 WL 9171042 (D. Del. Dec. 11, 2015)....................10, 14

*Hebert v. Lisle Corp.*,
    99 F.3d 1109 (Fed. Cir. 1996)....................................................... *passim*

*Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*,
    869 F.3d 1336 (Fed. Cir. 2017)...............................................................10

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
    863 F.2d 867 (Fed. Cir. 1988)................................................................14

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013)............................................................9, 14

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
    695 F.3d 1285 (Fed. Cir. 2012)........................................................9, 12, 14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000).............................................................................9

*In re Rosuvastatin Calcium Patent Litig.*,
    703 F.3d 511 (Fed. Cir. 2012)..................................................................9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)..................................................... *passim*

*Therma-Tru Corp. v. Peachtree Doors Inc.*,
    44 F.3d 988 (Fed. Cir. 1995)..................................................................13

*W. Plastics, Inc. v. DuBose Strapping, Inc.*,
    No. 2021-1371, 2022 WL 576218 (Fed. Cir. Feb. 25, 2022) .................................10

**Rules**

Fed. R. Civ. P. 56(a) .............................................................................9

Cirba Inc. (d/b/a Densify) ("Densify") moves for summary judgment as to VMware, Inc's ("VMware's") inequitable conduct and unclean hands defenses.[1]

## I.   __INTRODUCTION__

The *en banc* Federal Circuit once called the remedy for inequitable conduct the "atomic bomb" of patent law. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011). Unlike other defenses, it cannot be cured by reissue and reexamination and can spread from one patent to its relatives. Because of the potential for sweeping relief, inequitable conduct enjoyed many years in the limelight of patent law—"appearing in nearly every patent suit," "cluttering up the patent system." *Id.* at 1289. Allowing legally insufficient inequitable conduct claims to move forward unfairly "cast[s] a dark cloud over the patent's validity," and, "[b]ecause the doctrine focuses on the moral turpitude of the patentee with ruinous consequences for the reputation of his patent attorney, it discourages settlement and deflects attention from the merits of validity and infringement issues." *Id.* at 1288. Runaway claims of inequitable conduct are well-recognized to increase the complexity, length, and cost of patent litigation, *id.*, requiring the Court to have a separate bench trial and issue findings of facts and conclusions of law.

The Federal Circuit attempted to rein in the abuse of the inequitable conduct allegations by establishing a high standard for intent. Unless intent to deceive the Patent Office is the *single most reasonable inference* to be drawn from the evidence in a case, there can be no inequitable conduct

---

[1] Densify understands that by virtue of the Court's Order (D.I. 1396), Cirba IP, Inc. remains in the case caption. As the Court noted, the case caption changes are typical ministerial, *id.* at 7, and parties will likely "need to label and clarify each Cirba entity, e.g., Inc., IP, and post-amalgamated Cirba Inc., to both the jury and the Court throughout the trial," *id.* at 11. Cirba IP, Inc. no longer exists as an independent company. Instead, it has been amalgamated with Densify. It is Densify's understanding that a company that does not independently exist cannot submit pleadings before the Court, and therefore submits this brief on behalf of Densify. To the extent permitted or required, this brief should be construed as having been submitted on behalf of Cirba IP, Inc. as well.

as a matter of law.  Further, not disclosing a piece of prior art to the Patent Office in and of itself cannot satisfy the specific intent requirement—and, without more—summary judgment should be granted.  VMware must meet its burden by clear and convincing evidence.  Here, there is not even a single piece of evidence that any Densify employee or patent-prosecution agent deliberately and knowingly chose to withhold any reference from the PTO with intent to deceive.  This fact pattern illustrates the abuses of the defense highlighted by the Federal Circuit.  Given the uncontroverted record, and to reserve the parties' and this Court's limited resources for the areas of legitimate dispute in this case, this Court should grant summary judgment on inequitable conduct.

## II.    <u>NATURE AND STAGE OF PROCEEDINGS</u>

In April 2019, Cirba Inc. (d/b/a Densify) ("Densify") and Cirba IP, Inc. ("IP") (collectively, "the Cirba Parties") filed suit against VMware alleging, *inter alia*, that VMware willfully infringes U.S. Patent 8,209,687 ("the '687 patent") and 9,654,367 ("the '367 patent").  Case No. 19-742 ("2019 Case"), D.I. 1.  That case was tried to a jury in January 2020, and the jury found willful infringement of both patents, awarding over $236 million in damages.  D.I. 550 (Redacted Jury Verdict).  VMware submitted only one invalidity question to the jury—whether claims 3 and 7 of the '687 patent were anticipated or would have been obvious based on one prior art reference, DRS 2006—but the jury rejected VMware's defense.  *Id.*  Meanwhile, VMware sued Densify on a series of its own patents, both in this district and in the Eastern District of Virginia.  Densify asserted U.S. Patent 10,523,492 ("the '492 patent") as a counterclaim in the Virginia case, which was later transferred to this district.  *See* Case No. 20-272 ("Counterclaim Case").

In December 2020, a new trial was ordered based on Article III standing, after which the 2019 Case was consolidated with the Counterclaim Case.  D.I. 946.  The Cirba Parties were granted leave to amend its counterclaims to include infringement of U.S. Patent 10,951,459 ("the '459

2

patent"). D.I. 991. In its answer to the Cirba Parties' infringement claims, VMware alleges that the '492 and '459 patent should be held unenforceable for inequitable conduct, D.I. 1009 (Answer) ¶¶ 144-296, and that the inequitable conduct bars the Cirba Parties' infringement allegations due to unclean hands, *id.* ¶¶ 297-302.[2] Densify moves for summary judgment on these defenses.

## III.   SUMMARY OF ARGUMENT

1.      "[T]he inequitable conduct doctrine has plagued not only the courts but also the entire patent system." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc). To deter the doctrine's overlitigation and consistent abuse, the Federal Circuit purposefully ratcheted up the specific-intent standard: "[T]he accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it [from the PTO]." *Id.* at 1290. "[T]he specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id.* (quotation omitted)). And it "can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996) (citation omitted).

2.      VMware cannot possibly meet this standard. The evidence of record uniformly indicates that the inventors and prosecuting agent, to the extent they even knew of the alleged references at all, did not make any deliberate, knowing decision to withhold them from the PTO. Not a single piece of evidence supports specific intent. And without specific intent there can be no inequitable conduct, so VMware's defense fails as a matter of law.

## IV.   STATEMENT OF FACTS

Analysis of VMware's arguments requires an understanding of the relationships among the

---

[2] In this case, the unclean hands defenses simply duplicate the inequitable conduct allegations, rising and falling together. *See* D.I. 1009 at ¶¶ 297-302.

patents-in-suit.

### A.    The '687 and '367 Patents

The '687 patent issued on June 26, 2012 from U.S. Patent Application 12/201,323.  Andrew Hillier and Tom Yuyitung are named inventors of the '687 patent.  The '687 patent generally relates to information technology infrastructures and has particular utility in designing and evaluating virtualized environments.[3]  In the 2020 trial, VMware tried an invalidity case against the '687 patent to the jury.  VMware asserted a variety of invalidity theories—including ones based on VMware's DRS 2006 system,[4] U.S. Patent 8,347,297 ("Mateo"); U.S. Patent 8,875,266 ("Chambers"); U.S. Patent Appl. Pub. 2007/0271560 ("Wahlert")—advancing its defenses in invalidity contentions and expert reports.  Nevertheless, at trial, VMware submitted to the jury only the question of whether claims 3 and 7 of the '687 patent were anticipated or would have been obvious in light of DRS 2006.  Despite submitting the question to the jury, VMware actually conceded this argument in closing, telling the jury: "We don't want you to find their patent invalid . . . [t]heir patent is valid."  Trial Tr. at 1845:25-1846:15 (referring to the '687 patent).  The jury found the '687 patent valid.  D.I. 550.  VMware stipulated to dismissal with prejudice of all its other invalidity arguments regarding the '687 patent.  D.I. 576.

---

[3] "Virtualization" refers to the act of creating a virtual version of something.  Virtualization relies on software to simulate hardware functionality and create a virtual computer system, which allows companies to run more than one application on a single physical server using virtual machine ("VM") technology.  With virtualization, one server can run many applications because each application runs on a VM sharing the resources of the physical server.  Simplified, VMs allow time and capacity sharing among competing workloads and their operating systems on the same physical server.

[4] The jury was ultimately asked whether DRS 2006 anticipated or rendered obvious the '687 patent.  DRS 2006 is also referred to in this litigation as the VirtualCenter 2 system.  VMware's expert based his understanding of the VirtualCenter 2 system on a combination of VirtualCenter 2 source code, discussions with Dr. Waldspurger (a former VMware employee), the Virtual Center 2006 Datasheet, DRS 2006 Datasheet, vMotion 2006 Datasheet, VMware Infrastructure 3 Pricing, Resource Management with VMware DRS, and VirtualCenter Resource Management documents.  *See* Ex. 8 (Nieh Nov. 29, 2019 Report) at 34.

After the jury verdict, VMware filed a request at the Patent Office for *ex parte* reexamination of the '687 patent, requesting that claims 3 and 7 be cancelled. D.I. 969-1. In its request, VMware argued that claims would have been obvious over, *inter alia*, references related to DRS 2006 and Wahlert. The '687 reexamination proceeding is ongoing.

The '367 patent issued on May 16, 2017 from U.S. Patent Application 14/180,438. The '367 patent generally relates to determining efficiencies and risks in computing environments, as well as a user interface for visualizing such efficiencies and risks. VMware challenged the validity of the '367 patent through pretrial but did not submit invalidity to the jury. As with the '687 patent, VMware stipulated to dismissal with prejudice of all invalidity arguments on the '367 patent. D.I. 576. After losing at trial, VMware requested *ex parte* reexamination of the '367 patent. The PTO found in Densify's favor, determining all challenged claims to be patentable. D.I. 1186.

## B.    The '492 and '459 Patents

The '492 patent issued on December 31, 2019 from U.S. Patent Application 14/341,471 ("the '471 application"). The '492 and '459 patents generally relate to optimizing virtualized computing networks.[5] The '459 patent is a continuation of the '492 patent. Neither of these patents were part of the January 2020 trial.

Importantly, during prosecution in January 2019, an examiner issued an office action rejecting some claims of the '471 application as anticipated by U.S. Patent 7,577,722 ("Khandekar"). Specifically, the examiner argued that Khandekar taught workload placement based on technical and non-technical business parameters. Ex. 3 (Office Action) at 8. Densify

---

[5] While understanding the precise technology is not necessary to resolve this motion, the '492 patent describes and claims optimizing placements of sources within a distributed computing system based on a 1-to-1, N-to-1, or N-by-N compatibility analysis in accordance with technical, business, and workload constraints. *See* Ex. 1 ('492 patent) at Fig. 2, claim 1. The '459 patent shares a specification with the '492 patent and claims placement of source systems on target systems using rule-based compatibility analyses. Ex. 2 ('459 patent) at claim 1.

argued that Khandekar did not "teach or suggest evaluating source systems by performing a compatibility analysis (as recited in claim 1 [of the '471 application]), let alone placing source systems based on technical, business[,] and workload constraints determined in the compatibility analysis." Ex. 4 (Response to Office Action) at 11.  While Khandekar taught "the need for a heuristics engine," it did not teach "incorporat[ing] business constraints into the workload placement process." *Id.*  After these remarks, the examiner issued the claims of the '471 application as the '492 patent.

### C.    Densify Upheld Its Duty Of Candor

VMware alleges that Hillier, Yuyitung, and Brett Slaney committed inequitable conduct for their failure to disclose information to the PTO during the prosecution of the '492 and '459 patents.  Repeatedly and consistently, however, Hillier, Yuyitung, and Slaney have testified in this case that they complied with their duty of candor to the PTO, did not withhold material information, and did not intend to deceive the PTO.  *See* Statement of Material Facts, §§ I (Hillier), II (Yuyitung), III (Slaney).

For example, Hillier testified that he was aware that he was required to "submit all the references that were important or material or relevant" "to the patent examiner."  Ex. 5 (Hillier Dep.) at 214:23-215:08.  Contrary to VMware's unsupported assertions, Hillier was clear that neither the '492 nor '459 patents were prosecuted with an eye toward asserting them against VMware, *id.* at 218:04-17, 285:14-20.  When questioned about several references VMware is currently relying on for its invalidity defenses in this case, Hillier testified that he never made a "specific decision not to" disclose them.  *Id.* at 289:10-297:06.  To the extent any reference was ultimately not disclosed to the PTO, Hillier testified that it was inadvertent:



*Id.* at 292:23-296:22.

When questioned about similar disclosures during his deposition, for his part, Yuyitung affirmed that his involvement in this case was minimal, Ex. 6 (Yuyitung Dep.) at 132:18-138:17, and that he had never seen the pleadings or invalidity positions from this case, *id.* at 142:10-146:19, the very same material he is charged with withholding from the PTO.  He affirmatively did not consider "how to draft applications in a manner to cover competitor products such as VMware's," *id.* at 141:13-142:4, and did not intentionally withhold any material information from the PTO, *id.* at 318:4-18 █████████████████████████████████████████████

█████████████████████████████████████████████████████████████████



And Slaney, the agent who prosecuted the '492 and '459 patent, testified that he submitted the documents he "was aware of at the time" to the PTO, Ex. 7 (Slaney Dep.) at 184:19-189:6, and that he "believe[d] that [he] acted with good faith and complied with the duty of candor during the prosecution" of both patents, *id.* at 192:5-194:14; *see also id.* at 288:3-19 ("

).  Slaney's testimony is clear that he never affirmatively decided to withhold a reference from the PTO.  *Id.* at 126:18-132:15, 192:05-194:14 ("

").

## V.   **ARGUMENT**

The foundation of VMware's inequitable conduct defenses is that inventors Hillier and Yuyitung and prosecuting agent Slaney "withheld information material to patentability . . . from the PTO and made affirmative misrepresentations to the PTO with an intent to deceive."  D.I. 1009 (Answer) ¶¶ 144, 230.  Its assertion is based on an alleged failure to disclose to the PTO (1) the existence of several PTO-based proceedings involving the '687 and '367 patents; (2) the existence of this case; and (3) various prior art references, trial testimony, and invalidity theories VMware

advanced with respect to the '687 patent (which were either dropped by VMware on its own or rejected by the jury in the 2019 Case trial).   VMware cannot carry its burden to establish inequitable conduct on any of these bases.[6]

For VMware to succeed in proving inequitable conduct, it must establish by clear and convincing evidence that Densify "(1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013) (quoting *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012)).   "Intent and materiality are separate requirements." *Therasense*, 649 F.3d at 1290.

Intent is deliberate and knowing activity: "Negligence, . . . even gross negligence, is not sufficient to establish deceptive intent." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1292 (Fed. Cir. 2012).   Intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 1290 (quoting *Star*, 537 F.3d at 1366).   And it "can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Hebert*, 99 F.3d at 1109 (citation omitted).

Summary judgment is appropriate when there is no genuine dispute as to any material fact, Fed. R. Civ. P. 56(a), drawing all inferences in favor of the nonmovant, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).   Summary judgment of no inequitable conduct is appropriate when the "evidence [is] insufficient to permit a finding of the intent required for

---

[6] VMware alleges that the '492 and '459 patents are unenforceable in their own right for inequitable conduct and that the '492 patent inequitable conduct renders the '459 unenforceable based on "[i]nfectious unenforceability." *See* D.I. 1009 at Defense No. 15, ¶¶ 213-228.   VMware also advances two unclean hands defenses that are based entirely on its inequitable conduct allegations. *Id.* at ¶¶ 297-302. Thus, the "infectious unenforceability" assertion for the '459 patent and the unclean hands defenses rise and fall with the '492 patent inequitable conduct defense.

inequitable conduct." *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1351 (Fed. Cir. 2017); *see also W. Plastics, Inc. v. DuBose Strapping, Inc.*, No. 2021-1371, 2022 WL 576218, at *1 (Fed. Cir. Feb. 25, 2022) (affirming district court's grant of summary judgment of no inequitable conduct when "DuBose did not set forth evidence to meet the high standard of establishing that the patent applicant intended to deceive the Patent Office, as required to sustain an inequitable conduct defense."); *see also Greatbatch Ltd. v. AVX Corp.*, No. CV 13-723-LPS, 2015 WL 9171042, at *13 (D. Del. Dec. 11, 2015) (granting summary judgment of no inequitable conduct "[b]ecause Mr. Stevenson's failure to disclose the Cox prior art, by itself, is insufficient to show intent—yet that is the only evidence of intent to which AVX point[ed]," and "the record does not support a reasonable finding that Mr. Stevenson acted with deceptive intent.").

VMware cannot establish intent on this record, and therefore its inequitable conduct defense fails as a matter of law. VMware offers only threadbare allegations based on equally bare circumstantial evidence that either Hillier or Yuyitung had specific intent to deceive the PTO by failing to disclose the existence of this case and VMware's prior art references and invalidity theories lodged in this case. D.I. 1009 ¶¶ 169-172, 181. But VMware has now had full discovery into the issue and deposed every individual involved in prosecution of the '492 and '459 patents. The record is clear: there is not a shred of evidence supporting specific intent, let alone evidence making it the "single most reasonable inference."

VMware points to the fact that Hillier was involved in the 2019 Case, was familiar with DRS 2006, and "chose to hide the existence of [the 2019 Case] from the PTO, and to say nothing to the PTO about" VMware's prior art references and invalidity theories in this case. D.I. 1009 ¶ 207. For Yuyitung, VMware points to the fact that he was identified as a person with knowledge about the conception and reduction to practice of the '687 patent and was deposed.

D.I. 1009 ¶ 206.   According to VMware, during prosecution of the '492 patent, Hillier and Yuyitung "amended the claims" to recite "placing the source systems onto the target systems in accordance with technical, business, and workload constraints determined in the compatibility analysis," overcoming a rejection that this limitation was present in the prior art and making "false representations" about what the Khandekar reference enabled.   D.I. 1009 ¶ 211.   As to the '459 patent, VMware alleges that Hillier, Yuyitung, and Slaney withheld VMware's invalidity theories, trial testimony, and the '492 IPR petition from the PTO.   D.I. 1009 ¶ 242.

Even accepting VMware's conclusory allegations as true (which they are not), they would still fall far short of the standard necessary for specific intent.   "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference."   *Therasense*, 649 F.3d at 1290.   VMware's allegations fail to establish that Hillier "knew of the reference[s], knew that [they were] material, and made a deliberate decision to withhold [them]."   *Id.*   And, of course, not even VMware stood behind the majority of those references and theories at trial (relying only on DRS 2006), and the jury agreed that DRS 2006 did not invalidate the '687 patent.   VMware actually asked the jury to hold the '687 patent *valid*, and conceded that it was, Trial Tr. at 1845:25-1846:15, belying its current claim that the '687 references, invalidity theories, and trial testimony would have led to surefire invalidity findings at the PTO.   Given the context of the case, there is no basis to conclude that the single, most reasonable inference that could be drawn is that there was a specific intent to deceive—indeed, the evidence is the opposite.   VMware simply cannot exclude all other inferences as required by law.

And, importantly, VMware's allegations are at odds with the undisputed record in this case. As Hillier affirmed in his deposition, he was aware of his duty of candor to the Patent Office, Ex.

5 (Hillier Dep.) at 213:14-215:08, and made best efforts to collect relevant information and disclose it to the PTO. *Id.* (); *id.* at 289:10-297:06 (

). Contrary to VMware's allegations, the '459 patent was not prosecuted with an eye toward asserting it against VMware, and Hillier did not "make a specific decision not to . . . disclose" the references VMware now complains of, *id.* The record is clear that Hillier made a deliberate effort to disclose all relevant references to the PTO. Even assuming that the undisclosed references were material (which they were not), to the extent any reference slipped off his radar, it was inadvertent at best, which is insufficient as a matter of law to establish intent for inequitable conduct. *See*, *Outside the Box*, 695 F.3d at 1292. Intent cannot be inferred simply from nondisclosure. *Hebert*, 99 F.3d at 1116 (intent cannot "be inferred solely from the fact that information was not disclosed," and "there must be a factual basis for a finding of deceptive intent"). VMware has no evidence of intent—its allegations are based solely on timing and its own say-so, which fall far short of the clear and convincing, deliberate and knowing specific intent standard. *See* Statement of Material Facts § I.

VMware's allegations regarding Yuyitung are based on his involvement in the 2019 Case, but Yuyitung himself testified that he has never seen pleadings from this case or VMware's invalidity positions, Ex. 6 (Yuyitung Dep.) at 142:10-146:19, nor could he recall ever seeing the specific Mateo or Wahlert references VMware calls out in its allegations, *id.* at 177:16-178:6, 182:9-23. There is no evidence of Yuyitung having the "extensive involvement" with this case

that VMware alleges.  *See* D.I. 1009 ¶ 207.  It is not clear how Yuyitung could be required to disclose to the PTO documents he had never seen before.  *See Hebert*, 99 F.3d at 1116 ("[t]here can not have been culpable intent in withholding information that the inventor did not have" (quoting *Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 996 (Fed. Cir. 1995))).  Moreover, Yuyitung had no specific intent to deceive the PTO: He never considered or contemplated how to draft patent applications or claims in a way to cover VMware products, Ex. 6 (Yuyitung Dep.) at 141:18-142:04 ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ ), and he endeavored to disclose to the PTO all information he thought was material to the patentability of his patent applications, *id.* at 149:20-159:08, 317:02-318:18.  *See* Statement of Material Facts § II.  At best, VMware has a list of references that Yuyitung may or may not have known about that he did not disclose to the PTO, but that is nowhere near the evidence required for specific intent.  *Hebert*, 99 F.3d at 1116 (intent cannot "be inferred solely from the fact that information was not disclosed," and "there must be a factual basis for a finding of deceptive intent").

Similarly, Slaney testified that he made *no affirmative decisions to withhold any reference* from the PTO and that he submitted *all* references, including documents provided by Hillier, that Densify provided to him.  *See* Ex. 7 (Slaney Dep.) at 126:18-132:15, 192:05-194:14.  He complied with his duty of candor, *id.* at 192:05-194:14, and did not intend to mislead the PTO, *id.* at 285:21-289:07.  *See* Statement of Material Facts § III.  On this record, a reasonable factfinder could not find that Slaney had specific intent. *Hebert*, 99 F.3d at 1116 ("there must be a factual basis for a finding of deceptive intent").

VMware has constructed a salacious, evidence-free narrative that Hillier, Yuyitung, and Slaney conspired to hide evidence from the PTO. But that narrative is not grounded in the facts of this case. VMware has failed to establish on this record any evidence—let alone clear and convincing evidence—that any nondisclosure of the alleged references was done with "specific intent to mislead or deceive the PTO." *Ohio Willow Wood*, 735 F.3d at 1344. There is certainly no direct evidence that Hillier, Yuyitung, or Slaney knowingly and deliberately acted to deceive the PTO. *See Outside the Box*, 695 F.3d at 1291 ("Specific intent to deceive the PTO requires 'knowledge and deliberate action.'" (quoting *Therasense*, 649 F.3d at 1290)). Nor is specific intent the "single most reasonable inference able to be drawn from the evidence" in this case. *Therasense*, 649 F.3d at 1290 (quoting *Star*, 537 F.3d at 1366). Any nondisclosure was nothing more than inadvertent and cannot support the state of mind required for inequitable conduct. *See Outside the Box*, 695 F.3d at 1292; *Hebert*, 99 F.3d at 1116 (intent cannot be inferred solely from nondisclosure); *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) ("'gross negligence' does not itself justify an inference of intent to deceive"); *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1374-75 (Fed. Cir. 2012) (to sustain a charge of inequitable conduct, "it is not enough to argue carelessness, lack of attention, poor docketing or cross-referencing, or anything else that might be considered negligent or even grossly negligent.").

The record here mirrors that which Judge Stark addressed in *Greatbatch*. There, defendant AVX alleged inequitable conduct based upon a failure to "disclose to the Patent Office prior art." *Greatbatch*, 2015 WL 9171042, at *12. Citing *Therasense*, the Court held that the failure to disclose the prior art—by itself—was insufficient to show intent and granted summary judgment. *Id.* The same result is appropriate here. The most charitable interpretation of the record to VMware's argument is that there is evidence that Hillier, Yuyitung, and Slaney knew of *some* of

14

the references and did not provide them to the PTO.  But that is not enough.  *1st Media*, 694 F.3d at 1376-77 ("Ultimately, for all of the references, the evidence supports only that Lewis and Sawyer (1) knew of the references, (2) may have known they were material (which this court does not reach), and (3) did not inform the PTO of them. But that is not enough. As *Therasense* made clear, a defendant must prove that an applicant (1) 'knew of the reference,' (2) 'knew it was material,' and (3) 'made a deliberate decision to withhold it.' . . . It is the last requirement that is missing from the record developed in this case.").

Because VMware's allegations of intent find no support in, and indeed are contradicted by, the uncontroverted record in this case, no reasonable jury could find inequitable conduct by clear and convincing evidence, and the Court should grant summary judgment of no inequitable conduct.[7]

## VI.   <u>CONCLUSION</u>

For the reasons detailed above, Densify respectfully requests that the Court grant summary judgment of no inequitable conduct.

---

[7] VMware has advanced expert opinion and pages of allegations about materiality.  "Intent and materiality are separate requirements," and both must independently be met for there to be inequitable conduct. *Therasense*, 649 F.3d at 1290.  Because there is simply no support for specific intent, the Court need not reach the issue whether any of the references raised by VMware are material to patentability.  And to be clear, Densify does not concede materiality—it is just beside the point for purposes of this motion.

Dated: November 22, 2022

Respectfully submitted,

   */s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
kdorsney@morrisjames.com
Cortlan S. Hitch (#6720)
chitch@morrisjames.com
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

*Of Counsel:*

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Aisha Mahmood Haley (*pro hac vice*)
amhaley@reichmanjorgensen.com
Connor S. Houghton (*pro hac vice*)
choughton@reichmanjorgensen.com
Reichman Jorgensen Lehman &
Feldberg LLP
1909 K Street, NW
Suite 800
Washington, DC 20006

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Wesley L. White (*pro hac vice*)
wwhite@reichmanjorgensen.com
Reichman Jorgensen Lehman & Feldberg LLP
750 Third Avenue, Suite 2400
New York, NY 10017

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Jennifer P. Estremera (*pro hac vice*)
jestremera@reichmanjorgensen.com
Michael G. Flanigan (*pro hac vice*)
mflanigan@reichmanjorgensen.com
Reichman Jorgensen Lehman &
Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065

**ATTORNEYS FOR CIRBA INC.
(D/B/A DENSIFY)**

## **CERTIFICATE OF SERVICE**

I, Kenneth L. Dorsney, hereby certify that on November 22, 2022, the attached

document was electronically filed with the Clerk of the Court using CM/ECF which will send

notification to the registered attorney(s) of record that the document has been filed.

I further certify that on the same date the attached document was electronically mailed to

the following person(s):

Anne Shea Gaza
Samantha G. Wilson
Robert Vrana
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
agaza@ycst.com
swilson@ycst.com
rvrana@ycst.com

*Attorneys for VMware, Inc.*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
sllewellyn@mofo.com

Bita Rahebi
Ryan J. Malloy
Soo J. Park
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
brahebi@mofo.com
rmalloy@mofo.com
spark@mofo.com

*Attorneys for VMware, Inc.*

Michael A. Jacobs
Richard S. J. Hung
Diek O. Van Nort
Nathan Sabri
Matthew I. Kreeger
Arturo J. Gonzalez
Mark R.S. Foster
Joyce Liou
Forrest M. McClellen
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
mjacobs@mofo.com
rhung@mofo.com
dvannort@mofo.com
nsabri@mofo.com
mkreeger@mofo.com
agonzalez@mofo.com
mfoster@mofo.com
jliou@mofo.com
fmcclellen@mofo.com

Shaun P. deLacy
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
sdelacy@mofo.com

Fahd H. Patel
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C. 20037
fpatel@mofo.com

*Attorneys for VMware, Inc.*

Lily Yi
Aaron D. Bray
Stephen Liu
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
YLi@mofo.com
abray@mofo.com
sliu@mofo.com
MoFo_VMware_Cirba@mofo.com

William F. Lee
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
William.lee@wilmerhale.com

Seth P. Waxman
Thomas G. Saunders
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Seth.waxman@wilmerhale.com
Thomas.saunders@wilmerhale.com

*Attorneys for VMware, Inc.*

Dated: November 22, 2022

_____*/s/ Kenneth L. Dorsney*_____
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Cirba Inc. (d/b/a Densify)*