## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., | C.A. No. 19-742-GBW (CONSOLIDATED) |
| *Plaintiffs/Counter-Defendants*, | **PUBLIC REDACTED VERSION** |
| v. | |
| VMWARE, INC., | |
| *Defendant/Counter-Plaintiff.* | |

## VMWARE'S OMNIBUS REPLY BRIEF IN SUPPORT OF DISPOSITIVE MOTIONS UNDER RULES 56, 12(B)(1), AND 12(C) AND MOTIONS TO EXCLUDE EXPERT TESTIMONY

Dated: December 23, 2022
Redacted Version: December 30, 2022

OF COUNSEL:

Arturo J. González
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
agonzalez@mofo.com
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

# TABLE OF CONTENTS

**Page**

SUMMARY JUDGMENT # 1—NO TRADEMARK CLAIM ........................................1

SUMMARY JUDGMENT # 2—NO WILLFUL INFRINGEMENT ('367 PATENT)..................2

I.    Cirba's "Circumstantial" Evidence Is Not "At the Time of The Challenged Conduct" ........................................................................................................3

II.   Cirba Admits There Is No Direct Presuit Knowledge ........................................4

III.  Cirba Does Not Dispute Any Post-Suit Facts ..................................................5

SUMMARY JUDGMENT # 3—NON-INFRINGEMENT ('687 PATENT) ...............................5

I.    Cirba Misrepresents Judge Stark's Construction .............................................6

    A.   Cirba Has Already Conceded that the Claims Require *Rules* for Each Constraint Type to Be *Used* in Each Required Evaluation .....................6

    B.   Cirba's Attempts to Confuse the Issues Should Be Rejected .................8

II.   Cirba's Brief Confirms No Genuine Issues of Material Fact ...............................9

    A.   Cirba Concedes Every Fact Establishing Non-Infringement ..................9

    B.   Cirba's Remaining Arguments Rely on Distortions of Judge Stark's Claim Construction and Should Be Disregarded .............................11

SUMMARY JUDGMENT # 4—FAILURE TO MARK ('687 PATENT)................................11

I.    Cirba's Alleged Software Marking Is Insufficient.............................................12

II.   Cirba Has Failed to Present Admissible Evidence ...........................................12

SUMMARY JUDGMENT # 5—NO INDUCED INFRINGEMENT ('687 PATENT) ...............13

RULE 12(B)(1) AND 12(C) MOTION—INC.'S LACK OF STANDING ('492 PATENT).......14

RULE 12(C) MOTION—FAILURE TO SATISFY § 101 ('687 AND '459 PATENTS)............16

I.    VMware's Motion Is Not Estopped as to the '459 ..........................................16

II.   '687 Claim 3 Stands Apart from Claim 7 .....................................................16

III.  The 101 Challenged Claims Are Not Patent Eligible .......................................17

MOTION TO EXCLUDE EXPERT TESTIMONY (MADISETTI) ...................................19

I.    Cirba Confirms That Dr. Madisetti Applied the Wrong Construction .............19

II.   Cirba Confirms That Dr. Madisetti's Opinions Regarding vCLS VMs Depend on an Impermissibly New Claim Construction....................................................20

III.  Cirba Fails to Explain Why Dr. Madisetti's Criticisms of Dr. Nieh's Source Code Analysis Are Admissible ...........................................................................21

IV.  Cirba Cannot Cure Dr. Madisetti's Erroneous Source Code Opinion .............22

**TABLE OF CONTENTS**
(continued)

Page

MOTION TO EXCLUDE EXPERT TESTIMONY (BERGMAN)..............................................23

I.    Mr. Bergman Fails to Tie Damages to Use of the '687 Method........................................23

II.   Mr. Bergman Cannot Support His Opinion for Direct Infringement...............................24

III.  Mr. Bergman's Apportionment Methodology Is Unreliable .............................................25

IV.   Mr. Bergman's Lost Profits Calculation Rests on Shaky Grounds ..................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Wi-LAN Inc.*,
   25 F.4th 960 (Fed. Cir. 2022) ...................................................................................23

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
   216 F.3d 1042 (Fed. Cir. 2000)...............................................................................14

*In re AT&T Sec. Litig.*,
   No. 00-cv-5364, 2004 WL 6392120 (D.N.J. Apr. 6, 2004)......................................2

*AT&T v. Shared Commc'n Servs. of 1800-80 JFK Blvd., Inc.*,
   No. 93-CV-3492, 1995 WL 555868 (E.D. Pa. Sept. 14, 1995) .............................12

*Bayer Healthcare LLC v. Baxalta*,
   989 F.3d 964 (Fed. Cir. 2021)..........................................................................2, 3, 5

*Bioverativ Inc. v. CSL Behring LLC*,
   No. 17-cv-914, 2020 WL 1332921 (D. Del. Mar. 23, 2020)....................................3

*Bornstein v. Monmouth Cnty. Sheriff's Off.*,
   658 F. App'x 663 (3d Cir. 2016) .............................................................................2

*Bos. Sci. Corp. v. Nevro Corp.*,
   560 F. Supp. 3d 837 (D. Del. 2021).........................................................................3

*C R Bard Inc. v. AngioDynamics, Inc.*,
   979 F.3d 1372 (Fed. Cir. 2020)..............................................................................13

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   576 F.3d 1348 (Fed. Cir. 2009)..............................................................................23

*Creo Prods., Inc. v. Presstek, Inc.*,
   148 F. Supp. 2d 416 (D. Del. 2001).........................................................................2

*Eko Brands LLC v. Adrian Rivera Maynez Enters., Inc.*,
   946 F.3d 1367 (Fed. Cir. 2020)................................................................................5

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
   879 F.3d 1332 (Fed. Cir. 2018)........................................................................23, 25

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010)..............................................................................14

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*,
No. 18-cv-462, 2019 WL 10248462 (D. Del. Apr. 18, 2019) ................................. 12

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ......................................................................................... 24

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) ........................................................................................... 3

*Helios Streaming, LLC v. Vudu, Inc.*,
No. 19-cv-1792, 2021 WL 254069 (D. Del. Jan. 26, 2021) ..................................... 4

*High Point SARL v. T-Mobile USA, Inc.*,
640 F. App'x 917 (Fed. Cir. 2016) ...................................................................... 5

*Hubner v. Schoonmaker*,
No. 89-3400, 1990 WL 149207 (E.D. Pa. Oct. 2, 1990) ..................................... 15

*HZNP Meds. LLC v. Actavis Labs. UT*,
940 F.3d 680 (Fed. Cir. 2019) .......................................................................... 14

*IBM Corp. v. Groupon, Inc.*,
No. 16-cv-122, D.I. 314 (D. Del. June 15, 2018) ......................................... 4

*Idenix Pharms. LLC v. Gilead Scis., Inc.*,
No. 13-cv-1987, 2016 WL 7380530 (D. Del. Dec. 4, 2016) ..................................... 3

*iFIT Inc. v. Peloton Interactive, Inc.*,
No. 21-cv-507, 2022 WL 609605 (D. Del. Jan. 28, 2022) ..................................... 4

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
549 F. Supp. 3d 362 (D. Del. 2021) ............................................................. 21

*Intuitive Surgical, Inc. v. Ethicon LLC*,
25 F. 4th 1035 (Fed. Cir. 2022) ...................................................................... 16

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ........................................................................... 25

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....................................................................... 23

*MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*,
731 F.3d 1258 (Fed. Cir. 2013) ................................................................. 17, 18

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
370 F.3d 1354 (Fed. Cir. 2004) ....................................................................... 13

*Milgo Elec. Corp. v. United Bus. Commc'ns, Inc.*,
    623 F.2d 645 (10th Cir. 1980) ................................................................. 3

*Minerva Surgical, Inc. v. Hologic, Inc.*,
    No. 18-cv-217, 2021 WL 3048447 (D. Del. July 20, 2021) .................... 20

*Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*,
    976 F.2d 1559 (Fed. Cir. 1992) .............................................................. 3

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
    30 F.4th 1339 (Fed. Cir. 2022) ............................................................. 24

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
    855 Fed. App'x 701 (Fed. Cir. 2021) .................................................... 16

*Packet Intelligence LLC v. Netscout Sys., Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020) ............................................................ 24

*Pharmacy Corp. of Am./Askari Consol. Litig.*,
    No. 16-1123-RGA, 2020 WL 3060366 (D. Del. June 9, 2020) ................. 2

*Premier Comp Sols., LLC v. UPMC*,
    970 F.3d 316 (3d Cir. 2020) .................................................................... 1

*Robocast, Inc. v. Microsoft Corp.*,
    21 F. Supp. 3d 320 (D. Del. 2014) .......................................................... 4

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007) ................................................................................ 2

*Schwendimann v. v. Arkwright Advanced Coating, Inc.*,
    959 F.3d 1065 (Fed. Cir. 2020) ........................................................... 15

*Simio, LLC v. FlexSim Software Prod., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ........................................................... 18

*Smith v. Aztec Well Servicing Co.*,
    462 F.3d 1274 (10th Cir. 2006) .............................................................. 1

*Sprint Commc'ns Co. L.P. v. Cox Commc'ns Inc.*,
    302 F. Supp. 3d 597 (D. Del. 2017) ...................................................... 20

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) ......................................................... 2, 5

*T.N. Incorporation, Ltd. v. Fid. Nat'l Info. Servs.*,
    No. 18-cv-5552, 2021 WL 5980048 (E.D. Pa. Dec. 17, 2021) ......... 21, 22

*Toro Co. v. White Consol. Indus., Inc.*,
  383 F.3d 1326 (Fed. Cir. 2004)............................................................................... 15

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012)............................................................................... 13

*Transcontinental Corp. v. Hyde*,
  No. 2:08-cv-805, 2009 WL 10710118 (D. Nev. June 23, 2009) ........................... 15

*WCM Indus., Inc. v. IPR Corp.*,
  721 Fed. App'x 959 (Fed. Cir. 2018).......................................................................3

*Wharton v. Danberg*,
  854 F.3d 234 (3d Cir. 2017)......................................................................................5

## Statutes and Other Authorities

15 U.S.C. § 1114 ....................................................................................................... 1

35 U.S.C. § 101 ........................................................................................... 16, 17, 18

Fed. R. Civ. P. 37(c) ............................................................................................... 12

Fed. R. Civ. P. 56(c)(2).................................................................................. 2, 4, 12

Fed. R. Evid. 802 ................................................................................................... 13

Fed. R. Evid. 901 ................................................................................................... 13

## TABLE OF ABBREVEATIONS

| | |
|---|---|
| Cirba Inc. | "Inc." |
| Cirba IP, Inc. | "IP" |
| U.S. Patent No. 8,209,687 | "the '687 patent" or "'687" |
| U.S. Patent No. 9,654,367 | "the '367 patent" or "'367" |
| U.S. Patent No. 10,523,492 | "the '492 patent" or "'492" |
| U.S. Patent No. 10,951,459 | "the '459 patent" or "'459" |
| Claims 1, 2, 7, 10, 15, 38, and 41 of the '459 patent and claim 3 of the '687 patent | "101 Challenged Claims" |
| C.A. No. 19-cv-742, D. Del. | "the 742 Action" |
| C.A. No. 20-cv-272, D. Del (previously Case No. 19-cv-1334, E.D. Va.). | "the 272 Action" or "the Virginia Action" |
| Transcript of January 2020 trial (D.I. 587 – D.I. 597) | "TT" |
| Distributed Resource Scheduler | "DRS" |
| Virtual Machine | "VM" |
| License Agreement between Inc. and IP executed on March 21, 2016 (D.I. 1442 Ex. 37) | "License Agreement" |
| Declaration of Yue Li in Support of VMware's Reply Brief in Support of Dispositive Motions under Rules 56, 12(b)(1), and 12(c) and Motions to Exclude Expert Testimony, filed concurrently | "Li Reply Decl." |
| Exhibits attached to the concurrently filed Li Reply Declaration (unless otherwise noted) | "Ex. __" |
| VMware's Omnibus Opening Brief in Support of Dispositive Motions Under Rules 56, 12(b)(1), and 12(c) and Motions to Exclude Expert Testimony (D.I. 1440) | "Mot." |
| Cirba's Omnibus Brief in Opposition to VMware's Dispositive Motions Under Rules 56, 12(b)(1), and 12(c) and Motions to Exclude Expert Testimony (D.I. 1502) | "Opp." |
| Response To Cirba's Statement of Material Facts for Summary Judgment of No Trademark Claims, filed concurrently | "RSMF1" |
| Response To Cirba's Statement of Material Facts for Summary Judgment of No Willfulness, filed concurrently | "RSMF2" |
| Response To Cirba's Statement of Material Facts for Summary Judgment of Non-infringement, filed concurrently | "RSMF3" |
| Response To Cirba's Statement of Material Facts for Summary Judgment of Failure to Mark, filed concurrently | "RSMF4" |
| Response To Cirba's Statement of Material Facts for Summary Judgment of No Induced Infringement, filed concurrently | "RSMF5" |

## SUMMARY JUDGMENT # 1—NO TRADEMARK CLAIM

Cirba concedes that it forfeited a new trial of its trademark claim (D.I. 1418 ¶ 8; D.I. 1509

¶ 8); that Judge Stark granted a new trial only on Cirba's patent claims (Mot. at 4; *see* Opp.

at 6-8); that it has never pled a claim for registered trademark infringement under 15 U.S.C.

§ 1114 or sought to supplement its complaint to allege such a claim (D.I. 1418 ¶¶ 3-5; D.I. 1509

¶¶ 3-5); and that the deadline to supplement has long passed (Mot. at 5; *see* Opp. at 6-7).

Cirba's assertion that it would be permitted to add a claim "for infringement of a federally

registered trademark" in the "upcoming pretrial order" (Opp. at 6-7) amounts to a request for an

advisory ruling.  No such permission has been sought, let alone granted.  "[A] plaintiff's 'attempt

to add a new claim to the pretrial order [is] the equivalent of asking leave to amend his complaint,

and must be evaluated by the court under the standards set forth in Rule 15(a).'" *Smith v. Aztec*

*Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006).  Besides Rule 15(a)'s standards, a

court looks to Rule 16(b)(4)'s good cause standard where, as here, the deadline to amend the

pleadings has expired.  (D.I. 1489 ¶ 3.)  Whether "good cause" exists depends on a

plaintiff's diligence.  *See Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

Even if the Court is inclined to reach the Rule 16 standard, Cirba has shown no diligence.

Its trademark was registered 20 months ago.  (D.I. 1504 ¶ 3.)  Yet Cirba produced no record of its

registration during discovery.  (Li Reply Decl. ¶ 1.)  It offers no justification for this conduct.

Cirba falsely asserts that it put VMware on notice of its registered trademark claim in

March 2022.  (D.I. 1504 ¶ 5.)  When VMware asked for the "bases for Cirba's belief" that "its

trademark claims are still alive," Cirba stated only that "all issues in the January 2020 trial are

subject to *retrial*, including Densify's trademark claims," because Judge Stark "granted a new

trial" and "not . . . a partial new trial."  (RSMF1 ¶ 5; Ex. 60 (emphasis added).)  Cirba's response

thus made clear that Cirba intended to *retry* its rejected trademark claims.

1

The prejudice to VMware is obvious.  Adding a new claim in the new pretrial order would deprive VMware of "fair notice, possibly discovery, and the opportunity for motion practice."  *In re AT&T Sec. Litig.*, No. 00-cv-5364, 2004 WL 6392120, at *5 (D.N.J. Apr. 6, 2004).  Besides its non-production of the trademark registration, Cirba did not serve an expert report on any registered trademark claim.  The record also belies Cirba's argument that VMware took "discovery into Densify's registered trademark claim."  (Opp. at 8; *see also* RSMF1 ¶¶ 6-7.)

Courts routinely reject requests to add new claims in pretrial orders as untimely and prejudicial.  *See Creo Prods., Inc. v. Presstek, Inc.*, 148 F. Supp. 2d 416, 417 (D. Del. 2001); *In re AT&T*, 2004 WL 6392120, at *5; *Pharmacy Corp. of Am./Askari Consol. Litig.*, No. 16-1123-RGA, 2020 WL 3060366, at *2-3 (D. Del. June 9, 2020).  Cirba's authority is not to the contrary.  *Bornstein v. Monmouth Cnty. Sheriff's Off.*, 658 F. App'x 663, 671-72 (3d Cir. 2016) (excluding claim that was late-added to the pre-trial order); *Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 474 (2007) (for jurisdictional purposes, looking to claims as recited in pre-trial order).

## <u>SUMMARY JUDGMENT # 2—NO WILLFUL INFRINGEMENT ('367 PATENT)</u>

Cirba's opposition confirms that there are no disputed material facts.  Cirba relies on outdated or unpublished case law to try to advance an irrelevant factual record.  Contrary to Cirba's attempt to lower the willfulness bar, the Federal Circuit has made clear that willfulness requires conduct described "as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Bayer Healthcare v. Baxalta*, 989 F.3d 964, 987 (Fed. Cir. 2021) (quoting *Halo Elecs. v. Pulse Elecs.*, 579 U.S. 93, 103-04 (2016)); *accord SRI Int'l v. Cisco Sys.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019).  Cirba cannot show that VMware "had a specific intent to infringe at the time of the challenged conduct." 989 F.3d at 987.

Cirba's cited evidence also is inadmissible.  Fed. R. Civ. P. 56(c)(2).  It improperly relies on (1) evidence relating to interactions with Inc., a dismissed party, that should not be admitted

2

(D.I. 946 at 9-11, 17)[1] and (2) evidence already excluded at trial (Ex. 62 at 298:25-299:7).  But even if considered, Cirba still fails to establish a genuine factual dispute.

## I.   Cirba's "Circumstantial" Evidence Is Not "At the Time of The Challenged Conduct"

Cirba's dashboard copying evidence necessarily predates the '367 patent's issuance as VMware released its dashboard before then.  (D.I. 1510 ¶¶ 1, 5; *see also* RSMF2 ¶¶ 5, 7-15.) Cirba's purported "totality" of "circumstantial" evidence is legally insufficient to support that VMware had pre-suit knowledge of the '367 patent—a prerequisite to having "specific intent to infringe at the time of the challenged conduct." *Bayer*, 989 F.3d at 987.

Cirba has no answer to VMware's case law.  (*See* Opp. at 9-13 (ignoring *Ansell*, 2018 WL 620968).)  Instead, Cirba misrepresents *Bioverativ* and other decisions—*Minnesota Mining*, *Idendix*, and a 40-year-old Tenth Circuit case, *Milgo*.  These decisions support only the potential consideration of copying for one's post-knowledge state of mind—not as an evidentiary substitute for patent *knowledge* itself.  *See, e.g.*, *Bioverativ v. CSL Behring*, No. 17-cv-914, 2020 WL 1332921, at *4 (D. Del. Mar. 23, 2020) (knowledge of patent was "a necessary but not sufficient prerequisite to willfulness"); *Milgo Elec. v. United Bus. Commc'ns*, 623 F.2d 645, 666 (10th Cir. 1980) (copying relevant *after* defendant had "actual notice" of patent).  Legally-protected, *pre-issuance* copying cannot support a finding of knowledge of a *later-issued* patent.

Cirba's argument rests on another shaky pillar: an unpublished Federal Circuit opinion that a court in this District recognized as conflicting with *Halo* and subsequent Federal Circuit opinions.  (Opp. at 12 (citing *WCM*, 721 F. App'x 959).)  As Chief Judge Connolly explained, *WCM* was "decided before *SRI* [930 F.3d 1295]" and "cannot be reconciled with *Halo*."  *Bos. Sci.*

---

[1] *Id*. at 16 ("[G]iven the Court's dismissal of Inc. – which the Court expects will eliminate much of the evidence and themes Densify was permitted to present at the January 2020 trial – it seems inevitable that IP's evidence of willfulness, and egregiousness . . . will be even weaker[.]").

*Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 842 n.2 (D. Del. 2021).

## II.   Cirba Admits There Is No Direct Presuit Knowledge

Cirba does not dispute that there is "no direct evidence of pre-suit knowledge of the '367 patent." (D.I. 672 at 15 n.12; D.I. 1510 ¶¶ 3-5; RSMF2 ¶ 5.)  Instead, it seeks to improperly pad the record with inadmissible documents (D.I. 1503-7 Exs. 81-84) covered by a non-disclosure agreement ("NDA").  (Opp. at 10.)  VMware objects.  That NDA prohibited use of the disclosed patents or applications to show "(i) actual or constructive notice or knowledge of the patents . . . including with respect to theories of willfulness[.]"  (Ex. 62 ¶ 4(f)); *IBM v. Groupon*, No. 16-cv-122, D.I. 314 at 2-3 (D. Del. June 15, 2018) (excluding using pre-suit communications to show willfulness based on NDA) (Ex. 63); Fed. R. Civ. P. 56(c)(2).  Judge Stark already ruled at trial—and Cirba agreed—that these disclosures could not be used to show willfulness.[2]

In any event, these exhibits involve only the application for the '367 patent, not the issued patent.  (D.I. 1503-7 Exs. 81-84.)  *See*, *e.g.*, *iFIT v. Peloton Interactive*, No. 21-cv-507, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) (knowledge of application insufficient); *accord Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 334-35 (D. Del. 2014) (granting summary judgement of no willfulness); *Helios Streaming v. Vudu*, No. 19-cv-1792, 2021 WL 254069, at *4-5 (D. Del. Jan. 26, 2021) (granting motion to dismiss).  VMware had no obligation to track the '367 patent's prosecution and eventual issuance.  *See Robocast*, 21 F. Supp. at 334-35 ("no controlling case law" for an "affirmative investigation").

Although Cirba argues that a "staggering" volume of evidence distinguishes *iFit*, Cirba

---

[2] *See* Ex. 64 at 298:25-299:7 ("THE COURT:  You can't use it as proof of actual, constructive notice of knowledge of the patents or of infringement or intent to infringe.  You agree you can't do that? . . . Not [just] this document. I am thinking more generally."); *see also id.* at 303:23-304:5 ("THE COURT:  Do you agree that the evidence that you ask the jury to find willfulness from is going to have to be something other than evidence that you can only show you gave to the defendants in the February 2015 to February 2016 period?").

has no evidence of *knowledge* of the '367 patent; it offers only speculation.  (Opp. at 9-13.)  This is not enough.  *See Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017) ("speculation and conjecture" may not defeat summary judgment); *High Point SARL v. T-Mobile USA*, 640 F. App'x 917, 930 (Fed. Cir. 2016) (same).

## III.    Cirba Does Not Dispute Any Post-Suit Facts

Cirba does not dispute that VMware deprecated its accused dashboard pre-suit and then removed its accused dashboard pre-trial.  (D.I. 1510 ¶¶ 6-7.)  And Cirba has no answer to VMware's case law.  (*See* Opp. at 12-13 (ignoring *Evolved Wireless*, *NexStep*, and *Intellectual Ventures I*).)  Instead, Cirba argues that VMware's actions are "not material."  (D.I. 1510 ¶¶ 6-7.)  But the undisputed facts confirm that VMware's post-suit conduct was neither "deliberate [n]or intentional."  *Eko Brands v. Adrian Rivera Maynez Enters.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); *accord Bayer*, 989 F.3d at 987 (no "bad-faith, deliberate, consciously wrongful" conduct) (citation omitted).[3]  What Cirba describes as "after called to the mat in a lawsuit," the law calls with "knowledge" of the patent.  (*Compare* Opp. at 13, *with Eko*, 946 F.3d at 1379 and *SRI*, 930 F.3d at 1309.)  And once VMware had that knowledge, it undisputedly acted non-willfully.

## SUMMARY JUDGMENT # 3—NON-INFRINGEMENT ('687 PATENT)

Conceding that there is no material factual dispute, Cirba relies entirely on convincing the Court that Judge Stark's recent construction for the Each-to-Each Limitation is of no moment. Even though the construction was specifically intended to resolve "a new dispute" that arose *post-trial* "involving whether each VM must be evaluated using rules for all three constraints" (D.I. 1160 at 5-6), Cirba argues that Judge Stark's construction (which resolved the dispute in

---

[3] Cirba implies a tension where there is none.  *Bayer* and *Eko* proscribe the same conduct.  *See Eko*, 946 F.3d at 1379 (jury instruction for willfulness, correctly and without objection, included "'malicious,' 'consciously wrongful,' and 'bad faith' conduct") (citation omitted).

VMware's favor) added only "inconsequential words" and "changed nothing of substance" (Opp. at 16-17).  Cirba fails to reckon with its unambiguous concessions or with Judge Stark's express incorporation of those concessions in his claim construction order.  Against that record, Cirba cannot prevail on claim scope and cannot defeat VMware's motion.

## I.    Cirba Misrepresents Judge Stark's Construction

### A.    Cirba Has Already Conceded that the Claims Require *Rules* for Each Constraint Type to Be *Used* in Each Required Evaluation

Cirba argues that Judge Stark's construction for the Each-to-Each Limitation is satisfied if, for each VM-host pair, there is at least one evaluation involving a rule set that includes rules for each of technical, business, and workload constraints.  (Opp. at 16-17.)  Cirba argues that using the *rule set* in the evaluation is sufficient, regardless of whether rules for all three constraint types in that rule set are actually used in the evaluation.  (*Id.*)  Cirba thus denies that each required VM-host evaluation must use *rules* for each of technical, business, and workload constraints.

But Cirba conceded this precise point at the *Markman* hearing.  (*See* Ex. 65 at 43:9-46:12.)  There, it stated that "each and every evaluation must have *rules* pertaining to each of the three constraints."  (*Id.* at 43:24-25; *see also id.* at 44:4-6 ("[E]ach and every evaluation must have three constraints, Your Honor.").)  And when Cirba attempted to confuse matters by referring to "rule sets" instead of rules, Judge Stark asked Cirba to clarify:

> THE COURT:  Maybe you are confusing me with rule set.  What I see [in the "spiderweb" graphic (reproduced at Mot. at 11)] is *all three types of rules* being *evaluated* for all VMs-to-VMs and, you know, hosts-to-guests and all that, except in one instance, one of those things is not evaluated.  And Dr. Madisetti seemed to concede, yes, well, then there is no, there is no infringement.  *This is a narrow claim*.  In that instance, there is no infringement.  Do you agree or disagree?
>
> MR. REICHMAN:  I agree.

(*Id.* at 45:7-15 (emphasis added); *see also id.* at 51:15-19 (conceding that required evaluation

must have not only a rule set, but also that the "rule set must have *rules* pertaining to each of the three types of constraints, and those must be *used* each-to-each") (emphasis added).)  Thus, when directly asked by Judge Stark, Cirba agreed that each VM-host evaluation requires the *evaluation of rules* (not rule sets) for each constraint type; their mere presence in a rule set is not enough. Cirba does not address these concessions when citing to the transcript.  (*See* Opp. at 16-17.)

Cirba's concessions were not made just in passing.[4]  Judge Stark incorporated them into his claim construction order, explaining:

> Turning to the second issue, VMware argues that *each evaluation must use* one or more *rules* for each of the three constraints, such that the claim limitation would not be met where an evaluation skips a rule pertaining to even one of the three constraints.  ([D.I. 1094, Joint Construction Brief] at 31.)  In support, VMware points to the specification, which describes evaluations that account for all three constraints and *does not describe rules being skipped for any evaluation.  (See id.* at 16-17.)
>
> At the claim construction hearing, *Densify conceded this point*, stating that, "[o]f course, each and every evaluation must have rules pertaining to each of the three constraints."  ([Ex. 65] at 43.)

(D.I. 1160 at 8-9 (emphasis added).)  Cirba's only response is to accuse VMware of trying to pass off "VMware's position" as "the Court's ruling."  (Opp. at 21.)  But the next two paragraphs of Judge Stark's order show this is false:  He not only noted Cirba's concession but also incorporated that concession into his construction.  (D.I. 1160 at 9.)

Likewise, Judge Stark incorporated Cirba's and Dr. Madisetti's concessions regarding the spiderweb graphic into his order, noting that they resolved "any remaining doubt about" Cirba's position.  (*Id.* at 9.)  Cirba now dismisses that graphic as a "cartoon" that "shows nothing of significance."  (Opp. at 17.)  To the contrary, Cirba and Dr. Madisetti both admitted that the

---

[4] Cirba's concessions came as part of a discussion to resolve VMware's "fear [] that Cirba will, in the next trial, not concede the requirements of the claim as illustrated by [the spiderweb] graphic," and instead argue that skipping a constraint type for the required evaluations does not preclude infringement.  (Ex. 65 at 42:15-43:7.)  That is exactly what Cirba is doing now.

graphic depicts a scenario in which there is "no infringement," precisely because a required *rule* is "not evaluated."  (Ex. 65 at 45:7-15; *see also* D.I. 1441 Ex. 19 at 618:9-20.)  Indeed, at the *Markman* hearing, Judge Stark asked Cirba specifically about the graphic to clarify Cirba's confusing references to "rule sets."  (*See* Ex. 65 at 43:9-45:15 (directing and redirecting Cirba to answer questions about the spiderweb).)  Cirba offers no explanation for why these concessions, which VMware also raised in its opening brief (Mot. at 11), do not dispose of the present dispute.

They do.  Cirba has repeatedly conceded, as Judge Stark noted, that the claims require *rules* for each constraint type to *be evaluated*.  Skipping a required rule means no infringement.

### B.   Cirba's Attempts to Confuse the Issues Should Be Rejected

Hoping to reintroduce the very confusion that Judge Stark insisted that Cirba clarify, Cirba now cites to points in the transcript where it referred to "rule sets."  (*See* Opp. at 16-17.)  Not one of these passages undoes Cirba's concessions.  Cirba claims that VMware "strings together snippets" (*id.* at 16), but VMware cited what Judge Stark relied on in his order (*see* Mot. at 10-11 (citing D.I. 1160 at 9)).  If anything, it is Cirba that presents snippets out of context, seeking to evade its concession that "all three types of rules must be[] evaluated" for each required evaluation.  (*See* Opp. at 16-17; Ex. 65 at 45:7-15.)

Judge Stark made clear that he was resolving a dispute about *rules*, not rule sets.  (D.I. 1160 at 5-6 (recognizing "a new dispute relating to [the Each-to-Each Limitation] involving whether each VM must be evaluated using *rules* for all three constraints") (emphasis added).)  This was why Judge Stark "ordered further claim construction" in the first place.  (*Id.* at 6.)  VMware also explained at the *Markman* hearing that the distinction between "rule sets" and "rules" was not significant for the real question: whether "all three constraints must be evaluated for each VM against each virtual host."  (Ex. 65 at 38:12-39:13, 41:14-25.)  Judge Stark explained in his order that he was using the term "rule sets" in his construction based on this understanding,

referencing VMware's explanation.  (D.I. 1160 at 7 n.6.)  Thus, his construction was intended to

resolve whether rules for each constraint type must *be evaluated*.  It was neither "inconsequential"

nor of no "substance," as Cirba claims.  (Opp. at 16-17.)

Misdirecting, Cirba accuses VMware of rearguing various irrelevant issues that were also

raised during claim construction.  (*See id*. at 15-16.)  But VMware's motion in no way depends on

constraints being "associated with the corresponding VM," changing "rule sets" to "rules," or

whether "*every* evaluation a system conduct[s] must meet the claim limitations," as Cirba claims.

(*See id.*)  What matters is whether, in each evaluation of a VM and a host required for

infringement, "each VM must be evaluated using rules for all three constraints."  (D.I. 1160

at 5-6.)  Judge Stark definitively resolved that question in VMware's favor.

## II.     Cirba's Brief Confirms No Genuine Issues of Material Fact

### A.     Cirba Concedes Every Fact Establishing Non-Infringement

Cirba concedes the material facts in VMware's opening brief.  Cirba does not contest that

its infringement theory requires DRS rules (*e.g.*, affinity rules) that constrain which VMs can go

on which hosts.  (*See* Mot. at 14; Opp. at 13-21 (no dispute); *see also* D.I. 1423 ¶ 8 (Dr.

Madisetti's admission that his theories require DRS rules); D.I. 1511 ¶ 8 (no dispute).)  It does not

contest that these rules create incompatible hosts for each VM.  (*See* Mot. at 14; Opp. at 13-21.)

And it does not contest that, for incompatible VM-host pairs, DRS skips evaluations of rules for

workload constraints.  (*See* Mot. at 13-14; Opp. at 13-21.)  In fact, Cirba admits:

> Sometimes when DRS conducts an evaluation using the rule set, a host (or
> VM) will fail as to a particular constraint.  For example, the host host might not
> have the technical requirements needed for a VM.  In that circumstance, the
> system does not always have to execute a separate function by having the
> other constraints (business and [workload][5]) also constrain a placement of
> that VM on that host.  It already knows the host has been ruled out for that

---

[5] VMware believes Cirba intended to say "workload," and not "technical," as this sentence refers
to "other constraints" besides the technical ones mentioned in the preceding sentence.

> VM. . . . Thus, DRS may find shortcuts in determining guest-host
> placement, such that in some instances it does not have to execute the
> entire function, thereby skipping certain additional steps.

(Opp. at 19-20 (cleaned up).)  Dr. Madisetti also admitted that DRS "finds shortcuts," analogizing

these shortcuts to skipping evaluations of rules for business and workload constraints after a

technical constraint fails.  (D.I. 1441 Ex. 21 at 180:7-18; *see also* Mot. at 15.)

Cirba's opposition does not dispute these facts.  And although its Response to VMware's

Statement of Material Facts labels them as "disputed," Cirba claims to dispute only a few

statements that VMware cited in support of these facts, not the facts themselves.  (*See* D.I. 1423

¶¶ 13-15, 18; D.I. 1511 ¶¶ 13-15, 18.)  Even in that limited capacity, Cirba does not explain its

alleged disagreements.  It states only that "Dr. Madisetti disagrees with Dr. Nieh's assertions" and

cites unexplained passages that do not contradict VMware's material facts.  (*See* D.I. 1511 ¶¶ 13-

15, 18.)  Notably, Cirba's opposition never cites to its Response.

Cirba's concessions confirm, as VMware contended, that under Cirba's theory, there are

always VM-host pairs that are incompatible, and thus never evaluated using rules pertaining to

workload constraints.  This establishes non-infringement.

In yet another attempt to confuse, Cirba accuses VMware of rearguing that "*every*

evaluation a system conducts must meet the claim limitations." (*Id.* at 19.)  This has never been

VMware's position.  (*See* Ex. 65 at 32:2-16 (explaining that this issue is a "red herring"); RSMF3

¶ 5.)  VMware's motion is about "the evaluations on which [Cirba] relies to show infringement."

(D.I. 1160 at 9 n.9.)  The claims require that every such evaluation compare each VM to each host

using rules for workload constraints—regardless of what happens with any additional, extraneous

evaluation that the system may perform.  DRS indisputably does not perform those required

evaluations because it skips those workload constraint rules for incompatible hosts.

B. **Cirba's Remaining Arguments Rely on Distortions of Judge Stark's Claim Construction and Should Be Disregarded**

Every other argument in Cirba's opposition hinges on its incorrect claim construction. VMware explained that Dr. Madisetti's infringement theory does not apply Judge Stark's 2022 construction. (*See* Mot. at 12-13.) In response, Cirba posits that Judge Stark's construction did "not meaningfully change" the meaning of the claims. (Opp. at 17.) But that cannot be true; as shown above, Cirba and Dr. Madisetti ignore the central, most relevant aspect of Judge Stark's construction—that the use of rule sets in each evaluation must evaluate rules for all three constraint types. Whether Cirba thinks the new construction represents a meaningful change does not matter; what matters is that Dr. Madisetti has applied the wrong construction. Cirba confirms this by disagreeing "that the claims require evaluation[s] based on 'rules' as opposed to 'rule sets.'" (*Id.* at 20.) That premise, as explained above, was fundamental to Judge Stark's claim construction. Cirba does not dispute that Dr. Madisetti's specification citations regarding the "combined constraint analysis" do not support his theory that a required VM-host evaluation need not use rules for all three constraint types. (*See* Mot. at 15-16; Opp. at 21.)

Similarly, Cirba's argument resting on the jury's rejection of VMware's non-infringement theory ignores what happened after trial. (*See* Opp. at 18-19.) Judge Stark took up additional claim scope questions that became evident during post-trial briefing. (D.I. 1160 at 5-6.)

Lastly, although Cirba hints vaguely at "Dr. Madisetti's affirmative evidence," it fails to articulate any alternative theory of infringement. (*See* Opp. at 19.)

### SUMMARY JUDGMENT # 4—FAILURE TO MARK ('687 PATENT)

Cirba has failed to show substantial and continuous virtual marking of its software since 2015. There is no dispute that the Densify software could have been marked with a website address through its product splash screen. (Opp. at 22.) But Cirba did not produce any such

evidence during discovery.  Cirba now attempts to correct for its failure of proof through the uncorroborated testimony of two principals.  Their declarations do not satisfy Cirba's burden.

## I.      Cirba's Alleged Software Marking Is Insufficient

Cirba cannot point to evidence showing its software was properly marked with a website address.  (D.I. 1503 Exs. 37-39, 225-260 (splash screens with no web address); RSMF4 ¶¶ 19-20.) For the first time, and despite post-trial briefing on marking (D.I. 712 at 17-19), Cirba submits an uncorroborated declaration that the website address appears if a user "hovers" on the splash screen (D.I. 1515 ¶ 10; RSMF4 ¶ 21).  This only confirms that the address is not "*fixed*," as the statute requires.  (Mot. at 17-18.)  Cirba does not identify a single case overriding the statute's requirement to virtually mark a product with a website address or endorsing a "hyperlink."  And Cirba was obligated to set forth its evidence in response to VMware's discovery, but did not. (Exs. 66, 67.)  VMware objects to this evidence.  Fed. R. Civ. P. 37(c), 56(c)(2).

## II.     Cirba Has Failed to Present Admissible Evidence

Cirba does not dispute that "no produced copy of the Virtual Patent Marking page predates the complaint."  (D.I. 1512 ¶ 9.)  Cirba now relies on 21 unauthenticated exhibits that appear to be from the Wayback Machine.  (D.I. 1507 ¶ 11; D.I. 1515 ¶ 9; D.I. 1503 Exs. 16-36; RSMF4 ¶¶ 3, 11, 14.)  These exhibits are untimely; Cirba was obligated to produce them during discovery.  (Exs. 66, 67; D.I. 1142 Ex. 34 (interrogatory 14).)  *See AT&T v. Shared Commc'n Servs. of 1800-80 JFK Blvd., Inc.*, No. 93-CV-3492, 1995 WL 555868, at *2-3 (E.D. Pa. Sept. 14, 1995) (striking unproduced documents attached to MSJ affidavit and affiant's statements referring to those documents under Rule 37(c)).  These exhibits also are inadmissible as unauthenticated. *See Gavrieli Brands LLC v. Soto Massini (USA)*, No. 18-cv-462, 2019 WL 10248462, at *2 (D. Del. Apr. 18, 2019) (Wayback Machine screenshots must be authenticated by Internet Archive). VMware objects to this evidence.  Fed. R. Evid. 802, 901; Fed. R. Civ. P. 37(c), 56(c)(2).

Cirba's declarants do not present corroborating evidence that Cirba continuously maintained a website beginning in March 2015 to "associate" its products with its patents. (D.I. 1503 Exs. 6-7, 14, 37-41, 225-260 (virtual patent marking page without reference to the '687 patent), Exs. 12-13 (no reference to the '687 patent), Ex. 75 (no mention of marking); RSMF4 ¶¶ 3, 11.)  Mr. Hillier's declaration that Cirba's virtual patent marking page continuously identified the '687 patent cites no documentary evidence.  (RSMF4 ¶¶ 6, 8; Ex. 5 (post-complaint snapshot not showing continuous marking).)  The same is true for testimony that Cirba's marking practice was uninterrupted.  (*Id.* ¶ 13; D.I. 1516 ¶ 6.)

Cirba's cases are inapposite; they only address non-conclusory declarations.  Cirba presents no law allowing it to defeat summary judgment with uncorroborated marking testimony, especially as Cirba alone would have any corroboration in its possession.

## <u>SUMMARY JUDGMENT # 5—NO INDUCED INFRINGEMENT ('687 PATENT)</u>

Cirba agrees that inducement requires "a threshold finding of direct infringement" and that DRS without additional customer configuration does not infringe.  (Opp. at 26; D.I. 1513 ¶ 19.) Yet Cirba points to no evidence that any customer has configured DRS to infringe other than Dr. Madisetti's mere conjecture.  Cirba also offers no evidence that VMware intended to induce infringement or specifically instructed customers to use its products in an infringing manner.

Cirba characterizes its burden for showing direct infringement as a "low bar," but its authority all involves evidence that the accused products necessarily infringed when used as intended.  (Opp. at 26.)  *See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1364-65 (Fed. Cir. 2004) (failure to perform method would be malpractice and defendant testified that physicians infringed); *C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1377-80 (Fed. Cir. 2020) (device's FDA-approved use infringed, and manufacturer specifically instructed doctors to infringe); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364-66 (Fed. Cir. 2012)

13

(infringement necessary for practical uses of device and standards compliance).  Cirba admits that "enabling DRS alone is not enough to infringe a method claim."  (D.I. 1429 ¶ 19; D.I. 1513 ¶ 19.)

As Cirba cannot show that the accused products necessarily infringe, it must show that VMware customers actually use the accused products in an infringing manner.  Even if DRS *could* infringe (it cannot, *see* Mot. at 8-16), it is "not enough" to show mere capability.  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010).  But Cirba's evidence (Opp. at 27-28) merely shows use of VMware's products, not *infringing use*.  (RSMF5 ¶¶ 1-5, 10-12.)

Cirba points only to three VMware customers— ███████████ .  Cirba's ██ evidence does not show whether any VM-host rules were business constraints or were applied to each ██ ██ .  (*See* Mot. at 11-12, 21.)  As for ██████████ , Dr. Madisetti was clear that he was offering "no" opinions about whether they infringed.  (Mot. at 21-22.)  Dr. Madisetti's unsubstantiated "belief" that customers infringe cannot create a triable issue of fact.  *See Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (expert's unsupported conclusion on infringement insufficient to raise a genuine issue of material fact).

Even if Cirba could show direct infringement by a VMware customer, it still points to no evidence that VMware intended to induce it, as required.  Cirba merely points to evidence (Opp. at 28) that VMware markets the accused products (RSMF5 ¶¶ 8, 13-14), which is insufficient. *See HZNP Meds. LLC v. Actavis Labs. UT*, 940 F.3d 680, 701-02 (Fed. Cir. 2019) (product instructions insufficient to "encourage infringement").  Its reliance on VMware's purported willful infringement of the '367 (Opp. at 28) also is misplaced; this motion is about the '687 patent.  And Cirba still offers no basis for how VMware could have intended to induce infringement when it released the accused features two years before the '687 issued.  (Mot. at 23.)

## RULE 12(B)(1) AND 12(C) MOTION—INC.'S LACK OF STANDING ('492 PATENT)

Cirba does not dispute that, under Judge Stark and the Federal Circuit's prior rulings, Inc.

lacks Article III standing and any statutory right under § 281 as of the filing of the '492 patent counterclaim.  (Mot. at 24-25; *see* Opp. at 30 n.7.)  Cirba also concedes that Inc.'s Article III standing defect is incurable.  (Mot. at 25 n.4; Opp. at 31.)

Cirba's attempt to challenge the prior rulings fails.  Cirba rehashes its argument that Article III standing does not require exclusionary rights, citing *Schwendimann*.  Judge Stark correctly rejected that argument.  (D.I. 946 at 3-5.)  Cirba makes no attempt to show any "extraordinary circumstances" that justify revisiting prior rulings.  *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1337 (Fed. Cir. 2004).  No exceptional circumstances exist.  (D.I. 1318 at 7-12 (no clear error or manifest injustice, no intervening law, and no new evidence).)

Notwithstanding Inc.'s lack of standing, Cirba asserts that IP can remain as a counterclaim plaintiff.  Cirba contends that IP, a non-party to VMware's Virginia Action, can gain entrance into that action simply by including its name and allegations in the counterclaim.  A court in this Circuit has rejected that view.  *See Hubner v. Schoonmaker*, No. 89-3400, 1990 WL 149207, at *3-4 (E.D. Pa. Oct. 2, 1990) (rejecting non-party's attempt "to gain entrance into [the] lawsuit simply by including their names in the caption of the counterclaim").

Cirba's reliance on *Transcontinental Corp. v. Hyde*, No. 2:08-cv-805, 2009 WL 10710118 (D. Nev. June 23, 2009) for the proposition that IP properly asserted a counterclaim under Rule 13(h) also is misplaced.  An "entity can take advantage of [Rule 13] only after it has been admitted into the dispute."  *Hubner*, 1990 WL 149207, at *4.  It "should not be contorted to operate as a means by which one can seek entrance into an existing action."  *Id*.

Cirba's assertion that "VMware waited to the end of the case" to raise IP's improper joinder (Opp. at 29) ignores VMware's answer to Cirba's counterclaims. (D.I. 1009 ¶ 143 ("[B]ecause Cirba Inc. lacked constitutional and statutory standing to assert counterclaims . . . , it

could not properly join non-party Cirba IP[.]").)  VMware's reference to IP and Inc.'s counterclaim in its filings has no bearing on whether IP was properly joined.  (*See* Opp. at 29.)

Finally, Cirba's argument that it would be "[w]asteful" to "have IP sue VMware all over again" (Opp. at 28-29) misses the mark.  *Cirba* wasted resources by improperly joining IP and not seeking to add IP earlier.  Regardless, in light of the PTO's denial of Cirba's rehearing request, Cirba has already proposed to "remove the '492 patent from this case."  (D.I. 1493 at 2.)

## RULE 12(C) MOTION—FAILURE TO SATISFY § 101 ('687 AND '459 PATENTS)

Cirba is wrong that VMware is estopped from challenging the '459 asserted claims under 35 U.S.C. § 101, and it cannot argue that any estoppel reaches '687 claim 3.  And as Cirba's brief confirms, the 101 Challenged Claims are patent ineligible.  Cirba does not dispute that the claims reflect computer implementations of traditionally manual processes under *Alice* step one.  It also offers no substantial evidence of an inventive concept under *Alice* step two.

## I.      VMware's Motion Is Not Estopped as to the '459

The PTAB's final written decision ("FWD") that the '459 claims are invalid under § 112 does not estop VMware from raising its § 101 challenge now.  As Cirba's own authority confirms, estoppel applies when "all appellate rights [are] exhausted."  *Olaplex, Inc. v. L'Oreal USA, Inc.,* 855 Fed. App'x 701, 714 (Fed. Cir. 2021) (cited in Opp. at 32).  As Cirba may still appeal the FWD, estoppel does not yet apply.  Cirba's other authority is inapposite.  *See Intuitive Surgical, Inc. v. Ethicon LLC*, 25 F. 4th 1035, 1041 (Fed. Cir. 2022) (involving parallel IPRs).

## II.     '687 Claim 3 Stands Apart from Claim 7

VMware recognizes that Judge Stark held the "asserted ['687] claims," including claim 7, to be patent eligible in August 2019.  (Mot. at 26 n.5; Ex. 68 at 201:13-15.)  But Cirba asserted claim 3 one month later.  (Ex. 69 at 2.)  VMware also recognizes that he declined to allow patent eligibility defenses at the 2020 trial, apparently believing his decision on claim 7 applied equally

to claim 3.  (*See* D.I. 439 ¶ 74; D.I. 460 ¶ 17.)

Invalidity "must be analyzed on a claim-by-claim basis."  *MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1264 (Fed. Cir. 2013).  Judge Stark did not separately analyze that claim 3 is patent eligible.  Unlike claim 7, claim 3 requires "providing a mapping" to "facilitate [platform] transformation."  Cirba does not dispute this is trivial post-solution activity.

## III.    The 101 Challenged Claims Are Not Patent Eligible

*Alice* **Step One.**  Cirba's brief confirms the 101 Challenged Claims are directed to the abstract idea of analyzing data about a virtual environment and using the results to generate instructions or mappings for placing VMs on hosts.  Cirba does not dispute that virtualization technology was well known when it applied for the '459 and '687 patents.  (Mot. at 27.)  Nor does it dispute that the claimed "consolidation solutions" were traditionally performed "manually."  (*Id*.)  That the 101 Challenged Claims are computer implementations of the abstract idea embodied in *manual* processes resolves the § 101 inquiry in VMware's favor.

Cirba's argument that the '459's claims cannot be "directed to abstract ideas" because Judge Stark allegedly "found this type of invention eligible when considering the '492 patent" lacks merit.  (Opp. at 34 (citing '272 Action, D.I. 97 at 4).)  To support this position, however, Cirba offers only the observation that the '459 is a continuation of the '492 and cites a single passage from the specification.  (*Id*.)  That is insufficient to show patent eligibility, especially as Cirba does not contend that the '492's claims are representative of the '459's.

Cirba also insists that the '459 challenged claims must be patent eligible because they "focus[] on an improvement in computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity."  (*Id*. at 34-35 (quotations omitted).)  Cirba ignores that, as construed, the '459 claims embrace a purely *hypothetical* system.  (D.I. 1160

17

at 9-11 (construing "computer systems" to mean "physical, virtual, or hypothetical systems").)[6]
Cirba's citations to the shared specification reinforce this issue.  The '459 patent explains that
"hypothetical systems do not currently exist in the computing environment."  (Opp. at 35-36
(citing D.I. 1441 Ex. 4 at 5:66-6:1).)   Analyzing and determining placements for a system that
"does not [even] exist" cannot improve computer functionality.

As to '687 claim 3, Cirba circumvents the Court's page limits by incorporating its prior
claim 7 arguments wholesale.  (Opp. at 32 (blaming "space constraints," and citing D.I. 91).)  As
noted above, however, invalidity is assessed on a "claim-by-claim basis," and neither the parties'
prior briefing nor Judge Stark's § 101 decision (which predated Cirba's assertion of claim 3)
addressed claim 3 at all.  *MeadWestVaco,* 731 F.3d at 1264.

***Alice* Step Two.**  Cirba offers no substantial evidence of an inventive concept for the 101
Challenged Claims, merely referring to Judge Stark's prior decisions on '687 claim 7 and the '492
patent.  (*See* Opp. at 36.)  Those decisions concerned a different '687 claim (claim 7, not claim 3)
and a different patent (the '492, not the '459).  (*See* D.I. 80 at 2; D.I. 138 at 201:13-15; 272
Action, D.I. 97 at 2.)  The remainder of Cirba's arguments are at best conclusory.  For the '459,
Cirba alleges that its claims "determin[e] a placement of a source systems on target systems"—
without further explanation.  (Opp. at 36.)  And for the '687 patent, Cirba offers no inventiveness
argument at all.  Although Cirba also cites to lengthy block quotes from its Complaints, neither
Cirba nor the Complaints explain how these quotes allegedly show inventiveness.  (*See* D.I. 68
¶¶ 61-67 ('687); D.I. 992 ¶¶ 81-86 ('459); Opp. at 36.)  The Court thus may disregard them.  *See*
*Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (disregarding

---

[6] Notably, Judge Stark *invited* VMware to renew its Section 101 challenge if it had a good-faith
basis "based on whatever happen[ed] in claim construction."  (272 Action, D.I. 97 at 7.)

"conclusory" statement that feature "improves the functioning and operations of the computer").

## MOTION TO EXCLUDE EXPERT TESTIMONY (MADISETTI)

### I.    Cirba Confirms That Dr. Madisetti Applied the Wrong Construction

Like Cirba's response to VMware's summary judgment motion of non-infringement, its defenses of Dr. Madisetti's opinions regarding the Each-to-Each Limitation fail because they depend on an improper claim construction.

As VMware explained with its summary judgment motion, the Each-to-Each Limitation was added to the '687 claims during prosecution to obtain allowance.  (*See* Mot. at 9.)  It requires evaluating each VM with each host, in each case using rules pertaining to technical, business, and workload constraints.  (*See* MSJ #3, *supra* at 6-9.)  Thus, if any VM-host pair is not evaluated using rules pertaining to each constraint type, there is no infringement.  (*Id.*)  Cirba conceded this, and Judge Stark relied on that concession in his claim construction order.  (*See* Ex. 65 at 43:9-46:12, 51:15-19; D.I. 1160 at 8-9; D.I. 1441 Ex. 19 at 618:9-20; *see also* MSJ #3, *supra* at 6-9.)

Nevertheless, Cirba maintains that Judge Stark's construction can be met by a single rule set that includes rules for each constraint type—even if rules for some constraint types are not used—and rests its defense of Dr. Madisetti's opinions on this interpretation.  Per Cirba, Dr. Madisetti "expressly addressed the new construction" by making "clear his view that the Court's 2022 construction changed nothing of substance."  (Opp. at 37; *see also* MSJ #3, *supra* at 5, 8 (explaining that Judge Stark provided the construction specifically to resolve "a new dispute" that arose post-trial, after Dr. Madisetti formed his admittedly unchanged opinions).)  But the "new construction" Cirba dismisses as "nothing of substance" is its own distortion of Judge Stark's construction.  It is irrelevant whether Dr. Madisetti addressed that distorted version in his opening report, reply report, or deposition testimony, as Cirba claims.  (*See id.* at 37-38.)

Dr. Madisetti has not applied the correct construction requiring that rules for each

constraint type be used in each VM-host evaluation.  He assumes that rules may be skipped.  (D.I. 1453 Ex. 50 at 179:3-180:18 (testifying that claims are met even if an evaluation stops after one constraint type and skips the other two); Mot. at 40-41.)  This renders his opinions inadmissible. *See Sprint Commc'ns Co. L.P. v. Cox Commc'ns Inc.*, 302 F. Supp. 3d 597, 619-21, 624 (D. Del. 2017) (excluding opinion "contrary to" claim constructions); *Minerva Surgical, Inc. v. Hologic, Inc.*, No. 18-cv-217, 2021 WL 3048447, at *8 (D. Del. July 20, 2021) (excluding opinion).

Rather than show that Dr. Madisetti applied the correct construction, Cirba alleges that the parties disagree merely over "how" he applied it.  (Opp. at 38, 39-40.)  But even Cirba's proof that Dr. Madisetti applied its *incorrect* construction is inadequate.  (*See* Opp. at 39.)  Cirba submits a single paragraph of conclusory statements and unexplained string citations to support its claim that he "thoroughly explain[ed]" how VMware's products meet "the each-to-each and 'rule sets' limitations."  (*Id.*)  But the cited portions of his report are formulaic recitations of the claim language, and the cited claim chart pages only list alleged examples of technical, business, and workload constraints in isolation, without explaining how they are in fact used to evaluate each VM against each host.  (*See* Opp. at 39 (citing D.I. 1503 Exs. 215, 217 to 219).)  Although VMware identified these flaws in its opening brief (Mot. at 38-39), Cirba ignores them.

But ultimately, the issue is not *how* Dr. Madisetti applied the correct construction, but *whether* he did so.  Because he did not, Dr. Madisetti's opinions warrant exclusion.

## II.   Cirba Confirms That Dr. Madisetti's Opinions Regarding vCLS VMs Depend on an Impermissibly New Claim Construction

Cirba admits that Dr. Madisetti excludes "administrative system VMs" from "virtual guests within the meaning of the '687 claims."  (Opp. at 40-41.)  A "virtual guest" is a "virtual machine," or "VM" for short.  (*See* D.I. 1160 at 5 (Judge Stark replacing "virtual guest" with "virtual machine" in construction of Each-to-Each Limitation).)  Dr. Madisetti thus excludes a

specific type of virtual machine from a claim term that means "virtual machine."  That depends on a new claim construction, belatedly and hence impermissibly raised through expert testimony. *See Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 369-70 (D. Del. 2021).

Cirba concedes that it never previously raised this issue.  Over two rounds of claim construction, Judge Stark never considered whether "virtual guests" or "virtual machines" exclude system VMs—which Dr. Madisetti defines as VMs that "████████████████████████ ████████████████████████"  (D.I. 1443 Ex. 49, Vol. 2 ¶ 185.)  Cirba also does not dispute that it had ample opportunity to raise this issue, including two years of litigation since vCLS VMs were introduced, but did not raise it until Dr. Madisetti's infringement report.  (*See* Mot. at 42-43; Opp. at 40-41 (no response).)

Cirba instead argues that the "plain meaning" of "virtual guest" or "virtual machine" excludes system VMs, much as it might exclude, *e.g.*, bananas.  (Opp. at 41.)  But vCLS "VMs" are not bananas; they are "virtual machines."  Cirba argues, without support, that "vCLS VM" is a misleading label, but Dr. Madisetti himself calls them "administrative system *VMs*."  (*See id.*) The problem here is not his application of a plain meaning, but his attempt to exclude a specific type of virtual guest by arbitrary say-so.  This new construction is inadmissible.  *Intuitive*, 549 F. Supp. 3d at 369-70 (excluding opinion that narrowed scope of claim term).

## III.    Cirba Fails to Explain Why Dr. Madisetti's Criticisms of Dr. Nieh's Source Code Analysis Are Admissible

Dr. Madisetti claims to disagree generally with all of Dr. Nieh's source code analysis. (D.I. 1453 Ex. 50 at 72:11-18.)  But he never says which parts are wrong, or why.  The issue is not whether Dr. Madisetti explained his disagreements "to [VMware's] liking," as Cirba claims. (Opp. at 41.)  It is that he did not explain them.  *See T.N. Inc. v. Fid. Nat'l Info. Servs.*, No. 18-cv-5552, 2021 WL 5980048, at *5 (E.D. Pa. Dec. 17, 2021) ("the expert must have good grounds for

his or her belief, not subjective belief or unsupported speculation") (cleaned up).

Cirba does not show otherwise.  None of the five cited paragraphs from Dr. Madisetti's reply report identifies a single specific technical error in Dr. Nieh's source code analysis.  (*See* Opp. at 41-42 (citing D.I. 1503-16 Ex. 216 ¶¶ 39, 43, 77-79).)  Dr. Madisetti either simply disagrees without providing any analysis (*see* D.I. 1503-16 Ex. 216 ¶ 43) or disagrees only with Dr. Nieh's non-infringement conclusions but not his interpretation of the source code (*see id.* ¶¶ 39, 77-79).  Although VMware explained this in its opening brief (*see* Mot. at 44-45 (discussing these paragraphs)), Cirba offers no rebuttal.  VMware also noted Dr. Madisetti's inability to identify a single factual error at his deposition and his excuse that performing the required analysis would "take a lot of time."  (*Id*. at 44 (citing D.I. 1453 Ex. 50 at 75:21-76:5, 84:8-89:17).)  In lieu of responding substantively to these criticisms, Cirba simply states, with no explanation or record citation, that VMware mischaracterized Dr. Madisetti's testimony.  (*See* Opp. at 42.)  Ultimately, neither Dr. Madisetti's five paragraphs nor his testimony can support his stated disagreement with *all* of Dr. Nieh's analysis.  He must not be allowed to confuse the jury by disagreeing with Dr. Nieh's analysis of source code—a highly complex, technical topic—based on "subjective belief" and "unsupported speculation."  *T.N. Inc.*, 2021 WL 5980048, at *5.

## IV.   Cirba Cannot Cure Dr. Madisetti's Erroneous Source Code Opinion

Dr. Madisetti opines that the ██████ part of DRS 2.0 calls ██████.  (D.I. 1453 Ex. 50 at 108:21-109:17.)  But ██████ does not call ██████.  (*See* Mot. at 45-46.)  Cirba does not dispute this.  (*See* Opp. at 43 (arguing only that an entirely different part of DRS 2.0, ██████, calls the function[7]).)  Therefore, Dr. Madisetti's

---

[7] In another attempt to inject confusion, Cirba insinuates that ██████ and ██████ are not distinct components within DRS 2.0, and that Dr. Madisetti is free to mix and match functions from either component to show infringement.  (*See* Opp. at 43.)  But he has never articulated any such theory, and he has admitted that ██████ and ██████ handle entirely different

erroneous source code opinion should be excluded.

## **MOTION TO EXCLUDE EXPERT TESTIMONY (BERGMAN)**

### I.    **Mr. Bergman Fails to Tie Damages to Use of the '687 Method**

Cirba does not dispute that damages for a method claim must be correlated to the extent the patented method is used.  (Opp. at 44.)  Yet Cirba does not address Mr. Bergman's admission that he has never seen any evidence of the extent of use of the '687 patented method.

VMware is not seeking a "one-to-one correspondence" between units sold and specific instances of infringement.  (*Id.*)  VMware acknowledged that "the law does not require a precise finding of use."  (Mot. at 47-48.)  But the law still requires *some* evidence tying the accused sales and extent of use.  Cirba's opposition confirms it has none.

Instead, Cirba discusses the "value" and "benefits" of the claimed method, thereby conflating issues of use and apportionment.  (Opp. at 45-46.)  But apportionment cannot replace the legal requirement to limit method claim damages to "devices that actually performed the patented method."  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1359 (Fed. Cir. 2009).  Mr. Bergman must consider both in calculating damages for a method claim.

Unlike the cases that Cirba cites (Opp. at 44-45), Mr. Bergman does not present any evidence from which a jury could reasonably equate sales with actual practice of the claimed methods.  Nor does he present an opinion discussing the value of "having the patented invention *available* for use" rather than the value of the invention itself.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009).  And this case is not like *Exmark*, which did not involve a method claim or the accompanying use analysis.  Mr. Bergman ignores the usage

---

types of resources.  (D.I. 1453 Ex. 50 at 69:16-21.)  Courts in other cases have found Dr. Madisetti's opinions conflating different technologies to be inadmissible.  *See, e.g.*, *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 975-76 (Fed. Cir. 2022).

data produced in this case.  (Mot. at 47-48.)

Judge Stark's decision allowing Mr. Bergman's trial testimony does not excuse Mr. Bergman's present failure.  Since that decision, (i) Judge Stark expressed his "skeptic[ism]" of Cirba's infringement evidence and characterized it as "at best, weak" (D.I. 946 at 11, 12, n.6); (ii) Cirba forewent the opportunity to gather use evidence from VMware customers; and (iii) Mr. Bergman admitted he neither saw any evidence of use nor sought it.  (Mot. at 47-48.) Rather than addressing these developments, Cirba claims it would be "impossible" to calculate usage.  (Opp. at 46.)  That is no justification for assuming 100% use.  *See Niazi Licensing Corp. v. St. Jude Med. S.C., Inc*., 30 F.4th 1339, 1357 (Fed. Cir. 2022).   Mr. Bergman's opinion makes that assumption and must be excluded.

## II.     Mr. Bergman Cannot Support His Opinion for Direct Infringement

Cirba's allegations of direct infringement are based on VMware's own use and testing of the claimed method.  But Mr. Bergman's damages calculation is based on VMware's *sales* of the accused products, not its *use* of the claimed methods.  The Federal Circuit has called him to task for similar failures.  In *Packet Intelligence v. Netscout*, the Federal Circuit ruled that Mr. Bergman had failed to show direct infringement damages, as his "damages base was not tailored to any alleged internal use of the claimed methods."  965 F.3d 1299, 1315 (Fed. Cir. 2020).

Cirba asserts that Mr. Bergman conducted "a detailed and rigorous analysis" to correlate VMware's direct infringement with customer sales.  (Opp. at 49.)  Far from it.  Mr. Bergman opines in a single paragraph that VMware's direct infringement "enables its ability to provide the Accused Product to customers."  (D.I. 1503-28 Ex. 317 § 1 ¶ 197.)  Cirba's other citations do not provide a separate analysis for direct infringement.  (*See id.* ¶¶ 244-307, ¶¶ 398-455.)  Because Mr. Bergman's royalty calculations are "connected to existing data only by the *ipse dixit* of the expert," they should be excluded.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### III.    Mr. Bergman's Apportionment Methodology Is Unreliable

Cirba claims that Mr. Bergman "evaluated and explained a variety of quantitative data" in his apportionment methodology.  (Opp. at 47.)  But Cirba also does not rebut VMware's observation that the only basis for the 33% apportionment figure comes from Dr. Madisetti, who disclaimed responsibility.  (*See* Mot. at 49-50.)  And Cirba provides no explanation for how each of the supposedly "quantitative data" Mr. Bergman considers—such as "87% of customers" with affinity rules enabled, the "$100 per VM per year" price tag for a covered feature, VMware's contemplated acquisition price—support an apportionment factor of 33%.  (*See* Opp. at 47.)  This lack of explanation and rebuttal confirm that Mr. Bergman's royalty rate is speculative and excludable under *Exmark* and *LaserDynamics*, neither of which Cirba challenges.  (Mot. at 50.)

### IV.    Mr. Bergman's Lost Profits Calculation Rests on Shaky Grounds

Cirba concedes that it cannot claim all calculated lost profits without prevailing on the standing issue.  (Opp. at 49 n. 9.)  It also concedes it may not be entitled to any lost profits before IP and Inc.'s purported amalgamation, or the March 2021 Inc.-IP license amendment.  (*Id.* at 49-50.)  Inc.'s lost profits claim hangs on its repeatedly rejected standing argument.

As for IP, Cirba does not dispute that a patentee who does not sell any products cannot claim lost profits.  It also does not dispute that a patentee cannot claim lost profits of its non-exclusive licensee.  (Opp. at 50.)  Cirba's sole argument for IP's pre-amalgamation lost profits is its conclusory assertion that IP was selling products.  (*Id.*)  But this assertion directly contradicts not only this Court's recognition that "IP does not sell or offer for sale products and services" (D.I. 946 at 8; Mot. at 50), but also testimony from Mr. Somani (Ex. 70 at 18:15-22 ("Q. Does [IP] sell products?  A. No, it does not sell products.")) and Mr. Bergman (Ex. 57 ¶ 42; Ex. 64 at 1014:4-16.  Besides, Mr. Bergman has not disclosed any opinion relying on a theory that IP was selling products.  (*See* D.I. 1503-28 Ex. 318 ¶ 63.)

Dated: December 23, 2022

OF COUNSEL:

Arturo J. González
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
agonzalez@mofo.com
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


/s/ Anne Shea Gaza
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

Attorneys for VMware, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 30, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

**BY E-MAIL**

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Gary J. Toman
Weinberg Wheeler
Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
gtoman@wwhgd.com

Paul D. Clement
Andrew C. Lawrence
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
andrew.lawrence@clementmurphy.com

Julie M.K. Siegal
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
julie.siegal@kirkland.com

Courtland L. Reichman
Shawna L. Ballard
Jennifer Estremera
Michael G. Flanigan
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065

Christine E. Lehman
Adam Adler
Connor S. Houghton
Aisha Mahmood Haley
Brian C. Baran
Philip J. Eklem
Naveed S. Hasan
Reichman Jorgensen Lehman & Feldberg LLP
1909 K St, NW, Suite 800
Washington, DC 20006

Sarah O. Jorgensen
Reichman Jorgensen Lehman & Feldberg LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309

Jaime F. Cardenas-Navia
Wesley Lanier White
Khue V. Hoang
Peter T. Mastroianni
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017

RJ_densify@reichmanjorgensen.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*