IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., | C.A. No. 19-742-GBW (CONSOLIDATED) |
| *Plaintiffs/Counter-Defendants*, | **PUBLIC REDACTED VERSION** |
| v. | |
| VMWARE, INC., | |
| *Defendant/Counter-Plaintiff.* | |

## VMWARE'S OPENING BRIEF IN SUPPORT OF MOTION TO BIFURCATE TRIAL

Dated: January 6, 2023
Redacted Version: January 13, 2023

OF COUNSEL:

Arturo J. González
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
agonzalez@mofo.com
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

TABLE OF ABBREVIATIONS ........................................................................................... iii

I.      INTRODUCTION .......................................................................................................1

II.     NATURE / STAGE OF PROCEEDINGS AND BACKGROUND FACTS .....................2

III.    SUMMARY OF ARGUMENT IN FAVOR OF BIFURCATION .................................6

IV.    LEGAL STANDARD FOR BIFURCATION ................................................................7

V.     ARGUMENT ...............................................................................................................9

       A.     Bifurcation Could Conserve the Court's Resources by Obviating Much of the Upcoming Trial ......................................................................................9

            1.     After hearing an entire trial and reviewing post-trial motions, Judge Stark found Cirba's evidence "weak" ..........................................9

            2.     If the jury finds that VMware did not infringe the '687 patent, trial probably would end .............................................................13

       B.     Bifurcation Would Improve Juror Comprehension by Splitting Up Complex Issues .................................................................................................15

       C.     Bifurcation Would Prevent Prejudice to VMware Without Harming Cirba..........17

            1.     Bifurcation would prevent prejudice to VMware .....................................17

            2.     Bifurcation would not prejudice Cirba .....................................................18

VI.    CONCLUSION..........................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bd. of Regents v. Boston Sci. Corp.*,
No. 18-cv-00392-GBW, 2022 WL 5241931 (D. Del. Oct. 6, 2022) .......................................... 8

*Board of Regents v. Boston Scientific Corp.*,
No. 18-cv-392-GBW, 2022 WL 17403478 (D. Del. Dec. 2, 2022) ................................*passim*

*Ciena Corp. v. Corvis Corp.*,
210 F.R.D. 519 (D. Del. 2002) ......................................................................................... 7

*Enzo Life Sci., Inc. v. Digene Corp.*,
No. 02-cv-00212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003) ................................... 7

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................................ 16

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) ............................................................................................... 13, 18

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
No. 08-cv-00542-SLR, 2009 WL 2742750 (D. Del. Aug. 26, 2009) ...................... 8, 15, 16, 18

*Smith v. Alyeska Pipeline Serv. Co.*,
538 F. Supp. 977 (D. Del. 1982) ..................................................................................... 15

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
14 F.4th 1323 (Fed. Cir. 2021) .................................................................................. 6, 13

**Statutes and Other Authorities**

35 U.S.C.
§ 271(b) ........................................................................................................................ 6
§ 284 ........................................................................................................................... 13

Fed. R. Civ. P.
26(a)(2)(C) ................................................................................................................ 6, 16
42(b) ............................................................................................................................. 7

## **TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Cirba Inc. | "Inc." |
| Cirba IP, Inc. | "IP" |
| Inc. and IP, collectively or post-amalgamation | "Cirba" |
| U.S. Patent & Trademark Office | "PTO" |
| Patent Trial & Appeal Board | "PTAB" |
| U.S. Patent No. 8,209,687 | "'687 patent" or "'687" |
| U.S. Patent No. 9,654,367 | "'367 patent" or "'367" |
| U.S. Patent No. 10,523,492 | "'492 patent" or "'492" |
| U.S. Patent No. 10,951,459 | "'459 patent" or "'459" |
| U.S. Patent No. 8,336,049 | "'049 patent" or "'049" |
| U.S. Patent No. 8,875,266 | "'266 patent" or "'266" |
| U.S. Patent No. 9,521,151 | "'151 patent" or "'151" |
| Ex Parte Reexamination Proceeding Control No. 90/014,660 | "'687 reexam" |
| Exhibits attached to the concurrently filed Li Declaration | "Ex. __" |

## I.    INTRODUCTION

The PTO has invalidated every claim of Cirba's '492 and '459 patents on multiple grounds.  (D.I. 1493, 1496.)  Earlier this week, this Court granted a stipulation to sever and stay all claims relating to those patents.  (D.I. 1583.)  Meanwhile, in the co-pending '687 reexamination proceedings, an examiner has twice rejected on multiple grounds both asserted claims of Cirba's '687 patent and rebuffed Cirba's attempt to overcome the same.  (D.I. 1317; Ex. 1.)  The '367 patent remains live ████████████████████████████████████████ And as for Cirba's trademark claim, a jury already found for VMware and Cirba did not seek a new trial.  (D.I. 1440 at 4-5.)

Given the current status of Cirba's patents, the most efficient path remains to stay this case.  (*See* D.I. 1362.)  VMware has already told Cirba that it will dismiss its own patent claims against Cirba, if the PTO invalidates Cirba's '687 patent and the invalidity decisions on Cirba's '492, '459, and '687 patents are upheld after any final appeal.  (*See* Ex. 2 at 1.)  The only remaining claim then would be for infringement of the '367 patent ████████████████████ ████████████████████████████████████████.  (*See* Li Decl. ¶ 19.)  Thus, this case will likely resolve itself if the Court stays it pending resolution of the related PTO and appellate proceedings.

If the Court is not inclined to stay the case, then VMware proposes bifurcating the trial into two phases.  In the first phase, the jury would consider direct infringement and invalidity.  In the second phase—if necessary—the same jury would consider evidence of willfulness, knowledge and intent for induced infringement, and damages.  Phasing would conserve resources because, if the jury finds that VMware did not infringe Cirba's '687 patent, or that the '687 patent is invalid, there probably would be no need for a second phase.  Phasing also would improve juror comprehension by splitting up complex issues and would minimize prejudice to VMware without

harming Cirba.  This Court recently ordered such phasing on similar facts and for similar reasons in *Board of Regents v. Boston Scientific Corp.*, No. 18-cv-392-GBW, 2022 WL 17403478 (D. Del. Dec. 2, 2022).  Absent a stay, it should do the same here.

## II.  NATURE / STAGE OF PROCEEDINGS AND BACKGROUND FACTS

**Cirba's Inflammatory Evidence Contributes to New Trial.**  In 2019, two Cirba entities, Inc. and IP, sued VMware for patent and trademark infringement.  (D.I. 1.)  IP, a non-practicing entity, owned the asserted '687 and '367 patents and had granted Inc. a non-exclusive license to the same.  (*See* D.I. 752 at 6-9.)  As Cirba's CEO has explained, ███████████████████████ ████████████████████████████  (*See, e.g.*, Ex. 3 at 160:4-25.)

At trial, Cirba argued that VMware had injured Inc. and that the injury, "if not corrected by the jury[,] would drive Densify [*i.e.*, Inc.] out of business . . . ."  (D.I. 946 at 8.)  Cirba introduced evidence that VMware was "the 800 pound gorilla" that sought to "destroy" Densify, including an email repeating a customer's characterization of "put[ting] a bullet in Cirba's head." (*See, e.g.*, Ex. 4 at 3, Ex. 5 at 2; Ex. 19 at 824:23-825:6.)  Cirba also introduced extensive evidence of acquisition discussions with VMware and implied that VMware had stolen ideas and information from Cirba during those meetings.  (*See, e.g.*, Ex. 19 at 177:18-186:23, 308:2-312:12.)  In this context, the jury rejected the trademark claims but awarded Cirba damages for patent infringement.  (*See* D.I. 550.)

Cirba's victory was fleeting.  In June 2020, Judge Stark found that Inc. was a bare licensee and lacked standing to sue VMware.  (D.I. 752 at 10.)  He then found that "there [was] a 'high probability' that the outcome of the January trial would have been different if the Court had ruled on the standing issue prior to trial . . . ."  (D.I. 946 at 11.)  Without Inc. as a party, "much, if not all of the evidence 'Densify' was permitted to present . . . about competition and harm *would*

*likely have been excluded*."[1]  (*Id.* at 8.)  Meanwhile, Cirba's evidence of infringement was "at best, weak," leaving Judge Stark "skeptical" of the jury verdict.  (*Id.* at 11-12).  And as for willfulness, he wrote, "it remains the Court's strong inclination that it would not enhance damages, even if the jury's verdict of willful infringement were being upheld" (*id.* at 16), and invited VMware to move for summary judgment on the same (*id.* at 17 ("The Court will permit VMware to press a motion seeking such relief should it wish to do so.").)  Judge Stark then granted VMware's motion for a new trial.  (*Id.*)

**Cirba Admits that Inc.'s Standing Defect Is Incurable.**  Judge Stark's determination that Inc. lacked standing threatened Cirba's case.  As Judge Stark noted, much of Cirba's evidence from the first trial addressed VMware's alleged efforts to harm Inc.  (D.I. 946 at 7-9.)  Such evidence would not be admissible in a retrial without Inc. as a plaintiff.  (*Id.*)  And without it, the outcome likely would have been different.  (*See id.* at 7 ("Had Inc. been dismissed in advance of the January trial . . . it is quite probable that the outcome would have been different").)

Cirba asked Judge Stark to certify his order for appeal (D.I. 961 at 1-3), but he refused (D.I. 994 at 42:18-50:10).  Cirba then petitioned for mandamus, but the Federal Circuit denied the petition.  (D.I. 1045 at 9, 12.)  Although Inc. and IP belatedly amended their license to give Inc. exclusive rights (D.I. 1245 Ex. 21), Cirba has admitted that it is not possible to "fix" Inc.'s Article III standing defect (*see* D.I. 1080 at 17:23-31 ("[W]e've been poured out of court for Article III injury . . . . [T]here's no ability to fix it, and there's no point in fixing it")).

Unable to reverse Judge Stark's order, Cirba tried to go around it.  On April 20, 2022, Inc. and IP amalgamated, purportedly fusing two entities into one.  (*See* D.I. 1247 Exs. 326-334.)  Cirba claimed: "Now that Inc. and IP have been amalgamated . . . the evidence of harm would be

---

[1] All emphasis is added and all internal citations are omitted unless otherwise stated.

identical to what the first jury heard." (D.I. 1336 at 6-7.) Then, in July 2022, Cirba made a "veiled attempt to reassert the substantive rights of Inc." (D.I. 1396 at 11) via a motion styled "Motion to Update the Case Caption or Substitute the Parties" (D.I. 1327). This Court denied Cirba's motion, writing: "the Court cannot ignore the potential prejudice that VMware may face were post-amalgamated Cirba Inc. able to advance its now repeated attempt to assert the rights of a party dismissed for lacking standing." (D.I. 1396 at 11-12.)

**The PTO Invalidates Cirba's Patents and VMware Moves to Stay.** While defending itself in district court, VMware also challenged Cirba's patents at the PTO. By the summer of 2022, Cirba's '492, '459, and '687 patents were on rocky ground:

- On December 10, 2021, the PTAB found that "it is more likely than not that the challenged claims of the '459 patent are unpatentable" and instituted post grant review of that patent. (D.I. 1106 at 1 (quoting Exhibit A to same).)
- On May 4, 2022, the PTAB cancelled every claim of the '492 patent. (D.I. 1254.)
- On July 7, 2022, a patent examiner rejected both asserted claims of the '687 patent in a non-final office action. (D.I. 1317.)

In light of those developments, VMware renewed its motion to stay on September 9, 2022. (D.I. 1362.) VMware explained that a stay would economize the litigation because allowing the PTO and the Federal Circuit to resolve the validity of Cirba's patents would save resources and avoid inconsistent rulings. (D.I. 1363 at 1.)

After VMware renewed its motion to stay, the PTO continued its march through Cirba's patents. On October 4, 2022, Cirba interviewed the patent examiner in the '687 reexam, but "[n]o agreement was reached[.]" (Ex. 1 at 3.) On November 29, 2022, the Director of the PTO denied Cirba's request for rehearing of the PTAB's order invalidating the '492 patent. (D.I. 1493.) On

December 7, 2022, the PTAB invalidated every claim of Cirba's '459 patent. (D.I. 1496.) And although the patent examiner has not yet issued a final office action in the '687 reexam, they probably will do so soon. (*See* D.I. 1363 at 9; D.I. 1364 Ex. 25.)

**The Parties Narrow the Issues, But Trial Remains Daunting.** Earlier this week, the Court granted the parties' stipulation to sever and stay all claims relating to Cirba's '492 and '459 patents. (D.I. 1583.) Thus, only Cirba's '687 and '367 patents remain at issue.[2] VMware also has narrowed its claims to only its '049, '266, and '151 patents (down from eight patents). (*See* Ex. 6.) Absent a stay or favorable rulings on VMware's pending motions for summary judgment on the '687 and '367 patents, a jury trial on the parties' remaining patent claims would involve:

| Patent | Claims & Defenses |
|---|---|
| Cirba's '687 patent | Direct infringement, induced infringement, willful infringement, invalidity, and damages. (*See, e.g.*, D.I. 68 ¶¶ 99-100, 110-111; D.I. 150, Counterclaims ¶¶ 130-132.) |
| Cirba's '367 patent | Direct infringement, induced infringement, willful infringement, and damages. (*See, e.g.*, D.I. 68 ¶¶ 113-114, 120-121.) |
| VMware's '049 patent | Direct infringement, induced infringement, invalidity, and damages. (*See, e.g.*, D.I. 150, Counterclaims ¶¶ 115-120; D.I. 182 ¶ 155.) |
| VMware's '266 patent | Direct infringement, induced infringement, invalidity, and damages. (*See, e.g.*, D.I. 150, Counterclaims ¶¶ 103-108; D.I. 182 ¶ 151.) |
| VMware's '151 patent | Direct infringement, induced infringement, invalidity, and damages. (*See, e.g.*, D.I. 150, Counterclaims ¶¶ 121-126, D.I. 182 ¶ 157.) |

Such a trial would be complex. The accused products are computer programs that interoperate with hypervisors to optimize placement of virtual machines on servers. (*See, e.g.*, Ex. 7 ¶¶ 64-92; Ex. 8 ¶¶ 63-78; Ex. 9 ¶¶ 53-123.) As Cirba's CTO explained: "[V]irtualization is a technology that if you have physical computers, what it lets you do is make the computer run software that looks like a computer but isn't. . . . [I]t thinks it has the ability to do it itself, and that

---

[2] VMware moved for summary judgment of no infringement of the '687 patent and no willful infringement of the '367 patent. (D.I. 1420, 1422, 1427.) ███████████████████ ████████████████████████████████ (*See* Li Decl. ¶ 19.)

lets you run multiple applications on one real computer, and they don't really know they're not on a real computer." (Ex. 19 at 241:4-10.)  A "hypervisor," meanwhile, is a computer program that "provides [an] elaborate illusion to an operating system so that it believes that it's running . . . on a real machine when, in reality, it is running on a virtual machine." (*Id.* at 1190:10-13.) Critically for the computing industry, VMware's technology can "take a virtual machine and move it between hosts . . . with no downtime to the virtual machine." (*Id*. at 1197:24-1198:2.)  In view of the complexity of the accused products, trying infringement alone may involve testimony by up to four technical experts and one Rule 26(a)(2)(C) technical witness.  (*See, e.g.*, Exs. 7-11.)

And that is just the start.  The parties have disclosed three more experts to testify about hypothetical negotiations in the context of reasonable royalties.  (*See* Ex. 12 § 1, ¶ 247; Ex. 13 ¶ 73; Ex. 14 at 37.)  Inducement will require the jury to find facts regarding third parties' conduct and the parties' knowledge and intent.  *See, e.g.*, 35 U.S.C. § 271(b).  Willfulness will require Cirba to show VMware's intent to infringe Cirba's patents.  *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021).  As things stand, the jury, the Court, and the parties face a long and complex two-week trial.  (*See* D.I. 1489 ¶ 22.)

### III.    SUMMARY OF ARGUMENT IN FAVOR OF BIFURCATION

This Court recently bifurcated trial in *Board of Regents v. Boston Scientific Corp.* into two phases: (1) direct infringement and invalidity; and (2) if necessary, willful infringement, damages, and knowledge and intent for induced infringement.  2022 WL 17403478, at *3.  The Court explained that bifurcation could (1) conserve judicial resources by "sav[ing] multiple days of trial" if the defendant won on infringement or invalidity, (2) "help the jurors comprehend evidence of invalidity and infringement[,]" and (3) reduce prejudice to the defendant without harming the plaintiffs.  *Id.* at *1-3.

Like *Board of Regents*, this is a patent case involving complex technology and claims and defenses of direct infringement, induced infringement, invalidity, willfulness, and damages.  If the Court denies VMware's motion to stay, then the Court should follow *Board of Regents* and try direct infringement and invalidity in a first phase and all other claims and defenses in a second phase.[3]  Bifurcation would conserve resources, limit confusion, and prevent prejudice to VMware.

## IV.     LEGAL STANDARD FOR BIFURCATION

Judges have "broad discretion" whether and how to bifurcate trial.  Fed. R. Civ. P. 42(b).  As this Court has explained, judges exercise that discretion in view of three factors: "whether bifurcation will [1] avoid prejudice, [2] conserve judicial resources, and [3] enhance juror comprehension[.]"  *Bd. of Regents*, 2022 WL 17403478 at *1.  The party moving for bifurcation bears the burden to show that it is "appropriate."  *Id.*

Courts have exercised their broad discretion to bifurcate trial in patent cases.  *See Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) ("[e]xperienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to the jury.") (quoting article)).

In this district, bifurcating patent trials is well-traveled ground:

- In 2003, Judge Farnan wrote that "bifurcation of complex patent trials has become common."  *Enzo Life Sci., Inc. v. Digene Corp.*, No. 02-cv-00212-JJF, 2003 WL 21402512 at *5 (D. Del. June 10, 2003).

---

[3] VMware does not believe that Cirba's trademark claims are included in the new trial.  (*See* D.I. 1440 at 4-5; D.I. 1566 at 1-2.)  If the Court disagrees, then VMware proposes bifurcating the trademark claims in the same fashion as the patent claims.

- In 2009, Judge Robinson "determined that bifurcation is appropriate, if not necessary, in all but exceptional patent cases." *Robert Bosch LLC v. Pylon Mfg. Corp.*, No. 08-cv-00542-SLR, 2009 WL 2742750 at *1 (D. Del. Aug. 26, 2009).

- In 2022, Chief Judge Connolly ordered bifurcation of all his non-Hatch-Waxman patent cases by default: "Unless otherwise agreed to by the parties and the Court, the trial will be phased such that willful infringement and damages will be tried only if there is a finding of infringement."  Chief Judge Connolly, Form Scheduling Order for Non-Hatch-Waxman Patent Cases in Which Infringement Is Alleged, ¶ 27 (rev., Apr. 18, 2022).  (Ex. 15.)

This Court recently bifurcated a trial in *Board of Regents*.  There, the plaintiffs alleged that the defendant's "'Synergy' brand coronary stents" infringed a single asserted patent.  2022 WL 17403478 at *1.  At summary judgment, this Court was "skeptical that [the plaintiff] has promulgated evidence sufficient to support enhanced damages[,]" "recognize[d] the potential value of bifurcation where, as here, the issue of willfulness is close at summary judgment[,]" and ordered the parties to brief bifurcation.  *Bd. of Regents v. Boston Sci. Corp.*, No. 18-cv-00392-GBW, 2022 WL 5241931 at *9-10 (D. Del. Oct. 6, 2022).

After the parties did so, this Court found that all three factors favored bifurcation.  First, bifurcation could "save multiple days of trial—*e.g.*, by eliminating expert damages testimony—if the jury finds for [the defendant] on infringement or invalidity."  *Bd. of Regents* 2022 WL 17403478 at *2.  Second, "a focus only on technical issues in the first phase . . . will help the jurors comprehend evidence of invalidity and infringement."  *Id.*  Third, because "the substance of the testimony that [the plaintiff] will elicit from the witnesses will differ by trial phase . . . [the plaintiff] would not suffer meaningful prejudice from bifurcation."  *Id.* at *3.  Instead, bifurcation

-8-

could reduce the prejudice to the defendant because the plaintiff's evidence of willfulness was "limited" and threatened to "bias the jury's infringement and invalidity decisions."  *Id.*  Thus, this Court split trial into two phases: (1) "direct infringement and invalidity," and (2) "if necessary . . . willful infringement, damages, and knowledge and intent for induced infringement."  *Id.*

## V.    ARGUMENT

The Court should bifurcate trial into the same two phases as in *Board of Regents*.  In the first phase, the parties would try direct infringement and invalidity.  In the second phase—if necessary—the parties would try any remaining issues of inducement, willfulness, and damages.

Bifurcation offers three main benefits.  First, it would conserve resources because Cirba's direct infringement case is weak and a second phase may not be necessary.  Second, it would improve juror comprehension by splitting up difficult concepts.  Third, it would combat prejudice to VMware from Cirba's use of weak willfulness evidence without injuring Cirba.

### A.    Bifurcation Could Conserve the Court's Resources by Obviating Much of the Upcoming Trial

In *Board of Regents*, this Court found that bifurcation could "save multiple days of trial—*e.g.*, by eliminating expert damages testimony—if the jury finds for [the defendant] on infringement or invalidity."  *Id.* at *2.  The Court did not require proof that the defendant would win because even "potential savings in judicial resources from bifurcation far outweigh[ed] the minimal costs a phased trial may impose."  *Id.*  Bifurcation offers the same benefits here.

### 1.    After hearing an entire trial and reviewing post-trial motions, Judge Stark found Cirba's evidence "weak"

After the first trial, Judge Stark was "skeptical" of the jury's verdict (D.I. 946 at 12), and concluded, "[h]ad Inc. been dismissed in advance of the January trial, that trial would have looked so materially different that it is quite probable the outcome would also have been different" (*id.* at 7.)  As Judge Stark explained, Cirba won the first trial by prejudicing the jury with evidence and

arguments about VMware's efforts to buy Cirba and VMware's purported attempts to purposely harm Inc.  (*See id.* at 8-11.)  Here are just a few examples of such arguments from Cirba's opening statement and closing argument (none of which would be relevant to the first phase of a *Board of Regents* type bifurcated trial):

- VMware had discussions in 2007 "with the intent of just finding out what Densify was doing so that they could compete with them."  (Ex. 19 at 177:25-178:2.)

- "VMware calls itself the 800-pound gorilla, and no one wants to pick a fight with the 800-pound gorilla."  (*Id.* at 179:12-13.)

- Later, there were additional acquisition discussions to "find out more information under the guise of an acquisition."  (*Id.* at 182:6-7.)

- VMware's "plan was to destroy Densify."  (*Id.* at 185:24-25.)

- "[W]hat emerges is a pattern and practice of taking somebody else's technology for the purpose of destroying Densify."  (*Id.* at 1760:18-20.)

- VMware has "this dark underbelly of trying to take out competitors, put nails in the coffin, bullets in the head, destroy them, take what they have because they're the dominant player."  (*Id.* at 1761:1-3.)

- "They're sort of, I hate to say it this way but I'm going to say it, there is an arrogance to it.  You don't have a Ph.D from an elite Ivy League school.  If you are not rich, if you are not VMware, then you can't invent stuff."  (*Id.* at 1761:4-8.)

- "[I]f they could get it right, it would put a bullet in Cirba's head."  (*Id.* at 1773:1-2.)

- "It's buy versus steal."  (*Id.* at 1776:21.)

- "They literally didn't care whether Densify had patents."  (*Id.* at 1777:11.)

-10-

- "Densify has got a bullet in its head.  It's toast." (*Id.* at 1784:24-25.)

- VMware is "the 800-pound gorilla in this space." (*Id.* at 1790:13.)

- "[T]hey're big and they're scary." (*Id.* at 1791:3.)

- "[I]f there is a bully at school and they're doing something, your first choice is not to attack them." (*Id.* at 1792:2-4.)

- "[T]he folks with the Ph.D.s thought you didn't need host-based placement." (*Id.* at 1796:7-8.)

- "And I said before, this would put a bullet in Cirba's head . . . ." (*Id.* at 1803:1-2.)

- "And we see at the end, after all, what the point is, which is to destroy Densify." (*Id.* at 1804:16-17.)

- "Now, to be sure, the guy that wrote the bullet-in-the-head email, just some sales guy, they demoted him.  Is that really it?" (*Id.* at 1805:3-5.)

- "[W]e looked at the document from them that explains what happens, you know, that 800-pound gorilla document, what happens when you go up against VMware[.]" (*Id.* at 1888:12-14.)

- "[I]t doesn't matter how much money you have, how big a corporation you are, how many Ph.D.s you have, they've got to stay off of your property." (*Id.* at 1889:18-19.)

- "They don't care about people's patents.  They're going to take what they want. And if you dare to come into court, they're going to blame you for it." (*Id.* at 1890:24-1891:1.)

There is more where this came from, and this is just Cirba's counsel's summary of the evidence and argument.  Listing all the testimony on these topics would take dozens of pages.

Now that Inc. is no longer a plaintiff, most (and perhaps all) of this evidence should not be admissible.  The '687 and '367 patents are Cirba's only patents that have not been stayed and, as Judge Stark found, only IP had standing to assert them.  (D.I. 752 at 3.)  At the new trial, Cirba therefore only will be able to complain of *IP*'s alleged injuries, not *Inc.*'s.  (D.I. 1396 at 11 ("[a] substituted party can assert *only* the rights of the original party"); *id.* at 12 ("the Court cannot ignore the potential prejudice that VMware may face were post-amalgamated Cirba Inc. able to advance its now repeated attempt to assert the rights of a party dismissed for lacking standing").)

But even assuming, *arguendo*, that Cirba could introduce such evidence and arguments, it could not do so in the first phase of a bifurcated trial.  In a first phase limited to direct infringement and invalidity, the jury only would hear evidence regarding whether (1) the accused products practice the asserted claims and (2) the asserted claims are invalid.   Thus, the first phase would be limited in scope—it only would require one or two witnesses to introduce each company, the accused products, and the asserted patents, plus a few technical witnesses.

A second phase is unlikely.  Cirba's infringement case has not improved since Judge Stark found its evidence, "at best, weak." (D.I. 946 at 11.)  As VMware explained in its summary judgment motion, VMware's software does not infringe the '687 patent because it does not practice a critical "each-to-each" limitation.  (D.I. 1440 at 8-16.)  That limitation requires "evaluating each virtual machine against each virtual host and other virtual machines, *in each case* using one or more rule sets pertaining to each of technical, business, and workload constraints." (D.I. 1160 at 5.)  Even Cirba's technical expert has admitted that VMware's software does not evaluate each constraint for each virtual machine: "███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████" (Ex. 10 ¶

39.)  In short, Judge Stark was right: in a fair trial, there is a "high probability" that the jury will find that VMware did not infringe the '687 patent.  (D.I. 946 at 11.)[4]

### 2.   If the jury finds that VMware did not infringe the '687 patent, trial probably would end

A verdict that VMware did not infringe the '687 patent probably would obviate the second phase.  Without direct infringement of a valid patent, there can be no inducement, willful infringement, or damages.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) (inducer must "lead another to engage in conduct that happens to amount to infringement"); *SRI Int'l*, 14 F.4th at 1330 (willfulness requires "deliberate or intentional infringement"); 35 U.S.C. § 284.  And without the '687 patent, it would not make economic sense for the parties to continue to litigate the remaining patents, ████████████████████ ███████████████████████████████

As the record from the first trial demonstrates, the savings from skipping most or all of the second phase would be significant.  For example, during the first trial Cirba introduced substantial evidence regarding VMware's alleged knowledge and motive to infringe Cirba's patents.  This included live testimony about discussions in 2007 and 2014-2015 regarding VMware potentially investing in or acquiring Cirba.  (*See, e.g.*, Ex. 19 at 271:1-14, 308:2-309:5; 310:16-312:15; 859:21-887:10, 891:25-899:17, 937:5-938:15, 1053:3-1055:25.)  It also included videotaped testimony from four VMware witnesses.  (*See, e.g., id.* at 727:2-729:1; 739:24-740:22; 779:11-795:20; 797:2-803:6; 804:8-815:10.)  In rebuttal, VMware introduced evidence that Cirba's alleged harm resulted, at least in part, from Cirba's poor customer service.  (*See, e.g., id.* at 1078:19-1087:19.)  None of that evidence would come in during the first phase.  *See Global-*

---

[4] VMware has told Cirba that it believes Phase 1 can be tried in 4 days.  (Ex. 2.)

*Tech*, 563 U.S. at 761 n.2 ("Direct infringement has long been understood to require no more than the unauthorized use of a patented invention").

In fact, much of the evidence that came in at the first trial would not come in during the first phase of a bifurcated trial. The following chart identifies some topics from the first trial that do not relate to direct infringement or invalidity and therefore only could come in—if at all— during a second phase of trial:

| Witness | Testimony from First Trial |
|---|---|
| Andrew Hillier (Cirba) | Testified to acquisition talks between Cirba and VMware, VMware's competition with Cirba, Cirba's loss of customers following release of vROps 7.0, and Cirba's concerns about DRS 2.0. (*See* Ex. 19 at 271:1-14, 308:2-320:20.) |
| Riyaz Somani (Cirba) | Testified to VMware's competition with Cirba, Cirba's loss of customers following VMware's announcement of vROps 7.0, VMware's purported theft of Cirba's technology, Cirba's revenue, and Cirba's competition with Turbonomics. (*See id*. at 659:3-680:13, 1462:13-1468:6.) |
| Greg Lavender (Third-Party) | Testified to ███████ savings from using Cirba's product, recommending that VMware acquire Cirba, and suggesting that VMware develop host-based placement features. (*See id*. at 723:8-732:6.) |
| Raghu Raghuram (VMware) | Testified to VMware's competition with Cirba, VMware's purported copying of Cirba's product, whether VMware knew of Cirba's intellectual property, acquisition talks between VMware and Cirba, and VMware's purported campaign to displace Cirba. (*See id*. at 734:8-741:20, 779:9-795:22.) |
| Ajay Singh (VMware) | Testified to VMware's "build vs buy" decision. (*See id*. at 796:22-803:6.) |
| Pat Gelsinger (VMware) | Testified to acquisition talks between VMware and Cirba and emails that purport to show copying of Cirba features. (*See id*. at 804:12-827:13.) |
| Chandra Prathuri (VMware) | Testified to acquisition talks between VMware and Cirba, VMware's revenue projections if Cirba were acquired, VMware's purported interest in Cirba's intellectual property, VMware's purported copying of Cirba's features, and VMware's purported campaign to destroy Cirba. (*See id*. at 829:11-887:10, 891:25-918:6) |
| Jim Bergman (Expert) | Testified to his expert opinion regarding a reasonable royalty for the '687 and '367 patents. (*See id*. at 924:13-961:11, 1000:18-1021:22.) |
| Gerry Smith (Cirba) | Testified to the value of Densify patents, the 2007 and 2015 acquisition talks, and VMware's alleged recruitment of a Cirba employee. (*See id*. at 1051:12-1068:3.) |
| Kit Colbert (VMware) | To rebut arguments of willful infringement, testified to VMware's history, culture, and acquisition practices. (*See id*. at 1125:9-1153:4.) |

| Chris Wolf (VMware) | Testified to his contacts with Cirba, an email that he wrote that allegedly provided motive for the infringement, and his lack of involvement in the acquisition discussions.  (*See id*. at 1387:17-1404:18.) |
|---|---|
| Scott Browne (Cirba) | Testified to the fair market value of Cirba's software.  (*See id*. at 1452:7-1456:19.) |

And even the foregoing chart underestimates the savings from bifurcation.  Because none of VMware's '049, '226, and '151 patents were at issue during the first trial, there is more evidence about inducement and damages pertaining to those patents that the jury would not hear if it rejected VMware's infringement arguments during phase one.  One example is that VMware intends to call a damages expert that it did not call during the first trial to testify regarding VMware's asserted patents.  (*See* Ex. 14.)  As in *Board of Regents*, "bifurcation would conserve judicial economy[.]"  2022 WL 17403478 at *2.

**B.   Bifurcation Would Improve Juror Comprehension by Splitting Up Complex Issues**

In *Board of Regents*, this Court found that bifurcation would improve juror comprehension in view of the "technical issues likely to emerge at trial[.]"  *Id*.  This Court's reasoning made sense: the accused products were coronary stents and, as Judge Robinson wrote in *Robert Bosch*, "the burden imposed o[n] a jury in a patent trial is extraordinary."  2009 WL 2742750 at *1.  "One trial of both [liability and damages] would tend to clutter the record and confuse the jury."  *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 984 (D. Del. 1982).

The same is true here.  The accused products are computer programs that optimize placement of virtual machines on servers.  (*See, e.g.*, Ex. 7 ¶¶ 64-92; Ex. 8 ¶¶ 63-78; Ex. 9 ¶¶ 53-123.)  Their complexity is astounding: VMware's DRS 2006 feature alone, for example, had "about 3.5 million lines of [source] code" (Ex. 19 at 1291:3-8), and was the work of—Cirba admitted—"a genius" (*id*. at 1779:15).  And DRS 2006 was just a precursor to the later accused DRS software versions, which included even more functions.  (*See e.g., id.* at 1254:11-17.)  To a

-15-

jury of laypersons unfamiliar with "virtual machines," "load balancing," and "hypervisors," the accused technology may seem inscrutable.  (*See* Ex. 16 at 4-6 (listing accused VMware products); Ex. 17 at 1 n.1 (listing accused Cirba products).)

The products' complexity will bleed into trial on infringement.  At the first trial, the experts gave voluminous testimony about whether VMware's products infringed just two claims of the '687 patent.  (*See, e.g.*, Ex. 19 at 468:19-540:18 (Dr. Madisetti), 1300:18-1359:25 (Dr. Nieh).)  This took so long that Judge Stark said: "And if they can shorten the rest of [the expert's] testimony, that would be great."  (*Id.* at 555:24-25.)  The upcoming trial will feature two more retained technical experts (Dr. Menasce, Dr. Dinda), an additional Rule 26(a)(2)(C) technical witness (Dr. Holler), three more patents (VMware's '049, '266, and '151 patents), and even more accused products (at least Cirba's Densify SaaS and on-premise software).  As in *Board of Regents*, "a focus only on technical issues in the first phase . . . will help jurors comprehend evidence of . . . infringement."  2022 WL 17403478 at *2.

Trying damages, inducement, and willfulness at the same time would make things much worse.  For example, both parties seek reasonable royalties as damages for infringement.  (*See, e.g.*, Ex. 12 § 1, ¶ 14; Ex. 14 at 7.)  To value the royalties, the jurors will have to balance the fifteen factors from *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  The fifteenth factor, the hypothetical negotiation, will require the jurors to analyze (and the parties to present upon and the Court to referee) the "impenetrable . . . commercial complexities of the hypothetical market[.]"  *Robert Bosch*, 2009 WL 2742750 at *1.  This is no small task, especially in the context of a consolidated trial and multiple hypothetical negotiation dates for different asserted patents.

### C. Bifurcation Would Prevent Prejudice to VMware Without Harming Cirba

In *Board of Regents*, this Court found that bifurcation would prevent prejudice to the defendant from the plaintiffs' weak willfulness case without prejudicing the plaintiff. *See* 2022 WL 17403478 at *3. The same is true here, and there is a trial record to prove it.

### 1. Bifurcation would prevent prejudice to VMware

Cirba claims that, at the upcoming trial, it will be able to re-introduce the same prejudicial evidence that led Judge Stark to order new trial. (*See* D.I. 1336 at 6-7; *see also* § V.A.1 *supra* (summarizing only some of Cirba's statements from its opening and closing arguments).) Although VMware does not believe that evidence will be admissible, it is hard to imagine a scenario where a jury could hear it and not become biased against VMware. (*See* D.I. 946 at 9.) Bifurcation at least would contain any such harm to the second phase of trial and give VMware a fair chance during the first.

But even if this Court agreed that the cited evidence regarding harm to Inc. should not be admissible at the next trial, bifurcation still would be prudent because it would prevent other prejudice to VMware. As Judge Stark explained, Cirba's willfulness evidence is weak:

> Having carefully reviewed the parties' briefs and heard argument, it remains the Court's strong inclination that it would not enhance damages, even if the jury's verdict of willful infringement were being upheld . . . Moreover, given the Court's dismissal of Inc. . . . it seems inevitable that IP's evidence of willfulness, and egregiousness, with respect to the '687 and '367 patents will be even weaker than what is currently in the record.

(*Id.* at 16.) Allowing Cirba to present a weak willfulness case thus could prejudice VMware by leading the jury to find that VMware infringed "for reasons unrelated to a comparison of the Accused Products to the Asserted Claims." *Bd. of Regents*, 2022 WL 17403478 at *3.

The same is true of Cirba's inducement claim.  To prove inducement, Cirba must show that VMware knew "the induced acts constitute[d] patent infringement."  *Global-Tech.*, 563 U.S. at 765-66.  If Cirba presents such evidence, the jury may conflate whether VMware *intended* its customers to infringe with whether VMware's products *infringed*.  Because intent has no bearing on direct infringement, this would prejudice VMware.  *See id.* at 761 n.2.

Finally, Cirba's damages case would prejudice VMware.  At trial, Cirba will seek over ████████ in damages.  (*See* Ex. 12 § 1, ¶ 14.)  This exorbitant demand—██████████████████ ██████████ (*see* D.I. 550 at 6)—could persuade a juror that VMware injured Cirba regardless of whether VMware infringed.  *See Robert Bosch*, 2009 WL 2742750 at *1 n.2 ("I do not bother to address the mischief that lawyers can perpetrate with extravagant damages figures").

### 2.    Bifurcation would not prejudice Cirba

As in *Board of Regents*, bifurcation will not prejudice Cirba because, even if "witnesses and documents overlap across the two trial phases, the substance of the testimony that [the defendant] will elicit from witnesses will differ by trial phase."  2022 WL 17403478 at *3.  Further, during the parties' meet and confer on this motion, VMware asked Cirba to identify any concrete prejudice it would suffer from bifurcation, but Cirba did not do so.

### VI.    CONCLUSION

The most efficient way to resolve this case remains to stay it and wait for the PTO and the Federal Circuit to complete their review of Cirba's '492, '459, and '687 patents.  But if the Court is not inclined to stay the case, it should follow *Board of Regents* and bifurcate trial into two phases to be heard, if necessary, by the same jury.

Dated: January 6, 2023

OF COUNSEL:

Arturo J. González
Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
agonzalez@mofo.com
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


/s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*

30013024

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 13, 2023, a copy of the foregoing document was served on the persons listed below in the manner indicated:

**BY E-MAIL**

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Gary J. Toman
Weinberg Wheeler
Hudgins Gunn & Dial
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
gtoman@wwhgd.com

Paul D. Clement
Andrew C. Lawrence
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
andrew.lawrence@clementmurphy.com

Courtland L. Reichman
Shawna L. Ballard
Jennifer Estremera
Michael G. Flanigan
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA  94065

Christine E. Lehman
Adam Adler
Connor S. Houghton
Aisha Mahmood Haley
Brian C. Baran
Philip J. Eklem
Naveed S. Hasan
Reichman Jorgensen Lehman & Feldberg LLP
1909 K St, NW, Suite 800
Washington, DC 20006

Sarah O. Jorgensen
Reichman Jorgensen Lehman & Feldberg LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309

Jaime F. Cardenas-Navia
Wesley Lanier White
Khue V. Hoang
Peter T. Mastroianni
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017

RJ_densify@reichmanjorgensen.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for VMware, Inc.*