## THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a/ DENSIFY)
and CIRBA IP, INC.,

          Plaintiffs,

     v.

VMWARE, INC.,

          Defendant.

Civil Action No. 19-cv-742-GBW



**JURY TRIAL DEMANDED**

---

## DENSIFY'S OPPOSITION TO VMWARE'S
## MOTION TO BIFURCATE

Dated: January 20, 2023

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Connor S. Houghton (*pro hac vice*)
choughton@reichmanjorgensen.com
Aisha Mahmood Haley (*pro hac vice*)
amhaley@reichmanjorgensen.com
Brian C. Baran (*pro hac vice*)
bbaran@reichmanjorgensen.com
Reichman Jorgensen Lehman &
Feldberg LLP
1909 K Street, NW
Suite 800
Washington, DC 20006

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Wesley L. White (*pro hac vice*)
wwhite@reichmanjorgensen.com
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017

Brian E. Farnan (Bar. No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna Ballard (*pro hac vice*)
sballard@reichmanjorgensen.com
Jennifer P. Estremera (*pro hac vice*)
jestremera@reichmanjorgensen.com
Michael G. Flanigan (*pro hac vice*)
mflanigan@reichmanjorgensen.com
Reichman Jorgensen Lehman &
Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065

**ATTORNEYS FOR CIRBA INC.
(D/B/A DENSIFY)**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 4

III.    SUMMARY OF THE ARGUMENT ............................................................................ 5

IV.     ARGUMENT ................................................................................................................ 5

      A.      VMware's Proposal Will Not Conserve Judicial Or Party Resources................... 8

      B.      VMware's Proposal Would Not Improve Juror Comprehension. ........................ 15

      C.      The Risk Of Prejudice Falls On Densify, Not VMware. ..................................... 18

V.      CONCLUSION ........................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*,
    55 F. Supp. 3d 221 (D. Mass. 2014) ....................................................................................19

*Apple Inc. v. Samsung Elecs. Co.*,
    839 F.3d 1034 (Fed. Cir. 2016) (en banc) ..........................................................................9, 10

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*,
    877 F.3d 136 (3d Cir. 2017) ..................................................................................................8

*Bd. of Regents v. Bos. Sci. Corp.*,
    2022 WL 5241931 (D. Del. Oct. 6, 2022) ...........................................................................7

*Bd. of Regents v. Bos. Sci. Corp.*,
    2022 WL 17403478 (D. Del. Dec. 2, 2022).................................................................6, 8, 18

*Datastrip (IOM) Ltd. v. Symbol Techs., Inc.*,
    1998 WL 35287850 (D. Del. Jan. 7, 1998)..........................................................................12

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
    851 F.2d 1387 (Fed. Cir. 1988)...................................................................................1, 9, 13

*Evertz Microsystems, Ltd. v. Lawo Inc.*,
    2021 WL 706457 (D. Del. Feb. 23, 2021) .......................................................................6, 11

*GN Netcom, Inc. v. Plantronics, Inc.*,
    930 F.3d 76 (3d Cir. 2019)...............................................................................................1, 2

*Goodman v. Pa. Tpk. Comm'n*,
    293 F.3d 655 (3d Cir. 2002)................................................................................................18

*Graham v. John Deere Co. of Kansas City*,
    383 U.S. 1 (1966).................................................................................................................9

*Idzojtic v. Pa. R. Co.*,
    456 F.2d 1228 (3d Cir. 1972)...............................................................................................6

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012)............................................................................................9

*Leo Pharm. Prod., Ltd. v. Rea*,
    726 F.3d 1346 (Fed. Cir. 2013)............................................................................................9

*Lis v. Robert Packer Hosp.*,
    579 F.2d 819 (3d Cir. 1978)................................................................6

*Mintz v. Dietz & Watson, Inc.*,
    679 F.3d 1372 (Fed. Cir. 2012).........................................................9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013).........................................................9

*Real v. Bunn-O-Matic Corp.*,
    195 F.R.D. 618 (N.D. Ill. 2000)...............................................15, 16

*SenoRx, Inc. v. Hologic, Inc.*,
    920 F. Supp. 2d 565 (D. Del. 2013).......................................... *passim*

*Sepracor Inc. v. Dey L.P.*,
    2010 WL 2802611 (D. Del. July 15, 2010) ....................................6, 13

*Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*,
    2021 WL 982730 (D. Del. Mar. 16, 2021) .....................................6, 16

*Sprinturf, Inc. v. Sw. Recreational Indus., Inc.*,
    2004 WL 96751 (E.D. Pa. Jan. 15, 2004) ...........................................14

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1983)..........................................................9

*Synopsys, Inc. v. Magma Design Automation*,
    2006 WL 1452803 (D. Del. May 25, 2006)..................................17, 19

*Victaulic Co. v. ASC Engineered Sols., LLC*,
    2022 WL 4748619 (D. Del. Oct. 3, 2022) ...........................6, 7, 8, 19

*Weeks v. Angelone*,
    528 U.S. 225 (2000)............................................................................17

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
    707 F. Supp. 1429 (D. Del. 1989)....................................6, 13, 20, 21

**Rules**

Fed. R. Civ. P. 42(b) ...............................................................................6

D. Del. L.R. 7.1.3(c)(2).............................................................................8

Fed. R. Civ. P. 37 ....................................................................................8

Fed. R. Civ. P. 50 ..................................................................................15

Fed. R. Evid. 408 ........................................................................................................................14

Cirba Inc. (d/b/a Densify) ("Densify")[1] opposes VMware's request to bifurcate the upcoming trial (D.I. 1585, "VMware Br.").

## I.   INTRODUCTION

The premise of VMware's motion is that bifurcation would eliminate from the first phase of trial evidence of theft, intent to harm Densify by infringing, competitive harms, and the like. To the contrary, such evidence would not be excluded from the first phase because that phase would include the issue of obviousness.  Under well-settled law, the obviousness determination includes objective indicia of non-obviousness (also called secondary considerations of non-obviousness).  Specifically, it gives the factfinder a window into how the invention was "viewed in the marketplace, by those directly interested," which guards against hindsight bias in the obviousness analysis. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988).  Objective indicia of non-obviousness include considerations such as commercial success, industry praise, copying, and long-felt need for the invention, and consideration of these indicia is both a critical and obligatory part of the obviousness question.  Such "highly probative evidence is 'exceptionally difficult to exclude.'"  *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 85 (3d Cir. 2019).  Accordingly, VMware's premise that bifurcation would keep this evidence from the phase one jury fails.

Without this premise, VMware's remaining arguments collapse.  There would be no judicial economy from trying the same issues twice.  Indeed, the burden on the Court would be magnified by introducing innumerable disputes as to whether evidence is admissible in the first

---

[1] Densify understands that by virtue of the Court's Order (D.I. 1396), Cirba IP, Inc. remains in the case caption.  It is Densify's understanding that a company that does not independently exist cannot submit pleadings before the Court; this brief is therefore submitted on behalf of Densify. To the extent permitted or required, this brief should be construed as having been submitted on behalf of Cirba IP, Inc. as well.

phase versus the second.  And to the extent the same evidence would need to be repeated in the second phase, the trial time would be increased, not decreased.  Nearly all witnesses in the first phase would need to be called in the second phase.  Bifurcation would lead to a greater burden on the Court, not less.

Juror comprehension would be undermined, not enhanced, by bifurcation, which would create thoroughly confusing trial presentations.  In phase one, the jury would be told (*e.g.*, in opening, closing, and jury instructions) that it is hearing the evidence as to theft, intent, and competitive harms for certain purposes (such as objective indicia of non-obviousness), only to find out in phase two that the evidence also is relevant to other decisions it must make, such as willfulness, damages, and part of the indirect infringement claims.  The evidence would either have to be repeated, or worse, the jury would have to recall evidence it heard for other purposes in order to fit it into new legal standards.  And to the extent bits and pieces of the historical evidence are omitted from phase one, the jury would hear it in phase two disjointed from the remainder of the story—or sit through the same story again.  Whether the evidence is repeated for juror comprehension or chopped up and presented in a disjointed manner, the result will be unnecessary and unfairly prejudicial jury confusion.

Further, there would be no prejudice to VMware from denial of bifurcation.  Nearly identical evidence of theft, intent, competitive harms, and the like would be in phase one regardless.  In all events, VMware is not *unfairly* prejudiced by introduction of the facts of its conduct.  "Prejudice does not simply mean damage to the opponent's cause."  *GN Netcom*, 930 F.3d at 88 (cleaned up).  And that is, at bottom, VMware's complaint.  The facts themselves paint an unflattering picture.  While it is no doubt in VMware's interest to keep these facts from the jury for as long as possible to improve its chances of prevailing, that is not an appropriate reason to

bifurcate.  VMware seeks to create the impression that the evidence of theft, intent, and competitive harms was mere attorney hyperbole and argument in the first trial.  To the contrary, the evidence VMware targets comes directly from its internal documents.

By contrast, bifurcation threatens unfair prejudice to Densify.  As discussed above, presenting disjointed pieces of the same evidence in two phases, or asking the jury to reconstruct and decide evidence in the second phase without hearing it contemporaneously, will unfairly prejudice the presentation of Densify's case.  More importantly, the risk of delay falls squarely on Densify because of the irreparable harm it faces every day as VMware's infringing conduct continues.  This case originally was set for trial in under a year because of the threat of devastating irreparable harm Densify faced from VMware's infringement.  Due to a scrivener's error, the case was set for retrial, and Densify is hanging on by a thread as VMware's infringement only intensified in the two years since found to be a willful infringer.  As the Court previously recognized, Densify may be irreparably harmed by further delay.  D.I. 1101.

VMware's proposed bifurcation proceeds under the assumption that both cases can be tried in the ten days currently scheduled.  This is possible only if every detail goes to plan and there is no repetition.  There will be repetition inevitably, not to mention duplicative openings, closings, instructions, and other normal court processes.  And trials are never so predictable.  If a juror gets sick, a witness is delayed, or anything else causes the timing to be other than perfect, the second case could not be tried by the end of the ten-day window.  The risk of not finishing in ten days falls on Densify, which will suffer even more irreparable harm and may well lose the company while waiting for its day in court.  The delay would benefit VMware's business, helping solidify its monopoly by squeezing a smaller rival out of the market.  The risk of delay falls on Densify, and the benefit accrues to VMware.

Lastly, VMware asserts that bifurcation makes sense because it speculates that there will not be a second phase of trial. This could be said of any case, and such speculation cannot carry the day alone. And the history suggests this will not happen given that Densify previously prevailed at trial. The burden VMware's plan imposes on the Court and Densify cannot be justified by a gamble that trial may be cut short if, this time, VMware prevails.

Densify respectfully requests that the Court deny VMware's motion.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

In April 2019, Cirba Inc. ("Inc.") and Cirba IP, Inc. ("IP") filed suit against VMware alleging, among other claims, that VMware willfully infringes U.S. Patent 8,209,687 ("the '687 patent") and 9,654,367 ("the '367 patent"). Case No. 19-742 ("2019 Case"), D.I. 1. That case was tried in January 2020, and the jury found willful infringement of both patents, rejected VMware's invalidity defenses, and awarded over $236 million in damages. D.I. 550 (Redacted Jury Verdict). In December 2020, a new trial was ordered after the Court found that Inc. lacked subject matter jurisdiction based on a scrivener's error in a contract. D.I. 946. Since then, Inc. and IP were amalgamated under Canadian law, and the surviving entity is Cirba Inc. D.I. 1396 at 3. The combined entity owns all rights held by both Inc. and IP. *Id.* at 8.

The almost 1600 docket entries in this case reflect a years-long effort to avoid or delay trial. D.I. 342 at 14 ("I would say it has looked at times . . . like the defendant has been taking numerous steps to try to derail the schedule, try to slow things down, to try to bury the plaintiff with work that might make it hard for them or me to stay on track for the January [trial] date."). VMware has sought multiple stays, D.I. 1050, D.I. 1363; refused to provide discovery on its new product releases, D.I. 1193; then when ordered nonetheless opposed updated infringement contentions with that discovery, D.I. 1341; and refiled previously rejected arguments seeking to strike Densify's entire technical expert report, a *Daubert* motion seeking essentially the same

4

relief, and multiple motions for summary judgment.  D.I. 1408; D.I. 1439; D.I. 1422; D.I. 1428.

In the most recent round of briefing, VMware filed eleven motions in two days, often simply

rehashing arguments it made and lost last time around.  It sought an eleventh-hour appointment of

a "neutral expert" or technical advisor to take technical questions from the jury, D.I. 1490, and

sought to avoid providing an expert report by having a fact witness provide hired expert opinion

testimony.  *See* D.I. 1417.  It asserted eight patents because, in its words, "the best defense is a

good offense," D.I. 164 at 16, requiring years and millions of dollars in litigation.

VMware has filed multiple *inter partes* reviews, post-grant reviews, and *ex parte*

reexamination requests—sometimes more than one on the same patent.  D.I. 969; D.I. 1015; D.I.

1021; D.I. 1316; Case No. 20-272 D.I. 95.  While the details of the Patent Office proceedings are

unnecessary for the resolution of this motion, one statement by VMware about them bears

correction: The '687 patent is not on "rocky ground."  VMware Br. 4.  The '687 patent

reexamination is ongoing, and VMware's suggestion that the examiner "probably will" issue a

"final office action" "soon," *id.* at 5, is nothing more than speculation that it would like the Court

to credit *after* it told a jury that the very same patent is valid.  *See* D.I. 595 (Trial Tr.) 1845:25-

1846:15.  VMware implies that the existence of a reexamination casts a dark cloud on a patent's

validity, but the '367 patent—at issue in this very case—was reexamined with the PTO confirming

the patentability of all claims.  D.I. 1186.

## III.    SUMMARY OF THE ARGUMENT

1.      VMware cannot meet its burden to establish that its bifurcation proposal is

appropriate in this case because the proposal will not conserve judicial resources, will not aid jury

comprehension, and will not avoid unfair prejudice.  Indeed, the risk of unfair prejudice falls on

Densify, which is being irreparably harmed by VMware's ongoing infringement.

## IV.    ARGUMENT

Bifurcation is the exception, not the rule, in civil cases, and there is no special rule for patent cases. *Bd. of Regents v. Bos. Sci. Corp.*, 2022 WL 17403478, at *1 (D. Del. Dec. 2, 2022); *see* Fed. R. Civ. P. 42(b) advisory committee's note to 1966 amendment ("separation of issues for trial is not to be routinely ordered"). "[I]n this District, juries routinely decide complex liability and damages issues at the same trial." *Bd. of Regents*, 2022 WL 17403478, at *2 (quoting *Evertz Microsystems, Ltd. v. Lawo Inc.*, 2021 WL 706457, at *2 (D. Del. Feb. 23, 2021)). Rule 42(b) allows separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). In exercising their broad trial management discretion, courts routinely consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case. *Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*, 2021 WL 982730, at *1 (D. Del. Mar. 16, 2021); *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 568 (D. Del. 2013). The movant bears the burden of establishing that bifurcation is appropriate. *See, e.g.*, *Victaulic Co. v. ASC Engineered Sols., LLC*, 2022 WL 4748619, at *2 (D. Del. Oct. 3, 2022); *Sepracor Inc. v. Dey L.P.*, 2010 WL 2802611, at *3 (D. Del. July 15, 2010).

VMware suggests that bifurcation is "well-traveled ground" in this district, but bifurcation is evaluated "on a case-by-case basis, without resort to a general presumption, taking into account all relevant facts and circumstances in the case." *SenoRx*, 920 F. Supp. 2d at 568. Indeed, "the rule in this circuit since 1972 has been that the decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis" in the court's discretion. *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978) (citing *Idzojtic v. Pa. R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972)). "[A] court must take into account the 'overall equities' of the case in ruling on a motion to bifurcate," *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1433-34 (D. Del. 1989), and "major consideration is directed toward the choice most likely to result in a just final

6

disposition of the litigation." *SenoRx*, 920 F. Supp. 2d at 567.  Highlighting that bifurcation is decided based on the circumstances of each individual litigation—not generalities—Judge Connolly recently chose not to bifurcate the second trial in a three-part series because the first trial was not bifurcated.  *See* Ex. 5 at 108-109.

Two of this Court's recent cases are particularly illustrative.  In *Victaulic Co. v. ASC Engineered Solutions, LLC*, the Court recognized that the proposed bifurcation into two phases before different juries failed to conserve judicial resources because it would do little—if anything—to shorten the trial, as the parties were likely to provide both juries with lengthy explanations of the underlying technology.  2022 WL 4748619, at *3.  In fact, the witnesses and evidence to be introduced in both trials were likely to overlap, providing minimal efficiencies, especially when weighed against the burden on the parties and Court.  The bifurcation plan also would have burdened the Court with deciding several outstanding motions on an accelerated schedule and would have required the parties to engage in "substantially more work to prepare witnesses, create trial strategies, organize and produce documents, and undertake the innumerable tasks necessary to prepare for a well-run trial."  *Id.* at *4.  Finally, the Court noted that there was no prejudice alleviated by bifurcation because "[c]ourts regularly ask juries to set aside their biases and resolve thorny factual questions."  *Id.*

In *Board of Regents*, this Court bifurcated the trial into two phases before the same jury after it raised bifurcation itself in light of a thin willfulness record at summary judgment.  2022 WL 5241931, at *9 (D. Del. Oct. 6, 2022).  To find post-suit willfulness, for example, the jury would have needed to infer deliberate and intentional infringement simply from the fact and a witness's awareness that the accused product and allegedly infringed patent were "quite similar." *Id.*  Willfulness was "close" at summary judgment; it was almost eliminated as a matter of law

from the case. *Id.* The Court "recognize[d] the potential value of bifurcation" in such circumstances. *Id.* The crux of the decision was the thin willfulness case, which is in striking contrast with this case, where VMware has not even sought summary judgment on willfulness as to the '687 patent (which VMware claims to be the primary patent at issue). The Court held that UT's limited evidence of post-suit willfulness increased the risk that the evidence would improperly bias the jury's infringement and invalidity decisions. *Bd. Of Regents*, 2022 WL 17403478 at *2-*3. Strikingly different from the instant case, the Court did not have occasion to address objective indicia evidence—including of copying—in its initial bifurcation ruling. Once the issue was raised, the Court seemed to acknowledge that, if admissible in the first phase, it would undercut bifurcation, Ex. 1, but ultimately decided it had not been properly raised, warranting exclusion, Ex. 6.[2] It also bears noting that *Board of Regents* involved a much more straightforward induced infringement case because the claims at issue were composition claims— as opposed to this case, which involves method claims.

### A.  VMware's Proposal Will Not Conserve Judicial Or Party Resources.

VMware's argument centers on its premise that evidence of theft, intent, competitive harms, and similar evidence related to willfulness, intent to induce infringement, and damages can

---

[2] By contrast, in this case, the obviousness evidence was previously disclosed—VMware makes no argument to the contrary. In this regard, VMware made a conscious choice to not address in its first brief the effect that obviousness would have on its bifurcation proposal—in particular, how the same evidence would come in during phase one as objective indicia of non-obviousness. It is fully aware of the issue because these objective indicia were litigated extensively in connection with the previous trial—VMware even included this as an issue to be litigated in the last trial. D.I. 439, Ex. 3 at 7. VMware made a conscious choice to not develop this argument in its opening brief, permitting the Court to ignore new arguments in reply (particularly appropriate when Densify cannot address those new arguments). L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."); *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145-47 (3d Cir. 2017) ("[W]e have consistently refused to consider ill-developed arguments . . . .").

be relegated to phase two of its proposed bifurcated trial.  While VMware is not specific about precisely what would be excluded from phase one, the type of evidence it hopes to preclude is squarely relevant to invalidity, which would, by design, be in its proposed phase one.  Its invalidity defense centers on its obviousness argument, and VMware fails to account for objective evidence of non-obviousness,[3] a key part of the analysis.  *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 36 (1966).  "These objective considerations can protect against the prejudice of hindsight bias, which often overlooks that the genius of invention is often a combination of known elements which in hindsight seems preordained."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013) (cleaned up).

Objective indicia evidence includes evidence of "commercial success enjoyed by devices practicing the patented invention, industry praise for the patented invention, copying by others, and the existence of a long-felt but unsatisfied need for the invention."  *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1052 (Fed. Cir. 2016) (en banc).  "These objective criteria . . . help turn back the clock and place the claims in the context that led to their invention," *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed. Cir. 2012), giving the factfinder a window into how the invention was "viewed in the marketplace, by those directly interested," *Demaco*, 851 F.2d at 1391.  This evidence "may often be the most probative and cogent evidence in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983); *Leo Pharm. Prod., Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013) ("Objective indicia of nonobviousness play a critical role in the obviousness analysis.").  Indeed, objective indicia "serve a particularly important role in a case like this one, where there is a battle of scientific experts regarding the obviousness of the

---

[3] VMware's only remaining invalidity defense in this case is whether the '687 patent claims are anticipated and/or rendered obvious in light of VMware's VirtualCenter 2 (DRS 2006).  D.I. 526 at 37.  VMware dismissed its other invalidity defenses with prejudice.  D.I. 576.

invention." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1370 (Fed. Cir. 2012). VMware ignores this black-letter law, and that "it is error to reach a conclusion" on obviousness without considering record evidence of objective indicia. *Apple*, 839 F.3d at 1048.

For example, VMware's campaign to extract information about Densify's products—commercial embodiments of the asserted patents—and copy those features for itself, along with VMware's resulting commercial success, tend to show that Densify's patents were non-obvious. *See, e.g., id.* at 1053-54 (finding similar evidence, including Samsung internal documents "conclud[ing] that the direction for improvement" was for Samsung to modify its products "to be like the iPhone," supported non-obviousness). But that question is for the jury to decide for obviousness. And there is much more evidence—nearly all of the evidence relevant to willfulness knowledge and intent to induce infringement, and much of the evidence related to damages, would be relevant to non-obviousness. *See* D.I. 1239, D.I. 1505 (summarizing willfulness evidence).[4]

Beyond the evidence of willfulness and intent to infringe, other categories of evidence from VMware's proposed phase two would need to be presented in phase one. For example, some of the damages evidence in this case would still appropriately be considered in the first phase of trial—particularly, evidence of VMware's commercial success—another well-recognized objective indicator of non-obviousness.

Further, given that much of this evidence is relevant to the phase-one obviousness determination, bifurcation would lead to a proliferation of motions practice and argument about whether each particular piece of evidence is relevant to phase one or phase two, magnifying the burden on the Court. In the pretrial process before the previous trial, VMware lodged objection(s) to about 80% of Densify's exhibit list, Houghton Decl. ¶ 4, only a handful of which were sustained.

---

[4] The facts of this case are summarized elsewhere and need not be repeated here given space limitations. *See, e.g.*, D.I. 1239, D.I. 1502.

Under VMware's current proposal, not only will the parties be litigating (and the Court resolving) garden variety admissibility issues—center stage for every exhibit will be the question of what phase of trial it rightly belongs in.  Bifurcation inevitably will lead to a multitude of briefs, arguments, sidebars, and objections at trial in this already heavily litigated case.  *SenoRx*, 920 F. Supp. 2d at 570 ("More concrete is the reality that the parties, with this Motion pending, have already been engaged in disagreements over whether certain discovery should fall into a 'liability' or 'damages/willfulness' category—an inefficiency that would be avoided if the case were not bifurcated."); *Evertz*, 2021 WL 706457, at *2 (commenting that bifurcating liability from damages "may create additional work for everyone involved" because "the parties in this case have been fairly litigious" and bifurcation could result in "new disputes over what is appropriately part of the liability phase versus the damages phase").  VMware's history of taking every opportunity to fight the admission of willfulness-related documents, *see* D.I. 1138, and its attempt to exhaust as many of the Federal Rules as possible to delay, derail, and keep evidence from the jury all but guarantees that there will be no shortage of these disputes if the case is bifurcated.

Further, VMware does not state with any particularly what material should be excluded (instead commenting that even just "[l]isting all the testimony on these topics would take dozens of pages").  VMware Br. 11.  Nor does it provide any particular reasoning as required by the Federal Rules of Evidence or otherwise.  Its lack of specificity underscores the fights to come under its proposed bifurcation scheme.  Instead, it makes the sweeping—and unsupported—assertion that Densify "therefore only will be able to complain of *IP's* alleged injuries" at trial.  *Id.* at 12.  This argument is beside point and fails to account for the facts of the case or the relevance standard.  Whether harm evidence is admissible depends on what issue in the case it is probative of—it would not merely be excluded because it showed harm to one party or another.  Further,

during the timeframe of most of the willfulness evidence, Inc. was the party that owned the patents in question, so even under VMware's theories that evidence would be admissible.  And for the time periods that IP owned the patents, much of the willfulness evidence is relevant to VMware's intent to willfully infringe IP's patent and drive IP (along with Inc.) out of business.  At any rate, those evidentiary questions are for another day, beyond pointing out that there is another side to the story VMware omits.[5]

An example illustrates the point.  VMware takes issue with a statement that "VMware had discussions in 2007 'with the intent of just finding out what Densify was doing so that they could compete with them.'"  VMware Br. 10 (quoting VMware Br. Ex. 19 at 177:25-178:2).   In VMware's view, this argument prejudiced the jury with evidence of Inc.'s harm, presumably as compared to harm unique to IP.  VMware Br. 9-10.  But what VMware leaves out is that in 2007, IP did not even exist.  *See, e.g.*, D.I. 1242 (Smith Decl.) ¶¶ 4-9.  The prospect of creating IP had not even been raised.  *Id.*  VMware has asked this Court, in a motion for bifurcation, for a broad, blanket ruling that evidence related to Inc. be ruled inadmissible without seriously grappling with the facts.  VMware Br. 12 ("most (and perhaps all) of this evidence should not be admissible").  The Court should reject the invitation.  Any objection to particular pieces of evidence must be evaluated on the merits—considering relevance for its purported purpose—for the upcoming trial.

Evidence related to acquisition discussions, competition between VMware and Densify, VMware's choice to copy Densify's invention, and the success of the invention is all relevant to obviousness.  *See Datastrip (IOM) Ltd. v. Symbol Techs., Inc.*, 1998 WL 35287850 (D. Del. Jan. 7, 1998) (denying motion to bifurcate damages from liability, and noting that commercial success

---

[5] In January 2022, the Court rejected VMware's request to exclude five "exemplar" pieces of willfulness evidence of the type it now complains about.  D.I. 1147.  This underscores that Judge Stark had not decided the admissibility questions.

evidence was "likely to be highly relevant to the liability and damages issues, resulting in a significant duplication in the presentation of evidence"). VMware cannot keep the most probative evidence from a jury deciding obviousness—evidence that gives the factfinder a window into the market's (including its largest participant, VMware's) response to Densify's inventions. *Demaco*, 851 F.2d at 1391; *Willemijn*, 707 F. Supp. at 1434 n.2 (noting that objective indicia evidence would "indeed appear to be admissible at the liability phase" and overlapped with damages). VMware's proposed phases are largely overlapping, suggesting that bifurcation would be of limited benefit. *Sepracor*, 2010 WL 2802611, at *3 ("the potential for overlap in the presentation of the evidence weighs against bifurcation"); *SenoRx*, 920 F. Supp. 2d at 569 (declining to bifurcate liability, willfulness, and damages when obviousness objective indicia evidence would have overlapped with damages and willfulness would have overlapped with liability).

After properly accounting for objective indicia, all that remains to shift into a second phase is evidence that relates *solely* to damages—that is, assuming the evidence from phase 1 is not repeated.[6] But if not repeated, all that would remain is about a day of evidence on damage calculations from the damages experts as well as new opening statements, closing arguments, jury instructions, etc. In the first trial, Densify's damages expert Jim Bergman in total accounted for less than two hours of the entire trial. Houghton Decl. ¶ 3. And VMware did not put on a damages expert. VMware's proposal, then, at its very best could save the Court and parties part of a single trial day if VMware is successful on all issues in the first phase of the trial. In reality, it likely will lengthen the overall trial schedule because categorizing the evidence across the phases of the trial will create difficult line-drawing problems and will multiply disputes and the burden on the Court. That possibility of one day of savings is not compelling given what will be required of the parties

---

[6] In fairness, most of the evidence would need to be repeated to avoid thoroughly confusing the jury, as described above, and this would waste judicial resources.

and the Court under VMware's proposal.

In addition to ignoring obviousness, VMware's judicial economy argument hinges on its belief that the Court will save time and resources because a second stage of trial will not be reached. At best, that assertion is "nothing more than speculative," and "validation of this type of self-serving argument, without more, would permit defendants in all cases to sever liability from damages." *Sprinturf, Inc. v. Sw. Recreational Indus., Inc.*, 2004 WL 96751, at *2 (E.D. Pa. Jan. 15, 2004). Indeed, the only jury to have ever heard the evidence in this case found infringement, no invalidity, and willfulness, and it awarded damages. D.I. 550.

VMware makes arguments regarding the '367 patent, but nothing about that patent favors bifurcation. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Houghton Decl. ¶ 2. If, as VMware argues, it does not make "economic sense" for it to contest the '367 patent damages, nothing is stopping VMware from stipulating to infringement and Densify's damages. Densify is entitled to its day in court on the '367 patent even if the much more affluent VMware believes it not worth the time.[7]

In attempts to minimize the weight of the first jury verdict, VMware suggests that Judge Stark was "skeptical" of that verdict and that that the evidence of competitive harms drove the outcome. VMware Br. 9. In fact, the new trial order does not support bifurcation. That order was determining whether a new trial was warranted when, at the time, IP was the sole remaining plaintiff on the patents in question. The Court focused on whether, *if* the evidence of competitive

---

[7] While VMware claims Densify's patent is not worth the time, it persists in asserting at first eight, and now three, of its own patents ████████████████████████████████ ████████████ *See* Ex. 2, 3.

harms had been inadmissible, IP's presence in the trial could have influenced the jury's conclusion in light of the nature of the infringement case (weakened by the shortness of time allotted for proof).  The Court did not conclude that the evidence of infringement was insufficient to sustain the verdict—indeed, had it done so, it simply could have granted the post-trial motion for judgment as a matter of law, and surely would not have expended the extraordinary taxpayer, court, and party resources to retry the case.[8]  It also did not conclude that *admissible* evidence was unfairly prejudicial.    Instead,  it  examined  whether  *potentially  inadmissible*  evidence  was  unfairly prejudicial (and, importantly, it did not decide the admissibility question—nor could it since the facts were not before the Court).  Here, if the Court eventually concludes the evidence in question is inadmissible, then there is no reason to bifurcate.  And if it is admissible (as Densify believes), then  the  new  trial  order's  balancing  analysis  is  inapplicable.    Indeed,  VMware's  motion  is premised on the (correct) assumption that the competitive harms evidence will be admissible.

### B.     VMware's Proposal Would Not Improve Juror Comprehension.

VMware argues that juror comprehension would be enhanced because the technical case is complex and trying it alongside "damages, inducement and willfulness . . . would make things much worse."  VMware Br. 16.  VMware's proposal, however, does not provide an answer that enhances juror comprehension because the bulk of the evidence it complains of would be included in the first phase of trial.  And the damages issues VMware deems complex are no different from those in any trial: VMware complains of, for example, the garden-variety *Georgia-Pacific* factors that are used in most cases.  *See Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 622 (N.D. Ill. 2000) (denying motion to bifurcate patent liability from damages and willfulness when "there is no

---

[8] Indeed, right after trial, the Court stated that it was *not inclined* to grant VMware's Rule 50 motion.  *See* D.I. 575 at 2 ("It seems to me at the moment that the jury could have reasonably credited all of Dr. Madisetti's testimony and opinions.").  And the Court would not have noted the irreparable harm Densify is suffering in denying VMware's previous stay motion.  D.I. 1101.

evidence to suggest that this computation is more unusual, complex or complicated than the average patent case"); *SenoRx*, 920 F. Supp. 2d at 571 ("although calculating 'reasonable royalty' or 'lost profits' damages is not easy, those are the computations that juries are often called upon to confront in a patent case"); *Sprint*, 2021 WL 982730, at *2 ("It is not uncommon for a patent jury trial to involve multiple patents and technologies," and "while damages calculations, including reasonable royalty and lost profits, are difficult, jurors are frequently required to make such calculations").

As VMware notes, now that it has added its patents to this case, this trial may include more technical material than the first one.  If VMware is concerned about that complexity, the right answer is to bifurcate its own claims.  VMware itself suggests that the infringement finding on the '687 is determinative, presumably because it is likely to drop its own patent claims if the '687 is not infringed.  VMware Br. 13 ("without the '687 patent, it would not make economic sense for the parties to continue to litigate the remaining patents").

"[P]atent cases often implicate difficult subject matter that may be unfamiliar to most jurors."  *SenoRx*, 920 F. Supp. 2d at 571.  And "[o]f course, when lawyers put their minds to it, they can complicate anything, but that is not the test."  *Real*, 195 F.R.D. at 622.  Here, in deciding to consolidate the parties' claims for the upcoming trial—when six more patents were being asserted than currently are set for the ten-day trial—the Court recognized the potential complexity but determined that it was *not* too challenging for a jury.  D.I. 946 at 16 ("The Court recognizes that the consolidated 11-patent trial will be challenging for the parties, the Court, and especially the jury.  But, having presided over a trial with these parties (and their large trial teams) once before, the Court is confidential that – with sufficient time for pretrial proceedings and preparation – the challenges posed by a case of this scale and complexity can and will be met.").  VMware

identifies no reason why this case is significantly more complex than others confronted by juries in this district—especially when a jury in this district already decided this case without bifurcation.

Nor has VMware established that this case's complexity "is of such magnitude that separate trials would be required to enable the jury to ably fulfill its role as fact finder." *SenoRx*, 920 F. Supp. 2d at 571. There is no reason to believe the not-yet-seated jury for this case will be unable to follow the Court's instructions and fairly decide the issues. *Synopsys, Inc. v. Magma Design Automation*, 2006 WL 1452803, at *4 (D. Del. May 25, 2006) ("In this court's experience, jurors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios. Therefore, the court will not pre-judge the yet-unnamed jurors by assuming they are unable to digest the facts and law in this case."); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

Significantly, VMware's proposal would magnify the complexity. As discussed, most of the evidence would need to be presented in phase one given VMware's obviousness defense. If the evidence is presented again in phase two—as would only be fair to Densify—then it would be a morass of repeated evidence. It would need to be re-presented to provide the jury context for its decisions. If not, the jury would be faced with trying to recall the evidence it heard in phase one but only now apply it to new legal standards. In phase one, it would have been told it is hearing evidence to decide whether the patents were, *inter alia*, directly infringed and valid (in light of the objective indicia of non-obviousness)—when, in fact, that was not completely accurate. The jurors would listen to the evidence in light of those questions. Then, in phase two, it would be revealed that, actually, the evidence they already heard is relevant to legal questions they had not been told they were answering, including willfulness, knowledge and intent for inducement, and damages. They would have to recall and piece together that previous evidence. This task would be nearly

17

impossible.  It would be compounded to the extent the jury then heard only disjointed pieces of evidence excluded from the first phase without hearing the context (likely to be only small bits of evidence), leaving them to figure out how it all fits together.  As an example, the jury might hear in phase one part of a conversation where VMware sought to acquire Densify's technology, but then in phase two hear the other part of the same conversation—leaving the jury to struggle through which snippet of evidence goes with the rest and where to place it in time.  VMware's proposal, far from aiding confusion, would create a Byzantine mess.

### C.     The Risk Of Prejudice Falls On Densify, Not VMware.

Finally, VMware argues that bifurcation here could reduce prejudice to VMware, similar to the benefits bifurcation provided in *Board of Regents* against UT's weak willfulness case. VMware Br. 17.  But this case is nothing like *Board of Regents*.  There, the willfulness case barely survived summary judgment.  Here, Densify identified over a hundred pieces of evidence relevant to willfulness just in response to VMware's summary judgment motion as to the '367 patent alone. D.I. 1502 at 9-13; D.I. 1505 (collecting evidence).  As explained in the summary judgment briefing, the willfulness evidence (even just as to the '367 patent) is staggering, not "close."  *Id.* And VMware did not even move for summary judgment on willfulness as to the '687 patent, which it concedes accounts for more than ■% of the damages Densify seeks at trial.

VMware suggests that a jury could not hear damaging evidence without "becom[ing] biased against VMware."  VMware Br. 17.  As discussed, bifurcation would not keep that evidence from the jury given the need to address objective indicia of non-obviousness in the first phase. Regardless, VMware's complaint is really that its own documents and witnesses are damaging to its case.  That provides no legitimate rationale for the Court to protect VMware by bifurcating the case.  That evidence is damaging to one party or the other does not make it unfairly prejudicial. *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 669-70 (3d Cir. 2002).

VMware makes an assortment of arguments about generalized prejudice—maligning, for example, the dollar amount of Densify's damages demand (███████████████████ ████████████████████████████ and VMware's infringement has escalated since the prior verdict).  It claims vague prejudice from trying issues that do not "bear[] on direct infringement" with direct infringement (while not addressing obviousness, which would be in phase one).  VMware Br. 18.  Unrelated issues are tried regularly in jury trials without bifurcation-justifying prejudice being suffered by any party.  *Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*, 55 F. Supp. 3d 221, 223 (D. Mass. 2014) ("But this challenge is not unique to this case: it confronts *every* jury in *every* patent case with a willful infringement claim.  Yet bifurcation, even in patent cases, is the exception and not the rule.").  And VMware has not identified undue prejudice that could not be addressed by, for example, a jury instruction and instead warrants the more drastic relief of bifurcation.  *Synopsis*, 2006 WL 1452803, at *4 ("jurors are quite adept at comprehending and adhering to the instructions they are given").  Juries routinely "set aside their biases and resolve thorny factual questions."  *Victaulic*, 2022 WL 4748619, at *4.

Importantly, the risk of unfair prejudice falls on Densify because it is the party being irreparably harmed by VMware's infringement.  This case is scheduled for ten trial days.  If the case runs over and the Court is forced to reschedule phase two for a later date or a later jury, the prejudice of that delay and need for a repeat of the evidence squarely falls on Densify, which is holding on by a thread for this long-awaited trial.  Densify failing would only perpetuate VMware's monopolistic hold on the market by removing a competitor—hardly the purpose of bifurcation.

VMware suggestion that two phases instead of one can be completed within the allotted ten days is unrealistic and is at odds with the way this case has been litigated.  For starters, VMware's proposal incentivizes it to eat up time by lodging countless arguments about whether

evidence is appropriate for phase one or two of the case.  Apart from that, Densify will be forced to review evidence again with the jury during the second phase as the objective indicia evidence overlaps with willfulness issues, intent for induced infringement, and damages, lengthening the proceedings.  The previous jury deliberated for a day and a half; there is no guarantee that deliberation will take the same or less time on a bifurcated basis.  The length of deliberation will determine how much time the parties need to complete this case, and given the crowded nature of the Court's schedule, a lengthy deliberation could jeopardize being able to complete both phases of trial in the allotted time on the Court's calendar.  And of course, there is the additional time required to instruct a jury twice, and the potential for juror illness, emergency, witness unavailability, or other issues that inevitably slow down the trial schedule.  VMware's proposal assumes everything goes perfectly to plan and that it prevails in phase one—and if it does not, it rests assured that it is Densify that bears the risk that phase two is delayed for months and another jury.  Delay in this case would "severely prejudice and potentially destroy" Densify.  D.I. 1101 (denying VMware's motion for a stay based on, in part, the fact that "a stay would severely prejudice and potentially destroy Plaintiff.").  As made clear by the preliminary injunction briefing, Densify is suffering ongoing irreparable harm. *See, e.g.*, D.I. 1239.  That harm continues to mount, and any delay in resolving this case inflicts significant prejudice on Densify. *Willemijn*, 707 F. Supp. at 1435 ("As plaintiff has correctly indicated, prejudice under these circumstances may simply amount to unfair delay of the final disposition of the matter.").

## V.    CONCLUSION

The last trial was not bifurcated, and neither should this one be.  Given the limited potential benefit of bifurcation but serious risks of unfair prejudice, the additional burdens bifurcation would raise, and lengthier, more complicated, and more confusing proceedings, the Court should decline VMware's "gamble" on bifurcation and deny the motion. *Willemijn*, 707 F. Supp at 1435.

Dated: January 20, 2023

Respectfully submitted,

FARNAN LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar. No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Connor S. Houghton (*pro hac vice*)
choughton@reichmanjorgensen.com
Aisha Mahmood Haley (*pro hac vice*)
amhaley@reichmanjorgensen.com
Brian C. Baran (*pro hac vice*)
bbaran@reichmanjorgensen.com
Reichman Jorgensen Lehman &
Feldberg LLP
1909 K Street, NW
Suite 800
Washington, DC 20006

Courtland L. Reichman (*pro hac vice*)
creichman@reichmanjorgensen.com
Shawna Ballard (*pro hac vice*)
sballard@reichmanjorgsensen.com
Jennifer P. Estremera (*pro hac vice*)
jestremera@reichmanjorgensen.com
Michael G. Flanigan (*pro hac vice*)
mflanigan@reichmanjorgensen.com
Reichman Jorgensen Lehman &
Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065

**ATTORNEYS FOR CIRBA INC.
(D/B/A DENSIFY)**

Khue V. Hoang (*pro hac vice*)
khoang@reichmanjorgensen.com
Wesley L. White (*pro hac vice*)
wwhite@reichmanjorgensen.com
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017