IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC., <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> VMWARE, INC., <br><br> Defendant/Counter-Plaintiff. | C.A. No. 19-742-GBW (CONSOLIDATED) <br><br> UNSEALED 4/25/2023 |

### MEMORANDUM ORDER[1]

Pending before the Court is Defendant VMware, Inc.'s ("VMware") Motion in Limine No. 1 to Exclude Irrelevant and Prejudicial Evidence Pertaining to Cirba, Inc. (the "Motion"). *See* D.I. 1664, Ex. 17 at Ex. 16E. For the following reasons, VMware's Motion is GRANTED.

**I.  BACKGROUND**

Plaintiffs Cirba Inc. (d/b/a Densify) and Cirba IP, Inc. ("IP") (together, "Cirba") assert U.S. Patent Nos. 8,209,687 (the "'687 patent") and 9,654,367 (the "'367 patent") against VMware. In January 2020, a jury found that VMware infringed the claims of the '687 and '367 patents and awarded approximately $237 million in damages. D.I. 550. Post-trial, Judge Stark dismissed Cirba Inc. (d/b/a Densify) ("Pre-Inc.") for lack of Article III standing, holding that a 2016 license agreement between Pre-Inc. and IP rendered Pre-Inc. a bare licensee lacking exclusionary rights. D.I. 752. Judge Stark then concluded that, "[i]f [Pre-]Inc. had not been a party to the January trial, and IP had been the sole plaintiff," "much if not all of the evidence [Cirba] was permitted to present

---

[1] The Court writes for the benefit of the parties and assumes their familiarity with this action. All D.I. citations refer to C.A. No. 19-742-GBW unless otherwise noted.

at the January trial about competition and harm would likely have been excluded." D.I. 946 at 8-9 (the "New Trial Order"). Consequently, Judge Stark vacated the jury's verdict and ordered a new trial on the parties' patent disputes. *Id.* at 14, 17.[2]

In April 2022, Pre-Inc. and IP "amalgamated" under Canadian law into a single entity also called Cirba Inc. ("New-Inc.").[3] *See, e.g.*, D.I. 1328 at 1, 3. Post-amalgamation, Cirba moved to update the case caption, or alternatively, substitute New-Inc. for Pre-Inc. and IP as the named plaintiff pursuant to Rule 25(c) of the Federal Rules of Civil Procedure (D.I. 1327). This Court denied the motion primarily to avoid jury confusion. *See, e.g.*, D.I. 1396 at 11 (explaining that substituting New-Inc. for Pre-Inc. and IP "would not obviate the parties need to label and clarify each Cirba entity, e.g., [Pre-]Inc., IP, and [New-Inc.], to both the jury and this Court throughout the trial"). Undeterred, Cirba sought to reinstate the jury verdict on the basis that Pre-Inc. actually had Article III standing and, "[i]n light of the merger . . . evidence of competitive harms [as between Pre-Inc. and IP] would have been identical," (D.I. 1239 at 12, 18), which this Court denied as a veiled request for reconsideration (D.I. 1626). Cirba again sought preliminary injunctive relief (D.I. 1238), which this Court also denied for failing to prove a likelihood of success on the merits and that Cirba would suffer irreparable harm (D.I. 1626).

---

[2] Cirba has contested Pre-Inc.'s dismissal ever since, including (1) seeking re-argument and reconsideration of the Court's Order dismissing Pre-Inc. for lack of standing (D.I. 756), which this Court denied (D.I. 946); (2) seeking an interlocutory appeal of the standing issue (D.I. 960, 961), which this Court denied (D.I. 991); (3) petitioning the Federal Circuit for a writ of mandamus (D.I. 1013, 1014), which the Federal Circuit denied (D.I. 1045); (4) arguing that the jury verdict should be reinstated because Pre-Inc. had standing all along (D.I. 1239), which this Court denied (D.I. 1626); and (5) appealing this Court's refusal to reinstate the jury verdict (D.I. 1698), which remains pending.

[3] Cirba objected to this nomenclature, *see* D.I. 1356 ("There is no such thing as 'New Inc.'; there is just Cirba Inc."), but the Court utilizes it for clarity, including to distinguish between Pre-Inc., the entity dismissed for lacking Article III standing, and New-Inc., IP's successor-in-interest.

Meanwhile, disputes over the admissibility of Pre-Inc. evidence simmered in multiple submissions to the Court. *See, e.g.*, D.I. 1138 (VMware in Jan. 31, 2022: requesting to raise admissibility issues "in light of the Court's posttrial rulings" with respect to certain Pre-Inc. documents); D.I. 1143 (Cirba in Feb. 3, 2022: "[C]orporate changes are anticipated that would affect the analysis of these documents' admissibility"); D.I. 1336 at 6-7 ("Now that Inc. and IP have been amalgamated into a single entity, the evidence of harm would be identical to what the first jury heard."). Cirba also opposed VMware's Motion for Summary Judgment No. 2 of No Willful Infringement of the '367 Patent (D.I. 1420) by principally relying upon evidence pertaining to Pre-Inc. *See, e.g.*, D.I. 1505; D.I. 1510.

As a result, this Court "became concerned whether evidence related to interactions with [Pre-Inc.] . . . is admissible in the upcoming trial" and ordered the parties to submit supplemental letter briefs (D.I. 1662), which they did (D.I. 1671, 1676, 1685, 1686). Consistent with the operative Scheduling Order, the parties contemporaneously filed their Proposed Pretrial Order (D.I. 1664), which coincidentally contained VMware's instant Motion as its first motion *in limine* (D.I. 1664, Ex. 17). Cirba opposes the Motion. *Id.* The Court held telephonic oral argument on the Motion (the "Argument", cited to as "Tr.") on April 5, 2023. A six-day trial is set to begin on April 24, 2023. D.I. 1623.

## II. LEGAL STANDARD

A motion *in limine* is designed to "narrow evidentiary issues for trial and to eliminate unnecessary interruptions during trial." *Bradley v. Pittsburgh Bd. of Edu.*, 913 F.2d 1064, 1069 (3d Cir. 1990). Motions *in limine* allow the court "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 41 n.2 (1984). "A motion *in limine* is appropriate for 'evidentiary submissions that clearly ought not be presented to

3

the jury because they clearly would be inadmissible for any purpose.'" *Evolved Wireless, LLC v. Apple Inc.*, C.A. No. 15-542-JFB-SRF, 2019 WL 1100471, at *1 (D. Del. Mar. 7, 2019) (quoting *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)) (emphasis added).

## III.   DISCUSSION

### A.   The plaintiff in this action is "Cirba, Inc. (d/b/a Densify), as the successor-in-interest to Cirba, IP, Inc."

VMware's Motion crystallizes the parties' related dispute over the plaintiff's identity resulting from Pre-Inc.'s amalgamation with IP.[4] VMware argues that "the sole plaintiff before the Court is IP" in view of Pre-Inc.'s dismissal, Tr. 15:14, while Cirba maintains that "[Pre-]Inc. and IP's amalgamation in April 2022 made the sole plaintiff the amalgamated [New-]Inc." D.I. 1686. Neither party is wholly correct; the plaintiff in this action is Cirba, Inc. (d/b/a Densify), as the successor-in-interest to Cirba IP, Inc.

New-Inc., by operation of law pursuant to the amalgamation, inherited IP's rights at issue in this litigation. Indeed, New-Inc. became IP's successor-in-interest without requiring intervention by this Court or a caption change, as Rule 25 and this Court's Order (D.I. 1396) make clear.[5] *See, e.g.*, FED. R. CIV. P. 25(c) ("If an interest is transferred, the action may be continued

---

[4] Indeed, this dispute has infiltrated the parties' filings leading up to trial. *See generally* D.I. 1664 (Proposed Pretrial Order); D.I. 1657 (Proposed Voir Dire); D.I. 1658 (Proposed Preliminary Jury Instructions); D.I. 1659 (Proposed Verdict Sheet); D.I. 1660 (Proposed Final Jury Instructions).

[5] That is, New-Inc. would still be limited to asserting only those legal rights assertable by IP when IP existed as an independent entity regardless of the Court's disposition on Cirba's motion to substitute. Cirba agrees. *See* D.I. 1328 at 9 ("While the amalgamation already accomplished the same result by operation of law — in that IP now is Cirba Inc. — substitution also is an available procedural mechanism. IP's rights and interests now belong to the amalgamated Cirba Inc.").

4

by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."); *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir.1993) (noting that Rule 25(c) does not require a party or a court to take any action after an interest has been transferred and explaining that "[w]hen a defendant corporation has merged with another corporation, for example, the case may be continued against the original defendant and the judgment will be binding on the successor even if the successor is not named in the lawsuit").

But the amalgamation's impact ends there. Where Cirba errs is to contend that, notwithstanding Pre-Inc.'s dismissal, the amalgamation, by operation of law, enabled New-Inc. to both (1) assert *existing* claims belonging to Pre-Inc. before April 2022, and (2) assert *new* claims belonging to New-Inc. after April 2022. Neither set of claims is available to New-Inc.

First, Judge Stark's Order dismissing Pre-Inc. for lack of standing (D.I. 752) meant that Pre-Inc. was no longer a party to this action. *ChromaDex, Inc. v. Elysium Health, Inc.*, 507 F. Supp. 3d 579, 581 (D. Del. 2020), *as revised* (Dec. 17, 2020) ("Only a party with standing can invoke the jurisdiction of the federal courts.") (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014)). The amalgamation could not have revived Pre-Inc.'s status as a party because a party's lack of Article III standing, evaluated at the time of the complaint's filing, is an incurable defect. *See, e.g., Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) ("[I]f the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured after the inception of the lawsuit."). Accordingly, Pre-Inc. is not (and cannot) be a party to this action.

Second, because dismissed Pre-Inc.'s lack of status as a party is incurable, any rights assertable post-April 2022 (beyond those belonging to IP, which New-Inc. inherited as IP's

5

successor) appear to have required adding New-Inc. as a *new* party to this litigation asserting *new* claims. *Cf. Abbott Lab'ys v. Roxane Lab'ys, Inc.*, C.A. No. 12-457-RGA, 2013 WL 2322770, at *5 (D. Del. May 28, 2013), *report and recommendation adopted*, C.A. No. 12-457-RGA-CJB, 2013 WL 12173929 (D. Del. June 18, 2013) ("The Federal Circuit has made clear that in a patent infringement case, if the plaintiff who filed the original complaint lacked Article III standing, the suit must be dismissed. In such circumstances, the jurisdictional defect cannot be cured by the later addition of a party with standing, nor by the subsequent purchase by the plaintiff of an interest in the patent-in-suit.") (internal citations and quotation marks omitted). To conclude otherwise and enable New-Inc. to proceed with Pre-Inc.'s claims (*i.e.*, under the premise that the amalgamation rendered New-Inc. capable of asserting Pre-Inc.'s rights in this litigation) would result in impermissibly curing Pre-Inc.'s defective Article III standing retroactively. *See Abraxis*, 625 F.3d at 1364.

Rather than articulate how New-Inc. may assert rights beyond those held by IP in view of Pre-Inc.'s dismissal, Cirba obfuscates the distinction between each entity's rights. For example, Cirba states that "Inc. is asserting its own rights, *most of which* belonged to IP at the time of the amalgamation. As relevant here, those rights include ownership of the patents, IP's infringement claims, *the right to assert the patents as a practicing entity*, and the right to appeal dismissed claims." D.I. 1686 at 1 (emphases added and citations omitted). But Cirba does not explain which rights did not belong to IP at the time of the amalgamation. If such rights did not belong to IP, then those rights necessarily rested with Pre-Inc. and are not actionable.[6] Further, Cirba does identify

---

[6] Put differently, while Cirba seeks to have New-Inc. inherit IP's benefits by "hold[ing] all the rights and obligations of the previously distinct entities [Pre-Inc. and IP]", D.I. 1328 at 3, Cirba does not wish to be burdened by Pre-Inc.'s dismissal in this action.

which entity has the right to assert the patents "as a practicing entity." It is not genuinely disputed that IP "does not sell or offer for sale products and services" and does not compete in the marketplace with VMware. D.I. 946 at 8. If IP did not compete in the marketplace, then "the right to assert the patents as a practicing entity" necessarily rested with Pre-Inc. But Pre-Inc.'s dismissal extinguished its "right to assert the patents as a practicing entity." Thus, Cirba's obfuscation ironically clarifies the reality that the amalgamation alone renders actionable only those rights which New-Inc. inherited from IP. Any rights asserted beyond that would either flout Pre-Inc.'s lack of Article III standing or require some additional procedural vehicle to introduce new rights pertaining to New-Inc. post-April 2022 that are divorced from Pre-Inc.

Notably, Cirba fails to cite to any authority that New-Inc. can assert both IP's rights and New-Inc.'s post-April 2022 rights, the latter of which are undisputedly broader than that which IP itself could assert. Indeed, the Court is not aware of any authority holding that an amalgamation under these circumstances may alone add new parties or new claims to an existing action. For example, adding new parties and new claims reflecting conduct occurring after the complaint's filing typically requires a supplemental pleading under Rule 15(d). *See Sirona Dental Sys., Inc. v. Dental Imaging Techs. Corp.*, C.A. No. 10-288-GMS, 2012 WL 3929949, at *2 (D. Del. Sept. 10, 2012) (explaining that a supplemental pleading refers to "events that occurred after the original pleading was filed" and may be used to add parties to an action); *cf. Micron Tech., Inc. v. Rambus Inc.*, 409 F. Supp. 2d 552, 558 (D. Del. 2006) (supplemental pleadings pursuant to Rule 15(d) may be granted unless it causes undue delay or undue prejudice).[7] New-Inc. never amended its

---

[7] In its Reply supporting its Motion to Update the Case Caption or Substitute Parties, Cirba argues that "VMware offers no reason to think that the amalgamation, while otherwise continuing IP and Inc. as a single company, booted the combined company out of this case. Indeed, if VMware were right, then it would have become a new, distinct nonparty every time it completed a merger

pleadings post-amalgamation. As a result, Cirba's chosen business and litigation strategies have rendered New-Inc.'s claims arising after April 2022 not actionable in this litigation.[8]

Neither Cirba or VMware submitted any authority suggesting that New-Inc.'s post-April 2022 claims are not actionable in *any* litigation, and the Court does not reach that question. But here, for the avoidance of doubt, the Court concludes that the plaintiff in this action is "Cirba, Inc. (d/b/a Densify), as the successor-in-interest to Cirba, IP, Inc.," and the Court will modify the case

---

or acquisition over the course of this case, which of course is not the law." D.I. 1356 at 4. But Cirba misstates the issue. Here, the issue is not whether the amalgamation dismissed New-Inc.; the issue is whether, in light of Pre-Inc's dismissal, the amalgamation was sufficient for New-Inc. (a new party to this action) to seek redress for post-April 2022 harms (which are undisputedly new claims).

[8] Cirba's business decision to subject Pre-Inc. and IP to the 2016 license agreement resulted in depriving Pre-Inc. of Article III standing, which Cirba has repeatedly attempted to rectify. As its submissions reveal, Cirba appears to have avoided characterizing New-Inc. as a new party with new claims to position New-Inc. more favorably for the instant Motion: as an entity through which evidence of competitive harm related to Pre-Inc. could be deemed relevant and admissible, despite Pre-Inc's dismissal for lack of standing.

Cirba is "constrained by the consequences of its litigation strategies." *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, C.A. No. 15-634-JFB, 2019 WL 1877189, at *7 (D. Del. Apr. 26, 2019), *aff'd*, 967 F.3d 1380 (Fed. Cir. 2020). Indeed, after losing multiple fights contesting Pre-Inc.'s lack of Article III standing (*see supra* n. 2) and unwilling to relinquish a $237 million verdict predicated upon Pre-Inc.'s harms, Cirba amalgamated Pre-Inc. and IP into New-Inc., *see* D.I. 1143 ("[C]orporate changes are anticipated that would affect the analysis of these documents' admissibility."), introduced New-Inc. in this litigation as Pre-Inc. and IP's mere successor-in-interest (D.I. 1327; D.I. 1356 at 1 ("VMware does not dispute . . . that what had been two companies is now one, *that Inc. has all the characteristics it previously had*, and now also owns everything IP owned" (emphasis added)), and argued that it was entitled to a reinstated jury verdict and injunctive relief (D.I. 1238) and entitled to present the same evidentiary case as before (D.I. 1239 at 12, 18 ("[i]n light of the merger . . . evidence of competitive harms [as between Pre-Inc. and IP] would have been identical") because according New-Inc. is purportedly "the party competing in the marketplace with VMware." D.I. 1686 at 3. Thus, Cirba's submissions only further reveal the amalgamation's deficiency to achieve what Cirba really desires: Article III standing for Pre-Inc.

caption accordingly in due course.[9] *See Hoemke v. Macy's W. Stores LLC*, C.A. No. 20-01317-PHX-DWL, 2020 WL 5229194, at *1-2, n.3 (D. Ariz. Sept. 2, 2020) (explaining that "whether to amend a case caption is within the Court's discretion and should be based on factors such as promoting clarity and avoiding confusion" and fixing "an erroneous designation of the capacity in which a party is suing or being sued, or the identification of something that is not a legal entity"); *Newkirk v. Pierre*, C.A. No. 19-4283-NGG-PK, 2021 WL 3145707, at *1 (E.D.N.Y. July 26, 2021) (*sua sponte* updating case caption after granting motion to intervene).[10]

### B. Plaintiff Cirba, Inc. (d/b/a Densify), as the successor-in-interest to Cirba IP, Inc., may only assert IP's claims.

Because neither pre-amalgamation claims belonging to Pre-Inc. or post-amalgamation claims belonging to New-Inc. are actionable in the present case, Cirba may only assert claims held by IP as IP's successor in interest. "IP does not sell or offer for sale products and services" and therefore, does not compete in the marketplace with VMware. D.I. 946 at 8. Rather, IP merely "held the intellectually property." D.I. 592 at 1014:5-10. Thus, the claims IP may assert are only those that are available to a non-practicing entity.

---

[9] Because the caption currently references "Counter-Defendants" and "Counter-Plaintiff," the Court will order the parties to meet and confer and advise the Court whether such references are still necessary before ordering the case caption to be modified.

[10] The Court's intended modification of the case caption to "Cirba, Inc. (d/b/a Densify), as the successor-in-interest to Cirba, IP, Inc." is consistent with its prior Order denying Cirba's request to modify the case caption to "Cirba Inc. d/b/a Densify," as this Court held such modification could "confuse jurors as to which party has what rights at which point in time." D.I. 1396 at 8. Consistent with that Order and all other rulings of this Court, the parties are still required distinguish between "Pre-Inc.," "IP", and "New-Inc." in their trial presentations as appropriate. *Id.* at 10-11.

C. **With only non-practicing IP's claims actionable at trial, the minimal probative value of evidence and argument pertaining to competitive harm to Pre-Inc. and New-Inc. is substantially outweighed by its unfairly prejudicial, potentially misleading, and confusing nature.**

With Pre-Inc. dismissed and New-Inc.'s claims not actionable in the present case, Cirba may only proceed on non-practicing entity IP's claims at trial. The parties next dispute whether evidence of competitive harm to Pre-Inc. is admissible to prove non-competitive harm to IP. Despite insisting it "is not asserting [Pre-]Inc.'s dismissed claim," Tr. 24:13-14, Cirba argues the amalgamation rendered competitive harm evidence admissible across three time periods: pre-2016 (when Pre-Inc. was the sole Cirba entity in existence before IP's creation); 2016-2022 (when Pre-Inc. coexisted with IP pursuant to the 2016 license agreement); and post-2022 (when Pre-Inc. and IP amalgamated into New-Inc.). *Compare* D.I. 1671, *with* D.I. 1685. The Court disagrees.

a) **Pre-2016 and 2016-2022 time periods: Cirba may not introduce evidence and argument pertaining to competitive harm to Pre-Inc., including but not limited to, Cirba's "David vs. Goliath" trial theme.**

Although Cirba conceded at Argument that it may not use 2016-2022 Pre-Inc. competitive harm evidence,[11] it reiterates the admissibility of that evidence for the pre-2016 period:[12]

> IP's claims, on which the Court ordered a new trial, cover a time when the associated evidence involves [Pre-]Inc. alone. When IP amalgamated into Inc., the amalgamated [New-]Inc. stepped into IP's shoes as the owner of those claims, D.I. 1396 at 8, which means that [New-]Inc. now is the party entitled to present evidence regarding this first time period. And that evidence relates *only* to [Pre-]Inc. There is no basis for excluding it.

---

[11] Tr. 31:22-32:4 ("I want to start by pointing out one, what I believe is error, in the way it was presented by Your Honor right now, which is IP has to present this superiorly as a nonpracticing at this time and noncompetitor. That's true for the time period to the extent that's relevant and I'm going to come to that, that IP owned the patents, but that is not true for the time period that Inc. owned the patents before IP even existed.").

[12] Tr. 27:10-31:1.

10

>  D.I. 1671 at 4.[13]

Cirba is wrong. It bears reiterating that Judge Stark's dismissal of Pre-Inc. for lack of standing leaves only IP's rights at issue during the entire pre-amalgamation period (*i.e.* before April 2022). D.I. 752; D.I. 946. Pre-Inc. and IP's April 2022 amalgamation did not revive Pre-Inc.'s dismissed rights because Article III is incurable. *See, e.g.*, *Abraxis*, 625 F.3d at 1364. Nevertheless, even if this Court were to assume, *arguendo*, that evidence of competitive harm to Pre-Inc. is probative of competitive harm to IP,[14] such evidence is not admissible in light of Judge Stark's New Trial Order and Federal Rule of Evidence 403. As a result, when presenting argument and evidence pre-dating the April 2022 amalgamation, Cirba must articulate the harm it suffered as a non-competitor rather than as a competitor. D.I. 946 at 8.

### 1. *Judge Stark's New Trial Order*

After dismissing Pre-Inc. for lack of Article III standing, Judge Stark found evidence pertaining to Pre-Inc.'s competitive harm sufficiently prejudicial so as to warrant a new trial, concluding that "the best exercise of [the Court's] discretion is to do so. Had [Pre-]Inc. been dismissed in advance of the January trial, that trial would have looked so materially different that

---

[13] *See also* Tr. 27:2-9. ("Inc. owned the patents and there was no IP. IP didn't exist, so when they created IP, they assigned them the patents and it's undisputed, I think, they assigned them all of their causes of action in the way that the Federal Circuit has said is completely appropriate. So IP had its claims from before IP existed plus the claims that IP had, you know, on its own after it owned the patent."); D.I. 1686 at 3 ("Factually and inescapably, amalgamated [New-]Inc. now owns the patents, and it owns the claims to be adjudicated at the upcoming trial. . . . [New-]Inc. has the right to redress those ongoing harms as well as the rights and causes of action IP had at the time of the amalgamation, *which in turn include all the rights pre-amalgamation Inc. assigned to IP in 2016*.") (emphasis added).

[14] Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

11

it is quite probable the outcome would also have been different." D.I. 946 at 4. Although Cirba characterizes the New Trial Order as containing mere "predictions, not evidentiary rulings," D.I. 1664, Ex. 17 at Ex. 16E at 143, Judge Stark leaves no doubt that the prejudicial inclusion of Pre-Inc. themes, evidence, and arguments materially affected his decision to order a new trial:

> VMware persuasively articulates various ways in which the January trial would have looked quite different had [Pre-]Inc. been dismissed prior to trial. Most importantly, Densify's overarching theme – that it was successfully competing with the much larger VMware, prompting VMware to try to buy Densify and (when that failed) ultimately to copy and steal Densify's better technology, a gambit that if not corrected by the jury would drive Densify out of business – would almost certainly not have been permitted, had IP been the sole plaintiff at trial.
>
> IP does not sell or offer for sale products and services. It is [Pre-]Inc., not IP, that competes in the marketplace with VMWARE. Accordingly, it would have been difficult (if even possible) for IP to have fairly portrayed itself as a competitor of VMWARE. The overall framework of IP's case necessarily would have been very different, as IP would have had to articulate the harm it suffered as a non-competitor rather than as a competitor. VMWARE's responsive case, too, would have changed.
>
> Consequently, much if not all of the evidence "Densify" was permitted to present at the January trial about competition and harm would likely have been excluded. If [Pre-]Inc. had not been a party to the January trial, and IP had been the sole plaintiff, IP would likely not have been permitted to attempt to prove and argue that VMWARE unfairly focuses on taking out its competitors; that "Densify" was "scared to death" about "get[ting] rolled over by the 800-pound gorilla [VMWARE]" in the marketplace; or that "Densify" was motivated to assert its patent rights and litigate in an effort to compete and survive. These were themes that Plaintiffs emphasized right from their opening statement. With only a non-practicing IP as the sole plaintiff at trial, it is likely that the minimal probative value of much of this type of "competitive evidence" would have been substantially outweighed by its unfairly prejudicial, potentially misleading, and confusing nature; it would also likely have looked to the Court as if admitting this evidence could easily "waste" time by making trial substantially longer than was necessary.
>
> . . .
>
> In short, the Court's present belief is that the evidence admitted and arguments allowed at trial would have been materially different had [Pre-]Inc. been dismissed prior to trial.

12

> Based on these conclusions, the Court has further decided that it should grant VMWARE's request for a new trial. For the reasons already stated, Densify's case theory and trial presentation would have required a significant shift had [Pre-]Inc. – the party competing in the marketplace with VMWARE – been dismissed pretrial. In that instance, the outcome of the case could very well have been different. There is, in the Court's view, too great a chance that the jury's assessment of the infringement and invalidity evidence was swayed by evidence and argument that – with the clarity of hindsight – should not have been permitted to allow the verdict to stand. Fundamentally, there is a "high probability" that the outcome of the January trial would have been different if the Court had ruled on the standing issue prior to trial, which leaves the Court without a "sure conviction" that the error of allowing [Pre-]Inc. to be a plaintiff at that trial "did not prejudice" VMWARE.
>
> Contributing to this conclusion is the fact that Plaintiffs' evidence of infringement was, at best, weak.

D.I. 946 at 8-13 (citations omitted). Indeed, consistent with the New Trial Order, this Court denied Cirba's Motion to Update the Case Caption or Substitute New-Inc. (D.I. 1396 at 11), denied Cirba's request to reinstate the jury verdict, and denied Cirba's request for preliminary injunctive relief (D.I. 1626). These four rulings are law of the case and binding upon the parties. *In re Pharm. Benefit Mgrs. Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (citations omitted); *cf. In re Mallinckrodt PLC*, C.A. No. 21-167-LPS, 2022 WL 906458, at *14 (D. Del. Mar. 28, 2022) (explaining that "the law of the case doctrine binds litigants").

Cirba argues that "the facts and circumstances have changed since the January 2020 trial and December 2020 new trial order" because "[Pre-]Inc. and IP's amalgamation in April 2022 made the sole plaintiff the amalgamated [New-]Inc.—'the party competing in the marketplace with' VMware today." D.I. 1686 at 3. As discussed *supra*, however, the sole plaintiff is New-Inc., but only as the successor-in-interest to IP; New-Inc.'s claims are not actionable in this litigation because of Pre-Inc.'s dismissal for lack of standing. And Cirba cites to no authority permitting amalgamation to create a loophole through which Cirba may introduce evidence pertaining to Pre-Inc.'s competitive harm pre-amalgamation particularly when, again, Pre-Inc. was

13

dismissed for lack of standing.[15]  Accordingly, evidence of harm is not, as Cirba contends, "identical to what the first jury heard" (D.I. 1336 at 6-7) because permitting Cirba to essentially repeat the first trial would unravel multiple rulings issued by this Court. *See Pharm. Benefit*, 582 F.3d at 439; *Mallinckrodt*, 2022 WL 906458, at *14.

### 2. *Rule 403 of the Federal Rules of Evidence*

Evidence and arguments pertaining to Pre-Inc.'s competitive harm are also inadmissible under Federal Rule of Evidence 403. Rule 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Here, VMware cites specific examples of inflammatory evidence pertaining to VMware's competitive interactions unrelated to IP or New-Inc. D.I. 1676 at 2-3.[16]  While this evidence may bear on VMware's actions toward its competitors, VMware did not compete with IP—the sole entity whose claims are issue in this action. *See* D.I. 946 at 8. As a result, any minimal probative value of Cirba's competition narrative (*i.e.*, that evidence of competitive harm to Pre-Inc. is probative of non-competitive harm to IP) is substantially outweighed by its unfairly prejudicial, potentially misleading, and confusing nature.

---

[15] Even if Cirba's citation to *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998) supports the proposition that New-Inc. inherited IP's claims, *Mas–Hamilton* does not support Cirba's conclusion that New-Inc. may assert pre-2022 Pre-Inc.'s dismissed claims.

[16] VMware's examples include evidence related to 2007 investment discussions, Henry Jurgens (a Pre-Inc. employee), 2015-2016 acquisition discussions, a "devil smiley face" document related to a Pre-Inc. install, an email chain discussing (among other things) VMware as an "800-pound gorilla" in relation to other VMware competitors, an email discussing putting "a bullet in [Pre-Inc.'s] head," a PowerPoint discussing the destruction of Pre-Inc., and an email discussing a campaign to displace Pre-Inc. D.I. 1676 at 2-3.

Cirba's arguments do not teeter Rule 403's balance in Cirba's favor. First, although Cirba contends that there is no basis for "categorically excluding evidence related to [Pre-]Inc." as such determinations should be made in context at trial, D.I. 1686 at 2, the admissibility of Pre-Inc. competitive harm evidence impacts the parties' trial presentations and themes, the admissibility of which lies beyond the Court's contextual evaluation of individual pieces of evidence. D.I. 1686 at 4; Tr. 34:3-11. Put differently, the Court is concerned that, by waiting until trial, Cirba may deploy the same tactics, *i.e.*, the "David vs. Goliath" trial theme, that Judge Stark found unfairly prejudicial:

> Most importantly, Densify's overarching theme – that it was successfully competing with the much larger VMware, prompting VMware to try to buy Densify and (when that failed) ultimately to copy and steal Densify's better technology, a gambit that if not corrected by the jury would drive Densify out of business – would almost certainly not have been permitted, had IP been the sole plaintiff at trial.

D.I. 946 at 4. And given Cirba's concession that it intends to try the same case as before (D.I. 1336 at 6-7),[17] punting on admissibility until trial would be inefficient, lead to confusion, and waste the jury's time.

Second, Cirba argues that granting VMware's Motion would require the parties "to present falsehoods to the jury, including that IP still exists as an independent company, that IP is the plaintiff, and that the plaintiff is a non-practicing entity with no products." D.I. 1686 at 3. Contrary to Cirba's assertion, nothing in this Order "tell[s] the parties that they have to lie to the jury." Tr. 30:2-4. The parties must fairly distinguish between "Pre-Inc.," "IP", and "New-Inc." in their trial

---

[17] Cirba argued in its Reply Brief in Support of Its Motion for Injunctive Relief (D.I. 1336) that the jury's verdict from the first trial should be reinstated because "[n]ow that Inc. and IP have been amalgamated into a single entity, the evidence of harm would be identical to what the first jury heard." D.I. 1336 at 6-7.

presentations as factually appropriate. *See* D.I. 1396 at 11 (explaining that "the parties need to label and clarify each Cirba entity, e.g., [Pre-]Inc., IP, and [New-Inc.], to both the jury and this Court throughout the trial"). To permit the parties to proceed otherwise would blur the distinction between these separate corporate entities and result in jury confusion.[18]

Third, Cirba contends that "categorically excluding all references to Cirba Inc.—apparently sweeping in thousands of documents and much of the testimony—based on a three-page motion in limine citing only two off-point cases is not appropriate." D.I. 1664, Ex. 16C at 143. The Court, recognizing the importance of this issue before receiving VMware's Motion and Cirba's opposition, *sua sponte* ordered supplemental briefing and heard argument, affording Cirba with additional opportunities to be heard. D.I. 1662. Tellingly, what Cirba did with those opportunities was to double-down on many of the same arguments that failed to persuade Judge Stark that a new trial was unnecessary, which confirms that the best use of this Court's discretion is to rule in advance of trial.[19] *See* FED. R. EVID. 403; *accord United States v. Stewart*, 325 F.

---

[18] Although Cirba takes the position throughout its submissions in the Proposed Pretrial Order (D.I. 1664), Proposed Voir Dire (D.I. 1657), Proposed Jury Instructions (D.I. 1658; D.I. 1660), and Verdict Sheet (D.I. 1659) that it should be able to refer to itself as simply "Densify," using such a broad, singular reference blurs the distinction between the three separate entities at issue, amplifying jury confusion. *See* D.I. 1396 at 11 ("[T]he parties need to label and clarify each Cirba entity, e.g., [pre-]Inc., IP, and post-amalgamated Cirba Inc., to both the jury and this Court throughout trial.").

[19] *Compare* D.I. 755 (Cirba's Supplemental Letter Brief as to VMWare's Post-Trial Motions) at 3 ("Infringement and inducement are questions of VMware's products and conduct in relation to the claim limitations, unaffected by IP being the only patent plaintiff. The same is true of willfulness, which turns on VMware's conduct."); D.I. 761 (Cirba's Response to VMWare's Supplemental Post-Trial Letter Brief) at 1 ("[R]egardless of whether Inc. was in the patent case, obviousness, infringement, and willfulness still would have been at issue, and the facts relating to VMware's "buy vs. build" decision and calculated attempts to destroy Densify would have remained relevant to Densify's case in chief."), *with* D.I. 1664, Ex. 17 at 16E at 143 (Cirba's Opposition to VMware's Motion) ("[M]uch of the evidence VMware seeks to exclude is relevant to willfulness and validity, which do not turn on who owned the patents at the time. Willfulness turns on VMware's intent, not on the record owner of the patents."); *Compare* D.I. 766 at 1 ("[T]he

Supp. 2d 474, 489 (D. Del. 2004), *aff'd*, 179 F. App'x 814 (3d Cir. 2006) (noting the district court's discretion to weigh evidence under Rule 403).

Finally, Cirba argues that the inflammatory evidence VMware cites is relevant to willful infringement, to rebut nonobviousness and anticipation, and that "[f]orcing [Cirba] to skip this chapter would unfairly prejudice [Cirba's] case and keep the full story from the jury." D.I. 1686 at 4-5. Cirba is entitled to present relevant evidence, but not in an unfairly prejudicial way. *See Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 786 (3d Cir. 1996) ("Rule 403 always remains as a potential bar to admissibility."); *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 (3d Cir. 2002) ("Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility."). Cirba has not argued that it needs these specific documents subject to VMware's Motion to argue willful infringement and to rebut nonobviousness and anticipation.[20] Thus, nothing in this Order prevents Cirba from moving to admit relevant facts probative of willful infringement, nonobviousness, and anticipation using non-prejudicial evidence via, for example, witness testimony or by party stipulation.

---

evidence at trial would have been the same because only Inc. existed before IP's creation (March 2016), IP inherited (and would have presented) Inc.'s patent claims for this period, and much of the trial evidence concerned this period), *with* D.I. 1671 at 5 ("There is no reason to categorically bar Inc.-related evidence from any of the three time periods.").

[20] Cirba argues that the Court should not consider Cirba's need for the challenged documents as part of the Rule 403 analysis. Tr. 40:16-22 ("And finally it's wrong to say they need the documents I'm not aware that's the basis of making a 403 analysis. That's a way of saying the facts would be much better to favor the defendant if the actual original evidence doesn't come in and it's sort of sterilized through an expert, I don't think that's the standard."). Cirba's view is incorrect. *See United States v. Bailey*, 840 F.3d 99, 118-19 (3d Cir. 2016) ("When weighing the Rule 403 factors, courts must appraise the genuine need for the challenged evidence and balance that necessity against the risk of prejudice to the defendant.").

In sum, Cirba may not articulate the harm it suffered as a competitor nor deploy its "David vs. Goliath" and related themes when presenting argument and evidence pre-dating the 2022 amalgamation.

  **b) Post 2022: Cirba may not introduce evidence and argument pertaining to competitive harm to New-Inc. including, but not limited to, its "David vs. Goliath" trial theme.**

Although Cirba argues that the amalgamation rendered New-Inc. "the party competing in the marketplace with" VMware today, D.I. 1686 at 3, New-Inc's claims, as discussed *supra*, are not actionable in this litigation.

Turning to whether evidence or arguments pertaining to New-Inc's post-2022 competitive harm is admissible to prove non-competitive harm to IP, the Court concludes that, consistent with Judge Stark's New Trial Order, the probative value of such evidence or argument is substantially outweighed by the potential for undue prejudice and confusion under Rule 403, for the same reasons identified above for the pre-2022 time period. Furthermore, this evidence may have an "undue tendency to suggest decision on an improper basis[.]" Fed. R. Evid. 403 Advisory Committee's Note to 1972 Proposed Rules. New-Inc. may only assert the claims of IP, which is a company that does not make or sell anything. Evidence to suggest otherwise would confuse the jury and mischaracterize IP's business model or its status as a non-practicing entity. Therefore, this evidence must be excluded.

In sum, Cirba may not articulate the harm it suffered as a competitor nor deploy its "David vs. Goliath" and related themes when presenting argument and evidence post-dating the 2022 amalgamation.

## IV. CONCLUSION

For the foregoing reasons, the Court grants VMware's Motion. Cirba's upcoming trial presentation must be rooted in non-competitive harm to IP. Evidence not addressed in this Memorandum Order may be addressed at trial subject to the parties' specific objections.

\* \* \*

WHEREFORE, at Wilmington this 17th day of April, 2023, **IT IS HEREBY ORDERED** that:

1. By 5:00 p.m. on Tuesday, April 18, 2023, the parties shall meet and confer and file a joint letter no longer than one (1) page identifying whether the case caption should be modified to remove references to "Counter-Defendants" and "Counter-Plaintiff."

2. VMware's Motion in Limine No. 1 to Exclude Irrelevant and Prejudicial Evidence Pertaining to Cirba, Inc. is **GRANTED** as follows:

    a. All evidence specifically identified in VMware's submissions (D.I. 1664, Ex. 17; D.I. 1677; D.I. 1685) is excluded under this Court's December 20, 2022 Memorandum Order (D.I. 946) and Federal Rule of Evidence 403;

    b. Consistent with this Court's December 20, 2022 Memorandum Order (D.I. 946) and Federal Rule of Evidence 403, Cirba is confined to "articulat[ing] the harm it suffered as a non-competitor rather than as a competitor" throughout its evidentiary and argumentative presentations, D.I. 946 at 4; and

    c. This Order shall not prevent Cirba from moving to admit, subject to the requirements of the Federal Rules of Evidence, relevant facts probative of willful infringement, nonobviousness, and anticipation during the pre-

  amalgamation period using non-prejudicial sources via, for example, witness testimony or by party stipulation.

  d. By 5:00 p.m. on Tuesday, April 18, 2023, the parties shall meet and confer and file a joint letter no longer than one (1) page identifying whether this Order renders VMware's Motion in Limine Nos. 2, 3, and 4 moot.

3. Because this Memorandum Order is filed under seal, the parties shall meet and confer and submit a joint proposed redacted version no later than seven (7) days after the date of this Memorandum Order. In the absence of a timely request compliant with applicable standards, the Court will unseal the entire Order.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE