IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIRBA INC. (d/b/a DENSIFY) and CIRBA IP, INC.,<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>VMWARE, INC.,<br><br>Defendant/Counter-Plaintiff. | C.A. No. 19-742-GBW<br><br>UNSEALED 4/25/2023 |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff Cirba Inc. (d/b/a Densify), as the successor-in-interest to Cirba IP, Inc.'s ("Plaintiff" or "Cirba"),[1] motion to exclude portions of Dr. Anne Holler's opinions. D.I. 1416. Also pending before the Court are Defendant and Counter-Plaintiff VMware, Inc.'s ("Defendant" or "VMware") motions to exclude portions of Mr. Jim Bergman's and Dr. Vijay Madisetti's testimony and opinions. *See* D.I. 1438; D.I. 1439. For the following reasons, the motions are GRANTED-IN-PART and DENIED-IN-PART.[2]

## I. LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702 provides:

---

[1] *See* D.I. 1719 (concluding plaintiff in this action is "Plaintiff Cirba Inc. (d/b/a Densify), as the successor-in-interest to Cirba IP, Inc.").

[2] The Court writes for the benefit of the parties and assumes their familiarity with this action. All D.I. citations refer to C.A. No. 19-742-GBW unless otherwise noted.

1

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Third Circuit has explained,

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have . . . [held] that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Finally, Rule 702 requires that the expert testimony . . . must be relevant for the purposes of the case and must assist the trier of fact.

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (cleaned up); *Kuhar v. Petzl Co.*, C.A. No. 19-3900, 2022 WL 1101580, at *7 (3d Cir. Apr. 13, 2022) (noting the same trilogy).

Rule 702 "'has a liberal policy of admissibility[,]'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (citation omitted); *see also United States v. Scripps*, 599 F. App'x 443, 447 (3d Cir. 2015) (same), as "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court[,]" *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017) (quoting *Daubert*, 509 U.S. at 596).

## II. DISCUSSION

### a. Cirba's *Daubert* Motion to Exclude Dr. Anne Holler's Opinions

Cirba seeks to exclude Dr. Holler from testifying about: (1) Cirba's U.S. Patent Nos. 8,209,687 ("the '687 patent") and 10,951,459 ("the '459 patent"); (2) non-infringement based on VMware's accused products; and (3) invalidity of the '687 and '459 patents.[3] *See* D.I. 1416; D.I. 1417 at 1, 3. Dr. Holler is a former VMware employee who, from 2006 to 2012, worked with VMware's Distributed Resource Scheduler ("DRS") team to develop source code for the "VM-to-host affinity rules." *See* D.I. 1417 at 3; D.I. 1517 at 2 (citing D.I. 1419, Ex. 5 at Tr. 27:1-28:6; 147:12-19; 195:18-196:1, 196:18-22). Dr. Holler left VMware in 2015 and is currently retired. D.I. 1417 at 3. VMware seeks to have Dr. Holler testify to "her DRS development work in light of [Cirba's] patents and the Court's constructions," *see* D.I. 1517 at 4, including, specifically:[4]

> Topic 14: "adding VM-to-host affinity rules was not difficult and was a natural and obvious extension of VM-to-VM affinity rules";
>
> Topic 15: "that she has reviewed the '687 Patent and the Court's interpretation of the terms of that patent, that DRS does not evaluate each virtual guest against each virtual host and other virtual guests for the purpose of determining whether moving the virtual machine improves balancing ('each to each') because, as she testified in deposition, DRS only evaluates moves to hosts that are compatible; that she never heard anyone at VMware advocate for evaluating each to each; and that when she wrote the code for adding VM-to-host affinity rules, she did not include code to perform an each to each analysis";
>
> Topic 16: "as she did in deposition, she will explain why in her view adding each to each to DRS would not be efficient";

---

[3] In light of the parties' stipulation to sever and stay all claims related to the '459 patent, *see* D.I. 1583, the Court will dismiss without prejudice Cirba's Motion to Exclude Rule 26(A)(2)(C) Testimony of Dr. Anne Holler as it relates to the '459 patent. D.I. 1416. For the purpose of clarity, the Court does not reach the question of whether Dr. Holler's testimony and opinions related to the '459 patent are sufficient under *Daubert*, including but not limited to Topic 17 in her Rule 26(a)(2)(C) disclosure. *See* D.I. 1517 at 6; *see also* D.I. 1419, Ex. 1 at 2-3.

[4] VMware does not dispute Dr. Holler's ability to testify regarding Topics 1-13. *See* D.I. 1417 at 8 n.4.

3

> Topic 18: "that the actual movement of a virtual machine using DRS, that the movement is of the entire virtual machine, and that DRS does not move applications or data from virtual machines"; and
>
> Topic 19: "Dr. Holler is expected to testify about the contents of that deposition, including (19) Ex. 39 (Hewlett-Packard article)."

*See* D.I. 1517 at 6; *see also* D.I. 1419, Ex. 1 at 2-3.

VMware offers Dr. Holler as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), which relates to witnesses who are not required to provide a report. Cirba contends, however, that Dr. Holler's opinions related to Topics 14-19 are not based on her own knowledge and experience, which is required by Rule 26(a)(2)(C). *See Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC.*, C.A. No. 17-189-LPS-CJB, 2019 WL 5310220, at *2-3 (D. Del. Oct. 21, 2019). For the following reasons, the Court will grant-in-part and deny-in-part Cirba's *Daubert* motion to exclude certain testimony of Dr. Holler.

VMware concedes that Dr. Holler did not consider Cirba's '687 patent prior to Dr. Holler's deposition. *See* D.I. 1517 at 4-5 (VMware admitting that the only additional materials Dr. Holler considered after her deposition "would be 'the '687 patent; the '459 patent; [and] the Court's claim construction.'") (alteration in the original); *see also* D.I. 1419, Ex. 5 at Tr. 76:6-78:14 (Dr. Holler testifying that, up to the day of her deposition, she had never seen or reviewed Cirba's '687 patent). Dr. Holler also testified that she was unaware of and, thus, did not apply, the Court's claim constructions during her deposition testimony. D.I. 1419, Ex. 5 at Tr. 336:19-337:14. Instead, Dr. Holler received that information from VMware's counsel only after Dr. Holler's deposition and prior to VMware disclosing Dr. Holler as a Rule 26(a)(2)(C) expert witness. *See* D.I. 1419 at Exs. 6-8. This also includes the Hewlett-Packard article—which was marked as Exhibit 39 to Dr. Holler's deposition, *see* D.I. 1419, Ex. 5 at Tr. 301:3-7—as Dr. Holler testified that she was unaware of the article prior to her deposition. *Id.* at 329:17-330:11. Nor does Dr. Holler claim to

4

have any relevant legal experience to render her competent to opine on ultimate issues of infringement or invalidity. Therefore, Dr. Holler's opinions regarding noninfringement and invalidity of Cirba's '687 patent are not based on sufficient facts or data using reliable principles and methods. *Kuhar*, 2022 WL 1101580, at *7 (citing FED. R. EVID. 702); *Roche Diagnostics*, 2019 WL 5310220, at *3. As such, the Court will grant-in-part Cirba's *Daubert* motion to exclude Dr. Holler from offering the following opinions identified in her Rule 26(a)(2)(C) disclosure:

(1) "that she has reviewed the '687 [p]atent and the Court's interpretation of the terms of that patent," *see* D.I. 1517 at 6 ("Topic 15");

(2) that upon reviewing the '687 patent and the Court's interpretation, "that DRS does not evaluate each virtual guest against each virtual host and other virtual guests for the purpose of determining whether moving the virtual machine improves balancing ('each to each')," *see id.* ("Topic 15"); and

(3) "Dr. Holler is expected to testify about the contents of . . . Ex. 39 (Hewlett-Packard article)," *see id.* ("Topic 19").

However, Dr. Holler will be permitted to offer her opinions based on her personal experience, specifically her development of VMware's accused DRS products. *See Roche Diagnostics*, 2019 WL 5310220, at *3. At trial, Dr. Holler's opinions must remain grounded in her personal experience and knowledge in the development of VMware's accused DRS products. As identified in her Rule 26(a)(2)(C) disclosure, this includes her opinions that:

(1) "adding VM-to-host affinity rules was not difficult and was a natural and obvious extension of VM-to-VM affinity rules," *see* D.I. 1517 at 6 ("Topic 14");

(2) "DRS only evaluates moves to hosts that are compatible," *see id.* ("Topic 15");

5

(3) "she never heard anyone at VMware advocate for evaluating each to each," *see id.* ("Topic 15");

(4) "when she wrote the code for adding VM-to-host affinity rules, she did not include code to perform an each to each analysis," *see id.* ("Topic 15");

(5) "why in her view adding each to each to DRS would not be efficient," *see id.* ("Topic 16");

(6) "the actual movement of a virtual machine using DRS," *see id.* ("Topic 18");

(7) "the movement is of the entire virtual machine," *see id.* ("Topic 18"); and

(8) "DRS does not move applications or data from virtual machines," *see id.* ("Topic 19").

Accordingly, the Court grants-in-part and denies-in-part Cirba's *Daubert* motion to exclude Dr. Holler from testifying as to certain topics indicated in her Rule 26(a)(2)(C) disclosure.[5]

### b. VMware's *Daubert* Motion to Exclude Mr. Bergman's Opinions

#### i. Whether DRS Damages Are Tied to Use of the '687 Patent's Method

VMware argues that Mr. Bergman fails to correlate DRS damages to actual infringing use of the '687 patent's method and, instead, improperly opts to include 100% of VMware's sales of the accused products as the basis for damages. D.I. 1440 at 47-48. For the reasons stated below,

---

[5] Separately, Cirba moves to exclude as untimely Dr. Holler's testimony related to Topic 14 (i.e., "adding VM-to-host affinity rules was not difficult and was a natural and obvious extension of VM-to-VM affinity rules") and Topic 19 (i.e., "Dr. Holler is expected to testify about the contents of . . . Ex. 39 (Hewlett-Packard article)") of her Rule 26(a)(2)(C) disclosures. *See* D.I. 1417 at 8-9. However, the Court finds that, although Topic 14 uses the word "obvious"—which Cirba argues signals an invalidity opinion under 35 U.S.C. § 103, *see* D.I. 1554 at 6—Topic 14 is grounded in Dr. Holler's personal knowledge and experience developing VMware's DRS products. *See* D.I. 1419, Ex. 5 at Tr. 193:17-198:11, 303:15-305:8. In any event, "with respect to any purported expert 'invalidity opinions,' VMware stipulates that it will offer Dr. Holler only as a fact witness." D.I. 1517 at 12. Thus, because Topic 14 does not advance an improper invalidity opinion, the Court denies Cirba's motion to exclude it as untimely. Further, the Court has already precluded Dr. Holler from testifying as to the contents of the Hewlett-Packard article—which was marked as Exhibit 39 to Dr. Holler's deposition, *see* D.I. 1419, Ex. 5 at Tr. 301:3-7.

the Court denies VMware's *Daubert* motion to exclude Mr. Bergman's opinions related to DRS damages based on infringing uses of the '687 patent's method.

Where the asserted claims are method claims, "the damages base should be limited to products that were actually used to perform the claimed method." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022) (citing *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1358-59 (Fed. Cir. 2009)). Importantly, the Federal Circuit has "never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009). Rather, because a patent holder is not "required to demonstrate a one-to-one correspondence between units sold and directly infringing customers[,] [p]roof of inducing infringement or direct infringement may be shown by circumstantial evidence." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 Fed. App'x 879, 884 (Fed. Cir. 2001) (internal citations omitted).

Here, the Court finds that VMware's arguments regarding whether Mr. Bergman's DRS damages opinions properly account for actual infringing use of the '687 patent's method go to weight, not admissibility. Cirba provides ample evidence in support of its contention that Mr. Bergman may reasonably be found to have accounted for actual infringing use of the '687 patent in his royalty rate analysis. *See, e.g.*, D.I. 1503, Ex. 317 at § 1, ¶¶ 64-73, 81- 94, 206-12, 249-305; *id.* at Ex. 318 ¶¶ 64-73; *id.* at Ex. 319 at 50:6-54:7, 52:1-15, 119:17-122:8; *id.* at Ex. 320 at 194:16-199:17. Further, Mr. Bergman addressed evidence discussing the demand and value of having the '687 patent's method available for use by VMware's customers. *See, e.g., id.* at Ex. 317 at § 1, ¶¶ 81-94, 206-12, 249-305, 417-19, 430, 444-48; *id.* at § 2, ¶¶ 120-23; *id.* at Ex. 318 ¶¶ 64-73; *id.* at Ex. 319 at 50:6-54:7, 119:17-122:8; *id.* at Ex. 320 at 190:18-192:3, 194-16:199:17. VMware's

7

arguments related to whether Mr. Bergman should have accounted for actual infringing use by VMware's approximately 500,000 customers, and the correlation between any such use and actual sales, are directed to the sufficiency of the evidence, which is not an issue to be resolved at this stage.

Accordingly, the Court denies VMware's *Daubert* motion to exclude Mr. Bergman's DRS damages royalty base related to use of the '687 patent's method.

### ii. DRS Damages for Direct Infringement of the '687 Patent

VMware argues that Mr. Bergman's DRS damages for direct infringement of the '687 patent are improperly based on VMware's sales of the accused products rather than VMware's actual use of the claimed methods of the '687 patent. D.I. 1440 at 48-49; D.I. 1556 at 24. Specifically, VMware contends that Mr. Bergman's direct infringement damages calculations should be excluded because Mr. Bergman fails to tailor damages to evidence of VMware's internal use and testing of the claimed methods of the '687 patent. D.I. 1440 at 49; D.I. 1556 at 24. For the reasons stated below, the Court grants VMware's *Daubert* to exclude Mr. Bergman's opinions related to DRS damages for direct infringement of the '687 patent.

"To be admissible, expert testimony opining on a reasonable royalty must 'sufficiently [tie the expert testimony on damages] to the facts of the case. If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded.'" *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011)). "[M]ethod claims are 'not directly infringed by the mere sale of an apparatus capable of performing the claimed process.'" *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314 (Fed. Cir. 2020) (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)). An expert "cannot simply count sales of the

8

[product] accused of infringing the [asserted] patent as sales of the method claimed." *Id.* Instead, the damages base must be "tailored to any alleged internal use of the claimed methods." *Id.*; *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("[T]he damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention.").

Here, the Court concludes that Mr. Bergman failed to show a nexus between VMware's sales of the accused products and VMware's performance of the asserted method claims of the '687 patent. For the asserted claims of the '687 patent, Cirba's direct infringement allegations rely on evidence of VMware's internal testing and use of the accused DRS products, as well as demonstrations to customers. *See* D.I. 1503, Ex. 172 ¶ 107 ("In addition to VMware's own day to day 'use' of the Accused Products, . . . VMware's 'use' includes at least the setting up, troubleshooting, supporting, and the testing of the Accused Products, including on-site with customers . . . as well as installations and ongoing support. Further, VMware uses the claimed system by putting the system as a whole into service . . ."). Mr. Bergman's opinion regarding damages for direct infringement relies entirely on VMware's sales of the accused products. *See* D.I. 1503, Ex. 317 ¶ 197. However, the Court finds that Mr. Bergman did not analyze the economic harm of the alleged use of the claimed methods of the '687 patent during VMware's internal use and testing, or during customer demonstrations of the accused products. Mr. Bergman also makes no effort to tie the direct infringement damages base to VMware's own internal use and testing of the accused products. *See Packet Intel.*, 965 F.3d at 1314. Instead of determining how many sales of the accused products were based on use of the patented method, Mr. Bergman, in a single paragraph, seemingly assumes that all sales of the accused products are attributable to

9

VMware allegedly performing the claimed method of the '687 patent internally during testing and customer demonstrations. *See* D.I. 1503, Ex. 317 ¶ 197.

Cirba's argument that Mr. Bergman's direct infringement damages base relies on Dr. Madisetti's discussion of the importance of VMware's internal testing and demonstrations, which Cirba posits demonstrates a connection between VMware's testing and demonstrations using the patented method and sales of the accused products, fares no better. *See* D.I. 1502 at 48 ("Mr. Bergman relies on evidence that VMware's direct infringement through its testing, demonstration, and internal use of DRS[,] [which] is reasonable because the evidence shows that VMWare's testing is a but-for and thus substantial cause of the DRS sales included in his reasonable royalty calculations.") (citing D.I. 1503, Ex. 317 ¶ 197; *id.* at Ex. 274 ¶¶ 107-15). Cirba cites to paragraphs 107 through 115 of Dr. Madisetti's expert report, which discusses demonstrating the functionality of the accused products generally, and the importance of testing the accused products to ensure quality and compatibility with other systems and software. *See id.* at Ex. 274 ¶¶ 107-15. However, this evidence does not show a nexus or connection between VMware's performance of the claimed method and sales of VMware's accused products. *Cf. Carnegie Mellon University. v. Marvell Technology Group, Ltd.*, 890 F. Supp. 2d 602, 610 (W.D. Pa. 2012), *aff'd in part, rev'd in part, vacated in part*, 807 F.3d 1283 (Fed. Cir. 2015) (finding a direct relation between the accused infringer's internal use of the patent method and the accused infringer's sales based largely on accused infringer's concession that its "infringing use is the but-for cause of [its] sales"). At most, Cirba's evidence establishes that testing and customer demonstrations are generally important to software development. But this evidence does not establish that testing affects sales.[6] And while

---

[6] That VMware purportedly "touts its own testing of its products as part of marketing," *see* D.I. 1503, Ex. 274 ¶ 112, does not establish that of VMware's testing of its accused products is the driving force for VMware's customer sales.

10

VMware itself acknowledged that, without testing, "you wouldn't be sure it works before you send it to a customer," *see* D.I. 1502 at 48 (citing D.I. 591 at Tr. 905:5-906:22), VMware does not state the inverse—i.e., that testing positively impacts sales, and if so, how.  More importantly, neither Mr. Bergman or Dr. Madisetti identify any connection between internal use of the '687 patent's claimed method specifically—be it through testing or demonstrations—and sales.

Because there is no evidence that VMware's sales were made based on VMware's infringing use of the '687 patent's claimed methods, Mr. Bergman's direct infringement damages model for the '687 patent, which relies entirely on VMware's sales of the accused products, is not tailored to any alleged internal use of the claimed method.  Accordingly, the Court grants VMware's *Daubert* motion to exclude Mr. Bergman from opining on DRS damages for direct infringement of the '687 patent.

### iii. Mr. Bergman's DRS Damages Apportionment Analysis for the '687 Patent

VMware seeks to exclude Mr. Bergman's opinion that "a reasonable percentage of DRS value attributable to the '687 patent is at least 33% of the total value of DRS," *see* D.I. 1503, Ex. 317 ¶ 303, as "speculative, conclusory, and devoid of any analysis." *See* D.I. 1440 at 49-50 (citing *Exmark*, 879 F.3d at 1348).  While VMware concedes that Mr. Bergman discusses the calculus involved in his apportionment analysis, *see id.* at 49 (citing D.I. 1503, Ex. 317 ¶¶ 281-304), VMware takes issue with Mr. Bergman's reliance on Dr. Madisetti's opinion regarding the incremental benefits of the patented method—which serves as the basis for Mr. Bergman's 33% apportionment figure. *Id.* at 49-50.

However, the Court finds that Mr. Bergman's apportionment opinions are properly grounded in the facts of this case and not, as VMware argues, based on arbitrary or speculative calculations like those condemned by the Federal Circuit.  *Id.* (citing *LaserDynamics, Inc. v.*

11

*Quanta Comput., Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012); *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022); *Exmark*, 879 F.3d at 1348). Mr. Bergman establishes a logical methodology to derive the 33% DRS apportionment figure and provides a detailed analysis of a variety of quantitative factors. Because of "the difficulty . . . in assigning value to a feature that may not have ever been individually sold," the Federal Circuit does not require "absolute precision." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014). Rather, "it is well-understood that this process may involve some degree of approximation and uncertainty." *Id.* (citing *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)). Moreover, it is not improper to rely on a technical expert's explanation of a patented features' incremental benefit in deriving an apportionment figure. *See Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Consistent with [Federal Evidence] Rule 703, patent damages experts often rely on technical expertise outside of their field when evaluating design around options or valuing the importance of the specific, infringing features in a complex device."). Ultimately, VMware's argument goes to the weight, not admissibility, of the testimony. *See Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 387-88 (D. Del. 2014) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge") (citation omitted); *see also Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

For the reasons stated above, the Court denies VMware's *Daubert* motion to exclude Mr. Bergman's apportionment methodology as unreliable.

### iv. Mr. Bergman's vRealize Operations ("vROps") Damages Calculation of Lost Profits for the '687 Patent

VMware seeks to exclude Mr. Bergman's lost profits opinions, arguing that "IP cannot claim lost profits as a matter of law," *see* D.I. 1440 at 50, while "Inc.'s lost profits claim hands on its repeatedly rejected standing argument," *see* D.I. 1556 at 25.

The Court agrees that Cirba cannot claim lost profits attributed to Cirba IP, Inc. ("IP"). "[L]ost profits must come from the lost sales of a product or service the patentee itself was selling." *See Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1376 (Fed. Cir. 2015), *vacated on other grounds, Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 577 U.S. 1099 (2016). There is no dispute that IP did not sell or offer for sale any products or services. *See, e.g.*, D.I. 946 at 8 (the Court acknowledging that "IP does not sell or offer for sale products and services"); D.I. 1567, Ex. 64 at 1014:4-16 (Mr. Bergman testifying at the first trial that IP does not sell, or offer for sale, any products).

Nor can Cirba claim as its own damages the lost profits of attributed to Cirba Inc. (d/b/a Densify) ("Pre-Inc."), "the [company] that sold the products," *see* D.I. 1567, Ex. 64 at 1014:8, because IP and Pre-Inc. undisputedly existed as two distinct corporate entities. S*ee Warsaw Orthopedic*, 778 F.3d at 1375 ("[A] patentee may not claim, as its own damages, the lost profits of a related company."). "Although this distinction may appear overly formalistic, the Federal Circuit has explained that two companies that benefit from dividing patent ownership from sale of the patented product must also accept the consequence that the patent owner will be unable to claim the lost profits experienced by the seller." *Intuitive Surgical, Inc. v. Auris Health, Inc.*, C.A. No. 18-1359-MN, 2021 WL 3662842, at *3 (D. Del. Aug. 18, 2021) (citing *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004)). Cirba may also not claim the lost profits attributed to Pre-Inc.—the entity that sold products—because Pre-Inc. was dismissed for lack of

13

Article III standing. *See* D.I. 752. Notably, Cirba does not dispute that it cannot claim the lost profits attributed to an entity lacking Article III standing. *See* D.I. 1502 n.9 ("[Cirba] would be legally entitled to pursue all calculated lost profits if, as [Cibra] has argued, Inc. had Article III standing from the outset of this case."). Accordingly, Cirba cannot assert lost profits attributed to IP or Pre-Inc.

Finally, Cirba cannot claim lost profits attributable to the date of the amalgamation (i.e., April 2022) forward, *see* D.I. 1503, Ex. 318 ¶ 62, because the plaintiff in this action is Cirba, Inc. (d/b/a Densify), as the successor-in-interest to Cirba IP, Inc. *See* D.I. 1719 at 4. That is, Cirba, by operation of law pursuant to the amalgamation, inherited IP's rights at issue in this litigation without requiring intervention by this Court or a change to the case caption. *See, e.g.*, FED. R. CIV. P. 25(c); *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir.1993). However, as this Court has already held, "the amalgamation's impact ends there" and does not allow Cirba to "assert *new* claims belonging to [Cirba] after April 2022."[7] *See* D.I. 1719 at 5, 8 (emphasis added). As neither pre-amalgamation claims belonging to Pre-Inc. or post-amalgamation claims belonging to Cirba are actionable in the present case, Cirba may only assert claims held by IP as IP's successor in interest. *See generally id.* And as this Court has already held, *see supra* Section II.b.iv., Cirba cannot claim lost profits attributed to IP because IP did not sell or offer for sale any products or services. *See, e.g.*, D.I. 946 at 8 (the Court acknowledging that "IP does not sell or

---

[7] Importantly, this Court did not reach the question of whether Cirba's post-amalgamation claims are not actionable in any litigation. *See* D.I. 1719. Rather, the Court held that, absent some other procedural vehicle, amalgamation alone does not add new parties and or new claims to an existing action. *Id.* at 7-8. Because Cirba never amended or supplemented its pleadings to add either post-amalgamated Cirba as a party or post-amalgamated Cirba's claims, "[Cirba's] claims arising after April 2022 not actionable in this litigation." *Id.* at 8.

14

offer for sale products and services"); D.I. 1567, Ex. 64 at 1014:4-16 (Mr. Bergman testifying at the first trial that IP does not sell, or offer for sale, any products).

For the reasons stated above, the Court grants VMware's *Daubert* motion to exclude Mr. Bergman's lost profits opinions.

### c. VMware's *Daubert* Motion to Exclude Dr. Madisetti's Opinions

#### i. Dr. Madisetti Does Not Misapply or Contradict the Court's Claim Construction

VMware seeks to preclude Cirba's infringement expert, Dr. Madisetti, from testifying as to how VMware's accused products use "rule sets pertaining to each of technical, business and workload constraints" for each VM-host evaluation because Dr. Madisetti purportedly misapplies the Court's claim construction. D.I. 1440 at 38-39. In particular, VMware contends that "Dr. Madisetti makes no attempt to follow" the Court's construction of the "each-to-each" limitation of claims 3 and 7 of the '687 patent, which warrants exclusion.[8] *Id.* The Court disagrees.

While an expert witness is not allowed to deviate from the Court's claim construction, that expert is allowed to provide opinions reflecting the application of the Court's claim construction to the facts of this case. *See EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016) ("Expert testimony regarding whether an accused device falls within the scope of a court's claim construction is appropriate and raises a factual issue for the jury to resolve."). Here, Dr. Madisetti's expert reports considered the Court's construction of the Each-to-Each limitation and,

---

[8] The Court previously construed claims 3 and 7 of the '687 patent to require "evaluating each virtual machine against each virtual host and other virtual machines, in each case using one or more rule sets pertaining to each of technical, business and workload constraints," (the "Each-to-Each limitation"). *See* D.I. 1160 at 5. The Court explained that it was "persuaded that a [person of ordinary skill in the art "POSA"] would understand *each* required evaluation must use one or more rule sets pertaining to all three constraints in order to satisfy the claim," *see id.* at 8, and further clarified that its construction does not require that "*all* rule sets used in each evaluation must pertain to all three constraints," *id.* at 8 n.9.

15

based on that construction, offered opinions relating to the alleged infringement of the '687 patent by VMware's accused products. *See, e.g.*, D.I. 1503, Ex. 215 ¶¶ 120-22, 132, 138, 144, 150, 152; *id.*, Ex. 217 at 102-199; *id.*, Ex. 218 at 101-196; *id.*, Ex. 219 at 105-205. In fact, Dr. Madisetti maintains that his infringement theory has remained consistent between the different versions of VMware's accused products, stating in his 2022 opening expert report that "[t]he Court's [February 24, 2022] construction, which agreed with [Cibra's] position, (*see* D.I. 1160 at 8), does not meaningfully change the construction of this term from the court's prior construction in 2019, (*see* D.I. 356 at 4-6; D.I. 357 at 1)." *See* D.I. 1503, Ex. 217 at 102 n.4; *see also Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir. 2004) ("Comparison of the claims to the accused device requires a factual determination that every claim limitation or its equivalent is found in the accused device.") (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)). That VMware disagrees with Dr. Madisetti's application of the Court's claim construction goes to the weight to be given to the testimony, not its admissibility. *See Masimo*, 62 F. Supp. 3d at 387-88 ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.") (citation omitted); *see also Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

Nor does Dr. Madisetti improperly advance a "new" infringement theory that contradicts the Court's construction of the Each-to-Each limitation.[9] VMware contends that Dr. Madisetti presents a new theory in which the Each-to-Each limitation is satisfied because, despite "skipping" constraints, VMware's DRS still evaluates in each case each VM and host for each constraint. D.I.

---

[9] The Court has already denied VMware's Motion to Strike Dr. Madisetti's "skipping" theory, finding that this theory was adequately "disclosed in Dr. Madisetti's opening report and, therefore, is not 'new.'" *See* D.I. 1663 at 10.

1440 at 40-41. However, the Court finds that VMware mischaracterizes Dr. Madisetti's opinion as to how the Each-to-Each limitation can be met. At his deposition, Dr. Madisetti explained that VMware's DRS products satisfy the Each-to-Each limitation because, although VMware's DRS "eliminates some instructions, . . . it still, in all cases, evaluates and determines all three, technical, business and workload constraints." *See* D.I. 1453, Ex. 50 at 181:20-23; *see also id.* at 179:24-180:3 (Dr. Madisetti clarifying that "the fact that you are stopping a particular function executing" after evaluating a constraint "doesn't mean that the other constraints are not checked. All are checked. . ."). This theory is not inconsistent with the Court's construction of the Each-to-Each limitation and, therefore, does not warrant exclusion. *See Minerva Surgical, Inc. v. Hologic, Inc.*, C.A. No. 18-217-JFB-SRF, 2021 WL 3048447, at *6 (D. Del. July 20, 2021) ("The opinions of a patent infringement expert who applies an erroneous claim construction are inadmissible."). Nor is Dr. Madisetti's testimony somehow inconsistent with his prior trial testimony. *Compare* D.I. 1453, Ex. 51 at 616:10-618:20 (Dr. Madisetti agreeing that if a constraint is not evaluated, it would not satisfy the claims of the '687 patent), *with id.*, Ex. 50 at 189:18-197:15 (same).

For the reasons stated above, the Court denies VMware's *Daubert* motion to exclude Dr. Madisetti's infringement opinions regarding the Each-to-Each limitation.

### ii. Dr. Madisetti's Allegedly New Construction of "Virtual Guest"

VMware also seeks to exclude Dr. Madisetti's opinion that VMware's vCLS virtual machines ("VMs") do not count as "virtual guests" because they rely on impermissibly new claim construction raised through expert testimony. D.I. 1440 at 42-43. However, the Court has already struck Dr. Madisetti's infringement opinion that (1) VMware's DRS 2.0 vCLS VMs are not "virtual guests," and (2) VMware's DRS feature evaluates the vCLS VMs against hosts. *See* D.I.

1663 at 8, 13. As such, VMware's *Daubert* motion to exclude Dr. Madisetti's opinion that VMware's vCLS VMs do not count as "virtual guests" is denied as moot.

### iii. Dr. Madisetti's Purported Failure to Provide Reasoning for His Disagreement with Dr. Jason Nieh's Source Code Interpretation

VMware also seeks to exclude Dr. Madisetti's opinions disputing Dr. Nieh's technical interpretation of VMware's source code on the basis that "Dr. Madisetti does not even articulate his specific disagreements with Dr. Nieh." D.I. 1440 at 44. The Court finds this reasoning unpersuasive. VMware's motion is grounded in its general disagreement with Dr. Madisetti's source code opinions. But such disagreement does not warrant exclusion. Here, the Court finds that Dr. Madisetti explains both the functionality of VMware's source code and his disagreements with Dr. Nieh's source code analysis such that Dr. Madisetti's opinions are not mere "subjective belief or unsupported speculation." *Id.* at 44 (citing *T.N. Incorporation, Ltd. v. Fid. Nat'l Info. Servs.*, C.A. No. 18-5552, 2021 WL 5980048, at *5 (E.D. Pa. Dec. 17, 2021) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994))); *see, e.g.*, D.I. 1503, Ex. 216 ¶¶ 39, 43, 77-79. Any deficiencies in Dr. Madisetti's analysis or ability to understand the source code are issues of weight and credibility—which are issues squarely addressed by the jury—rather than admissibility. *See Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, C.A. No. 10-63-LPS, 2012 WL 12904235, at *1 (D. Del. June 14, 2012). VMware can challenge Dr. Madisetti's analysis of the source code and his specific disagreements with Dr. Nieh through cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596.

Accordingly, the Court denies VMware's *Daubert* motion to exclude Dr. Madisetti's opinions disputing Dr. Nieh's technical interpretation of VMware's source code.

### iv. Dr. Madisetti's Allegedly Conclusory Statements About VMware's Source Code

VMware also seeks to exclude "Dr. Madisetti's conclusory opinions regarding [VMware's] source code" because they "are often based on factual assertions that are objectively wrong." D.I. 1440 at 45. Specifically, VMware takes issue with Dr. Madisetti's opinion that the Compute DRS version 2.0 calls the function "HasCapacityFor," because Dr. Nieh "confirmed that DRS 2.0 does not call HasCapacityFor." *Id.* at 46. As VMware disputes the factual predicate underlying Dr. Madisetti's opinion, VMware's objection goes to the weight, not the admissibility, of Dr. Madisetti's opinion. *See Shire Viropharma Inc. v. CSL Behring LLC*, C.A. No. 17-414-MSG, 2021 WL 1227097, at *9 (D. Del. Mar. 31, 2021) ("A dispute over interpretation of the data again goes to weight not admissibility."). VMware is "free to challenge those opinions on cross-examination of Dr. [Madisetti] at trial." *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, C.A. No. 16-41-CFC, 2019 WL 1578259, at *1 (D. Del. Apr. 11, 2019) (citing *Daubert*, 509 U.S. at 596).

Therefore, the Court denies VMware's *Daubert* motion to exclude Dr. Madisetti's opinion that VMware's source code calls the "HasCapacityFor" function.

## III. CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Plaintiff's and Defendant's motions to exclude certain expert testimony.

\* \* \*

WHEREFORE, at Wilmington this \_\_th day of April, 2023, **IT IS HEREBY ORDERED** that:

1. Cirba's Motion to Exclude Rule 26(A)(2)(C) Testimony of Dr. Anne Holler (D.I. 1416) is granted-in-part and denied-in-part as described herein;

19

2. VMware's Motion to Exclude Certain Expert Testimony of Mr. Jim Bergman (D.I. 1438) is granted-in-part and denied-in-part as described herein; and

3. VMware's Motion to Exclude Certain Expert Testimony of Dr. Vijay Madisetti (D.I. 1439) is denied as described herein.

4. Because the Memorandum Order is filed under seal, the parties shall meet and confer and submit a joint proposed redacted version no later than seven (7) days after the date of this Memorandum Order. In the absence of a timely request compliant with applicable standards, the Court will unseal the entire Order.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE