# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIRBA INC. (d/b/a DENSIFY), as the successor-in-interest to CIRBA IP, INC., | C.A. No. 19-cv-00742-GBW |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| VMWARE, INC., | |
| Defendant. | |

## PRELIMINARY JURY INSTRUCTIONS

## 1.0     INTRODUCTION

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and on your role as jurors.

These instructions are intended to introduce you to the case and the law that you will apply to the evidence that you will hear. I will give you more detailed instructions on the law at the end of the trial.  Also, because this is a patent trial that will deal with subject matter that is not within the everyday experience of most of us, I will additionally give you some preliminary instructions regarding patents to assist you in discharging your duties as jurors.

## 2.0    THE PARTIES AND THEIR CONTENTIONS

This case is an action involving allegations of patent infringement under the patent laws of the United States

The plaintiff in this case is Cirba Inc. (d/b/a Densify), as the successor in interest to Cirba IP, Inc., which I may refer to as "Cirba" or "Plaintiff."  Cirba Inc. ("Inc") is not a plaintiff by itself.  You will hear more about this from the parties, but in April 2022, Cirba Inc. and Cirba IP amalgamated into a single entity, but only Cirba IP's claims are at issue in this action.

The defendant in this case is VMware, Inc., which I will refer to as "VMware" or "Defendant."

There are two patents at issue in this case.  I will refer to those patents collectively as the "Asserted Patents."  A copy of each of the patents has been given to you along with these preliminary instructions.

Cirba is the owner of United States Patent No. 8,209,687 and United States Patent No. 9,654,367.  Because these numbers are so long, patents are usually referred to by their last three digits.  You may hear the attorneys and witnesses refer to these patents as the '687 patent and the '367 patent, respectively.  Together, the '687 patent and the '367 patent may be referred to as "the Cirba patents."  Each patent may have multiple "claims" in it, which are the statements defining what the invention is.

Cirba alleges that VMware directly infringes or did infringe claims 3 and 7 of the '687 patent, and claims 1, 9, 13, and 17 of the '367 patent.  In order to prove direct infringement, Cirba must prove that it is more likely than not that VMware made, used, offered for sale, or sold its products in a manner that meets all of the requirements of any one claim.  The attorneys and witnesses may sometimes refer to these products as "the accused product" or the "accused

products." Cirba also claims that VMware induces infringement of both patents, that VMware's infringement of the '687 patent was willful, and that Cirba is entitled to damages to compensate for VMware's infringement.

VMware denies that it infringes or did infringe or induces or did induce infringement of Cirba's patents, denies willfulness, and denies that Cirba is entitled to damages based on infringement. VMware further contends that the '687 patent is invalid. Cirba denies that its '687 patent is invalid.

## 3.0     DUTIES OF THE JURY

Let me now turn to the general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find what the facts are from the evidence as presented at the trial. You and you alone will be the judges of the facts. You will have to apply the law to those facts as I will instruct you at the close of the evidence. You must follow that law whether you agree with it or not.

You are the judges of the facts. I will decide which rules of law apply to this case.

In addition to instructing you about the law, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Do not let anything I say or do during the course of the trial influence you.  Nothing I say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

## 4.0    EVIDENCE

The evidence from which you will find the facts will consist of the testimony of

witnesses, and the documents and other things admitted into evidence. The evidence may also

include certain facts agreed to by the parties or that I may instruct you to find. Certain things

are not evidence and must not be considered by you. I will list them for you now:

1.      Statements, arguments, and questions by lawyers are not evidence.

2.      Objections to questions are not evidence. Lawyers have an obligation to their

clients to make an objection when they believe testimony or exhibits being offered are not

admissible under the rules of evidence. You should not be influenced by a lawyer's objection

or by my ruling on the objection. If I sustain or uphold the objection and find the matter is not

admissible, you should ignore the question, testimony, or document. If I overrule an objection

and allow the matter in evidence, you should treat the testimony or document like any other

evidence. If I instruct you during the trial that some item of evidence is admitted for a limited

purpose, you must follow that instruction and consider that evidence for that purpose only. If

this occurs during the trial, I will try to clarify this for you at that time.

3.      Testimony that the Court has excluded or told you to disregard is not

evidence and must not be considered.

4.      During trial you will be shown charts and animations to help illustrate the

testimony of the witnesses. These illustrative exhibits, called "demonstrative exhibits," are

not admitted into evidence and should not be considered as evidence.  Rather, it is the

testimony about the demonstrative exhibits that is evidence.

5.      Anything you see or hear outside the Courtroom is not evidence and must be

disregarded.  You are to decide this case solely on the evidence presented here in the

Courtroom.

## 4.1    DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. As a general rule, the law makes no distinction between these two types of evidence but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

## 4.2    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility.  In judging the facts, it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

## 4.3    EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience. In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

### 4.4    DEPOSITION TESTIMONY

You may hear witnesses testify through deposition testimony. A deposition is testimony of a witness taken under oath before trial. A court reporter is present and records the questions and answers.  You should judge deposition testimony, insofar as possible, in the same way as if the witness had been present to testify.

## 5.0    BURDEN OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Cirba is accusing VMware of patent infringement.  I may refer to an individual party that claims the other is infringing as the "accusing party" and the party accused of infringement as the "accused party."  The accusing party has the burden of proving its claims and the amount of its money damages, if any, by what is called a preponderance of evidence.  That means that the accusing party has to produce evidence that, when considered in light of all of the facts, leads you to believe that what the accusing party claims is more likely true than not. To put it differently, if you were to put the evidence of the accusing party and the accused party concerning infringement on opposite sides of a scale, the evidence supporting the accusing party's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of the accused party, you must find for the accused party.

If you find that VMware infringed one or more of the '687 patent claims that have been asserted in this case, then as a separate question, Cirba has also asserted that the infringement of the '687 patent was willful.  Cirba has the burden of proving this additional contention by a preponderance of the evidence.

In this case, in addition to denying Cirba's claims, VMware asserts that one of Cirba's patents is invalid.  Patents, however, are presumed to be valid under the law.  The accused party therefore has the burden of proving that the patents are invalid by clear and convincing evidence.

Clear and convincing evidence produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

## 6.0    PATENT VIDEO

At this time, we are going to show a 17-minute video as an introduction to the patent system. It contains background information to help you understand what patents are, why they are needed, the role of the Patent Office, and why disputes over patents arise. This was prepared by the government, not by the parties. Therefore, the video addresses issues that are not necessarily going to be presented as issues for you to decide in this case.

Many of the terms that are used in the video are contained in a Glossary of Patent Terms in your Notebooks. Please feel free to refer to this Glossary throughout the trial.

## 7.0     GENERAL GUIDANCE REGARDING PATENTS

I will now give you additional guidance regarding patents and patent disputes. You may have heard some of this in the patent video we just watched.

### 7.1    INFRINGEMENT DISPUTES AND INVALIDITY

As you heard in the video, the Patent Office and its examiners do not decide infringement issues. If there is a dispute about infringement, it is brought to the Court to decide. Here, you are also asked to decide about validity, that is, whether the patents-in-suit should have been allowed by the Patent Office. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or nonobvious in light of the prior art or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

## 7.2     ROLE OF PATENT CLAIMS

The claims of a patent are a main focus of a patent case because it is the claims that define the patent owners' rights under the law; that is, the claims define what the patent owners may exclude others from doing during the term of that patent.  The claims may be divided into a number of parts or steps, referred to as "claim limitations."

The claims of a patent serve two purposes. First, they set the boundaries of the patented invention – what the patent covers. Second, they provide notice to the public of what those boundaries are.  It is the claims of the patent that are infringed when patent infringement occurs. It is the claims that are also at issue when the validity of a patent is challenged.

### 7.3    CLAIM CONSTRUCTION

While the claims define the invention, sometimes the words or phrases of the claims need to be further defined or interpreted. This has been done already in this case by the Court, and a copy of those definitions is included in your juror notebooks. You must accept the definition of these words or phrases in the claims as correct. For any words or phrases in the claim for which you have not been provided with a definition, you should apply their common meaning.

You should not take the definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

Also, you should note that the terms used in the claims may also appear in other documents and evidence, and in these other contexts, they do not necessarily have the same meaning as they do in the claims (although they may).

## 8.0     SUMMARY OF THE ISSUES AND VERDICT SHEET

At the end of this case, you will be asked to decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat some of the instructions I am giving you now and will provide more detail. As I just explained, one thing you will not need to decide is the meaning of the patent claims. That is one of my jobs – to explain to you what the patent claims mean.

At the end of the trial, I will give you a verdict sheet which will list the specific questions you will need to decide during your deliberations.

## 9.0    CONDUCT OF THE JURY

Now a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case, not even with one another. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you, nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring this to the Court's attention promptly.

I know that many of you use cell phones, iPhones, Blackberries, the Internet, and other tools of technology. You also must not use these tools of technology to talk or communicate with anyone about this case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, your Blackberry or iPhone, text messaging, on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites, including Facebook, LinkedIn, YouTube, Instagram, Snapchat, Twitter, WhatsApp, WeChat, and TikTok.

Second, do not read or listen to anything touching on this case in any way.  Again, this includes any electronic tools or communications.

Third, do not try to do any research or make any investigation about the case on your own.  During the course of the trial, you must not conduct any independent research about the case, the matters in the case, and the individuals or entities involved in the case. In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs, or any other electronic means. Also, should there happen to be a newspaper article or radio or

television report relating to this case, do not read the article or watch or listen to the report. It is important that you decide this case based solely on the evidence presented in the courtroom. Please do not try to find out information from any other sources.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, you may, but are not required to, take notes regarding testimony; for example, exhibit numbers, impressions of witnesses, or other things related to the proceedings.

A word of caution is in order. There is generally I think a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Also, keep in mind that you will not have a transcript of the testimony to review. So, above all, your memory will be your greatest asset when it comes time to deliberate and render a decision in this case.

In addition, please make sure that note taking does not distract you from your tasks as jurors. You must listen to all the testimony of each witness. You also need to decide whether and how much to believe each witness. That will require you to watch the appearance, behavior, and manner of each witness while he or she is testifying. You cannot write down everything that is said and there is always a fear that a juror will focus so much on note taking that he or she will miss the opportunity to make important observations. If you do take notes, you must leave them

in the jury deliberation room, which is secured at the end of each day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. I also ask that you wear your juror identification tags where people can see them, so persons involved in the case don't accidentally engage you in conversation. Even if it is innocent conversation, it might draw into question your impartiality. So please make sure that people can identify you as jurors in the case.

Reading the following before each break:

Before we break, I want to remind you that you should not talk or otherwise communicate with anyone about this case, not even with one another.  If any lawyer, party, or witness tries to talk to you about this case, please bring it to my attention promptly.  I also want to remind you not to do any research or investigate this case on your own.  It is important that you decide this case solely on the evidence presented in the courtroom.

## 10.0   COURSE OF THE TRIAL

The trial will now begin. First, Cirba may make an opening statement outlining its case. Then VMware may make an opening statement outlining its case. An opening statement is neither evidence nor argument. It is an outline of what that party intends to prove, and it is presented to help you follow the evidence as it is offered.

After the opening statements, Cirba will present its witnesses, and VMware may cross-examine them. Then VMware will present its witnesses, and Cirba may cross-examine them.

After all of the evidence is in, the attorneys will offer closing arguments. The closing arguments are not evidence. Their purpose is to summarize and interpret the evidence for you, and to tie the evidence to their story. I will also give you detailed final instructions on the law and a verdict sheet and will describe for you the matters you must resolve. You will then retire to the jury room to deliberate on your verdict.

## 11.0   SIDEBARS

During the trial it may be necessary for me to talk with the attorneys out of your hearing by having a bench conference, which is also called a sidebar. If that happens, please be patient. We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. If you would like to stand or stretch or walk around the jury box while we are at sidebar, you should feel free to do so.

I may not always grant an attorney's request for a sidebar. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## 12.0    CONFIDENTIAL LABELS AND REDACTIONS

In the course of this case, the parties entered into an agreement that would protect each party's confidential business information from disclosure to the public or third parties. Under that agreement, the parties have added confidentiality labels to their documents, and in some cases, have redacted information from documents to protect the confidential nature of the information. You may see documents with confidentiality labels or redactions during the course of the trial. The use of confidentiality labels and redactions has no bearing on the evidence, and should not be construed in any way against any party.

## 13.0    TRIAL SCHEDULE

Though you have heard me say this during the jury selection process, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 5 business days to try, between now and Monday, May 1st. There will be no trial on Friday, April 28th.

We will normally begin the day at 9:30 a.m. There will be at least one break every morning, a lunch break, and at least one break every afternoon. We will conclude each day by 5:30 p.m.

What I have just outlined is the general schedule. It is possible there will be some interruptions as I have to attend to other matters.

The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. At that point, you will be permitted to deliberate as late as you wish.

Finally, please understand that this is a timed trial. That means I have allocated each party a maximum number of hours in which to present all portions of its case. This allows me to assure you that we expect to be completed with this case by Monday, May 1st. Of course, you can help me keep on schedule by being here promptly each morning and being ready to proceed at the end of each break.

## GLOSSARY OF PATENT TERMS

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office ("PTO" or "Patent Office") and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Applicants**: The people or entities who are applying for the patent, such as the named inventors or the assignee of the patent application.

**Assignment:** Transfer of ownership rights in a patent or patent application from one person or company (the "assignor") to another (the "assignee").

**Patentee:** The people or entities to whom a patent was issued (*e.g.*, the applicants) or the current owner of the patent.

**Claims**: That part of a patent which defines the boundaries of the invention. These are found at the end of the patent specification in the form of numbered paragraphs. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specified the boundaries of land. In other words, similar to how a landowner can prevent others from trespassing on the land bounded in a deed, an inventor can prevent others from using what is claimed in a patent. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Specification**: That part of the patent application or patent that describes the invention, may include drawings, and concludes with one or more claims.  The specification does not define the scope of the patentee's rights, only the claims do.

**Elements/Limitations**:  The required parts of a device or the required steps of a method.  The words "limitation" and "element" are often used interchangeably with the word "requirement." The phrase "claim limitation" is often used interchangeably with the phrase "claim element."

**File Wrapper/File History/Prosecution History**: The written record of proceedings in the Patent Office related to a patent, including the original patent application and subsequent communications between the Patent Office and applicant.

**License:** Permission to make, use, or sell a patented invention, which may be granted by a current or prior patent owner (or a current or prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Ordinary skill in the art**:  The level of experience, education, and/or training generally possessed by those individuals who work in the technological area of the invention at the time it was invented.

**Patent**: The right to exclude others from making, using, marketing, selling, offering for sale, or importing an invention for a specified period, granted by the federal government.

**Patent Application**: The initial documents submitted to the Patent Office by someone applying for a patent. These documents typically include a specification, drawings, and an oath (or declaration) of from each inventor.

**Person of Ordinary Skill in the Art**: A hypothetical person who is presumed to have known the relevant art at the time of the invention.

**Prior Art**: The body of knowledge, including other patents, publicly available to a person of ordinary skill in the art at the time of invention or more than a year prior to the filing of a patent application for the invention.