## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIRBA INC. (d/b/a DENSIFY), as the
successor-in-interest to CIRBA IP INC.,

                Plaintiff,

      v.

VMWARE, INC.,

                Defendant.

C.A. No. 19- 742-GBW

JURY TRIAL DEMANDED

## **FINAL JURY INSTRUCTIONS**

## TABLE OF CONTENTS

1.0    GENERAL INSTRUCTIONS ........................................................................................ 1

    1.1    INTRODUCTION .............................................................................. 1
    1.2    JURORS' DUTIES .............................................................................. 2
    1.3    EVIDENCE DEFINED ....................................................................... 3
    1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................ 5
    1.5    CONSIDERATION OF EVIDENCE ................................................. 6
    1.6    STATEMENTS OF COUNSEL ......................................................... 7
    1.7    CREDIBILITY OF WITNESSES ...................................................... 8
    1.8    NUMBER OF WITNESSES .............................................................. 9
    1.9    EXPERT WITNESSES ..................................................................... 10
    1.10   DEPOSITION TESTIMONY ........................................................... 11
    1.11   USE OF INTERROGATORIES ....................................................... 12
    1.12   EXHIBITS ........................................................................................ 13
    1.13   BURDENS OF PROOF .................................................................... 14
    1.14   USE OF NOTES ............................................................................... 16

2.0    THE PARTIES AND THEIR CONTENTIONS ...................................................... 17

    2.1    THE PARTIES................................................................................... 17
    2.2    THE PARTIES' CONTENTIONS ................................................... 18
    2.3    SUMMARY OF THE PATENT ISSUES ......................................... 19

3.0    THE PATENT CLAIMS ............................................................................................ 20

    3.1    PATENT LAWS................................................................................ 20
    3.2    PATENT "CLAIMS" GENERALLY................................................ 21
    3.3    CONSTRUCTION OF THE CLAIMS.............................................. 22
    3.4    INDEPENDENT AND DEPENDENT CLAIMS .............................. 24
    3.5    OPEN ENDED OR "COMPRISING" CLAIMS................................ 25

4.0    PATENT INFRINGEMENT ..................................................................................... 26

    4.1    INFRINGEMENT GENERALLY...................................................... 26
    4.2    DIRECT INFRINGEMENT .............................................................. 27
    4.3    INDUCED INFRINGEMENT........................................................... 29
    4.4    DIRECT INFRINGEMENT BY A THIRD PARTY .......................... 31
    4.5    AFFIRMATIVE ACTIONS INTENDED TO CAUSE INFRINGEMENT......... 32
    4.6    KNOWLEDGE THAT THE ACTS, IF TAKEN, WOULD CONSTITUTE INFRINGEMENT........................................................................... 33
    4.7    INDUCEMENT MUST CAUSE DIRECT INFRINGEMENT ........... 34
    4.8    WILLFUL INFRINGEMENT ........................................................... 35

5.0     INVALIDITY ............................................................................................... 36

        5.1     INVALIDITY GENERALLY .......................................................... 36
        5.2     PRIOR ART .................................................................................... 38
        5.3     ANTICIPATION ............................................................................. 39
        5.4     OBVIOUSNESS GENERALLY ..................................................... 40
        5.5     SCOPE AND CONTENT OF THE PRIOR ART ............................ 42
        5.6     DIFFERENCES BETWEEN THE CLAIMED INVENTION AND PRIOR ART
                ........................................................................................................ 43
        5.7     LEVEL OF ORDINARY SKILL ..................................................... 45
        5.8     OBJECTIVE EVIDENCE OF NONOBVIOUSNESS......................... 47

6.0     PATENT DAMAGES ................................................................................ 49

        6.1     DAMAGES INTRODUCTION ....................................................... 49
        6.2     DATE DAMAGES BEGIN AND END ............................................ 50
        6.3     METHODS FOR COMPUTING PATENT DAMAGES...................... 53
        6.4     REASONABLE ROYALTY—GENERALLY .................................. 54
        6.5     FACTORS FOR DETERMINING REASONABLE ROYALTY ......... 56
        6.6     REASONABLE ROYALTY—TIMING............................................ 59
        6.7     PATENT DAMAGES INTEREST..................................................... 60
        6.8     LIMITATIONS ON INDUCED INFRINGEMENT PATENT DAMAGES ....... 61

7.0     DELIBERATION AND VERDICT ............................................................ 62

        7.1     INTRODUCTION ........................................................................... 62
        7.2     UNANIMOUS VERDICT................................................................ 63
        7.3     DUTY TO DELIBERATE ............................................................... 64
        7.4     SOCIAL MEDIA ............................................................................ 65
        7.5     COURT HAS NO OPINION............................................................ 66

## 1.0    GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2   JURORS' DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

You should not be concerned with whether there were any earlier proceedings in this case

3

or, if there were, what the outcome of any such proceedings might have been. And as I have told you previously, the Court has no opinion on the matters you are being asked to decide.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.5    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6    STATEMENTS OF COUNSEL

A further word about statements of counsel and arguments of counsel. The attorneys'
statements and arguments are not evidence. Instead, their statements and arguments are intended
to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys,
you should rely on your own recollection.

## 1.7   CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## 1.8    NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

### 1.9    EXPERT WITNESSES

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

## 1.10   DEPOSITION TESTIMONY

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

### 1.11   USE OF INTERROGATORIES

You may have heard answers that the parties gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

## 1.12   EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

The remainder of the exhibits (including charts, PowerPoint presentations and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records are not here. You should give them only such weight as you think they deserve.

### 1.13   BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Cirba is accusing VMware of patent infringement. Cirba has the burden of proving its claims and the amount of its money damages, if any, by what is called a preponderance of evidence. That means that Cirba has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Cirba claims is more likely true than not. To put it differently, if you were to put the evidence of Cirba and VMware concerning infringement on opposite sides of a scale, the evidence supporting Cirba's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of the VMware, you must find for VMware.

If you find that VMware infringed one or more of the '687 patent claims that have been asserted in this case, then as a separate question, Cirba has also asserted that the infringement of the '687 patent was willful. Cirba has the burden of proving this additional contention by a preponderance of the evidence.

In this case, in addition to denying Cirba's claims, VMware asserts that Cirba's '687 patent is invalid. Patents, however, are presumed to be valid under the law. VMware therefore has the burden of proving that the '687 patent is invalid by clear and convincing evidence. Clear and convincing evidence means that it is highly probable that a fact is true. Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You

should therefore not consider it in this case.

### 1.14   USE OF NOTES

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

## 2.0    THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

The plaintiff in this case is Cirba Inc. (d/b/a Densify) as the successor in interest to Cirba IP Inc., which I may refer to as "Cirba" or "Plaintiff." Cirba Inc. ("Inc.") is not a plaintiff by itself. You heard more about this from the parties, but in April 2022, Cirba Inc. and Cirba IP amalgamated into a single entity, but only Cirba IP's claims are at issue in this action.

The defendant in this case is VMware, Inc., which I will refer to as "VMware" or "Defendant."

## 2.2   THE PARTIES' CONTENTIONS

There are two patents at issue in this case.  Cirba's patents are United States Patent Nos. 8,209,687 and 9,654,367. You heard the lawyers and witnesses in the case refer to Cirba's patents as the '687 and '367 patents or the "Cirba patents." I will do the same. Copies of the Cirba patents have been given to you.

Cirba contends that VMware directly infringed and induced infringement of the Cirba patents, that the infringement of the '687 patent was willful, and that Cirba is entitled to damages.

VMware denies that it infringed or induced infringement of the Cirba patents, or that it did so willfully. VMware also contends that the '687 patent is invalid. VMware also denies that Cirba is entitled to recover any damages related to the patents.

## 2.3    SUMMARY OF THE PATENT ISSUES

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations. The specific questions you must answer are listed on the verdict sheet you will be given. Here are the issues you must decide:

- Whether Cirba has proven by a preponderance of the evidence that VMware infringed one or more of the asserted claims of the '687 patent or the '367 patent.

- If you decide that Cirba has proven that VMware infringed one or more of the asserted claims of the '687 patent, whether Cirba has proven by a preponderance of the evidence that VMware willfully infringed that claim.

- Whether VMware has proven by clear and convincing evidence that one or more of the asserted claims of the '687 patent is invalid.

- If you decide that Cirba has proven that VMware infringed a claim not shown to be invalid, what monetary damages Cirba has proven by a preponderance of the evidence that it is entitled to.

I will provide more detailed instructions on each of the issues you must decide elsewhere in these jury instructions.

## 3.0   THE PATENT CLAIMS

### 3.1   PATENT LAWS

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instruction about the patent laws that specifically relate to this case.

## 3.2    PATENT "CLAIMS" GENERALLY

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered paragraphs at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed.

The claims are intended to define, in words, the bounds of an invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each of the asserted claims must be considered individually.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs, and glue are each separate limitations of the claim. When a thing (such as a product) meets each and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.

Each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether there is infringement of the claim and to decide whether the claim is invalid. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

### 3.3    CONSTRUCTION OF THE CLAIMS

It is the Court's duty under the law to define what the patent claims mean. As I instructed you at the beginning of the case, I have made my determinations, and I will now instruct you on the meaning, or "construction", of the claim terms. You must apply the meaning that I give in each patent claim to decide if the claim is infringed or invalid. You must accept my definitions of these words in the claims as being correct. You must ignore any different definitions used by the witnesses or the attorneys.

You are advised that the following definitions for the following terms must be applied:

| Claim Term | Construction |
|---|---|
| "Evaluating each virtual guest against each virtual host and other virtual guests using one or more rule sets pertaining to said technical, business and workload constraints"<br><br>[claims 3 and 7 of the '687 Patent] | "Evaluating each virtual machine against each virtual host and other virtual machines, in each case using one or more rule sets pertaining to each of technical, business and workload constraints" |
| "Each virtual guest"<br><br>[claims 3 and 7 of the '687 Patent] | Plain and ordinary meaning to a person of ordinary skill in the art |
| "Each virtual host"<br><br>[claims 3 and 7 of the '687 Patent] | Plain and ordinary meaning to a person of ordinary skill in the art |
| "Identifying the existence of virtual machines with suboptimal placements"<br><br>[claim 7 of the '687 Patent] | "Identifying the existence of virtual machines with less than optimal placements as determined by the evaluation step" |
| "virtualized environment"<br><br>[claim 7 of the '687 Patent] | Plain and ordinary meaning to a person of ordinary skill in the art |

| "Business constraint"<br><br>[claims 3 and 7 of the '687 Patent] | "A restriction or limitation based on a business parameter, such as physical location, organization department, data segregation requirements, owner, service level agreements, maintenance windows, hardware lease agreements, or software licensing agreements" |
|---|---|
| "Determine whether the utilization or performance of an entity is in an acceptable range relative to its capacity or performance limits"<br><br>[claims 1 and 13 of the '367 Patent] | "Determine whether an entity's utilization or performance is within an acceptable range, relative to that entity's capacity or performance limits" |

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning to a person of ordinary skill in the art.

### 3.4   INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An independent claim does not refer to any other claim of the patent and sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

In this case, claims 3 and 7 of the '687 patent and claims 1 and 13 of the '367 patent are independent claims. An independent claim must be read separately from the other claims to determine the scope of the claim.

The remaining asserted claims are dependent claims. A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the requirements of the claims to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other independent claims to which it refers.

### 3.5    OPEN ENDED OR "COMPRISING" CLAIMS

The beginning portion, or preamble, of several of the asserted claims has the word "comprising." The word "comprising" means "including the following but not excluding others." A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that have additional elements.

If you find, for example, that the accused products include all of the elements of a particular claim, the fact that the accused products might include additional elements would not avoid infringement of the claim.

## 4.0    PATENT INFRINGEMENT

### 4.1    INFRINGEMENT GENERALLY

I will now instruct you on the rules you must follow when deciding whether Cirba has proven by a preponderance of the evidence that VMware has infringed the asserted claims.

Patent law gives the owner of a patent the right to keep others from making, using, selling, or offering to sell a patented product or perform a patented method within the United States during the term of the patent. Any person or business entity that has made, used, sold, or offered to sell a patented product or performed the patented method in the United States during the term of the patent without the patent owner's permission, infringes the patent, so long as the patent is not found to be invalid.

To prove infringement, Cirba must prove by a preponderance of the evidence that each accused product or method, standing alone, contains each and every one of the elements of the patent claim that is asserted against that product or method. If a particular product or method does not contain each and every element of the claim, you must find that the product or method does not infringe.

If, as here, a patent owner asserts multiple patent claims against the same product or method, then you must compare each claim separately against the product or method to determine whether the product or method infringes that individual patent claim.

You must determine whether Cirba has proven that VMware infringed or induced infringement of any of the asserted claims in the Cirba patents.]

## 4.2   DIRECT INFRINGEMENT

Cirba alleges that VMware literally infringes or did literally infringe the '687 and '367 patents.

In order to prove direct infringement, Cirba must prove that it is more likely than not that VMware made, used, offered for sale, or sold its products in a manner that meets all of the elements of any one claim literally. Infringement requires comparing products to the claims, not the specification.

Literal Infringement occurs when a party's product practices every element of another party's patent claim.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision and I have already instructed you as to the meaning of some terms of the Cirba patent claims. The second step is to decide whether the party accused of infringement has made, used, sold, offered for sale or imported within the United States an accused product or method covered by an asserted claim of the Cirba patents.

To decide whether VMware's computing products and/or their use directly infringe an asserted claim, you must compare that product and/or use with the patent claim and determine whether every element (or as they also are called, limitation) of the claim is included. If so, then VMware's product and/or its use directly infringes or did infringe that claim. If not, then the accused product and/or its use does not directly infringe that claim.

You must determine, separately for each asserted claim, whether or not there is any infringement. There is one exception to this rule. If you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers to that independent claim. On the other hand, if you find that an independent claim has

been infringed, you must still decide, separately, whether the use meets the additional requirements of any claims that depend on the independent claim, and, thus, whether those claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

You may find direct infringement based on as little as one instance of the claimed use being performed. Proof of direct infringement may be based on circumstantial evidence.

To show direct infringement of a method claim, Cirba must show that VMware performed each and every step in the claimed method in the United States.

For direct infringement, Cirba is not required to prove that VMware intended to infringe or knew of the patent. Whether or not VMware knew its accused products infringed or even knew of the patent does not matter in determining direct infringement. Instead, all that matters is whether VMware's use of the product is covered by any one of the claims.

### 4.3   INDUCED INFRINGEMENT

Cirba alleges that VMware has induced others to directly infringe the '687 and '367 patents.

Inducement to infringe a claim cannot occur unintentionally. This is different from direct infringement, which, as I have told you, can occur unintentionally.

Cirba alleges that VMware is liable for infringement by actively inducing others, including customers, to directly infringe the '687 and '367 patents. More particularly, Cirba asserts that VMware induced patent infringement after it became aware of the Cirba patents by encouraging its customers to use its infringing product. It is not sufficient that VMware was aware of the act or acts by the third party that allegedly constitute the direct infringement.

To be liable for inducement to infringe, VMware must have known of the patent and encouraged or instructed another person how to use a product in a manner that you, the jury, find infringes or did infringe the asserted claims and must have had knowledge, or have acted with willful blindness, that the induced acts constituted patent infringement. To find willful blindness (1) VMware must have subjectively believed that there was a high probability that a patent existed covering the accused products, and (2) VMware must have taken deliberate actions to avoid learning of that infringement. The mere fact, if true, that VMware knew or should have known that there was a substantial risk that its customers' acts would infringe the Cirba patents would not be sufficient for active inducement of infringement.

As with direct infringement, you must determine whether there has been inducement on a claim-by-claim basis.

VMware is liable for inducement of infringement of a claim only if the other party proves by a preponderance of the evidence each of the following:

1. That allegedly infringing acts were carried out by a third party that literally infringed

29

one or more of the claims of the Cirba patents, meeting all the criteria discussed in my instructions on the topic stated above;

    2. That VMware took some affirmative action, or that VMware continued to take an action specifically intending to cause the third parties to directly infringe the Cirba patents;

    3. That VMware knew of the Cirba patents—and that (i) VMware knew that the infringing acts, if taken, would constitute direct infringement of the Cirba patents; or (ii) VMware believed that there was a high probability that the actions taken by others infringed the Cirba patents—and took deliberate steps to avoid learning of that infringement;

    4. That VMware's alleged inducement, as opposed to other factors, actually caused the third parties to directly infringe.

    In order to establish inducement of infringement, it is not sufficient that the third party directly infringed the claim. Nor is it sufficient that VMware was aware of the act or acts by the third party that allegedly constitute the direct infringement. Rather, you must find that VMware specifically intended that the third party infringe the other party's patents or that VMware believed there was a high probability the third party would infringe Cirba's patents but remained willfully blind to the infringing nature of the third party's acts, in order to find inducement of infringement.

    If you find that no claim of the Cirba patents has been directly infringed, you cannot find VMware liable for inducement.

### 4.4    DIRECT INFRINGEMENT BY A THIRD PARTY

The first requirement for induced infringement, which I just discussed, is that Cirba must prove by a preponderance of the evidence that the allegedly infringing acts were carried out by a third party that directly infringed one or more of the claims of the Cirba patents.

To directly infringe a method claim, a third party must perform each and every step of the claimed method in the United States. It is not enough that the accused product is capable of infringing use.

If you do not find that there is direct infringement by a single actor, or if you do not find that VMware actively induced these acts, you must find that VMware did not induce infringement of the patent.

## 4.5    AFFIRMATIVE ACTIONS INTENDED TO CAUSE INFRINGEMENT

The second requirement for induced infringement, which I just discussed, is that Cirba must prove by a preponderance of the evidence that VMware took actions with the specific intent to cause third parties to engage in infringing acts. This can be shown through direct or circumstantial evidence.

In order to establish inducement of infringement, it is not sufficient that the third parties infringe the Cirba patents. Nor is it sufficient that VMware was aware of acts by others that would directly infringe. Rather, in order to find inducement, you must find that VMware intended others to use its products in at least some ways that would infringe the asserted claims of the Cirba patents, took affirmative acts to encourage direct infringement, and that those actions actually caused the direct infringement of the asserted claims of the Cirba patents.

Cirba must prove by a preponderance of the evidence that VMware took affirmative acts intending to induce infringement.

### 4.6    KNOWLEDGE THAT THE ACTS, IF TAKEN, WOULD CONSTITUTE INFRINGEMENT

The third requirement for induced infringement, which I just discussed, is that Cirba must prove by a preponderance of the evidence that VMware knew of the Cirba patents.  Cirba must also prove by a preponderance of the evidence that VMware knew that the acts it induced third parties to take would, if taken, constitute infringement of the Cirba patents, or that VMware believed there was a high probability that the actions taken by third parties would infringe the Cirba patents and took deliberate steps to avoid learning of that infringement.

Inducing infringement cannot occur unintentionally. It is not enough for VMware to lead another to engage in conduct that happens to amount to infringement.  Rather, to induce infringement, VMware must persuade another to engage in conduct that it knows—or believes with high probability, but deliberately avoided confirming—is infringement.

### 4.7   INDUCEMENT MUST CAUSE DIRECT INFRINGEMENT

Finally, Cirba must prove that VMware's alleged inducement, as opposed to other factors, actually caused third parties to directly infringe the Cirba patents. This means that VMware cannot be liable for induced infringement where Cirba does not show that VMware successfully communicated with and induced a third-party direct infringer and that the communication was the cause of the direct infringement by the third-party infringer.

Like all other disputed issues in this case, this final element of induced infringement can be proven by circumstantial evidence. Cirba is not required to present direct proof of any direct infringer third party stating, for example, that VMware caused her to infringe. Cirba must prove that VMware's actions led third parties to directly infringe a claim of the Cirba patents, but Cirba may do so with circumstantial—as opposed to direct—evidence. Such circumstantial evidence must be sufficient to prove that VMware's actions led third parties to directly infringe a claim of the Cirba patents by performing each and every step of the claimed method in the United States. Circumstantial evidence of induced infringement is sufficient for a finding of such indirect infringement without requiring proof that any individual third-party direct infringer was actually persuaded to infringe.

## 4.8    WILLFUL INFRINGEMENT

In this case, Cirba argues that VMware willfully infringed Cirba's '687 patent.

If you have decided that VMware has infringed a valid claim of the '687 patent, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Cirba proved by a preponderance of the evidence that VMware knew of the '687 patent before the lawsuit was filed and intentionally infringed them. However, you may not find that VMware's infringement was willful merely because VMware knew about the patent, without more.

In determining whether Cirba has proven that VMware's infringement was willful, you must consider all of the facts surrounding the alleged infringement including:

1. Whether VMware acted consistently with the standards of behavior for its industry;

2. Whether VMware copied a product that it knew was covered by an asserted claim;

3. Whether VMware reasonably believed it did not infringe or that the '687 patent was invalid;

4. Whether VMware made a good-faith effort to avoid infringing the '687 patent, for example, whether VMware attempted to design around the '687 patent (evidence that VMware attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that infringement was not willful); and

5. Whether VMware tried to cover up its infringement.

If you do decide that there was willful infringement, that decision should not affect any damages award you give in this case.

## 5.0   INVALIDITY

### 5.1   INVALIDITY GENERALLY

Patent invalidity is a defense to patent infringement. The granting of a patent by the United States Patent and Trademark Office carries with it the presumption that the patent is valid. The law presumes that the Patent and Trademark Office acted correctly in issuing the patent. Each of the asserted claims is presumed valid independently of the validity of each other claim. Nevertheless, when the validity of a patent has been put at issue as part of patent litigation, it is the responsibility of the jury to review what the Patent Office has done consistent with the Court's instructions on the law. However, the fact that a patent application is rejected or amended before the patent is issued has no bearing on its ultimate validity.

VMware has asserted as a defense to patent infringement in this case that Cirba's '687 patent is invalid. Because each of the asserted claims is presumed valid independently of the validity of each other claim, this puts the burden on VMware of proving invalidity by clear and convincing evidence on a claim-by-claim basis that each of the asserted claims of the '687 patents is invalid. VMware may rely on prior art that was before the patent examiner during prosecution. VMware's burden of proof remains the same regardless of whether the references on which VMware is relying to invalidate a patent have previously been before the patent examiner.

Even though the Patent Office examiner allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are proven to be invalid. For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non-obvious. A patent cannot take away from the right of anyone who wants to use what was already known or used by others, or what would have been obvious to those of skill in the art at the time the invention was made.

VMware alleges that the '687 patent is invalid because the asserted claims are anticipated by VMware's DRS 2006.  VMware also alleges that the '687 patent is rendered obvious in light of DRS 2006 alone and in combination with other references.

I will now instruct you in more detail why VMware alleges that the asserted claims of the '687 patent are invalid.

## 5.2   PRIOR ART

Prior art is the legal term used to describe what others had done in the field before the invention was made. Prior art is the general body of knowledge in the public domain, such as articles, products, or other patents, before the invention was made. The prior art need not have been available to every member of the public, but it must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

For the asserted claims, prior art includes any of the following items received into evidence during trial:

• Any product or method known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention was made; or

• Any product or method patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the earliest effective filing date of the '687 patent, which is August 31, 2007.

## 5.3   ANTICIPATION

A party may claim a patent is invalid under a theory of anticipation. In order for someone to be entitled to a patent, the invention must actually be new. In general, inventions are new when the identical invention as claimed has not been used or disclosed before. If the claim is not new, we say that it was "anticipated" by prior art. A claim that is "anticipated" by the prior art is not entitled to patent protection.

Anticipation must be proved on a claim-by-claim basis. To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation.

To anticipate the invention, the disclosure in the prior art reference does not have to use the same words as the claim, but all of the requirements of the claim must be there, either stated expressly or inherently, so that someone of ordinary skill in the art to which the claimed invention pertains, looking at that one reference, could make and use the claimed invention. Thus, for purposes of anticipation, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present.

In this case, VMware alleges that the asserted claims of the '687 patent are anticipated by DRS 2006. VMware must convince you that each claim was anticipated by clear and convincing evidence.

In assessing VMware's anticipation defense, you must decide whether VMware has proven by clear and convincing evidence that the prior art expressly or inherently discloses to a person of ordinary skill in the art all the physical steps of the claimed apparatus or method. Thus, you must compare the steps of the patent with the steps of the prior art method and assess whether there is a difference between them.

### 5.4    OBVIOUSNESS GENERALLY

Another basis for claiming that a patent is invalid is obviousness. Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. Obviousness may be shown by considering one or more than one item of prior art.

VMware contends that the asserted claims of Cirba's '687 patent are invalid based on obviousness. VMware bears the burden of proving obviousness by clear and convincing evidence. VMware must show, by clear and convincing evidence, that the claimed invention would have been obvious to a person having ordinary skill in the art at the time the invention was made. In determining whether the claimed invention was obvious, you must consider each claim separately. You should not use hindsight, such as by using Cirba's '687 patent as a roadmap to select from the prior art and retrace the path of the inventors. In other words, you should only consider what was known prior to the invention date, without the benefit of the later '687 patent and what that patent teaches.

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made. The existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. To show obviousness, the law does not require that the prior art prove, to a statistical certainty, that the claimed result would work. In the context of obviousness, only a reasonable expectation of success is required, not conclusive proof or absolute predictability.

You must put yourself in the place of a person of ordinary skill in the art at the time of invention. In addition, you may consider whether there was a reason to combine or modify the prior art references in the fashion claimed by the patent at issue. To find that the prior art rendered a claimed invention obvious, you must find that a person having ordinary skill in the art would have had a reasonable expectation of successfully accomplishing the claimed method.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps, which I will explain further in just a moment:

1. Determine the scope and content of the prior art;

2. Identify the differences, if any, between each asserted claim and the prior art;

3. Determine the level of ordinary skill in the pertinent art at the time the invention of the patent was made; and

4. Consider objective factors of non-obviousness – that is, additional considerations, if any, that indicate that the invention was obvious or not obvious.

Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or nonobvious to a person of ordinary skill in the pertinent art.

## 5.5    SCOPE AND CONTENT OF THE PRIOR ART

In determining obviousness, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem that the inventors faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the claimed invention was trying to solve. The prior art may include any of the items discussed above.

## 5.6    DIFFERENCES BETWEEN THE CLAIMED INVENTION AND PRIOR ART

Second, you should analyze whether there are any relevant differences between the prior art taken as a whole and the asserted claims of the '687 patent from the view of a person of ordinary skill in the art as of August 31, 2007. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.

On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason

could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense. Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that VMware contends is obvious.

### 5.7 LEVEL OF ORDINARY SKILL

Third, you must consider the perspective of a person of ordinary skill in the art, as explained previously. This person is presumed to know all the prior art that you have determined to be reasonably relevant. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include: (1) the educational level and experience of people working in the field; (2) the types of problems faced by workers in the art at the time of the invention and the solutions found to those problems; (3) the prior art patents, products or devices, and publications; and (4) the sophistication of the technology in the field at the time of the invention, including how rapid innovations were made in the art at the time of the invention.

Cirba contends that a person of ordinary skill in the art to which Cirba's '687 patent pertains would have been an individual with at least a bachelor's degree in computer engineering, computer science, or comparable degree and two years of experience developing software tools and/or computer systems for use in the area of information technology infrastructures and utilities in designing and evaluating virtualized environments. Cirba contends such a person would have been knowledgeable about virtualized software tools available at the time and their important features.

VMware contends that a person of ordinary skill in the art to which Cirba's '687 patent pertains would have had at least a bachelor's degree in computer science, computer engineering, or electrical engineering, and 2-3 years of experience relating to physical and virtualized computing environments, including virtual machines, hypervisors, and host servers. VMware further contends that such a person would have been familiar with designing, implementing,

monitoring, evaluating, optimizing, and managing physical and virtualized computing

environments.

### 5.8    OBJECTIVE EVIDENCE OF NONOBVIOUSNESS

Fourth, you must also take into account any objective evidence (sometimes called "objective indicia" or "secondary considerations") that may shed light on whether the claims were obvious. "Objective indicia" or "secondary considerations" must be considered before a conclusion on obviousness is reached.

"Objective indicia" or "secondary considerations" can include:

(A) Whether the invention was commercially successful at least in part as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(B) Whether the invention satisfied a long-felt need;

(C) Whether others copied the invention;

(D) Whether the invention achieved unexpected results compared to the closest prior art; evidence of unexpected results may be used to rebut a case of obviousness even if that evidence was obtained after the patent's filing or issue date; there is no requirement that an invention's properties and advantages were fully known before the patent application was filed, or that the patent application contains all of the work done in studying the invention;

(E) Whether others tried and failed to make the invention;

(F) Whether others in the field praised the invention;

(G) Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(H) Whether the inventor proceeded contrary to accepted wisdom in the field; and

(I) Whether others invented the invention at roughly the same time.

Cirba has the burden to show evidence of "objective indicia" or "secondary considerations" and to show that there is a connection, sometimes called a "nexus," between the

47

evidence showing any of these factors and the claimed invention, if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. However, VMware always maintains the ultimate burden to show obviousness by clear and convincing evidence, taking into account any objective indicia that you may find.

## 6.0    PATENT DAMAGES

### 6.1    DAMAGES INTRODUCTION

All the instructions that I have given you up to this point have been about determining

liability, meaning the determination as to whether VMware has infringed Cirba's patents.  If you

find that VMware infringed or induced infringement of any valid claim of the Cirba patents, you

must then consider what amount of damages to award to Cirba for the infringement.  If you find

that each of the asserted claims is either invalid or not infringed, then you should not consider

damages in your deliberations.

I will instruct you now on how to determine the amount of damages, if any. By

instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate Cirba for the infringement, and

Cirba is in any event entitled to no less than a reasonable royalty.

Damages are not meant to punish an infringer.

Cirba has the burden to establish each element of its damages, including the amount of

the damages, by a preponderance of the evidence. In other words, you should award only those

damages that Cirba establishes that it more likely than not suffered. Cirba must prove the amount

of damages with reasonable certainty, but need not prove the amount of damages with

mathematical precision. You may not award damages that are speculative, damages that are only

possible, or damages that are based on guesswork.

Cirba seeks damages for patent infringement as measured by a reasonable royalty.  A

reasonable royalty is defined as the money amount the parties would have agreed upon as a fee

for use of the invention at the time prior to when infringement began.

I will now give you more detailed instructions regarding damages.

## 6.2    DATE DAMAGES BEGIN AND END

In determining the amount of damages for patent infringement, you must determine when the damages period begins.  The damages period for each patent begins on the earlier of (1) the date that Cirba satisfied the applicable marking or notice requirements described herein, or (2) the date that Cirba filed its lawsuit against VMware, subject to some limitations discussed below.

In order for Cirba to collect pre-suit damages (i.e., damages before its April 25, 2019 lawsuit), Cirba must prove by a preponderance of the evidence that it satisfied applicable notice requirements with respect to its claims for patent infringement as of the dates from which damages are sought or awarded.

Cirba can prove by a preponderance of the evidence that it gave notice in either of two ways. First, Cirba may prove that it gave notice to the public in general by complying with applicable marking requirements for substantially all products it made, offered for sale, or sold within the United States that practiced each patent.  "Marking" is fixing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention.  A patentee also may mark a patented product virtually by fixing the word "patent" or the abbreviation "pat.," with the address of a publicly available website that associates the patented product with the patent number. Marking, however, is required only to the extent that there is a tangible item to mark.

You may find that Cirba complied with the "marking" requirement if it can prove by a preponderance of the evidence that it and its licensees complied with the applicable marking requirements for substantially all of their products in the United States that practiced the asserted patents in a manner appropriate for the applicable products.

A second way Cirba can prove that it gave notice of the asserted patents is to prove that it directly notified VMware of its specific claim that the accused products infringed the asserted

patents.  Cirba must prove by a preponderance of the evidence that it informed VMware of the identities of the asserted patents and of the alleged infringement by the accused products.  If you find this type of "actual notice," then damages start from the date VMware received the actual notice.

If you find that Cirba satisfied the applicable marking or notice requirements before it filed its lawsuit on April 25, 2019, then you will need to consider other factors for purposes of determining the beginning of the eligible damages period for any infringement of Cirba's patents.  Specifically:

For Cirba's '687 patent:

A) If you find that VMware has directly infringed the '687 patent, the damages period begins on the later of the date applicable marking or notice requirements were satisfied and the date on which all requirements of direct infringement had been satisfied, but not earlier than March 2015.  Damages for direct infringement are only available for VMware's own use of its accused products and not its customers' use.  This damages period continues through the present.

B) If you find that VMware has induced infringement of the '687 patent, the damages period begins on the later of the date on which all the requirements of induced infringement had been satisfied and the date applicable marking or notice requirements were satisfied, but not earlier than March 2015. This damages period continues through the present.

For Cirba's '367 patent:

A) If you find that VMware has directly infringed the '367 patent, the damages period begins on the later of May 16, 2017 and the date applicable marking or notice requirements were satisfied. Damages for direct infringement are only available for VMware's own use of its accused products and not its customers' use. This damages period continues through the present.

B) If you find that VMware has induced infringement of the '367 patent, the damages period begins on the later of the date on which all the requirements of such infringement had been satisfied and the date applicable marking or notice requirements were satisfied, but not earlier than May 16, 2017. This damages period continues through the present.

### 6.3    METHODS FOR COMPUTING PATENT DAMAGES

There are two methods for computing damages in a patent infringement case. One is called "lost profits" damages and the other is called "reasonable royalty" damages. In this case, Cirba is seeking damages for patent infringement as measured by a reasonable royalty.

### 6.4    REASONABLE ROYALTY—GENERALLY

Cirba is seeking damages in the form of a reasonable royalty in this case. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in the negotiations. You should assume that both parties to the hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license. You should also assume that the patent owner and the infringer would have acted reasonably and would have entered into a license agreement.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

A reasonable royalty is typically made up of (1) a base and (2) a rate (or percentage) that is applied to that base. The reasonable royalty award must be apportioned and based only on the incremental value that the patented invention adds to the end product, and Cirba must apportion value between the patented features and any non-patented features contained in the accused products. The reasonable royalty for method claims must also be limited to only those circumstances in which the steps of the claimed method were performed. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product and no more. Although direct evidence is not required to prove all specific instances of infringement, the damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers. Damages for indirect infringement are

not limited to a specific number of instances of actual infringing use proven with direct evidence.

### 6.5    FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patent owner for the licensing of the patent in suit, proving or tending to prove an established royalty.

(2)  The rates paid by the licensee for the use of other patents comparable to the patent in suit.

(3) The nature and the scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The patent owner's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

(5) The commercial relationship between the licensee and the patent owner at the time of the hypothetical negotiation, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

(6) The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the patent owner as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

(7) The remaining life of the patents-in-suit and the terms of the license.

(8) The established profitability of the products made under the patents-in-suit; their commercial success; and their current popularity.

(9) The utility and advantages of the patent property over the old modes or devices, if any, that had been used for achieving similar results.

(10)   The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the patent owner at the time of the hypothetical negotiation; and the benefits to those who have used the invention.

(11)   The extent to which the licensee has made use of the invention; and any evidence probative of the value of that use.

(12)   The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

(13)   The portion of the realizable profit that should be credited to the inventions as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)   The opinion and testimony of qualified experts.

(15)   The amount that a licensor (such as the patent owner) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

(16)   Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license. This may include the availability of commercially acceptable, noninfringing alternatives at the time of the hypothetical negotiation.

No one of these factors is dispositive, and you can and should consider the evidence that has been presented to you on any of these factors. You may also consider any other factors that in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept.

### 6.6    REASONABLE ROYALTY—TIMING

The relevant date for the hypothetical reasonable royalty negotiation is at the time the infringement began. However, you may also consider in your determination of reasonable royalty any information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

The damages period might not coincide with the date of the first infringement.  There are two reasons for this.  First, patent law limits damages to a six-year period before the filing of the complaint or counterclaim for infringement.  Second, as I explained earlier in these instructions, if Cirba has not complied with applicable marking requirements or has not provided actual notice relating to its patents, then Cirba cannot recover pre-suit damages.

Remember, you may only award damages for any infringement you have found occurred during the damages period for each patent.

### 6.7   PATENT DAMAGES INTEREST

Neither party's calculations include interest. Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

### 6.8    LIMITATIONS ON INDUCED INFRINGEMENT PATENT DAMAGES

If you award damages for induced infringement, you must limit the damages to circumstances in which all the elements needed to find induced infringement have been satisfied. In order to recover damages for induced infringement, the plaintiff must prove acts of direct infringement by others that were induced by the accused infringer. In order to recover damages for induced infringement of a method claim, it is not enough that the accused infringer's products are capable of infringing the asserted patents. The plaintiff must prove acts of direct infringement by others performing each step of the claimed method that were induced by the accused infringer. The amount of damages for induced infringement should be correlated, in some respect, to the extent of use of the claimed method. The plaintiff must prove that the accused infringer caused the acts of direct infringement of the asserted patents in the United States.

## 7.0    DELIBERATION AND VERDICT

### 7.1    INTRODUCTION

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## 7.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the Courtroom and my deputy will read aloud your verdict. Place the completed verdict sheet in the envelope we will give you. Do not show the completed verdict form to anyone or share it with anyone until you are in the Courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

### 7.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4   SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, Blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5    COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.